

**GC EXHIBIT 043-005**







GC EXHIBIT 044

22-60493.3224

GC-44

EXHIBIT NO. GC-44 RECEIVED ✓ REJECTED____
32-CA-197020
CASE NO ____ CASE NAME: Tesla, Inc.
OF 2 DATE: 6/13/18 REPORTER: BLAST

22-60493.3226



## A Fair Future At Tesla

@AFairFutureAtTesla

Home

About

Events

Photos

Videos

Community

Posts

Poll

Quiz

**Create a Page**



 Write a comment...

**A Fair Future At Tesla**
July 21, 2017 · 

Yesterday 10 members of the Tesla Organizing Committee took our petition, signed by hundreds of Tesla workers demanding more clarity and better pay, to HR director Josh Hedges. We asked him to respond within the week. We'll see if he does, but this won't be the last time management hears about this issue!

Check out the petition here: http://www.fairfutureattesla.org/petition/



👍 Like          💬 Comment          ➡️ Share

 217                                    Oldest ▾

**Sign Up**          💬 Send Message

Labor Union in Fremont, California

Always Open

**Community**                          See All

👥 **Invite your friends** to like this Page

👍 3,303 people like this

🔔 3,441 people follow this

**About**                             See All



44790 S Grimmer Blvd Suite 100 (27.51 mi)
Fremont, California 94539
Get Directions

(510) 877-0829

Typically replies within an hour
**Send Message**

www.fairfutureattesla.org

Labor Union · Nonprofit Organization

Hours
Always Open

Suggest Edits

**Related Pages**

Case: 22-60493   Document: 44-6   Page: 5   Date Filed: 10/25/2022

EXHIBIT NO. GC-45 RECEIVED ✓ REJECTED____
32-CA-197020
CASE NO ____ CASE NAME: Tesla, Inc.
___ OF 2   DATE: 4/13/18 REPORTER: BRETT

22-60493.3228



## A Fair Future At Tesla
@AFairFutureAtTesla

Home

About

Events

Photos

Videos

Community

Posts

Poll

Quiz

**Create a Page**

👍 Like    🔊 Follow    + Create Fundraiser    ...




**A Fair Future At Tesla**
August 29, 2017 · 🌐

Tesla Organizing Committee members had a good talk with Senator Monning yesterday outside his office in Sacramento!



👍 Like              💬 Comment              ➥ Share

👍❤️ 77                                        Oldest ▾

9 Shares

**Sign Up**      💬 Send Message

Labor Union in Fremont, California

Always Open

**Community**                    See All

👥 **Invite your friends** to like this Page

👍 3,303 people like this

🔊 3,441 people follow this

**About**                        See All

◇ 44790 S Grimmer Blvd Suite 100 (27.51 mi)
   Fremont, California 94539
   Get Directions

📞 (510) 877-0829

↩ Typically replies within an hour
   **Send Message**

🌐 www.fairfutureattesla.org

🗂 Labor Union · Nonprofit Organization

⏲ Hours
   Always Open

Case: 22-60493    Document: 44-6    Page: 7    Date Filed: 10/25/2022

EXHIBIT NO. GC-4C RECEIVED ✓ REJECTED____

32-CA-197020

CASE NO _____ CASE NAME: Tesla, Inc.

___ OF  2  DATE: 6/13/18 REPORTER: B. RAST

**EXHIBIT EXCLUDED**

Leading Case Number __32-CA-197020__

Leading Case Name __Tesla, Inc__

Exhibit Number __GC-47 thru GC-49__

Description _____

_____

_____

The above-referenced exhibit is not included herein for the following reason:

1. **Exhibit Withdrawn** _____

2. **Exhibit Rejected** _____

3. **Other (Explain)** __#'s not used_____

_____

_____

**Exhibit retained by** _____

_____

__B. RAST__
**Court Reporter**



In response to recent leaks of confidential Tesla information, we are reminding everyone who works at Tesla, whether full-time, temporary or via contract, of their confidentiality obligations and asking them to reaffirm their commitment to honor them.

These obligations are straightforward. Everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started. This includes information about products and features, pricing, customers, suppliers, employees, financial information, and anything similar.

Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla, take or post photos or make video or audio recordings inside Tesla facilities, forward work emails outside of Tesla or to a personal email account, or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal. Of course, these obligations are not intended to limit proper communications with government agencies.

The consequence for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment. Anyone engaging in intentional violation of the confidentiality agreement will be held liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

---

By signing below, I affirm my agreement to comply with my confidentiality obligations to Tesla. I also represent that at no time over the past 12 months have I disclosed any Tesla confidential information outside of Tesla unless properly authorized to do so.

Sign: _____

Print Name: _RICHARD ORTIL_

Print Tesla email address: _rortil@tesla_

Date: _10/10/16_          667019

Witnessed by: _____

Print name: _Daniel O'Brien_

If you did not realize the severity of the consequences, Tesla will be providing a one-time complete forgiveness of responsibility, provided that you fully disclose all significant confidentiality violations below:

TESLA

**GC EXHIBIT 050**

22-60493.3231

TSLA-ORTIZ024

GC-50

EXHIBIT NO. GC-50 RECEIVED ✓    REJECTED

32-CA-197020    CASE NAME: Tesla, Inc

CASE NO.

OF 2    DATE: 6/13/18    REPORTER: BRAST.

22-60493.3232

**OFFICIAL REPORT OF PROCEEDINGS**

**BEFORE THE**

**NATIONAL LABOR RELATIONS BOARD**

**REGION 32**

In the Matter of:

| | |
|---|---|
| **TESLA, INC.,** | Case No.   32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, AN INDIVIDUAL,** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |

**JONATHAN GALESCU, AN INDIVIDUAL,**

**and**

**RICHARD ORTIZ, AN INDIVIDUAL,**

**and**

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL WORKERS OF AMERICA,**
**AFL-CIO,**

         **Charging Party,**

_____

_____

**JOINT EXHIBITS**

Place: Oakland, California

Dates: June 14, 2018

**OFFICIAL REPORTERS**
**eScribers, LLC**
**E-Reporting and E-Transcription**
**7227 North 16th Street, Suite 207**
**Phoenix, AZ 85020**
**(602) 263-0885**



www.escribers.net | 800-257-0885



JOINT EXHIBIT 001



22-60493.3234

EXHIBIT NO. J-1 RECEIVED___ REJECTED___

32-CA-197020

CASE NO ___ CASE NAME: Tesla, Inc.

___ OF 2  DATE: 4/13/18 REPORTER: B. RAST

# OFFICIAL REPORT OF PROCEEDINGS

## BEFORE THE

## NATIONAL LABOR RELATIONS BOARD

### REGION 32

In the Matter of:

TESLA, INC.,                                    Case Nos.   32-CA-197020
                                                            32-CA-197058
and                                                         32-CA-197091
                                                            32-CA-197197
MICHAEL SANCHEZ, an Individual,                             32-CA-200530
                                                            32-CA-208614
and                                                         32-CA-210879
                                                            32-CA-220777
JONATHAN GALESCU, an
Individual,

and

RICHARD ORTIZ, an Individual,

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, AFL-CIO,

                Charging Party,

_____

_____

**GENERAL COUNSEL EXHIBITS**

Place: Oakland, California

Dates: September 28, 2018

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

22-60493.3236



www.escribers.net | 800-257-0885

TESLA, INC.

and

MICHAEL SANCHEZ, an Individual

and

JONATHAN GALESCU, an Individual

and

RICHARD ORTIZ, an Individual

and

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF AMERICA, AFL-CIO

Cases: 32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879
32-CA-220777

## CONTINUATION OF INDEX AND DESCRIPTION OF FORMAL DOCUMENTS

1(aaa)    Respondent's Opposition to the General Counsel's Request for Special Permission to
Appeal the Administrative Law Judge's Amended Order Denying General Counsel's
Motion to Permit Videoconference Testimony of a Critical Third-Party Witness,
dated 6-15-18

1(bbb)    Respondent Tesla, Inc.'s Answer to Amendment to Second Amended Consolidated
Complaint, dated 6-18-18

1(ccc)    Counsel for the General Counsel's Opposition to Respondent Tesla, Inc.'s Motion to
Dismiss the Amendment to the Second Amended Complaint for Lack of Jurisdiction,
dated 6-22-18

1(ddd)    Affidavit of Service of 1(ccc)

1(eee)    Charging Parties' Opposition to Respondent's Motion to Dismiss, 6-22-18

*1 (aaaa)*

EXHIBIT NO. GC-1(9999) RECEIVED ✓ REJECTED _____

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 3 DATE: 9-25-18 REPORTER: DA

1(fff)    Consolidated Reply to the General Counsel's and the Charging Parties' Oppositions to Respondent's Motion to Dismiss for Lack of Jurisdiction, dated 6-26-18

1(ggg)    Board Order, General Counsel's Motion Denied, dated 7-16-18

1(hhh)    ALJ's Order Denying Respondent's Motion to Dismiss, dated 8-10-18

1(iii)    Complaint, 32-CA-220777, dated 8-23-18

1(jjj)    Affidavit of Service of 1(iii)

1(kkk)    General Counsel's Motion to Consolidate Cases, dated 8-23-18

1(lll)    Affidavit of Service of 1(kkk)

1(mmm)   ALJ's Order to Show Cause Regarding General Counsel's Motion to Consolidate Cases, dated 8-24-18

1(nnn)    Charging Parties' Brief in Support for General Counsel's Motion to Consolidate Case 32-CA-220777 with Existing Cases, dated 9-5-18

1(ooo)    Respondent's Answer to 32-CA-22077 Complaint, dated 9-5-18

1(ppp)    Tesla's Opposition to the General Counsel's Motion to Consolidate Cases, dated 9-7-18

1(qqq)    Declaration of Rachelle Toletti in Support of Respondent Tesla, Inc.'s Motion for Summary Judgment, dated 9-7-18

1(rrr)    Respondent Tesla, Inc.'s Motion for Summary Judgment, dated 9-7-18

1(sss)    Notice of Hearing, Case 32-CA-220777, dated 9-11-18

1(ttt)    Affidavit of Service of 1(sss)

1(uuu)    ALJ's Order Granting the General Counsel's Motion to Consolidate, dated 9-11-18

1(vvv)    Charge Against Employer 32-CA-220777, dated 5-23-18 (added per ALJ's Order dated, 9-11-18)

1(www)   Affidavit of Service of 1(vvv)

1(xxx)    Counsel for the General Counsel's Opposition to Respondent's Motion for Summary Judgment, dated 9-13-18

1(yyy)    Affidavit of Service of 1(xxx)

1(zzz)    Board Order, Respondent's Motion Denied, dated 9-21-18

1(aaaa)   Index and Description of Formal Documents

2

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

TESLA, INC.

    and                                    Case 32-CA-197020

MICHAEL SANCHEZ

    and                                    Case 32-CA-197058

JONATHAN GALESCU

    and                                    Case 32-CA-197091
RICHARD ORTIZ

    and                                    Cases 32-CA-197197
                                                      32-CA-200530
INTERNATIONAL UNION, UNITED            32-CA-208614
AUTOMOBILE, AEROSPACE AND            32-CA-210879
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

ORDER[1]

The Respondent's request for special permission to appeal Administrative Law

Judge Amita B. Tracy's order denying the Respondent's motion to dismiss the General

Counsel's amendment to the second consolidated complaint is granted.  On the merits, the

appeal is denied.  The Respondent has failed to establish that the judge abused her

discretion in denying the Respondent's motion.

Dated, Washington, D.C., September 21, 2018

                           JOHN F. RING,               CHAIRMAN

                           LAUREN McFERRAN,       MEMBER

                           MARVIN E. KAPLAN,      MEMBER

---

[1]  The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.  Member Emanuel is recused and did not participate in the consideration of this case.

*1 (222)*

Exhibit No. GC-1(zzz) Received ✓ Rejected_____

Case No. 32-CA-197020    Case Name: Tesla, Inc.

No. of Pages: 2 Date: 9-25-16 Reporter: DA

22-60493.3241

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

| | |
|---|---|
| TESLA, INC. | Cases 32-CA-197020 |
| and | 32-CA-197058 |
| MICHAEL SANCHEZ, an Individual | 32-CA-197091 |
| and | 32-CA-197197 |
| JONATHAN GALESCU, an Individual | 32-CA-200530 |
| and | 32-CA-208614 |
| RICHARD ORTIZ, an Individual | 32-CA-210879 |
| and | 32-CA-220777 |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Date: September 13, 2018 |

## AFFIDAVIT OF SERVICE OF COUNSEL FOR THE GENERAL COUNSEL'S OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that *on the date indicated above* I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Keahn Morris, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**
**VIA EMAIL: kmorris@sheppardmullin.com**

Margo A. Feinberg, Esq.
Daniel Curry, Esq.
Julie Alarcon, Esq.
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margo@ssdslaw.com**
**VIA EMAIL: dec@ssdslaw.com**
**VIA EMAIL: jsa@ssdslaw.com**

Jatinder K. Sharma Esq.
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA 94555
**Email: jsharma@tesla.com**

Office of the Executive Secretary
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570-0001
**VIA E-FILE**

| | |
|---|---|
| September 13, 2018 | Ida Lam, Designated Agent of NLRB |
| | Name |
| | *Ida Lam* |
| | Signature |

1 (YYY)

EXHIBIT NO. GC-1(xxx) RECEIVED ✓ REJECTED _____

32-CA-197020

CASE NO. _____     CASE NAME: Tesla, Inc.

NO. OF PAGES: 2     DATE: 9-25-18     REPORTER: DM

UNITED STATES OF AMERICA
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

and

**MICHAEL SANCHEZ, an Individual**

and

Cases 32-CA-197020
     32-CA-197058
     32-CA-197091
     32-CA-197197
     32-CA-200530
     32-CA-208614
     32-CA-210879
     32-CA-220777

**JONATHAN GALESCU, an Individual**

and

**RICHARD ORTIZ, an Individual**

and

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL WORKERS OF**
**AMERICA, AFL-CIO**

**COUNSEL FOR THE GENERAL COUNSEL'S OPPOSITION**
**TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Respondent's Motion for Summary Judgment in case 32-CA-220777 must be denied

because the case is part of a consolidated matter now pending before an administrative law judge

in which the hearing is scheduled to resume on September 24, 2018.[1] Further, there are genuine

issues of material fact in this case, as more fully discussed below.

**I.    Introduction**

On May 23, the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America, AFL-CIO (the Union) filed the charge in Case 32-CA-220777

---

[1] All dates occurred in 2018 unless otherwise noted.

1 (xxx)

22-60493.3244

alleging that Tesla, Inc. (Respondent) violated section 8(a)(1) of the National Labor Relations Act (the Act) when Chief Executive Officer Elon Musk (Musk) tweeted a coercive statement (the Tweet).[3]  On August 23, after an investigation into the Tweet, Counsel for the General Counsel (the General Counsel) issued complaint in Case 32-CA-220777 and a Motion to Consolidate Cases to consolidate the complaint in Case 32-CA-220777 with the prior consolidated proceeding in Cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879.  On September 7, Respondent filed a Motion for Summary Judgment in Case 32-CA-220777 only.  On September 11, Administrative Law Judge Amita Tracy (the ALJ) issued an Order Granting the General Counsel's Motion to Consolidate. Pursuant Section 102.24(b) of the Board's Rule and Regulations, the General Counsel files this Opposition to Respondent's Motion for Summary Judgment.

## II.    Respondent's Motion is Procedurally Improper and Should be Dismissed

Section 102.25 of the Board's Rule and Regulations states that the "administrative law judge designated to conduct the hearing shall rule on <u>all motions after the opening of the hearing</u>." (emphasis added).  As noted above, on September 11, the ALJ issued an Order Granting the General Counsel's Motion to Consolidate, which consolidated the complaint in Case 32-CA-220777 with that of the complaint in Cases 32-CA-197020 et al.  Since those complaints were consolidated, and the hearing in the consolidated case is scheduled to resume on September 24, only the ALJ is vested with the authority to rule on Respondent's Motion for Summary Judgment.  Therefore, Respondent's motion is improperly filed before the Board and should be denied on procedural grounds.

---

[3] On May 20, 2018, Musk tweeted, "Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare."

22-60493.3245

22-60493.3246

EXHIBIT NO. GC-1(xxx) RECEIVED_____ REJECTED_____
32-CA-197020
CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 6 DATE: 9-25-18 REPORTER: DM

### III.    Respondent's Motion Should be Dismissed as a Question of Material Fact Exists

It is well settled that for summary judgment to be appropriate, the record must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Security Walls, LLC*, 361 NLRB 348, 348 (2014) (citations omitted).

Contrary to the conclusions noted in its Motion for Summary Judgment, Respondent's Motion—in and of itself—establishes questions of material fact that preclude the granting of summary judgment.  Respondent's Motion references tweets by Musk that occurred after the Tweet.  See Respondent's Motion for Summary Judgment, 3 – 5.  These alleged subsequent tweets, which Respondent proffers in defense to the Section 8(a)(1) allegation in Case 32-CA-220777, are *not* authenticated evidence and were *not* introduced as evidence in the hearing record.  As such, the mere alleged existence of these purported subsequent tweets as non-authenticated evidence creates a material question of fact that precludes summary judgment.

Similarly, Counsel for the General Counsel is entitled to, and intends to, introduce evidence into the record to rebut Respondent's argument that Musk's later tweets or Respondent's press release somehow cured the unlawful nature of the Tweet. The efficacy of such a defense hinges on the existence of the curative statements as well as the dissemination. Again, this creates a question of material fact that precludes granting summary judgment.

Finally, in arguing a Section 8(c) defense, such as contending the Tweet is nothing more than a lawful prediction, Respondent readily admits that there are outstanding questions of material fact. In its Motion for summary Judgment, and quoting *NLRB v. Lenkurt Elec. Co.*, 438 F.2d 1102, 1107 (9th Cir. 1971), Respondent wrote that "[i]n determining whether an employer's communications constitute permissible argument or prohibited threats, the statements must be considered in the context of the factual background in which they were made, and in view of the

3

totality of employer conduct." Given that Respondent admits the Tweet must be examined in its "factual background" and "in view of the totality of [its] conduct" and the parties have yet to put on evidence regarding the Tweet, there exists a question of material fact as to the circumstances surrounding the Tweet, who read the tweet, its dissemination, and the Tweet's relationship to the Union's organizing drive. In short, there is a genuine dispute regarding the scope of what is the proper context and factual background of the Tweet.

Notably, this is not the only time that Respondent admits the need for evidence not in the hearing record. Respondent dedicated an entire section of its Motion for Summary Judgment—"IV(A)(2), Without Context, Mr. Musk's Tweet Is Too Isolated And Ambiguous To Constitute A Threat Or Promise Of Benefit." As noted throughout Respondent's Section IV(A)(2), Responded relies on evidence and context outside of the Tweet in its defense. As noted above, this evidence is not in the hearing record, and therefore, a material question of fact exists.[4]

## IV.    Conclusion

Respondent's Motion for Summary Judgment should be dismissed as it is procedurally improper since the matter is still properly before the ALJ. Regardless, and as noted in Respondent's Motion for Summary Judgment, there exists material questions of fact that preclude the granting of summary judgment.

---

[4] To the extent that Respondent's Motion for Summary Judgment relies on non-Board sworn testimony from Respondent drafted declarations, in which the purported witness was not subject to oath or cross-examination, such evidence should not be found sufficient to ameliorate any of the above-referenced questions of fact.

22-60493.3248

**DATED AT** Oakland, California this 13th day of September 2018.

Noah Garber
Field Attorney
National Labor Relations Board
Region 32
1301 Clay St Suite 300N
Oakland, CA 94612-5224

22-60493.3249

## UNITED STATES OF AMERICA

## BEFORE THE NATIONAL LABOR RELATIONS BOARD

TESLA, INC.

      Charged Party

      and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW), AFL-CIO

      Charging Party

**Case 32-CA-220777**

### AFFIDAVIT OF SERVICE OF CHARGE AGAINST EMPLOYER

I, the undersigned employee of the National Labor Relations Board, state under oath that on May 23, 2018, I served the above-entitled document(s) by post-paid regular mail upon the following persons, addressed to them at the following addresses:

GABY TOLEDANO
CHIEF PEOPLE OFFICER
TESLA, INC.
45500 FREMONT BLVD
FREMONT, CA 94538-6326

MARK S. ROSS, ATTORNEY
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
4 EMBARCADERO CENTER, 17TH FLOOR
SAN FRANCISCO, CA 94111

| May 23, 2018 | Ida Lam, Designated Agent of NLRB |
|---|---|
| Date | Name |

| | /s/ Ida Lam |
|---|---|
| | Signature |

1 (www)

EXHIBIT NO. GC-1(www)____ RECEIVED ____ REJECTED ____

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 2 DATE: 9-25-18 REPORTER: NN

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 32-CA-220777 | Date Filed 05-23-2018 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No |
| d. Address (Street, city, state, and ZIP code) 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Gaby Toledano, Chief People Officer | g. e-Mail gaby@tesla.com |
| | | h Number of workers employed 10,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list

subsections) _____ of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

On May 20, 2018, Tesla, Inc., through its CEO Elon Musk, violated the National Labor Relations Act by threatening to take away employee stock options in retaliation for Tesla employees engaging in protected union activity.  Specifically, Musk stated in a public tweet, "[n]othing stopping Tesla team at our car plant from voting union.  Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing?"  This tweet went out to Musk's 21.8 million twitter followers, has been shared and republished by numerous individuals and media outlets, and remains publicly accessible at the time of this filing.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) 8000 East Jefferson Ave. Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

## 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By *Margo A. Feinberg* (signature of representative or person making charge) | Margo A. Feinberg, Esq., Attorney for Charging Party (Print/type name and title or office, if any) | Tel. No. (323) 655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| Schwartz, Steinsapir, Dohrmann & Sommers LLP 6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048 Address | 5/23/18 (date) | Fax No. (323) 655-4488 |
| | | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

*1 (vvv)*

EXHIBIT NO. GC-1(vvv) RECEIVED ✓ REJECTED

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 2 DATE: 4-25-18 REPORTER: ___

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual

    and

JONATHAN GALESCU, an Individual

    and

RICHARD ORTIZ, an Individual

    and

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO

Cases  32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

32-CA-220777

## **ORDER GRANTING THE GENERAL COUNSEL'S MOTION TO CONSOLIDATE**

On August 23, 2018, the General Counsel moved to consolidate complaint allegations in case 32-CA-220777 to the prior consolidated proceeding (cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879). The complaint, also dated August 23, 2018, based on charges filed by the International Union, United Automobile, Aerospace and Agricultural Workers of American, AFL-CIO (the Union) on May 23, 2018 against Tesla, Inc. (Respondent), adds one Section 8(a)(1) allegation regarding a Twitter statement, dated May 20, 2018, by Respondent's Chief Executive Officer Elon Musk (Musk).[1]

---

[1] The complaint lacks a notice of hearing as indicated by Respondent in its September 7, 2018, opposition to the motion to consolidate. Section 102.15 of the Board's Rules and Regulations states that the complaint should also contain a notice of hearing before an administrative law judge which designates a fixed place and time no sooner than 14 days from the issuance of the complaint. The Board has held that the purpose of Section 102.15 is to mandate the issuance of a complaint by a Regional Director once he or she has determined the unfair labor practice charge has merit. *Van Heusen Co.*, 221 NLRB 732, fn. 1 (1975). As for the reference to the notice of hearing, the Board adopted the administrative law judge's rationale in *Van Heusen Co.* that the notice of hearing need not be issued simultaneously with the issuance of the complaint. The administrative law judge wrote, "There is no reason, however, to mandate a notice of hearing, and Sec. 102.16 indicates clearly that the date of the hearing is [sic] largely

1 (444)

Pursuant to Sections 102.24, 102.25, 102.33, and 102.35 of the Board's Rules and Regulations, once a trial has opened, any motion for consolidation is made to and ruled on by the trial judge. "The judge has the discretion to determine when consolidation, or severance, of any complaint is warranted, considering such factors as the risk that matters litigated in the first proceeding will have to be relitigated in the second and the likelihood of delay if consolidation, or severance, is granted." *Service Employees Local 87 (Cresleigh Management)*, 324 NLRB 774 775-776 (1997); *Affinity Medical Center*, 364 NLRB No. 66 (2016) (judge did not abuse her discretion in denying the General Counsel's motion to consolidate three new complaints with the existing "highly complex 118-page amended consolidated complaint" given that the old and new allegations were not sufficiently intertwined to require consolidation and could be effectively litigated separately, and consolidation would cause significant delay in the ongoing proceeding); *McDonald's USA, LLC*, 363 NLRB No. 91 (2016) (judge did not abuse her discretion in denying motion to sever consolidated complaints against McDonald's and numerous franchisees and to require separate complaints and hearings for each where the General Counsel alleged that they were joint employers).

Respondent opposes the consolidation, and filed an opposition on September 7, 2018, after I issued an order to show cause with a deadline of the same date. In addition, Respondent filed its answer to the complaint in case 32-CA-220777 admitting all factual allegations but denying the General Counsel's legal conclusions. The hearing in this matter (cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879) began on June 11, 2018 in Oakland, California, and adjourned on June 14, 2018, until 9 a.m. on September 24, 2018 in Oakland, California.[2]

In *Affinity Medical Center*, the Board noted that the factors to consider when determining whether to grant a motion to consolidate after a hearing has commenced include the complexity and magnitude of the ongoing consolidated proceedings, the relationship between the current and new allegations, the likelihood of delay if consolidation is granted, the risk that matters litigated would have to be relitigated in a second proceeding, and the potential for conserving resources if the cases were consolidated.

The motion is granted for several reasons considering the above factors. As indicated by the General Counsel, the complaint in case 32-CA-220777 alleges one additional Section 8(a)(1) unlawful statement violation by Respondent. Again, Section 8(a)(1) allegations such as the one at issue in case 32-CA-220777 require an objective analysis, and the subjective perceptions of the employees is not relevant. Thus, this matter should not delay the hearing time already allocated in this matter. In fact, by admitting that the statement was made by Musk, the remaining arguments are purely legal with arguably no additional hearing time needed. Moreover, the relevant facts indicate that the Charging Party conducted a union organizing campaign for at least the past two years. This alleged unlawful statement touches upon such activity. The General Counsel has not rested its case, and Respondent will have ample

---

discretionary with the Regional Director." Id. Respondent has not been prejudiced in anyway by the complaint in case 32-CA-220777 not containing the notice of hearing. Respondent has been on notice of the unfair labor practice charge since May 2018, and the General Counsel made clear that he would seek consolidation with the current consolidated complaint if the charge was found meritorious. This order granting consolidation essentially serves as the notice of hearing in case 32-CA-220777.

[2] The hearing will commence the week of September 24, 2018 and adjourn on September 28, 2018. If additional days are required, the hearing will commence the week of October 9, 2018 with the entire week reserved for the hearing.

2

EXHIBIT NO. GC-1(uuu) RECEIVED ✓ REJECTED_____

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 4 DATE: 9-25-18 REPORTER: DM

22-60493.3256

opportunity in its case-in-chief to address this additional allegation. In addition, the complaint allegations in this matter are not particularly complex or involved. Finally, while the alleged unlawful statement occurred in May 2018, several months after the last allegation in the above-captioned complaint, on balance the relevant factors favor consolidating the case for trial, particularly since Respondent has been on notice for several months of the potential for this unfair labor charge to be consolidated with this complaint. See generally *Service Employees Local 87 (Cresleigh Management)*, 324 NLRB 774 (1997).

**SO ORDERED.**

Date: September 11, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

*Served by facsimile upon the following:*

*For the NLRB:*
Noah Garber, Esq.,
Edris Rodriguez Ritchie, Esq., Fax: (510)637-3315

*For the Respondent:*
Mark S. Ross, Esq.,
Keahn N. Morris, Esq., Fax: (415)434-3947

*For the Charging Party:*
Margo A. Feinberg, Esq.
Daniel E. Curry, Esq.,
Julia Alarcon, Esq. Fax: (323)655-4488

**From:** SM-Nass
**Sent:** Tuesday, September 11, 2018 12:19 PM
**To:** Lee, Vanise J. <Vanise.Lee@nlrb.gov>
**Subject:** [NASS] Scan-To-Fax Completed - vlee-20181811031834.PDF

Your document (vlee-20181811031834.PDF) has been successfully scanned and faxed to the following recipients (+15106373315;+14154343947;+13236554488)
This document is 3 pages long, and was processed in 14.0 seconds (Processing time is calculated based on the time the NxGen Advanced Scanning System (NASS) begins processing the scanned document, to the time the document is faxed.)

3

22-60493.3257

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

**TESLA, INC.**

**and**

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF AMERICA
(UAW), AFL-CIO**

Case   32-CA-220777

Date:   September 11, 2018

<u>**AFFIDAVIT OF SERVICE OF NOTICE OF HEARING**</u>

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Gaby Toledano
Tesla, Inc.
45500 Fremont Blvd.
Fremont, CA  94538-6326
**VIA CERTIFIED MAIL
7015 0920 0001 7784 9613**

Jatinder K. Sharma
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA  94555
**VIA REGULAR MAIL**

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America (UAW), AFL-CIO
8000 E Jefferson Ave.
Detroit, MI  48214
**VIA REGULAR MAIL**

Margo A. Feinberg
Margo Feinberg, Daniel Curvy Schwartz
Steinsapir, Dohrmann & Sommers
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
**VIA REGULAR MAIL**

Attn: Davette Repola
eScribers
7227 N. 16th Street, Suite 207
Phoenix, AZ  85020
**VIA E-MAIL:** davette.repola@escribers.net

National Labor Relations Board
Division of Judges
901 Market St., Suite 485
San Francisco, CA  94103
**E-FILE**

| September 11, 2018 | Ida Lam, Designated Agent of NLRB |
| --- | --- |
| Date | Name |

Signature

*1 (†††)*

EXHIBIT NO. GC-1 (HH) RECEIVED ✓ REJECTED _____

32-CA - 197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 2 DATE: 9-25-18 REPORTER: DM

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

**TESLA, INC.**

  **and**                   **Case 32-CA-220777**

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW), AFL-CIO**

## NOTICE OF HEARING

On August 23, 2018, a Complaint issued in this case alleging Tesla, Inc. (Respondent)

violated the Act. The Complaint issued without a Notice of Hearing because on that same day,

Counsel for the General Counsel filed a Motion to Consolidate Cases requesting that Judge

Tracy consolidate this case with the hearing in Cases 32-CA-197020 et al, scheduled to resume

on September 24, 2018. On September 7, 2018, Respondent filed its opposition to the Motion to

Consolidate Cases. On September 11, 2018, Judge Tracy issued an order granting the Motion to

Consolidate Cases. These cases having been consolidated, I hereby issue this Notice of Hearing.

**PLEASE TAKE NOTICE THAT** on September 24, 2018, at 9:00 a.m., at the Oakland

Regional Office of the National Labor Relations Board located at 1301 Clay Street, Suite 300N,

Oakland, California, and on consecutive days thereafter until concluded, a hearing will be

conducted before an administrative law judge of the National Labor Relations Board. At the

hearing, Respondent and any other party to this proceeding have the right to appear and present

testimony regarding the allegations in this Complaint. The procedures to be followed at the

*1 (sss)*

hearing are described in the attached Form NLRB-4668.    The procedure to request a

postponement of the hearing is described in the attached Form NLRB-4338.


**DATED AT** Oakland, California this 11th day of September 2018.


Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612-5224


Attachments

2

22-60493.3261

EXHIBIT NO. GC-1(55) RECEIVED ✓ REJECTED

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 3 DATE: 9-25-18 REPORTER: DM

22-60493.3262

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| **TESLA, INC.** | Case 32-CA-220777 |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## RESPONDENT TESLA, INC.'S MOTION FOR SUMMARY JUDGMENT

1 (ГГГ)

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTS AND PROCEDURAL BACKGROUND.....................................3

III.  SUMMARY JUDGMENT STANDARDS ...............................................6

IV.  ARGUMENT...........................................................................................7

      A.    Mr. Musk's May 20, 2018 Tweet Is Not A Violation Of Section 8(a)(1) Of The NLRA As A Matter Of Law, Because The Tweet Is Privileged Under Section 8(c) ...............................................................................7

            1.    Mr. Musk's Tweet Was A Lawful Prediction Of The Possible Consequences Of Unionization, Outside Of Tesla's Control ...................10

            2.    Without Context, Mr. Musk's Tweet Is Too Isolated And Ambiguous To Constitute A Threat Or Promise Of Benefit ....................13

      B.    Mr. Musk's May 20, 2018 Tweet Is Not A Violation Of Section 8(a)(1) Of The NLRA As A Matter Of Law, Because The Tweet Is Protected By The First Amendment ...............................................................................14

            1.    *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969) Does Not Permit Speech Restrictions As Broad As The Regional Director Proposes..........17

            2.    Finding Liability On The Basis Of Mr. Musk's Tweet Restricts Far More Speech Than Necessary To Achieve A Compelling State Interest.................................................................................20

            3.    The Board Should Read The NLRA In A Manner Consistent With Tesla's And Mr. Musk's Constitutional Rights .......................................20

V.    CONCLUSION......................................................................................23

22-60493.3264

EXHIBIT NO. GC-1(rrr) RECEIVED ✓ REJECTED

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 33 DATE: 9-25-18 REPORTER: DA

22-60493.3265

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Am. Tissue Corp.*
    336 NLRB 435 (2001) ...........................................................................................9

*Ashcroft v. ACLU*
    542 U.S. 656 (2004)..........................................................................................2, 16

*Bd. of Trs. v. Fox*
    492 U.S. 469 (1989)...............................................................................................21

*Benjamin Coal Co. & Empire Coal Co., Inc.*
    294 NLRB 572 (1989) ............................................................................................8

*Burwell v. Hobby Lobby Stores, Inc.*
    134 S. Ct. 2751 (2014).........................................................................................16

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*
    447 U.S. 557 (1980)...............................................................................................21

*Citizens United v. FEC*
    558 U.S. 310 (2010)..........................................................................................16, 18

*Dow Chem. Co., Tex. Div. v. NLRB*
    660 F.2d 637 (5th Cir. 1981) ..................................................................................7

*DTR Indus., Inc. v. NLRB*
    297 F. App'x 487 (6th Cir. 2008) .........................................................................12

*The Earthgrains Co.*
    338 NLRB 845 (2003) ..........................................................................................23

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*
    485 U.S. 568 (1988)......................................................................................2, 21, 22

*FEC v. Wis. Right to Life, Inc.*
    551 U.S. 449 (2007)...............................................................................................14

*Fla. Steel Corp. v. NLRB*
    587 F.2d 735 (5th Cir. 1979) .............................................................................7, 23

*Frisby v. Schultz*
    487 U.S. 474 (1988)...............................................................................................18

*Int'l Ass'n of Machinists & Aero. Workers v. Haley*
    832 F. Supp. 2d 612 (D.C. Cir. 2011)..............................................................22, 23

22-60493.3266

*Int'l Ass'n of Machinists v. Street*
    367 U.S. 740 (1961) ...................................................................................2, 21

*KSM Indus., Inc.*
    336 NLRB 133 (2001) ...........................................................................10

*Langdale Forest Products Co.*
    335 NLRB 602 (2001) ...........................................................................11

*Lhoist N. Am. of Tennessee, Inc. & United Mine Workers of Am., Dist. 17*
    362 NLRB No. 110 (2015) ......................................................................6

*M. S. P. Indus., Inc.*
    222 NLRB 220 (1976) ...........................................................................14

*Michael's Markets of Canterbury, Inc.*
    274 NLRB 826 (1985) .............................................................................8

*Monfort, Inc. v. NLRB*
    1994 WL 121150 (10th Cir. 1994) ........................................................12

*Montgomery Ward & Co. v. NLRB*
    385 F.2d 760 (8th Cir. 1967) ..................................................................8

*Motor Inn of Perrysburg, Inc. v. NLRB*
    647 F.2d 692 (6th Cir. 1981) ................................................................23

*New York Times Co. v. Sullivan*
    376 U.S. 254 (1964)........................................................................14, 20

*New York v. Ferber*
    458 U.S. 747 (1982)...............................................................................20

*NLRB v. Gen. Tel. Directory Co.*
    602 F.2d 912 (9th Cir. 1979) ................................................................23

*NLRB v. Gissel Packing Co.*
    395 U.S. 575 (1969)...................................................................... passim

*NLRB v. Golub Corp.*
    388 F.2d 921 (2d Cir. 1967)....................................................................8

*NLRB v. Hawthorn Co.*
    404 F.2d 1205 (8th Cir. 1969) .......................................................10, 13

*NLRB v. Lenkurt Elec. Co.*
    438 F.2d 1102 (9th Cir. 1971) ...................................................8, 10, 12

22-60493.3267

*NLRB v. Monfort, Inc.*
  29 F.3d 525 (10th Cir. 1994) ...................................................................12

*NLRB v. Pentre Elec., Inc.*
  998 F.2d 363 (6th Cir. 1993) ....................................................................8

*NLRB v. Va. Elec. & Power Co.*
  314 U.S. 469 (1941) ............................................................................1, 15

*NLRB v. Vill. IX, Inc.*
  723 F.2d 1360 (7th Cir. 1983) ..................................................................9

*Noral Color Corp.*
  276 NLRB 567 (1985) .............................................................................11

*Pease Co. v. NLRB*
  666 F.2d 1044 (6th Cir. 1981) ................................................................13

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
  460 U.S. 37 (1983) ..................................................................................20

*Phoenix Glove Co.*
  268 NLRB 680 (1984) .............................................................................14

*R.A.V. v. City of St. Paul*
  505 U.S. 377 (1992) ................................................................................17

*Reed v. Town of Gilbert*
  135 S. Ct. 2218 (2015) ............................................................................16

*Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*
  605 F.3d 703 (9th Cir. 2009) ..................................................................19

*Salvation Army Residence*
  293 NLRB 944 (1989) .............................................................................14

*Sears, Roebuck & Co.*
  305 NLRB 193 (1991) ....................................................................7, 12, 13

*Sec. Walls, LLC & Int'l Union, Sec., Police & Fire Professionals of Am. (Spfpa)*
  *& Its Local No. 554*
  361 NLRB 348 (2014) ...............................................................................6

*Snyder v. Phelps*
  562 U.S. 443 (2011) .............................................................................2, 15

*St. Louis Car Div. Gen. Steel Indus., Inc. v. NLRB*
  439 F.2d 1145 (8th Cir. 1971) ................................................................13

22-60493.3268

*TCI Cablevision of Washington, Inc.*
   329 NLRB 700 (1999) ...................................................................11, 12

*Thomas v. Collins*
   323 U.S. 516 (1945) ...................................................................1, 15, 22

*Thornhill v. Alabama*
   310 U.S. 88 (1940).......................................................................2, 15

*Trent Tube Co.*
   147 NLRB 538 (1964) ........................................................................8

*Uarco, Inc.*
   286 NLRB 55 (1987) ....................................................................1, 10

*Unifirst Corp.*
   346 NLRB 591 (2006) .......................................................................11

*United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*
   355 NLRB 797 (2010) ..................................................................14, 21

*United Investment Corp.*
   249 NLRB 1058 (1980) .....................................................................10

*United States v. Alvarez*
   617 F.3d 1198 (9th Cir. 2010) ...........................................................20

*United States v. Stevens*
   559 U.S. 460 (2010)..........................................................................17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
   454 U.S. 464 (1982) ..........................................................................14

*Viacom Cablevision*
   267 NLRB 1141 (1983) ....................................................................11

*Walgreen Co.*
   203 NLRB 177 (1973) .......................................................................11

*Weather Shield Mfg., Inc., Millwork Div. v. NLRB*
   890 F.2d 52 (7th Cir. 1989) ..............................................................10

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Title VII of the Civil Rights Act of 1964.................................................19

Federal Rules of Civil Procedure
   Rule 56(a)...........................................................................................6

22-60493.3269

National Labor Relations Act
    § 7.................................................................................................................1, 2, 20
    § 8(a)(1) ........................................................................................................... passim
    § 8(b)(4) .......................................................................................................................22
    § 8(c) ................................................................................................................. passim

United States Constitution First Amendment ....................................................... passim

<u>Other Authorities</u>

National Labor Relations Board Rules and Regulations,
    § 102.24......................................................................................................................6

Eugene Volokh, Comment, Freedom of Speech and Workplace Harassment,
    39 UCLA L. Rev. 1791 (1992) ........................................................................18, 19

22-60493.3270

## I.    <u>INTRODUCTION</u>

Respondent Tesla, Inc. ("Tesla") herby moves the National Relations Labor Board (the "Board") for summary judgment on the Regional Director for Region 32's (the "Regional Director") August 23, 2018 Complaint charging Tesla with a violation of section 8(a)(1) of the National Labor Relations Act (the "Act" or "NLRA") on the basis of a single statement posted by Tesla's Chief Executive Officer, Elon Musk[1], on his personal Twitter account. The "tweet" read as follows: "Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare." This statement did not carry any threat of reprisal or force or promise of benefit to any Tesla employee for engaging in or refraining from any activity protected by Section 7 of the Act, and is thus protected by section 8(c) as a matter of law. To remove any conceivable doubt, Mr. Musk and Tesla provided a subsequent clarification to that effect, thus removing any arguably ambiguity regarding the statement at issue. *See Uarco, Inc.*, 286 NLRB 55, 58 (1987) ("Both the courts and the Board have long held that statements and written materials must be viewed in context and not in isolation").

Furthermore, a construction of sections 7 and 8(a)(1) of the Act that would make Mr. Musk's tweet an unfair labor practice violates the First Amendment to the United States Constitution. Under the First Amendment, employers have a firmly established right to communicate their views about unions, collective bargaining, and labor disputes. *See e.g. NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617-19 (1969); *Thomas v. Collins*, 323 U.S. 516, 537-38 (1945); *NLRB v. Va. Elec. & Power Co.*, 314 U.S. 469, 477 (1941). Although the Supreme Court has recognized that there are limits to this right in the special context of workplace

---

[1] Mr. Musk is also the Chief Executive Officer of a separate entity, SpaceX. Toletti Decl., ¶ 3

22-60493.3271

communications from an employer to an employee, the statement at issue in the Regional

Director's Complaint was posted on an individual agent of Tesla's personal Twitter account and

not directed to any employee. This statement simply did not threaten or coerce any Tesla

employee, or interfere with their section 7 rights. Nor was the statement intended to do so, as

Mr. Musk and Tesla subsequently clarified.

A public statement outside of the workplace regarding a matter of public concern cannot

serve as the basis for an unfair labor practice finding without running afoul of the constitutional

right to think and speak freely. *See Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004) ("the

Constitution demands that content-based restrictions on speech be presumed invalid"); *Snyder v.

Phelps*, 562 U.S. 443, 451-52 (2011) ("speech on public issues occupies the highest rung of the

hierarchy of First Amendment values, and is entitled to special protection") (quoting *Connick v.

Myers*, 461 U.S. 138, 145 (1983)); *Thornhill v. Alabama*, 310 U.S. 88, 104 (1940) ("It does not

follow that the State in dealing with the evils arising from industrial disputes may impair the

effective exercise of the right to discuss freely industrial relations which are matters of public

concern"). Because the NLRA must be read in a manner consistent with the Constitution,

Sections 7, 8(a)(1), & 8(c) cannot be construed to render Mr. Musk's Twitter statement an unfair

labor practice. To do so would clearly run afoul to the First Amendment and constitutional

jurisprudence. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades

Council*, 485 U.S. 568, 575 (1988) ("where an otherwise acceptable construction of a statute

would raise serious constitutional problems, the Court will construe the statute to avoid such

problems"); *see also Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 749, (1961) ("Federal

statutes are to be so construed as to avoid serious doubt of their constitutionality").

22-60493.3272

Because the facts are not in dispute and the only questions before the Board is a legal one (i.e. whether Mr. Musk's May 20, 2018 tweet is protected by section 8(c) and the First Amendment), Tesla is entitled to summary judgment on the Regional Director's Complaint, which should be dismissed in its entirety.

## II.    <u>FACTS AND PROCEDURAL BACKGROUND</u>

Tesla is a Delaware corporation headquartered in Palo Alto, California that specializes in the design and manufacture of electric vehicles and energy storage systems.  Toletti Decl., ¶ 2. Elon Musk is Tesla's Chief Executive Officer.  *Id.* at ¶¶ 2-3.  Mr. Musk maintains a personal account on the social media website Twitter[2] (@elonmusk), which is separate and distinct from Tesla's official twitter account (@Tesla) that it uses to share information about the company.  *Id.* at ¶ 3.

The Charging Party International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW") is a labor organization that has been unsuccessfully attempting to persuade employees at Tesla's Fremont, California and Sparks, Nevada facilities to allow it to represent them.  *Id.* at ¶ 4.

On May 20, 2018, Mr. Musk posted a photo of a rocket made by a different company he heads to his personal Twitter account.  *Id.* at ¶ 5.  The photo generated a large number of responses from other Twitter users.  One user, @dmatkins tweeted a link to an article titled "Report: Tesla Factory Workers Are In Danger Because Elon Musk Hates the Color Yellow." *Id.*  Excluding irrelevant tweets, the following exchange took place:

> @elonmusk:    Tesla factory literally has miles of painted yellow lines & tape. Report about forklifts not beeping is also bs. These are both demonstrably false, but were reported as 'facts' by Reveal."

---

[2] Twitter permits users to post short messages, called "tweets," on its website which can then be read by the public. Tweets can either be posted on their own or as a reply to another user's tweet.

22-60493.3273

@dmatkins137:        Yellow is fine, got it. How about unions? (replying to @elonmusk)

@elonmusk:           Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare. (replying to @dmatkins137)

*Id.* at ¶ 5, Exh. 1.

On May 22, 2018, the thread is picked up by another Twitter account (@ericbrownzzz), which wrote:

@ericbrownzzz:       Hi Elon, why would they lose stock options? Are you threatening to take away benefits from unionized workers? (replying to @elonmusk & @dmatkins137)

Mr. Musk responded:

@elonmusk:           **No, UAW does that**. They want divisiveness & enforcement of 2 class "lords & commoners" system. That sucks. US fought War of Independence to get *rid* of a 2 class system! Managers & workers shd be equal w easy movement either way. Managing sucks btw. Hate doing it so much. (replying to @ericbrownzzz & @dmatkins137)

*Id.* at ¶ 6, Exh. 2 (emphasis added).

One day later, on May 23, 2018, the following Twitter exchange occurred:

@ParkerMalloy:       Should you let your workers unionize? (replying to @elonmusk)

@elonmusk:           I've never stopped a union vote nor removed a union. UAW abandoned this factory. Tesla arrived & gave people back their jobs. They haven't forgotten UAW betrayed them. That's why UAW can't even get people to attend a free BBQ, let alone enough sigs for a vote. (replying to @ParkerMalloy)

@JackallisonLOL:     Yesterday you said they'd lose stock options if they unionized. (Replying to @elonmusk & @ParkerMolloy)

22-60493.3274

| | |
|---|---|
| @AltWouss: | You took that out of context, he clarified that in a response where he believed that UAW does not allow union workers to own stock. (replying to @elonmusk, @jackallisonLOL, & @ParkerMalloy) |
| @elonmusk: | **Exactly. UAW does not have individual stock ownership as part of the compensation at any other company.** (replying to @AltWouss, @jackallisonLOL, & @ParkerMolloy)[3] |

*Id.* at ¶¶ 7-8, Exhs. 3-4 (emphasis added).

The twitter exchanges above were reported by several major media outlets. *Id.* at ¶ 9.

Tesla issued a press statement in response explaining:

"Elon [Musk]'s tweet was simply a recognition of the fact that unlike Tesla, we're not aware of a single UAW-represented automaker that provides stock options or restricted stock units to their production employees, and UAW organizers have consistently dismissed the value of Tesla equity as part of our compensation package. We fundamentally believe it's critical that all employees be owners of Tesla so that everyone is on the same team, with all sharing in the company's success." *Id.*

On May 23, 2018, the UAW filed a charge with the Board alleging that an excerpt from Mr. Musk's May 20, 2018 tweet refencing stock opinions and union dues was an unlawful threat by Tesla to take away employee stock options in retaliation for Tesla employees engaging in union activity. *Id.* at ¶ 10, Exh. 5. The UAW's charge did not reference Mr. Musk's subsequent tweet stating "**No**, UAW does that" in response to the question "Hi Elon, why would they lose stock options? Are you threatening to take away benefits from unionized workers?" *Id.* at ¶ 6, Exh. 2 (emphasis added). The UAW's charge also omitted the critical fact that when another Twitter user on May 23, 2018 stated "You took that out of context, he clarified that in a response where he believed that UAW does not allow union workers to own stock," Mr. Musk responded "**Exactly**. UAW does not have individual stock ownership as part of the compensation at any other company." *Id.* at ¶ 8, Exh. 4 (emphasis added).

---

[3] There is no evidence, and Mr. Musk had no reason to believe, that any of the Twitter users in these exchanges were ever Tesla employees.

22-60493.3275

The Regional Director issued a Complaint on August 23, 2018 alleging that Tesla violated Section 8(a)(1) of NLRA by virtue of Mr. Musk's May 20, 2018 tweet. *Id.* at ¶ 11, Exh. 5. No other claims are alleged. The Regional Director's Complaint omits all of the relevant context of Mr. Musk's tweet, including his subsequent tweets and Tesla's press release stating that Mr. Musk did not threaten union workers with a loss of stock options and that he was simply acknowledging the fact that no UAW contract provides for stock options and that its organizers have dismissed the value of Tesla's equity compensation. *Id.*

## III.    SUMMARY JUDGMENT STANDARDS

Section 102.24 of the Board's Rules and Regulations permit a party to file a motion for summary judgment following the filing of a Complaint. Summary judgment is properly granted when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sec. Walls, LLC & Int'l Union, Sec., Police & Fire Professionals of Am. (Spfpa) & Its Local No. 554*, 361 NLRB 348 (2014) (quoting *Conoco Chemicals Co.*, 275 NLRB 39, 40 (1985)). The Board's summary judgment standard "is identical to the summary judgment standard applicable under the Federal rules." *Lhoist N. Am. of Tennessee, Inc. & United Mine Workers of Am., Dist. 17*, 362 NLRB No. 110 (2015) (M. Miscimarra, concurring); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). In Board proceedings, "summary judgment should be 'properly regarded not as a disfavored procedural shortcut,' but 'as an integral part' of a process designed 'to secure the just, speedy and inexpensive determination of every action.'" *Lhoist*, 362 NLRB No. 110 (M. Miscimarra, concurring) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

22-60493.3276

In opposing a motion for summary judgment, the General Counsel may not rely on "conclusory assertions that summary judgment should be denied" and must instead "identify what genuine disputes as to material facts, if any, warrant a hearing." *Id.* Furthermore, the mere fact that the respondent denies the allegations in a complaint is not grounds to deny a summary judgment motion. *Id.*

The interpretation and construction of a written communication and whether it forms an unfair labor practice are questions of law. *Fla. Steel Corp. v. NLRB*, 587 F.2d 735, 751 (5th Cir. 1979).

IV.    **ARGUMENT**

A.    **Mr. Musk's May 20, 2018 Tweet Is Not A Violation Of Section 8(a)(1) Of The NLRA As A Matter Of Law, Because The Tweet Is Privileged Under Section 8(c)**

Section 8(c) of the NLRA provides:

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c)

Under section 8(c), an employer is free "to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a 'threat of reprisal or force or promise of benefit.'" *Gissel*, 395 U.S. at 618. Furthermore, an employer "may even make a prediction as to the precise effects he believes unionization will have on his company." *Id.* Section 8(c) "at an irreducible minimum protects the right of an employer to state its views, argument, or opinion, and to make truthful statements of existing facts." *Dow Chem. Co., Tex. Div. v. NLRB*, 660 F.2d 637, 644-45 (5th Cir. 1981). Thus, "[a]ny company has a perfect right to be opposed to a union, and such opposition is not an unfair labor practice." *Fla. Steel Corp.*, 587 F.2d at 753; *see also Sears, Roebuck & Co.*,

22-60493.3277

305 NLRB 193, 193 (1991) ("Words of disparagement alone concerning a union or its officials are insufficient for finding a violation of Section 8(a)(1)."). "Only if respondent's words contain[] a 'threat of reprisal' d[o] they go beyond the bounds of" section 8(c) and a "threat of reprisal…means not a prediction that adverse consequences will develop but a threat that they will be deliberately inflicted in return for an injury." *NLRB v. Golub Corp.*, 388 F.2d 921, 928 (2d Cir. 1967).

Section 8(c) reflects a congressional policy that speech about the merits and demerits of unions and collective bargaining "should be vigorous and uninhibited." *NLRB v. Lenkurt Elec. Co.*, 438 F.2d 1102, 1108 (9th Cir. 1971); *see also Trent Tube Co.*, 147 NLRB 538, 541 (1964) ("The Board…will not restrict the right of any party to inform employees of 'the advantages and disadvantages of unions and of joining them' as long as such information is imparted to employees in a noncoercive manner."). The Board has recognized that"[i]t is highly desirable that the employees involved in a union campaign hear all sides of the question in order that they may exercise the informed and reasoned choice that is their right to make." *Michael's Markets of Canterbury, Inc.*, 274 NLRB 826, 826 (1985).

Both the Board and the Courts of Appeal have held that section 8(c) must be given a broad construction. *See e.g. Montgomery Ward & Co. v. NLRB*, 385 F.2d 760, 763 (8th Cir. 1967) ("The right of free speech guaranteed by the First Amendment and § 8(c) of the Act should not be defeated by narrow or strained construction."); *Lenkurt*, 438 F.2d at 1008; *Michael's Markets of Canterbury, Inc.*, 274 NLRB 826, 826 (1985). Additionally, "an employer's predictions of adverse economic consequences are to be deemed presumptively truthful" and the Board bears "the burden of showing that section 8(c) does not protect an employer's predictions of the consequences of unionization when the employer asserts section

22-60493.3278

8(c) as a defense." *NLRB v. Pentre Elec., Inc.*, 998 F.2d 363, 371 (6th Cir. 1993); *see also*

*Benjamin Coal Co. & Empire Coal Co., Inc.*, 294 NLRB 572, 581 (1989).   An employer raising

section 8(c) as a defense need not submit evidence substantiating its predictions of the economic

effects of unionization.   *Pentre Elec.*, 998 F.2d at 371 ("Requiring an employer to

present…evidence to corroborate its predictions would, in our mind, defeat the integral purpose

of section 8(c)"); *NLRB v. Vill. IX, Inc.*, 723 F.2d 1360, 1368 (7th Cir. 1983) ("we do not read

*Gissel* to require the employer to develop detailed advance substantiation" of predictions of the

consequences of unionization).

  In this proceeding, the conduct that the Regional Director's Complaint alleges violates

section 8(a)(1) of the NLRA is Mr. Musk's May 20, 2018 tweet from his *private* Twitter account

*directed to a non-Tesla employee* stating that there is "[n]othing stopping Tesla team at our car

plant from voting union. Could do so tmrw if they wanted.  But why pay union dues & give up

stock options for nothing? Our safety record is 2X better than when plant was UAW &

everybody already gets healthcare."  Toletti Decl., ¶ 11, Exh. 6 at ¶¶ 6-7.  This statement is

plainly an expression of "views, argument, or opinion" and therefore protected by section 8(c)

unless it contains a "threat of reprisal or force or promise of benefit."  29 U.S.C. § 158(c).  The

Complaint is silent as to what the Regional Director believes Mr. Musk's opinion shared on

Twitter is a "threat" or "promise" to do, but the UAW's charge claimed that Tesla "threaten[ed]

to take away employee stock options in retaliation for Tesla employees engaging in protected

union activity" by virtue of Mr. Musk's opinion.  Toletti Decl., ¶ 11, Exh. 5.  This is simply not a

rational construction of Mr. Musk's tweet, particularly in light of his and Tesla's subsequent

clarifications.

22-60493.3279

1.    **Mr. Musk's Tweet Was A Lawful Prediction Of The Possible Consequences Of Unionization, Outside Of Tesla's Control**

The Board has repeatedly held that in determining whether an employer's statement is protected by section 8(c) or constitutes a violation of section 8(a)(1), the entire course of conduct must be considered. *See e.g. Am. Tissue Corp.*, 336 NLRB 435, 442 (2001) ("In determining whether questioned statements are permissible under Section 8(c), the statements must be considered in the context in which they were made and in view of the totality of the employer's conduct."); *KSM Indus., Inc.*, 336 NLRB 133, 133 (2001) ("The Board considers the totality of circumstances in assessing the reasonable tendency of an ambiguous statement or a veiled threat to coerce."); *United Investment Corp.*, 249 NLRB 1058, 1063 (1980) ("in order to evaluate the statements in question, they must be viewed in context"); *Uarco, Inc.*, 286 NLRB at 58 ("Both the courts and the Board have long held that statements and written materials must be viewed in context and not in isolation."). The Ninth Circuit has also held that "[i]n determining whether an employer's communications constitute permissible argument or prohibited threats, the statements must be considered in the context of the factual background in which they were made, and in view of the totality of employer conduct." *Lenkurt*, 438 F.2d at 1107. The Seventh Circuit articulated the rule as: "It is not sufficient that bits and pieces of statements may be later lifted out of context, that the facts and circumstances under which the statements were made and which were known to the employer/employees may be ignored, and that these bits and pieces may then be viewed in vacua as either promises or non-promises." *Weather Shield Mfg., Inc., Millwork Div. v. NLRB*, 890 F.2d 52, 60 (7th Cir. 1989); *see also NLRB v. Hawthorn Co.*, 404 F.2d 1205, 1212 (8th Cir. 1969) ("speech need not be viewed in a vacuum devoid of the circumstances in which it was uttered").

22-60493.3280

Here, when Mr. Musk was asked directly by Twitter user @ericbrownzzz "why would they lose stock options? Are you threatening to take away benefits from unionized workers," he responded "**No**, UAW does that." Toletti Decl., ¶ 6, Exh. 2 (emphasis added). When Twitter user @AltWouss stated a few days later "You took that out of context, he clarified that in a response where he believed that UAW does not allow union workers to own stock," Mr. Musk replied "**Exactly.** UAW does not have individual stock ownership as part of the compensation at any other company." *Id.* at ¶ 8, Exh. 4. Thus, when the entire context of Mr. Musk's tweets are considered (all omitted from the Regional Director's Complaint and UAW's charge), it is beyond dispute that his May 20, 2018 tweet was a lawful predication of the consequences of unionization (i.e. that the UAW would not permit stock options as part of represented employees' compensation package), not a threat.[4] Tesla's press release reiterated that Mr. Musk's "tweet was simply a recognition of the fact that unlike Tesla, we're not aware of a single UAW-represented automaker that provides stock options or restricted stock units to their production employees, and UAW organizers have consistently dismissed the value of Tesla equity as part of our compensation package," further demonstrates that there was no express or implied threat or promise of benefit in the tweet at issue. *Id.* at ¶ 9.

An employer is permitted to make comparisons between the compensation of unionized workers and non-unionized workers and "may offer an opinion, based on such comparisons, that employees would be better off without a union." *Unifirst Corp.*, 346 NLRB 591, 593 (2006); *see also Langdale Forest Products Co.*, 335 NLRB 602, 602 (2001) ("An employer has a right to compare wages and benefits at its nonunion facilities with those received at its unionized locations"); *Viacom Cablevision*, 267 NLRB 1141 (1983); *Walgreen Co.*, 203 NLRB 177, 181

---

[4] The UAW is the only union actively trying to persuade Tesla employees to unionize, so Mr. Musk's May 20, 2018 tweet could not have been referring to the predicted consequences of Tesla's employees "voting union" for some other labor organization.

22-60493.3281

(1973). This lawful message is the only reasonable interpretation of Mr. Musk's May 20, 2018 tweet, when its full context is considered. Indeed, the facts of this proceeding are similar to *Noral Color Corp.*, 276 NLRB 567, 570 (1985), in which the Board held that an employer's statement during a decertification campaign that a stock option plan was available to nonunion employees, and that the union had opposed represented employees' inclusion in the plan, was protected by section 8(c). Similarly, the employer in *TCI Cablevision of Washington, Inc.*, 329 NLRB 700, 700-701 (1999) was permitted to report that its nonunion employees received a 401(k) benefit and that in the past the relevant union "had not successfully negotiated for this benefit."

The Courts of Appeal have reached similar conclusion as the Board. The Ninth Circuit held in *Lenkurt*, 438 F.2d at 1107 that "predictions of possible disadvantages which might arise from economic necessity or because of union demands or union policies" are fully protected by section 8(c). In the tweet at issue here, Mr. Musk simply predicted a disadvantage for employees based on the UAW's policies and likely demands regarding stock options. In *Monfort, Inc. v. NLRB*, 1994 WL 121150, at *16 (10th Cir. 1994), a special master appointed by the Tenth Circuit to determine compliance with a prior judgment found that section 8(c) protected an employer's right to display banners and hand out leaflets stating "Protect Your Profit Sharing. Vote No." The special master held that the employer's challenged statements "simply reiterated the major theme of [the employer]'s response to the Union campaign: namely, that the [union] would not vigorously support profit sharing in contract negotiations, and therefore, a Union victory would place the profit sharing program in grave jeopardy." *Id.*, *aff'd by NLRB v. Monfort, Inc.*, 29 F.3d 525 (10th Cir. 1994). The employer's protected expression in *Monfort* is

22-60493.3282

remarkably similar to Mr. Musk's challenged tweet in that they both suggested that employees could lose a benefit as a result of unionization because the union does not value that benefit.

Furthermore, "only a statement that 'conveys that the employer will act on its own initiative to punish its employees as the result of anti-union animus' falls outside § 8(c)'s protective scope." *DTR Indus., Inc. v. NLRB*, 297 F. App'x 487, 499 (6th Cir. 2008). For this reason, "it is well established that in order for a party to make a threat in violation of Section 8(a)(1) the action threatened must be within its power to carry out." *Sears,* 305 NLRB at 193. In this proceeding Mr. Musk made clear his view that "UAW does that [not allow stock options]" and that "UAW does not have individual stock ownership as part of the compensation at any other company." Toletti Decl., ¶¶ 6 & 8, Exhs. 2 & 4. Because these are predictions of what the UAW will do, not Tesla, they are protected. *Cf. Sears,* 305 NLRB at 193 (employer's predictions of violent activity ascribed to unions protected because no threatened actions by employer); *Hawthorn Co.*, 404 F.2d at 1213-14 ("Although § 8(c) does not protect threats of company force or reprisal, it has not been construed to deny protection to forecasts of dire consequences caused by third parties").

2.    **Without Context, Mr. Musk's Tweet Is Too Isolated And Ambiguous To Constitute A Threat Or Promise Of Benefit**

Even if the Board were to analyze Mr. Musk's tweet stripped of its context and subsequent clarifications, it would not constitute unfair labor practice because it is too isolated and ambiguous to escape the protective shield of section 8(c). Facially, the tweet does not promise or threaten anything; it asks the rhetorical question "why pay union dues & give up stock options for nothing?" Toletti Decl., ¶ 5, Exh. 1. Nothing in the tweet itself indicates how or why Tesla employees might "give up stock option," although Mr. Musk and Tesla later

22-60493.3283

clarified it is because UAW represented employees at other auto manufacturers do not receive stock options as part of their compensation.  Toletti Decl., ¶¶ 6 & 8, Exhs. 2 & 4.

When a statement, like Mr. Musk's tweet, is ambiguous and "an innocent interpretation is clearly consistent with the words used, while a threat is present only by a strained interpretation," the statement is protected.  *Pease Co. v. NLRB*, 666 F.2d 1044, 1048 (6th Cir. 1981).  The Board and Courts of Appeal have repeatedly affirmed the principle that isolated unclear statements cannot form the basis of section 8(a)(1) violation.  *See e.g. St. Louis Car Div. Gen. Steel Indus., Inc. v. NLRB*, 439 F.2d 1145, 1148 (8th Cir. 1971) ("trivial and ambiguous conversations between the employer and an employee cannot form the basis of a § 8(a) (1) violation"); *Phoenix Glove Co.*, 268 NLRB 680, 680 (1984) (statement that employees did not need a union and would be "messing up" if they got one "too vague and ambiguous to rise to the level of a violation of the Act"); *Salvation Army Residence*, 293 NLRB 944, 965 (1989) (employer's statement that it was going to be "rough" if the union was selected was too vague to constitute a threat of force or reprisal); *M. S. P. Indus., Inc.*, 222 N.L.R.B. 220, 241 (1976) (employer's statement that it would "operate its business as it pleased" if union won election "too ambiguous to warrant a finding of interference, restraint, or coercion").

Therefore, Mr. Musk's May 20, 2018 tweet is fully protected by section 8(c) even if it is analyzed in isolation.

**B.    Mr. Musk's May 20, 2018 Tweet Is Not A Violation Of Section 8(a)(1) Of The NLRA As A Matter Of Law, Because The Tweet Is Protected By The First Amendment**

The free speech clause of the First Amendment to the United States Constitution provides that "Congress shall make no law…abridging the freedom of speech." U.S. Const. amend I. "The First Amendment binds the Government as a whole, regardless of which branch is at work in a particular instance," including the Board.  *Valley Forge Christian Coll. v. Ams. United for*

22-60493.3284

*Separation of Church & State*, 454 U.S. 464, 511 (1982); *see also United Bhd. of Carpenters &*

*Joiners of Am., Local Union No. 1506*, 355 NLRB 797, 807 n.35 (2010).  The First Amendment

embodies "a profound national commitment to the principle that debate on public issues should

be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270

(1964).  When interpreting the First Amendment's free speech guarantee, courts "must give the

benefit of any doubt to protecting rather than stifling speech." *FEC v. Wis. Right to Life, Inc.*,

551 U.S. 449, 469 (2007).

   In *Thornhill v. Alabama*, 310 U.S. 88, 103-04 (1940), the Supreme Court held that the

subject of labor relations is a matter of public concern and speech on the topic is protected by the

First Amendment.  *Cf. Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) ("Speech on matters of

public concern is at the heart of the First Amendment's protection.") (quotations omitted).

*Thornhill* held "[i]t does not follow that the [Government] in dealing with the evils arising from

industrial disputes may impair the effective exercise of the right to discuss freely industrial

relations which are matters of public concern." *Thornhill*, 310 U.S. at 104.  A few years later,

the Supreme Court held in *NLRB v. Va. Elec. & Power Co.*, 314 U.S. 469, 477 (1941) that the

First Amendment protects an employer's right to express "its view on labor policies or

problems" and that an employer is "free now as ever to take any side it may choose on this

controversial issue."  Continuing this trend, the Supreme Court in *Thomas v. Collins*, 323 U.S.

516, 537 (1945) held that "[t]he right [] to discuss, and inform people concerning, the advantages

and disadvantages of unions and joining them is protected not only as part of free speech, but as

part of free assembly." *Thomas* made clear that "employers' attempts to persuade to action with

respect to joining or not joining unions are within the First Amendment's guaranty" and that

employer speech on this topic is entitled to "the same protection" as employee speech. *Id.* at

22-60493.3285

537-38. And in *Gissel*, 395 U.S. at 617, the Supreme Court again affirmed "an employer's free speech right to communicate his views to his employees is firmly established and cannot be infringed by a union or the Board" and held that section 8(c) serves to "implement" that right.

Under these principles, imposing liability on Tesla on the basis of Mr. Musk's May 20, 2018 tweet would violate the First Amendment.[5] In contrast to most of the Board's decisions analyzing the scope of sections 8(a)(1) and 8(c) when an employer's speech is at issue, this proceeding does *not* involve employer speech at the workplace directed to employees. The Regional Director in its Complaint is instead proposing that section 8(a)(1) liability should be imposed on Tesla simply because one of its officers used a personal Twitter account to make an ambiguous (later clarified as innocuous) comment on an issue of public concern outside of the workplace and not directed to any employee of Tesla. The implications of the Regional Director's theory are startling. If Tesla could be found responsible for an unfair labor practice on the basis of Mr. Musk's tweet, then every manager of every company will need to be cautious of what they say in any public setting outside of work lest someone get the idea that their speech might conceivably be construed as a section 8(a)(1) violation.

The First Amendment demands much more. "[T]he Constitution demands that content-based restrictions on speech be presumed invalid…and that the Government bear the burden of showing their constitutionality." *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004). Unless a content

---

[5] Tesla is not entitled to any lesser First Amendment protections because it is organized as a corporation. *See Citizens United v. FEC*, 558 U.S. 310, 343 (2010) ("The Court has [] rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not 'natural persons.'"). In *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014), the Court explained that permitting corporations to assert personal rights "protects the [] liberty of the humans who own and control those companies" because "[c]orporations, 'separate and apart from' the human beings who own, run, and are employed by them, cannot do anything at all." The Complaint at issue here is an ideal illustration of this principle as the Regional Director seeks to impose liability on Tesla as a means to censor Mr. Musk's personal speech.

based speech restriction[6] falls within a traditional categorical exception to the First Amendment or satisfies the strict scrutiny test, the restriction is unconstitutional. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 382-383 (1992). In *United States v. Stevens*, 559 U.S. 460, 470-71 (2010), the Supreme Court enumerated the traditional categorical exceptions to the ban on content-based speech restrictions. They are: obscenity, defamation, fraud, incitement, speech integral to criminal conduct, and child pornography. *Id.* Notably absent from this list in an exception for speech by an employer on labor relations. *Stevens* held that additional categories of unprotected speech cannot be recognized unless they are rooted in history and rejected the idea that "[w]hether a given category of speech enjoys First Amendment protection depends upon a categorical balancing of the value of the speech against its societal costs." *Id.* at 470. The Supreme Court held that this proposition "is startling and dangerous" and that "[t]he First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits." *Id.*

1.    ***NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969) Does Not Permit Speech Restrictions As Broad As The Regional Director Proposes**

While generally affirming an employer right to speak on labor issues, the Supreme Court in *Gissel* suggested that employer to employee workplace speech might face greater restrictions than similar speech in other contexts because of "the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *Gissel*, 395 U.S. at 617. *Gissel* held "any assessment of the precise scope of

---

[6] "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). A speech restriction may also be content-based if it cannot "justified without reference to the content of the regulated speech" or was adopted by the government "because of disagreement with the message [the speech] conveys." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U. S. 781, 791 (1989)). The Regional Director's attempted censorship of Mr. Musk's May 20, 2018 tweet is clearly a content based restriction because the purported justification for the restriction is the alleged meaning of Mr. Musk's words.

22-60493.3287

employer expression, of course, must be made in the context of its labor relations setting." *Id.*

To the extent *Gissel* recognized some form of diminished First Amendment protection for employer speech, the rationale is clearly inapplicable to Mr. Musk's tweets. Mr. Musk's tweet was not directed at any employees and was not made at the workplace. In this context, there is no "dependency" between Mr. Musk and his audience and no concern that the audience might "pick up intended implications." *See* Eugene Volokh, Comment, Freedom of Speech and Workplace Harassment, 39 UCLA L. Rev. 1791, 1849-55 (1992) ("*Gissel* was based on the premise that employers' speech is inherently more threatening to employees than the same statements made in other contexts…").

*Gissel* had also noted that in the context of direct employer to employee workplace speech "what is basically at stake is the establishment of a nonpermanent, limited relationship between the employer, his economically dependent employee and his union agent, not the election of legislators or the enactment of legislation whereby that relationship is ultimately defined and where the independent voter may be freer to listen more objectively and employers as a class freer to talk." *Id.* at 617-18. The context of Mr. Musk's public tweet is far more like the second example described in *Gissel* than the first.

Further, the mere fact that some employees of Tesla hypothetically could have seen Mr. Musk's tweet does not take it outside the protection of the First Amendment. If this were the law, it would subject all of Mr. Musk's tweets and public statements to the *Gissel* standard of scrutiny, which is a substantially overbroad burden on Mr. Musk's right to speak his mind in light of *Gisell's* justification for subjecting employer to employee workplace speech to diminished protection. *See Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (a content based speech

22-60493.3288

restriction is constitutional only "if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy.").[7]

In similar contexts, courts have recognized the First Amendment problem with imposing liability on the basis of public speech on a matter of public concern simply because some particular individuals will hear the speaker and be adversely affected.  For example in *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703 (9th Cir. 2009), the Ninth Circuit held that a college could not be held liable under Title VII for refusing to discipline a professor who sent allegedly racially harassing emails over the college's email system.  The Ninth Circuit held that because the emails were on matters of public concern and directed to the entire college, "not racial insults or sexual advances directed at particular individuals," they were fully protected by the first amendment.  *Id.* at 710 ("Kehowski's website and emails were pure speech; they were the effective equivalent of standing on a soap box in a campus quadrangle and speaking to all within earshot"); *see also* Volokh, 39 UCLA L. Rev. 1791 (arguing that liability for workplace harassment based on speech can only be constitutionally imposed on the basis of speech directed at particular individuals).

The rationale of *Rodriguez* is applicable to the Regional Director's Complaint here.  As in *Rodriquez*, the Regional Director seeks to impose liability on Tesla for a widely broadcasted statement on a matter of public concern, not a directly threatening or harassing communication to an employee.  And as in *Rodriguez*, the First Amendment's protections are not overcome simply because some employees might come across the widely broadcast statements and potentially feel

---

[7] Another constitutional problem with premising a violation of section 8(a)(1) on Mr. Musk's May 20, 2018 public tweet is that he would indisputably be permitted to tweet the same exact message if he were not an officer of an employer.  This disparate treatment constitutes impermissible discrimination on the basis of the identity of the speaker.  *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("Prohibited…are restrictions distinguishing among different speakers, allowing speech by some but not others.").

22-60493.3289

threatened or harassed. To impose liability on Tesla in this scenario stretches the rationale of *Gissel* past its breaking point and violates the First Amendment.

### 2.    Finding Liability On The Basis Of Mr. Musk's Tweet Restricts Far More Speech Than Necessary To Achieve A Compelling State Interest

In order for a content based speech restriction to survive the strict scrutiny test, the government "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see also United States v. Alvarez*, 567 U.S. 709 (2012). As noted above, construing sections 8(a)(1) and 8(c) to impose liability on Tesla for Mr. Musk's May 20, 2018 tweet prohibits substantially more speech than necessary to active the objectives of the NLRA, because the tweet was transmitted outside the workplace to the general public and the vast majority of the readers are not persons protected by the Act. For these reasons, a construction of the NLRA that would make Mr. Musk's tweet an unfair labor practice on the part of Tesla sweeps much too broadly and fails to satisfy the strict scrutiny test for content based speech restrictions.[8]

### 3.    The Board Should Read The NLRA In A Manner Consistent With Tesla's And Mr. Musk's Constitutional Rights

A basic principle of statutory construction is that "[f]ederal statutes are to be so construed as to avoid serious doubt of their constitutionality." *Int'l Ass'n of Machinists*, 367 U.S. at 749. This principle has been applied to the NLRA by both the Supreme Court and the Board.

---

[8] The somewhat less exacting standard for commercial speech restrictions is not applicable here, because "the test for identifying commercial speech" is whether the speech "propose[s] a commercial transaction." *Bd. of Trs. v. Fox*, 492 U.S. 469, 473-74 (1989). The tweet at issue did not propose any commercial transaction and was not posted by a commercial Twitter account. Even if Mr. Musk's tweet were construed as commercial speech, it would be fully protected. Regulations on non-misleading commercial speech regarding a lawful product or activity can be sustained only where the government shows the existence of a substantial government interest, that the regulation in question directly advances that interest, and that the restriction on speech is not more extensive than is necessary to serve that interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980). For the reasons explained above, the burden on speech if the Regulation Director's Complaint is successful is much more extensive than is necessary to serve any conceivable substantial government interest.

22-60493.3290

*DeBartolo*, 485 U.S. at 578 ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"); *United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, 355 NLRB 797, 807 fn 35 (2010) ("We…believe that the Board has the authority, indeed, that the Board has a duty, to construe the Act, if possible, so as not to violate the Constitution.")

As described above, any construction of sections 8(a)(1) and 8(c) of the NLRA that render Mr. Musk's May 20, 2018 tweet an unfair labor practice would be unconstitutional. The statutes should therefore be construed in the manner Tesla promotes to save their validity. The Supreme Court in *DeBartolo* applied the constitutional avoidance doctrine in a manner very similar to how Tesla conteds it should be applied here. In *DeBartolo*, the Supreme Court refused to read section 8(b)(4) of the NLRA to prohibit unions from peacefully handing out handbills to customers at a mall encouraging them to not shop there. *DeBartolo*, 485 U.S. 568. The Supreme Court held that the constitutional avoidance rule of statutory interpretation, it could not read section 8(b)(4) to "make an unfair labor practice out of any kind of publicity or communication to the public urging a consumer boycott of employers" and noted that "on the facts of this case, newspaper, radio, and television appeals not to patronize the mall would be prohibited; and it would be an unfair labor practice for unions in their own meetings to urge their members not to shop in the mall."

Like *DeBartolo*, this proceeding also involves an attempt to make a broad swath of protected speech to the general public an unfair labor practice. Because the free speech rights of employers and unions are coextensive, the Board should construe the NLRA to avoid the

22-60493.3291

unconscionable application that the Regional Director's Complaint seeks. *Cf. Thomas*, 323 U.S. at 538 (1945) (employer and employee speech are entitled to "the same protection").

*Int'l Ass'n of Machinists & Aero. Workers v. Haley*, 832 F. Supp. 2d 612 (D.C. Cir. 2011) is also on point. In *Int'l Ass'n of Machinists & Aero. Workers*, the D.C. Circuit invoked the constitutional avoidance principle to construe the NLRA to not prohibit public anti-union statements by the Governor of South Carolina and the Director of the South Carolina Department of Labor, Licensing and Regulation. *Id.* at 634 ("In considering whether the defendants' public statements alone are sufficient to violate the NLRA, the Court is mindful that '[f]ederal statutes are to be so construed as to avoid serious doubt of their constitutionality.'"). As in *Int'l Ass'n of Machinists & Aero. Workers*, the Board must avoid a construction of the NLRA that would prohibit public statements.

Several Board and court decisions have in fact interpreted the NLRA in the manner that Tesla contends it must be read, perhaps mindful of the constitutional issues at stake. For instance, in *NLRB v. Gen. Tel. Directory Co.*, 602 F.2d 912, 918 (9th Cir. 1979) the Board argued that the "test of interference under § 8(a)(1) of the Act does not turn on the employer's motive or whether the coercion is successful or failed," which the Ninth Circuit rejected as a misstatement of the law. The Ninth Circuit held that its precedents establish that "the focus of inquiry must be upon what the motive of the employer in truth was and not upon what the employees might reasonably (although perhaps mistakenly) have assumed the motive to be…" *Id.* (quoting *Free-Flow Packaging Corp. v. NLRB*, 566 F.2d 1124, 1130 (9th Cir. 1978)). Relatedly, the Fifth Circuit in *Fla. Steel Corp.*, 587 F.2d at 751 held that an employer does not violate section 8(a)(1) of the NLRA when there is "no proof that any employee was *actually* coerced or compelled to do anything, nor that his rights were in any way restrained or interfered

22-60493.3292

with." (emphasis added). Furthermore, some decisions have held that an employer cannot violate section 8(a)(1) of the NLRA based on a statement not "directed to" current employees nor communicated "with the intention that it be recommunicated to then current employees." *Motor Inn of Perrysburg, Inc. v. NLRB*, 647 F.2d 692, 695 (6th Cir. 1981) ("The evidence does not suggest that this threat was communicated to the former employees with the intention that it be recommunicated to then current employees. This conduct is clearly not a violation of the Act."); *The Earthgrains Co.*, 338 NLRB 845, 852 (2003) (no section 8(a)(1) violation on the basis of an employer statement when there is "no evidence that this statement was directed to employees or even overheard by any other employee.").

For these reasons, the Board should construe the NLRA to avoid the unconstitutional conclusion that Mr. Musk's May 20, 2018 tweet is violation of section 8(a)(1) of the NLRA.

## V.    CONCLUSION

For all of the foregoing reasons, Tesla is entitled to judgment as a matter of law and respectfully requests that the Board grant its motion for summary judgment and dismiss the Regional Director's Complaint in its entirety.

Dated:  September 7, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

MARK S. ROSS
JOHN D. ELLIS
KEAHN N. MORRIS
and
JATINDER K. SHARMA
Associate General Counsel of Tesla, Inc.

Attorneys for
TESLA, INC.

22-60493.3293

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On September 7, 2018, I served a true copy of the following document(s) described as **RESPONDENT TESLA, INC.'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
E-mail: edris.rodriguezritchie@nlrb.gov
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224
T: (510) 671-3041

Noah J. Garber
E-mail: noah.garber@nlrb.gov
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021

Valerie Hardy-Mahoney
E-mail: valerie.hardy-mahoney@nlrb.gov
Regional Director, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224

Administrative Law Judge Amita Tracy
E-mail: Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

22-60493.3294

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
**Schwartz, Steinsapir, Dohrmann & Sommers, LLP**
**6300 Wilshire Blvd., Suite 2000**
Los Angeles, CA 90048
T: (323) 655-4700

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 7, 2018 at San Francisco, California.

Sarah Smith

22-60493.3295

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| **TESLA, INC.**<br><br>**and**<br><br>**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | Case 32-CA-220777 |

### DECLARATION OF RACHELLE TOLETTI IN SUPPORT OF RESPONDENT TESLA, INC.'S MOTION FOR SUMMARY JUDGMENT

SMRH:487703186.1

1 (999)

I, Rachelle Toletti hereby declare and state:

1.      I am a litigation paralegal manager for Respondent Tesla, Inc. ("Tesla"). I have been employed by Tesla from September 2016 to the present. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Tesla is a Delaware corporation headquartered in Palo Alto, California that specializes in the design and manufacture of electric vehicles and energy storage systems.

3.      Tesla's Chief Executive Officer is Elon Musk. Mr. Musk is also the Chief Executive Officer of a separate entity, SpaceX. Mr. Musk maintains a personal account on the social media website Twitter (@elonmusk), which is separate and distinct from Tesla's official twitter account (@Tesla) that it uses to share information about Tesla.

4.      The Charging Party in this matter, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW"), is a labor organization that has been attempting to persuade employees at Tesla's Fremont, California and Sparks, Nevada facilities to allow it to represent them.

5.      On May 20, 2018, Mr. Musk posted a photo of SpaceX rocket to his personal Twitter account. The photo generated a large number of responses from other Twitter users. One user, @dmatkins tweeted a link to an article titled "Report: Tesla Factory Workers Are In Danger Because Elon Musk Hates the Color Yellow." A true and correct screen shot of a subsequent May 20, 2018 exchange between @elonmusk and Twitter user @dmatkins13 is attached to this declaration as **Exhibit 1. Exhibit 1** is a true and correct representation of how the exchange appeared on September 6, 2018 at approximately 12:30 pm by accessing:

https://twitter.com/dmatkins137/status/998451424546570242

22-60493.3297

EXHIBIT NO. GC-1(999) RECEIVED _____ REJECTED _____
32-CA-197020
CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 23 DATE: 9-25-18 REPORTER: _____

6.      On May 22, 2018 the Twitter thread described above was picked up by Twitter user @ericbrownzzz.  A true and correct screen shot of a May 22, 2018 exchange between @elonmusk and Twitter user @ericbrownzzz is attached to this declaration as **Exhibit 2 Exhibit 2** is a true and correct representation of how the exchange appeared on September 6, · 2018 at approximately 12:30 pm by accessing:

https://twitter.com/ericbrownzzz/status/998984738806386689

7.      On May 23, 2018 another Twitter exchange involving @elonmusk occurred.  A true and correct screen shot of a May 23, 2018 exchange between @elonmusk and Twitter user @ParkerMalloy is attached to this declaration as **Exhibit 3.  Exhibit 3** is a true and correct representation of how the exchange appeared on September 6, 2018 at approximately 12:30 pm by accessing: https://twitter.com/elonmusk/status/999385249720057856

8.      The exchange displayed in **Exhibit 3** was continued on the same day between @elonmusk and Twitter users @jackallisonLOL and @AltWouss.  A true and correct screen shot of a May 23, 2018 exchange between @elonmusk and Twitter users @jackallisonLOL and @AltWouss is attached to this declaration as **Exhibit 4.  Exhibit 4** is a true and correct representation of how the exchange appeared on September 6, 2018 at approximately 12:30 pm by accessing: https://twitter.com/AltWouss/status/999409071450181633

9.      The tweets depicted in **Exhibits 1-4** were reported by several major media outlets. Telsa issued a press statement in responses, which was also reported by several major media outlets, including CNN and CNBC. Tesla's statement was: "Elon's tweet was simply a recognition of the fact that unlike Tesla, we're not aware of a single UAW-represented automaker that provides stock options or restricted stock units to their production employees, and UAW organizers have consistently dismissed the value of Tesla equity as part of our

22-60493.3299

compensation package. We fundamentally believe it's critical that all employees be owners of Tesla so that everyone is on the same team, with all sharing in the company's success."

10.     A true and correct copy of the UAW's May 23, 2018 charge in the above captioned matter is attached to this declaration as **Exhibit 5.**

11.     A true and correct copy of the Regional Director for Region 23's August 23, 2018 Complaint in the above captioned matter is attached to this declaration as **Exhibit 6.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of September, 2018 in Fremont, California.


*/s/ Rachelle Toletti*
RACHELLE TOLETTI

22-60493.3300

# EXHIBIT 1

22-60493.3301



**David Atkins**
@dmatkins137

Follow >

Replying to @elonmusk @ShayneRarma @NASA

## Yellow is fine, got it. How about unions?

11:32 PM · 20 May 2018

**10 Retweets  695 Likes**

💬 13    🔁 10    ♡ 695

Tweet your reply

**Elon Musk** ✓ @elonmusk · May 20

Replying to @dmatkins137 @ShayneRarma @NASA

Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare.

💬 333    🔁 116    ♡ 1.7K

22-60493.3302

# EXHIBIT 2

22-60493.3303

**Eric Brown**
@ericbrownzzz

Follow

Replying to @elonmusk @dmatkins137 and 2 others

Hi Elon, why would they lose stock options? Are you threatening to take away benefits from unionized workers?

10:51 AM · 22 May 2018

23 Retweets  1,289 Likes



◯ 7          ⮁ 23          ♡ 1.3K          ◻

Tweet your reply

**Elon Musk** ✔ @elonmusk · May 22
Replying to @ericbrownzzz @dmatkins137 and 2 others

No, UAW does that. They want divisiveness & enforcement of 2 class "lords & commoners" system. That sucks. US fought War of Independence to get *rid* of a 2 class system! Managers & workers shd be equal w easy movement either way. Managing sucks btw. Hate doing it so much.

◯ 364          ⮁ 87          ♡ 1.1K          ◻

22-60493.3304

# EXHIBIT 3

22-60493.3305



**Parker Molloy** ✔ @ParkerMolloy · May 23
Should you let your workers unionize?

80%  Yes

20%  Yes

8,814 votes • Final results

◯ 80      ⟲ 43      ♡ 239      ✉

**Elon Musk** ✪
@elonmusk

( Follow )  ⌄

Replying to @ParkerMolloy

I've never stopped a union vote nor removed
a union. UAW abandoned this factory. Tesla
arrived & gave people back their jobs. They
haven't forgotten UAW betrayed them. That's
why UAW can't even get people to attend a
free BBQ, let alone enough sigs for a vote.

1:23 PM - 23 May 2018

**219** Retweets  **2,605** Likes     

◯ 93      ⟲ 219      ♡ 2.6K      ✉

# EXHIBIT 4

22-60493.3307



**jack allison** @jackallisonLOL · May 23

Yesterday you said they'd lose stock options if they unionized

○ 7          ⬆ 6          ♡ 182          ✉

**Wooter**
@AltWouss

[ Follow ]  ⌄

Replying to @jackallisonLOL @elonmusk @ParkerMolloy

You took that out of context, he clarified that in a response where he believed that UAW does not allow union workers to own stock.

2:57 PM - 23 May 2018

7 Retweets  227 Likes

○ 4          ⬆ 7          ♡ 227          ✉

Tweet your reply

**Elon Musk** ✔ @elonmusk · May 23                                        ⌄

Replying to @AltWouss @jackallisonLOL @ParkerMolloy

Exactly. UAW does not have individual stock ownership as part of the compensation at any other company.

○ 28          ⬆ 46          ♡ 921          ✉



# EXHIBIT 5

22-60493.3309

FORM EXEMPT UNDER 44 U.S.C 3512

<table>
<tr><td>INTERNET<br>FORM NLRB-501<br>(2-08)</td><td>UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>CHARGE AGAINST EMPLOYER</td><td colspan="2">DO NOT WRITE IN THIS SPACE</td></tr>
<tr><td></td><td></td><td>Case<br>32-CA-220777</td><td>Date Filed<br>05-23-2018</td></tr>
</table>

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br><br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br><br>Gaby Toledano, Chief People Officer | g. e-Mail<br>gaby@tesla.com |
| | | h. Number of workers employed<br>10,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)*                                        of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

On May 20, 2018, Tesla, Inc., through its CEO Elon Musk, violated the National Labor Relations Act by threatening to take away employee stock options in retaliation for Tesla employees engaging in protected union activity.  Specifically, Musk stated in a public tweet, "[n]othing stopping Tesla team at our car plant from voting union.  Could do so tmrw if they wanted.  But why pay union dues & give up stock options for nothing?"  This tweet went out to Musk's 21.8 million twitter followers, has been shared and republished by numerous individuals and media outlets, and remains publicly accessible at the time of this filing.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)*<br>8000 East Jefferson Ave.<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail<br>sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By *Margo A. Feinberg*<br>(signature of representative or person making charge)<br><br>Margo A. Feinberg, Esq.,<br>Attorney for Charging Party<br>*(Print/type name and title or office, if any)* | Tel. No. (323) 655-4700 |
|---|---|
| | Office, if any, Cell No. |
| | Fax No. (323) 655-4488 |
| Schwartz, Steinsapir, Dohrmann & Sommers LLP<br>Address   6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048          5/23/18<br>*(date)* | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# EXHIBIT 6

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

**and**                                                         **Case 32-CA-220777**

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW), AFL-CIO

## COMPLAINT

This Complaint is based on a charge filed by International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO (Charging Party). It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Tesla, Inc. (Respondent) has violated the Act as described below.

1.

The charge in this proceeding was filed by the Charging Party on May 23, 2018, and a copy was served on Respondent by U.S. mail on May 23, 2018.

2.

(a)    At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, with facilities throughout the United States, including an automotive manufacturing facility in Fremont, California, and an automotive battery facility in Sparks, Nevada, has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

1

22-60493.3312

(b)    During the 12-month period ending in June 30, 2018, Respondent, in conducting its operations described above in paragraph 2(a), purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6) and (7) of the Act.

4.

At all material times, the Charging Party has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, Elon Musk has held the position of Chief Executive Officer and has been a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of Respondent within the meaning of Section 2(13) of the Act.

6.

About May 20, 2018, Respondent, by Elon Musk via his Twitter account (@elonmusk), tweeted:

> Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare.

7.

By the conduct described above in paragraph 6, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

22-60493.3313

8.

The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

**WHEREFORE**, as a part of the remedy for the unfair labor practices alleged in paragraph 6, the General Counsel seeks an Order requiring Respondent to post in all of its facilities nationwide any Notice to Employees that may issue in this proceeding. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

<u>**ANSWER REQUIREMENT**</u>

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Complaint. The answer must be **received by this office on or before September 6, 2018, or postmarked on or before September 5, 2018.** Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused

3

on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a Complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Complaint are true.

**DATED AT** Oakland, California this 23rd day of August 2018.

*Valerie Hardy-Mahoney (CJR)*

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

4

22-60493.3315

NATIONAL LABOR RELATIONS BOARD
# NOTICE

Case   32-CA-220777

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in *detail*;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Gaby Toledano
Tesla, Inc.
45500 Fremont Blvd.
Fremont, CA  94538-6326

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America (UAW), AFL-CIO
8000 E Jefferson Ave.
Detroit, MI  48214

Jatinder K. Sharma
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA  94555

Margo A. Feinberg
Margo Feinberg, Daniel Curvy Schwartz
Steinsapir, Dohrmann & Sommers
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On September 7, 2018, I served a true copy of the following document(s) described as **DECLARATION OF RACHELLE TOLETTI IN SUPPORT OF RESPONDENT TESLA, INC.'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
E-mail: edris.rodriguezritchie@nlrb.gov
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224
T: (510) 671-3041

Noah J. Garber
E-mail: noah.garber@nlrb.gov
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021

Valerie Hardy-Mahoney
E-mail: valerie.hardy-mahoney@nlrb.gov
Regional Director, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224

Administrative Law Judge Amita Tracy
E-mail: Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

22-60493.3317

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
**Schwartz, Steinsapir, Dohrmann & Sommers, LLP**
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA 90048
T: (323) 655-4700

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 7, 2018 at San Francisco, California.

Sarah Smith

22-60493.3318

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## TESLA'S OPPOSITION TO THE GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES

SMRH:487683579.1

*1 (PPP)*

22-60493.3319

# **TABLE OF CONTENTS**

**Page(s)**

A.  The Grant or Denial of a Consolidation Motion is a Matter Committed to the Judge's Discretion.................................................................................1

B.  No "Blanket Rule" in Favor of Consolidation Applies in These Circumstances. ........................................................................................2

C.  Each of the Factors Discussed in *Affinity Medical Center I* Weighs Against Consolidation.................................................................................3

    1.  The complexity and magnitude of the ongoing proceeding disfavors consolidation. ..........................................................................4

    2.  Apart from the alleged occurrence of the underling acts during the UAW's two-year-long organizing campaign, there is only a tenuous relationship between the current and new allegations...................6

    3.  Consolidation will unquestionably delay the ongoing proceeding. .............7

    4.  There is no risk that declining to consolidate Case 32-CA-220777 with the ongoing proceeding will require the relitigation of matters in a second proceeding.........................................................................8

    5.  The litigation history of the ongoing proceeding belies any notion that consolidation will potentially conserve resources. ..............................9

D.  Consolidation is Barred by Section 102.15 of the Board's Rules and Regulations. ........................................................................................10

E.  Conclusion. ........................................................................................11

22-60493.3320

EXHIBIT NO. GC-1(ppp) RECEIVED ✓ REJECTED

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 29 DATE: 9-25-18 REPORTER: DA

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Affinity Medical Center*
  364 NLRB No. 66, slip op. (2016)................................................................5, 6, 7

*Affinity Medical Center*
  364 NLRB No. 68, slip op. (2016)................................................................5, 12

*Butler Medical Transport, LLC*
  365 NLRB No. 112 (2017) ................................................................9

*Cresleigh Management, Inc.*
  324 NLRB 777 (1997) ................................................................6

*Indianapolis Glove Co.*
  88 NLRB 986 (1950) ................................................................5

*Jefferson Chemical*
  200 NLRB 992 (1972) ................................................................5

*Knauz BMW*
  358 NLRB No 64 (2012) ................................................................9

*NLRB v. John Kolkka*
  170 F.3d 937 (9th Cir. 1999) ................................................................7, 9

*Peyton Packing*
  129 NLRB 1358 (1961) ................................................................5

*Triple Play Sports Bar and Grille*
  361 NLRB No. 31 (2014) ................................................................9

## FEDERAL STATUTES, RULES & CONSTITUTIONAL PROVISIONS

National Labor Relations Act
  § 7................................................................9, 10
  § 8................................................................9
  § 8(a)(1)................................................................6, 8, 9
  § 8(a)(3)................................................................8
  § 8(c)................................................................4, 9

22-60493.3322

National Labor Relations Board
  Rule § 102.15 ...............................................................................................13, 14
  Rule § 102.33(d) ...................................................................................................5
  Rule § 102.35(a)(6) ...............................................................................................5
  Rule § 102.35(a)(8) ...............................................................................................5

United States Constitution
  First Amendment .............................................................................................4, 9

22-60493.3323

The General Counsel admits that the lone allegation of Case 32-CA-220777 concerns a May 23, 2018 "tweet" made by Respondent Tesla, Inc.'s ("Tesla") Chief Executive Officer Elon Musk on his private Twitter account.[1]  Because a factual hearing is plainly unwarranted, Tesla will be filing a motion for summary judgment imminently with the Board to resolve the novel and complex legal question implicated by Tesla's affirmative defense that Mr. Musk's tweet is protected by § 8(c) of the National Labor Relations Act ("Act") and the First Amendment of the United States Constitution.  Seeking to once again foreclose Tesla from obtaining review by the Board, the General Counsel has moved to consolidate Case 32-CA-220777 with an already unwieldy ongoing proceeding which has been characterized by a series of scheduling difficulties and delays.

Accordingly, Tesla hereby submits its Opposition to the General Counsel's Motion to Consolidate ("Motion" or "Consolidation Motion") the complaint that issued in Case 32-CA-220777 on August 23, 2018 with the above-captioned consolidated cases in 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879 currently pending before Administrative Law Judge Amita Tracy ("Judge Tracy") (collectively, the "ongoing proceeding" or "old allegations").  As discussed in greater detail below, the General Counsel's Motion should be denied because the new allegations are not sufficiently intertwined with the old allegations, can be effectively litigated separately, and their consolidation with the ongoing proceeding will likely result in significant delays.

## A.    THE GRANT OR DENIAL OF A CONSOLIDATION MOTION IS A MATTER COMMITTED TO THE JUDGE'S DISCRETION

After a hearing opens, a designated administrative law judge ("ALJ") is imbued with substantial authority to "regulate the course of the hearing."  Board's Rules § 102.35(a)(6).  To

---

[1] Mr. Musk is also the Chief Executive Officer of a separate entity, SpaceX.

22-60493.3324

that end, an ALJ should direct the hearing so that it is "confined to material issues and conducted with all expeditiousness consonant with due process". *Indianapolis Glove Co.*, 88 NLRB 986, 987 (1950). A designated ALJ is also empowered to dispose of procedural requests, motions or similar matters and, upon motion, may order proceedings consolidated or severed. Board's Rules §§ 102.33(d) & 102.35(a)(8). The grant or denial of a motion to consolidate or sever cases will be upheld on appeal absent a showing that the ruling amounted to an abuse of discretion. *See Affinity Medical Center*, 364 NLRB No. 66, slip op. at 2, (2016) (hereafter "*Affinity Medical Center I*").

## B.   NO "BLANKET RULE" IN FAVOR OF CONSOLIDATION APPLIES IN THESE CIRCUMSTANCES

The General Counsel argues that motions to consolidate are liberally granted when appropriate and necessary to promote administrative and judicial economy and efficiency. GC's Motion, p. 4. In support, he cites to *Peyton Packing*, 129 NLRB 1358, 1360 (1961) and *Jefferson Chemical*, 200 NLRB 992, 994-95 (1972) as standing for the proposition that, "for many years, the Board has instructed that unfair labor practice issues arising from a common set of facts known to the General Counsel are *required* to be consolidated and litigated in a single proceeding". GC's Motion, p. 4. Yet as both the Board and the Courts have repeatedly noted, "*Jefferson Chemical* and *Peyton Packing* apply only to cases involving relitigation of the same conduct." *Affinity Medical Center*, 364 NLRB No. 68, slip op. at 2 (2016) (hereafter "*Affinity Medical Center II*"). Thus, "except in the specific circumstances presented in *Peyton Packing* and *Jefferson Chemical*," there is no "blanket rule in favor of consolidation". *See Cresleigh Management, Inc.*, 324 NLRB 777 (1997).

Here, the General Counsel alleges in Case 32-CA-220777 that a May 23, 2018 "tweet" made by Mr. Musk on his private Twitter account violated § 8(a)(1) of the Act. This "tweet" is

22-60493.3325

not the subject of any issue remotely related to the ongoing proceeding. In fact, the most recent discrete act placed in controversy by the ongoing proceeding occurred in October 2017—roughly 7 months before Mr. Musk's "tweet". Because prosecution of Case 32-CA-220777 in a separate proceeding would not result in relitigation of the *same* conduct at issue in the ongoing proceeding, no "blanket rule in favor of consolidation" applies under *Peyton Packing* and *Jefferson Chemical*.

### C.     EACH OF THE FACTORS DISCUSSED IN *AFFINITY MEDICAL CENTER I* WEIGHS AGAINST CONSOLIDATION

In ruling on a consolidation motion where, like here, relitigation of the *same* conduct is not at issue, an ALJ properly considers such relevant factors as "the complexity and magnitude of the ongoing consolidated proceeding, the relationship between the current and new allegations, the likelihood of delay if consolidation was granted, the risk that matters litigated would have to be relitigated in a second proceeding, and the potential for conserving resources if the cases were consolidated". *See Affinity Medical Center I*, slip. op. at 2. The procedural background of *Affinity Medical Center I* is instructive. In that case, the General Counsel orally moved to consolidate four new complaints that were issued after the commencement of the hearing on a consolidated matter before ALJ Eleanor Laws ("Judge Laws"). *See* Judge Laws' Order, attached hereto as **Exhibit A**. In denying the General Counsel's consolidation motion, Judge Laws thoroughly analyzed the propriety of consolidation with respect to each newly-asserted allegation under the foregoing factors. *See Affinity Medical Center I, supra*, at *id;* Ex. A, pp. 1-10. The Board affirmed Judge Laws' decision on appeal, stating that she "properly considered various relevant factors in her Order, including the complexity and magnitude of the ongoing consolidated proceeding, the relationship between the current and new allegations, the likelihood of delay if consolidation was granted, the risk that matters litigated would have to be

22-60493.3326

relitigated in a second proceeding, and the potential for conserving resources if the cases were consolidated." *Affinity Medical Center I*, *supra*, at *id*.

As set forth below, each of the factors that Judge Laws considered and applied in *Affinity Medical Center I* counsels against consolidating 32-CA-220777 with the ongoing proceeding:

### 1.   The Complexity And Magnitude Of The Ongoing Proceeding Disfavors Consolidation

In her Order denying the General Counsel's consolidation motion, Judge Laws noted that "[a]t some point, new complaints need to be litigated separately (or, perhaps, consolidated with other new complaints) or the current litigation, already unwieldy, will have no end in sight." Ex. A, pp. 2-3. On appeal, the Board stated that she "reasonably determined, among other things, that the allegations of the new complaints were not sufficiently intertwined with those of the highly complex 118-page amended consolidated complaint to require consolidation". *Affinity Medical Center I*, *supra*, at *id*. Legal complexity is also an appropriate basis upon which a consolidation motion may be denied. *See NLRB v. John Kolkka*, 170 F.3d 937 (9th Cir. 1999) ("The NLRB did not err in refusing to consolidate this unfair labor practice proceeding with another unfair labor practice proceeding … The resolution of the related matter required factual findings as to the intent of the employer. In contrast, this case required an adjudication of a legal question which was properly subjected to determination through a summary judgment proceeding. The NLRB's refusal to consolidate separate proceedings involving distinct legal and factual issues is not an abuse of its discretion.")

As a factual matter, the ongoing proceeding is already unwieldy. The at-issue allegations encompass events that took place over a 12-month-period at both Tesla's Fremont, California facility and its Sparks, Nevada facility. They consist of an array of alleged § 8(a)(1) violations, including but not limited to the maintenance of overly broad confidentiality rules, disparate

22-60493.3327

enforcement of workplace apparel restrictions, disparate enforcement of security procedures, attempting to prohibit employees from discussing issues pertaining to workplace safety, and making statements of futility.  They also implicate more than two dozen human resources personnel, guards and supervisors that have wildly varying responsibilities and degrees of authority.  Yet despite the sheer magnitude of these proceedings, there is only one pending allegation that an employee was unlawfully discharged in violation of § 8(a)(3).  The General Counsel nonetheless seeks to enlarge the temporal scope of the ongoing proceeding to 19 months.  Suffice it to say that we have reached the point where new complaints need to be litigated separately as these proceedings have no end in sight.

Consolidation is additionally inappropriate here due to the legal complexity of the new allegations.  Whereas the disposition of the allegations at issue in the on-going proceeding will primarily turn on factual findings as to whether Tesla's alleged supervisors and agents made specifically alleged statements during discrete interactions with employees between October 2016 and October 2017, both Tesla and the General Counsel agree that the scope of the allegations of Case 32-CA-220777 is much more narrowly limited to "an undisputed written statement made by Respondent's admitted Chief Executive Officer".  *See* GC's Motion, p. 5.  Because there are no material facts in dispute regarding the content of the written statement, the context in which it was made, the identity of its source or Mr. Musk's status as Tesla and SpaceX's CEO, Tesla will file a motion for summary judgment with the Board.  Notwithstanding its factual simplicity, the allegation in Case 32-CA-220777 presents complex and novel constitutional questions which are best suited for an analysis directly by the Board.  Thus, similar to the procedural posture of *NLRB v. John Kolkka*, a motion for summary judgment will be imminently filed that presents novel legal questions to the Board.  Consolidation of the new

22-60493.3328

allegation with the ongoing proceeding is therefore inappropriate to the extent that its disposition will ultimately require the Board's answer to a complex legal question. *See NLRB v. John Kolkka*, 170 F.3d 937 (9th Cir. 1999) ("The NLRB's refusal to consolidate separate proceedings involving distinct legal and factual issues is not an abuse of its discretion.").

### 2. Apart From The Alleged Occurrence Of The Underling Acts During The UAW's Two-Year-Long Organizing Campaign, There Is Only A Tenuous Relationship Between The Current And New Allegations

In her denial of the General Counsel's consolidation motion, Judge Laws explained that "the allegations the General Counsel [sought] to consolidate [were] not sufficiently intertwined with the present allegations to merit consolidation." Ex. A, p. 2. Judge Laws accordingly found that this factor counseled against consolidation because the allegations were "distinct" and could be "effectively tried separate and apart from the above-captioned case." *Id.*

The General Counsel repeatedly argues that consolidation is warranted merely because both Case 32-CA-220777 and the ongoing proceeding "involve[] the same parties, namely Respondent and the same Charging Party Union." GC's Motion, p. 5. He further submits that consolidation is warranted because "Case 32-CA-220777 relates to the same course of conduct as the existing cases" insofar as it is a "direct response to the ongoing organizing campaign engaged in by Respondent's employees with the Charging Party." *Id.* By that logic, virtually every charge filed during an ongoing organizing campaign should be consolidated with an ongoing proceeding, regardless of whether the relationship between the allegations actually warrants a consolidated proceeding. Such a presumption runs counter to extant Board law.

Because both Tesla and the General Counsel are seemingly in agreement that there is no dispute as to the material facts as to the allegation in Case 32-CA-220777, a hearing is plainly unwarranted. However, in the unlikely event that the Board denies Tesla's motion for summary judgment and orders a hearing, it would presumably involve testimony by and cross-examination

22-60493.3329

of frankly any employee with a Twitter account regarding the alleged "chilling" effect (and lack thereof) that a May 23, 2018 tweet may have had on the exercise of his or her Section 7 rights. Because the ongoing proceeding pertains to discrete statements and personnel actions occurring only as late as October 2017, the allegations of Case 32-CA-220777 are "distinct" and can be effectively tried separate and apart from the ongoing proceeding. The new allegations are therefore not "sufficiently intertwined" with the allegations of the ongoing proceeding to merit consolidation. This factor accordingly weighs against consolidation.

### 3. Consolidation Will Unquestionably Delay The Ongoing Proceeding

Considering this factor, Judge Laws noted that the June 27-29, 2016 hearing date was "the only 3-day window counsel for the parties were able to find in the relatively near future". Ex. A, p. 2. She further noted that, even before consolidation, the General Counsel's prosecution had taken much longer than expected, and that he had yet to rest. *Id.* She therefore concluded that consolidation would "almost certainly require the scheduling of additional hearing days, further delaying the proceedings in the above-captioned case." *Id.*

Here, the Parties had significant difficulty scheduling the hearing dates in the ongoing proceeding, managing to agree only on June 11-14, September 24-28, and October 9-12, 2018. The General Counsel's prosecution is also well behind schedule, even without consolidation of the new allegations. He spent the vast majority of the first week of trial examining witnesses regarding their interactions with Tesla's security guards as well as Tesla's enforcement of its workplace apparel policies. No testimony has been solicited as to many of the allegations at issue in the ongoing proceeding. The General Counsel has nonetheless managed to place new allegations in issue by virtue of the denial of Tesla's motion to dismiss the Amendment to the Second Amended Consolidated Complaint ("Amendment"). Thus, even without consolidation of Case 32-CA-220770 with the ongoing proceeding, additional hearing time will already be

22-60493.3330

needed to account for the Amendment should the Board ultimately permit its prosecution.[2] Accordingly, because consolidation of Case 32-CA-220777 may require the scheduling of additional hearing days, resulting in further delays to the ongoing proceedings, this factor weighs against consolidation.

4. **There Is No Risk That Declining To Consolidate Case 32-CA-220777 With The Ongoing Proceeding Will Require The Relitigation Of Matters In A Second Proceeding**

With respect to the new complaints issued in the *Affinity Medical Center* cases, Judge Laws concluded that they did not reflect an attempt by the General Counsel to relitigate matters that he had already brought to hearing or otherwise suggest that matters litigated in the first hearing would need to be relitigated in a second hearing. Ex. A, pp. 2, 4 & 5. The Board implicitly agreed by determining that *Jefferson Chemical* and *Peyton Packing* did not apply insofar as "the new allegations in the three complaints [were] factually independent from those under consideration in the current proceeding". *See Affinity Medical Center II*, slip op. at 2 ("As these cases show, *Jefferson Chemical* and *Peyton Packing* apply only to cases involving the relitigation of the same conduct.")

Here, and as discussed in greater detail in Section B., *infra*, the allegations of Case 32-CA-220777 are factually independent from that at issue in the ongoing proceeding, and therefore would not require relitigation in a second proceeding. Accordingly, to the extent that there is no risk that *Jefferson Chemical* and *Peyton Packing* would bar a hearing on the new allegations, this factor counsels against consolidation.

---

[2] Tesla filed a request for special permission to appeal the order denying the motion to dismiss the Amendment.

22-60493.3331

### 5.    The Litigation History Of The Ongoing Proceeding Belies Any Notion That Consolidation Will Potentially Conserve Resources

Analyzing this factor, Judge Laws observed that, "[i]f recent history is any guide whatsoever, there is good reason to believe that more charges and complaints will be forthcoming". Ex. A, p. 2  Judge Laws further noted that the dates for the litigation of the current allegations had been set and reset on three separate occasions, presumably as a result of these new charges and complaints. *Id* at p. 4.  She therefore declined to assume that "consolidation would necessarily conserve resources." *Id.*

Here, the Union has filed 16 separate charges during the course of its organizing campaign against Tesla.  Tesla fully cooperated with the Region during its 14-month long investigation into these charges, providing thousands of pages of documents, submitting multiple position statements in response to the Region's requests for information and evidence and producing approximately 20 confidential witnesses for affidavits. The vast majority of these allegations have been dismissed or withdrawn for lack of merit.  Nonetheless, the Regional Director has in turn issued a Consolidated Complaint, an Amended Consolidated Complaint, a Second Amended Consolidated Complaint, and an Amendment to the Second Amended Consolidated Complaint, all between August 2017 and June 2018.  The hearing has already been rescheduled from November 14, 2017 to June 11, 2018.  With no indication that the UAW will discontinue its organizing campaign against Tesla any time soon, there is by extension no reason to believe that more charges and more complaints are not additionally forthcoming.  Thus, similar to the litigation history forming the backdrop in *Affinity Medical Center I* and *Affinity Medical Center II*, the Parties' litigation history here plainly refutes the General Counsel's argument that consolidation of Case 32-CA-220777 with the ongoing proceeding will conserve any resources whatsoever.

22-60493.3332

## D.   CONSOLIDATION IS BARRED BY SECTION 102.15 OF THE BOARD'S RULES AND REGULATIONS

Section 102.15 of the Board's Rules requires that a Regional Director "issue and serve on all parties a formal complaint…stating the alleged unfair labor practices and containing a Notice of Hearing before an Administrative Law Judge…not less than 14 days after service of the complaint." Notwithstanding this requirement, the complaint issued in Case 32-CA-220777 contains no Notice of Hearing. The General Counsel seemingly requests that Judge Tracy both grant his Consolidation Motion and issue a Notice of Hearing for Case 32-CA-220777 for September 24, 2018, the date the ongoing proceeding is set to resume. *See* GC's Motion, p. 5 ("Here, any notice of hearing issued by the Judge could be issued well before the 14-day requirement and the Respondent has been on notice since May 24, 2018 that counsel [sic] the General Counsel would seek consolidation of any meritorious allegations in Case 32-CA-220777.")

The General Counsel would apparently have Judge Tracy disregard the requirements of Section 102.15 and insert a Notice of Hearing into the complaint in case 32-CA-220777 because he *could have* done so had he so chosen. Unsurprisingly, he provides no legal basis for this request, presumably because there is none. Nor does he explain why he waited three months to issue a complaint on a matter he apparently decided to consolidate with the ongoing proceeding only a day after the UAW filed its charge. Rather, because the General Counsel once again seeks to avoid the procedural requirements which apply to all Board litigants, his failure to comply with Section 102.15 of the Board's Rules serves as an independent basis for denying his Consolidation Motion.

22-60493.3333

E.    **CONCLUSION**

For all the foregoing reasons, Tesla respectfully requests that the General Counsel's

motion to consolidate Case 32-CA-220770 with the ongoing proceeding be DENIED.

Dated:  September 7, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.3334

# EXHIBIT A

22-60493.3335

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

DHSC, LLC, d/b/a AFFINITY MEDICAL CENTER,
COMMUNITY HEALTH SYSTEMS, INC., and/or
COMMUNITY HEALTH SYSTEMS PROFESSIONAL
SERVICES CORPORATION, LLC,
a single employer and/or joint employers, et. al.

and                                                    Cases 08-CA-117890 et al.

CALIFORNIA NURSES ASSOCIATION/NATIONAL
NURSES ORGANIZING COMMITTEE (CNA/NNOC)

## ORDER DENYING THE
## GENERAL COUNSEL'S MOTIONS TO CONSOLIDATE

The General Counsel has asked me to consolidate four new complaints with the consolidated complaint in the above-captioned cases.

Pursuant to Sections 102.24, 102.25, 102.33, and 102.35 of the Board's Rules and Regulations, once a trial has opened, any motion for consolidation is made to and ruled on by the trial judge. "The judge has the discretion to determine when consolidation, or severance, of any complaint is warranted, considering such factors as the risk that matters litigated in the first proceeding will have to be relitigated in the second and the likelihood of delay if consolidation, or severance, is granted." *Service Employees Local 87 (Cresleigh Management)*, 324 NLRB 774 775-776 (1997.)

The hearing in the above-captioned cases opened on February 29, 2016, in Cleveland, Ohio.

### Case 08-CA-167373

After commencement of the hearing, on February 29, 2016, a complaint was issued in Case 08-CA-167373. That complaint alleges that Respondent Affinity violated Section 8(a)(5) and (1) of the National Labor Relations Act (the Act) when it unilaterally offered bargaining-unit employees an employee discount program entitled QHC Benefits Plus and notified the employees retirement plan assets were being transferred to a new retirement plan sponsored by QHCCS, LLC, resulting in employees' inability to make changes to certain investment options for a specified time period. The Complaint further alleges that Respondent Affinity has failed to provide it with information pertaining to the above-referenced changes, most of which request information regarding an entity referred to as "QHC" – an acronym for Quorum Health Corporation. The Complaint alleges similar violations involving Respondents Barstow and

Watsonville, and alleges single/joint employer allegations akin to those in the above-captioned matter.

The General Counsel moved to consolidate Case 08-CA-167373 with the complaint currently being litigated. (Transcript, pp. 64-65). Respondent Affinity opposed the motion, asserting the complaint is barred under *Jefferson Chemical*, 200 NLRB 992 (1972). Respondent Affinity argued that consolidation would subject it to enormous expense and would require a continuance, delaying the proceedings. (Transcript pp. 92-95.)

After careful consideration, I am denying the General Counsel's motion to consolidate Case 08-CA-167373 with the extremely lengthy complaint presently before me. Case 08-CA-167373 involves allegations implicating (though not naming as a respondent) an entity not involved in the already voluminous case presently being litigated.[1]

The General Counsel's prosecution of the Affinity allegations in the amended consolidated complaint before me has taken 9 days, and has yet to be concluded. This is much longer than projected, even without consolidation. I am disinclined to add new allegations, and I find the allegations the General Counsel seeks to consolidate are not sufficiently intertwined with the present allegations to merit consolidation. I further find the new allegations are not an attempt to relitigate matters the General Counsel has already brought to hearing, but instead are separate allegations, many of which involve a different entity, QHC. See *Maremont Corp.*, 249 NLRB 216, 217 (1980).

I note that the hearing for the Watsonville allegations in the complaint presently before me, scheduled to last 3 days without the new allegations, is scheduled for June 27-29, 2016. This is the only 3-day window counsel for the parties were able to find in the relatively near future. Consolidating the allegations in Case 08-CA-167373 with the instant case will almost certainly require the scheduling of additional hearing days, further delaying the proceedings in the above-captioned case. Moreover, Case 08-CA-167373 contains allegations regarding supervisor Kristi Abundis, who is not named in the instant case. Finally, the allegations in the complaint currently before me concern only maintenance of various work rules, failure to bargain over imposition of work rules, and failure to respond to a request for information regarding Watsonville's asserted obligations to a temporary staffing agency. The new allegations are distinct, and can be effectively tried separate and apart from the above-captioned case.

I further find there will be delay in the Barstow portion of the trial, scheduled to commence on May 23, 2016, if consolidation is granted, as discussed fully below in the section regarding consolidation of Case 31-CA-167522.

I also do not find consolidation will necessarily conserve resources. If recent history is any guide whatsoever, there is good reason to believe that more charges and complaints will be forthcoming, including those alleging single/joint employer. At some point, new complaints need to be litigated separately (or, perhaps, consolidated with other new complaints) or the

---

[1] The Respondent's filed a motion to strike portions of the complaint referencing Quorum entities as respondents that had been served with in the instant matter, as they were not pleaded as respondents in the complaint. I granted the Respondents' motion, and the General Counsel conceded no Quorum entity was named as a Respondent. (Transcript pp. 21-24.)

22-60493.3337

current litigation, already unwieldy, will have no end in sight. With regard to the single/joint employer allegations, resources can be conserved down the road by application of the doctrine of *collateral estoppel* where appropriate. See *Great Lakes Chemical Corp.*, 300 NLRB 1024, 1025 and nn. 3 and 4 (1990), enfd. 967 F.2d 624 (D.C. Cir. 1992).

All I am ruling upon is whether the complaint in Case 08-CA-167373 should be consolidated with the instant complaint. I do not, at this juncture, make any finding with regard to whether the complaint is barred by *Jefferson Chemical*.

Based on the foregoing, the General Counsel's motion to consolidate Case 08-CA-167373 with the instant complaint is DENIED.

### Cases 10-CA-167330 and 10-CA-168085

On March 10, 2016, the Regional Director for Region 8 issued an Order Consolidating Cases, Consolidated Complaint, and Notice of Hearing, consolidating Cases 10-CA-167330 and 10-CA-168085, with the above-captioned complaint. Because the trial had already commenced, the General Counsel made a motion to consolidate these complaints with the above-captioned complaint. (Transcript, pp. 2356-2357.) On April 25, 2016, the Respondents opposed the motion, claiming the complaint is barred by *Jefferson Chemical*. The General Counsel filed a response on April 28.

The complaint in Case 10-CA-167330 alleges that Respondent Greenbrier violated Section 8(a)(5) and (1) of the Act by disciplining and then discharging employee Julie Hoffman without engaging in collective bargaining with the National Nurses Organizing Committee (NNOC), by conditioning bargaining over Hoffman's discipline on the NNOC's execution of an indemnification agreement, and by failing to provide requested information in connection with Hoffman's discipline and termination. The complaint further alleges that Respondent Greenbrier bargained with no intention of reaching an agreement at various times between February 27, 2015, and November 13, 2015.

With regard to Respondent Bluefield, the complaint in Case 10-CA-168085 alleges that at various times between March 6, 2015, and November 8, 2015, Respondent Bluefield bargained with no intention of reaching an agreement.

Finally, the complaint in Cases 10-CA-167330 and 10-CA-168085 contains single/joint employer allegations akin to those in the above-captioned matter.

The Greenbrier allegations presently before me concern maintenance of various work rules, failure to bargain over imposition of work rules, threats to employees for engaging in union activity and protected concerted activity, discipline of an employee (not Hoffman) for union and/or protected concerted activities, unilateral implementation of an extra call pay policy for the Intensive Care Unit, unilateral implantation of discipline on an employee (not Hoffman) and failure to provide information related to this discipline. The new allegations regarding Hoffman's discipline and conditioning providing information regarding that discipline on the NNOC's execution of an indemnification agreement is certain to add time to trial preparation and the trial itself. In this regard, I note that Nursing Supervisor Autumn Hayes, who is not named as an alleged supervisor in the above-captioned complaint, is alleged as a supervisor in the Case 10-

3

CA-167330. Likewise, the refusal to bargain to reach a collective-bargaining agreement over an extended period of time is likely to add significant time to trial preparation and to the trial itself. I find the new allegations can easily be tried separate and apart from the above-captioned case.

The Bluefield allegations presently before me concern maintenance of various work rules, failure to bargain over imposition of work rules, prohibitions on distribution, surveillance of union activities, denial of access to certain areas of the facility, prohibitions on discussing union activity, discipline of an employee for union and/or protected concerted activities, failure to bargain before imposing a requirement regarding mandatory time off, which resulted in a loss of pay to certain employees, and failure to provide requested information. The new allegation regarding refusal to bargain to reach a collective-bargaining agreement over an extended period of time, which the General Counsel seeks to consolidate with the instant case, is likely to add significant time to trial preparation and the trial itself. Moreover, it is a relatively distinct allegation, which can be effectively tried separate and apart from the above-captioned case.

With regard to both Greenbrier and Bluefield, it does not appear matters litigated in the first proceeding will have to be relitigated in the second proceeding. See *Cresleigh Management*, above. Moreover, the dates for litigation of the Greenbrier and Bluefield portions of the case, both of which are projected to run up to 10 days, have been set and reset on 3 occasions, even without consideration of the new allegations. For the reasons set forth above with regard to Case 08-CA-167373, I do not find consolidation would necessarily conserve resources.

All I am ruling upon is whether the complaint in Cases 10-CA-167330 and 10-CA-168085 should be consolidated with the instant complaint. I do not, at this juncture, make any finding with regard to whether the complaint is barred by *Jefferson Chemical*.

Based on the foregoing, the General Counsel's motion to consolidate Cases 10-CA-167330 and 10-CA-168085 with the instant complaint is DENIED.

## Compliance Specification in Cases 21-CA-090211 and 21-CA-096065

On March 25, 2016, the General Counsel issued a Compliance Specification in Cases 21-CA-090211 and 21-CA-096065, along with a motion to consolidate the Compliance Specification with the above-captioned complaint. The Compliance Specification concerns a previous trial involving only Respondent Fallbrook. The General Counsel seeks to have the Compliance Specification tacked onto the hearing that is scheduled in Los Angeles, California from May 23-June 3, regarding complaint allegations against Respondent Barstow. The Respondents oppose the location of the hearing on the Compliance Specification, but do not oppose consolidation as long as the hearing takes place in San Diego, California.

I decline to add a Compliance Specification for a Fallbrook case that has already been decided on its merits to the Barstow portion of the instant case for the reasons set forth below in the discussion of the motion to consolidate Case 31-CA-167522. Moreover, because a hearing on the Compliance Specification in Cases 21-CA-090211 and 21-CA-096065 is going to require another trip to San Diego, I see no reason to consolidate it with the instant proceedings. To do so simply invites unnecessary convolution of a case that has been tried separately from its outset.

4

22-60493.3339

## Case 31-CA-167522

On April 8, 2016, a complaint was issued in Case 31-CA-167522. That same day, the General Counsel filed a motion to consolidate that complaint with the above-captioned complaint. The Respondents opposed the motion on April 25, 2016, asserting the complaint is barred by *Jefferson Chemical*.

The complaint in Case 31-CA-167522 alleges that Respondent Barstow violated Section 8(a)(5) and (1) of the Act by unilaterally changing discipline policies for overtime, issuing discretionary discipline to 7 different employees without bargaining, and failing to respond to numerous information requests.

The Barstow allegations presently before me concern maintenance of various work rules, failure to bargain over imposition of work rules, filing of a baseless lawsuit with retaliatory motivation, direct dealing with employees of the bargaining unit, various unilateral changes to employees' wages and working conditions and failure to bargain over their effects, discretionary discharge of an employee without bargaining, numerous allegations of failure to provide requested information (more than 85 enumerated requests, some of which contain lettered subparts), and bargaining with no intention of reaching an agreement over a period of more than 2 years.

Prior to any consolidation, the General Counsel estimated the Barstow allegations in the amended consolidated complaint would take roughly 2 weeks to litigate. The hearing on these allegations is currently scheduled in Los Angeles, California, for May 23-June 3, which is a period of 9 days, taking into account the Memorial Day holiday. It is safe to infer parties have made their travel arrangements, particularly considering the trial bridges the holiday weekend. Consolidating the numerous allegations in Case 31-CA-167522 (along with Case 08-CA-167373, and the Compliance Specification in Cases 21-CA-090211 and 21-CA-096065) with the instant case will almost certainly require the scheduling of additional hearing days, further delaying the proceedings in the above-captioned case.

The allegations in Case 31-CA-167522 are relatively distinct, and can be effectively tried separate and apart from the above-captioned case. It does not appear matters litigated in the first proceeding will have to be relitigated in the second proceeding. For the reasons set forth above with regard to Case 08-CA-167373, in addition to the afore-mentioned scheduling concerns, I do not find consolidation would necessarily conserve resources.

All I am ruling upon is whether the complaint in Case 31-CA-167522 should be consolidated with the instant complaint. I do not, at this juncture, make any finding with regard to whether the complaint is barred by *Jefferson Chemical*.

Based on the foregoing, the General Counsel's motion to consolidate Case 31-CA-167522 with the instant complaint is DENIED.

Both parties seem eager to place *Jefferson Chemical* before me. The General Counsel had previously sought a declaratory ruling that new complaints would not be barred under *Jefferson Chemical*, which I declined to enter, lacking authority to do so. The Respondents now urge me to deny consolidation and dismiss complaints based on *Jefferson Chemical*. Before me are motions

22-60493.3340

to consolidate and responses to those motions, not motions to dismiss. The very act of denying the General Counsel's motions to consolidate divests me of jurisdiction over the complaints for which consolidation was sought, either to adjudicate them, dismiss them, or otherwise rule on them. I likewise decline to rule on the merits of Respondents' affirmative defenses, which include a defense based on *Jefferson Chemical* (along with defenses based on *Noel Canning v. NLRB*, 134 S. Ct. 2550 (2014), and *New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010)), in response to a motion to consolidate. The Respondents of course remain free to file a motion to dismiss any complaints they believe are barred by *Jefferson Chemical* or for any other reason directly with the Board.

Dated: May 2, 2016, San Francisco, California.

Eleanor Laws
Administrative Law Judge

Served by email upon the following:

Counsel for the General Counsel – Region 8

Stephen Pincus, Esq.                      stephen.pincus@nlrb.gov
Aaron Sukert, Esq.                        aaron.sukert@nlrb.gov

Counsel for the General Counsel – Region 9

Daniel Goode, Esq.                        daniel.Goode@nlrb.gov

Counsel for the General Counsel – Region 11

Ashley Banks, Esq.                        ashley.banks@nlrb.gov
Timothy Mearns, Esq.                      timothy.mearns@nlrb.gov
Shannon Meares, Esq.                      shannon.meares@nlrb.gov

Counsel for the General Counsel – Region 21

Robert MacKay, Esq.                       robert.mackay@nlrb.gov

Counsel for the General Counsel – Region 31

Carlos Gonzalez, Esq.                     carlos.gonzalez@nlrb.gov
Amanda Laufer, Esq.                       amanda.laufer@nlrb.gov
Joelle Mervin, Esq.                       joelle.mervin@nlrb.gov

Counsel for the General Counsel – Region 32

Noah Garber, Esq.                         noah.garber@nlrb.gov

6

Counsel for the Respondents

Bryan Carmody, Esq.                          bryancarmody@bellsouth.net
Affinity, Barstow, Bluefield,
Greenbrier, Fallbrook, Watsonville

Carmen DiRienzo, Esq.                        carmen.dirienzo@hotmail.com
Affinity, Barstow, Bluefield,
Greenbrier, Fallbrook, Watsonville

Donald Carmody, Esq.                         doncarmody@bellsouth.net
Affinity, Barstow, Bluefield,
Greenbrier, Fallbrook, Watsonville

Andrew Lammers, Esq.                         andrew.lammers316@gmail.com
Affinity, Barstow, Bluefield,
Greenbrier, Fallbrook, Watsonville

Leonard Sachs, Esq.                          lsachs@howardandhoward.com
CHSI

Tracy Litzinger, Esq.                        tlitzinger@howardandhoward.com
CHSI

Robert Hudson, Esq.                          rhudson@fbtlaw.com
CHSPSC

Katherine R. Cloud, Esq.                     kcloud@rwjplc.com
CHS Community Health Services, Inc.

Steven Chesler, Esq.                         sches415@hotmail.com
Kentucky River

Michael D. Gifford, Esq.                     mgifford@howardandhoward.com
Community Health Systems, Inc.

Patrick McCarthy, Esq.                       pmccarthy@howardandhoward.com
Community Health Systems, Inc.

Counsel for the Charging Parties

Jane Lawhon, Esq.                            jlawhon@calnurses.org
NNOC, CNA, CNA/NNOC

Brendan White Esq.                           bwhite@nationalnursesunited.org

22-60493.3342

NNQC, CNA, CNA/NNOC

Antonia Domingo, Esq.                        adomingo@usw.org
United Steelworkers

Nicole Naro, Esq.                            ndaro@nationalnursesunited.org
NNOC, CNA, CNA/NNOC

Bruce A. Harland, Esq.                       bharland@unioncounsel.net
SEIU

Jacob White, Esq.                            jwhite@unioncounsel.net
SEIU

8

22-60493.3343

**DiCrocco, Brian**

| | |
|---|---|
| **From:** | DiCrocco, Brian |
| **Sent:** | Monday, May 02, 2016 1:57 PM |
| **To:** | Berbower, Amy; David Durham; David Rosenfeld; Willhoite, David B.; E Morton ; Linsday Nicholas , Mark Theodore ; Rob Remar ; Scott Kruse ; Todd Toral |
| **Subject:** | 08-CA-117890 – AFFINITY: ORDER DENYING THE GENERAL COUNSEL'S MOTIONS TO CONSOLIDATE |
| **Attachments:** | Order denying General Counsel's motions to consolidate.pdf |

Dear Counsel,

Please see the attached order.


Brian C. DiCrocco, Legal Tech.
NLRB Division of Judges San Francisco
415-356-5256

22-60493.3344

**DiCrocco, Brian**

---

| | |
|---|---|
| **From:** | DiCrocco, Brian |
| **Sent:** | Monday, May 02, 2016 2:12 PM |
| **To:** | Aaron Sukert, Esq. GC R8; Amanda Laufer, Esq. GC R31; Andrew Lammers, Esq.    R ; Antonia Domingo, Esq. CP; Ashley Banks, Esq. GC R11; Brendan White Esq.   CP; Bruce A. Harland, Esq. CP ; Bryan Carmody, Esq. R; Carlos Gonzalez, Esq. GC R 31 ; Carmen DiRienzo, Esq. R ; Daniel Goode, Esq. GC R 9 ; Donald Carmody, Esq. R ; Jacob White, Esq.   CP; Jane Lawhon, Esq.   CP; Joelle Mervin, Esq. GC R31; Katherine R. Cloud, Esq. R , Leonard Sachs, Esq.   R; Michael D. Gifford, Esq.    R; Nicole Naro, Esq.    CP; Noah Garber, Esq. GC R32; Patrick McCarthy, Esq. R; Robert Hudson, Esq. R; Robert MacKay, Esq. GC R21; Shannon Meares, Esq. GC R 11; Stephen Pincus, Esq.   GC R8; Steven Chesler, Esq.   R; Timothy Mearns, Esq.        GC R11; Tracy Litzinger, Esq.    R |
| **Subject:** | 08-CA-117890 – AFFINITY: ORDER DENYING THE GENERAL COUNSEL'S MOTIONS TO CONSOLIDATE |
| **Attachments:** | Order denying General Counsel's motions to consolidate.pdf |

Dear Counsel,

Please see the attached order.

**Brian C. DiCrocco, Legal Tech.**
**NLRB Division of Judges San Francisco**
**415-356-5256**

22-60493.3345

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On September 7, 2018, I served a true copy of the following document(s) described as **TESLA'S OPPOSITION TO THE GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
E-mail: edris.rodriguezritchie@nlrb.gov
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224
T: (510) 671-3041

Noah J. Garber
E-mail: noah.garber@nlrb.gov
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021

Valerie Hardy-Mahoney
E-mail: valerie.hardy-mahoney@nlrb.gov
Regional Director, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224

Administrative Law Judge Amita Tracy
E-mail: Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

22-60493.3346

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
**Schwartz, Steinsapir, Dohrmann & Sommers, LLP**
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
T: (323) 655-4700

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 7, 2018 at San Francisco, California.

_Sarah Smith_
Sarah Smith

22-60493.3347

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.**<br><br>**and**<br><br>**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | Case 32-CA-220777 |

## RESPONDENT'S ANSWER TO COMPLAINT

Respondent Tesla, Inc. responds to the initial unnumbered paragraphs of the Complaint and denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*

1. Respondent admits the material allegations of paragraph 1.

2. (a) Respondent admits the material allegations of paragraph 2(a).

   (b) Respondent admits the material allegations of paragraph 2(b).

3. Respondent admits the material allegations of paragraph 3.

4. Respondent admits the material allegations of paragraph 4.

5. Respondent admits the material allegations of paragraph 5.

6. Respondent admits the material allegations of paragraph 6.

7. Respondent denies the material allegations of paragraph 7.

8. Respondent denies the material allegations of paragraph 8.

1

*1 (ooo)*

## AFFIRMATIVE DEFENSES

Respondent alleges and asserts the following affirmative defenses, and reserves the right to assert any additional affirmative defenses which become appropriate during the course of these proceedings.

1. The Complaint does not allege facts sufficient to constitute a violation of the National Labor Relations Act.

2. Respondent has not, at any time, interfered with, restrained or coerced employees in the exercise of their Section 7 rights under the Act.

3. Assuming, *arguendo*, that any conduct alleged in the Complaint is found to be unlawful, the remedy requested is inappropriate as a matter of law.

4. Assuming, *arguendo*, that any conduct alleged in the Complaint is found to be unlawful, it is a *de minimis* violation of Act that does not warrant a remedial order or any other relief.

5. The Complaint is improperly pled under the Board's Rules and Regulations.

6. The National Labor Relations Board and the General Counsel have failed to comply with the provisions of the Administrative Procedures Act, including, *inter alia*, 5 U.S.C. §554.

7. Any statements made by Elon Musk via his private Twitter account are protected by Section 8(c) of the Act and the First Amendment of the United States Constitution.

Respondent respectfully requests that the Complaint be dismissed in its entirety and that it be granted such other relief as appropriate.

Dated: September 5, 2018

By: _____

JATINDER K. SHARMA
Attorney for Respondent, Tesla, Inc.

2

EXHIBIT NO. GC-1(000) RECEIVED _____ ✓ REJECTED _____

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 4 DATE: 9-25-18 REPORTER: DM

22-60493.3350

## CERTIFICATE OF SERVICE

I am employed in Alameda County, California. I am over the age of eighteen years and not a party within entitled action.  My business address is 6800 Dumbarton Circle, Fremont, California 94555.

On September 5, 2018, I e-filed with the NLRB and served true copies of the document described as **Respondent Tesla, Inc.'s Answer to Complaint** on the interested parties in this action via e-mail as follows:

Edris Rodriguez Ritchie, Esq.
Field Attorney, NLRB Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612
Edris.RodriguezRitchie@nlrb.gov

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann & Sommers LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA 94008
margo@ssdslaw.com

Dated: September 5, 2018

By: _____
JATINDER K. SHARMA

3

22-60493.3351

1  MARGO A. FEINBERG (100655)
   DANIEL E. CURRY (297412)
2  JULIE S. ALARCÓN (316063)
   SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS, LLP
3  6300 Wilshire Boulevard, Suite 2000
   Los Angeles, California 90048
4  Telephone:  (323) 655-4700
   Fax:  (323) 655-4488
5
6  *Attorneys for Michael Sanchez, Jonathan Galescu, Richard Ortiz, and International Union,*
   *United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO*
7
8                    **UNITED STATES OF AMERICA**
9
          **BEFORE THE NATIONAL LABOR RELATIONS BOARD**
10
              **SAN FRANCISCO DIVISION OF JUDGES**
11
12 TESLA, INC.,                        **Case Nos.**  **32-CA-197020**
                                                      **32-CA-197058**
13            Respondent,                             **32-CA-197091**
                                                      **32-CA-197197**
14     and                                            **32-CA-200530**
                                                      **32-CA-208614**
15 MICHAEL SANCHEZ, an Individual,                    **32-CA-210879**
16            Charging Party,
17     and                             **CHARGING PARTIES' BRIEF IN**
                                       **SUPPORT FOR GENERAL COUNSEL'S**
18 JONATHAN GALESCU, an Individual,    **MOTION TO CONSOLIDATE CASE 32-**
                                       **CA-220777 WITH EXISTING CASES**
19            Charging Party,
20     and
21 RICHARD ORTIZ, an Individual,
22            Charging Party,
23     and
24 INTERNATIONAL UNION, UNITED
   AUTOMOBILE, AEROSPACE AND
25 AGRICULTURAL WORKERS OF
   AMERICA, AFL-CIO,
26
              Charging Party.
27
28

1 (nnn)

22-60493.3352

I

## PRELIMINARY STATEMENT

The General Counsel may move to consolidate an existing case with a related case to have one proceeding in order to avoid unnecessary delay or costs. *Service Employees Union, Local 87,* 324 NLRB 774, 774 (1997). The latest charge in this case presents a textbook case for consolidation.

The most recent charge, Case 32-CA-220777, concerns the same set of operative facts, the same Respondent, Tesla Inc., the same or similar legal issues, and the same witnesses as those in 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879. Compare *Free-Flow Packaging Corp.,* 219 NLRB 925, 932 (1975) to *United States Postal Serv.,* 263 NLRB 357, 367 (1982). The allegations in Case 32-CA-220777 occurred after the existing charges were filed with the National Labor Relations Board and during the pendency of the instant proceedings. In accordance with well-established Board law and practice, the Administrative Law Judge has the authority to consolidate this matter with the pending proceeding. NLRB Rules and Regulations, §§ 102.24 and 102.25; *SEIU Local 87,* 324 NLRB at 775. The General Counsel's Motion to Consolidate should be granted.

## II.

## OPERATIVE FACTS

On March 23, 2018, the Region issued its Third Order Consolidating Cases, Second Amended Consolidated Complaint and Notice of Hearing for Cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879. On August 23, 2018, the Region issued Complaint in Case 32-CA-220777 alleging that Respondent violated Section 8(a)(1) of the National Labor Relations Act when its Chief Executive Officer tweeted:

> *Nothing stopping Tesla team at our car plant from voting union. Could do tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when the plant was UAW & everybody already gets healthcare.*

//

22-60493.3353

EXHIBIT NO. GC-1 (nnn) RECEIVED _____ REJECTED____

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc

NO. OF PAGES: 7 DATE: 9-25-18 REPORTER: DA

1  Also on August 23, 2018, the General Counsel duly served and filed a Motion to

2  Consolidate Case 32-CA-220777 with the above referenced consolidated matter currently

3  pending before Administrative Law Judge Amita Tracy.

4  Cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-

5  200530, 32-CA-208614, 32-CA-210879 and 32-CA-220777 collectively pertain to

6  Respondent interfering with and restraining the rights of the Charging Parties and of

7  Tesla employees generally under Section 7 of the Act between October 2016 and May

8  2018. More particularly, those charges allege that Tesla interfered and restrained the

9  Section 7 rights of Michael Sanchez, Jonathan Galescu, Richard Ortiz, and the United

10  Automobile, Aerospace and Agricultural Workers of America by (1) promulgating and

11  disseminating an unlawful Confidentiality Agreement, (2) restraining and coercing off-

12  duty employees who were engaged in leafleting on Respondent's premises,

13  (3) threatening employees with reprisals for engaging in concerted activity,

14  (4) threatening employees with termination if they distributed stickers, leaflets, or

15  pamphlets, (5) attempting to prohibit employees from discussing safety concerns,

16  (6) maintaining and enforcing rules that prevent employees from wearing Union-related

17  insignia, (7) interrogating employees regarding concerted activities, (8) promulgating

18  rules to prohibit workers from engaging in concerted activity, and (9) discharging and

19  disciplining employees who engaged in concerted activities. The litigation of these cases

20  will require testimony from the same witnesses and will involve the same attorneys and

21  Board agents.

22  ### III

23  ### ARGUMENT

24  **A.   AUTHORITY**

25  The General Counsel may move to consolidate an existing case with related cases, after a

26  hearing has commenced, in order to have one hearing. Rules and Regulations of the National

27  Labor Relations Board, Sections 102.24, 102.25, 102.33(d) and 102.35(a)(8). Under these same

28  Rules and Regulations, the Administrative Law Judge may issue an order consolidating Case 32-

2

22-60493.3355

1  CA-220777 with the currently pending matters. Section 102.33(d) clearly provides the

2  Administrative Law Judge with the authority to "consolidate or sever proceedings after issuance

3  of a complaint" pursuant to Sections 102.24 and 102.25. *SEIU Local 87,* 324 NLRB at 775.

4  **B.**  **THE ALLEGATIONS IN CASE 32-CA-220777 PERTAIN TO THE SAME SET**

5  **OF OPERATIVE FACTS, THE SAME OR SIMILAR LEGAL ISSUES, AND**

6  **THE SAME WITNESSES AS THOSE IN 32-CA-197020, 32-CA-197058, 32-CA-**

7  **197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, AND 32-CA-210879.**

8  The principle of judicial economy requires that Case 32-CA-220777, with the same operative

9  facts, legal issues, and witnesses as the pending cases, be consolidated and heard at the same time

10  as those cases by the same judge while the same witnesses are available for testimony. See, e.g.,

11  *Peyton Packing Co.,* 129 NLRB 1358, 1360 (1961); and compare to *United States Postal Serv.,*

12  263 NLRB 357, 367 (denying consolidation involving different units of employees, different

13  factual backgrounds, and different allegations.) To later re-litigate the allegations arising from

14  the same operative facts would be unfair to Respondent. *Peyton Packing, supra,* at 1360. The

15  delay and extra cost of re-litigating substantially similar allegations is also unfair to witnesses and

16  to the taxpayers. *Macke Laundry Services Co. of DC,* 190 NLRB 1, 6 (1971). By contrast,

17  consolidation avoids duplicative and unnecessary expenditures of Board resources. *SEIU*

18  *Local 87,* 324 NLRB at 774.

19  Case 32-CA-220777 involves the same operative facts: the parties, Tesla Inc. and its

20  employees, and the Union, remain the same. The allegations in Case 32-CA-220777 pertain to

21  the same union organizing drive underway in the pending matter, and impact the same employees

22  at the same facilities.

23  The same legal theories used by the Regional Director in the issuance of 32-CA-220777 also

24  supported the issuance of Complaints in 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-

25  197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879. Specifically, Case 32-CA-220777

26  accuses Respondent of violations of Section 8(a)(1) of the Act: interfering, restraining, or

27  coercing employees in the exercise of the rights guaranteed by Section 7 through its CEO's threat

28  to remove employee stock options should its workers unionize.

22-60493.3356

1   Finally, even though the May 20, 2018 tweet occurred during the pendency of these

2   proceedings, it still involves the same witnesses—some of whom were active Tesla employees at

3   the time of the tweet.  At all times, Mr. Musk served as the CEO of Tesla.  Charging Parties

4   Jonathan Galescu and Jose Moran have yet to testify in the pending proceedings, and both will

5   likely have testimony relevant to the new facts raised in Case 32-CA-220777.  Similarly,

6   Charging Party Union's agents will also testify in both matters.

7   That said, there is no distinguishing factual reason to separate Case 32-CA-220777 from the

8   proceedings currently underway.  It would be a waste of time and resources not to consolidate

9   Case 32-CA-220777 with the pending matter, and so the General Counsel's motion should be

10   granted.

11   **C.      CONSOLIDATION IS APPROPRIATE EVEN WHEN PROCEEDINGS ARE**

12   **UNDERWAY.**

13   There is no sound argument against consolidation while proceedings are underway—it is

14   commonly done.  See e.g., *S.E. Nichols, Inc.,* 284 NLRB 556, 566 (1987); *O'Hare-Midway*

15   *Limousine Service, Inc.,* 295 NLRB 463, 463 (1989); *Foundation for Comprehensive Health*

16   *Services,* 267 NLRB 95, 95 (1983).  Indeed, consolidation has been granted even after

17   proceedings have closed.  *O'Hare-Midway Limousine Service, Inc.,* at 463; *Foundation for*

18   *Comprehensive Health Services,* at 95.

19   **IV**

20   **CONCLUSION**

21   For all the reasons set forth above Charging Parties request that the motion of the General

22   Counsel to consolidate the proceedings in Case 32-CA-220777 with this matter be granted.

23   DATED:        September 5, 2018        SCHWARTZ, STEINSAPIR, DOHRMANN
                                             & SOMMERS LLP
24                                          MARGO A. FEINBERG
                                            DANIEL E. CURRY
25                                          JULIE S. ALARCÓN

26                                          By_____
                                               MARGO A. FEINBERG
27                                          Attorneys for Charging Parties Michael Sanchez,
                                            Jonathan Galescu, Richard Ortiz, and International Union,
28                                          United Automobile, Aerospace and Agricultural Workers of
                                            America, AFL-CIO

4

22-60493.3357

## PROOF OF SERVICE BY MAIL

RENEE CARNES certifies as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5268.

On September 5, 2018, I caused the foregoing document(s) described as **CHARGING PARTIES' BRIEF IN SUPPORT FOR GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASE 32-CA-22077 WITH EXISTING CASES** to be served upon the person(s) shown below as follows:

Edris W.I. Rodriguez-Ritchie
National Labor Relations Board, Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Noah J. Garber
National Labor Relations Board, Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Mark Ross, Esq.
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 17
San Francisco, CA 94111-4158

Administrative Law Judge Amita Tracy
National Labor Relations Board
Division of Judges
901 Market Street, Suite 300
San Francisco, CA 94103

___X___ placing it (them) for collection and mailing on that same date following the ordinary business practices of Schwartz, Steinsapir, Dohrmann & Sommers LLP, at its place of business, located at 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5268. I am readily familiar with the business practices of Schwartz, Steinsapir, Dohrmann & Sommers LLP for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practices the envelope(s) would be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing in the affidavit. (C.C.P. §1013a(3))

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 5, 2018 at Los Angeles, California.

_____
RENEE CARNES

ID 326806

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual

    And

JONATHAN GALESCU,  an Individual

    and

RICHARD ORTIZ, an Individual

    and

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO

Cases  **32-CA-197020**
**32-CA-197058**
**32-CA-197091**
**32-CA-197197**
**32-CA-200530**
**32-CA-208614**
**32-CA-210879**

## ORDER TO SHOW CAUSE REGARDING
## GENERAL COUNSEL'S MOTION TO CONSONLIDATE CASES

    I opened the record in the above matter on June 11, 2018, and adjourned the hearing on June 14, 2018 set to resume on September 24, 2018, at 9 a.m. at the Board's Regional Office in Oakland, California.

    On August 23, 2018, counsel for the General Counsel filed a motion to consolidate case 32-CA-220777 with the above-referenced cases.  The Parties are hereby advised to file a response no later than 12 p.m., September 7, 2018 as to why the General Counsel's motion should not be granted.

    Due to the General Counsel's motion to consolidate, the conference call scheduled for August 29, 2018, at 10 a.m., is cancelled.  The conference call will be re-scheduled for the week of September 10, 2018.

    Date: August 24, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

*1 (mmm)*

22-60493.3359

*Served by facsimile upon the following:*

*For the NLRB:*
Noah Garber, Esq.,  noah.garber@nlrb.gov
Edris W. I. Rodrigues Ritchie, Esq.  edris.rodriguezritchie@nlrb.gov
 Fax: (510)637-3315

*For Respondent:*
Mark S. Ross, Esq.,  mross@sheppardmullin.com
Keahn Morris, Esq.,  kmorris@sheppardmullin.com
 Fax:(415)434-3947

*For the Charging Party:*
Margo A. Feinberg, Esq.,  margo@ssdslaw.com
Daniel E. Curry, Esq.,  dec@ssdslaw.com
Julia Alarcon, Esq.,  jsa@ssdslaw.com
 Fax: (323)655-4488

2

22-60493.3360

EXHIBIT NO. GC-1 (mmm) RECEIVED _____ REJECTED _____

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 3   DATE: 9-25-18   REPORTER: DA

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case 32-CA-197197<br>Case 32-CA-200530<br>Case 32-CA-208614<br>Case 32-CA-210879 |

**Date: August 23, 2018**

## AFFIDAVIT OF SERVICE OF GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Keahn Morris, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**
**VIA EMAIL: kmorris@sheppardmullin.com**

Margo A. Feinberg, Esq.
Daniel Curry, Esq.
Julie Alarcon, Esq.
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margo@ssdslaw.com**
**VIA EMAIL: dec@ssdslaw.com**
**VIA EMAIL: jsa@ssdslaw.com**

National Labor Relations Board
Division of Judges
901 Market St., Suite 485
San Francisco, CA 94103
**E-FILE**

Jatinder K. Sharma Esq.
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA 94555
**Email: jsharma@tesla.com**

| | |
|---|---|
| August 23, 2018 | Ida Lam, Designated Agent of NLRB |
| | Name |
| | *Ida Lam* |
| | Signature |

1 (111)

EXHIBIT NO. GC-1(111)  RECEIVED _____ ✓  REJECTED _____

32-CA-197020

CASE NO. _____  CASE NAME: Tesla, Inc

NO. OF PAGES: 2  DATE: 4-25-18  REPORTER: DA

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

and

MICHAEL SANCHEZ, an Individual

and

JONATHAN GALESCU,  an Individual

and

RICHARD ORTIZ, an Individual

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

Cases 32-CA-197020
      32-CA-197058
      32-CA-197091
      32-CA-197197
      32-CA-200530
      32-CA-208614
      32-CA-210879

## GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES

Counsel for the General Counsel seeks to consolidate the Complaint that issued in Case

32-CA-220777 on August 23, 2018, with the above referenced consolidated matter currently

pending before Administrative Law Judge Amita Tracy (the Judge).

### I.    BACKGROUND AND RELEVANT FACTS

On May 23, 2018, the International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America, AFL-CIO (Charging Party) filed a charge in Case

32-CA-220777 alleging that Respondent violated Section 8(a)(1) of the Act based upon a May

1 (KKK)

1

22-60493.3364

20, 2018, tweet from Respondent's Chief Executive Officer, Elon Musk.[1]  On August 23, 2018, based upon that charge, the Regional Director for Region 32 of the National Labor Relations Board (Regional Director) issued a Complaint alleging that the tweet violated Section 8(a)(1) of the Act.  See Exhibit 1. The tweet was made in reference to the same Union organizing campaign that underlies the violations alleged in the instant consolidated matter. The consolidated matter involves the same Respondent and Union involved in Case 32-CA-220777.

The hearing opened before the Judge on June 11, 2018, the General Counsel's case in chief is still in progress and set to resume on September 24, 2018.

. For the reasons set forth below, Counsel for the General Counsel hereby moves to consolidate Case 32-CA-220777 with the existing consolidated matter.[2]

## II.    LEGAL STANDARD AND DISCUSSION

### A.    The Regional Director is Empowered with the Authority to Issue a Complaint in any Unfair Labor Practice Proceeding.

Under Section 102.15 of the Rules and Regulations of the National Labor Relations Board, as amended, (the Rules and Regulations) the Regional Director retains the sole authority to issue a complaint in an unfair labor practice proceeding.  In the instant case, after an investigation initiated by a charge filed in Case 32-CA-220777, the Regional Director properly exercised her authority and issued a Complaint.

### B.    An Administrative Law Judge is Empowered with the Authority to Consolidate Cases Even After a Hearing Has Commenced.

---

[1] Musk's May 20, 2018 tweet stated: "Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare."

[2] During the first pre-hearing conference call on May 24, 2018, Counsel for the General Counsel advised the Judge and all parties that he would seek to consolidate any meritorious allegations in Case 32-CA-220777 with the pending matter.  At the second pre-hearing conference call on June 6, 2018, Counsel for the General Counsel reiterated this position to the Judge and the parties.

22-60493.3365

EXHIBIT NO. GC-1 (KKK) RECEIVED ✓ REJECTED

32-CA-197020
CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 13 DATE: 9-25-18 REPORTER: DM

Pursuant to Section 102.24, 102.25, 102.33(d), and 102.35(a)(8) of the Rules and Regulations, after the hearing has commenced, the General Counsel may move to consolidate an existing case with a related case in order to have one proceeding in order to avoid unnecessary costs or delay. Under the Rules and Regulations, the administrative law judge is empowered to issue the relief sought herein, namely to order the consolidation of Case 32-CA-220777 with the pending matters currently set to resume on September 24, 2018.

### C. Consolidation of Case 32-CA-220777 with the Existing Cases is Proper, Will Effectuate the Purposes of the Act, and Will Avoid Unnecessary Costs and Delay

Pursuant to principles of fairness and sound administrative practice, well-settled Board law dictates that, whenever practicable, "there be only a single hearing on all outstanding alleged violations of the Act involving the same respondent." *Raytheon Missile Sys. Div., Raytheon Co.,* 279 NLRB 245, 255 (1986) (citing *Peyton Packing Co.,* 129 NLRB 1358, 1360 (1961)). The General Counsel possesses broad discretion in determining which cases to consolidate and may move to consolidate to "effectuate the Act's purposes or to avoid unnecessary costs or delay[.]" *Service Employees Union, Local 87 (Cresleigh Management, Inc.),* 324 NLRB 774, 774 (1997) (citing *Teamsters Overnite Transp. Co.,* 130 NLRB 1020, 1022 (1961)). Consolidation of cases alleviates the administrative troubles of the Board, saves the taxpayers money, and expedites proceedings generally. *Macke Laundry Services Co. of D.C.,* 190 NLRB 1, 6 (1971).

Consolidation is appropriate even when the proceedings are underway or have already closed. See e.g. *O'Hare-Midway Limousine Service, Inc.,* 295 NLRB 463, 463 (1989) (reopening hearing and consolidating case with complaint based on charge filed after close of hearing); *Foundation for Comprehensive Health Services,* 267 NLRB 95, 95 (1983) (following close of hearing and prior to submission of briefs, granting the General Counsel's motion to reopen the hearing and to consolidate cases with subsequently filed complaints). In fact, the

3

Board has countenanced consolidation under far more extreme circumstances than presented here. For example, in *S.E. Nichols, Inc.*, 284 NLRB 556, 566 (1987), the ALJ ordered the consolidation of a newly-issued complaint with a case in which the hearing had already closed. In overruling the respondent's exceptions, the Board held that due process was duly served where "the two cases involve the same parties and factually-related events and both parties had a full and fair opportunity to examine all witnesses and litigate all the issues." *Id.* at fn. 1.

As these cases make clear, motions to consolidate are liberally granted when appropriate and necessary to promote administrative and judicial economy and efficiency. *Washington Heights-West Harlem-Inwood Mental Health Council, Inc.*, 289 NLRB 1122, 1122, fn. 3 (1988), enforcement denied on other grounds, 897 F.2d 1238 (2nd Cir. 1990); *New Surfside Nursing Home*, 330 NLRB 1146, 1151 (2000) (noting that the Board's *Jefferson Chemical* doctrine "reflects a policy aimed at permitting judicial economy and fairness."). Indeed, for many years, the Board has instructed that unfair labor practice issues arising from a common set of facts known to the General Counsel are *required* to be consolidated and litigated in a single proceeding:

> [S]ound administrative practice, as well as fairness to respondents, requires the consolidation of all pending charges into one complaint. The same considerations dictate that, whenever practicable, there be but a single hearing on all outstanding violations of the Act involving the same respondent. To act otherwise results in unnecessary harassment of respondents.

*Peyton Packing*, 129 NLRB at 1360 (internal citations omitted); see also *Jefferson Chemical*, 200 NLRB 992, 994-95 (1972); *Highland Yarn Mills*, 310 NLRB 644, 645 (1993) vacated on other grounds in 315 NLRB 1169 (1994) (where the General Counsel is aware of events that form the basis for amendments to add a new related allegation "the General Counsel must follow that course") (footnote omitted); see also National Labor Relations Board, Division of Judges Bench Book, January 2018, §3-420 (stating "[t]he Board generally disfavors piecemeal litigation.

22-60493.3368

Thus, the General Counsel is expected to consolidate all pending charges into one complaint and litigate all known issues in one case." (citation to *Peyton Packing Co.*, above, and *Jefferson Chemical Co., Inc.*, above, omitted)).

In the instant case, extant Board law favors the consolidation of Case 32-CA-220777 with the instant proceeding. First, Case 32-CA-220777 involves the same parties, namely Respondent and the same Charging Party Union. Second, this Motion is made on the same day the Regional Director has issued the Complaint in Case 32-CA-220777. With the trial in the existing cases set to resume on September 24, 2018, Respondent will not suffer *any* prejudice in preparing its case-in-chief or any defense to the allegation contained in Case 32-CA-220777. Indeed, failure to grant the relief sought herein could result in Respondent having to appear in multiple hearings in October because, at this time, the soonest available hearing date to set a hearing in Case 32-CA-220777 is October 2018. Moreover, as it relates to any prejudice, given the limited scope of the allegation contained in Case 32-CA-220777, an undisputed written statement made by Respondent's admitted Chief Executive Officer, it would stretch credulity for Respondent to argue that it will suffer *any* prejudice by consolidating Case 32-CA-220777 with the instant cases since, for example, Section 102.15 of the Rules and Regulations only requires a notice of hearing to be no "less than 14 days after service of the complaint." Here, any notice of hearing issued by the Judge could be issued well before the 14-day requirement and the Respondent has been on notice since May 24, 2018 that counsel the General Counsel would seek consolidation of any meritorious allegations in Case 32-CA-220777.

Second, the violation alleged in Case 32-CA-220777 relates to the same course of conduct as the existing cases. In particular, the tweet is a direct response to the ongoing organizing campaign engaged in by Respondent's employees with the Charging Party. The facts

5

of Case 32-CA-220777, viewed in this context, demonstrate that they are part of the same unlawful conduct engaged in by Respondent. Thus, in terms of administrative economy and efficiency, it would be counterproductive to hold separate hearings where, as here, the same parties are involved and the conduct alleged in Case 32-CA-220777 is part of the same course of unlawful conduct engaged in by Respondent.

In sum, under the circumstances described in this Motion, the consolidation of the existing cases with Case 32-CA-220777 will effectuate the purposes of the Act and avoid unnecessary costs and delay. Failure to consolidate these cases could needlessly protract litigation, result in two hearings instead of one, and require duplication of evidence.

## III.   CONCLUSION

For the reasons set forth above, Counsel for the General Counsel respectfully requests that this Motion be GRANTED.

**DATED AT** Oakland, California this 23rd day of August 2018.

Edris W.I. Rodriguez Ritchie, Field Attorney
Noah Garber, Field Attorney
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, California 94612-5224

6

22-60493.3370

# EXHIBIT 1

# EXHIBIT 1

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    and                                                                    Case 32-CA-220777

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW), AFL-CIO

## COMPLAINT

This Complaint is based on a charge filed by International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO (Charging Party). It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Tesla, Inc. (Respondent) has violated the Act as described below.

1.

The charge in this proceeding was filed by the Charging Party on May 23, 2018, and a copy was served on Respondent by U.S. mail on May 23, 2018.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, with facilities throughout the United States, including an automotive manufacturing facility in Fremont, California, and an automotive battery facility in Sparks, Nevada, has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

1

(b)    During the 12-month period ending in June 30, 2018, Respondent, in conducting

its operations described above in paragraph 2(a), purchased and received goods valued in excess

of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the

meaning of Sections 2(2), (6) and (7) of the Act.

4.

At all material times, the Charging Party has been a labor organization within the

meaning of Section 2(5) of the Act.

5.

At all material times, Elon Musk has held the position of Chief Executive Officer and has

been a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of

Respondent within the meaning of Section 2(13) of the Act.

6.

About May 20, 2018, Respondent, by Elon Musk via his Twitter account (@elonmusk),

tweeted:

> Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they
> wanted. But why pay union dues & give up stock options for nothing? Our safety record
> is 2X better than when plant was UAW & everybody already gets healthcare.

7.

By the conduct described above in paragraph 6, Respondent has been interfering with,

restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the

Act in violation of Section 8(a)(1) of the Act.

2

8.

The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

**WHEREFORE**, as a part of the remedy for the unfair labor practices alleged in paragraph 6, the General Counsel seeks an Order requiring Respondent to post in all of its facilities nationwide any Notice to Employees that may issue in this proceeding. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

<u>ANSWER REQUIREMENT</u>

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Complaint. The answer must be **<u>received by this office on or before September 6, 2018, or postmarked on or before September 5, 2018.</u>** Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to <u>www.nlrb.gov</u>, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused

22-60493.3374

on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a Complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Complaint are true.

**DATED AT**  Oakland, California this 23rd day of August 2018.


*Valerie Hardy-Mahoney (CJK)*

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224


Attachments

22-60493.3375

NATIONAL LABOR RELATIONS BOARD
## NOTICE

Case   32-CA-220777

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2)  Grounds must be set forth in *detail*;

(3)  Alternative dates for any rescheduled hearing must be given;

(4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Gaby Toledano
Tesla, Inc.
45500 Fremont Blvd.
Fremont, CA  94538-6326

Jatinder K. Sharma
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA  94555

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America (UAW), AFL-CIO
8000 E Jefferson Ave.
Detroit, MI  48214

Margo A. Feinberg
Margo Feinberg, Daniel Curvy Schwartz
Steinsapir, Dohrmann & Sommers
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
### REGION 32

TESLA, INC.

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF AMERICA
(UAW), AFL-CIO

Case 32-CA-220777

Date:  August 23, 2018

## AFFIDAVIT OF SERVICE OF COMPLAINT

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Gaby Toledano
Tesla, Inc.
45500 Fremont Blvd.
Fremont, CA  94538-6326
**VIA CERTIFIED MAIL**
**7015 0920 0001 7784 8944**

Jatinder K. Sharma
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA  94555
**VIA REGULAR MAIL**

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America (UAW), AFL-CIO
8000 E Jefferson Ave.
Detroit, MI  48214
**VIA REGULAR MAIL**

Margo A. Feinberg
Margo Feinberg, Daniel Curvy Schwartz
Steinsapir, Dohrmann & Sommers
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
**VIA REGULAR MAIL**

| August 23, 2018 | Ida Lam, Designated Agent of NLRB |
|---|---|
| Date | Name |

Signature

1 (♪♪♪)

EXHIBIT NO. GC-1(jj) RECEIVED _____ REJECTED _____

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 2 DATE: 9-25-18 REPORTER: _____

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

**TESLA, INC.**

    **and**                                                                                    Case 32-CA-220777

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW), AFL-CIO**

## COMPLAINT

This Complaint is based on a charge filed by International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO (Charging Party). It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Tesla, Inc. (Respondent) has violated the Act as described below.

1.

The charge in this proceeding was filed by the Charging Party on May 23, 2018, and a copy was served on Respondent by U.S. mail on May 23, 2018.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, with facilities throughout the United States, including an automotive manufacturing facility in Fremont, California, and an automotive battery facility in Sparks, Nevada, has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

1                             1 (iii)

22-60493.3379

(b)      During the 12-month period ending in June 30, 2018, Respondent, in conducting

its operations described above in paragraph 2(a), purchased and received goods valued in excess

of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the

meaning of Sections 2(2), (6) and (7) of the Act.

4.

At all material times, the Charging Party has been a labor organization within the

meaning of Section 2(5) of the Act.

5.

At all material times, Elon Musk has held the position of Chief Executive Officer and has

been a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of

Respondent within the meaning of Section 2(13) of the Act.

6.

About May 20, 2018, Respondent, by Elon Musk via his Twitter account (@elonmusk),

tweeted:

> Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they
> wanted. But why pay union dues & give up stock options for nothing? Our safety record
> is 2X better than when plant was UAW & everybody already gets healthcare.

7.

By the conduct described above in paragraph 6, Respondent has been interfering with,

restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the

Act in violation of Section 8(a)(1) of the Act.

2

EXHIBIT NO. GC-1(iii) RECEIVED _____ REJECTED___

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 5 DATE: 9-25-18 REPORTER: DM

22-60493.3381

8.

The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

**WHEREFORE**, as a part of the remedy for the unfair labor practices alleged in paragraph 6, the General Counsel seeks an Order requiring Respondent to post in all of its facilities nationwide any Notice to Employees that may issue in this proceeding. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Complaint. The answer must be **received by this office on or before September 6, 2018, or postmarked on or before September 5, 2018.** Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused

22-60493.3382

on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a Complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Complaint are true.

**DATED AT**  Oakland, California this 23rd day of August 2018.

*Valerie Hardy-Mahoney (CBK)*
Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612-5224

Attachments

4

22-60493.3383

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual

    And

JONATHAN GALESCU,  an Individual

    and

RICHARD ORTIZ, an Individual

    and

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO

Cases  **32-CA-197020**
**32-CA-197058**
**32-CA-197091**
**32-CA-197197**
**32-CA-200530**
**32-CA-208614**
**32-CA-210879**

## ORDER DENYING RESPONDENT'S MOTION TO DISMISS

On June 4, 2018, the Regional Director for Region 32 issued an amendment to the second consolidated complaint in this matter which was set for hearing beginning on June 11, 2018. This amendment, at complaint paragraph 7(y), alleges, in part, that Elon Musk (Musk) on June 7, 2017 solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity and informed employees that it would be futile for them to select a union as their bargaining representative by telling the employees they did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances. The amendment also alleges that on June 7, 2017, Gaby Toledano (Toledano) restrained and coerced employees from engaging in union organizational activities by telling them that no one

1 (hhh)

22-60493.3384

at Respondent's facility wanted a union and asking them why employees would want to pay union dues. The amendment, at paragraph 8(d), further clarifies the date Respondent issued a disciplinary warning to Jose Moran (Moran). Respondent appears to seek to dismiss the allegations against Musk and Toledano. On June 18, 2018, Respondent filed a timely answer to the amendment, denying the allegations in complaint paragraph 7(y) but admitting to the allegations in complaint paragraph 8(d).

At the start of the hearing, on June 11, 2018, Respondent motioned to dismiss the June 4, 2018, amendment to the second consolidated complaint. Respondent raised a number of reasons as to why its motion to dismiss should be granted. Due to Respondent's lengthy motion, I permitted the General Counsel and the Charging Party to file any opposition to the motion to dismiss by June 22, 2018. Both the General Counsel and the Charging Party filed timely oppositions. Respondent filed a reply.

Upon reviewing the parties' filings, I deny Respondent's motion to dismiss without prejudice. Under Section 102.17 of the National Labor Relations Board's (the Board) Rules and Regulations, the Regional Director may amend the complaint "as may be deemed just, prior to the hearing." As the Regional Director acted within her authority, I have no authority to overturn her decision to amend the complaint. Thus, the remaining issue is whether the amended complaint allegations "arise from the same factual situation or sequence of events" as the timely filed charges. See *Redd-I, Inc.,* 290 NLRB 1115, 1116 (1988); *Charter Communications, LLC,* 366 NLRB No. 46, slip op. at 2 (2018), reconsideration denied by unpub. Board order issued June 7, 2018 (2018 WL 2761559). In this regard, Respondent's motion to dismiss fails to establish the absence of a genuine issue of material fact, or that it is entitled to judgment as a matter of law. See *Security Walls, LLC,* 361 NLRB 348, 349 (2014). Specifically, Respondent has failed to demonstrate that no genuine material issue of fact remains in dispute regarding the

2

EXHIBIT NO. G C-1 (hhh) RECEIVED _____ REJECTED —

32-CA-197020

CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 4 DATE: 9-25-18 REPORTER: D.A

amended allegations, which are denied by Respondent, and therefore their relationship to the timely-filed charges. As such, dismissal of these amendments is not appropriate at this time.[1] The parties should be prepared to fully litigate the merits of the amended allegations when the trial resumes on September 24, 2018, in Oakland, California.

**SO ORDERED.**

Date: August 10, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

*Served by e-mail upon the following:*

Edris W. Rodriguez, Esq., Email: Edris.RodriguezRitchie@nlrb.gov
Noah Garber, Esq., Email: noah.garber@nlrb.gov
(NLRB)

Mark S. Ross, Esq., MRoss@sheppardmullin.com
(Respondent)

Margo A. Feinberg, Esq.,
 Email: margo@ssdslaw.com
(Charging Party)

---

[1] This result is unchanged by Respondent's various contentions regarding the manner in which the charges underlying this proceeding were investigated, a matter that is not under my purview.

3

22-60493.3387

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

TESLA, INC.

  and          Case 32-CA-197020

MICHAEL SANCHEZ

  and          Case  32-CA-197058

JONATHAN GALESCU

  and          Case  32-CA-197091

RICHARD ORTIZ

  and          Cases 32-CA-197197
                  32-CA-200530

INTERNATIONAL UNION, UNITED    32-CA-208614
AUTOMOBILE, AEROSPACE AND    32-CA-210879
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

### ORDER[1]

The General Counsel's request for special permission to appeal Administrative Law Judge Amita B. Tracy's amended order denying the General Counsel's motion to allow William Locklear to testify by videoconferencing is granted.  On the merits, the appeal is denied.  The General Counsel has failed to establish that the judge abused her discretion in denying the General Counsel's motion.

Dated, Washington, D.C., July 16, 2018.

JOHN F. RING,      CHAIRMAN

MARK GASTON PEARCE,   MEMBER

MARVIN E. KAPLAN,    MEMBER

---

[1]  The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.  Member Emanuel did not participate in the consideration of this case.

*1 (999)*

EXHIBIT NO. GC-1(989) RECEIVED ✓ REJECTED _____
32-CA-197020
CASE NO. _____ CASE NAME: Tesla, Inc.
NO. OF PAGES: 2 DATE: 9-25-18 REPORTER: DM

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an** Individual | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## CONSOLIDATED REPLY TO THE GENERAL COUNSEL'S AND THE CHARGING PARTIES' OPPOSITIONS TO RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

A Region lacks jurisdiction to originate complaints on its own initiative and in the absence of a supporting, timely-filed charge. The question presented by Tesla's Motion to Dismiss ("Motion") is therefore a simple one: are the allegations of the Region's Amendment to the Second Amended Complaint ("Amendment") regarding the events of a June 7, 2017 meeting supported by a timely-filed charge? To answer that question in the affirmative, the General Counsel has the burden of proving that the Amendment's allegations were, at a minimum, "closely related" to a charge filed by the Union within 6 months of that date.

1 (FFF)

Both the General Counsel and the Union bend over backwards to avoid giving the simplest answer to this simple question, i.e., that the Union filed any specific charge in response to the allegations asserted in the General Counsel's Amendment. They instead argue that the vague and generically plead 8(a)(1) language of no less than *six different charges*—and not even the same charges—somehow individually and cumulatively support the Amendment's allegations regarding a single meeting. They alternatively take the position that, because the Union has filed more than a dozen charges against Tesla during its two-year-long organizing campaign, statements made by Tesla's CEO Elon Musk during a June 7, 2017 meeting surely must "closely relate" to at least one of them.

Far from establishing that his jurisdiction exists, the General Counsel argues that an administrative law judge lacks the authority to test it. He unsurprisingly makes no attempt to explain why his July 7, 2017, November 21, 2017 and December 20, 2017 letters to Tesla which specifically enumerate *56 separate allegations* by the Union make no reference to Elon Musk or any June 7, 2017 meeting. Nor does he even try to explain why he did not ask Ms. Toledano a single question about any June 7, 2017 meeting when he took her affidavit on February 5, 2018. Nor does he even try to explain why he waited until the eve of trial to assert nearly year-old allegations against Tesla's high-level executives only days after Tesla petitioned to revoke its and the Union's overbroad and burdensome subpoenas seeking their electronic communications and testimony.

Most tellingly, the General Counsel does not address Tesla's contention that he amended the complaint on the eve of trial in an attempt to justify his and the Union's overly broad subpoena requests rather than agreeing to narrow them to the issues in dispute. He instead submits that, as the "caretaker of the public interest and specifically the public rights at issue as a

22-60493.3391

EXHIBIT NO. GC-1(fff) RECEIVED ✓ REJECTED ____

32-CA-197020

CASE NO. ____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 14 DATE: 9-25-18 REPORTER: DM

22-60493.3392

result of Respondent's violations of the Act," allowing the amendment is "compelled by the vindication of these public rights." While the General Counsel's zeal as a caretaker of the public interest cannot be doubted, Tesla would gently remind him that employers also enjoy rights. It is accordingly no less entitled to expect that he perform his duties within the limitations imposed upon him by Congress. Because the General Counsel's opposition fails to establish that the Region has jurisdiction over the allegations of the Amendment, they should be dismissed.

A.    **Not Even the Union and the General Counsel Can Agree on Which Charges Support the Allegations of the Amendment.**

The Union observes in its opposition that, per the Supreme Court's decision in *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959), the function of an unfair labor practice charge is not to give notice to the respondent of the exact nature of the charges against it. Citing to the Board's holding in, among other cases, *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992), it further submits that "a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1)." Union's Opp. at p. 1. The Union accordingly claims that the "objective truth is that each of the General Counsel's allegations raised it [sic] his Amendment were properly pled" in the charges and amended charges filed in Case Nos. 32-CA-200530 and 32-CA-208614. Union's Opp. at pp. 1-3. Yet the General Counsel contends that the allegations of his Amendment were also "encompassed" by the amended charges filed on July 28, 2017 in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197. GC's Opp. at p. 2.

If, as the Union suggests, *Fant Milling* created some prophylactic authorization for Regions to issue Complaints on any putative Act violation newly discovered during investigations (untethered to any specific, underlying charge), the Board would never have developed the 1988 *Redd-I* "closely related" test. In both *Fant Milling* and *National Licorice v.*

22-60493.3393

*NLRB,* 309 U.S. 350 (1940), the Supreme Court interpreted § 10(b)'s charge-filing requirement and affirmed the rule that the Board can prosecute allegations occurring after a party files a charge, but *only* those that "are *related to those alleged in the charge and which grow out of them." National Licorice,* 309 U.S. 369; *Fant Milling,* 360 U.S. at 308 ("What has been said is not to imply that the Board is, in the words of the Court of Appeals, to be left 'carte blanche' to expand the charge as they might please, or to ignore it altogether. Here we hold only that the Board is not precluded from dealing adequately with unfair labor practices *which are related to those alleged in the charge and which grow out of them* while the proceeding is pending before the Board.") (emphasis added).

The Union's and the General Counsel's arguments to the effect that anywhere between four and six different charges somehow encompass the allegations of the Amendment belies any notion that they were at least "related to" and "gr[e]w out of" any one of them as required by the Supreme Court's holdings in *Fant Milling* and *National Licorice*. To hold otherwise would essentially allow a union to initiate sweeping investigations of indefinite duration by the General Counsel into the employer-targets of its organizing efforts by filing general, nonspecific 8(a)(1) charges against them once every 6 months. Relying on the Board's decision in *Embassy Suites Resort,* 309 NLRB 1313, 1314 (1992), the Union seeks sanction of such tactics by taking the position that at least one of the 23 generally-worded 8(a)(1) allegations of its four separate charges is sufficient to support the specific allegations of the Amendment seeks to sanction such tactics.

Fortunately, both the Board and the D.C. Circuit have since recognized that the Board's reasoning in *Embassy Suites* misapprehends the principles articulated by the Supreme Court in *Fant Milling* and *National Licorice*. In *Lotus Suites v. NLRB,* 32 F.3d 558, 589-592 (1994), the

22-60493.3394

D.C. Circuit denied the Board's cross-petition for enforcement of its decision in *Embassy Suites* and set aside its order. The Court stated:

> [W]hen the Board issues a complaint, it does not have "carte blanche to expand the charge as [it may] please, or to ignore it altogether." Therefore, if in a complaint "the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge." . . . The complaint in this case cannot possibly meet the *Nickles Bakery* standard that "the complaint allegation be factually related to the allegation in the underlying charge" because the underlying charge alleges no facts. . . . What, pray, were the matters of concern to the Union? Why, any violations of § 8(a)(1) that the Board might turn up in its investigation. Nothing more specific appears in the charge, anyway. It hardly matters who filled in the blank space on the charge form if the box remains so lacking in content that it is not possible sensibly to apply the test of "substantial relation" between the factual allegations in the charge and those in the complaint. Indeed, if the Board's point were accepted, then a charging party could, in effect, cause the Board to do what the Congress prohibited it from doing, viz., embarking upon an unbounded inquiry into any and all possible violations of the Act.

*Id* at 591-592.

The Board no longer relies on its decision in *Embassy Suites* or otherwise takes the position that "a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1)." Rather, § 3-130 of the current edition of the Bench Book provides that a charge "is sufficient if it informs the alleged violator of the general nature of the violation charged against him and enables him to preserve the evidence relating to the matter." (citing *NLRB v. Louisiana Mfg. Co.*, 374 F.2d 696, 704–705 (8th Cir. 1967), quoting from *NLRB v. Raymond Pearson, Inc.*, 243 F.2d 456, 458 (5th Cir. 1957)). Suffice it to say that under no circumstances would either the Union's general 8(a)(1) "harassment," "interrogation," or "solicitation" charges or any of the General Counsel's related communications enable Tesla to preserve evidence related to a June 7, 2017 meeting conducted by CEO Elon Musk and Chief People Officer Gaby Toledano. To the contrary: by alleging that Tesla committed these acts "on or about" February 10, 2017, May 24, 2017, and

22-60493.3395

May 25, 2017, the absence of any reference June 7, 2017 in the initial charge in 32-CA-200530 would arguably *discourage* a charged party from preserving evidence relating to that date.

Thus, the General Counsel's and the Union's repeated references to multiple charges which generally allege "harassment," "interrogation," and/or "intimidation" in violation of 8(a)(1) are "so lacking in content" that they cannot possibly support the specific 8(a)(1) allegations of the Amendment. This rings particularly true given that the words "harassment," "interrogation," or "intimidation" *are not even included in the General Counsel's Amendment*.

**B.     The General Counsel's Reliance on a "Course of Conduct Aimed at Precluding Union Activity" Argument to Establish the Second Prong of the "Closely Related" Test Ignores *Carney Hospital*.**

Citing to *Marriot* Corp., 310 NLRB 1152, 1160 (1993) and *Jennie-O Foods*, 301 NLRB 305 (1991), the General Counsel broadly asserts that the Amendment allegations are somehow "closely related" to the allegations in "*all* of the operative charges because they are part of Respondent's course of conduct aimed at precluding union activity". GC's Opp. at p. 4 (emphasis added). He then points to evidence adduced at the hearing in support of the allegations of the Second Amended Complaint as conclusively establishing that the amendment is "part-and-parcel of the same organizing campaign and with Respondent's unlawful anti-union conduct during the ongoing organizing campaign." *Id* at p. 5.

First, the General Counsel's attempt to establish that the allegations of the Region's Amendment are "closely related" to those of the Region's Second Amended Complaint—and not to those of any timely-filed charge—is a legal non-sequitur. If the sufficiency of the allegations of a Region's amendment were tested by their factual and legal relatedness to the allegations of the Region's underlying complaint, the charge filing requirement of § 10(b) and the Board's Rules and Regulations would be rendered a nullity.

22-60493.3396

Second, the General Counsel's argument cannot be reconciled with *Carney Hospital*, 350

NLRB 627, 627 (2007). There, the Board held that "the mere occurrence of the alleged

violations during or in response to the same organizing campaign is insufficient to establish the

close factual relationship required by Section 10(b)." Rather, the Board required some additional

connection, either (1) "similar conduct, usually during the same time period with a similar

object," or (2) "a causal nexus between the allegations *and* they are [(a)] part of a chain or

progression of events, or [(b)] they are part of an overall plan to undermine union activity." *Id* at

630. (emphasis added). Applying this new limitation, the Board held that untimely 8(a)(1) job

loss threat allegations and a timely charged suspension allegation did not involve similar conduct

and were not part of a "chain or progression of events" where the supervisor that allegedly made

the job loss threat was not involved in that employee's subsequent suspension. *Id*. Because

there was no indication that the suspension and the alleged 8(a)(1) violations were anything more

than separate actions carried out independently by several different Respondent officials, the

Board also held that they were not "part of an organized plan to resist organization" even though

they occurred in the midst of the same ongoing organizing campaign. *Id*.

Here, none of the Union's charges alleges—and the General Counsel makes no attempt to

show—that Elon Musk or Gaby Toledano had any involvement whatsoever in Charging Party

Ortiz' termination or Charging Party Moran's suspension. Nor does any one of the Union's

charges allege that any of the Charging Parties were discriminated or retaliated by virtue of their

participation in any June 7, 2017 meeting. Though the June 7, 2017 meeting alleged in the

Amendment occurred in the midst of the same organizing campaign that formed the basis for the

Union's timely filed charges, it is black letter law that "the mere occurrence of the alleged

violations during or in response to the same organizing campaign is insufficient to establish the

22-60493.3397

close factual relationship required by Section 10(b)." *Carney Hospital*, 350 NLRB 627, 627

(2007). Thus, just as the Union's general 8(a)(1) charge allegations are insufficient to support

the specific 8(a)(1) allegations of the Amendment, the General Counsel's inability to show both

a causal nexus *and* either a chain or progression of events or an overall plan to undermine union

activity between any timely filed charge and the allegations of the Amendment precludes him

from establishing the second prong of the "closely related" test.

C.    **Neither the General Counsel or the Union Even Attempts to Explain the Unusual Circumstances Surrounding the Issuance of the Amendment.**

In her June 8, 2018 Order on Tesla's petition to revoke the Union's subpoena *ad*

*testificandum* issued to Elon Musk, Administrative Law Judge Amita Tracy ("Judge Tracy")

wrote:

> I am concerned that there is no valid explanation from the General Counsel or the
> Charging Party as to why, at the eleventh hour on the eve of trial and after
> investigating a charge since 2017, the amended complaint was filed on June 4,
> 2018 adding facts which may or may not be admitted by the Respondent and
> which retains the current June 11, 2018 trial date.

Rather than attempting to address Judge Tracy's concerns by providing any valid

explanation, the General Counsel incredibly argues that "an administrative law judge is not

empowered with the authority[1] to withdraw a properly issued and noticed amendment to a

complaint issued prior to a hearing". GC's Opp. at p. 1. Likewise, the Union offers only that

"just because the Respondent doesn't like [the] timing of an Amendment doesn't mean it's

improper." Union's Opp. at p. 2. Tesla does not bring this Motion because it "does not like" the

timing of the General Counsel's Motion. Rather, under § 102.17 of the Board's Rules, the

---

[1] Moreover, § 102.35(a)(8) specifically provides that an administrative law judge has the
authority to rule on motions to dismiss complaints or portions thereof.

22-60493.3398

General Counsel could only amend the complaint prior to the start of the hearing "upon such terms as may be deemed just."

An explanation is accordingly warranted for why none of the initial letters sent to Tesla by the General Counsel regarding any of the charges filed by the Union makes any reference whatsoever to Elon Musk or any June 7, 2017 meeting. An explanation is additionally warranted for why the General Counsel never requested to take Mr. Musk's or Ms. Toledano's affidavits to obtain evidence as to whether they made unlawful statements during any June 7, 2017 meeting. An explanation is additionally warranted for why the General Counsel never asked Ms. Toledano any questions about any June 7, 2017 meeting when he took her affidavit in February 2018 regarding an unrelated charge. An explanation is additionally warranted for why, notwithstanding the clear instruction of section 10054 of the Casehandling Manual, the General Counsel did not disclose the general nature of the Amendment's 8(a)(1) allegations, the general locale, the identities of the supervisors involved, and the date of the conduct before issuing the Amendment. Finally, if the allegations of the Amendment were encompassed by and/or "closely related" to anywhere between four to six charges filed by the Union, an explanation is warranted for why the General Counsel's "investigation" into the allegations of the Amendment deviated in nearly every measurable respect from his investigation into the allegations of those same four to six charges.

Coupled with the suspicious circumstances surrounding the issuance of the Amendment, the General Counsel's and the Union's silence on this matter leads to the inevitable conclusion that the General Counsel amended the complaint to include otherwise untimely allegations against Elon Musk and Gaby Toledano solely to provide a foundation for his and the Union's overly broad subpoenas. Under this circumstances, it can hardly be argued that the General

22-60493.3399

Consel amended the complaint on the eve of trial "upon such terms as may be deemed just" as required by § 102.17 of the Board's Rules and Regulations.

D.    **Because the Amendment's Jurisdictional Defect Cannot be Cured, Ruling on Tesla's Motion Before the Resumption of the Hearing is Appropriate.**

The General Counsel puzzlingly argues that the Board's statement in *Carney Hospital* that "Section 10(b) operates as a jurisdictional limitation" does not in fact reflect the existence of a jurisdictional limitation. GC's Opp. at 8. He then proceeds to argue that, because Tesla has failed to establish any "prejudice" resulting from the Amendment, the "public interest" compels its allowance. The jurisdictional limitations placed on his authority to issue complaints *sua sponte* and in the absence of any charge that is at least "closely related" to their corresponding allegations are not contingent upon Tesla's ability to show prejudice. Even so, in light of the Union's extremely burdensome subpoena requests for ESI and testimony whose relevance hinges entirely upon Judge Tracy's ruling on the instant Motion, Tesla will be severely prejudiced should it be forced to comply with these otherwise invalid subpoenas and defend itself against jurisdictionally defective allegations. Accordingly, Tesla respectfully requests that Judge Tracy decline to withhold ruling on its Motion to Dismiss and, for the reasons set forth in its Motion, dismiss all of the allegations of the Amendment.

22-60493.3400

Dated:  June 26, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____  for Keahn N. Morris

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.3401

1                <u>CERTIFICATE OF SERVICE</u>

2        At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is

3 Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

4 On June 26, 2018, I served a true copy of the following document(s) described as

5 **CONSOLIDATED REPLY TO THE GENERAL COUNSEL'S AND THE CHARGING PARTIES' OPPOSITIONS TO RESPONDENT'S MOTION TO**

6 **DISMISS FOR LACK OF JURISDICTION**

7 on the interested parties in this action as follows:

8

Edris W.I. Rodriguez Ritchie
9 Field Attorney, Region 32
National Labor Relations Board
10 1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224
11 T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov
12

Noah J. Garber
13 Field Attorney, Region 32
National Labor Relations Board
14 1301 Clay Street, Suite 300N
Oakland, California 94612
15 T: (510) 671-3021
E-mail: noah.garber@nlrb.gov
16

Margo Feinberg
17 E-mail: margo@ssdslaw.com
Daniel E. Curry
18 E-mail: dec@ssdslaw.com
Julie Alarcon
19 E-mail: jsa@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
20 6300 Wilshire Blvd., Suite 2000
Los Angeles, CA 90048
21 T: (323) 655-4700

22 Administrative Law Judge Amita Tracy
Amita.Tracy@nlrb.gov
23 National Labor Relations Board
Division of Judges
24 901 Market St., Suite 300
San Francisco, CA 94103
25 T: (415) 356-5255

26

27

28

22-60493.3402

1

2     **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed
to the persons at the addresses listed in the Service List and placed the envelope for
3 collection and mailing, following our ordinary business practices. I am readily familiar
with the firm's practice for collecting and processing correspondence for mailing. On the
4 same day that correspondence is placed for collection and mailing, it is deposited in the
ordinary course of business with the United States Postal Service, in a sealed envelope
5 with postage fully prepaid. I am a resident or employed in the county where the mailing
occurred.

6

    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the
7 document(s) to be sent from e-mail address dmcgahey@sheppardmullin.com to the
person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time
8 after the transmission, any electronic message or other indication that the transmission was
unsuccessful.

9

    I declare under penalty of perjury under the laws of the United States of America
10 that the foregoing is true and correct and that I am employed in the office of a member of
the bar of this Court at whose direction the service was made.

11

12     Executed on June 26, 2018, at San Francisco, California.

13

14     Ryan Brust

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22-60493.3403

1    MARGO A. FEINBERG (100655)
    DANIEL E. CURRY (297412)
2    JULIE S. ALARCÓN (316063)
    SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS, LLP
3    6300 Wilshire Boulevard, Suite 2000
    Los Angeles, California 90048
4    Telephone:   (323) 655-4700
    Fax:   (323) 655-4488

5

6    *Attorneys for Michael Sanchez, Jonathan Galescu, Richard Ortiz, and International Union,*
    *United Automobile, Aerospace And Agricultural Workers Of America, AFL-CIO*

7

8

9               **UNITED STATES OF AMERICA**

        **BEFORE THE NATIONAL LABOR RELATIONS BOARD**

10

          **SAN FRANCISCO DIVISION OF JUDGES**

11

| | |
|---|---|
| 12   TESLA, INC., | **Case Nos.**    **32-CA-197020** |
| 13           Respondent, | **32-CA-197058** |
| | **32-CA-197091** |
| | **32-CA-197197** |
| 14     and | **32-CA-200530** |
| | **32-CA-208614** |
| 15   MICHAEL SANCHEZ, an Individual, | **32-CA-210879** |
| 16         Charging Party, | |
| 17     and | **CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS** |
| 18   JONATHAN GALESCU, an Individual, | |
| 19         Charging Party, | |
| 20     and | |
| 21   RICHARD ORTIZ, an Individual, | |
| 22         Charging Party, | |
| 23     and | |
| 24   INTERNATIONAL UNION, UNITED | |
|     AUTOMOBILE, AEROSPACE AND | |
| 25   AGRICULTURAL WORKERS OF | |
|     AMERICA, AFL-CIO, | |
| 26 | |
|         Charging Party. | |
| 27 | |
| 28 | |

*1 (eee)*

22-60493.3404

# I

## PRELIMINARY STATEMENT

Respondent Tesla's Motion to Dismiss is based on a flawed premise: that the allegations in the General Counsel's Amendment were not alleged in any of the Charging Party's Unfair Labor Practice Charges. This is patently false. No less than two Unfair Labor Practice Charges—32-CA-200530 and 32-CA-208614—and two subsequent amendments to those charges cover the allegations in the General Counsel's Amendment. Because the allegations are covered by these Charges, resorting to the Board's "closely related" test is not even necessary.

Yet even applying the "closely related" test, the Respondent's motion lacks any merit. The allegations in the General Counsel's Amendment meet all three criteria laid out in *Redd-I, Inc.*, 290 NLRB 1115 (1988) and clarified by *Carney Hospital*, 350 NLRB 627 (2007). The Respondent's assertions to the contrary constitutes nothing more than wishful thinking. The conduct of Tesla executives on June 7, 2017 follows a clear chain of events previously alleged where employees have been intimidated, harassed, and interrogated for protected activity involving safety conditions. As explained below, the June 7, 2017 was the culmination of these events.

# II

## ARGUMENT

### A.   THE ALLEGATIONS IN THE GENERAL COUNSEL'S AMENDMENT WERE ALLEGED IN CHARGE NOS. 32-CA-200530 AND 32-CA-208614

An unfair labor practice charge is not a formal pleading. Its function is not to give notice to the respondent of the exact nature of the charges against it; that is the function of the complaint. *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959); *Redd-I, Inc.*, 290 NLRB at 1116-17.

Charges therefore do not need to list every 8(a)(1) allegation with particularity. In fact, the Board has long held that a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1). *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992); *Columbia University*, 250 NLRB 1220, 1222 fn 2 (1980); *Gerig's Dump Trucking, Inc.* 320 NLRB 1017, 1019 (1996).

1

22-60493.3405

EXHIBIT NO. GC-1(eee) ✓ RECEIVED_____ REJECTED ———
32-CA-197020
CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 10 DATE: 9-25-18 REPORTER: D.H

1       In its desperation to remove these allegations, the Respondent has concocted a

2   jurisdictional objection that skips over the very words at issue.  The objective truth is that each of

3   the General Counsel's allegations raised it his Amendment were properly pled in an Unfair Labor

4   Practice charge within the 10(b) period.  No application of the 'closely related' test is necessary

5   because the allegations are within the charges themselves.  In fact, no less than four timely

6   charges or amended charges allege the conduct described in the Amendment with sufficient

7   particularity.

8       The Respondent's real complaint seems to be that the allegations were not part of the

9   General Counsel's initial investigation or earlier complaints.  However, just because the

10  Respondent doesn't like timing of an Amendment doesn't mean it's improper.  In fact, the

11  Amendment in no way prejudices Respondent, who has another three months to investigate and

12  prepare a defense.  The Respondent does not even try to claim otherwise.  Its motion to dismiss

13  should be denied.

14      **1.    Charge No. 32-CA-200530**

15      On June 12, 2017, the Union filed Unfair Labor Practice Charge No. 32-CA-200530,

16  which alleges:

17      On or about May 25, 2017 and ongoing, the above-named Employer violated the
        act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz,
18      and others for engaging in protected concerted activity regarding worker safety
        concerns and other working conditions.
19

20  On July 28, 2017, the Union amended this charge to state, in relevant part:

21      Within the last six months, the above-named Employer, through its agents,
        violated the Act by…intimidating and harassing employees for their Section 7
22      activities.

23  Both the original and the amended charges in Case No. 32-CA-200530 wholly encompass the

24  allegations in the General Counsel's Amendment.  Labeling unionization as futile and telling

25  employees nobody wants the union are examples of restraint and coercion of employees that tends

26  to intimidate. *Wilson Tree Co., Inc.*, 312 NLRB 883, 896 (1993) (statements implying union

27  activity is futile is intimidating).  The charge and amended charges' use of the word

28  "intimidating" therefore covers these allegations in the GC's Complaint.

22-60493.3407

1    The Charging Party is not required to specifically state the date of an incident or the

2  people involved in its Unfair Labor Practice Charge.  The charges cover the relevant date – June 7

3  – through the words "and ongoing" in the original charge and "within the last six months" in the

4  amended charge.  The original charge also includes the specific topic that the June 7, 2017

5  meeting covered: "worker safety concerns."  No further specificity is required.

6       **2.    Charge No. 32-CA-208614**

7       On October 25, 2017, about four and a half months after the allegations in Paragraph 7(y)

8  took place, the UAW filed Charge No. 32-CA-208614, stating, in part:

9       Within the past six months and ongoing, Tesla, Inc., though its agents, has
         interfered with, restrained, and coerced employees in the exercise of the rights
10       guaranteed in Section 7 of the Act by intimidating and harassing employees for
         their Section 7 Activities.
11

12  On March 13, 2018, the Union amended this charge to state:

13       Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise
         of rights guaranteed in Section 7 of the Act by…making a statement of futility
14       regarding employee support for the Union…

15       This charge and amended charge also fully encompass the allegations in the General

16  Counsel's Amendment for the same reasons stated above.  Furthermore, the March 18, 2018

17  amendment specifically uses the word "futile."  The Charging Parties therefore filed not one, but

18  two timely charges alleging the June 7, 2017 conduct violated the Act.  The Respondent's efforts

19  to dodge these allegations must fail.

20  **B.    THE AMENDMENT IS PROPER BECAUSE THE ALLEGATIONS IN THE**

21       **AMENDMENT ARE CLOSELY RELATED TO ALLEGATIONS IN A TIMELY**

22       **FILED CHARGE**

23       Even assuming, *arguendo*, that the allegations in the General Counsel's Amendment were

24  not properly alleged in any of the Charging Parties' Unfair Labor Practice Charges, the General

25  Counsel can still include these allegations in the complaint under the Board's "closely related"

26  doctrine.  The General Counsel has "broad investigatory power" to deal with "unfair labor

27  practices which are related to those alleged in the charge and which grow out of them while the

28  proceeding is pending before the Board."  *Fant Milling Co.*, 360 U.S. at 308-09 (1959).

3

22-60493.3408

1      The Region may make allegations that are "closely related" to a timely filed charge and

2    involve conduct occurring within six months of that timely charge. *Carney*, 350 NLRB at 628.

3    Under the *Redd-I* test, the Board (1) considers whether the otherwise untimely allegations involve

4    the same legal theory as the allegations in the timely charge; (2) considers whether the otherwise

5    untimely allegations arise from the same factual situation or sequence of events as the allegations

6    in the timely charge; and (3) "may look" at whether a respondent would raise the same or similar

7    defenses to both the untimely and timely charge allegations. *Redd-I*, 290 NLRB at 1118; *Seton*

8    *Co.*, 332 NLRB 979, 983 (2000). *Carney* further refined the second prong of this test, stating that

9    it is satisfied where the two sets of allegations "[1] demonstrate similar conduct, usually during

10   the same time period with a similar object, or [2] there is a causal nexus between the allegations

11   and they are part of a chain or progression of events, or [3] they are part of an overall plan to

12   undermine union activity." *Carney Hospital*, 350 NLRB at 630.

13      In *Seton Co.*, the Charging Party filed a charge on June 7, 1995 alleging, among other

14   acts, "interrogation" and "implied threats of discipline" that interfered with, restrained and

15   coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act.  332 NLRB

16   at 983.  In its Complaint, the General Counsel alleged that the employer "interrogated employees

17   about their union membership, activities, and sympathies" and "impliedly threatened employees

18   with discipline if the employees talked about the Union" in about Mid-February 1995.  The

19   Board, applying the test from *Redd-I, Inc.*, found that both allegations in the Complaint were

20   "closely related" to the Charge described above.

21      For the first prong, the Board found that the charge and complaint allegations involved

22   "the same section of the Act (Section 8(a)(1)) and the same legal theory (interference with

23   employees' Section 7 right to select the Union as their collective-bargaining representative)."  For

24   the second prong, the Board found "both sets of allegations involve the same types of conduct.

25   Interrogation and implied threats of discipline are specifically alleged in both the amended charge

26   and the complaint."  The Board also found that the employer would deploy the same defense to

27   both allegations.

28   //

4

22-60493.3409

1   The General Counsel can easily meet all three parts of the *Redd-I* test. First, the new

2 allegations employ the same legal theory as several other allegations in the Complaint:

3 interference with employees' Section 7 right to select the Union as their collective-bargaining

4 representative in violation of Section 8(a)(1) of the Act. As described above, the Board in *Seton*

5 found this sufficient to satisfy prong one. 332 NLRB 979, 983.

6   Second, the allegations related to the June 7, 2017 meeting are "part of a chain or

7 progression of events." *Carney*, 350 NLRB at 630. Tesla held the meeting with employees on

8 June 7, 2017 in direct reaction to employee protected concerted activity regarding safety issues

9 raised by employees. This protected activity is already the subject of numerous charges.

10   First, on February 10, Mr. Moran issued an online article discussing safety problems at

11 Tesla. He was subsequently interrogated about the article by Tesla, and he and other employees

12 were intimidated and harassed by Tesla security guards when they attempted to hand out his

13 article to co-workers entering and exiting the plant, as alleged in Charge No. 32-CA-200530 and

14 Complaint paragraphs 7(c) through (i).

15   Next, on April 5, 2017, Tesla attempted to prohibit Mr. Galescu and Mr. Ortiz from

16 discussing the OSHA Logs they lawfully requested, as alleged in Amended Charge No. 32-CA-

17 200530 and Complaint Paragraph 7(k). Then, on May 24, 2017, after their personal

18 representative, Worksafe, released a report based on the OSHA logs, Tesla interrogated and

19 harassed Mr. Galescu and Mr. Ortiz on the same day, as alleged in Charge No. 32-CA-200530

20 and Complaint paragraph 7(q). On the same day, employees who handed out flyers summarizing

21 the Worksafe report were harassed and intimidated by Tesla security guards, as alleged in Charge

22 No. 32-CA-200530 and Complaint Paragraphs 7(n) through (p).

23   On June 7, 2017 senior executives and employees, some of whom were the very

24 employees involved in the previous events, met to discuss the safety concerns raised through the

25 above-described protected concerted activity. The meeting was directly instigated by the

26 previous events and the subject of the meeting was how to appease the employees involved and

27 dissuade them from further action. This meeting can therefore only be interpreted as "part of a

28 chain or progression of events" with previous allegations that established prong two.

<div align="center">5</div>

22-60493.3410

1    Further, the previous allegations and the allegations in the Amendment demonstrate

2    "similar conduct during the same time period with a similar object," an alternate formulation of

3    prong two. *Carney*, 350 NLRB at 630. The statements of futility alleged in the Amendment

4    match similar alleged statements during the same time period that were meant to discourage union

5    activity: A Tesla security guard telling employee Michael Sanchez, "Unions are worthless, you

6    shouldn't join one" in February, 2017, and a Quality Control Supervisor telling employee Mike

7    Williams, "the union is never going to get in here, this is Tesla," in September, 2017. These

8    statements of futility match the allegations Amendment, satisfying prong two.

9    Finally, while not a required criteria, Tesla would raise the same defense to the allegations

10   in the Amendment as it would have to the previous allegations: that such conduct falls under

11   employer free speech rights protected by Section 8(c) of the Act. As Tesla already had the

12   opportunity to raise this argument before the Board during the investigation phase, and likely did

13   so, and the Board nonetheless went forward with its complaint on those allegations, including this

14   allegation in the Complaint will not have a prejudicial effect.

15   Finally, additional relevant factors favor allowing the General Counsel to amend the

16   Complaint. The General Counsel moved to amend the complaint before the hearing even began,

17   and the Respondent will have three months to investigate and prepare before the hearing resumes

18   on September 24, 2018. See *Long Beach Mem'l Med. Ctr., Inc.* 366 NLRB No. 66, fn 12 (2018).

19   Further, the Respondent does not assert that it was denied sufficient time to prepare its defense or

20   otherwise suffered any prejudice. *Id.*

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

6

22-60493.3411

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III

<u>CONCLUSION</u>

For all the reasons set forth above Charging Parties request that the motion of Tesla, Inc. to dismiss be denied.

DATED:      June 22, 2018          SCHWARTZ, STEINSAPIR, DOHRMANN
                                                          & SOMMERS LLP
                                                 MARGO A. FEINBERG
                                                 DANIEL E. CURRY
                                                 JULIE S. ALARCÓN


                                    By _____
                                               MARGO A. FEINBERG
                                        Attorneys for Charging Parties Michael Sanchez,
                                     Jonathan Galescu, Richard Ortiz, and International Union,
                                     United Automobile, Aerospace and Agricultural Workers of
                                                     America, AFL-CIO

---

7

ID 354908                                           CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

## PROOF OF SERVICE BY ELECTRONIC MAIL

**Case No. 32-CA-197020 et al.**

RENEE CARNES certifies as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5202.

On June , 2018, I caused the foregoing document(s) described as:

**CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

be served by electronic mail upon the person(s) shown below,

Edris W.I. Rodriguez-Ritchie
National Labor Relations Board, Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224
e-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
National Labor Relations Board, Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224
e-mail: noah.garber@nlrb.gov

Mark Ross, Esq.
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 17
San Francisco, CA 94111-4158
e-mail: mross@sheppardmullin.com

___X___ **BY E-MAIL:** By transmitting a copy of the above-described document(s) via e-mail to the individual(s) set forth above at the e-mail addressed indicated.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 22, 2018, at Los Angeles, California.

_RENEE CARNES_
RENEE CARNES

ID 353707

22-60493.3413

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

and

MICHAEL SANCHEZ, an Individual                    Case 32-CA-197020

and

JONATHAN GALESCU,  an Individual                  Case 32-CA-197058

and

RICHARD ORTIZ, an Individual                      Case 32-CA-197091

and

INTERNATIONAL UNION, UNITED                       Case 32-CA-197197
AUTOMOBILE, AEROSPACE AND                         Case 32-CA-200530
AGRICULTURAL WORKERS OF                           Case 32-CA-208614
AMERICA, AFL-CIO                                   Case 32-CA-210879

Date: June 22, 2018

**AFFIDAVIT OF SERVICE OF GENERAL COUNSEL'S OPPOSITION TO RESPONDENT TESLA, INC.'S MOTION TO DISMISS THE AMENDMENT TO THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION**

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.                          Margo A. Feinberg, Esq.
Sheppard Mullin Richter & Hampton, LLP      Schwartz, Steinsapir, Dohrmann & Sommers, LLP
4 Embarcadero Center, 17th Floor            6300 Wilshire Boulevard, Suite 2000
San Francisco, CA 94111                     Los Angeles, CA 90048
**VIA EMAIL: mross@sheppardmullin.com**     **VIA EMAIL: margo@ssdslaw.com**
**VIA EMAIL: kmorris@sheppardmullin.com**   **VIA EMAIL: dec@ssdslaw.com**
                                            **VIA EMAIL: jsa@ssdslaw.com**


National Labor Relations Board
Division of Judges
901 Market St., Suite 485
San Francisco, CA  94103
**E-FILE**

June 22, 2018                               Ida Lam, Designated Agent of NLRB
                                                          Name
                                            /s/ Ida Lam

                                                       Signature

                                            1(ddd)

22-60493.3415

EXHIBIT NO. GC-1(ddd)  RECEIVED _____ REJECTED _____

32-CA-197020

CASE NO._____  CASE NAME: Tesla, Inc.

NO. OF PAGES: 2  DATE: 9-25-18  REPORTER: DH

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

   and

MICHAEL SANCHEZ, an Individual

   and

JONATHAN GALESCU,  an Individual

   and

RICHARD ORTIZ, an Individual

   and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

Cases 32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

**COUNSEL FOR THE GENERAL COUNSEL'S OPPOSITION TO
RESPONDENT TESLA, INC.'S MOTION TO DISMISS THE AMENDMENT
TO THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION**

*1 (ccc)*

22-60493.3416

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD AND DISCUSSION ............................................................... 1

       A.    The Regional Director Properly Issued the Amendment
             Under Section 102.15 ............................................................. 1

       B.    The Amendment Allegations Are Timely .......................................... 2

       C.    The Amendment Allegations are "Closely Related" to
             Several Timely Filed Charges ............................................... 3

       D.    Respondent Incorrectly Asserts Section 10(b) as a
             "Jurisdictional" Requirement .............................................. 7

       E.    Respondent has Failed to Establish any Prejudice in
             Allowing the Amendment ...................................................... 8

       F.    In the Alternative, the Judge Should Withhold Ruling until Evidence has
             been heard Regarding the Amendment Allegations ......................... 9

III.  CONCLUSION ................................................................................................. 9

22-60493.3417

i

22-60493.3418

EXHIBIT NO. GC-1(ccc) RECEIVED _____ REJECTED _____

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 74 DATE: 9-25-18 REPORTER: QH

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) ................................ 8

*Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309 (D.C. Cir. 2015) ................................ 8

*Reebie Storage and Moving Co., Inc. v. NLRB*, 44 F.3d 605 (7th Cir. 1995)................................ 2

## NLRB CASES

*Central Enterprises, Inc.*, 239 NLRB 1270 (1979) ......................................................... 8

*Chicago Roll Forming Corp. (Local 714, Teamsters)*, 167 NLRB 961, 971 (1967), enforced sub. nom. *NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969)............................. 7

*Earthgrains Co.*, 351 NLRB 733, 734 (2007) ............................................................. 4

*Fry's Food Stores*, 361 NLRB No. 140, slip op. at 2 (2014)............................................. 4

*Harmony Corp.*, 301 NLRB 578 (1991)..................................................................... 5

*Heinick Corp.*, 301 NLRB 128 (1991)..................................................................... 5

*Kanakis Co.*, 293 NLRB 435, 443 (1989) ................................................................. 7

*Jennie-O Foods*, 301 NLRB 305 (1991)..................................................................... 5

*Marriott Corp.*, 310 NLRB 1152, 1160 (1993) ......................................................... 4, 5

*Nickles Bakery of Indiana, Inc.*, 296 NLRB 927 (1989) ................................................ 5, 6

*Peng Teng*, 278 NLRB No. 50, fn. 2 (1986)............................................................... 7

*Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010) ......................................................... 6

*Seton Company*, 332 NLRB 979 (2000)..................................................................... 6

*Teamsters Local 955*, 325 NLRB 605 (1998)............................................................... 7

*The Carney Hospital*, 350 NLRB 627 (2007)............................................................. 7, 8

## FEDERAL STATUTES

29 U.S.C. § 160.................................................................................... passim

22-60493.3419

## FEDERAL REGULATIONS

Rules and Regulations of the National Labor Relations Board, Section 102.15 ............................. 1

Rules and Regulations of the National Labor Relations Board, Section 102.17 ............................. 1

Rules and Regulations of the National Labor Relations Board, Section 102.45 ............................. 1

22-60493.3420

## I.    INTRODUCTION

On June 4, 2018, prior to the opening of the record in this matter on June 11, 2018, the Regional Director, acting within her authority, issued an Amendment to the Second Amended Consolidated Complaint[1] (the Amendment) which set forth three allegations arising out of conduct occurring on June 7, 2017.    As set forth more fully below, these allegations are encompassed by timely-filed charges.  At the outset of the hearing, Tesla, Inc. (Respondent) filed a Motion to Dismiss for Lack of Jurisdiction (the Motion), urging the Administrative Law Judge (the Judge) to dismiss the three allegations set forth in the Amendment.  For the reasons set forth more fully below, Respondent's Motion lacks merit.

## II.    LEGAL STANDARD AND DISCUSSION

### A.    The Regional Director Properly Issued the Amendment Under Section 102.15

Under Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board), as amended, (the Rules and Regulations) only a Regional Director has the authority to issue a complaint in an unfair labor practice proceeding.  Under Section 102.17, prior to the start of a hearing, the Regional Director is the only person empowered with the legal authority to issue an amendment to the complaint.    An administrative law judge is not empowered with the authority to withdraw a properly issued and noticed amendment to a complaint issued prior to a hearing and is only empowered to dismiss such an amendment if it is based on the General Counsel's failure to prove the allegation or on a substantive defense.  See Section 102.45 of the Rules and Regulations (requiring that an administrative law judge prepare a decision based upon the contents of the record).    Thus, Respondent cannot assert that the

---

[1] A copy of the Amendment is contained in Exhibit 13.

22-60493.3421

Regional Director's issuance of the Amendment is improper. Nor, as discussed below, can it successfully assert that the allegations are not encompassed by a timely filed charge.

### B.    The Amendment Allegations Are Timely

The threshold inquiry is whether there is an operative charge that encompasses the allegations contained in the Amendment. *See Reebie Storage and Moving Co., Inc. v. NLRB*, 44 F.3d 605, 608 (7th Cir. 1995) (holding that "critical to the determination of whether allegations in a complaint are closely related to those in the [unfair labor practice charge] is a comparison of legal and factual bases of allegations."). Respondent incorrectly asserts that the Amendment contains allegations that were either not encompassed by any of the unfair labor practice charges or that these Amendment allegations are not closely related to any timely-filed charges. However, each of the first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 allege, in relevant part, that Respondent "[w]ithin the last six months [...] violated the Act by [...] intimidating and harassing employees for their Section 7 activities."[2] These amended charges were filed on July 28, 2017, less than two months *after* the date of conduct alleged to have occurred on June 7, 2017 in the Amendment, which alleges that Respondent CEO Elon Musk solicited employee complaints and made a statement of futility as well as that Respondent Chief People Officer Gaby Toledano restrained and coerced employees from engaging in union activities by telling employees that no one at Respondent's Fremont facility wanted a union and asked employees why they would want to pay union dues. Thus, the

---

[2] Exhibits 2, 4, 6, and 8, respectively. The initial charges in Case Nos. 32-CA-197020, 197058, 32-CA-197091, and 32-CA-197197 are contained in Exhibits 1, 3, 5, and 7, respectively.

22-60493.3422

first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 plainly cover the allegations in the Amendment.[3]

Moreover, the first amended charge in Case No. 32-CA-200530 (filed on July 28, 2017) also encompasses the allegations contained in the Amendment. The first amended charge in Case No. 32-CA-200530 was filed less than two months *after* the occurrence of the conduct contained in the Amendment and alleged, in relevant part, that Respondent, "[w]ithin the last six months" violated the Act by interrogating employees regarding their protected concerted activities and "intimidate[ed] and harass[ed] employees engaged in Section 7 activities […]."[4] Furthermore, the initial charge in Case No. 32-CA-208614[5], filed on October 25, 2017, and the first amended charge[6] (filed on March 13, 2018) also encompass the allegations in the Amendment, as they allege that Respondent "intimidated and harassed employees" for their Section 7 activities and the first amended charge in Case 32-CA-208614 further alleges that Respondent threatened and interrogated such employees.

### C. The Amendment Allegations are "Closely Related" to Several Timely Filed Charges

Even assuming the allegations in the Amendment were not encompassed within the above-referenced timely filed charges as described above, Respondent's Motion still fails because the Amendment allegations are "closely related" to the timely filed charges. Under settled Board law, a complaint may be amended, at any point, to allege conduct outside of the Section 10(b) period where the conduct occurred within six months of a timely filed charge and is "closely related" to the allegations of the charge. *Redd-I, Inc.*, 290 NLRB 1115 (1988); NLRB

---

[3] Respondent's motion entirely ignores that the first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 themselves form an independent basis for the General Counsel's issuance of the Amendment.
[4] Exhibit 10. The initial charge in Case No. 32-CA-200530 is contained in Exhibit 9 and was filed on June 12, 2017.
[5] Exhibit 11.
[6] Exhibit 12.

22-60493.3423

Bench Book Section 3-330; *Fry's Food Stores*, 361 NLRB No. 140, slip op. at 2 (2014). In evaluating whether the timely and untimely allegations are "closely related," the Board: (1) considers whether the allegations involve the same legal theory; (2) considers whether the allegations arise from the same factual circumstances or sequence of events; and (3) "may look" at whether the respondent would raise the same or similar defenses to both allegations. *Redd-I*, above, at 118; *Nickels Bakery of Indiana*, 296 NLRB 927, 927-28 (1989); *Earthgrains Co.*, 351 NLRB 733, 734 (2007). The "third" *Redd-I* factor is not a mandatory factor. See *The Carney Hospital*, 350 NLRB 627, fn. 8 (2007).

Here, the Amendment allegations are "closely related" to the allegations contained in all of the operative charges because they are part of Respondent's course of conduct aimed at precluding union activity, which includes multiple interrogations, the discriminatory enforcement of various policies, and the discipline and/or termination of employees for engaging in their Section 7 activities. Thus, the allegations contained in the Amendment involve generally the same legal theories and arise from the same general factual circumstances and sequence of events as those that Respondent does not assert are untimely or barred by Section 10(b).

The Board has often held that allegations of Section 8(a)(1) interrogations, solicitations of grievances, promises of benefit, as well as Section 8(a)(3) discharges, have been found closely related to timely filed charges of discriminatory suspensions where they all arose out of an employer's unlawful response to a single unionization campaign and were part of a single course of conduct aimed at precluding union activity. *Marriott Corp.*, 310 NLRB 1152, 1160 (1993).

Moreover, where an employer's acts are part of an overall plan to resist unionization, allegations arising out of such acts are deemed to "closely relate" to each other. *Jennie-O Foods*, 301 NLRB 305 (1991). Indeed, where violations arise out of the same course of conduct such as

22-60493.3424

an anti-union campaign, they are deemed to be "closely related." *Marriott Corp.*, above; *Heinick Corp.*, 301 NLRB 128 (1991). Here, the General Counsel has presented evidence that a union campaign began in the summer of 2016. The campaign was launched in the fall of 2016 at which point Respondent began requiring employees to sign a confidentiality agreement banning the disclosure of all information employees learn (including information about themselves and other employees). When the campaign went full steam ahead on February 9, 2017, with an employee's blog post, Respondent began further violating the Act by unlawfully prohibiting distribution of union literature in non-working areas on non-working time, banned the wearing of union apparel, interrogated employees, culminating in the verbal and written warning to the same employee who encouraged his coworkers to unionize on February 9, 2017, and the termination of another key employee in the organizing campaign. Respondent's conduct as alleged in the Amendment was part-and-parcel of the same organizing campaign and with Respondent's unlawful anti-union conduct during the ongoing organizing campaign. Plainly, the Board law described above establishes that the Amendment allegations are closely related to the allegations asserted in the timely filed unfair labor practice charges. See also, e.g., *Seton Company*, 332 NLRB 979 (2000). In contrast, the Board has found allegations to not be "closely related" when the allegations did not occur in the context of an organizing campaign. See, e.g., *Harmony Corp.*, 301 NLRB 578 (1991) (holding no factual nexus between interrogations and alleged discrimination because the interrogations occurred prior to the start of the organizing campaign).

Respondent relies on several cases to argue that the allegations contained in the Amendment are not "closely related." First, Respondent asserts that the Amendment allegations are not closely related under *Nickles Bakery of Indiana, Inc.*, 296 NLRB 927 (1989), because the first amended charge in 32-CA-200530 contains "boilerplate" allegations. However, Respondent

5

misstates the discussion in *Nickles*, where the Board held that the language stating "other acts" was boilerplate and insufficient to support "unrelated" Section 8(a)(1) allegations. *Nickles*, above at 928. Here, as the General Counsel has noted above, the first amended charges in Case No. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 state that Respondent "[w]ithin the last six months [...] violated the Act by [...] intimidating and harassing employees for their Section 7 activities."[7] Respondent further ignores, as the General Counsel has noted above, that the charge in Case No. 200530 states that Respondent "[w]ithin the last six months [...] interrogat[ed] employees regarding their protected concerted activities; intimidate[ed] and harass[ed] employees engaged in Section 7 activities [...]."[8] These specific allegations are quite distinct from the "boilerplate" allegations disapproved of by the Board in *Nickles*.

Next, Respondent relies upon *Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010), for the proposition that the allegations in the Amendment are not "closely related" to any of the operative charges. Respondent, however, fails to point out that in *Salon/Spa at Boro, Inc.*, the Board did not address the specific issue asserted by Respondent and, more importantly, the events at issue there did not arise out of an organizing campaign and anti-union conduct as exists here.

Moreover, by relying only on the initial charge language rather than the operative amended charges for its closely-related analysis, Respondent suggests that a party is not permitted to amend an unfair labor practice charge to include additional violations. Clearly, this is contrary to extant Board law and contrary to the caselaw relied upon by the Respondent itself. See *Nickles*, above at 928-29 (noting that "it is customary for a charging party to file an amended charge or an entirely new charge. Obviously, nothing in our decision today limits in any way a

---

[7] Exhibits 2, 4, 6, and 8.
[8] Exhibit 10.

22-60493.3426

charging party's ability to file a timely new or amended charge.") Finally, regarding the third *Redd-I* optional factor, it is evident from Respondent's Answer to the Amendment, Respondent's defense of the allegations contained in the Amendment are identical to its defense of the allegations not subject to its Motion to Dismiss. See Exhibits 14 and 15.

### D. Respondent Incorrectly Asserts Section 10(b) as a "Jurisdictional" Requirement

Section 10(b) of the National Labor Relations Act (the Act) prohibits the issuance of a complaint "based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the Board." 29 U.S.C. § 160. "[T]he proviso to Section 10(b) of the Act is a statute of limitations, and is not jurisdictional." *Chicago Roll Forming Corp.*, 167 NLRB 961, 971 (1967), enforced sub. nom. *NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969); *Kanakis Co.*, 293 NLRB 435, 443 (1989); *Peng Teng*, 278 NLRB No. 50, fn. 2 (1986) (holding "[t]he Board has long held that the 10(b) provision is a statute of limitations and is not jurisdictional.")

Respondent incorrectly assert that Section 10(b) is a jurisdictional requirement rather than a mere statute of limitations. In making this assertion, Respondent relies on *Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309, 313 (D.C. Cir. 2015), *Teamsters Local 955*, 325 NLRB 605 (1998), *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995), and *The Carney Hospital*, 350 NLRB 627 (2007). Its reliance on these cases for the proposition that Section 10(b) is a jurisdictional requirement is misplaced. For example, Respondent's states that Board's decision in *The Carney Hospital* held that "Section 10(b) operates as a jurisdictional limitation [...]." However, Respondent ignores the context of this quote, in which the Board observed that "Section 10(b) underscores that the General Counsel and the Board lack independent authority to initiate unfair labor practice proceedings in the absence of a charge filed

7

by an outside party. In this respect, Section 10(b) operates as a jurisdictional limitation […]."
*The Carney Hospital*, above at 628 (emphasis added). Thus, the Board very clearly did not hold
that Section 10(b) was a jurisdictional requirement, but merely commented on the undisputed
fact that the Board's processes are not self-initiating. Here, it is undisputed that the Charging
Parties have filed unfair labor practice charges asserting that Respondent engaged in various
unfair labor practices. Moreover, in each of the cases cited in its Motion, Respondent conflates
the idea that the General Counsel is unable to initiate unfair labor practice proceedings with the
concept that allegations occurring outside of the Section 10(b) period may not be prosecuted
(absent several caveats described herein).

      **E.**     **Respondent has Failed to Establish any Prejudice in Allowing the
Amendment**

     As a final matter, the General Counsel notes that Respondent has not yet commenced its
presentation of evidence and the record will not reopen until September 24, 2018. Thus,
Respondent has ample time to prepare its defense to the allegations in the Amendment. It cannot
make a colorable argument that it will be prejudiced by the inclusion of the allegations contained
in the Amendment. Further, the public interest compels the allowing of an amendment. As the
sole entity charged with ensuring the public's interest in enforcement of the Act, the Board has
long noted that there must be a "balance between the statutory limitations on litigation expressed
in Section 10(b) and the need to assure broad leeway for the exercise of the Board authority,
once properly invoked by the filing of a charge, to advance the public interest." *The Carney
Hospital*, above at 628. Indeed, even prior to *The Carney Hospital*, the Board has held that "the
General Counsel may properly relax the time provisions of our procedural rules in appropriate
cases, for he acts in the public interest and not in vindication of private rights." *Central
Enterprises, Inc.*, 239 NLRB 1270, 1271 (1979). Although the General Counsel does not rely on

22-60493.3428

the public interest alone, the General Counsel notes that, as the caretaker of the public interest and specifically the public rights at issue as a result of Respondent's violations of the Act, allowing the allegations contained in the Amendment are compelled by the vindication of these public rights.

F.    **In the Alternative, the Judge Should Withhold Ruling until Evidence has been heard Regarding the Amendment Allegations**

Because Respondent essentially contends that the Amendment allegations are barred by Section 10(b) of the Act, Respondent argues, in effect, that it has met its burden of proving an affirmative defense. However, the General Counsel has not rested its case, thus, even if the Judge deems it necessary to make a "closely related" determination, such an determination is premature at this juncture. Accordingly, while the General Counsel asserts that Respondent's Motion should be denied in its entirety, in the alternative, the General Counsel respectfully requests that the Judge reserve her ruling until after the hearing has closed and the record is complete.

III.    CONCLUSION

For the reasons set forth above, the General Counsel respectfully requests that Respondent's motion be denied in its entirety.

**DATED AT** Oakland, California this 22nd day of June 2018.

Edris W.I. Rodriguez Ritchie, Field Attorney
Noah Garber, Field Attorney
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, California 94612-5224

9

# EXHIBIT 1



22-60493.3430

INTERNET
FORM NLRB-501
(2-08)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case<br>32-CA-197020 | Date Filed<br>04/17/2017 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No. (510) 249-3650 or<br>(650) 681-5454 |
|---|---|---|
| | | c. Cell No. (650) 454-5386 |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri | g. e-Mail<br>arnnon@tesla.com |
| | | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

See Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Michael Sanchez

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>25225 Soto Road<br>Hayward, California 94544 | 4b. Tel. No. |
|---|---|
| | 4c. Cell No. (510) 388-5058 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By [signature]    Michael Sanchez<br>*(signature of representative or person making charge)*    *(Print/type name and title, if office)* | Tel. No. |
|---|---|
| | Office, if any, Cell No.<br>(510) 388-5058 |
| | Fax No. |
| Address    25225 Soto Road, Hayward, California 94544    *(date)* | e-Mail<br>raidereapermjg@yahoo.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

# EXHIBIT 2



22-60493.3433

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197020 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
|---|---|---|
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Amnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>amnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>Michael Sanchez | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>25225 Soto Rd, Hayward, CA 94544-2807 | 4b. Tel. No. |
| | 4c. Cell No.<br>(510)388-5058 |
| | 4d. Fax No. |
| | 4e. e-Mail<br>raidereapermjo@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By: *Margo A. Feinberg*<br>(signature of representative or person making charge)<br><br>Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>Print Name and Title<br><br><br>Date: 7/28/17 | Tel. No.<br><br>Office, if any, Cell No.<br>(323) 655-4700<br>Fax No.<br>(323) 655-4488<br>e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.3434

# EXHIBIT 3

# EXHIBIT 3

22-60493.3435

FORM EXEMPT UNDER 44 U S C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | 32-CA-197058 | Date Filed | 04/17/2017 |
|------|--------------|------------|------------|

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
|---|---|
| Tesla Motors Corporation | c. Cell No. (650) 454-5386 |
| | f. Fax No. |

| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | f. Fax No. |
|---|---|---|
| 45500 Fremont Boulevard Fremont, California 94538 | Vice President of HR, Arnnon Geshuri | g. e-Mail arnnon@tesla.com |
| | | h. Number of workers employed Approximately 7,000 |

| l. Type of Establishment(factory, mine, wholesaler, etc.) | j. Identify principal product or service |
|---|---|
| Factory | Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Jonathan Galescu

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. |
|---|---|
| 361 Carousel Drive Vallejo, California 94589 | 4c. Cell No. (925) 822-8774 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _(signature of representative or person making charge)_ | Jonathan Galescu _(Print/type name and title or office, if any)_ | Tel. No. |
|---|---|---|
| | | Office, if any, Cell No. (925) 822-8774 |
| | | Fax No. |
| Address 361 Carousel Drive, Vallejo, California 94589 | 4/17/17 _(date)_ | e-Mail |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary, however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.3436

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

# EXHIBIT 4

# EXHIBIT 4

22-60493.3438

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| | Case | Date Filed |
| | 32-CA-197058 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Arnnon Geshuri Vice President of HR | g. e-Mail arnnon@tesla.com |
| | | h. Dispute Location (City and State) Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | |
|---|---|
| Jonathan Galescu | |
| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
| 361 Carousel Dr, Vallejo, CA 94589-4334 | |
| | 4c. Cell No. (925)822-8774 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. |
|---|---|---|
| By: *Margo A. Feinberg* (signature of representative or person making charge) | Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Office, if any, Cell No. (323) 655-4700 |
| | | Fax No. (323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# EXHIBIT 5



# EXHIBIT 5

22-60493.3440

INTERNET
FORM NLRB-501
(2-08)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|---|---|
| 32-CA-197091 | 04/18/2017 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
|---|---|
| Tesla Motors Corporation | c. Cell No. (650) 454-5386 |
| | f. Fax No. |

| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | g. e-Mail |
|---|---|---|
| 45500 Fremont Boulevard Fremont, California 94538 | Vice President of HR, Arnnon Geshuri | arnnon@tesla.com |
| | | h. Number of workers employed Approximately 7,000 |

| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service |
|---|---|
| Factory | Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Richard Ortiz

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. |
|---|---|
| 37607 Walnut Newark, California 94560 | 4c. Cell No. (510) 943-2723 |
| | 4d. Fax No. |
| | 4e. e-Mail richardortiz1966@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _(signature of representative or person making charge)_ | Richard Ortiz _(Print/type name and title or office, if any)_ | Tel. No. |
|---|---|---|
| | | Office, if any, Cell No. (510) 943-2723 |
| | | Fax No. |

Address   37607 Walnut, Newark, California 94560

4/18/17 (date)

e-Mail   richardortiz1966@yahoo.com

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

# EXHIBIT 6



# EXHIBIT 6

22-60493.3443

Form NLRB - 501  (2-08)

<table>
<tr><td colspan="2">UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br><b>FIRST AMENDED CHARGE AGAINST EMPLOYER</b><br>INSTRUCTIONS:</td><td colspan="2"><b>DO NOT WRITE IN THIS SPACE</b></td></tr>
<tr><td colspan="2"></td><td>Case</td><td>Date Filed</td></tr>
<tr><td colspan="2"></td><td>32-CA-197091</td><td>7-28-2017</td></tr>
</table>

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

<table>
<tr><td>a. Name of Employer<br>Tesla Motors Corporation</td><td colspan="2">b. Tel. No.<br>(510)249-3650</td></tr>
<tr><td></td><td colspan="2">c. Cell No.<br>(650)454-5386</td></tr>
<tr><td>d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326</td><td>e. Employer Representative<br>Arnnon Geshuri<br>Vice President of HR</td><td>f. Fax No.</td></tr>
<tr><td></td><td></td><td>g. e-Mail<br>arnnon@tesla.com</td></tr>
<tr><td></td><td></td><td>h. Dispute Location (City and State)<br>Fremont, CA</td></tr>
<tr><td>i. Type of Establishment (factory, nursing home, hotel)<br>Factory</td><td>j. Principal Product or Service<br>Automotive Manufacturing</td><td>k. Number of workers at dispute location<br>Approximately 7,000</td></tr>
</table>

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

<table>
<tr><td colspan="2">3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>Richard Ortiz</td></tr>
<tr><td>4a. Address (street and number, city, state, and ZIP code)<br>37607 Walnut, Newark, CA 94560</td><td>4b. Tel. No.</td></tr>
<tr><td></td><td>4c. Cell No.<br>(510)943-2723</td></tr>
<tr><td></td><td>4d. Fax No.</td></tr>
<tr><td></td><td>4e. e-Mail<br>richardortiz1966@yahoo.com</td></tr>
</table>

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

<table>
<tr><td colspan="2">6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.</td><td>Tel. No.</td></tr>
<tr><td>By: <i>Margo a. Feinberg</i><br>(signature of representative or person making charge)</td><td>Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>Print Name and Title</td><td>Office, if any, Cell No.<br>(323) 655-4700</td></tr>
<tr><td>Address: Schwartz, Steinsapir, Dohrmann &<br>Sommers, LLP, 6300 Wilshire Blvd, Suite<br>2000, L.A., CA 90048</td><td>Date: 7/28/17</td><td>Fax No.<br>(323) 655-4488<br>e-Mail<br>margo@ssdslaw.com</td></tr>
</table>

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)
### PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# EXHIBIT 7

# EXHIBIT 7

22-60493.3445

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case   32-CA-197197 | Date Filed   04/19/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. (510) 249-3650 or |
|---|---|---|
| Tesla Motors Corporation | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)* 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Vice President of HR, Amnon Geshuri | g. e-Mail  amnon@tesla.com |
| | | h. Number of workers employed  Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)* 8000 East Jefferson Avenue Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By *Margo A. Feinberg*
(signature of representative or person making charge)

Attorney for Charging Party,
Margo A. Feinberg, Esq.
(Print/type name and title or office, if any)

Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000, L.A., CA 90048
Address

4/19/17
(date)

| Tel. No. (323) 655-4700 |
|---|
| Office, if any, Cell No. |
| Fax No. (323) 655-4488 |
| e-Mail  margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

# EXHIBIT 8

# EXHIBIT 8

22-60493.3448

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
| --- | --- |
| Case | Date Filed |
| 32-CA-197197 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | | |
| --- | --- | --- |
| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Arnnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>arnnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| | |
| --- | --- |
| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | |
| 4a. Address (street and number, city, state, and ZIP code)<br>8000 E Jefferson Ave, Detroit, MI 48214-2699 | 4b. Tel. No. |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO

| | |
| --- | --- |
| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By: *Margo A. Feinberg*   Margo Feinberg, Esq.,<br>(signature of representative or person making charge)   Attorney for Charging Party<br>   Print Name and Title<br><br>Address: Schwartz, Steinsapir, Dohrmann &   Date: 7/28/17<br>Sommers, LLP, 6300 Wilshire Blvd, Suite<br>2000, L.A., CA 90048 | Tel. No.<br><br>Office, if any, Cell No.<br>(323) 655-4700<br><br>Fax No.<br>(323) 655-4488<br><br>e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# EXHIBIT 9

# EXHIBIT 9

22-60493.3450

INTERNET
FORM NLRB-501
(2-08)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|-----------|
| 32-CA-200530 | 06/12/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br>Tesla Motors Corporation | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
| | c. Cell No. (650) 454-5386 |
| | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Amnon Geshuri |
| | g. e-Mail arnnon@tesla.com |
| | h. Number of workers employed Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)*<br>8000 East Jefferson Avenue<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By *Margo A. Feinberg*
*(signature of representative or person making charge)*

Attorney for Charging Party,
Margo A. Feinberg, Esq.
*(Print/type name and title or office, if any)*

Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000, L.A., CA 90048
Address

6/12/17
*(date)*

| | |
|---|---|
| Tel. No. (323) 655-4700 | |
| Office, if any, Cell No. | |
| Fax No. (323) 655-4488 | |
| e-Mail margo@ssdslaw.com | |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## ATTACHMENT A

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.

ID 326809

# EXHIBIT 10



# EXHIBIT 10

22-60493.3453

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| | Case | Date Filed |
| | 32-CA-200530 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Amnon Geshuri Vice President of HR | |
| | | g. e-Mail |
| | | amnon@tesla.com |
| | | h. Dispute Location (City and State) |
| | | Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | | |
|---|---|---|
| International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO | | |
| 4a. Address (street and number, city, state, and ZIP code) | | 4b. Tel. No. |
| 8000 E JEFFERSON AVE, DETROIT, MI 48214-2699 | | (313)926-5000 |
| | | 4c. Cell No. |
| | | 4d. Fax No. |
| | | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By: *[signature]* Margo A. Feinberg (signature of representative or person making charge) | Office, if any, Cell No. (323) 655-4700 |
| Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Fax No. (323) 655-4488 |
| Address: 8000 E JEFFERSON AVE, DETROIT, MI 48214-2699     Date: 7/28/17 | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# EXHIBIT 11



22-60493.3455

Case: 22-60493   Document: 44-6   Page: 235   Date Filed: 10/25/2022

INTERNET
FORM NLRB-501
(2-08)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|-----------|
| 32-CA-208614 | 10-25-2017 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla, Inc. | | |
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | |
| 45500 Fremont Boulevard | Gaby Toledano, Chief People Officer | g. e-Mail |
| Fremont, California 94538 | | gaby@tesla.com |
| | | h. Number of workers employed |
| | | 10,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service | |
| Factory | Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) and (4) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | | |
|---|---|---|
| International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO | | |
| 4a. Address (Street and number, city, state, and ZIP code) | | 4b. Tel. No. (313) 926-5000 |
| 8000 East Jefferson | | |
| Detroit, Michigan 48214 | | 4c. Cell No. |
| | | 4d. Fax No. |
| | | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By | | Tel. No. (323) 655-4700 |
|---|---|---|
| *(signature of representative or person making charge)* | Margo A. Feinberg, Esq., Attorney for Charging Party *(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | | Fax No. (323) 655-4488 |
| Schwartz, Steinsapir, Dohrmann & Sommers LLP | 10/25/17 | e-Mail margo@ssdslaw.com |
| Address 6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048 | *(date)* | |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.3456

## Attachment A

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees to discourage protected concerted activity by other employees.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, intimidating and harassing employees for their Section 7 activities.

By these and other acts, Tesla, Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

22-60493.3457

# EXHIBIT 12

# EXHIBIT 12

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-208614 | 3/13/2018 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Gaby Toledano<br>Chief People Officer | f. Fax No. |
| | | g. e-Mail<br>gaby@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>10000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (*set forth a clear and concise statement of the facts constituting the alleged unfair labor practices*)

Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity..

3. Full name of party filing charge (*if labor organization, give full name, including local name and number*)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA
INTERNATIONAL UNION (UAW), AFL-CIO

| 4a. Address (street and number, city, state, and ZIP code)<br>8000 East Jefferson Avenue, Detroit, MI 48214 | 4b. Tel. No.<br>313-926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail<br>sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (*to be filled in when charge is filed by a labor organization*)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No.<br>323-655-4700 |
|---|---|---|
| By: *Margo A. Feinberg*<br>(signature of representative or person making charge) | Margo A. Feinberg, Esq.<br>Attorney for Charging Party<br>Print Name and Title | Office, if any, Cell No. |
| Address: 8000 East Jefferson Avenue, Detroit, MI 48214 | Date: | Fax No.<br>323-655-4488 |
| | | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.3459

# EXHIBIT 13

# EXHIBIT 13

22-60493.3460

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

and

MICHAEL SANCHEZ, an Individual                    Case 32-CA-197020

and

JONATHAN GALESCU,  an Individual                  Case 32-CA-197058

and

RICHARD ORTIZ, an Individual                      Case 32-CA-197091

and

INTERNATIONAL UNION, UNITED AUTOMOBILE,           Case 32-CA-197197
AEROSPACE AND AGRICULTURAL WORKERS OF             Case 32-CA-200530
AMERICA, AFL-CIO                                  Case 32-CA-208614
                                                  Case 32-CA-210879


## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.17 of the Rules and Regulations of the National Labor Relations Board (the Board), the Second Amended Consolidated Complaint and Notice of Hearing (Complaint) issued on March 30, 2018, is amended as follows:

**Amend paragraph 5** of the Complaint to include two more individuals as a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of Respondent within the meaning of Section 2(13) of the Act. The two individuals to include are:

Gaby Toledano          -          Respondent's Chief People Officer

Josh Hedges            -          Director of HR for Production

22-60493.3461

**Amend paragraph 7** to include the following new allegations as 7(y) of the Complaint:

(y)    On about June 7, 2017, Respondent, in a conference room at its Fremont Facility, during a meeting held by CEO Elon Musk and Chief People Officer Gaby Toledano:

(i) by Elon Musk, solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity.

(ii) by Elon Musk, informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances; and

(iii) by Gaby Toledano, restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's Facility wanted a union and asking them why employees would want to pay union dues.

**Amend paragraph 8(d)** to correct the year Jose Moran was issued a disciplinary warning. The existing paragraph 8(d) should be replaced with the following paragraph:

(d)    On or about October 19, 2017, Respondent issued a disciplinary warning to Jose Moran.

## ANSWER REQUIREMENT

RESPONDENT IS FURTHER NOTIFIED that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, Respondent must file an answer to the above Amendment to Second Amended Consolidated Complaint. The answer must be **received by this office on or before June 18, 2018, or postmarked on or before June 17, 2018**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

22-60493.3462

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on File Case Documents, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amendment to Second Amended Consolidated Complaint are true.

## NOTICE OF HEARING LOCATION

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Oakland, California 94612, at Conference Room H on the 5th Floor, and on consecutive days thereafter until

3

22-60493.3463

concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 4th day of June 2018.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

4

Form NLRB-4338
(2-90)

## UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

### NOTICE

Cases:  32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end. An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.

However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds thereafter must be set forth in *detail;*

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request;

*and*

(5) Copies must be simultaneously served on all other parties (*listed below*), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Amnon Geshuri
Tesla Motors Corporation
45500 Fremont Blvd.
Fremont, CA  94538

Gaby Toledano
45500 Fremont Blvd
Fremont, CA 94538-6326

Richard Ortiz
37607 Walnut
Newark, CA  94560

Mark S. Ross, Attorney
Sheppard Mullin Richter
& Hampton LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers LLP
6300 Wilshire Bld., Suite 2000
Los Angeles, CA  90048

Michael Sanchez
25225 Soto Road
Hayward, CA  94544

Jonathan Galescu
361 Carousel Drive
Vallejo, CA  94589

Susan Reed
IU, UA, A&AWA, AFL-CIO
8000 E Jefferson Avenue
Detroit, MI  48214

22-60493.3465

# EXHIBIT 14

# EXHIBIT 14

22-60493.3466

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case No. 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case No. 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case No. 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case No. 32-CA-197197<br>Case No. 32-CA-200530<br>Case No. 32-CA-208614<br>Case No. 32-CA-210879 |

**RESPONDENT TESLA, INC.'S ANSWER TO
AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT**

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:   (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.3467

## RESPONDENT TESLA, INC.'S ANSWER TO
## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Amendment to Second Amended Consolidated Complaint ("Complaint"), Respondent denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.    In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.    (a)    In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

(b)    In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

(c)    In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.    In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.    In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.    In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Gaby Toledano is the Chief People Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha,

22-60493.3468

Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors." Respondent admits Elon Musk, Gaby Toledano, Josh Hedges, Mark Lipscomb, Emee Cruz, Liza Lipson, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi, David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act. Respondent admits that Lauren Holcomb has been an agent of Respondent within the meaning of Section 2(13) of the Act. Respondent denies each and every remaining allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "Red Shirt Supervisor No. 1," "John Doe," or "Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title. She is currently a "Sr. EHS Program Manager, Training & Education." Her previous title was "Sr. EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title. She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He was the "Director, Global Environmental Health and Safety." The Complaint misidentifies David Zweig's title. He is a "Senior Human Resources Partner." The Complaint misidentifies Ricky Gecewich's title. He is a "Sr. Employee Relations Manager." His previous title was "Principal Employee Relations Partner." The Complaint misidentifies Dave Teston's title. He is a "Associate Manager, Training His previous title was "Associate Manager, Manufacturing." The Complaint misidentifies Josh Hedge's title. He is currently a "Sr. Director of HR".

6.    In response to Paragraph 6 of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.    In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs 7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but

22-60493.3469

those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete acknowledgement, and further denies that the acknowledgement violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality Agreement." The acknowledgement was an acknowledgement of the underlying Employee Proprietary Information and Inventions Agreement. Respondent also denies that this agreement was in effect since October 2016. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.    In response to Paragraph 7(b) of the Complaint, Respondent denies each and every allegation contained therein.

9.    In response to Paragraph 7(c) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos. 1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

10.    In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 1" is not identified in the Complaint.

11.    In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 1" is not identified in the Complaint.

12.    In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 3" is not identified in the Complaint.

22-60493.3470

13.     In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 4" is not identified in the Complaint.

14.     In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" is not identified in the Complaint.

15.     In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the General Counsel)" are not identified in the Complaint.

16.     In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and every allegation contained therein.

17.     In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every allegation contained therein.

18.     In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every allegation contained therein.

19.     In response to Paragraph 7(k) of the Complaint, Respondent denies each and every allegation contained therein.

20.     Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from Respondent's General Assembly Expectations applicable to production associates in General Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete General Assembly Expectations, and further denies that the General Assembly Expectations violates the Act. Respondent also denies that the General Assembly Expectations

22-60493.3471

were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21.    In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22.    In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23.    In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24.    In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25.    In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26.    In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27.    In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.3472

28.    In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29.    In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30.    In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31.    In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32.    In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33.    In response to Paragraph 7(y) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

34.    In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

35.    In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

36.    In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

37.    In response to Paragraph 8(d) of the Complaint, Respondent admits the allegation contained therein.

38.    In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

39.    In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.3473

40.     In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

41.     In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

42.     In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

43.     Respondent reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

## AFFIRMATIVE DEFENSES

1.     The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.     To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.     The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.     Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

5.     Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing

22-60493.3474

facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets. Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.     The Complaint does not state a claim upon which relief can be granted.

7.     Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.     Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.     Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.     Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

11.     The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.     Respondent reserves the right to modify or supplement defenses as may be appropriate.

22-60493.3475

Respondent respectfully requests that the Administrative Law Judge dismiss the

Complaint in its entirety and grant Respondent all appropriate relief.

Dated:  June 18, 2018

By     _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

22-60493.3476

# EXHIBIT 15

# EXHIBIT 15



22-60493.3477

## UNITED STATES OF AMERICA

## BEFORE THE NATIONAL LABOR RELATIONS BOARD

## REGION 32

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case No. 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case No. 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case No. 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case No. 32-CA-197197<br>Case No. 32-CA-200530<br>Case No. 32-CA-208614<br>Case No. 32-CA-210879 |

## RESPONDENT TESLA, INC.'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.3478

## RESPONDENT'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Second Amended Consolidated Complaint ("Complaint"), Respondent does not object to consolidation of the charges cited above, but denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.     In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.     (a)     In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

(b)     In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

(c)     In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.     In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.     In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.     In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production

22-60493.3479

Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha, Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors." Respondent admits Elon Musk, Mark Lipscomb, Emee Cruz, Liza Lipson, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi, David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act. Respondent denies that Lauren Holcomb has been a supervisor of Respondent within the meaning of Section 2(11) of the Act and agent of Respondent within the meaning of Section 2(13) of the Act based on lack of knowledge or information sufficient to form a belief as to the truth or falsity; counsel for Respondent's investigation is only now beginning and reserves the right to amend following conclusion of counsel's investigation. Respondent denies each and every remaining allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "Red Shirt Supervisor No. 1," "John Doe," or "Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title. She is currently a "Sr. EHS Program Manager, Training & Education." Her previous title was "Sr. EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title. She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He was the "Director, Global Environmental Health and Safety." The Complaint misidentifies David Zweig's title. He is a "Senior Human Resources Partner." The Complaint misidentifies Ricky Gecewich's title. He is a "Sr. Employee Relations Manager." His previous title was "Principal Employee Relations Partner." The Complaint misidentifies Dave Teston's title. He is a "Associate Manager, Training  His previous title was "Associate Manager, Manufacturing."

6.     In response to Paragraph 6 of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a

22-60493.3480

belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.      In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs 7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete acknowledgement, and further denies that the acknowledgement violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality Agreement." The acknowledgement was an acknowledgement of the underlying Employee Proprietary Information and Inventions Agreement. Respondent also denies that this agreement was in effect since October 2016. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.      In response to Paragraph 7(b) of the Complaint, Respondent denies each and every allegation contained therein.

9.      In response to Paragraph 7(c) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos. 1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

10.      In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 1" is not identified in the Complaint.

11.      In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 1" is not identified in the Complaint.

22-60493.3481

12.   In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 3" is not identified in the Complaint.

13.   In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 4" is not identified in the Complaint.

14.   In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" is not identified in the Complaint.

15.   In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the General Counsel)" are not identified in the Complaint.

16.   In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and every allegation contained therein.

17.   In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every allegation contained therein.

18.   In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every allegation contained therein.

19.   In response to Paragraph 7(k) of the Complaint, Respondent denies each and every allegation contained therein.

20.   Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from Respondent's General Assembly Expectations applicable to production associates in General

Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete General Assembly Expectations, and further denies that the General Assembly Expectations violates the Act. Respondent also denies that the General Assembly Expectations were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21.    In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22.    In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23.    In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24.    In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25.    In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26.    In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a

22-60493.3483

belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27.    In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

28.    In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29.    In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30.    In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31.    In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32.    In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33.    In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

34.    In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

35.    In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

36.    In response to Paragraph 8(d) of the Complaint, Respondent denies each and every allegation contained therein.

37.    In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.3484

38.     In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

39.     In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

40.     In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

41.     In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

42.     Counsel for Respondent's investigation is only now beginning and reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

## AFFIRMATIVE DEFENSES

1.     The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.     To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.     The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.     Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

22-60493.3485

5.      Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets.  Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.      The Complaint does not state a claim upon which relief can be granted.

7.      Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.      Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.      Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests.  Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.     Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

SMRH:485956653.5

22-60493.3486

11.    The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.    Respondent reserves the right to modify or supplement defenses as may be appropriate.


Respondent respectfully requests that the Administrative Law Judge dismiss the Complaint in its entirety and grant Respondent all appropriate relief.


Dated:  April 23, 2018


By    _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

22-60493.3487

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On April 23, 2018, I e-filed with the NLRB and served true copies of the document(s) described as **RESPONDENT TESLA, INC.'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT** on the interested parties in this action via the U.S. Postal Service, First Class Mail and electronic mail (if available) as follows:

Margo A. Feinberg, Esq.                                          Electronic & U.S. Mail
Schwartz, Steinsapir, Dohrmann & Sommers LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
margo@ssdslaw.com

Jonathan Galescu                                                   U.S. Mail
361 Carousel Drive
Vallejo, CA  94589

Richard Ortiz                                                          U.S. Mail
37607 Walnut
Newark, CA  94560

Michael Sanchez                                                    U.S. Mail
25225 Soto Road
Hayward, CA  94544

Susan Reed                                                           U.S. Mail
UAW
8000 E. Jefferson Avenue
Detroit, MI  48214

Edris Rodriguez Ritchie                                        Electronic & U.S. Mail
Field Attorney
NLRB – Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612
Edris.RodriguezRitchie@nlrb.gov

22-60493.3488

Valerie Hardy-Mahoney                                      U.S. Mail
Regional Director
NLRB – Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612


**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelopes for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the persons with e-mail addresses as listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 23, 2018, at San Francisco, California.


_Sarah Smith_
Sarah Smith

22-60493.3489

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case No. 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case No. 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case No. 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case No. 32-CA-197197<br>Case No. 32-CA-200530<br>Case No. 32-CA-208614<br>Case No. 32-CA-210879 |

**RESPONDENT TESLA, INC.'S ANSWER TO
AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT**

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.3490

1(bbb)

## RESPONDENT TESLA, INC.'S ANSWER TO
## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Amendment to Second Amended Consolidated Complaint ("Complaint"), Respondent denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.    In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.    (a)    In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

    (b)    In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

    (c)    In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.    In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.    In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.    In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Gaby Toledano is the Chief People Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha,

22-60493.3491

EXHIBIT NO. GC-1(bbb) RECEIVED ✓ REJECTED _____

32-CA-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 11 DATE: 9-25-18 REPORTER: NH

Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors." Respondent admits Elon Musk, Gaby Toledano, Josh Hedges, Mark Lipscomb, Emee Cruz, Liza Lipson, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi, David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act. Respondent admits that Lauren Holcomb has been an agent of Respondent within the meaning of Section 2(13) of the Act. Respondent denies each and every remaining allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "Red Shirt Supervisor No. 1," "John Doe," or "Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title. She is currently a "Sr. EHS Program Manager, Training & Education." Her previous title was "Sr. EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title. She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He was the "Director, Global Environmental Health and Safety." The Complaint misidentifies David Zweig's title. He is a "Senior Human Resources Partner." The Complaint misidentifies Ricky Gecewich's title. He is a "Sr. Employee Relations Manager." His previous title was "Principal Employee Relations Partner." The Complaint misidentifies Dave Teston's title. He is a "Associate Manager, Training His previous title was "Associate Manager, Manufacturing." The Complaint misidentifies Josh Hedge's title. He is currently a "Sr. Director of HR".

6.      In response to Paragraph 6 of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.      In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs 7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but

22-60493.3493

those excerpts have been taken out of context and Respondent denies that they are accurate

statements of the complete acknowledgement, and further denies that the acknowledgement

violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality

Agreement." The acknowledgement was an acknowledgement of the underlying Employee

Proprietary Information and Inventions Agreement. Respondent also denies that this agreement

was in effect since October 2016. Except as so specifically admitted, Respondent denies each

and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.       In response to Paragraph 7(b) of the Complaint, Respondent denies each and every

allegation contained therein.

9.       In response to Paragraph 7(c) of the Complaint, Respondent denies each and every

allegation contained therein and does not have knowledge or information sufficient to form a

belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos.

1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory

identification and security requirements for all employees and visitors to its Fremont, California

manufacturing facility violates the Act.

10.      In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies

each and every allegation contained therein and does not have knowledge or information

sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security

Guard No. 1" is not identified in the Complaint.

11.      In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies

each and every allegation contained therein and does not have knowledge or information

sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security

Guard No. 1" is not identified in the Complaint.

12.      In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies

each and every allegation contained therein and does not have knowledge or information

sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security

Guard No. 3" is not identified in the Complaint.

22-60493.3494

13. In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 4" is not identified in the Complaint.

14. In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" is not identified in the Complaint.

15. In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the General Counsel)" are not identified in the Complaint.

16. In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and every allegation contained therein.

17. In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every allegation contained therein.

18. In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every allegation contained therein.

19. In response to Paragraph 7(k) of the Complaint, Respondent denies each and every allegation contained therein.

20. Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from Respondent's General Assembly Expectations applicable to production associates in General Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete General Assembly Expectations, and further denies that the General Assembly Expectations violates the Act. Respondent also denies that the General Assembly Expectations

22-60493.3495

were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21.    In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22.    In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23.    In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24.    In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25.    In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26.    In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27.    In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.3496

28.    In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29.    In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30.    In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31.    In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32.    In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33.    In response to Paragraph 7(y) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

34.    In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

35.    In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

36.    In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

37.    In response to Paragraph 8(d) of the Complaint, Respondent admits the allegation contained therein.

38.    In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

39.    In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.3497

40.    In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

41.    In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

42.    In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

43.    Respondent reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

## AFFIRMATIVE DEFENSES

1.    The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.    To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.    The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.    Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

5.    Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing

22-60493.3498

facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets. Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.    The Complaint does not state a claim upon which relief can be granted.

7.    Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.    Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.    Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.    Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

11.    The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.    Respondent reserves the right to modify or supplement defenses as may be appropriate.

22-60493.3499

Respondent respectfully requests that the Administrative Law Judge dismiss the Complaint in its entirety and grant Respondent all appropriate relief.

Dated: June 18, 2018

By     _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

22-60493.3500

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED** | |
| **AUTOMOBILE, AEROSPACE AND** | |
| **AGRICULTURE WORKERS OF** | |
| **AMERICA, AFL-CIO** | |

**RESPONDENT'S OPPOSITION TO THE GENERAL COUNSEL'S REQUEST FOR SPECIAL PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS**

A.      **Introduction**[1]

On June 6, 2018, Administrative Law Judge Amita Tracy ("ALJ" or "Judge Tracy")

denied the General Counsel's Motion to Take Video Testimony of Will Locklear ("Motion",

attached hereto as **Exhibit A**) during the hearing on the above-captioned cases (the "Order",

---

[1] The General Counsel did not attempt to call William Locklear to testify during the hearing conducted June 11, 2018 through June 14, 2018.  Because the General Counsel has not rested and the hearing will not resume until the week of September 24, 2018, the Board has the luxury of time to consider and address the procedural issue raised in the General Counsel's Appeal.

-1-

22-60493.3501

1(aaa)

attached hereto as **Exhibit B**). Observing that Locklear is a "critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including [her] observation of his demeanor", Judge Tracy reasoned that any claimed "significant financial burden" to him and availability of "adequate video equipment" were insufficient to "override the need for in-person testimony of an alleged discriminatee." She also noted that the General Counsel's Motion did not include all of the information required by Section 102.35(c)(1) of the Board's Rules. Because Judge Tracy's determination that the General Counsel failed to show "good cause based on compelling circumstances, and under appropriate safeguards" to permit Locklear to testify via videoconference as required by Board Rule 102.35(c)(1) is well supported by the record evidence, and the General Counsel has not established that Judge Tracy abused her discretion, the Board should deny the instant Appeal.

Under Board law, in-person testimony at trial is preferred. *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999). However, under the Board's Rules, upon a showing of "good cause based on compelling circumstances" and "appropriate safeguards," an ALJ may permit video testimony from a different location. Board's Rules § 102.35(c); *see also* Fed.R.Civ.P. 43(a). Although the Board's Rules do not further define the standard, FRCP 43 has a nearly identical standard. "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness." Advisory Committee Notes to Fed.R.Civ.P. 43(a) (1996 Amendment). Mere inconvenience is insufficient to demonstrate "good cause." *Id.* ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial").

**B.    The Cost of Locklear's Travel from New York to California Is Not a "Compelling Circumstance"**

Respondent's Opposition to General
Counsel's Special Permission to Appeal

22-60493.3503

EXHIBIT NO. GCY(999) RECEIVED ✓ REJECTED

32 CH-197020

CASE NO. _____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 37 DATE: 9-25-18 REPORTER: DM

In its Request For Special Permission to Appeal the Administrative Law Judge's Amended Order Denying General Counsel's Motion to Permit Videoconference Testimony of a Critical Third-Party Witness ("Appeal", attached hereto as **Exhibit C**), the General Counsel asserts that the use of video testimony would "alleviate the economic burden to Mr. Locklear from flying 3,000 miles cross-country, paying for his lodging, transport to/from the airport, and meals." As noted in Respondent's opposition to the Motion, attached hereto as **Exhibit D**, courts have rejected the cost of travel as insufficient to warrant "compelling circumstances," particularly where the cost is not unforeseen. *See Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012) (plaintiffs' expenses to travel out of the country to prosecute their own case are not unforeseen and do not rise to the level of good cause); *see also Niemeyer v. Ford Motor Co.*, 2012 WL 5199145 (D. Nev. Oct. 18, 2012). The First Amended Charge filed December 6, 2017 in Case 32-CA-210879, attached hereto as **Exhibit E**, alleges that Tesla "interfered with the protected Section 7 rights of William Locklear" by "intimidating him, creating the impression of surveillance of him", "subjecting him to heightened supervisory scrutiny," "interrogating him concerning his support for and activities on behalf of the [Union]", and "disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities." Locklear moved to New York in or around January 2018, nearly 3 months before the General Counsel issued the Second Amended Consolidated Complaint on March 31, 2018. Suffice it to say that the likely cost of Locklear's travel from New York to California to testify in these proceedings was by no means unforeseen to the Region when it noticed the hearing. It is accordingly not a "compelling circumstance" that warrants the use of video testimony.

SMRH:486634019.1

22-60493.3504

Regardless, it remains unclear exactly why Locklear will be forced to pay his own travel expenses unless the General Counsel's Appeal is granted. Surely a refusal by the General Counsel to pay its witnesses' fees and travel expenses as required by Board Rule 102.32 and 28 U.S.C. 1825 is not a cognizable "compelling circumstance." Moreover, if "budgetary constraints" did not permit the General Counsel to subpoena Locklear to testify in California notwithstanding its belief that it is "inappropriate" to ask "a former factory worker, to bear the expense of travel" insofar as he is "a third-party witness [appearing] on behalf of another Charging Party", it offers no explanation for why that Charging Party—the United Automobiles Workers (UAW)—has not assumed responsibility for Locklear's travel expenses by subpoenaing his testimony. Regardless, neither the Region's noncompliance with Board Rules and federal law nor the UAW's reluctance to reimburse the cross-country travel expenses incurred by an employee forced to testify on its behalf constitute "compelling circumstances" that warrant the use of video testimony. To hold otherwise would sanction its use by out-of-state witnesses in all proceedings, a result that runs contrary to the Board's longstanding preference for in-person testimony. *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999).

**C.    Locklear's Status as a "Critical Third-Party Witness" Underscores the Need for His In-Person Testimony**

While the Board has authorized the use of video conference testimony where an out-of-state witness is a third-party or peripheral witnesses with a limited scope of testimony, *see, e.g., Oncur Electric Delivery Co.*, 364 NLRB No. 58 (2016) (affirming the judge's ruling allowing respondent's former employee to testify via videoconference regarding certain background facts), that is not the case here. As the General Counsel notes, "Locklear is the *only* witness that can establish the unfair labor practices alleged in the Complaint—which occurred in two separate one-on-one conversations with Respondent's supervisors." (Appeal, Ex. C, p. 5). Judge Tracy

Respondent's Opposition to General
Counsel's Special Permission to Appeal

22-60493.3505

accordingly required his in-person testimony insofar as he is a "critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including [her] observation of his demeanor." (Order, Ex. B, p. 2).

Judge Tracy's ruling is entirely consistent with Board law and the principles that support its strong preference for live oral testimony. S*ee Westside Painting, Inc.*, 328 NLRB 796, 797 (1999) ("The opportunity to observe the demeanor of a witness is particularly important in Board proceedings because…a judge is often presented with situations where there is conflicting testimony and credibility determinations are central to the resolution of the case."); *see also Kapstone Paper and Packing Corp.*, 366 NLRB No. 63 (2018) (taking into account the witness's demeanor was "composed and steady" thus more credible); *Space Needle, LLC*, 362 NLRB No. 11 (2015) (observed that the witness was carefully watching counsel's reaction to her answers, and therefore not credible).   She accordingly acted well within her discretion when she refused to allow an alleged discriminatee to testify via videoconference so that she could observe his demeanor in person to make a credibility determination that will be critically important to these proceedings. *Cf. Oncur Electric Delivery Co.*, supra, JD slip. op. at 8 (affirming judge's ruling that permitted videoconference testimony by witness that was "not alleged as a discriminatee and was not a direct witness to any of the events underlying the complaint"); *cf. EF International Language Schools, Inc.*, 363 NLRB No. 20, slip op. at 1 n. 1 (2015) (affirming judge's ruling that permitted videoconference testimony by non-discriminatee witness).

Moreover, the General Counsel's plainly untrue argument that, unless its Appeal is granted, Judge Tracy's order will "effectively require[] the General Counsel to forgo pursuit of paragraphs 7(w) and (x) of the Complaint" is entirely unavailing. Judge Tracy graciously suggested that she might even travel to New York to receive Locklear's in-person testimony if

SMRH:486634019.1

22-60493.3506

the issue is not resolved before the hearing re-opens in September.[2]   The parties have nearly 3 months to make arrangements for Locklear to either testify in California or for the parties and Judge Tracy to travel to New York to receive his testimony there.   Yet notwithstanding the myriad options available to the General Counsel to facilitate Locklear's in-person testimony in these proceedings, he has instead elected to file this Appeal and accuse Judge Tracy of imposing a "manifest injustice" by ordering him to prosecute his case in the exact same manner that Respondent will be forced to defend it.   He has it backwards.   By attempting to retain the benefit of in-person examination of Respondent's key witnesses while depriving Respondent the same opportunity with respect to his key witnesses, it is the General Counsel—not Judge Tracy—that seeks a manifestly unjust result.

### D.   The General Counsel Still Fails to Satisfy the Requirements of Sections 102.35(c)(1)-(2)

As noted by Judge Tracy, the General Counsel's Motion failed to set forth Locklear's address, the matter in which Locklear intends to testify, and the electronic address of the submission as required by Board Rule 102.35(c)(1).   Though the Appeal finally specifies the matter in which Locklear intends to testify, it incredibly still fails to set forth his address or the electronic address of the transmission.   It additionally fails to comply with the Board Rule 102.35(c)(2), which sets forth the requirements for appropriate safeguards such that the Administrative Law Judge may assess the witness's credibility and the parties have a meaningful opportunity to examine and cross-examine the witness.   The General Counsel still makes no assurance that Respondent or its representative has the opportunity to be present at the location,

---

[2] Given the clear prejudice Respondent will suffer should it be forced to provide its exhibits in advance to the General Counsel and cross-examine Locklear while he testifies via videoconference, Respondent is also willing to travel to New York to ensure that it has the opportunity to cross-examine Locklear in person.

SMRH:486634019.1

and does not provide for any technology assistance. Thus, just as Judge Tracy properly denied the General Counsel's Motion for, in part, failing to comply with the Board's Rules, the Board should deny the General Counsel's Appeal for the same reason.

### E.    Conclusion

The General Counsel's Appeal seeks to reverse Judge Tracy's Order based on false dilemmas that are entirely of its own making. It consolidated allegations made by a discriminatee that it knew had since moved to Buffalo, New York into a complaint that it set for hearing in Oakland, California and now argues that that discriminatee's travel costs are a "compelling circumstance" warranting the use of videoconference testimony. It argues that this "critical" witness is "vital" to its case, yet accuses *Judge Tracy* of imposing a "manifest injustice" for declining to assess that critically-important witness' credibility without the ability to observe his demeanor while testifying. Judge Tracy pointed out that its moving papers did not include the information required by Board Rules 102.35(c)(1)-(2), and its Appeal still fails to satisfy those requirements. Notwithstanding the foregoing, the fact remains that the trier of fact in this case has ruled that she will need to observe the demeanor of a witness that the General Counsel describes as "critically important" in order to assess his credibility. To reverse this ruling now and force that trier of fact to assess his credibility based on anything but his in-person testimony would ultimately impugn the integrity of her factual findings. For these reasons, the Board should deny the General Counsel's Appeal.

SMRH:486634019.1

22-60493.3508

Dated:  June 15, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

SMRH:486634019.1

Respondent's Opposition to General
Counsel's Special Permission to Appeal

22-60493.3509

# EXHIBIT A

22-60493.3510

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

and

MICHAEL SANCHEZ, an Individual

and

JONATHAN GALESCU, an Individual

and

RICHARD ORTIZ, an Individual

and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

Cases 32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

**MOTION TO TAKE VIDEO TESTIMONY OF WILL LOCKLEAR**

I.    **Introduction**

Counsel for the General Counsel (the General Counsel) files this Motion to Take Video Testimony of Will Locklear at the upcoming hearing in this matter scheduled to begin on June 11, 2018. Mr. Locklear lives and works in Buffalo, New York whereas the hearing in this matter is scheduled to take place at the Region 32 Field Office of the National Labor Relations Board (the Board) located in Oakland, California.

II.    **Legal Standard and Discussion**

Federal Rule of Civil Procedure 43 provides that "for good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by

1

EXH. I

22-60493.3511

contemporaneous transmission from a different location." FRCP 43. Moreover, the Board allows the use of video testimony in trials. See *M.V.M., Inc.*, 352 NLRB 1165, 1165 fn. 1 (2008) (Administrative Law Judge allowed witness testimony by video.); see also NLRB Bench Book § 11-620 (Aug. 2010) (noting "[v]ideo testimony has been used in Board trials without objection.").

Good cause exists for permitting Mr. Locklear to testify via video. Specifically, economical and logistical reasons underlie the need to take Mr. Locklear's testimony by video. First, Mr. Locklear's testimony is essential to the General Counsel's case because he has key testimony regarding violations of the National Labor Relations Act (the Act) as alleged in the Consolidated Complaint. Currently, Mr. Locklear resides in the Buffalo, New York. The cost of a round trip plane ticket to fly across country from Buffalo to Oakland to testify in this matter would place a significant financial burden on Mr. Locklear. Mr. Locklear is, however, able to appear at the Board's Region 3 Field Office located in Buffalo, which is a cost-effective alternative to appearing in Oakland. By appearing in the Region 3 Field Office, Mr. Locklear will be able to participate in the hearing and provide his essential testimony when he otherwise would not have been able to do so.

Additionally, adequate video equipment is available to transmit Mr. Locklear's testimony at the hearing in Region 32. Each Board office contains video conference capabilities that offer clear, audible, video testimony, including a hi-tech camera that allows the user to pan, tilt, and zoom-in on any item or person in the hearing room. The system further includes a movable microphone and remote control that permits the user to adjust the volume settings to ensure audible clarity.

2

22-60493.3512

Finally, after discussions with the parties, the Union does not oppose the use of video conference testimony for Mr. Locklear. Similarly, Respondent does not oppose the use of video conference testimony for Mr. Locklear, but reserves the right to make a similar motion should it desire to use video conference testimony.

In summary, Mr. Locklear is the only witness for Counsel for the General Counsel expected to testify via video conference and the General Counsel does not anticipate an extensive number of exhibits to be used during his testimony. Exhibits can be e-mailed to the Region 3 Office Manager and/or Assistant Office Manager who are available to assist during Mr. Locklear's testimony and ensure the video equipment runs smoothly during Mr. Locklear's testimony. Therefore, the General Counsel petitions the Administrative Law Judge to allow Mr. Locklear to provide his testimony via video conferencing equipment at the Board office in Oakland.

**DATED AT** Oakland, California this 29th day of May 2018.

/s/ Noah Garber
Noah Garber
Field Attorney
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

3

# EXHIBIT B

22-60493.3514

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

    and                                      Cases  32-CA-197020

                                                             32-CA-197058

**MICHAEL SANCHEZ, an Individual**                      32-CA-197091

                                                             32-CA-197197

    And                                        32-CA-200530

                                                               32-CA-208614

**JONATHAN GALESCU, an Individual**                   32-CA-210879

    and

**RICHARD ORTIZ, an Individual**

    and

**INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO**

### ORDER GRANTING RESPONDENT'S MOTION FOR RECONSIDERATION AND AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY

      On May 29, 2018, counsel for the General Counsel filed a Motion to take Video Testimony to permit the testimony of its witness, Will Locklear (Locklear), who is currently residing in Buffalo, New York, to testify via video teleconference during the trial in this matter. The General Counsel's Motion indicated that Respondent and the Charging Parties did not oppose the Motion. I issued an Order to Show Cause that same day with responses due by noon on May 30, 2018. No party filed responses. Accordingly, on May 31, 2018, I granted counsel for the General Counsel's Motion, provided that safeguards as indicated by Section 102.35(c) of the Board's Rules and Regulations, adopted effective September 29, 2017, are in place. The timing and arrangements for the videoconference testimony were to be discussed on the record when the hearing opens on June 11, 2018, or soon thereafter.

      However, on June 4, 2018, Respondent filed an Opposition to the General Counsel's Motion for Video Testimony. Thereafter, on June 5, 2018, Respondent filed a Motion for Reconsideration of my May 31, 2018 Order Granting the General Counsel's Motion for Video Testimony. In Respondent's Motion for Reconsideration, Respondent explained that it had not received my May 29, 2018 Order to Show Cause and my May 31, 2018 Order Granting the General Counsel's Motion for Video Testimony due to an incorrect fax number.

EXH. _____ 5

The Division of Judges relies upon parties' notice of appearance sheets for fax service of documents. In these instances, the Division of Judges incorrectly faxed the documents to (415)434-5947, rather than (415)434-3967 in accordance with Respondent's April 10, 2018, notice of appearance sheet. However, even Respondent's notice of appearance sheet appears to be incorrect, as Respondent's Motion for Reconsideration indicates that the correct fax number is (415)434-3947. In addition, the General Counsel indicated in its Motion for Video Testimony that Respondent did not oppose the General Counsel's Motion. In light of these service errors along with changed circumstances as far as Respondent's position, as conveyed by the General Counsel, I **GRANT** Respondent's Motion for Reconsideration. **Please note that all parties are directed to ensure that their notices of appearance in this matter should be updated and corrected as appropriate to ensure accurate and timely service of documents as well as email addresses for electronic correspondences if needed.**

After reviewing the General Counsel's Motion for Video Testimony of Locklear and Respondent's Opposition, I **DENY** the General Counsel's Motion.

Locklear appears to be a critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including my observation of his demeanor. The Charging Party filed a charge on December 1, 2017 and a first amended charge on December 6, 2017, specifically concerning Locklear. The charge and first amended charge allege a variety of Section 8(a)(1) and (3) violations by Respondent against Locklear. After the General Counsel's investigation, at least some of these allegations resulted in this current complaint set for hearing beginning on June 11, 2018, in Oakland, California. The General Counsel's only reasons for requesting video testimony of Locklear is that Locklear lives and works in Buffalo, New York, and the costs of travel would place a "significant financial burden" on Locklear, without providing any proof. Moreover, the General Counsel argues that "adequate video equipment is available" in the Buffalo Regional Office for Locklear's testimony. I do not find these reasons by the General Counsel so compelling as to override the need for in-person testimony of an alleged discriminatee. The General Counsel has not provided in its Motion all the requirements of Section 102.35(c)((1) including Locklear's address, the matter in which Locklear intends to testify, and the electronic address of the transmission. In support of its Motion, the General Counsel also cites *M.V.M., Inc.*, 352 NLRB 1165, fn. 1 (2008), where the administrative law judge permitted uncontested video testimony of one witness. However, in *M.V.M*, the administrative law judge only permitted video testimony of the non-discriminatee witness after the court reporter lost the original *in-person* testimony of this witness. Thus, *M.V.M.* is distinguishable from this instance.

Based upon the above, I **DENY** the General Counsel's Motion for Video Testimony of Locklear.

Date: June 6, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

22-60493.3516

*Served by facsimile upon the following:*

Edris W.I. Rodriguez Ritchie, Esq.
Noah Garber, Esq., Fax: (510) 637-3315 (NLRB)

Mark S. Ross, Esq., Fax:(415)434-3947 (Respondent)

Margo A. Feinberg, Esq., Esq., Fax: (323)655-4488 (Charging Party)

22-60493.3517

# EXHIBIT C

22-60493.3518

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

 and

MICHAEL SANCHEZ, an Individual

 and

JONATHAN GALESCU,  an Individual

 and

RICHARD ORTIZ, an Individual

 and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

Cases 32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

**COUNSEL FOR THE GENERAL COUNSEL'S REQUEST FOR SPECIAL
PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED
ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT
<u>VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS</u>**

  Pursuant to Section 102.26 of the National Labor Relation Board's (the Board) Rules and

Regulations, Counsel for the General Counsel (General Counsel) requests special permission to

appeal Administrative Law Judge Amita Tracy's (the Judge) Amended Order Denying General

Counsel's motion to permit a critical third-party witness named William Locklear to testify via

videoconference. He currently resides in Buffalo, New York and the hearing in this matter is

taking place in Oakland, California.

22-60493.3519

For the reasons set forth more fully below, the Board· should accept this appeal and reverse the Judge's ruling, which is contrary to precedent and prejudices the General Counsel's case, causing manifest injustice.

## I.    **Procedural Background**

On May 29, 2018,[1] General Counsel filed a Motion to Take Video Testimony of Will Locklear (the Motion)[2] to permit the testimony of witness Will Locklear (Mr. Locklear), who currently lives in Buffalo, New York. If the Motion were granted, Mr. Locklear would testify from the Board's Region 3 office located in Buffalo, where the Board has access to secure video servers that cannot be tampered with. His testimony would be instantly transmitted to the hearing room in Region 32, located in Oakland, California. On May 25, Counsel for Tesla, Inc. (Respondent) Keahn Morris represented to the General Counsel that Respondent did not have a problem with the General Counsel's request for video testimony and indicated that Respondent would also likely want videoconference testimony of their witnesses located in Sparks, Nevada. Based on this conversation, General Counsel, in its Motion, represented that Respondent did not oppose the Motion.

Later on May 29, the Judge issued an Order to Show Cause[3] with a response due the following day; however, due to inadvertent clerical errors by both Respondent and the San Francisco Division of Judges, Respondent was not served with the Judge's Order to Show Cause for why the Motion should not be granted. As no response was filed, on May 31, the Judge granted the Motion to permit videoconference testimony of Mr. Locklear.[4] On June 4, in contravention of its previous discussions with General Counsel, and for reasons never explained

---

[1] All dates herein occurred in 2018.
[2] A copy of the General Counsel's Motion is attached as <u>Exhibit 1</u>.
[3] A copy of the Judge's Order to Show Cause is attached as <u>Exhibit 2</u>.
[4] A copy of the Judge's Order is attached as <u>Exhibit 3</u>.

22-60493.3520

to General Counsel, Respondent filed an Opposition to the Motion. On June 5, Respondent filed a Motion for Reconsideration of the Judge's May 31 Order Granting the Motion, in which Respondent explained that it was not served with the Judge's May 29 Order to Show Cause.[5] On June 6, the Judge issued an Order Granting Respondent's Motion for Reconsideration and Amended Order Denying the General Counsel's Motion.[6]

Mr. Locklear is the only witness who can testify in support of the allegations listed in paragraphs 7(w) and 7(x) of the Second Amended Consolidated Complaint because they occurred during one-on-one conversations between him and a supervisor. He is also not a Charging Party and therefore a third-party witness. Because of the Agency's budgetary constraints, General Counsel is not permitted to subpoena Mr. Locklear to testify in Oakland, California. He is currently under subpoena to appear in Region 3, located in Buffalo, New York. Therefore, the Judge's Order denying his ability to testify by videoconference effectively precludes the General Counsel from presenting any evidence in support of these Complaint allegations.

**II.    It is Appropriate to Reverse the Judge's Order and Permit Videoconference Testimony of Mr. Locklear under Current Case Law**

Section 102.35(c) of the Board's Rules and Regulations permits the use of videoconference testimony at unfair labor practice hearings. The request for videoconference testimony must state where the witness resides, the compelling circumstances that require the use of videoconference testimony, the location where the video testimony will be held, the matter about which the witness will testify, the safeguards in place to ensure that the video will be transmitted, and the Judge must be able to clearly hear and see the witness as well as a panoramic view of the room. Id. Moreover, Federal Rule of Civil Procedure (FRCP) 43(a)

---

[5] A copy of Respondent's Motion for Reconsideration is attached as Exhibit 4.
[6] A copy of the Judge's Order is attached as Exhibit 5.

22-60493.3521

allows "[f]or good cause and compelling circumstances" that testimony be taken via videoconference. Further yet, the Board's Bench Book allows for videoconference testimony. See § 11-620 (Aug. 2010) ( "[v]ideo testimony has been used in Board trials without objection.").

Courts have recognized that videoconference testimony is permissible because a witness testifying by videoconference is observed directly, with virtually instantaneous transmission, and videoconference testimony can sufficiently enable cross-examination and credibility determinations. *Warner v. Cate*, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015); see also *Parkhurst v. Belt*, 569 F.3d 995, 1003 (8th Cir.2009). This is because there is no material difference between live testimony and testimony via video transmission. *FTC v. Swedish Match North America, Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000). While FRCP 43(a) calls for good cause and shares the Board's requirement for compelling circumstances to allow videoconference testimony, courts have interpreted FRCP 43(a) to allow videoconference testimony because it will save the government the cost of transporting witnesses. See, e.g., *Hankins v. Wolf*, 2016 WL 3087677, at *3 (W.D. Pa. June 2, 2016) (Court granted videoconference testimony since it would "save the Commonwealth substantial expense.").

In *EF International Language School, Inc. v. NLRB*, 673 F. App'x 1, 3–4 (D.C. Cir. 2017), the District of Columbia Circuit affirmed the ALJ's use, and the Board's adoption of, videoconference testimony. There, the employer challenged the use of videoconference testimony arguing that it contradicted Board rules and violated the employer's due process rights by preventing the employer from examining the witness in person. Id. The Circuit Court noted that the Board properly determined that Sec. 102.30 of the Board's Rules and Regulations did not preclude the taking of testimony by videoconference and these purported concerns related to

4

due process were obviated by the videoconferencing technology that enabled observation of the witness. Id. at 4.

Similarly, in *MPE, Inc.*, 2015 WL 400660, at *1 (NLRB Jan. 29, 2015),[7] the Board granted the General Counsel's request for special permission to appeal the administrative law judges denial of the use of videoconference testimony and remanded the matter to the administrative law judge for a hearing to include videoconference testimony. There the Board noted that the administrative law judge erred in denying the motion to allow video testimony where the witness at issue was a key witness and unavailable to testify in person. Id.

Here, Mr. Locklear is a key witness that is vital to the General Counsel's case. Specifically, Mr. Locklear will testify about the unfair labor practices alleged in Complaint paragraphs 7(w) and 7(x). In this regard, Mr. Locklear is the *only* employee witness that can establish the unfair labor practices alleged in the Complaint—which occurred in two separate one-on-one conversations with Respondent's supervisors. Moreover, Counsel for the General Counsel notes that the use of video testimony will alleviate the economic burden to Mr. Locklear from flying 3,000 miles cross-country, paying for his lodging, transport to/from the airport, and meals. Further yet, Mr. Locklear is a third-party witness on behalf of another Charging Party. Nor is it appropriate to ask Mr. Locklear, a former factory worker, to bear the expense of travel. In this regard, requiring Mr. Locklear to travel cross country would require him to miss days of work and potentially lose vacation time and/or income.

Since Mr. Locklear is the only witness who can substantiate the above-referenced allegations of the Complaint, denying the use of videoconference testimony here results in

---

[7] The witness involved in *MPE* was imprisoned at the time of the hearing in that matter; however, *MPE* stands for the proposition that videoconference testimony is allowable when a witness is otherwise unavailable. As described more herein, as a result of Mr. Locklear's physical and financial barriers to the hearing, he should be considered unavailable.

22-60493.3523

manifest injustice. Because of the physical and financial barriers to Mr. Locklear's in-person testimony, the Judge's refusal to allow videoconference testimony effectively requires the General Counsel to forgo pursuit of paragraphs 7(w) and (x) of the Complaint. These allegations are not cumulative of other Section 8(a)(1) allegations in the Complaint because the conduct is alleged to have occurred in Respondent's facility in Sparks, Nevada, whereas the other Section 8(a)(1) violations are alleged to have occurred in Fremont, California.

Finally, General Counsel will ensure that Section 102.35(c)'s safeguards are maintained. If permitted, Mr. Locklear would testify via videoconference from the Board's Region 3 office in Buffalo, New York, which contains a secure internet connection with firewall protections. Additionally, all Board field offices are equipped with adequate video equipment to transmit Mr. Locklear's testimony to the hearing in Region 32 via a secure internet connection. Both Region 32 and Region 3 have video conference equipment that offers clear, audible, video testimony, including a hi-tech camera that allows the user to pan around the room, tilt, and zoom-in on any item or person in the hearing room. The system further includes a movable microphone and remote control that permits the user to adjust the volume settings to ensure audible clarity. Finally, Board Agents in Region 3, who are under the same ethical rules as all attorneys and under the supervision of the Regional Attorney of Region 3, would be available to present Mr. Locklear with any exhibits as needed by the Judge, General Counsel, the Charging Parties, or Respondent.

## III.  Conclusion

Given that: (1) the use of video testimony will save the Board the substantial cost of transporting a witness cross the country; (2) Mr. Locklear is a third-party witness who should not bear the financial responsibility of travel cross country; (3) it is unreasonable to make a third-

22-60493.3524

party witness pay to fly across country for a case in which he has no standing; (4) without his testimony, the Board cannot establish elements of its case making Mr. Locklear essential; and (5) all the safeguards in the Board's Rules and Regulations are met, Counsel for the General Counsel respectfully urges the Board to grant this special appeal, reverse the Judge's Amended Order Denying the Motion, and permit Mr. Locklear to testify by videoconference from Buffalo, New York.

**DATED AT** Oakland, California this 8th day of June 2018.

/s/ Noah Garber

---

Noah Garber
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

22-60493.3525

# EXHIBIT D

22-60493.3526

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| and | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| and | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| and | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| and | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## RESPONDENT'S MOTION FOR RECONSIDERATION OF ALJ'S ORDER GRANTING MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY

Respondent Tesla, Inc. ("Tesla") hereby submits its Motion for Reconsideration of

Administrative Law Judge ("ALJ") Amita Tracy's Order Granting Counsel for the General

Counsel's ("the General Counsel") Motion to Permit Videoconference Testimony.

On May 29, 2018, the General Counsel filed a Motion to Permit Videoconference

Testimony. Earlier today, on June 4, 2018, Tesla filed an Opposition to the General Counsel's

Motion.

Later in the afternoon on June 4, 2018, the General Counsel informed Counsel for Tesla

that the ALJ had unbeknownst to Tesla issued an Order to Show Cause and issued an Order

EXH. __4__

22-60493.3527

Granting the General Counsel's Motion on May 31, 2018. Tesla was not served with or made

aware of the ALJ's Order to Show Cause or the ALJ's Order Granting the General Counsel's

Motion until June 4, 2018. Upon review of the pleadings provided by the General Counsel, it

appears the Division of Judges endeavored to serve Mark S. Ross by fax at (415) 434-5947.

Unfortunately, that fax number is incorrect. Counsel for Tesla's fax number is (415) 434-*3947*.

Accordingly, Tesla was not provided with an opportunity to respond to the ALJ's Order to Show

Cause. Accordingly for the reasons set forth in Tesla's Opposition to the General Counsel's

Motion to Permit Videoconference Testimony filed earlier today and restated herein, Tesla

requests that the ALJ issue an Order Denying the General Counsel's Motion to Permit

Videoconference Testimony.

### A.    The General Counsel Has Not Shown Good Cause Based on Compelling Circumstances

The National Labor Relations Board ("Board") law generally favors in-person testimony

at trial. *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999). However, under the Board's

Rules, upon a showing of "good cause based on circumstances" and "appropriate safeguards,"

the Administrative Law Judge ("ALJ") may permit video testimony from a different location.

Board's Rules § 102.35(c); *see also* Fed.R.Civ.P. 43(a).[1] Although the Board's Rules do not

further define the standard, FRCP 43 has a nearly identical standard. "The most persuasive

showings of good cause and compelling circumstances are likely to arise when a witness is

unable to attend trial for unexpected reasons, such as accident or illness." Advisory Committee

Notes to Fed.R.Civ.P. 43(a) (1996 Amendment). Mere inconvenience is insufficient to

---

[1] While the Federal Rules of Civil Procedure are not controlling, the Board has often referred to them for useful guidance. *EF International Language Schools, Inc.*, 363 NLRB No. 20 (2015).

22-60493.3528

demonstrate "good cause." *Id.* ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial").

The General Counsel has not demonstrated that there are unexpected occurrences, accidents or illnesses that prevent Mr. Locklear from testifying in person at trial. Rather, the General Counsel—without any authority—relies solely on the fact that Mr. Locklear will have to pay for a round trip plane ticket to fly across the country to testify at trial. Significantly, courts have rejected the cost of travel as insufficient to warrant "compelling circumstances," particularly where the cost is not unforeseen. *See Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012) (plaintiffs' expenses to travel out of the country to prosecute their own case are not unforeseen and do not rise to the level of good cause); *see also Niemeyer v. Ford Motor Co.*, 2012 WL 5199145 (D. Nev. Oct. 18, 2012). While some courts have allowed video conference testimony where an out-of-state witness is a third-party or peripheral witnesses with a limited scope of testimony, that is not the case here. *See Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 11596235, at *7-8 (C.D. Cal. June 4, 2010). Mr. Locklear is the General Counsel's key witness pertaining to all of the allegations concerning Respondent's Gigafactory 1 in Sparks, Nevada. The present charges were brought against Respondent on behalf of Mr. Locklear. The General Counsel cannot now claim it was blindsided by the cost of travel for its percipient witness to testify at trial to the allegations of unfair labor practices.

Notably, inconvenience of travel is not unique to Mr. Locklear. In fact, two percipient witnesses for Respondent are located in Sparks, Nevada. Respondent and both witnesses will bear the cost and burden of traveling out-of-state to appear and testify at trial. Should the General Counsel's motion be granted, the Charging Parties will enjoy the benefit of in-person

22-60493.3529

examination of Respondent's percipient witnesses, while Respondent will be unfairly denied the same opportunity with respect to the General Counsel's key witness.

**B.    Respondent is Unfairly Prejudiced by Mr. Locklear Testifying Via Video Conference**

In addition to the General Counsel's failure to demonstrate any compelling reason for Mr. Locklear to testify remotely, Respondent will be significantly prejudiced if Mr. Locklear is permitted to testify via video conference. The General Counsel acknowledges that Mr. Locklear is a key witness regarding Respondent's alleged unfair labor practices. Video conference testimony severely impedes Respondent's ability to confront a percipient witness through cross-examination, which is exponentially more difficult when it must be done through video conference rather than in the presence of the finder of fact, the attorneys, and the documents.

It is well-settled that Board law expresses a strong preference for live oral testimony, particularly because it enables the judge to observe the demeanor of the witness to determine the witness's credibility. *Westside Painting, Inc.*, 328 NLRB 796, 797 (1999) (citing *Canadian American Oil Co. v. NLRB*, 82 F.3d 469, 475 (D.C. Cir. 1996). "The opportunity to observe the demeanor of a witness is particularly important in Board proceedings because…a judge is often presented with situations where there is conflicting testimony and credibility determinations are central to the resolution of the case." *Id.* In fact, witness demeanor is an essential consideration in determining credibility. *See St. Paul Park Refining Co., LLC*, 366 NLRB No. 83 (2018). For example, the same words can convey different meanings depending on physical expressions, mannerisms, and presentations. *See Taylor Motors, Inc.*, 366 NLRB No. 69 (2018) (taking into account the witness's happy demeanor in determining his words were attempted humor, not intimidation); *Kapstone Paper and Packing Corp.*, 366 NLRB No. 63 (2018) (taking into account the witness's demeanor was "composed and steady" thus more credible); *Space Needle,*

22-60493.3530

*LLC*, 362 NLRB No. 11 (2015) (observed that the witness was carefully watching counsel's reaction to her answers, and therefore not credible).

The Administrative Law Judge must be able to visibly observe Mr. Locklear's demeanor in person in order to make a credibility determination. At trial, Respondent's witnesses and Mr. Locklear will likely provide conflicting testimony, thus requiring the Administrative Law Judge to determine which testimony is credible. Whether the Administrative Law Judge finds Mr. Locklear credible will be central to the outcome of this case. As such, it is essential for Mr. Locklear to testify in person at trial.

**C.     The General Counsel Has Not Set Forth Conditions to Protect the Integrity of the Testimony or Appropriate Safeguards**

The General Counsel also has not complied with the requirements of the Board's Rule § 102.35(c)(1), which requires any application to take testimony by video conference to include "the compelling circumstances for such testimony, the witness's name and address, the location where the video testimony will be held, the matter concerning which the witness is expected to testify, the conditions in place to protect the integrity of the testimony, the transmission safeguards, and the electronic address from which the video testimony will be transmitted." The General Counsel's motion does not set forth the witness's address, the matter concerning which the witness is expected to testify, or the electronic address from which the video testimony will be transmitted.

The General Counsel also failed to comply with the Board's Rule § 102.35(c)(2), which sets forth the requirements for appropriate safeguards such that the Administrative Law Judge may assess the witness's credibility and the parties have a meaningful opportunity to examine and cross-examine the witness. The General Counsel makes no assurance that Respondent or its representative has the opportunity to be present at the location, and does not provide for any

22-60493.3531

technology assistance. Most troubling is the fact that it has not set forth the conditions in place to protect the integrity of the testimony. Rather, the General Counsel suggests that Respondent send its exhibits via e-mail in advance to an unnamed individual—the same person who will ensure the video "runs smoothly"—at the Region 3 office. The General Counsel conveniently ignores the fact that it is a charging party in this matter, and suggests that Respondent should blindly provide its potential exhibits to a representative or agent of the General Counsel. Respondent should not be expected to hand over every exhibit it might use on cross-examination to another Field Office where Mr. Locklear is located. The General Counsel makes no assurances that the exhibits will remain confidential, that Mr. Locklear will not have access to them beforehand, and that the General Counsel will not obtain access to them beforehand. Moreover, given the dynamic nature of trial, it is unlikely that Respondent will know what materials it will use on cross-examination with Mr. Locklear until he testifies on direct examination. If Respondent is forced to provide its materials in advance, it will be deprived of a meaningful opportunity to cross-examine the witness.

**D.    Conclusion**

In sum, the General Counsel cannot make the requisite showing of good cause based on compelling circumstances, under the Board's Rules and FRCP 43 that justify permitting Will Locklear, a key percipient witness, to testify via video conference for trial. The prejudice Respondent will suffer if it is required to cross-examine Mr. Locklear by video conference outweighs any cost that the General Counsel may incur by attending the trial at the Regional Office in Oakland, California. Accordingly, Respondent respectfully requests that the General Counsel's motion be denied, and require Mr. Locklear to testify live, in person, at trial if he is to testify.

22-60493.3532

Dated: June 5, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

-7-

SMRH:486578145.1

# EXHIBIT E

22-60493.3534

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**

FORM EXEMPT UNDER 44 U S C 3812

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-210879 | 12/06/17 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla, Inc. | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative | g. e-Mail gaby@tesla.com |
| | | h. Number of workers employed Approximately 7000 |

| i. Type of Establishment (factory, mine, wholesaler, etc.) Factory | j. Identify principal product or service Automotive Manufacturing |
|---|---|

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3)                                                  of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

In the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)* |
|---|
| International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO |

| 4a. Address (Street and number, city, state, and ZIP code) 800 East Jefferson Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

## 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _(signature of representative or person making charge)_        Henry M. Willis, Attorney
                                                              _(Print/type name and title or office, if any)_

| Tel. No. (323) 655-4700 |
|---|
| Office, if any, Cell No. |
| Fax No. (323) 655-4488 |
| e-Mail hmw@ssdslaw.com |

Address                                    12/06/17
                                           *(date)*

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

<u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On June 15, 2018, I served a true copy of the following document(s) described as **RESPONDENT'S OPPOSITION TO THE GENERAL COUNSEL'S REQUEST FOR SPECIAL PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224
T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021
E-mail: noah.garber@nlrb.gov

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA 90048
T: (323) 655-4700

Administrative Law Judge Amita Tracy
Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the

SMRH:486725893.1

-1-

1  transmission, any electronic message or other indication that the transmission was
unsuccessful.

2

3      I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct and that I am employed in the office of a member of
the bar of this Court at whose direction the service was made.

4

5      Executed on June 15, 2018, at San Francisco, California.

6

7  Sarah Smith

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT EXCLUDED

Leading Case Number ___32·CA-197020___

Leading Case Name ___Tesla, Inc.___

Exhibit Number ___GC-7___

Description _____

_____

_____

The above-referenced exhibit is not included herein for the following reason:

1. Exhibit Withdrawn _____

2. Exhibit Rejected _____

3. Other (Explain) ___Not Produced / Offered Yet___

_____

_____

Exhibit retained by ___GC Counsel___

_____

_____
**Court Reporter**

**OFFICIAL REPORT OF PROCEEDINGS**

**BEFORE THE**

**NATIONAL LABOR RELATIONS BOARD**

**REGION 32**

In the Matter of:

| | |
|---|---|
| **TESLA, INC.,** | **Case Nos.   32-CA-197020** |
| | **32-CA-197058** |
| **and** | **32-CA-197091** |
| | **32-CA-197197** |
| **MICHAEL SANCHEZ, an Individual,** | **32-CA-200530** |
| | **32-CA-208614** |
| **and** | **32-CA-210879** |
| | **32-CA-220777** |

**JONATHAN GALESCU, an
Individual,**

**and**

**RICHARD ORTIZ, an Individual,**

**and**

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, AFL-CIO,**

                    Charging Party,

               _____

               _____

                **GENERAL COUNSEL EXHIBITS**

Place: Oakland, California

Dates: September 28, 2018

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

22-60493.3539



**From:** Seth Woody
**Sent:** Friday, April 28, 2017 7:15 PM
**To:** Jonathan Galescu <jgalescu@tesla.com>
**Cc:** Richard Ortiz <riortiz@tesla.com>; Josh Hedges <jhedges@tesla.com>; David Zweig <dzweig@tesla.com>
**Subject:** FW: Requesting OSHA forms

Jonathan:

We care deeply about our employees' privacy and have tried to protect it to the best of our ability.  However, given your insistence, I am attaching    un-redacted copies of the OSHA 300 logs.  Although David Zweig gave you copies of the  OSHA 300A summaries that were not redacted on April 5, I am including them as well.

We remind you that Cal. Code Regs. Title 8, §14300.35 provides that you may share these documents only with current and former employees or authorized representatives.

Thanks,
Seth Woody

Cal/OSHA Form 300 (Rev.7/2007)
## Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs. See CCR Title 8 14300.29(b)(6)-(10)

STATE OF CALIFORNIA — CAL/OSHA

**Year: 2017**

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300.8 through 14300.12. Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (Cal/OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal/OSHA office for help.

**Establishment name: Tesla Motors**    **City/State: Fremont, CA**

| Case # | Employee's Name | Job Title (e.g. welder) | Date of injury or onset of illness (month/day) | Where the event occurred (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away from work (K) | On the job transfer or restriction (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other Illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Redacted | Material Handler | 4/3 | Materials/GA Conveyance | Manual Handling - Strain/sprain to back | | X | | | days | days | X | | | | | |
| 2 | | Material Handler | 3/30 | Battery Pack/Powertrain | Musculoskeletal disorder - Strain/sprain to back | | | X | | days | 4 days | X | | | | | |
| 3 | | Production Associate | 3/29 | Body Line 1/BIW | Musculoskeletal disorder - Strain/sprain to back | | X | X | | 4 days | 3 days | X | | | | | |
| 4 | | Production Associate | 3/28 | Body Line 1/BIW | Struck against - Cut to wrist | | | X | | days | days | X | | | | | |
| 5 | | Production Associate | 3/29 | Battery Pack/Powertrain | Musculoskeletal disorder - Strain/sprain to shoulder | | | X | | days | days | X | | | | | |
| 6 | | Production Associate | 3/27 | Body Line 2/BIW | Musculoskeletal disorder - Strain/sprain to wrist | | | X | | 6 days | days | X | | | | | |
| 7 | | Production Associate | 3/26 | Trim 2/GA | Ergonomic injury - Strain/sprain to shoulder | | | X | | days | days | X | | | | | |
| 8 | | Production Associate | 3/23 | Electrics/Powertrain | Musculoskeletal disorder - Strain/sprain to wrist | | | X | | days | 13 days | X | | | | | |
| 9 | | Production Associate | 3/22 | Body Line 1/BIW | Skin disorder - Foreign body on upper arm (Allergy) | | | X | | days | days | | X | | | | |
| 10 | | Body Fitter | 3/23 | Chassis & Final/GA | Ergonomic injury - Strain/sprain to knee | | | X | | days | 8 days | X | | | | | |
| 11 | | Lead Production Associate | 3/22 | Small Drive Unit/Powertrain | Musculoskeletal disorder - Strain/sprain to back | | X | X | | 5 days | 6 days | X | | | | | |
| 12 | | Lead Production Associate | 1/26 | Trim 2/GA | Ergonomic injury - Strain/sprain to shoulder | | | X | | 7 days | 40 days | X | | | | | |
| 13 | | Production Associate | 3/7 | Body Paint/Paint Center | Musculoskeletal disorder - Strain/sprain to hand | | | X | | days | 14 days | X | | | | | |
| 14 | | Contingent worker | 3/20 | Trim 3/GA | Slip/trip - Strain/sprain to ankle | | | X | | days | days | X | | | | | |
| 15 | | Production Associate | 3/3 | Stamping/Press Center | Musculoskeletal disorder - Strain/sprain to back | | | X | | days | days | X | | | | | |
| | | | | | **Page Totals** | 0 | 3 | 14 | 0 | 22 days | 88 days | 14 | 1 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Page    1    of    7

## GC EXHIBIT 023-002

22-60493.3542

EXHIBIT NO. GC-23 RECEIVED_____ REJECTED_____
32-CA-197020
CASE NO._____ CASE NAME: Tesla, Inc.

NO. OF PAGES: 229 DATE: 9-24-18 REPORTER: DM

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs. See CCR Title 8 14300.29(b)(6)-(10)

STATE OF CALIFORNIA
**CAL OSHA**

Cal/OSHA Form 300 (Rev.7/2007)
## Log of Work-Related Injuries and Illnesses

**Year: 2017**

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work- related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300.8 through 14300.12. Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (Cal OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal OSHA office for help.

**Establishment name:** Tesla Motors    **City/State:** Fremont, CA

| Case # | Employee's Name | Job Title (e.g. welder) | Date of injury or onset of illness (month/day) | Where the event occurred (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away from work (K) | On the job transfer or restriction (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | Redacted | Production Associate | 3/15 | Body Line 2/BIW | Musculoskeletal disorder - Strain/sprain to wrist | | X | X | | 22 days | 88 days | X | 1 | 0 | 0 | 0 | 0 |
| 17 | | Lead Production Associate | 3/15 | Chassis & Final/GA | Slip/trip - Bruising to back | | | X | | 15 | 1 | X | | | | | |
| 18 | | Production Associate | 3/15 | Trim 0.5/GA | Ergonomic injury - Strain/sprain to wrist | | | X | | | 11 | X | | | | | |
| 19 | | Production Associate | 3/14 | Battery Module/Powertrain | Contact with electricity - Burns to fingers | | | | X | | 14 | X | | | | | |
| 20 | | Production Associate | 3/14 | Trim 0.5/GA | Ergonomic injury - Strain/sprain to back | | | X | | | 3 | X | | | | | |
| 21 | | Production Associate | 3/14 | Trim 02/GA | Ergonomic injury - Strain/sprain to neck | | | X | | | 17 | X | | | | | |
| 22 | | Production Associate | 3/14 | Chassis & Final/GA | Ergonomic injury - Strain/sprain to back | | X | | | | 15 | X | | | | | |
| 23 | | Production Associate | 3/13 | Electrics/Powertrain | Musculoskeletal disorder - Strain/sprain to wrist | | | X | | | 15 | X | | | | | |
| 24 | | Production Associate | 3/13 | Body Line 1/BIW | Musculoskeletal disorder - Strain/sprain to wrist | | | X | | | 17 | X | | | | | |
| 25 | | Production Associate | 3/11 | Body Line 1/BIW | Ergonomic injury - Strain/sprain to fingers | | | X | | | 17 | X | | | | | |
| 26 | | Production Associate | 3/9 | Door Line/GA | Ergonomic injury - Strain/sprain to back | | | X | | | 15 | X | | | | | |
| 27 | | Production Associate | 3/7 | EOL/GA | Ergonomic injury - Strain/sprain to back | | | X | | | 12 | X | | | | | |
| 28 | | Body Fitter | 3/7 | Chassis & Final/GA | Ergonomic injury - Strain/sprain to upper arm | | | X | | | 15 | X | | | | | |
| 29 | | Production Associate | 3/7 | Trim 01/GA | Ergonomic injury - Strain/sprain to back | | | X | | | 21 | X | | | | | |
| 30 | | Production Associate | 2/16 | Chassis & Final/GA | Ergonomic injury - Strain/sprain to back | | X | X | | 5 | 17 | X | | | | | |
| | | | | | **Page Totals** | 0 | 6 | 27 | 1 | 42 days | 293 days | 29 | 1 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Page    2    of    7

**GC EXHIBIT 023-003**

22-60493.3543

Cal/OSHA Form 300 (Rev.7/2007)

# Log of Work-Related Injuries and Illnesses

**Year: 2017**



**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs. See CCR Title 8 14300.29(b)(6)-(10)

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work- related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300 8 through 14300 12  Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (Cal OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal OSHA office for help.

**Establishment name: Tesla Motors**    **City/State: Fremont, CA**

| | Identify the person | | Describe the case | | | Classify the case | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Using these four categories, check ONLY the most serious result for each case: | | | | Enter the number of days the injured or ill worker was: | | Check the "injury" column or choose one type of illness | | | | | |
| (A) | (B) | (C) | (D) | (E) | (F) | | | Remained at work | | | | (M) | | | | | |
| | | | Date of injury or onset of illness (month/day) | Where the event occurred (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g. Second degree burns on right forearm from acetylene torch) | Death | Days away from work | Job transfer or restriction | Other recordable cases | Away from work | On the job transfer or restriction | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
| Case # | Employee's Name | Job Title (e.g. welder) | | | | (G) | (H) | (I) | (J) | (K) | (L) | (1) | (2) | (3) | (4) | (5) | (6) |
| | | | | | | 0 | 6 | 27 | 1 | 42 days | 293 days | 29 | 1 | 0 | 0 | 0 | 0 |
| 31 | Redacted | Production Associate | 3/2 | Mold/Plastics Center | Hand/arm vibration - Strain/sprain to hand | | | X | | | 15 | X | | | | | |
| 32 | | Production Associate | 3/6 | Body Line 1/BIW | Musculoskeletal disorder - Strain/sprain to shoulder | | | X | | | 26 | X | | | | | |
| 33 | | Production Associate | 2/25 | Battery Module/Powertrain | Loading module crushed hand btwn 2 totes | | | X | | | 12 | X | | | | | |
| 34 | | Production Associate | 3/2 | Battery Module/Powertrain | Back is sore from working the WB RW machine | | | X | | | 34 | X | | | | | |
| 35 | | Equipment Mant Tech | 3/2 | Battery Module/Powertrain | Edison cleaning scrap off the die bed when he was startled by the sound of the bolster moving and slipped in oil when | | | X | | | 34 | X | | | | | |
| 36 | | Production Associate | 3/2 | Press Center Stamping 6A | Associate is unsure of cause for pain in right lower back/hip area. | | | X | | | 6 | X | | | | | |
| 37 | | Welder | 3/1 | Body Line 1/Underbody | Associate complained of wrist pain on his left hand | | | X | | | 35 | X | | | | | |
| 38 | | Contigent Worker | 3/1 | Final Line 1 | Dollie cl'pped the associate's knee causing it to hyper-extend backwards. | | x | | | | | X | | | | | |
| 39 | | Production Associate | 2/27 | Paint Center Sealer | Liftgate fell on associate's back while working on slat 3 station | | | X | | | 18 | X | | | | | |
| 40 | | Production Associate | 2/8 | Battery Module/Powertrain | Vanessa reported lower back pain from moving modules | | | X | | | 17 | X | | | | | |
| 41 | | Production Associate | 2/8 | PWT Cooling Tube | Associate was feeling discomfort on her legs and feet After a couple hours, associate was feeling shooting pain on her foot | | x | | | | 2 | X | | | | | |
| 42 | | Production Associate | 2/17 | GA Trim 5 | Torqued from impact gun kicked awkwardly and caused pain in his elbow. | | x | X | | 33 | 2 | X | | | | | |
| 43 | | Production Associate | 2/10 | Battery Module/Powertrain | Working EOL felt a discomfort in right wrist and went to the nurse for observation | | | X | | | 54 | X | | | | | |
| 44 | | Production Associate | 2/13 | PWT Electrics Cnt Display | EE did not report injury or doctor's appt to supervisor prior to event. EE now on leave. | | | X | | | 9 | X | | | | | |
| 45 | | EOL Technician | 2/19 | EOL Repair | piece of plastic cut through his finger | | | X | | | 15 | X | | | | | |
| | | | | | **Page Totals** | 0 | 9 | 40 | 1 | 77 days | 570 days | 44 | 1 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) |

Page    3   of  7

**GC EXHIBIT 023-004**

22-60493.3544

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs. See CCR Title 8 14300.29(b)(6)-(10)



Cal/OSHA Form 300 (Rev.7/2007)

# Log of Work-Related Injuries and Illnesses

**Year: 2017**

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work- related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300.8 through 14300.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness Incident Report (Cal/ OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal/ OSHA office for help.

**Establishment name:** Tesla Motors    **City/State:** Fremont, CA

| Case # | Employee's Name | Job Title (e.g. welder) | Date of injury or onset of illness (month/day) | Where the event occurred (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away from work (K) | On the job transfer or restriction (L) | Injury (M)(1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 46 | Redacted | Contingent Worker | 2/17 | SDU Rotor | Bumped his head as he stood up.  He started to feel dizzy | 0 | 9 | 40 | 1 | 77 days | 570 days | X | | | | | |
| 47 | | Production Associate | 2/17 | PWT Electrics Cnt Display | Associate complained of pain in wrist after working station CD1-07000 | | X | X | | | 20 | X | | | | | |
| 48 | | Production Associate | 2/17 | PWT Electrics Gen 3 | When she went to turn around she tripped over a small air extractor that resides on the floor causing her to fall to the | | X | X | | | 36 | X | | | | | |
| 49 | | Production Associate | 2/8 | PWT Electrics Cnt Display | Discomfort in right shoulder  Associate didn't report any pain from a week ago until now | | X | X | | | 9 | X | | | | | |
| 50 | | Production Associate | 2/15 | PWT Electrics Cnt Display | Associate expressed numbness in left arm after walking up in the morning, this is a result of the push and pull | | | X | | | 49 | X | | | | | |
| 51 | | Production Associate | 2/14 | Supercharger | E more felt discomfort and requested to go to the clinc during work. | | 7 | X | | | 50 | X | | | | | |
| 52 | | Contigent Worker | 2/12 | Battery Module/Powertrain | Ysidro was replacing a pallet as he bent down to grab the pallet he felt it pull. | | X | X | | | | X | | | | | |
| 53 | | Contigent Worker | 2/12 | Battery Module/Powertrain | Associate feeling pain on both feet | | X | X | | | | X | | | | | |
| 54 | | Production Associate | 1/31 | W242 Energy Module | Feeling a slight discomfort in her left wrist | | | X | | | 13 | X | | | | | |
| 55 | | Production Associate | 2/13 | W242 Energy Module | Right shoulder pain | | X | X | | | 5 | X | | | | | |
| 56 | | Contigent Worker | 2/2 | PWT Battery Pack Line | Injured his back and hand due to repetitive motion | | X | | | | | X | | | | | |
| 57 | | Lead Prod. Associate | 2/10 | PWT Electrics Cnt Display | Associate started feeling pain in left wrist while working, woke up in the morning with numbness in fingers and weakness in left hand | | X | X | | | 49 | X | | | | | |
| 58 | | Production Associate | 2/8 | PWT Electrics Cnt Display | Soreness in her right shoulder, regarding injuries sustained in a car accident outside of work | | | X | | | 49 | X | | | | | |
| 59 | | Production Associate | 1/29 | Paint Center Inspection | Team member was walking outside topcoat tack-off area entrance and slipped on floor landing on shoulder | | X | X | | | 27 | X | | | | | |
| 60 | | Prooduction Super GA | 2/7 | GA Trim Panel 2 | By last break eye was red and irritated  Unknown how he got foreign material in his eye | | | X | | | 0 | X | | | | | |
| | | | | | **Page Totals** | 0 | 18 | 53 | 1 | 77 days | 877 days | 50 | 1 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Page   4   of   7

| Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|

# GC EXHIBIT 023-005

22-60493.3545

Cal/OSHA Form 300 (Rev.7/2007)
## Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs.



**Year: 2017**

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work- related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300.8 through 14300.12. Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (Cal OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal OSHA office for help.

**Establishment name:** Tesla Motors     **City/State:** Fremont, CA

| | | | | | | Classify the case | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Identify the person** | | | **Describe the case** | | | Using these four categories, check ONLY the most serious result for each case: | | | | Enter the number of days the injured or ill worker was: | | Check the "injury" column or choose one type of illness | | | | | | |
| (A) | (B) | (C) | (D) | (E) | (F) | Death | Days away from work | Remained at work — Job transfer or restriction | Other recordable cases | Away from work | On the job transfer or restriction | (M) Injury | Skin Disorder | Respiratory condition | Poisoning | Hearing loss | All other illnesses |
| Case # | Employee's Name | Job Title (e.g. welder) | Date of injury or onset of illness (month/day) | Where the event occurred (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g. Second degree burns on right forearm from acetylene torch) | (G) | (H) | (I) | (J) | (K) | (L) | (1) | (2) | (3) | (4) | (5) | (6) |
| | | | | | | 0 | 18 | 53 | 1 | 77 days | 877 days | 59 | 1 | 0 | 0 | 0 | 0 |
| 61 | Redacted | Temp Employee | 2/1 | Battery Pack Line | Operator reported to lead that his hands began to bother him due to performing module load task, specifically the | | | | | | | X | | | | | |
| 62 | | Production Associate | 2/7 | Rear Door Right Hand | EE strained his RH forearm/e bow when lifting a casting at RDR fasteners. | | X | | | 8 | 29 | X | | | | | |
| 63 | | Production Associate | 2/2 | Main Line Underbody | Associate felt pain on Left knee while working within his scope of job | | X | | | 41 | | X | | | | | |
| 64 | | Contingent Worker | 2/6 | Production Control/ Materials | Team Member was loading material from a bin on his forklift into a bin on the Line and pulled a muscle. | | | | | | | X | | | | | |
| 65 | | Contingent Worker | 2/6 | Main Line Underbody | EE aggravated his left knee when stepping up the incline at station UBM120LH. | | | | | | | X | | | | | |
| 66 | | Material Handler | 1/9 | Materials/PWT Conveyance | Manual handling - Strain/sprain to hand | | | X | | | 18 | X | | | | | |
| 67 | | Contingent Worker | 1/4 | Chassis & Final/GA | Strain/sprain to back | | | | | | | X | | | | | |
| 68 | | Production Associate | 1/5 | Door Line/GA | Repetitive Motion Type injury to hand/wrist | | | | | | 54 | X | | | | | |
| 69 | | Manufacturing Tech | 1/4 | EOL/GA | Laceration to fingers | | | X | | | 28 | X | | | | | |
| 70 | | Contingent Worker | 1/3 | Small Drive Unit/Powertrain | Crushing of thumb | | | | | | | X | | | | | |
| 71 | | Production Associate | 1/9 | Body Line 1/BIW | Manual handling - Strain/sprain to spine | | | X | | | 35 | X | | | | | |
| 72 | | Production Associate | 1/11 | Small Drive Unit/Powertrain | Musculoskeletal disorder - Strain/sprain to wrist | | | X | | | 42 | X | | | | | |
| 73 | | Contingent Worker | 1/9 | Trim 02/GA | Ergonomic injury - Strain/sprain to back | | | X | | | | X | | | | | |
| 74 | | Production Associate | 1/4 | Body Line 1/BIW | Contact with chemicals - Foreign body in eye | | X | | | | 52 | | | | | | X |
| 75 | | Production Associate | 1/6 | Small Drive Unit/Powertrain | Musculoskeletal disorder - Strain/sprain to back | | | X | | | 56 | X | | | | | |
| | | | | | **Page Totals** | 0 | 21 | 59 | 1 | 126 days | 1191 days | 73 | 1 | 0 | 0 | 0 | 1 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Page    5 of 7

Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing loss (5) | All other illnesses (6)

# GC EXHIBIT 023-006

22-60493.3546

Cal/OSHA Form 300 (Rev.7/2007)
## Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs. See CCR Title 8 14300.29(b)(6)-(10)



**Year: 2017**

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work- related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300 8 through 14300.12 Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (Cal/OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal OSHA office for help.

**Establishment name:** Tesla Motors    **City/State:** Fremont, CA

| Case # (A) | Employee's Name (B) | Job Title (C) (e.g. welder) | Date of injury or onset of illness (month/day) (D) | Where the event occurred (E) (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g. Second degree burns on right forearm from acetylene torch) (F) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away from work (K) | On the job transfer or restriction (L) | Injury (1) | Skin Disorder (2) | Respiratory condition (3) | Poisoning (4) | Hearing loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 0 | 21 | 59 | 1 | 126 days | 1191 days | 73 | 1 | 0 | 0 | 0 |  |
| 76 | Redacted | Contingent Worker | 05-Feb-2017 | General Assembly/ Trim 02 | Associate called me 15 minutes prior to shift start on 2/6/17 and informed me that he is unable to come in to |  | 21 |  |  |  |  | X |  |  |  |  |  |
| 77 |  | Material Handler | 07-Feb-2017 | Production Control/GA Conveyance | Associate was picking up a tote of        . When he lifted up he felt a pinch in his back |  |  | x |  |  | 20 | x |  |  |  |  |  |
| 78 |  | Production Associate | 28-Jan-2017 | Powertrain/ Battery Pack Line | While performing module load, the associate twisted his lower back due to the pull of the lift. Associate left for the |  |  | x |  | 4 | 7 | x |  |  |  |  |  |
| 79 |  | Production Associate | 31-Jan-2017 | Plastics Center | Associate was sanding parts with an electric sander & started to feel some pain on her left elbow. |  |  | x |  | 16 | 21 | x |  |  |  |  |  |
| 80 |  | Production Associate | 03-Feb-2017 | Body in White/ Line 1 | Prior to the incident the Associate was working at station 10-20 in Dash. At approximately 8:00 AM Associate |  |  | x |  |  | 25 | x |  |  |  |  |  |
| 81 |  | Material Handler | 02-Feb-2017 | Production Control/ Materials | team member was getting on to his tugger / his left foot slipped he caught himself on the tugger causing his left |  |  | x |  |  | 33 | x |  |  |  |  |  |
| 82 |  | Production Associate | 01-Feb-2017 | Powertrain/ Electrics | Soreness in her right hand. Unable to squeeze all the way. |  |  | x |  |  | 48 | x |  |  |  |  |  |
| 83 |  | Production Associate | 25-Jan-2017 | Press Center/ Stamping | Associate was standing on the last step (5th step) of stairs right before the top deck inside the 4d press leading to die |  |  | x |  |  | 27 | x |  |  |  |  |  |
| 84 |  | Production Associate | 30-Jan-2017 | Powertrain/ SDU Inverter | Associate was reaching for the scanner with her right hand and doing MES transactions as well and started |  |  | x |  |  | 69 | x |  |  |  |  |  |
| 85 |  | Production Associate | 26-Jan-2017 | General Assembly Chassis 02A | rocker molding  on to the vehicle, when wa king towards the vehicle Varaman stated that he might have had step |  |  | x |  |  | 40 | x |  |  |  |  |  |
| 86 |  | Material Handler | 28-Jan-2017 | Production Control/ Materials | Associates was coming out of north roll up door as he was  approaching the EOL roll up door a blue model x backed into him. |  |  | x |  |  | 37 | x |  |  |  |  |  |
| 87 |  | Production Associate | 26-Jan-2017 | General Assembly/ Trim 02 | assigned processes at the quarter glass station.  His process requires him to pick up quarter glass parts which |  |  | x |  | 13 | 31 | x |  |  |  |  |  |
| 88 |  | Production Associate | 25-Jan-2017 | Body Side Right | At approximately 3:55 pm the Associate removed a RH B-pillar outer from the cell and when placing it on the |  |  | x |  |  | 31 | x |  |  |  |  |  |
| 89 |  | Manufacturing Technician | 26-Jan-2017 | End of Final Line Repair | Technician reported to supervisor that he had pain in his right eye. Supervisor took him to eye wash station, |  |  |  | x |  |  |  |  |  |  |  | X |
| 90 |  | Production Associate | 03-Jan-2017 | Battery Pack Line | When loading modules he begins to feel discomfort in upper shoulders and neck |  |  | x |  |  | 60 | x |  |  |  |  |  |
|  |  |  |  | **Page Totals** |  | 0 | 21 | 72 | 2 | 159 days | 1640 days | 87 | 1 | 0 | 0 | 0 | 2 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Page     6 of 7

## GC EXHIBIT 023-007

22-60493.3547

Cal/OSHA Form 300 (Rev.7/2007)
**Log of Work-Related Injuries and Illnesses**



**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health programs. See CCR Title 8 14300.29(b)(6)-(10)

**Year: 2017**

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in CCR Title 8 Section 14300.8 through 14300.12. Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (Cal/OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local Cal/OSHA office for help.

**Establishment name:** Tesla Motors   **City/State:** Fremont, CA

| Case # | Employee's Name | Job Title (e.g. welder) | Date of injury or onset of illness (month/day) | Where the event occurred (e.g. Loading dock north end) | Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill. (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away from work (K) | On the job transfer or restriction (L) | Injury (1) | Skin Disorder (2) | Respiratory condition (3) | Poisoning (4) | Hearing loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 0 | 21 | 72 | 2 | 159 days | 1640 days | 87 | 1 | 0 | 0 | 0 | 2 |
| 91 | Redacted | Contingent Worker | 1/24 | Chassis & Final/GA | Ergonomic injury - Strain/sprain to shoulder | | | X | | | | X | | | | | |
| 92 | | Production Associate | 1/21 | Blanking/Press Center | Musculoskeletal disorder - Strain/sprain to leg | | | X | | | 20 | X | | | | | |
| 93 | | Equipment Maintenance Tech | 1/23 | Battery Module/Powertrain | Struck against - Cuts to head | | | | X | | 8 | X | | | | | |
| 94 | | Production Associate | 1/23 | Large Drive Unit/Powertrain | Contact with machinery - Bruising of hand/wrist | | | X | | | 32 | X | | | | | |
| 95 | | Contingent Worker | 1/18 | Battery Module/Powertrain | Struck by object - Crushing of fingers | | | X | | | | X | | | | | |
| 96 | | Production Associate | 1/18 | Large Drive Unit/Powertrain | Musculoskeletal disorder - Strain/sprain to back | | | X | | | 49 | X | | | | | |
| 97 | | Production Associate | 1/3 | Trim 0.5/GA | Musculoskeletal disorder - Strain/sprain to trunk | | | X | | | 23 | X | | | | | |
| 98 | | Contingent Worker | 1/17 | Chassis & Final/GA | Contact with machinery - Cuts to fingers | | | X | | | | X | | | | | |
| 99 | | Production Associate | 1/13 | Body Line 2/BIW | Musculoskeletal disorder - Strain/sprain to hand | | X | | | 5 | 53 | X | | | | | |
| 100 | | Quality Inspector | 1/11 | Product Excellence | Contact with hand tools - Strain/sprain to hand | | | | X | | 27 | X | | | | | |
| 101 | | | | | | | | | | | | | | | | | |
| 102 | | | | | | | | | | | | | | | | | |
| 103 | | | | | | | | | | | | | | | | | |
| 104 | | | | | | | | | | | | | | | | | |
| 105 | | | | | | | | | | | | | | | | | |
| | | | | **Page Totals** | | 0 | 22 | 80 | 4 | 164 days | 1852 days | 97 | 1 | 0 | 0 | 0 | 2 |

Be sure to transfer those totals to the Summary page (Form 300A) before you post it.

Page 7 of 7

Injury (1)   Skin Disorder (2)   Respiratory Condition (3)   Poisoning (4)   Hearing loss (5)   All other illnesses (6)

**GC EXHIBIT 023-008**

22-60493.3548

**OSHA's Form 300A** (Rev. 01/2004)

# Summary of Work-Related Injuries and Illnesses



Year __2016__

U.S. Department of Labor
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

*All establishments covered by Part 1904 must complete this Summary page, even if no injuries or illnesses occurred during the year. Remember to review the Log to verify that the entries are complete and accurate before completing this summary.*

*Using the Log, count the individual entries you made for each category. Then write the totals below, making sure you've added the entries from every page of the log. If you had no cases write "0."*

*Employees, former employees, and their representatives have the right to review the OSHA Form 300 in its entirety. They also have limited access to the OSHA Form 301 or its equivalent. See 29 CFR 1904.35, in OSHA's Recordkeeping rule, for further details on the access provisions for these forms.*

### Number of Cases

| Total number of deaths | Total number of cases with days away from work | Total number of cases with job transfer or restriction | Total number of other recordable cases |
|---|---|---|---|
| 0 | 139 | 507 | 59 |
| (G) | (H) | (I) | (J) |

### Number of Days

| Total number of days away from work | Total number of days of job transfer or restriction |
|---|---|
| 4488 | 18035 |
| (K) | (L) |

### Injury and Illness Types

Total number of...
(M)

| | | | | |
|---|---|---|---|---|
| (1) Injury | 705 | (4) Poisoning | 0 |
| (2) Skin Disorder | 0 | (5) Hearing Loss | 0 |
| (3) Respiratory Condition | 0 | (6) All Other Illnesses | 0 |

**Post this Summary page from February 1 to April 30 of the year following the year covered by the form**

Public reporting burden for this collection of information is estimated to average 58 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

### Establishment information

Your establishment name __Tesla Factory__

Street __45500 Fremont Blvd__

City __Fremont__     State __CA__     Zip __94538__

Industry description (e.g., Manufacture of motor truck trailers)
__Automobile Manufacturing__

Standard Industrial Classification (SIC), if known (e.g., SIC 3715)
__3   7   1   1__

OR   North American Industrial Classification (NAICS), if known (e.g., 336212)
__3   3   6   1   1   1__

### Employment information

Annual average number of employees __9173__

Total hours worked by all employees last year __16335417__

### Sign here

Knowingly falsifying this document may result in a fine.

I certify that I have examined this document and that to the best of my knowledge the entries are true, accurate, and complete.

_____     VP, Production
Company executive                  Title

650-681-5000                       1-Feb-17
Phone                              Date

22-60493.3546

# GC EXHIBIT 023-009

**OSHA's Form 300** (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

> **Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__



**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name __Tesla Factory__

City __Fremont__     State __CA__

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02530 | Redacted | Material Handle | 01/08 | Production Control Materials | Open wound affecting the Fingers occurred from Caught On, In, Under or Between caused by | | | x | | | 10 | x | | | | | |
| 02532 | Redacted | Process Techni | 01/11 | Powertrain Manufacturing Gen 3 | Dislocation affecting the Shoulder occurred from Lifting or Handling caused by Unknown. | | | x | | | 18 | x | | | | | |
| 02533 | Redacted | Production Asso | 01/12 | Chassis & Final General Assemb | Sprains, Strains affecting the Back/ Spine occurred from Improper Handling caused by poor | | | x | | | 31 | x | | | | | |
| 02534 | Redacted | Production Asso | 01/09 | Battery Module Line Battery Mod | Bump affecting the Knee occurred from Walking caused by Trip and Fall. | | | x | | | 12 | x | | | | | |
| 02535 | Redacted | Tool and Die Sp | 01/15 | Stamping Press center tool & die | Laceration affecting the Fingers occurred from Caught On, In, Under or Between caused by | | x | | | 5 | | x | | | | | |
| 02536 | Redacted | Production Asso | 01/14 | Trim General Assembly | Sprains, Strains affecting the Shoulder occurred from Overhead Work caused by poor | | x | | | 46 | | x | | | | | |
| 02537 | Redacted | Production Asso | 01/15 | Trim General Assembly | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Equipment missing Guarding | | | x | | | 22 | x | | | | | |
| 02538 | Redacted | Production Asso | 01/15 | Trim General Assembly | Carpal Tunnel Syndrome affecting the Neck occurred from Awkward angle/forceful | | x | | | 2 | 7 | x | | | | | |
| | | | | | **Page totals** | 0 | 3 | 5 | 0 | 53 | 100 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    1 of 89

|  | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

# GC EXHIBIT 023-010

22-60493.3550

**OSHA's Form 300** (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

Attention: This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name _____ Tesla Factory

City _____ Fremont _____ State _____ CA

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Remained at work — Job transfer or restriction (I) | Remained at work — Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02539 | Redacted | Production Asso | 01/18 | Powertrain Manufacturing Batter | Chipped Tooth affecting the Mouth occurred from Collision caused by Equipment Failure. | | x | | | 1 | | x | | | | | |
| 02540 | Redacted | Material Handle | 01/07 | Materials GA Conveyance | Sprains, Strains affecting the Elbow occurred from Lifting or Handling caused by Repetetive | | | | x | | | x | | | | | |
| 02541 | Redacted | Production Asso | 01/12 | Trim General Assembly | Contusion, Crushing, Bruise affecting the Leg occurred from Collision caused by Fellow Worker. | | | x | | | 25 | x | | | | | |
| 02542 | Redacted | Production Asso | 01/16 | Chassis & Final Final Line | Sprains, Strains affecting the Abdomen occurred from Unknown caused by under investigation. | | | x | | | 7 | x | | | | | |
| 02543 | Redacted | Equipment Mair | 01/19 | Body Line 1 Unknown | Laceration affecting the Fingers occurred from Improper Handling caused by Blatant Disregard | | | | x | | | x | | | | | |
| 02544 | Redacted | Production Asso | 01/19 | Trim General Assembly | Carpal Tunnel Syndrome affecting the Neck occurred from Repetitive motion caused by poor | | | x | | | 37 | x | | | | | |
| 02546 | Redacted | Production Asso | 01/21 | Body Line 1 Rear Underbody | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02547 | Redacted | Lead Production | 01/19 | Trim General Assembly | Contusion, Crushing, Bruise affecting the Head occurred from Equipment missing Guarding | | x | | | 4 | | x | | | | | |
| | | | | | **Page totals** | **0** | **2** | **4** | **2** | **5** | **83** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

| | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

Page     2 of 89

# GC EXHIBIT 023-011

# OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year **2016**

**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name        Tesla Factory

City        Fremont                State        CA

| | Identify the person | | | Describe the case | | Classify the case | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | CHECK ONLY ONE box for each case based on the most serious outcome for that case: | | | | Enter the number of days the injured or ill worker was: | | Check the "injury" column or choose one type of illness: (M) | | | | | |
| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death | Days away from work | Remained at work | | Away From Work (days) | On job transfer or restriction (days) | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
| | | | | | | | | Job transfer or restriction | Other recordable cases | | | | | | | | |
| | | | | | | (G) | (H) | (I) | (J) | (K) | (L) | (1) | (2) | (3) | (4) | (5) | (6) |
| 02548 | Redacted | Production Asso | 01/20 | Powertrain Manufacturing LDU R | Contusion, Crushing, Bruise affecting the Thumb occurred from Equipment missing Guarding | | x | | | | 5 | x | | | | | |
| 02554 | Redacted | Material Handle | 01/25 | Materials Materials | Sprains, Strains affecting the Back/ Spine occurred from Lifting or Handling caused by | | x | | | | 25 | x | | | | | |
| 02556 | Redacted | Material Handle | 01/22 | Materials PWT Recycling Center | Cut, Laceration, Puncture affecting the Head occurred from Fall caused by under investigation. | x | | | | 2 | | x | | | | | |
| 02557 | Redacted | Material Handle | 01/26 | Materials PWT Recycling Center | Sprains, Strains affecting the Back/ Spine occurred from Lifting or Handling caused by | | x | | | | 1 | x | | | | | |
| 02558 | Redacted | Engineering Te | 01/22 | Fremont Factory Unknown | Sprains, Strains affecting the Foot occurred from Unknown caused by Unknown. | | | | x | | | x | | | | | |
| 02560 | Redacted | Production Asso | 01/05 | Body in White Special Means | Sprains, Strains affecting the Back/ Spine occurred from Strain or Injury caused by Old | | | | x | | | x | | | | | |
| 02561 | Redacted | Production Asso | 01/11 | Powertrain Manufacturing LDU R | Sprains, Strains affecting the Shoulder occurred from Repetitive motion caused by poor | x | | | | 20 | | x | | | | | |
| 02563 | Redacted | Production Asso | 01/27 | Fremont Factory Unknown | Sprains, Strains affecting the Torso occurred from Repetitive motion caused by Repetetive Motion. | | | | x | | | x | | | | | |
| | | | | | **Page totals** | 0 | 2 | 3 | 3 | 22 | 31 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) |

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page        3 of 89

# GC EXHIBIT 023-012

# OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.



Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name __Tesla Factory__

City __Fremont__     State __CA__

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g. Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | (G) Death | (H) Days away from work | (I) Job transfer or restriction | (J) Other record-able cases | (K) Away From Work (days) | (L) On job transfer or restriction (days) | (M1) Injury | (M2) Skin Disorder | (M3) Respiratory Condition | (M4) Poisoning | (M5) Hearing Loss | (M6) All other illnesses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02565 | Redacted | Production Asso | 01/27 | Powertrain Manufacturing Battery | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 28 | x | | | | | |
| 02566 | Redacted | Production Asso | 01/20 | Stamping Press center tool & die | Bump affecting the Knee occurred from Awkward angle/forceful movements caused by poor | | x | | | 22 | | x | | | | | |
| 02567 | Redacted | Production Asso | 01/28 | Stamping Metal Finishing Repair | Sprains, Strains affecting the Neck occurred from Bending caused by poor ergonomics. | | x | | | 6 | 17 | x | | | | | |
| 02568 | Redacted | Production Asso | 01/28 | Body in White Body Line 1 | Sprains, Strains affecting the Neck occurred from Lifting or Handling caused by poor ergonomics. | | x | | | | 33 | x | | | | | |
| 02571 | Redacted | Material Handle | 01/20 | Materials Materials | Dislocation affecting the Shoulder occurred from Excessive force caused by poor ergonomics. | | | | x | | | x | | | | | |
| 02574 | Redacted | Production Asso | 01/29 | Powertrain Manufacturing LDU F | Bump affecting the Neck occurred from Other caused by under investigation. | | | x | | | 6 | x | | | | | |
| 02576 | Redacted | Production Asso | 01/23 | Paint Center Body Paint Shop | Repetitive Motion Type Injury affecting the Back/Spine occurred from Repetitive motion caused by | | | x | | | 1 | x | | | | | |
| 02578 | Redacted | Production Asso | 01/31 | Battery Module Line Battery Mod | Bruising affecting the Hand/Wrist/Forearm occurred from Exposure to caused by Pinch | | | x | | | 1 | x | | | | | |
| | | | | | **Page totals** | **0** | **2** | **5** | **1** | **28** | **86** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page __4 of 89__

# GC EXHIBIT 023-013

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name ___Tesla Factory___

City ___Fremont___   State ___CA___

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | (G) Death | (H) Days away from work | (I) Job transfer or restriction | (J) Other record-able cases | (K) Away From Work (days) | (L) On job transfer or restriction (days) | (1) Injury | (2) Skin Disorder | (3) Respiratory Condition | (4) Poisoning | (5) Hearing Loss | (6) All other illnesses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02580 | Redacted | Production Asso | 02/01 | Fremont Factory Unknown | Tendinitis affecting the Arm occurred from Repetitive motion caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02581 | Redacted | Material Hanler | 01/29 | Powertrain Manufacturing Materi | Repetitive Motion Type Injury affecting the Back/ Spine occurred from Lifting or Handling caused | | | x | | | 14 | x | | | | | |
| 02583 | Redacted | | 02/03 | Fremont Factory Unknown | Sprains, Strains affecting the Lower Back occurred from Lifting or Handling caused by poor | | | x | | | 12 | x | | | | | |
| 02584 | Redacted | 661810 | 02/02 | Fremont Factory Plastic Subass | Cut, Laceration, Puncture affecting the Fingers occurred from Slippery Surface caused by Tool. | | x | | | 2 | | x | | | | | |
| 02587 | Redacted | Production Asso | 01/04 | Powertrain Manufacturing Battery | RMI affecting the Elbow occurred from Repetitive motion caused by Personal Medical Condition. | | x | | | 4 | 50 | x | | | | | |
| 02589 | Redacted | Production Asso | 01/29 | Fremont Factory Unknown | Sprains, Strains affecting the Shoulder occurred from Operating Tool caused by Torqueing. | | x | | | 7 | 33 | x | | | | | |
| 02590 | Redacted | Production Asso | 02/02 | Paint Center Body Paint Shop | Bump affecting the Head occurred from Working at station caused by poor ergonomics. | | | | x | | | x | | | | | |
| 02594 | Redacted | Production Asso | 02/08 | Body in White Liftgate | Sprains, Strains affecting the Back/ Spine occurred from Awkward angle/forceful | | x | | | 8 | | x | | | | | |
| | | | | | **Page totals** | **0** | **4** | **3** | **1** | **21** | **123** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) |

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    5 of 89

# GC EXHIBIT 023-014

22-60493.3554

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

Attention: This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name ___Tesla Factory___

City ___Fremont___    State ___CA___

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02596 | Redacted | Lead Production | 02/09 | Stamping Metal Finishing Repair | RMI affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | | x | | | x | | | | | |
| 02598 | Redacted | Material Handle | 02/09 | Production Control GA Conveyor | Sprains, Strains affecting the Ankle occurred from Misstep caused by poor ergonomics. | | | x | | | 7 | x | | | | | |
| 02599 | Redacted | Production Assoc | 02/08 | Body in White Body Line 1 | Sprains, Strains affecting the Wrist occurred from Repetitive motion caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02600 | Redacted | Production Assoc | 02/09 | Trim Trim 1 | Cut, Laceration, Puncture affecting the Eye(s), Pupil occurred from Swinging Object caused by | | x | | | 1 | | x | | | | | |
| 02601 | Redacted | Production Assoc | 02/11 | Powertrain Manufacturing Gen 2 | Repetitive Motion Type Injury affecting the Hand occurred from Grabbing caused by Tool. | | | x | | | | x | | | | | |
| 02604 | Redacted | Production Assoc | 02/05 | Stamping Metal Finishing Repair | Repetitive Motion Type Injury affecting the Shoulder occurred from Repetitive motion caused | | | x | | | 14 | x | | | | | |
| 02605 | Redacted | Production Assoc | 01/27 | Chassis & Final Chassis 3 | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | x | | | 180 | | x | | | | | |
| 02607 | Redacted | Production Assoc | 02/11 | W242 W242 Module | RMI affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | | x | | | x | | | | | |
| **Page totals** | | | | | | **0** | **2** | **3** | **3** | **181** | **35** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page 6 of 89

**GC EXHIBIT 023-015**

22-60493.3555

# OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__



**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name ___Tesla Factory___

City ___Fremont___     State ___CA___

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02613 | Redacted | Production Asso | 02/09 | Small Drive Unit SDU Final Asse | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Lifting or Handling caused by poor | | | x | | | 3 | x | | | | | |
| 02614 | Redacted | Production Asso | 02/16 | Small Drive Unit SDU Final Asse | Sprains, Strains affecting the Shoulder occurred from Overhead Work caused by poor | | | | x | | | x | | | | | |
| 02615 | Redacted | Paint Maintenan | 02/12 | Fremont Factory Unknown | Pain affecting the Groin occurred from Holding or Carrying caused by Unknown. | | | | x | | | x | | | | | |
| 02619 | Redacted | Production Asso | 02/17 | Powertrain Manufacturing Center | RMI affecting the Back/ Spine occurred from leaning caused by poor ergonomics. | | | x | | | 25 | x | | | | | |
| 02620 | Redacted | Lead Production | 02/17 | Chassis & Final Sub Frame | Sprains, Strains affecting the Upper BackNeck occurred from Awkward angle/forceful | | | x | | | 7 | x | | | | | |
| 02621 | Redacted | Production Asso | 02/17 | Powertrain Manufacturing LDU F | Carpal Tunnel Syndrome affecting the Trunk (Stomach occurred from Holding or Carrying | | | | x | | | x | | | | | |
| 02622 | Redacted | Production Asso | 02/18 | Powertrain Manufacturing Battery | Repetitive Motion Type Injury affecting the Hand/Wrist/Forearm occurred from Hammering | | | x | | | 14 | x | | | | | |
| 02624 | Redacted | Production Asso | 02/18 | Fremont Factory Unknown | Sprains, Strains affecting the Hand occurred from Repetitive motion caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 5 | 3 | 0 | 63 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

| | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

Page ___7 of 69___

## GC EXHIBIT 023-016

22-60493.3556

**OSHA's Form 300** (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__



**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name    Tesla Factory

City    Fremont          State    CA

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02625 | Redacted | Lead Tool and D | 02/16 | Tool & Die Tool & Die | Cut, Laceration, Puncture affecting the Trunk (Stomach occurred from Handling Sharp Objects | | x | | | 4 | | x | | | | | |
| 02626 | Redacted | Material Handle | 02/12 | Production Control Materials | Sprains, Strains affecting the Back/ Spine occurred from Equipment missing Guarding | | | x | | | 3 | x | | | | | |
| 02627 | Redacted | Production Asso | 02/18 | Trim General Assembly | Cut, Laceration, Puncture affecting the Leg occurred from Collision caused by Debris on | | | x | | | 14 | x | | | | | |
| 02628 | Redacted | Production Asso | 02/12 | Powertrain Manufacturing LDU R | Bump affecting the Trunk (Stomach occurred from Collision caused by Fellow Worker, Patient | | | x | | | 22 | x | | | | | |
| 02629 | Redacted | Production Asso | 02/10 | Body Line 1 Rear Underbody | Sprains, Strains affecting the Elbow occurred from Overhead Work caused by poor | | | x | | | 4 | x | | | | | |
| 02632 | Redacted | Production Asso | 02/20 | Stamping Press center tool & die | Sprains, Strains affecting the Shoulder occurred from Excessive force caused by poor | | x | | | 4 | | x | | | | | |
| 02634 | Redacted | Production Asso | 02/17 | Chassis & Final General Assemb | Sprains, Strains affecting the Elbow occurred from Awkward angle/forceful movements caused | | | x | | | 2 | x | | | | | |
| 02635 | Redacted | Production Asso | 02/19 | Body in White Body Line 1 | Sprains, Strains affecting the Trunk (Stomach occurred from Repetitive motion caused by poor | | | x | | | 1 | x | | | | | |
| | | | | | **Page totals** | **0** | **2** | **6** | **0** | **8** | **46** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    8 of 89

|  | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

**GC EXHIBIT 023-017**

22-60493.3557

## OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__



**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name ___Tesla Factory___

City ___Fremont___    State ___CA___

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02636 | Redacted | Production Asso | 02/22 | Battery Module Line Cooling Tub | Sprains, Strains affecting the Shoulder occurred from Repetitive motion caused by Unknown. | | | x | | | 2 | x | | | | | |
| 02639 | Redacted | Material Handle | 01/28 | Production Control Materials | Sprains, Strains affecting the Other occurred from Lifting or Handling caused by Box. | | | x | | | 46 | x | | | | | |
| 02640 | Redacted | Material Handle | 02/25 | Production Control Materials | Bruising affecting the Ankle occurred from Caught On, In, Under or Between caused by Tugger. | | x | | | 1 | 7 | x | | | | | |
| 02642 | Redacted | Production Asso | 02/02 | Fremont Factory Unknown | Repetitive Motion Type Injury affecting the Unknown occurred from Repetitive motion | | | | x | | | x | | | | | |
| 02643 | Redacted | Remanufacturin | 02/25 | Fremont Factory Unknown | Sprains, Strains affecting the Arm occurred from Repetitive motion caused by Tool. | | | x | | | 14 | x | | | | | |
| 02644 | Redacted | Production Asso | 02/24 | Trim General Assembly | Bump affecting the E bow occurred from Struck or Injured caused by Vehicle. | | | x | | | 14 | x | | | | | |
| 02645 | Redacted | Associate Field | 02/20 | Fremont Factory Unknown | Laceration affecting the Head occurred from Unknown caused by Unknown. | | | | x | | | x | | | | | |
| 02648 | Redacted | Manufacturing T | 02/26 | Factory Property End of Line Pro | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Pulling or Pushing Object caused | | | x | | | 11 | x | | | | | |
| | | | | | **Page totals** | 0 | 1 | 5 | 2 | 1 | 94 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    9 of 89

|  | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |

# GC EXHIBIT 023-018

# OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name    Tesla Factory

City    Fremont        State    CA

| | Identify the person | | | Describe the case | | Classify the case | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | CHECK ONLY ONE box for each case based on the most serious outcome for that case: | | | | Enter the number of days the injured or ill worker was: | | Check the "injury" column or choose one type of illness: | | | | | |
| | | | | | | Death | Days away from work | Remained at work | | Away From Work (days) | On job transfer or restriction (days) | (M) | | | | | |
| | | | | | | | | Job transfer or restriction | Other record-able cases | | | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
| | | | | | | (G) | (H) | (I) | (J) | (K) | (L) | (1) | (2) | (3) | (4) | (5) | (6) |
| 02651 | Redacted | Production Asso | 02/26 | Body in White Body Line 1 | Repetitive Motion Type Injury affecting the Back/Spine occurred from Repetitive motion caused by | | | | x | | | x | | | | | |
| 02652 | | Production Asso | 03/01 | Powertrain Manufacturing Battery | Repetitive Motion Type Injury affecting the Hand/Wrist/Forearm occurred from Grabbing | | | x | | | 14 | x | | | | | |
| 02654 | | Manufacturing T | 02/28 | End of Line Final Line | Sprains, Strains affecting the Arm occurred from Repetitive motion caused by poor ergonomics. | | | x | | | 16 | x | | | | | |
| 02655 | | Material Handle | 03/02 | Production Control Materials | Tendinitis affecting the Shoulder occurred from Personal Medical Issue caused by under | | | x | | | 14 | x | | | | | |
| 02656 | | Production Asso | 02/27 | Chassis & Final Chassis | Sprains, Strains affecting the Arm occurred from Picking up a fallen object caused by poor | | | x | | | 13 | x | | | | | |
| 02658 | | | 03/02 | Fremont Factory Unknown | Tendinitis affecting the Back/Spine occurred from Repetitive motion caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02660 | | Production Asso | 03/03 | Trim Trim 1.5 | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Unknown caused by Unknown. | | | x | | | 14 | x | | | | | |
| 02662 | | Production Asso | 03/02 | Body in White End of Line Proces | Cut, Laceration, Puncture affecting the Face occurred from Contact with caused by Vehicle. | | | | x | | | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 6 | 2 | 0 | 85 | 8 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | | | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
| | | | | | | | | | | | | (1) | (2) | (3) | (4) | (5) | (6) |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    10 of 89

**GC EXHIBIT 023-019**

22-60493.3559

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration



Form approved OMB no. 1218-0176

Establishment name _____ Tesla Factory _____

City _____ Fremont _____    State _____ CA _____

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02664 | Redacted | Production Asso | 03/04 | Paint Center Body Paint Shop | Bruising affecting the Trunk (Stomach occurred from Struck or Injured caused by Vehicle. | | | x | | | 14 | x | | | | | |
| 02666 | | Production Asso | 03/04 | Trim Trim 1 | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02667 | | Production Asso | 03/05 | End of Line End of Line Process | Sprains, Strains affecting the Back/ Spine occurred from Slip, Fall caused by Wet Floor. | | | x | | | 14 | x | | | | | |
| 02668 | | Production Asso | 03/06 | Battery Module Line Battery Mod | Repetitive Motion Type Injury affecting the Back/ Spine occurred from Repetitive motion caused by | | | | x | | 14 | x | | | | | |
| 02669 | | Production Asso | 02/20 | Powertrain Manufacturing Batter | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02670 | | Production Asso | 03/03 | Trim Trim 2 | Bruising affecting the Leg occurred from Misstep caused by Vehicle. | | | x | | | 14 | x | | | | | |
| 02673 | | Production Asso | 03/08 | Fremont Factory Unknown | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02675 | | Production Asso | 03/05 | Trim Trim | Sprains, Strains affecting the Ankle occurred from Caught On, In, Under or Between caused by | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | **0** | **0** | **7** | **1** | **0** | **98** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    11 of 89

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

Attention: This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration



You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name ___Tesla Factory___

City ___Fremont___    State ___CA___

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Remained at work — Job transfer or restriction (I) | Remained at work — Other recordable cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02678 | Redacted | Material Handle | 03/05 | Production Control Materials | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02680 | | Production Asso | 03/05 | Stamping Press 1B | Swelling affecting the Ankle occurred from Misstep caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02681 | | Production Asso | 03/08 | Fremont Factory Product Specia | Repetitive Motion Type Injury affecting the Fingers occurred from Repetitive motion caused | | | x | | | 180 | x | | | | | |
| 02682 | | Material Handle | 03/08 | Body in White Materials | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Excessive force caused by Pulling | | | x | | | 14 | x | | | | | |
| 02688 | | Material Handle | 03/08 | Production Control Materials | Bruising affecting the Leg occurred from Str king against or stepping on caused by Dolly. | | | x | | | 14 | x | | | | | |
| 02689 | | Production Asso | 03/11 | Trim Trim | Bruising affecting the Hand/Wrist/Forearm occurred from Striking against or stepping on | | | x | | | 2 | x | | | | | |
| 02690 | | Production Asso | 03/11 | Fremont Factory Press center to | Swelling affecting the Ankle occurred from Misstep caused by Bungee Cord. | | x | | | 3 | | x | | | | | |
| 02691 | | Production Asso | 03/10 | Fremont Factory Trim | Sprains, Strains affecting the Ankle occurred from Misstep caused by Tripped. | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 1 | 7 | 0 | 3 | 252 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    12 of 89

|  | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

22-60493.3561

## OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year **2016**



**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name _____ Tesla Factory

City ___ Fremont ___ State ___ CA

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Remained at work — Job transfer or restriction (I) | Remained at work — Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02692 | Redacted | | 02/10 | Body in White Body Line 1 | Sprains, Strains affecting the Hand occurred from Repetitive motion caused by Tool. | | | x | | | 14 | x | | | | | |
| 02693 | | Production Asso | 03/07 | Powertrain Manufacturing SDU R | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02694 | | Production Asso | 03/10 | Powertrain Manufacturing Electric | Repetitive Motion Type Injury affecting the Hand/Wrist/Forearm occurred from Repetitive | | | x | | | 35 | x | | | | | |
| 02695 | | Lead Equipmen | 03/11 | Trim Trim | Cut, Laceration, Puncture affecting the Head occurred from Fall caused by Slipped. | | | | x | | | x | | | | | |
| 02696 | | Production Asso | 02/25 | Paint Center Body Paint Shop | Repetitive Motion Type Injury affecting the Fingers occurred from Repetitive motion caused | | | x | | | 14 | x | | | | | |
| 02697 | | Production Asso | 03/11 | Trim Door 1 | Bump affecting the E bow occurred from Misstep caused by Hitting. | | | x | | | 14 | x | | | | | |
| 02698 | | Material Handle | 03/15 | Body in White Materials | Sprains, Strains affecting the Shoulder occurred from Pulling or Pushing Object caused by Dolly. | | | x | | | 14 | x | | | | | |
| 02700 | | Production Asso | 03/14 | Plastics Plastic Subassemblies | Repetitive Motion Type Injury affecting the Shoulder occurred from Repetitive motion caused | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 7 | 1 | 0 | 119 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

|  | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) |

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    13 of 89

# GC EXHIBIT 023-022

22-60493.3562

# OSHA's Form 300 (Rev. 01/2004)
## Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year **2016**



**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name **Tesla Factory**

City **Fremont**    State **CA**

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Remained at work — Job transfer or restriction (I) | Remained at work — Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02702 | Redacted | Production Asso | 03/11 | General Assembly Trim | hernia, no obstruction affecting the Trunk (Stomach occurred from Lifting or Handling | | | x | | | 14 | x | | | | | |
| 02703 | | Production Asso | 03/08 | Fremont Factory Unknown | Repetitive Motion Type Injury affecting the Wrist occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02704 | | Production Asso | 03/14 | General Assembly Trim | Sprains, Strains affecting the Back/ Spine occurred from bending over caused by Vehicle | | | x | | | 24 | x | | | | | |
| 02705 | | Production Asso | 03/14 | Remanufacturing Center Reman | Sprains, Strains affecting the Knee occurred from Slip, Fall caused by Wet Floor | | | | x | | | x | | | | | |
| 02706 | | Material Handle | 03/14 | Production Control Materials | Cut, Laceration, Puncture affecting the Head occurred from Struck or Injured caused by Falling | | | | x | | | x | | | | | |
| 02708 | | Production Asso | 03/15 | General Assembly Chassis & Fin | Repetitive Motion Type Injury affecting the Arm occurred from Installation caused by poor | | | x | | | 14 | x | | | | | |
| 02710 | | Lead Production | 03/15 | General Assembly Chassis & Fin | Sprains, Strains affecting the Ankle occurred from Misstep caused by Misstep. | | | x | | | 14 | x | | | | | |
| 02711 | | Production Asso | 03/17 | General Assembly Chassis & Fin | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Lifting or Handling caused by | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 6 | 2 | 0 | 94 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    14 of 89

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

# OSHA's Form 300 (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

Year 2016



**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name: Tesla Factory

City: Fremont State: CA

| Identify the person | | | Describe the case | | | Classify the case | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | CHECK ONLY ONE box for each case based on the most serious outcome for that case: Death (G) | Days away from work (H) | Remained at work: Job transfer or restriction (I) | Remained at work: Other record-able cases (J) | Enter the number of days the injured or ill worker was: Away From Work (days) (K) | On job transfer or restriction (days) (L) | Check the "injury" column or choose one type of illness: (M) Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
| 02712 | Redacted | Material Handle | 03/18 | Production Control Materials | Repetitive Motion Type Injury affecting the Shoulder occurred from Repetitive motion caused | | | x | | | 14 | x | | | | | |
| 02713 | | Production Ass | 03/17 | General Assembly Trim | Bump affecting the Head occurred from Falling object caused by Door. | | | x | | | 14 | x | | | | | |
| 02714 | | Production Ass | 03/17 | General Assembly Trim | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Struck or Injured caused by wall. | | | x | | | 14 | x | | | | | |
| 02716 | | Production Ass | 03/18 | General Assembly Trim | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02717 | | Production Ass | 03/15 | General Assembly Chassis | Repetitive Motion Type Injury affecting the Wrist occurred from Excessive force caused by Tool. | | | x | | | 14 | x | | | | | |
| 02718 | | Production Ass | 03/18 | Factory Property Unknown | Bump affecting the Head occurred from Struck or Injured caused by Door. | | | x | | | 14 | x | | | | | |
| 02719 | | Production Ass | 03/21 | Powertrain Manufacturing SDU R | Cut, Laceration, Puncture affecting the Face occurred from Struck or Injured caused by Tool. | | | | x | | | x | | | | | |
| 02722 | | Material Handle | 03/20 | Production Control Materials | Bump affecting the E bow occurred from Struck or Injured caused by Forklift. | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 7 | 1 | 0 | 98 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6)

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.



**GC EXHIBIT 023-024**

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

Attention: This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__



**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name _____ Tesla Factory _____

City ___ Fremont ___     State ___ CA ___

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02723 | Redacted | Manufacturing T | 03/18 | NPI Powertrain Center Spine | Burns (Chemical) affecting the Fingers occurred from Holding or Carrying caused by Battery. | | | | x | | | x | | | | | |
| 02724 | | Production Asso | 03/17 | General Assembly Trim | Sprains, Strains affecting the Chest occurred from Holding or Carrying caused by Lift assistant. | | | | x | | | x | | | | | |
| 02725 | | Production Asso | 03/18 | Body in White Body Line 1 | Sprains, Strains affecting the Trunk (Stomach occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02727 | | Production Asso | 03/15 | Fremont Factory Unknown | Sprains, Strains affecting the Back/ Spine occurred from Lifting or Handling caused by | | | x | | | 14 | x | | | | | |
| 02728 | | Production Asso | 03/18 | Plastics Plastic Subassemblies | Repetitive Motion Type Injury affecting the Hand/Wrist/Forearm occurred from Repetitive | | | x | | | 14 | x | | | | | |
| 02729 | | Production Asso | 03/22 | Fremont Factory Unknown | Repetitive Motion Type Injury affecting the Back/ Spine occurred from bending over caused by | | | x | | | 14 | x | | | | | |
| 02730 | | Production Asso | 03/11 | Fremont Factory Unknown | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02732 | | | 03/23 | Powertrain Manufacturing Batter | Sprains, Strains affecting the Knee occurred from Repetitive motion caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 6 | 2 | 0 | 84 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    16 of 89

| | | | | | |
|---|---|---|---|---|---|
| Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |

**GC EXHIBIT 023-025**

22-60493.3565

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__



**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

Establishment name          Tesla Factory

City          Fremont          State          CA

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | (G) Death | (H) Days away from work | (I) Remained at work — Job transfer or restriction | (J) Remained at work — Other recordable cases | (K) Away From Work (days) | (L) On job transfer or restriction (days) | (1) Injury | (2) Skin Disorder | (3) Respiratory Condition | (4) Poisoning | (5) Hearing Loss | (6) All other illnesses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02733 | Redacted | Production Asso | 03/01 | Fremont Factory Unknown | Sprains, Strains affecting the Arm occurred from Repetitive motion caused by Tool. | | | x | | | 14 | x | | | | | |
| 02734 | | Remanufacturin | 03/21 | Remanufacturing Center Reman | Repetitive Motion Type Injury affecting the Hand/Wrist/Forearm occurred from Repetitive | | | x | | | 14 | x | | | | | |
| 02735 | | Production Asso | 03/24 | General Assembly Trim | Sprains, Strains affecting the Knee occurred from Misstep caused by poor ergonomics. | | | x | | | 2 | x | | | | | |
| 02736 | | Production Asso | 03/22 | Powertrain Manufacturing Battery | Sprains, Strains affecting the Neck occurred from Lifting or Handling caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02737 | | Production Asso | 03/21 | Powertrain Manufacturing LDU R | Sprains, Strains affecting the Shoulder occurred from Lifting or Handling caused by poor | | | | x | | | x | | | | | |
| 02738 | | Production Asso | 02/27 | General Assembly Door 1 | Sprains, Strains affecting the Shoulder occurred from Fall caused by Misstep. | | | x | | | 14 | x | | | | | |
| 02740 | | Production Asso | 03/25 | General Assembly Door 1 | Sprains, Strains affecting the Shoulder occurred from Installation caused by Harness. | | | x | | | 14 | x | | | | | |
| 02741 | | Material Handle | 03/25 | Body in White Main Line 25 Righ | Repetitive Motion Type Injury affecting the Hand/Wrist/Forearm occurred from Repetitive | | | | x | | | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 6 | 2 | 0 | 72 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page          17 of 89

|  | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
|---|---|---|---|---|---|---|
|  | (1) | (2) | (3) | (4) | (5) | (6) |

## GC EXHIBIT 023-026

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year **2016**



**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name     Tesla Factory

City     Fremont     State     CA

| | | | | | | CHECK ONLY ONE box for each case based on the most serious outcome for that case: | | | | Enter the number of days the injured or ill worker was: | | Check the "injury" column or choose one type of illness: | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g. Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death | Days away from work | Remained at work | | Away From Work (days) | On job transfer or restriction (days) | (M) Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
| | | | | | | | | Job transfer or restriction | Other recordable cases | | | | | | | | |
| | | | | | | (G) | (H) | (I) | (J) | (K) | (L) | (1) | (2) | (3) | (4) | (5) | (6) |
| 02742 | Redacted | Production Assoc | 03/23 | Fremont Factory Unknown | Anxiety affecting the Unknown occurred from Unknown caused by Unknown. | | x | | | 3 | | x | | | | | |
| 02743 | | Production Assoc | 03/24 | Powertrain Manufacturing LDU S | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02751 | | Production Assoc | 03/25 | Plastics Mold | Repetitive Motion Type Injury affecting the Thumb occurred from Repetitive motion caused by Tool. | | | x | | | 14 | x | | | | | |
| 02752 | | Production Assoc | 03/24 | Fremont Factory Unknown | Repetitive Motion Type Injury affecting the E bow occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02756 | | Production Assoc | 03/29 | General Assembly Trim | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02757 | | Production Assoc | 03/21 | Fremont Factory Unknown | Unknown affecting the Unknown occurred from Unknown caused by Unknown. | | x | | | 5 | | x | | | | | |
| 02759 | | Production Assoc | 03/21 | Powertrain Manufacturing SDU F | Dislocation affecting the Shoulder occurred from Fall caused by Misstep. | | | x | | | 14 | x | | | | | |
| 02762 | | Production Assoc | 03/26 | General Assembly Chassis & Fin | Sprains, Strains affecting the Shoulder occurred from Pulling or Pushing Object caused by Heavy | | | | x | | | x | | | | | |
| | | | | | **Page totals** | **0** | **2** | **5** | **1** | **8** | **70** | **8** | **0** | **0** | **0** | **0** | **0** |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

| | | | | | | | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Page | 18 of 89 | (1) | (2) | (3) | (4) | (5) | (6) |

## GC EXHIBIT 023-027

**OSHA's Form 300** (Rev. 01/2004)

# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name ____Tesla Factory____

City ____Fremont____    State ____CA____

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g., Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other recordable cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02763 | Redacted | Production Asso | 03/30 | Powertrain Manufacturing Electri | Sprains, Strains affecting the Back/ Spine occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02764 | | Remanufacturi | 03/20 | Remanufacturing Center Reman | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02765 | | Production Asso | 03/30 | General Assembly Chassis | Sprains, Strains affecting the Back/ Spine occurred from Lifting or Handling caused by Part. | | | x | | | 14 | x | | | | | |
| 02766 | | Production Asso | 03/30 | Stamping Stamping | Cut, Laceration, Puncture affecting the Hand/Wrist/Forearm occurred from Handling | | | | x | | | x | | | | | |
| 02767 | | Equipment Main | 03/28 | Fremont Factory Unknown | Sprains, Strains affecting the Back/ Spine occurred from Unknown caused by Unknown. | | | x | | | 14 | x | | | | | |
| 02768 | | Production Asso | 03/29 | General Assembly Trim | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | | x | | | x | | | | | |
| 02772 | | Production Asso | 03/26 | Powertrain Manufacturing Batter | Repetitive Motion Type Injury affecting the Ankle occurred from Repetitive motion caused by poor | | | | x | | | x | | | | | |
| 02776 | | Production Asso | 03/31 | Stamping Press 1B | Contusion, Crushing, Bruise affecting the Knee occurred from Fall caused by Misstep. | | | x | | | 3 | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 5 | 3 | 0 | 59 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

Page    19 of 89

| Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|

**GC EXHIBIT 023-028**

**OSHA's Form 300** (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Form approved OMB no. 1218-0176

Establishment name                Tesla Factory

City    Fremont                State    CA

| | | | | | | CHECK ONLY ONE box for each case based on the most serious outcome for that case: | | | | Enter the number of days the injured or ill worker was: | | Check the "injury" column or choose one type of illness: | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **(A)** Case No. | **(B)** Employee's Name | **(C)** Job Title (e.g. Welder) | **(D)** Date of injury or onset of illness (mo./day) | **(E)** Where the event occurred (e.g. Loading dock north end) | **(F)** Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death | Days away from work | Remained at work | | Away From Work (days) | On job transfer or restriction (days) | **(M)** | | | | | |
| | | | | | | | | Job transfer or restriction | Other recordable cases | | | Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |
| | | | | | | (G) | (H) | (I) | (J) | (K) | (L) | (1) | (2) | (3) | (4) | (5) | (6) |
| 02778 | Redacted | Production Asso | 04/05 | General Assembly Trim | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02779 | | Production Asso | 03/30 | Powertrain Manufacturing SDU F | Bruising affecting the Hand/Wrist/Forearm occurred from Caught On, In, Under or Between | | | x | | | 14 | x | | | | | |
| 02783 | | Production Asso | 04/07 | General Assembly Chassis | Bruising affecting the Shoulder occurred from Standing caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02784 | | Production Asso | 04/06 | General Assembly Trim | Sprains, Strains affecting the Shoulder occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02785 | | Manufacturing E | 04/10 | Body in White Body Line 2 | Fracture affecting the Fingers occurred from Misstep caused by uneven pavement. | | | x | | | 14 | x | | | | | |
| 02788 | | Production Asso | 04/08 | Body in White Body Line 2 | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02789 | | Production Asso | 04/11 | Powertrain Manufacturing Battery | Repetitive Motion Type Injury affecting the Hand occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02790 | | Production Asso | 04/08 | Powertrain Manufacturing Battery | Laceration affecting the Face occurred from Slip, Fall caused by Wet Floor. | | | | x | | | x | | | | | |
| | | | | | **Page totals** | 0 | 0 | 7 | 1 | 0 | 98 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | | | | | |
|---|---|---|---|---|---|
| Injury | Skin Disorder | Respiratory Condition | Poisoning | Hearing Loss | All other illnesses |

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210. Do not send the completed forms to this office.

(1)    (2)    (3)    (4)    (5)    (6)

# GC EXHIBIT 023-029

## OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

Attention: This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name __Tesla Factory__

City __Fremont__     State __CA__

| (A) Case No. | (B) Employee's Name | (C) Job Title | (D) Date of injury | (E) Where the event occurred | (F) Describe injury or illness | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02791 | Redacted | Production Asso | 03/31 | Fremont Factory Unknown | Contusion, Crushing, Bruise affecting the Toes occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| 02792 | | Production Asso | 04/11 | Body in White End of Line Proces | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by Tool. | | | x | | | 14 | x | | | | | |
| 02794 | | Production Asso | 04/11 | General Assembly Trim 1 | Bump affecting the E bow occurred from Fall caused by Misstep. | | | x | | | 14 | x | | | | | |
| 02796 | | Production Asso | 04/12 | General Assembly Trim | Sprains, Strains affecting the Knee occurred from Misstep caused by poor ergonomics. | | | x | | | 14 | x | | | | | |
| 02797 | | Material Handle | 04/11 | BIW Conveyance | Sprains, Strains affecting the Back/ Spine occurred from Contact with caused by Forklift. | | | x | | | 14 | x | | | | | |
| 02798 | | Material Handle | 04/11 | Production Control Materials | Sprains, Strains affecting the Back/ Spine occurred from Lifting or Handling caused by | | | x | | | 14 | x | | | | | |
| 02801 | | Production Asso | 04/12 | Fremont Factory Unknown | Tendinitis affecting the Wrist occurred from Repetitive motion caused by Unknown. | | x | | | 1 | 14 | x | | | | | |
| 02803 | | Production Asso | 04/12 | Plastics Mold | Cut, Laceration, Puncture affecting the Stomach occurred from Box Knife caused by Slipped. | | | | x | | | x | | | | | |
| | | | | | Page totals | 0 | 1 | 6 | 1 | 1 | 98 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

Page 21 of 89

# GC EXHIBIT 023-030

22-60493.3570

# OSHA's Form 300 (Rev. 01/2004)
# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year __2016__

**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid.  You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional.  You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR 1904.8 through 1904.12.  Feel free to use two lines for a single case if you need to.  You must complete an injury and illness incident report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form.  If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name __Tesla Factory__

City __Fremont__     State __CA__

| (A) Case No. | (B) Employee's Name | (C) Job Title (e.g. Welder) | (D) Date of injury or onset of illness (mo./day) | (E) Where the event occurred (e.g. Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g. Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Job transfer or restriction (I) | Other record-able cases (J) | Away From Work (days) (K) | On job transfer or restriction (days) (L) | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02804 | Redacted | Production Asso | 04/11 | General Assembly Chassis & Fin | Sprains, Strains affecting the Shoulder occurred from Pulling or Pushing Object caused by | | | | | x | | x | | | | | |
| 02806 | | Production Asso | 04/12 | General Assembly Chassis | Sprains, Strains affecting the Shoulder occurred from Repetitive motion caused by Pushing | | | x | | | 14 | x | | | | | |
| 02808 | | Equipment Main | 04/15 | Plastics Plastic Subassemblies | Bruising affecting the Leg occurred from Caught On, In, Under or Between caused by Table. | | | x | | | 14 | x | | | | | |
| 02810 | | Production Asso | 04/14 | General Assembly Final Line | Bruising affecting the Knee occurred from Struck or Injured caused by Vehicle. | | | x | | | 14 | x | | | | | |
| 02813 | | Lead Production | 04/19 | General Assembly Chassis | Sprains, Strains affecting the Ankle occurred from Walking caused by poor ergonomics. | | | | x | | | x | | | | | |
| 02815 | | Production Asso | 04/19 | General Assembly Trim | Bruising affecting the Shoulder occurred from Caught On, In, Under or Between caused by | | | x | | | 14 | x | | | | | |
| 02816 | | Production Asso | 04/20 | Powertrain Manufacturing LDU R | Bruising affecting the Head occurred from Banged caused by Falling or Flying Object. | | x | | | 1 | | x | | | | | |
| 02818 | | Production Asso | 04/19 | Powertrain Manufacturing Batter | Sprains, Strains affecting the Hand/Wrist/Forearm occurred from Repetitive motion caused by poor | | | x | | | 14 | x | | | | | |
| | | | | | **Page totals** | 0 | 1 | 5 | 2 | 1 | 70 | 8 | 0 | 0 | 0 | 0 | 0 |

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury (1) | Skin Disorder (2) | Respiratory Condition (3) | Poisoning (4) | Hearing Loss (5) | All other illnesses (6) |

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instruction, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.  If you have any comments about these estimates or any aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Ave, NW, Washington, DC 20210.  Do not send the completed forms to this office.

Page __22 of 89__

# GC EXHIBIT 023-031

