UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

**TESLA, INC.**

and

**MICHAEL SANCHEZ, an Individual**                    Case 32-CA-197020

and

**JONATHAN GALESCU,  an Individual**                 Case 32-CA-197058

and

**RICHARD ORTIZ, an Individual**                         Case 32-CA-197091

and

**INTERNATIONAL UNION, UNITED**              Case 32-CA-197197
**AUTOMOBILE, AEROSPACE AND**               Case 32-CA-200530
**AGRICULTURAL WORKERS OF**
**AMERICA, AFL-CIO**

## ORDER POSTPONING HEARING INDEFINITELY

On October 25, 2017, a new charge was filed in related Case 32-CA-208614.  **IT**

**IS HEREBY ORDERED** that, pending the investigation of the new charge in related

Case 32-CA-208614, the hearing in the above matter, which was scheduled to commence

on November 14, 2017, is postponed indefinitely.

**DATED AT** Oakland, California this 26th day of October 2017.

/s/ Valerie Hardy-Mahoney
_____

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

## SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS LLP

RICHARD D. SOMMERS
STUART LIBICKI
MICHAEL R. FEINBERG
MICHAEL D. FOUR
MARGO A. FEINBERG
HENRY M. WILLIS*
D. WILLIAM HEINE
CLAUDE CAZZULINO
ZOE S. MOSKOWITZ
AMY M. CU
RICHARD M. SWARTZ
JUDY H. LEE
DANIEL E. CURRY**
MELANIE LUTHERN
JULIE S. ALARCÓN
YESENIA LAGUNAS
MICHAEL E. PLANK

* MEMBER OF CA AND NV BARS
** MEMBER OF CA AND NY BARS

**LAWYERS**

SUITE 2000
6300 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90048-5268
(323) 655-4700
FAX (323) 655-4488
WEBSITE: WWW.LALABORLAW.COM

KENNETH M. SCHWARTZ
(1916 - 2008)

LAURENCE D. STEINSAPIR
OF COUNSEL

ROBERT M. DOHRMANN
OF COUNSEL

NORTHERN CALIFORNIA OFFICE
MARGO A. FEINBERG
(323) 655-4700

WRITER'S DIRECT
E-MAIL ADDRESS:

MARGO@SSDSLAW.COM

May 2, 2018

*VIA E-MAIL & U.S. MAIL*

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300 N
Oakland, California 94612

> Re:   **Tesla, Inc.**
>        Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197,
>        32-CA-200530, 32-CA-208614 and 32-CA-210879

Dear Regional Director Hardy-Mahoney:

This letter is written as a request for a motion to change the hearing date in the above referenced matter, pursuant to Code of Federal Regulations sections 102.16 and 102.24.

On April 9, 2018, counsel for Tesla, Inc. ("Tesla") Mark Ross, wrote a letter informing you, and Margo Feinberg, Schwartz, Steinsapir, et al., counsel to the named charging parties, that Sheppard, Mullin, Richter & Hampton LLP was substituting in for Littler Mendelson P.C. as counsel for Tesla in this matter.  In that letter, Mark Ross also noted a schedule conflict with the hearing dates, set to begin on June 11, 2018, if the hearing were to extend beyond, Thursday, June 14, 2018 due to a personal matter.  A conversation via email and phone among counsel and Regional attorneys Noah Garber and Edris Rodriguez-Ritchie ensued to reach a mutually agreeable hearing date, pending the approval of the Division of Judges. The Union was open to accommodating the Company's counsel conflict if the hearing could proceed in an orderly fashion.

On April 23 and April 24, 2018, Mark Ross and Margo Feinberg proposed to Mr. Garber and Mr. Rodriguez-Ritchie via email several dates in June, July, and August for a new hearing date.  Due to the Region's scheduling conflicts in July and August, Mr. Garber informed all counsel on April 25, 2018 that a mutually agreeable hearing date was not likely until September of 2018.  Further, since receipt of Mark Ross's April 9 letter, which the Union originally believed would result in the hearing moving from June, Margo Feinberg learned of conflict of several key Union witnesses for the June 11-14 time frame due to work obligations out of state.  This information was shared with

22-60493.5075

Valerie Hardy-Mahoney
May 2, 2018
Page 2

the Region and Tesla. Therefore, in light of Mr. Garber's email, on April 27, 2018, Mark Ross and Margo Feinberg agreed that they and their clients would be available September 20-October 5, 2018 for a hearing in this matter to ensure sufficient time to address the issues in the complaint and consecutive dates of hearing.

On April 30, 2018, Mr. Garber notified Margo Feinberg that the request to move the hearing date must be in writing. To satisfy the Region's written request, Margo Feinberg drafted this letter to reflect the conversations between counsel and the Regional attorneys. Margo Feinberg shared the letter with Mark Ross for his approval on the same day.

Mark Ross responded to Margo on May 1, 2018 in the afternoon stating his concurrence and preference with a September 20, 2018 start date to a piecemeal hearing, especially one that is limited to June 11 only. Mark Ross will stipulate, as will Margo Feinberg, to a later trial that begins on September 20 and goes day to day thereafter until the hearing is completed. However, absent consecutive hearing dates beginning on September 20, 2018, Mark Ross would like to start on June 11 through June 14, and continue at a later date. We are in not in agreement with four days of hearing in June as we believe that such a break is disruptive to the hearing process, costly due to repeated preparation of witnesses and unnecessary as it does not get us a sooner conclusion to the matter.[1]

Based on counsels' availability and no objection from either party to the extension of the hearing date beginning on September 20, 2018, we respectfully ask the Regional Director to file a motion for a change of date, pursuant to 29 C.F.R. §§ 102.16, 102.24. Counsels respectfully request for this motion to change the hearing date to minimize expensive litigation costs associated with preparing witnesses and evidence twice, which would inevitably occur if the hearing is scheduled for two different time periods. Consecutive dates in this matter will allow all parties to expeditiously and contemporaneously prepare for the hearing, ensuring witness availability and no break in witness testimony. If a stipulation is necessary to achieve this end, we have agreed to enter into such a stipulation.

---

[1] Further, as noted some of the Union witnesses have obligations during those June dates that have now come to light, which might require witnesses being taken out of order, and there is no benefit in starting if we can have a full continuous hearing in September – October.

22-60493.5076

Valerie Hardy-Mahoney
May 2, 2018
Page 3

Please let us know if you have any questions or concerns.

Sincerely,

SCHWARTZ, STEINSAPIR, DOHRMANN
& SOMMERS

Margo A. Feinberg

MAF:eah
cc:     Mark S. Ross
        Edris Rodriguez-Ritchie
        Noah Garber

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual                    **Case 32-CA-197020**

    and

JONATHAN GALESCU,  an Individual             **Case 32-CA-197058**

    and

RICHARD ORTIZ, an Individual                 **Case 32-CA-197091**

    and

INTERNATIONAL UNION, UNITED           **Case 32-CA-197197**
AUTOMOBILE, AEROSPACE AND          **Case 32-CA-200530**
AGRICULTURAL WORKERS OF            **Case 32-CA-208614**
AMERICA, AFL-CIO                      **Case 32-CA-210879**

## ORDER DENYING REQUEST TO RESCHEDULE HEARING

Pursuant to Section 102.16 of the Rules and Regulations of the National Labor Relations Board (the Board), and having considered the parties' joint request to reschedule the hearing from June 11, 2018, to September 20, 2018, I am denying the request for the reasons stated below.

On August 31, 2017, the Regional Director for Region 32 of the National Labor Relations Board (the Regional Director) issued an Order Consolidating Cases, a Consolidated Complaint and Notice of Hearing in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, setting these matters for hearing on November 14, 2017, at 9:00 a.m. at the Oakland Regional Office of the National Labor Relations Board.  On September 1,

1

22-60493.5078

2017, the Regional Director issued a Second Order Consolidating Cases, an Amended Consolidated Complaint and Notice of Hearing in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, setting these matters for hearing on November 14, 2017.

On October 26, 2017, the Regional Director issued an order postponing the above-referenced hearing indefinitely pending the investigation into a new charged in related Case 32-CA-208614.

On March 30, 2018,[1] the Regional Director issued a Third Order Consolidating Cases, Second Amended Complaint and Notice of Hearing in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, 32-CA-200530, 32-CA-208614, and 32-CA-210879 (the Consolidated Cases).

On April 9, ten days after the Regional Director's issuance of a Second Amended Complaint in the Consolidated Cases, counsel for Respondent sent a letter to the Regional Director stating, inter alia, that counsel was unavailable for consecutive days of hearing due to pre-planned family gatherings and vacations plans. Specifically, he noted he would be unavailable between June 15 and June 23 but is otherwise ready to begin the hearing on June 11 through June 14.

On April 9, after Respondent's April 9 letter, counsel for the Charging Parties[2] sent a letter to counsel for Respondent stating, inter alia, "we do not wish to have an open-ended continuance and want new dates close in time before any continuance would be considered. We understand you have family obligations, but you substituted into this case already knowing the

---

[1] All dates hereafter are 2018 unless otherwise specified.
[2] Counsel represents both the Union and the Individual Charging Parties.

2

22-60493.5079

trial date was set." Counsel for the Charging Parties made no reference of the unavailability of any of its own witnesses for the June 11 through 14 hearing dates.

On April 10, counsel for the Charging Parties wrote to counsel for the General Counsel and the Regional Director stating that the Charging Parties and Respondent agree to the rescheduling of the hearing to the weeks of July 30, August 6, or August 13 in Oakland, California.

On April 19, counsel for the General Counsel sent an e-mail to counsel for the parties informing the parties that counsel for the General Counsel would not agree to move the hearing date from June 11, but would be amenable to continuing the hearing date after June 14, 2018, to a later mutually agreed upon date.

On April 23, counsel for the Charging Parties informed counsel for the General Counsel that the Charging Parties were available to proceed on June 11 through 14, July 30 through August 3, August 6 through 10, and August 13 through 17. During this conversation, counsel for the Charging Parties also stated that the Union's chief organizing representative at the time of the alleged unfair labor practices occurred, would be unavailable from June 11 through 14 because she needs to attend the Union's annual convention. Later on April 23, counsel for the Charging Parties requested that all parties agree to beginning on June 11, for the sole purpose of dealing with motions and document production matters. On April 23, counsel for Respondent wrote to counsel for the General Counsel and counsel for the Charging Parties to inform them that he was only available June 11 through 14, and August 6 through 17.

On April 24, counsel for the General Counsel informed the parties that he was not available between July 30 and August 3, August 6 through August 10, or August 13 through August 17, and on several religious holidays in September.

3

On May 2, for the first time, counsel for the Charging Parties made a written request to reschedule this matter pursuant to Sections 102.16 and 102.24 of the Rules and Regulations of the National Labor Relations Board, as amended. The request was submitted on behalf of Respondent as well.

In its May 2, request, counsel for the Charging Parties noted, "since receipt of [counsel for Respondent's] April 9 letter, which the Union originally believed would result in the hearing moving from June, [counsel for the Charging Parties] learned of conflict of several key Union witnesses for the June 11 – 14 time frame due to work obligations out of state." Counsel for the Charging Parties additionally stated that the Charging Parties were "not in agreement with four days of hearing in June as we believe that such a break is disruptive to the hearing process, costly due to repeated preparation of witnesses and unnecessary as it does not get us a sooner conclusion to the matter." In a footnote, counsel for the Charging Parties also noted, "as noted some of the Union witnesses have obligations during those June dates that have now come to light, which might require witnesses being taken out of order, and there is no benefit in starting if we can have a full continuous hearing in September – October." Further, the request noted that Respondent will stipulate to a later trial date that begins on September 20. However, absent the hearing continues on consecutive dates starting on September 20, Respondent prefers to begin the hearing on June 11, but not beyond June 14.

Having carefully considered the joint request, and in light of the fact there are no dates in between June 11 and September 20, that all parties can agree on, I have determined that rescheduling the hearing to September 20, is inappropriate and, therefore, the request is denied.

4

22-60493.5081

Under Section 102.16, the Regional Director *may* extend the hearing date or change the hearing place when a requesting party has demonstrated proper cause and in limited circumstances.

Here, the joint motion fails to demonstrate proper cause as to why the hearing cannot start on June 11. In this regard, I note that counsel for the Charging Parties did not initially notify the Region of any potential scheduling conflicts with the June 11 hearing date. It has since averred that its chief organizing representative, whom the Charging Parties have also designated as its representative at the hearing, is not available. However, counsel for the Charging Parties provides no explanation as to why this particular Union representative's attendance at the hearing is critical or necessary to the hearing since there were many other Union representatives involved in the Tesla organizing campaign. Further, counsel for the Charging Parties stated in her May 2 request that other Union witnesses are unavailable but did not specify the number of witnesses, the reason(s) they are unavailable, the reason why they could not testify at a later date during the hearing or provide any facts to demonstrate why their attendance from June 11 through 14 is necessary or critical to the case. In sum, counsel for the Charging Parties did not assert any facts upon which the undersigned could assess whether the "unavailability" of these witnesses from June 11 through 14 is for good cause shown. In making the determination to deny this request to reschedule the hearing to September 20, I have taken into consideration the fact that the original Complaint issued over eight months ago, the serious nature of the unfair labor practices alleged in this matter, including the allegation involving the termination of an employee, as well as Respondent's counsel availability from June 11 through 14, which I have concluded outweigh the parties desire not to begin the hearing in June. Although counsel for the Charging Parties asserts they will be prejudiced by non-consecutive days of hearing, there is no

5

guarantee that starting the hearing on September 20 will guarantee consecutive days of hearing in this matter. Given the totality of circumstances, I have concluded that the advantage of beginning the hearing as scheduled on June 11, where it has already been delayed several months to investigate serial charges, outweighs the stated reasons for rescheduling the hearing to September 20.

This order does not preclude the parties from making a joint motion before the Division of Judges in accordance with Section 102.16(b) and Section 102.24(a).

**DATED AT** Oakland, California this 3rd day of May, 2018.

VALERIE HARDY-MAHONEY
Regional Director
National Labor Relations Board
Region 32
1301 Clay St Suite 300N
Oakland, CA 94612-5224

6

## UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
## REGION 32

| | |
|---|---|
| **TESLA, INC.** | |
| **and** | |
| **MICHAEL SANCHEZ, an Individual** | **Case 32-CA-197020** |
| **and** | |
| **JONATHAN GALESCU,  an Individual** | **Case 32-CA-197058** |
| **and** | |
| **RICHARD ORTIZ, an Individual** | **Case 32-CA-197091** |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case 32-CA-197197**<br>**Case 32-CA-200530**<br>**Case 32-CA-208614**<br>**Case 32-CA-210879** |
| | **Date: May 3, 2018** |

### AFFIDAVIT OF SERVICE OF ORDER DENYING REQUEST TO RESCHEDULE HEARING

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically; and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margossds@aol.com**

National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA  94103
**E-FILE**

| | |
|---|---|
| May 3, 2018 | Christy J. Kwon, Designated Agent of NLRB |
| | Name |
| | _[signature]_ |
| | Signature |

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

    **and**                                       **Cases 32-CA-197020**

                                                    **32-CA-197058**

**MICHAEL SANCHEZ, an Individual**          **32-CA-197091**

                                                      **32-CA-197197**

    **and**                                       **32-CA-200530**

                                                      **32-CA-208614**

                                                      **32-CA-210879**

**JONATHAN GALESCU, an Individual**

    **and**

**RICHARD ORTIZ, an Individual**

    **and**

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL WORKERS OF**
**AMERICA, AFL-CIO**

## MOTION TO TAKE VIDEO TESTIMONY OF WILL LOCKLEAR

**I.**    **Introduction**

Counsel for the General Counsel (the General Counsel) files this Motion to Take Video Testimony of Will Locklear at the upcoming hearing in this matter scheduled to begin on June 11, 2018.  Mr. Locklear lives and works in Buffalo, New York whereas the hearing in this matter is scheduled to take place at the Region 32 Field Office of the National Labor Relations Board (the Board) located in Oakland, California.

**II.**    **Legal Standard and Discussion**

Federal Rule of Civil Procedure 43 provides that "for good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by

contemporaneous transmission from a different location." FRCP 43. Moreover, the Board allows the use of video testimony in trials. See *M.V.M., Inc.*, 352 NLRB 1165, 1165 fn. 1 (2008) (Administrative Law Judge allowed witness testimony by video.); see also NLRB Bench Book § 11-620 (Aug. 2010) (noting "[v]ideo testimony has been used in Board trials without objection.").

Good cause exists for permitting Mr. Locklear to testify via video. Specifically, economical and logistical reasons underlie the need to take Mr. Locklear's testimony by video. First, Mr. Locklear's testimony is essential to the General Counsel's case because he has key testimony regarding violations of the National Labor Relations Act (the Act) as alleged in the Consolidated Complaint. Currently, Mr. Locklear resides in the Buffalo, New York. The cost of a round trip plane ticket to fly across country from Buffalo to Oakland to testify in this matter would place a significant financial burden on Mr. Locklear. Mr. Locklear is, however, able to appear at the Board's Region 3 Field Office located in Buffalo, which is a cost-effective alternative to appearing in Oakland. By appearing in the Region 3 Field Office, Mr. Locklear will be able to participate in the hearing and provide his essential testimony when he otherwise would not have been able to do so.

Additionally, adequate video equipment is available to transmit Mr. Locklear's testimony at the hearing in Region 32. Each Board office contains video conference capabilities that offer clear, audible, video testimony, including a hi-tech camera that allows the user to pan, tilt, and zoom-in on any item or person in the hearing room. The system further includes a movable microphone and remote control that permits the user to adjust the volume settings to ensure audible clarity.

Finally, after discussions with the parties, the Union does not oppose the use of video conference testimony for Mr. Locklear.  Similarly, Respondent does not oppose the use of video conference testimony for Mr. Locklear, but reserves the right to make a similar motion should it desire to use video conference testimony.

In summary, Mr. Locklear is the only witness for Counsel for the General Counsel expected to testify via video conference and the General Counsel does not anticipate an extensive number of exhibits to be used during his testimony.  Exhibits can be e-mailed to the Region 3 Office Manager and/or Assistant Office Manager who are available to assist during Mr. Locklear's testimony and ensure the video equipment runs smoothly during Mr. Locklear's testimony.  Therefore, the General Counsel petitions the Administrative Law Judge to allow Mr. Locklear to provide his testimony via video conferencing equipment at the Board office in Oakland.

**DATED AT** Oakland, California this 29th day of May 2018.

/s/ Noah Garber
Noah Garber
Field Attorney
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612-5224

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

| | |
|---|---|
| **TESLA, INC.** | |
| **and** | |
| **MICHAEL SANCHEZ, an Individual** | **Case 32-CA-197020** |
| **and** | |
| **JONATHAN GALESCU,  an Individual** | **Case 32-CA-197058** |
| **and** | |
| **RICHARD ORTIZ, an Individual** | **Case 32-CA-197091** |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case 32-CA-197197**<br>**Case 32-CA-200530**<br>**Case 32-CA-208614**<br>**Case 32-CA-210879** |
| | **Date: May 29, 2018** |

## AFFIDAVIT OF SERVICE OF MOTION TO TAKE VIDEO TESTIMONY OF WILL LOCKLEAR

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**

National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA  94103
**E-FILE**

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margo@ssdslaw.com**

| May 29, 2018 | Ida Lam, Designated Agent of NLRB |
|---|---|
| | Name |
| | /s/ Ida Lam |
| | Signature |

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED** | |
| **AUTOMOBILE, AEROSPACE AND** | |
| **AGRICULTURE WORKERS OF** | |
| **AMERICA, AFL-CIO** | |

## RESPONDENT'S OPPOSITION TO GENERAL COUNSEL'S MOTION TO TAKE VIDEO TESTIMONY OF WILL LOCKLEAR

### A.    Introduction

Respondent Tesla, Inc. ("Tesla") hereby submits its opposition to Counsel for the General

Counsel's ("the General Counsel") Motion to Take Video Testimony of Will Locklear.  The

General Counsel seeks to take the testimony of Mr. Locklear at the Region 3 Field Office in

Buffalo, New York, rather than at the Region 32 Field Office in Oakland, California.  The

General Counsel has not demonstrated good cause in compelling circumstances to warrant video

testimony of Mr. Locklear, and it has not shown appropriate safeguarding.

22-60493.5089

**B.     The General Counsel Has Not Shown Good Cause Based on Compelling Circumstances**

The National Labor Relations Board ("Board") law generally favors in-person testimony at trial. *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999). However, under the Board's Rules, upon a showing of "good cause based on circumstances" and "appropriate safeguards," the Administrative Law Judge ("ALJ") may permit video testimony from a different location. Board's Rules § 102.35(c); *see also* Fed.R.Civ.P. 43(a).[1] Although the Board's Rules do not further define the standard, FRCP 43 has a nearly identical standard. "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness." Advisory Committee Notes to Fed.R.Civ.P. 43(a) (1996 Amendment). Mere inconvenience is insufficient to demonstrate "good cause." *Id.* ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial").

The General Counsel has not demonstrated that there are unexpected occurrences, accidents or illnesses that prevent Mr. Locklear from testifying in person at trial. Rather, the General Counsel—without any authority—relies solely on the fact that Mr. Locklear will have to pay for a round trip plane ticket to fly across the country to testify at trial. Significantly, courts have rejected the cost of travel as insufficient to warrant "compelling circumstances," particularly where the cost is not unforeseen. *See Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012) (plaintiffs' expenses to travel out of the country to prosecute their own case are not unforeseen and do not rise to the level of good cause); *see also Niemeyer v. Ford Motor Co.*, 2012 WL 5199145 (D. Nev. Oct. 18, 2012). While some courts have allowed

---

[1] While the Federal Rules of Civil Procedure are not controlling, the Board has often referred to them for useful guidance. *EF International Language Schools, Inc.*, 363 NLRB No. 20 (2015).

22-60493.5090

video conference testimony where an out-of-state witness is a third-party or peripheral witnesses with a limited scope of testimony, that is not the case here. *See Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 11596235, at \*7-8 (C.D. Cal. June 4, 2010). Mr. Locklear is the General Counsel's key witness pertaining to all of the allegations concerning Respondent's Gigafactory 1 in Sparks, Nevada. The present charges were brought against Respondent on behalf of Mr. Locklear. The General Counsel cannot now claim it was blindsided by the cost of travel for its percipient witness to testify at trial to the allegations of unfair labor practices.

Notably, inconvenience of travel is not unique to Mr. Locklear. In fact, two percipient witnesses for Respondent are located in Sparks, Nevada. Respondent and both witnesses will bear the cost and burden of traveling out-of-state to appear and testify at trial. Should the General Counsel's motion be granted, the Charging Parties will enjoy the benefit of in-person examination of Respondent's percipient witnesses, while Respondent will be unfairly denied the same opportunity with respect to the General Counsel's key witness.

### C.    Respondent is Unfairly Prejudiced by Mr. Locklear Testifying Via Video Conference

In addition to the General Counsel's failure to demonstrate any compelling reason for Mr. Locklear to testify remotely, Respondent will be significantly prejudiced if Mr. Locklear is permitted to testify via video conference. The General Counsel acknowledges that Mr. Locklear is a key witness regarding Respondent's alleged unfair labor practices. Video conference testimony severely impedes Respondent's ability to confront a percipient witness through cross-examination, which is exponentially more difficult when it must be done through video conference rather than in the presence of the finder of fact, the attorneys, and the documents.

It is well-settled that Board law expresses a strong preference for live oral testimony, particularly because it enables the judge to observe the demeanor of the witness to determine the

22-60493.5091

witness's credibility. *Westside Painting, Inc.*, 328 NLRB 796, 797 (1999) (citing *Canadian American Oil Co. v. NLRB*, 82 F.3d 469, 475 (D.C. Cir. 1996). "The opportunity to observe the demeanor of a witness is particularly important in Board proceedings because…a judge is often presented with situations where there is conflicting testimony and credibility determinations are central to the resolution of the case." *Id.* In fact, witness demeanor is an essential consideration in determining credibility. *See St. Paul Park Refining Co., LLC*, 366 NLRB No. 83 (2018). For example, the same words can convey different meanings depending on physical expressions, mannerisms, and presentations. *See Taylor Motors, Inc.*, 366 NLRB No. 69 (2018) (taking into account the witness's happy demeanor in determining his words were attempted humor, not intimidation); *Kapstone Paper and Packing Corp.*, 366 NLRB No. 63 (2018) (taking into account the witness's demeanor was "composed and steady" thus more credible); *Space Needle, LLC*, 362 NLRB No. 11 (2015) (observed that the witness was carefully watching counsel's reaction to her answers, and therefore not credible).

The Administrative Law Judge must be able to visibly observe Mr. Locklear's demeanor in person in order to make a credibility determination. At trial, Respondent's witnesses and Mr. Locklear will likely provide conflicting testimony, thus requiring the Administrative Law Judge to determine which testimony is credible. Whether the Administrative Law Judge finds Mr. Locklear credible will be central to the outcome of this case. As such, it is essential for Mr. Locklear to testify in person at trial.

### D. The General Counsel Has Not Set Forth Conditions to Protect the Integrity of the Testimony or Appropriate Safeguards

The General Counsel also has not complied with the requirements of the Board's Rule § 102.35(c)(1), which requires any application to take testimony by video conference to include "the compelling circumstances for such testimony, the witness's name and address, the location

22-60493.5092

where the video testimony will be held, the matter concerning which the witness is expected to testify, the conditions in place to protect the integrity of the testimony, the transmission safeguards, and the electronic address from which the video testimony will be transmitted." The General Counsel's motion does not set forth the witness's address, the matter concerning which the witness is expected to testify, or the electronic address from which the video testimony will be transmitted.

The General Counsel also failed to comply with the Board's Rule § 102.35(c)(2), which sets forth the requirements for appropriate safeguards such that the Administrative Law Judge may assess the witness's credibility and the parties have a meaningful opportunity to examine and cross-examine the witness. The General Counsel makes no assurance that Respondent or its representative has the opportunity to be present at the location, and does not provide for any technology assistance. Most troubling is the fact that it has not set forth the conditions in place to protect the integrity of the testimony. Rather, the General Counsel suggests that Respondent send its exhibits via e-mail in advance to an unnamed individual—the same person who will ensure the video "runs smoothly"—at the Region 3 office. The General Counsel conveniently ignores the fact that it is a charging party in this matter, and suggests that Respondent should blindly provide its potential exhibits to a representative or agent of the General Counsel. Respondent should not be expected to hand over every exhibit it might use on cross-examination to another Field Office where Mr. Locklear is located. The General Counsel makes no assurances that the exhibits will remain confidential, that Mr. Locklear will not have access to them beforehand, and that the General Counsel will not obtain access to them beforehand. Moreover, given the dynamic nature of trial, it is unlikely that Respondent will know what materials it will use on cross-examination with Mr. Locklear until he testifies on direct

22-60493.5093

examination.  If Respondent is forced to provide its materials in advance, it will be deprived of a
meaningful opportunity to cross-examine the witness.

### E.    Conclusion

In sum, the General Counsel cannot make the requisite showing of good cause based on
compelling circumstances, under the Board's Rules and FRCP 43 that justify permitting Will
Locklear, a key percipient witness, to testify via video conference for trial.  The prejudice
Respondent will suffer if it is required to cross-examine Mr. Locklear by video conference
outweighs any cost that the General Counsel may incur by attending the trial at the Regional
Office in Oakland, California.  Accordingly, Respondent respectfully requests that the General
Counsel's motion be denied, and require Mr. Locklear to testify live, in person, at trial if he is to
testify.


Dated:  June 4, 2018

                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                    By    _____
                              MARK S. ROSS
                              KEAHN N. MORRIS

                                   Attorneys for
                                   TESLA, INC.

22-60493.5094

1                            CERTIFICATE OF SERVICE

2          At the time of service, I was over 18 years of age and not a party to this action.  I
3   am employed in the County of San Francisco, State of California.  My business address is
    Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

4   On June 4, 2018, I served a true copy of the following document(s) described as
    **RESPONDENT'S OPPOSITION TO GENERAL COUNSEL'S MOTION TO TAKE**
5   **VIDEO TESTIMONY OF WILL LOCKLEAR** on the interested parties in this action as
    follows:

6

7   Edris W.I. Rodriguez Ritchie
    Field Attorney, Region 32
8   National Labor Relations Board
    1301 Clay Street, Ste. 300N
9   Oakland, CA  94612-5224
    T: (510) 671-3041
10  E-mail: edris.rodriguezritchie@nlrb.gov

11  Noah J. Garber
    Field Attorney, Region 32
12  National Labor Relations Board
    1301 Clay Street, Suite 300N
13  Oakland, California 94612
    T: (510) 671-3021
14  E-mail: noah.garber@nlrb.gov

15  Margo Feinberg
    E-mail: margo@ssdslaw.com
16  Daniel E. Curry
    E-mail: dec@ssdslaw.com
17  Julie Alarcon
    E-mail: jsa@ssdslaw.com
18  Schwartz, Steinsapir, Dohrmann & Sommers, LLP
    6300 Wilshire Blvd., Suite 2000
19  Los Angeles, CA  90048
    T: (323) 655-4700

20
    National Labor Relations Board
21  Division of Judges
    901 Market St., Suite 300
22  San Francisco, CA 94103
    T: (415) 356-5255
23  **E-FILE**

24

25

26          **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the
    document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s)
27  at the e-mail address(es) listed above.  I did not receive, within a reasonable time after the
    transmission, any electronic message or other indication that the transmission was
28  unsuccessful.

1      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of

2   the bar of this Court at whose direction the service was made.

3      Executed on June 4, 2018, at San Francisco, California.

4

5

                    Sarah Smith

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MRH:486569653.1                 -2-

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

### RESPONDENT'S MOTION FOR RECONSIDERATION OF ALJ'S ORDER GRANTING MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY

Respondent Tesla, Inc. ("Tesla") hereby submits its Motion for Reconsideration of Administrative Law Judge ("ALJ") Amita Tracy's Order Granting Counsel for the General Counsel's ("the General Counsel") Motion to Permit Videoconference Testimony.

On May 29, 2018, the General Counsel filed a Motion to Permit Videoconference Testimony. Earlier today, on June 4, 2018, Tesla filed an Opposition to the General Counsel's Motion.

Later in the afternoon on June 4, 2018, the General Counsel informed Counsel for Tesla that the ALJ had unbeknownst to Tesla issued an Order to Show Cause and issued an Order

Granting the General Counsel's Motion on May 31, 2018.  Tesla was not served with or made

aware of the ALJ's Order to Show Cause or the ALJ's Order Granting the General Counsel's

Motion until June 4, 2018.  Upon review of the pleadings provided by the General Counsel, it

appears the Division of Judges endeavored to serve Mark S. Ross by fax at (415) 434-5947.

Unfortunately, that fax number is incorrect.  Counsel for Tesla's fax number is (415) 434-*3947*.

Accordingly, Tesla was not provided with an opportunity to respond to the ALJ's Order to Show

Cause.  Accordingly for the reasons set forth in Tesla's Opposition to the General Counsel's

Motion to Permit Videoconference Testimony filed earlier today and restated herein, Tesla

requests that the ALJ issue an Order Denying the General Counsel's Motion to Permit

Videoconference Testimony.

**A.    The General Counsel Has Not Shown Good Cause Based on Compelling Circumstances**

The National Labor Relations Board ("Board") law generally favors in-person testimony

at trial.  *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999).  However, under the Board's

Rules, upon a showing of "good cause based on circumstances" and "appropriate safeguards,"

the Administrative Law Judge ("ALJ") may permit video testimony from a different location.

Board's Rules § 102.35(c); *see also* Fed.R.Civ.P. 43(a).[1]  Although the Board's Rules do not

further define the standard, FRCP 43 has a nearly identical standard.  "The most persuasive

showings of good cause and compelling circumstances are likely to arise when a witness is

unable to attend trial for unexpected reasons, such as accident or illness."  Advisory Committee

Notes to Fed.R.Civ.P. 43(a) (1996 Amendment).  Mere inconvenience is insufficient to

---

[1] While the Federal Rules of Civil Procedure are not controlling, the Board has often referred to them for useful guidance.  *EF International Language Schools, Inc.*, 363 NLRB No. 20 (2015).

demonstrate "good cause." *Id.* ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial").

The General Counsel has not demonstrated that there are unexpected occurrences, accidents or illnesses that prevent Mr. Locklear from testifying in person at trial. Rather, the General Counsel—without any authority—relies solely on the fact that Mr. Locklear will have to pay for a round trip plane ticket to fly across the country to testify at trial. Significantly, courts have rejected the cost of travel as insufficient to warrant "compelling circumstances," particularly where the cost is not unforeseen. *See Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012) (plaintiffs' expenses to travel out of the country to prosecute their own case are not unforeseen and do not rise to the level of good cause); *see also Niemeyer v. Ford Motor Co.*, 2012 WL 5199145 (D. Nev. Oct. 18, 2012). While some courts have allowed video conference testimony where an out-of-state witness is a third-party or peripheral witnesses with a limited scope of testimony, that is not the case here. *See Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 11596235, at *7-8 (C.D. Cal. June 4, 2010). Mr. Locklear is the General Counsel's key witness pertaining to all of the allegations concerning Respondent's Gigafactory 1 in Sparks, Nevada. The present charges were brought against Respondent on behalf of Mr. Locklear. The General Counsel cannot now claim it was blindsided by the cost of travel for its percipient witness to testify at trial to the allegations of unfair labor practices.

Notably, inconvenience of travel is not unique to Mr. Locklear. In fact, two percipient witnesses for Respondent are located in Sparks, Nevada. Respondent and both witnesses will bear the cost and burden of traveling out-of-state to appear and testify at trial. Should the General Counsel's motion be granted, the Charging Parties will enjoy the benefit of in-person

examination of Respondent's percipient witnesses, while Respondent will be unfairly denied the same opportunity with respect to the General Counsel's key witness**.**

**B.    Respondent is Unfairly Prejudiced by Mr. Locklear Testifying Via Video Conference**

In addition to the General Counsel's failure to demonstrate any compelling reason for Mr. Locklear to testify remotely, Respondent will be significantly prejudiced if Mr. Locklear is permitted to testify via video conference. The General Counsel acknowledges that Mr. Locklear is a key witness regarding Respondent's alleged unfair labor practices. Video conference testimony severely impedes Respondent's ability to confront a percipient witness through cross-examination, which is exponentially more difficult when it must be done through video conference rather than in the presence of the finder of fact, the attorneys, and the documents.

It is well-settled that Board law expresses a strong preference for live oral testimony, particularly because it enables the judge to observe the demeanor of the witness to determine the witness's credibility. *Westside Painting, Inc.*, 328 NLRB 796, 797 (1999) (citing *Canadian American Oil Co. v. NLRB*, 82 F.3d 469, 475 (D.C. Cir. 1996). "The opportunity to observe the demeanor of a witness is particularly important in Board proceedings because…a judge is often presented with situations where there is conflicting testimony and credibility determinations are central to the resolution of the case." *Id.* In fact, witness demeanor is an essential consideration in determining credibility. *See St. Paul Park Refining Co., LLC*, 366 NLRB No. 83 (2018). For example, the same words can convey different meanings depending on physical expressions, mannerisms, and presentations. *See Taylor Motors, Inc.*, 366 NLRB No. 69 (2018) (taking into account the witness's happy demeanor in determining his words were attempted humor, not intimidation); *Kapstone Paper and Packing Corp.*, 366 NLRB No. 63 (2018) (taking into account the witness's demeanor was "composed and steady" thus more credible); *Space Needle,*

*LLC*, 362 NLRB No. 11 (2015) (observed that the witness was carefully watching counsel's reaction to her answers, and therefore not credible).

The Administrative Law Judge must be able to visibly observe Mr. Locklear's demeanor in person in order to make a credibility determination. At trial, Respondent's witnesses and Mr. Locklear will likely provide conflicting testimony, thus requiring the Administrative Law Judge to determine which testimony is credible. Whether the Administrative Law Judge finds Mr. Locklear credible will be central to the outcome of this case. As such, it is essential for Mr. Locklear to testify in person at trial.

**C.    The General Counsel Has Not Set Forth Conditions to Protect the Integrity of the Testimony or Appropriate Safeguards**

The General Counsel also has not complied with the requirements of the Board's Rule § 102.35(c)(1), which requires any application to take testimony by video conference to include "the compelling circumstances for such testimony, the witness's name and address, the location where the video testimony will be held, the matter concerning which the witness is expected to testify, the conditions in place to protect the integrity of the testimony, the transmission safeguards, and the electronic address from which the video testimony will be transmitted." The General Counsel's motion does not set forth the witness's address, the matter concerning which the witness is expected to testify, or the electronic address from which the video testimony will be transmitted.

The General Counsel also failed to comply with the Board's Rule § 102.35(c)(2), which sets forth the requirements for appropriate safeguards such that the Administrative Law Judge may assess the witness's credibility and the parties have a meaningful opportunity to examine and cross-examine the witness. The General Counsel makes no assurance that Respondent or its representative has the opportunity to be present at the location, and does not provide for any

technology assistance.  Most troubling is the fact that it has not set forth the conditions in place to protect the integrity of the testimony.  Rather, the General Counsel suggests that Respondent send its exhibits via e-mail in advance to an unnamed individual—the same person who will ensure the video "runs smoothly"—at the Region 3 office.  The General Counsel conveniently ignores the fact that it is a charging party in this matter, and suggests that Respondent should blindly provide its potential exhibits to a representative or agent of the General Counsel. Respondent should not be expected to hand over every exhibit it might use on cross-examination to another Field Office where Mr. Locklear is located.  The General Counsel makes no assurances that the exhibits will remain confidential, that Mr. Locklear will not have access to them beforehand, and that the General Counsel will not obtain access to them beforehand. Moreover, given the dynamic nature of trial, it is unlikely that Respondent will know what materials it will use on cross-examination with Mr. Locklear until he testifies on direct examination.  If Respondent is forced to provide its materials in advance, it will be deprived of a meaningful opportunity to cross-examine the witness.

> **D.    Conclusion**

In sum, the General Counsel cannot make the requisite showing of good cause based on compelling circumstances, under the Board's Rules and FRCP 43 that justify permitting Will Locklear, a key percipient witness, to testify via video conference for trial.  The prejudice Respondent will suffer if it is required to cross-examine Mr. Locklear by video conference outweighs any cost that the General Counsel may incur by attending the trial at the Regional Office in Oakland, California.  Accordingly, Respondent respectfully requests that the General Counsel's motion be denied, and require Mr. Locklear to testify live, in person, at trial if he is to testify.

Dated:  June 5, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.5103

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On June 5, 2018, I served a true copy of the following document(s) described as **RESPONDENT'S MOTION FOR RECONSIDERATION OF ALJ'S ORDER GRANTING MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224
T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021
E-mail: noah.garber@nlrb.gov

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA 90048
T: (323) 655-4700

National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255
**E-FILE**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

22-60493.5104

1        I declare under penalty of perjury under the laws of the United States of America
2    that the foregoing is true and correct and that I am employed in the office of a member of
     the bar of this Court at whose direction the service was made.

3        Executed on June 5, 2018, at San Francisco, California.

4

5

6    Sarah Smith

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MRH:486581871.1                                      -2-

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

    **and**                             Cases  **32-CA-197020**
                                           **32-CA-197058**
**MICHAEL SANCHEZ, an Individual**           **32-CA-197091**
                                         **32-CA-197197**
    **And**                             **32-CA-200530**
                                         **32-CA-208614**
**JONATHAN GALESCU,  an Individual**       **32-CA-210879**

    **and**

**RICHARD ORTIZ, an Individual**

    **and**

**INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO**

## ORDER GRANTING RESPONDENT'S MOTION FOR RECONSIDERATION AND AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY

       On May 29, 2018, counsel for the General Counsel filed a Motion to take Video Testimony to permit the testimony of its witness, Will Locklear (Locklear), who is currently residing in Buffalo, New York, to testify via video teleconference during the trial in this matter. The General Counsel's Motion indicated that Respondent and the Charging Parties did not oppose the Motion.  I issued an Order to Show Cause that same day with responses due by noon on May 30, 2018.  No party filed responses.  Accordingly, on May 31, 2018, I granted counsel for the General Counsel's Motion, provided that safeguards as indicated by Section 102.35(c) of the Board's Rules and Regulations, adopted effective September 29, 2017, are in place.  The timing and arrangements for the videoconference testimony were to be discussed on the record when the hearing opens on June 11, 2018, or soon thereafter.

       However, on June 4, 2018, Respondent filed an Opposition to the General Counsel's Motion for Video Testimony.  Thereafter, on June 5, 2018, Respondent filed a Motion for Reconsideration of my May 31, 2018 Order Granting the General Counsel's Motion for Video Testimony.  In Respondent's Motion for Reconsideration, Respondent explained that it had not received my May 29, 2018 Order to Show Cause and my May 31, 2018 Order Granting the General Counsel's Motion for Video Testimony due to an incorrect fax number.

The Division of Judges relies upon parties' notice of appearance sheets for fax service of documents. In these instances, the Division of Judges incorrectly faxed the documents to (415)434-5947, rather than (415)434-3967 in accordance with Respondent's April 10, 2018, notice of appearance sheet. However, even Respondent's notice of appearance sheet appears to be incorrect, as Respondent's Motion for Reconsideration indicates that the correct fax number is (415)434-3947. In addition, the General Counsel indicated in its Motion for Video Testimony that Respondent did not oppose the General Counsel's Motion. In light of these service errors along with changed circumstances as far as Respondent's position, as conveyed by the General Counsel, I **GRANT** Respondent's Motion for Reconsideration. **Please note that all parties are directed to ensure that their notices of appearance in this matter should be updated and corrected as appropriate to ensure accurate and timely service of documents as well as email addresses for electronic correspondences if needed.**

After reviewing the General Counsel's Motion for Video Testimony of Locklear and Respondent's Opposition, I **DENY** the General Counsel's Motion.

Locklear appears to be a critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including my observation of his demeanor. The Charging Party filed a charge on December 1, 2017 and a first amended charge on December 6, 2017, specifically concerning Locklear. The charge and first amended charge allege a variety of Section 8(a)(1) and (3) violations by Respondent against Locklear. After the General Counsel's investigation, at least some of these allegations resulted in this current complaint set for hearing beginning on June 11, 2018, in Oakland, California. The General Counsel's only reasons for requesting video testimony of Locklear is that Locklear lives and works in Buffalo, New York, and the costs of travel would place a "significant financial burden" on Locklear, without providing any proof. Moreover, the General Counsel argues that "adequate video equipment is available" in the Buffalo Regional Office for Locklear's testimony. I do not find these reasons by the General Counsel so compelling as to override the need for in-person testimony of an alleged discriminatee. The General Counsel has not provided in its Motion all the requirements of Section 102.35(c)((1) including Locklear's address, the matter in which Locklear intends to testify, and the electronic address of the transmission. In support of its Motion, the General Counsel also cites *M.V.M., Inc.*, 352 NLRB 1165, fn. 1 (2008), where the administrative law judge permitted uncontested video testimony of one witness. However, in *M.V.M*, the administrative law judge only permitted video testimony of the non-discriminatee witness after the court reporter lost the original *in-person* testimony of this witness. Thus, *M.V.M.* is distinguishable from this instance.

Based upon the above, I **DENY** the General Counsel's Motion for Video Testimony of Locklear.

Date: June 6, 2018, San Francisco, California.

_____
Amita B. Tracy
Administrative Law Judge

***Served by facsimile upon the following:***

Edris W.I. Rodriguez Ritchie, Esq.
Noah Garber, Esq., Fax: (510) 637-3315 (NLRB)

Mark S. Ross, Esq., Fax:(415)434-3947 (Respondent)

Margo A. Feinberg, Esq., Esq., Fax: (323)655-4488 (Charging Party)

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

   **and**                                                          **Cases 32-CA-197020**
                                                                                    **32-CA-197058**
**MICHAEL SANCHEZ, an Individual**                 **32-CA-197091**
                                                                                    **32-CA-197197**
   **and**                                                          **32-CA-200530**
                                                                                    **32-CA-208614**
                                                                                    **32-CA-210879**
**JONATHAN GALESCU,  an Individual**

   **and**

**RICHARD ORTIZ, an Individual**

   **and**

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL WORKERS OF**
**AMERICA, AFL-CIO**

---

**COUNSEL FOR THE GENERAL COUNSEL'S REQUEST FOR SPECIAL**
**PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED**
**ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT**
**VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS**

Pursuant to Section 102.26 of the National Labor Relation Board's (the Board) Rules and

Regulations, Counsel for the General Counsel (General Counsel) requests special permission to

appeal Administrative Law Judge Amita Tracy's (the Judge) Amended Order Denying General

Counsel's motion to permit a critical third-party witness named William Locklear to testify via

videoconference. He currently resides in Buffalo, New York and the hearing in this matter is taking

place in Oakland, California.

22-60493.5109

For the reasons set forth more fully below, the Board should accept this appeal and reverse the Judge's ruling, which is contrary to precedent and prejudices the General Counsel's case, causing manifest injustice.

## I.    Procedural Background

On May 29, 2018,[1] General Counsel filed a Motion to Take Video Testimony of Will Locklear (the Motion)[2] to permit the testimony of witness Will Locklear (Mr. Locklear), who currently lives in Buffalo, New York. If the Motion were granted, Mr. Locklear would testify from the Board's Region 3 office located in Buffalo, where the Board has access to secure video servers that cannot be tampered with. His testimony would be instantly transmitted to the hearing room in Region 32, located in Oakland, California. On May 25, Counsel for Tesla, Inc. (Respondent) Keahn Morris represented to the General Counsel that Respondent did not have a problem with the General Counsel's request for video testimony and indicated that Respondent would also likely want videoconference testimony of their witnesses located in Sparks, Nevada. Based on this conversation, General Counsel, in its Motion, represented that Respondent did not oppose the Motion.

Later on May 29, the Judge issued an Order to Show Cause[3] with a response due the following day; however, due to inadvertent clerical errors by both Respondent and the San Francisco Division of Judges, Respondent was not served with the Judge's Order to Show Cause for why the Motion should not be granted. As no response was filed, on May 31, the Judge granted the Motion to permit videoconference testimony of Mr. Locklear.[4] On June 4, in contravention of its previous discussions with General Counsel, and for reasons never explained to General

---

[1] All dates herein occurred in 2018.
[2] A copy of the General Counsel's Motion is attached as <u>Exhibit 1</u>.
[3] A copy of the Judge's Order to Show Cause is attached as <u>Exhibit 2</u>.
[4] A copy of the Judge's Order is attached as <u>Exhibit 3</u>.

Counsel, Respondent filed an Opposition to the Motion.  On June 5, Respondent filed a Motion for Reconsideration of the Judge's May 31 Order Granting the Motion, in which Respondent explained that it was not served with the Judge's May 29 Order to Show Cause.[5] On June 6, the Judge issued an Order Granting Respondent's Motion for Reconsideration and Amended Order Denying the General Counsel's Motion.[6]

Mr. Locklear is the only witness who can testify in support of the allegations listed in paragraphs 7(w) and 7(x) of the Second Amended Consolidated Complaint because they occurred during one-on-one conversations between him and a supervisor. He is also not a Charging Party and therefore a third-party witness. Because of the Agency's budgetary constraints, General Counsel is not permitted to subpoena Mr. Locklear to testify in Oakland, California. He is currently under subpoena to appear in Region 3, located in Buffalo, New York. Therefore, the Judge's Order denying his ability to testify by videoconference effectively precludes the General Counsel from presenting any evidence in support of these Complaint allegations.

## II.      It is Appropriate to Reverse the Judge's Order and Permit <u>Videoconference Testimony of Mr. Locklear under Current Case Law</u>

Section 102.35(c) of the Board's Rules and Regulations permits the use of videoconference testimony at unfair labor practice hearings.  The request for videoconference testimony must state where the witness resides, the compelling circumstances that require the use of videoconference testimony, the location where the video testimony will be held, the matter about which the witness will testify, the safeguards in place to ensure that the video will be transmitted, and the Judge must be able to clearly hear and see the witness as well as a panoramic view of the room.  Id.  Moreover, Federal Rule of Civil Procedure (FRCP) 43(a) allows "[f]or good cause and compelling

---

[5] A copy of Respondent's Motion for Reconsideration is attached as <u>Exhibit 4</u>.
[6] A copy of the Judge's Order is attached as <u>Exhibit 5</u>.

circumstances" that testimony be taken via videoconference. Further yet, the Board's Bench Book allows for videoconference testimony. See § 11-620 (Aug. 2010) ( "[v]ideo testimony has been used in Board trials without objection.").

Courts have recognized that videoconference testimony is permissible because a witness testifying by videoconference is observed directly, with virtually instantaneous transmission, and videoconference testimony can sufficiently enable cross-examination and credibility determinations. *Warner v. Cate*, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015); see also *Parkhurst v. Belt,* 569 F.3d 995, 1003 (8th Cir.2009). This is because there is no material difference between live testimony and testimony via video transmission. *FTC v. Swedish Match North America, Inc*., 197 F.R.D. 1, 2 (D.D.C. 2000). While FRCP 43(a) calls for good cause and shares the Board's requirement for compelling circumstances to allow videoconference testimony, courts have interpreted FRCP 43(a) to allow videoconference testimony because it will save the government the cost of transporting witnesses. See, e.g., *Hankins v. Wolf*, 2016 WL 3087677, at *3 (W.D. Pa. June 2, 2016) (Court granted videoconference testimony since it would "save the Commonwealth substantial expense.").

In *EF International Language School, Inc. v. NLRB*, 673 F. App'x 1, 3–4 (D.C. Cir. 2017), the District of Columbia Circuit affirmed the ALJ's use, and the Board's adoption of, videoconference testimony. There, the employer challenged the use of videoconference testimony arguing that it contradicted Board rules and violated the employer's due process rights by preventing the employer from examining the witness in person. Id. The Circuit Court noted that the Board properly determined that Sec. 102.30 of the Board's Rules and Regulations did not preclude the taking of testimony by videoconference and these purported concerns related to due

process were obviated by the videoconferencing technology that enabled observation of the witness.  Id. at 4.

Similarly, in *MPE, Inc.*, 2015 WL 400660, at *1 (NLRB Jan. 29, 2015),[7] the Board granted the General Counsel's request for special permission to appeal the administrative law judges denial of the use of videoconference testimony and remanded the matter to the administrative law judge for a hearing to include videoconference testimony. There the Board noted that the administrative law judge erred in denying the motion to allow video testimony where the witness at issue was a key witness and unavailable to testify in person. Id.

Here, Mr. Locklear is a key witness that is vital to the General Counsel's case.  Specifically, Mr. Locklear will testify about the unfair labor practices alleged in Complaint paragraphs 7(w) and 7(x).  In this regard, Mr. Locklear is the *only* employee witness that can establish the unfair labor practices alleged in the Complaint—which occurred in two separate one-on-one conversations with Respondent's supervisors.  Moreover, Counsel for the General Counsel notes that the use of video testimony will alleviate the economic burden to Mr. Locklear from flying 3,000 miles cross-country, paying for his lodging, transport to/from the airport, and meals. Further yet, Mr. Locklear is a third-party witness on behalf of another Charging Party.  Nor is it appropriate to ask Mr. Locklear, a former factory worker, to bear the expense of travel.  In this regard, requiring Mr. Locklear to travel cross country would require him to miss days of work and potentially lose vacation time and/or income.

Since Mr. Locklear is the only witness who can substantiate the above-referenced allegations of the Complaint, denying the use of videoconference testimony here results in

---

[7] The witness involved in *MPE* was imprisoned at the time of the hearing in that matter; however, *MPE* stands for the proposition that videoconference testimony is allowable when a witness is otherwise unavailable. As described more herein, as a result of Mr. Locklear's physical and financial barriers to the hearing, he should be considered unavailable.

manifest injustice. Because of the physical and financial barriers to Mr. Locklear's in-person testimony, the Judge's refusal to allow videoconference testimony effectively requires the General Counsel to forgo pursuit of paragraphs 7(w) and (x) of the Complaint. These allegations are not cumulative of other Section 8(a)(1) allegations in the Complaint because the conduct is alleged to have occurred in Respondent's facility in Sparks, Nevada, whereas the other Section 8(a)(1) violations are alleged to have occurred in Fremont, California.

Finally, General Counsel will ensure that Section 102.35(c)'s safeguards are maintained. If permitted, Mr. Locklear would testify via videoconference from the Board's Region 3 office in Buffalo, New York, which contains a secure internet connection with firewall protections. Additionally, all Board field offices are equipped with adequate video equipment to transmit Mr. Locklear's testimony to the hearing in Region 32 via a secure internet connection. Both Region 32 and Region 3 have video conference equipment that offers clear, audible, video testimony, including a hi-tech camera that allows the user to pan around the room, tilt, and zoom-in on any item or person in the hearing room. The system further includes a movable microphone and remote control that permits the user to adjust the volume settings to ensure audible clarity. Finally, Board Agents in Region 3, who are under the same ethical rules as all attorneys and under the supervision of the Regional Attorney of Region 3, would be available to present Mr. Locklear with any exhibits as needed by the Judge, General Counsel, the Charging Parties, or Respondent.

## III.   <u>Conclusion</u>

Given that: (1) the use of video testimony will save the Board the substantial cost of transporting a witness cross the country; (2) Mr. Locklear is a third-party witness who should not bear the financial responsibility of travel cross country; (3) it is unreasonable to make a third-party witness pay to fly across country for a case in which he has no standing; (4) without his testimony,

the Board cannot establish elements of its case making Mr. Locklear essential; and (5) all the safeguards in the Board's Rules and Regulations are met, Counsel for the General Counsel respectfully urges the Board to grant this special appeal, reverse the Judge's Amended Order Denying the Motion, and permit Mr. Locklear to testify by videoconference from Buffalo, New York.

**DATED AT** Oakland, California this 8th day of June 2018.

/s/ Noah Garber

_____

Noah Garber
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED** | |
| **AUTOMOBILE, AEROSPACE AND** | |
| **AGRICULTURE WORKERS OF** | |
| **AMERICA, AFL-CIO** | |

**RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

**I.    INTRODUCTION**

On the eve of trial, and days after Tesla served its petitions to revoke the Region's and

the Union's subpoenas *duces tecum* seeking Elon Musk's private communications based, in part,

on the Complaint's failure to allege Mr. Musk's personal involvement in a single unfair labor

practice, the Region filed and served an "Amendment to the Second Amended Consolidated

Complaint." For the very first time since it began its investigation nearly 14 months ago, the

Region now conveniently alleges that Mr. Musk and Gaby Toledano violated Section 8(a)(1).

Tesla will not speculate as to why these allegations arising out of a June 7, 2017 meeting were

22-60493.5116

omitted from the Union's June 12, 2017 charge filed in Case 32-CA-200530, the Union's July 28, 2017 amended charge filed in Case 32-CA-200530, the August 31, 2017 Consolidated Complaint, the September 1, 2017 Amended Consolidated Complaint, the Union's October 25, 2017 charge filed in Case 32-CA-208614, the Union's December 1, 2017 charge filed in Case 32-CA-210879, the Union's December 6, 2017 amended charge filed in Case 32-CA-210879, the Union's March 13, 2018 amended charge filed in Case 32-CA-200530, and the March 31, 2018 Second Amended Consolidated Complaint.  Regardless of whether these omissions resulted from sheer inadvertence by the Union or overly zealous prosecutorial gamesmanship by the General Counsel, the Region cannot establish its jurisdiction over these allegations by carrying its burden of proving that they are "closely related" to the violations asserted in any charge filed by the Union within the 10(b) limitations period.  Even if the General Counsel could somehow prove these allegations at trial (he cannot), the jurisdictional defect is incurable.  Accordingly, in the interest of judicial economy and avoiding the prejudice resulting to Tesla should it be forced to defend allegations that are insufficient as a matter of law, Tesla respectfully requests that each of the allegations asserted in the Amendment to the Second Amended Consolidated Complaint be dismissed.

## II.     PROCEDURAL AND OPERATIVE FACTS

### A.     The Union's Initial Charges—and the Region's Initial Complaints—Make No Allegations Against Mr. Musk or Ms. Toledano.

Between April 17, 2017 and July 28, 2017, the Charging Parties and their attorney Margo A. Feinberg (Counsel for Charging Parties) filed 5 unfair labor practice charges and 5 amended charges against Tesla, Inc. ("Tesla") under Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530.  None of these charges asserted any allegations against Tesla's CEO Elon Musk ("Mr. Musk"), Tesla's Chief People Officer Gaby Toledano

22-60493.5117

(Ms. Toledano), or Tesla's Director of HR for Production Josh Hedges ("Mr. Hedges").  By letter dated July 7, 2017, Field Attorney for Region 32 Edris W.I. Rodriguez Ritchie ("Mr. Rodriguez Ritchie") requested to take affidavits from Lisa Lipson, Lauren Holcomb, David Zweig, and Seth Woody as evidence regarding the allegations raised in Case 32-CA-200530,[1] a copy of which is attached hereto as **Exhibit A**, and further requested that Tesla submit a position statement ("7/7/2017 Request for Evidence," attached hereto as **Exhibit B**).

On August 31, 2017, the Regional Director for Region 32 ("Region") issued a Consolidated Complaint alleging, among other things, that Tesla's HR Business Partner David Zweig attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union on April 5, 2017; that Respondent's Director of Global Environmental Health and Safety Seth Woody attempted to prohibit an employee from discussing safety concerns with other employees and/or the Union on April 28, 2017; and that Human Resources Business Partner Lisa Lipson interrogated employees about protected concerted activities and/or union activities in the presence of Environmental Health and Safety Sustainability Specialist Lauren Holcomb during two separate meetings on May 24, 2017 ("Consolidated Complaint," attached hereto as **Exhibit C**).  Though the Consolidated Complaint did not allege that Tesla Mr. Musk committed or was otherwise involved in any unfair labor practice, it named him as a statutory supervisor.[2]  By contrast, the Consolidated Complaint did not name or otherwise reference Ms. Toledano or Mr. Hedges.

---

[1] The initial charge filed in case 32-CA-200530 is the only one of the aforementioned charges filed after June 7, 2017.

[2] The Region issued the Amended Consolidated Complaint the following day, apparently to remove the facially inaccurate allegation that Tesla is a "health care institution within the meaning of Section 2(14) of the Act."

22-60493.5118

**B.    The Region Takes Ms. Toledano's Affidavit and Does Not Ask Her Questions About any June 7, 2017 Meeting with Mr. Musk and Tesla Employees.**

On October 25, 2017, Charging Parties and their counsel filed the initial charge in Case No. 32-CA-208614, a copy of which is attached hereto as **Exhibit D**.  The charge does not assert any allegations against Mr. Musk, Ms. Toledano, or Mr. Hedges.  By letter dated November 21, 2017, Mr. Rodriguez Ritchie requested to take affidavits from "Vannick Ly, Lehi Gomez, Paul James, Arnold Camat, Timothy Fenelon, Tope Ogunniyi, Kyle Martin, Mario Last Name Unknown, Elena Elliott, Ricky Gecewich, Albert Rios, Duwone Ashley, Thuy Truong, Juan Martinez; Sean Boone; Kyle Last Name Unknown (Human Resources), Nicole White, Chris Padilla" and "Dane Last Name Unknown (Human Resources) as evidence regarding the allegations raised in Case 32-CA-208614, and further requested that Tesla submit a position statement ("11/21/2017 Request for Evidence," attached hereto as **Exhibit E**).  Though not requested, Tesla made Ms. Toledano available to provide an affidavit to Mr. Rodriguez Ritchie given her involvement in the implementation of the employee evaluation resulting in the layoffs referenced in the Region's letter.  When Mr. Rodriguez Ritchie took her affidavit on February 5, 2018, he did not ask her about any June 7, 2017 meeting, and it was not discussed.

On December 1, 2017, Charging Parties and their counsel filed the initial charge in Case No. 32-CA-210879, a copy of which is attached hereto as **Exhibit F**.  The charge does not assert any allegations against Mr. Musk, Ms. Toledano, or Mr. Hedges.  By letter dated December 20, 2017, Mr. Rodriguez Ritchie requested to take affidavits from "Dave Teston, Associate Manager, Josh Surgeon, (title unknown to Board Agent but known by Employer), Shawn Gaines, Supervisor, Kevin Kassekert, Vice President for Infrastructure Development, Matthew Stewart, Supervisor, Tyler Ash, Supervisor, Andy McIndoe, Associate Production Manager, Cindie Reneau, Human Resources Representative" and "Elliot Kent, Supervisor" as evidence regarding the allegations raised in Case

22-60493.5119

32-CA-210879, and further requested that Tesla submit a position statement ("12/20/2017 Request for Evidence," attached hereto as **Exhibit G**).

On March 30, 2017, the Region issued a Second Amended Consolidated Complaint (the "Operative Complaint"), a copy of which is attached hereto as **Exhibit H**.  In addition to the allegations asserted in the Consolidated Complaint and the Amended Consolidated Complaint, the Operative Complaint alleged that Supervisor Homer Hunt made a statement of futility to employees in August of 2017; that Tesla's supervisors Tope Ogunniyi and Tim Fenelon disparately enforced work apparel restrictions against employees wearing clothing with Union insignia; that Employee Relations Investigator Ricky Gecewich interrogated employees about their protected activities in separate meetings conducted September 21, 2017 and October 19, 2017 and promulgated/disparately enforced a rule prohibiting employees from accessing internal work systems without proper business justification also on October 19, 2017; that Respondent unlawfully discharged Richard Ortiz on October 18, 2017; and that Respondent unlawfully disciplined Jose Moran on October 19, 2018.  The Operative Complaint again named Mr. Musk as a statutory supervisor notwithstanding its failure to allege that he committed or was otherwise involved in any unfair labor practice.  The Operative Complaint did not name or otherwise reference Ms. Toledano or Mr. Hedges.  Nor did the Operative Complaint contain any allegations pertaining to the layoffs for which Ms. Toledano provided an affidavit to Mr. Rodriguez Ritchie.

### C.  Tesla Petitions to Revoke the Requests of the General Counsel's and the Union's Subpoenas *Duces Tecum* Seeking Mr. Musk's and Ms. Toledano's Electronic Communications Because There Are No Pending Allegations Against Them.

On May 24, 2018, the Region served Tesla with subpoena *duces tecum* B-1-118CRIT ("Region's SDC") which contained several requests for Mr. Musk's personal email and social

22-60493.5120

media communications.  In its May 31, 2018 petition to revoke these requests, Tesla objected

due to their irrelevance to any of the matters alleged in the complaint.  The petition stated: "None

of the witnesses, including Gecewich stated that any of the individuals listed in Request No. 7

(including Elon Musk) participated in the decision to terminate Ortiz and counsel Moran for their

misconduct.  In fact, the Complaint does not even allege that Elon Musk … violated any section

of the NLRA, much less section 8(a)(3).  In its objections to Request No. 10, Tesla reiterated:

"***There is no allegation that Elon Musk directed, was involved in, or in any way influenced
any of the decisions or actions described in the Complaint.***"

On May 31, 2018, the Union served Tesla with subpoenas *duces tecum* Nos. B-1-

11BJS5V and B-1-11BKOEJ ("Union's SDC").  Like the Region's SDC, the Union's SDC

requested Mr. Musk's electronic communications, but also sought those made by Ms. Toledano

and Mr. Hedges.  In its June 4, 2018 petition to revoke these requests, Tesla repeatedly objected

due to their irrelevance to any of the matters alleged in the Operative Complaint.  For example,

Tesla wrote: "Of the 3 individuals listed in Request No. 14, the Complaint references only Elon

Musk, and only to allege his supervisory status. There are accordingly no allegations pending in

these proceedings with respect to the role played by Mr. Musk, Mr. Hedges, or Ms. Toledano in

any actions unlawfully motivated by anti-union animus."

> **D.      The Region Amends the Complaint to Allege that Mr. Musk and Ms.
> Toledano Made Unlawful Statements During a June 7, 2017 Meeting with
> Tesla Employees.**

On June 4, 2018, the Region issued an "Amendment to the Second Amended

Consolidated Complaint" (the "Amendment"), a copy of which is attached hereto as **Exhibit I.**

In addition to listing Ms. Toledano and Mr. Hedges as statutory supervisors, the Amendment

asserted new factual allegations.  Specifically, the Amendment  alleged that, on June 7, 2017,

22-60493.5121

Mr. Musk "solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity" and "informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances." The Amendment also alleged that Ms. Toledano "restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's facility wanted a union and asking them why employees would want to pay union dues" at this same June 7, 2017 meeting. Though it named him as a statutory supervisor, the Amendment did not assert any factual allegations against Mr. Hedges.

## III.    ARGUMENT

### A.    A Region Lacks Jurisdiction to Issue a Complaint on Allegations which are not "Closely Related" to a Timely Filed Charge.

Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the Board." 29 U.S.C. § 160. Interpreting and applying this language, the Board and U.S. Courts of Appeal have observed that Section 10(b) therefore serves "two separate functions." *Carney Hospital*, 350 NLRB 627, 628 (2007) (quoting *Precision Concrete v. NLRB*, 334 F.3d 88, 90 (D.C. Cir. 2003) (quoting *Ross Stores, Inc. v. NLRB*, 235 F.3d 669, 677 (D.C. Cir. 2001) (Randolph, J., concurring)).

First, Section 10(b) functions in part as a statute of limitations by prohibiting the issuance of a complaint based on conduct occurring more than 6 months prior to the filing of a charge. *Carney Hospital*, 350 NLRB 627, 628 (2007). Second, to the extent it underscores the Board's and the General Counsel's inability to initiate unfair labor practice proceedings *sua sponte*,

22-60493.5122

"Section 10(b) operates as a jurisdictional[3] limitation, under which the Board (through the General Counsel) may investigate and prosecute conduct *only* in response to the filing of a 'charge.'" *Carney Hospital*, 350 NLRB 627, 628 (2007) (citing *Precision Concrete*, supra, 334 F.3d at 90) (emphasis added).  By this limitation, Congress intentionally denied the Board the "power to initiate or expand unfair labor practice proceedings, at the Board's initiative." *Allied Waste Services of Massachusetts, LLC*, 01-CA-123082, -126843, 2014 WL 7429200 (Dec. 31, 2014).  Thus, though it has reasonable latitude to investigate unfair labor practices in a manner that goes beyond "the precise particularizations of a charge," *NLRB v. Fant Milling Co*., 360 U.S. 301, 309 (1959), this "does *not* mean the Board has 'carte blanche to expand the charge as [it] might please, or to ignore it altogether.'" *Id*.

Section 10(b) accordingly establishes two independent requirements for complaints: the unfair labor practices alleged therein must have occurred less than 6 months before the filing of a charge, and the allegations must be "closely related" to that charge.  "If either of these requirements is not met, the complaint will be dismissed." *Trade Fair Supermarkets*, 354 NLRB 190, 192 (2009) ("Having found that the charge does not support the complaint, we also find that the judge erred in failing to dismiss the complaint on that basis."); *see KFMB Stations*, 343 NLRB 748, 748–749 (2004) (complaint allegation dismissed where alleged unfair labor practice occurred less than 6 months before charge was filed but complaint allegation not closely related

---

[3] Section § 3-600 of the most recent edition of the NLRB Benchbook states—without support—that "[s]ection 10(b) is not jurisdictional."  This view runs contrary to the clear weight of the authorities.  *See, e.g., Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309, 313 (D.C. Cir. 2015) (the Board "lacked jurisdiction" over allegation that employer unlawfully maintained workplace rule insofar as it was unrelated to unlawful discharge violation asserted in charge); *Teamsters Local 955*, 325 NLRB 605, 607 (1998); *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) ("Where the Board is unable to connect the allegations in its complaint with the charge allegation, we are unable to find that the Board has jurisdiction over the unrelated complaint allegations.")

22-60493.5123

to charge allegations); *Towne Ford, Inc.*, 327 NLRB 193, 198–199 (1998) (same); *Seton Co.*, 332 NLRB 979, 983–984 (2000) (complaint allegation dismissed where complaint allegation closely related to charge allegations but alleged unfair labor practice occurred more than 6 months before charge was filed).

As shown below, the Region is patently incapable of satisfying the "closely related" test as to the allegations of the Amendment and the violations alleged in any of the 3 charges filed by the Union within 6 months of the alleged June 7, 2017 meeting.

### B.   The Region Cannot Establish that the New Allegations are "Closely Related" to Any Pending, Timely-Filed Charge.

Under its "closely related" test as set forth in *Reddi-I, Inc.*, 290 NLRB 1115, 1116 (1988) and modified in *Nickles Bakery of Indiana, Inc.*, 296 NLRB 927, 928 (1989), the Board (1) considers whether the timely and untimely allegations involve the same legal theory; (2) considers whether the otherwise untimely allegations arise from the same factual situation or sequence of events as the allegations in the timely charge; and (3) "may look" at whether a respondent would raise the same or similar defenses to both the timely and untimely allegations. *Carney Hospital*, 350 NLRB 627, 628 (2007).

In *Nickles Bakery*, the Board explained that "[a]llowing the boilerplate 'other acts' language to support unrelated 8(a)(1) complaint allegations contravenes 10(b)'s mandate that the Board 'not originate complaints on its own initiative.'" 296 NLRB at 928. The Board added that "such an approach virtually renders meaningless the specificity required by Section 102.12(d) of the Board's Rules and Regulations that a charge contain a 'clear and concise statement of the facts constituting the alleged unfair labor practices affecting commerce.'" *Id*. The Board further clarified in *Carney Hospital*, supra, 350 NLRB at 631, that "a chronological

22-60493.5124

relationship without more is insufficient to support a finding of factual relatedness" as required by the second prong of the "closely related" test.

*Carney Hospital* and its progeny underscores the Board's wisdom in exercising restraint over the invocation of the "closely related" doctrine to cure jurisdictional defects. *See Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010).  In *Salon/Spa*, the Board affirmed the ALJ's findings and conclusions, including his reliance on *Carney Hospital* to find that a timely filed charge alleging that an employee was discharged in violation of Section 8(a)(1) was not "closely related" to an untimely allegation regarding unlawful threats made during a staff meeting.  *Id* at 455.  There, the ALJ explained that he "must determine whether the allegedly unlawful threat … [had] some meaningful nexus with the sequence of events contained in the timely filed charges" because "a careless application of [the "closely related"] standard could easily prove to be so elastic as to entirely vitiate the Congressional objective of limiting the period in which a party's past conduct could subject it to unfair labor practice litigation."  *Id* at 456.  His observations (adopted without comment by the Board) warrant repeating as they apply with equal force here:

> If one were to excuse an untimely filing simply because the alleged misconduct was part of a sequence of similar events to those timely raised, the intent underlying the statute of limitations would be completely compromised. There is no difference in principle between the Employer's application of the negativity policy to Bates in November 2008 and its alleged threat based on that policy in September 2009. Without the vital limits articulated by the Board in *Carney Hospital*, nothing would stand in the way of a party's attempt to employ the "closely related" doctrine to prosecute remote actions that possess only a mere sequential and topical relationship to a timely filed charge. For these reasons, I agree with the Employer that the allegation regarding an alleged threat on September 24 is untimely and must be dismissed.

> *Id.*

More recently, Judge Etchingham came to a similar conclusion in response to the General Counsel's argument that 3 untimely *Weingarten* violation allegations were "closely related" to a

22-60493.5125

timely filed discriminatory discharge charge insofar as they "grew out of the same facts and circumstances." *Wal-Mart Stores, Inc.*, 28-CA-167277, JD(SF)-34-16, 2016 WL 4547576 (N.L.R.B. Div. of Judges) (August 31, 2016).  Noting that there were no "common Respondent decision makers between the 2 groups of allegations" as the timely charge did not identify the supervisor who issued the discharge nor allege that the charging party was terminated for invoking his *Weingarten* rights, Judge Etchingham concluded that "the required factual relationship ... [was] lacking." *Id*.  He further observed that there was "no evidence that the [charge's] boilerplate verbiage was intended to allege any of the allegations the General Counsel has in the complaint or the amended complaint". *Id*.  Because the second prong of the "closely related" test was not satisfied, Judge Etchingham dismissed the case.  *Id*.

In applying the "closely related" test, "the jurisdictional inquiry is wholly independent of the General Counsel's actual success in proving the alleged relationship." *Hyundai Am. Ship. Agency, Inc. v. NLRB*, supra, 805 F.3d at 313.  The Board's jurisdiction instead "should be tested by the General Counsel's allegations rather than his proof", and "factual relatedness is evaluated 'as of the time of the allegations.'" *Id* (citing *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1021 (D.C. Cir. 1995) (adopting dissenting view of then-Judge Stevens in *NLRB v. Braswell Motor Freight Lines, Inc.,* 486 F.2d 743 (7th Cir.1973)).  Significantly, the General Counsel bears the burden of proof.  *Precision Concrete v. NLRB*, supra, 334 F.3d at 91 ("Because the issue before the Board in this case was jurisdiction, the Board erred by placing the burden of proof upon the Company."); *Teamsters Local 955*, supra, 325 NLRB at 607 ("Section 10(b) of the Act is jurisdictional and the General Counsel has the specific burden of establishing this statutory requirement."); *A-NLV Cab Co.*, 340 NLRB 1005, 1009 (2003) (same).

/ / /

22-60493.5126

1. **The General Counsel Cannot Establish that the New Allegations are "Closely Related" to Case 32-CA-200530.**

The Union's Charge in Case 32-CA-200530, filed June 12, 2017—5 days after the newly

alleged June 7, 2017 meeting, makes the following allegations:

> On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.
>
> On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.
>
> On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.
>
> On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.
>
> On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.
>
> On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.
>
> Ex. A.

Though, like the Amendment's allegations against Mr. Musk and Ms. Toledano, the

charge in Case 32-CA-200530 alleges that Tesla committed several 8(a)(1) violations, that is

where the similarity ends.  The charge does not name Mr. Musk or Ms. Toledano, does not state

22-60493.5127

that any ULP occurred on June 7, 2017, does not make any mention of any meeting with employees, and does not make any assertions regarding unlawful solicitation of grievances, statements of futility, or statements regarding union wages. The employer's defenses to the newly asserted allegations in the Amendment—i.e., that such statements were never made by Mr. Musk or Ms. Toledano during the alleged June 7, 2017 meeting—are completely dissimilar.

The Union's First Amended Charge in Case 32-CA-200530, filed July 28, 2017 and attached hereto as **Exhibit J**, adds the following allegation:

> Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

The Union's amended charge is similarly incapable of supporting the allegations asserted in the Amendment. A review of the Region's 7/7/2017 Request for Evidence issued regarding this charge will leave no doubt that the allegations of Charge 32-CA-200530 had absolutely nothing to do with any June 7, 2017 meeting conducted by Mr. Musk and Ms. Toledano. *See* Ex. B. The Region did not seek to take Mr. Musk's or Ms. Toledano's affidavits. Nor did it request that Tesla submit a position statement with respect to any June 7, 2017 meeting involving those two individuals. That the allegations of the Amendment are not "closely related" to those asserted in this charge cannot be disputed given Union Counsel's failure to include them in the charge's July 28, 2017 amendment. Rather, its boilerplate 8(a)(1) allegations are insufficient as a matter of law to support the new allegations against Mr. Musk and Ms. Toledano. The General Counsel accordingly cannot rely on Charge 32-CA-200530 to establish its jurisdiction over the allegations of the Amendment.

22-60493.5128

**2.    The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-208614.**

The Union's charge in Case 32-CA-208614, filed October 25, 2017, makes the following

allegations:

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things. terminating a group of employees to discourage protected concerted activity by other employees.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

> Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

> Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by intimidating and harassing employees for their Section 7 activities.

/ / /

22-60493.5129

By these and other acts, Tesla. Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

Ex. D.

Though, like the Amendment's allegations against Mr. Musk and Ms. Toledano, the initial charge in Case 32-CA-208614 alleges that Tesla committed several 8(a)(1) violations, these boilerplate allegations are legally insufficient to confer jurisdiction. The charge does not name Mr. Musk or Ms. Toledano, state that any ULP occurred on June 7, 2017, make any mention of any meeting with employees, or make any assertions regarding unlawful solicitation of grievances, statements of futility, or statements regarding union wages. Discounting the boilerplate 8(a)(1) language, the allegations of Charge 32-CA-208614 deal principally with the purported "mass discharge" theory which even the Region found was too untenable to support a complaint. The employer's defenses to the newly asserted allegations in the Amendment—i.e., that such statements were never by Mr. Musk or Ms. Toledano during the alleged June 7, 2017 meeting—are additionally completely dissimilar.

The Union's First Amended Charge in Case 32-CA-208614, filed March 13, 2017 and attached hereto as **Exhibit K**, adds the following allegation:

> Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity.

22-60493.5130

Assuming *arguendo* that the amended charge would relate back to the October 25, 2017 filing date of the initial charge, it is equally incapable of supporting the allegations asserted in the Amendment.  As made clear by the Region in its 11/21/2017 Request for Evidence, the allegations of Charge 32-CA-208614 had absolutely nothing to do with any June 7, 2017 meeting conducted by Mr. Musk and Ms. Toledano.  *See* Ex. E.  The Region did not seek to take Mr. Musk's or Ms. Toledano's affidavits and, though Ms. Toledano did provide an affidavit to Mr. Rodriguez Ritchie, he did not ask her a single question pertaining to the newly alleged June 7, 2017 meeting.  Nor did the Region request that Tesla submit a position statement with respect to any June 7, 2017 meeting involving those two individuals.

Further, while the amended charge asserts—in boilerplate language— that "Tesla…coerced employees...by…making a statement of futility regarding employee support for the Union," the subsequently issued Operative Complaint made clear that this allegation concerns comments made by Supervisor Homer Hunt in August 2017.  That the allegations of the Amendment are not "closely related" to those asserted in this charge cannot be disputed given Union Counsel's failure to include them in the charge's March 13, 2017 amendment.  The General Counsel accordingly cannot establish that the Amendment is "closely related" to Charge 32-CA-200530.

      **3.**      **The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-210879.**

The Union's charge in Case 32-CA-210879, filed December 1, 2017, makes the following allegations:

> ln the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities,

22-60493.5131

subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

Ex. F.

William Locklear was employed at Tesla's Gigafactory in Sparks, Nevada. There is nothing to suggest that the "co-workers" referenced in this charge were those that attended any alleged meeting with Mr. Musk and Ms. Toledano on June 7, 2017. The charge makes no reference to Mr. Musk, Ms. Toledano, solicitation of grievances, futility statements, union dues, or worker safety.

The Union's First Amended Charge in Case 32-CA-210879, filed December 6, 2017 and attached hereto as **Exhibit L**, adds the following allegation:

In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

Like the amended charges filed by Union Counsel in the cases that preceded 32-CA-210879, this amended charge makes clear its underlying allegations had absolutely nothing to do with those asserted in the Region's Amendment. The same rings true for the Region's 12/20/2017 Request for Evidence, which—again—did not seek to take Mr. Musk's or Ms. Toledano's affidavits or give any indication whatsoever that the charge had initiated an investigation into their activities. *See* Ex. G.

## IV.   <u>CONCLUSION</u>

Tesla has fully cooperated with the Region during its 14-month long investigation into the dozens of charges filed against it by the UAW. It has submitted thousands of pages of documents and position statements in response to the Region's requests for evidence and ensured the availability of its high-ranking employees to provide nearly 20 affidavits. Yet notwithstanding Tesla's efforts, the Region cynically chose to amend its Complaint on the eve of

22-60493.5132

trial to justify the overly broad subpoenas issued in these proceedings rather than attempting to

meet and confer in good faith in an effort to narrow them to the issues in dispute.  Thanks to

Congress' foresight in creating the limitations outlined in Section 10(b), Tesla fortunately need

not rely on the Region's good faith to protect itself against such abuses.  Because the allegations

of the Amendment are not "closely related" to those asserted in any pending, timely filed charge,

the Region exceeded its jurisdiction.  They must accordingly be dismissed.


Dated:  June 11, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
   /s/ *Keahn N. Morris*
   MARK S. ROSS
   KEAHN N. MORRIS

   Attorneys for
   TESLA, INC.

22-60493.5133

# Exhibit A

22-60493.5134

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

FORM EXEMPT UNDER 44 U.S.C 3512

**DO NOT WRITE IN THIS SPACE**

| Case | 32-CA-200530 | Date Filed | 06/12/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br>Tesla Motors Corporation | b. Tel. No. (510) 249-3650 or<br>(650) 681-5454 |
| | c. Cell No. (650) 454-5386 |
| | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri |
| | g. e-Mail<br>arnnon@tesla.com |
| | h. Number of workers employed<br>Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesale, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3)
                                                                                    of the National Labor Relations Act, and these unfair labor
practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce
within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. (313) 926-5000 |
|---|---|
| 8000 East Jefferson Avenue<br>Detroit, Michigan 48214 | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By *Margo A. Feinberg* | Attorney for Charging Party,<br>Margo A. Feinberg, Esq. | Tel. No. (323) 655-4700 |
|---|---|---|
| *(signature of representative or person making charge)* | *(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| Schwartz, Steinsapir, Dohrmann & Sommers, LLP | | Fax No. (323) 655-4488 |
| 6300 Wilshire Blvd., Suite 2000, L.A., CA 90048 | 6/12/17 | e-Mail margo@ssdslaw.com |
| Address | *(date)* | |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.

ID 326809

# Exhibit B

22-60493.5137



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 32                                  Agency Website: www.nlrb.gov
1301 Clay St Ste 300N                      Telephone: (510)637-3300
Oakland, CA 94612-5224                     Fax: (510)637-3315

Agent's Direct Dial: (510)671-3041

July 7, 2017

**By E-Mail Only**

Elizabeth Parry, Esq.
Littler Mendelson, P.C.
1255 Treat Blvd, Suite 600
Walnut Creek, CA 94597-7605
E-Mail: mparry@littler.com

Michael J. Lotito
Littler Mendelson, P.C.
333 Bush St Fl 34
San Francisco, CA 94104-2874
E-Mail: mlotito@littler.com

JOHN M. SKONBERG, ATTORNEY
Littler Mendelson, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104-2842
E-Mail: jskonberg@littler.com

Re:     **Tesla Motors Corporation**
        **Case 32-CA-200530**

Dear Ms. Parry, Mr. Lotito, and Mr. Skonberg:

I am writing this letter to advise you that it is now necessary for me to take evidence from your client regarding the allegations raised in the investigation of the above-referenced matter. Set forth below are the allegations and issues on which your evidence is needed, a request to take affidavits, a request for documentary evidence, and the date for providing your evidence.

**Allegations:**  The allegations for which I am seeking your evidence are as follows.  The International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO (the Charging Party) alleges that Tesla Motors Corporation ("the Employer" or "the Charged Party") violated Section 8(a)(1) and (3) of the Act by engaging in the following conduct:

22-60493.5138

1.     On February 9, 2017, the Employer, through Juan Martinez, interrogated an employee regarding the employee's protected concerted activities and/or union activities;

2.     On February 9, 2017, the Employer, through Juan Martinez, created an impression of surveillance of employees' protected concerted activities and/or union activities and created an appearance of discipline and harassment by interrogating an employee regarding the employee's protected concerted activities and/or union activities;

3.     On or about April 5, 2017, the Employer, through David Zweig, applied of an overly broad confidentiality policy prohibiting the sharing of information related to workplace safety at Tesla's Fremont facility;

4.     On or about April 5, 2017, the Employer, through David Zweig, discriminatorily applied a confidentiality policy to prohibit Tesla employees from sharing information related to workplace safety at Tesla's Fremont facility;

5.     On or about April 29, 2017, the Employer, through Seth Woody, applied of an overly broad confidentiality policy prohibiting the sharing of information related to workplace safety at Tesla's Fremont facility;

6.     On or about April 29, 2017, the Employer, through Seth Woody, discriminatorily applied a confidentiality policy to prohibit Tesla employees from sharing information related to workplace safety at Tesla's Fremont facility;

7.     On or about May 24, 2017, the Employer, through its security guards as agents of the Employer, at the Employer's Fremont location:

     a.     created an impression of surveillance of employees engaging in protected concerted activities and/or union activities;

     b.     engaged in unlawful surveillance of employees engaging in protected concerted activities and/or union activities;

     c.     engaged in unlawful and discriminatory harassment of employees engaged in protected concerted activities and/or union activities by repeatedly asking employees engaged in such activities for their identification;

8.     On May 24, 2017, through Lisa Lipson and Lauren Holcomb, interrogated and threatened employees regarding their protected concerted activities; and

9.     On May 24, 2017, through Lisa Lipson and Lauren Holcomb, created an impression of discipline, interrogation and harassment by interrogating and threatening employees regarding their protected concerted activities.

**Board Affidavits:**  I am requesting to take affidavits from Lisa Lipson, Lauren Holcomb, David Zweig, Seth Woody, and any other individuals you believe have information relevant to the investigation of this matter.  Please be advised that the failure to present representatives who would appear to have information relevant to the investigation of this matter, for the purposes of my taking sworn statements from them, constitutes less than complete cooperation in the investigation of the charge.  Please contact me by Tuesday, July 11, 2017 to schedule these affidavits.

**Documents:**  Please provide the following documents, along with any and all other evidence you deem to be relevant to the case:

1.  A completed copy of the attached "Commerce Questionnaire" by the Employer's person most knowledgeable on the topic of the Employer's participate in interstate commerce;

2.  Any document that reflects communications between Tesla employees regarding the sharing of information related to workplace safety from February 1, 2017 to the present;

3.  Copies of any document designated as "confidential" pursuant to Tesla's confidentiality policy on the topic of workplace safety that was given to any Tesla employee between February 1, 2017 and the present;

4.  Any document reflecting Tesla's confidentiality policy that was maintained on April 5 and 29, 2017;

5.  Copies of all documents referring to or memorializing any agreements for the provision of security services at the Employer's Fremont facility on May 24, 2017;

6.  The names of any individuals working as "security guards" at the Employer's Fremont facility on May 24, 2017 between the times of 4:45 a.m. to 6:00 a.m. and between 4:45 p.m. and 6:00 p.m.;

7.  Copies of any photographs or video recordings taken of any individual located in or near the Employer's Fremont facility parking lot or entrances between the times of 4:45 a.m. to 6:00 a.m. and between 4:45 p.m. and 6:00 p.m. on May 24, 2017;

8.  Copies of any document that reflects or memorializes the Employer's policy for access to the parking lot at the Employer's Fremont facility, access to the Employer's facility by current employees, and the presentation of an employee's work identification in effect on May 24, 2017;

9.  Copies of any document that reflects or refers to any meeting attended by Lisa Lipson or Lauren Holcomb on or about May 24, 2017 with employees. This request shall include, but is not limited to, copies of notes taken by either Lipson or Holcomb in connection with their meetings with employees as well as copies of any recordings made by the Employer of such meetings;

10. Copies of any documents referring to or memorializing any interactions or communications that occurred on May 24, 2017 between 4:45 a.m. and 6:00 a.m. and between 4:45 p.m. and 6:00 p.m. between Tesla security guards and employees at Tesla;

11. Any document in the Employer's possession since January 1, 2016 on the topic of unions or the United Auto Workers;

12. If the Employer contends that Lisa Lipson, Lauren Holcomb, Seth Woody, or David Zweig are not statutory employees within the meaning of the Act, documents reflecting the involvement or participation by Lisa Lipson, Lauren Holcomb, Seth Woody, or David Zweig in any of the following actions concerning any employee of the Employer: (a) Hiring; (b) Transferring; (c) Suspending; (d) Laying off; (e) Recalling; (f) Promoting; (g) Discharging; (h) Assigning of work; (i) Rewarding, including the granting of wage increases; (j) Disciplining; (k) Scheduling or granting of time off; (l) Assigning of overtime; (m) Adjusting of grievances; (n) Directing work; and (o) Evaluating; and

13. Any document that reflects an asserted defense of the Employer.

**Position on 10(j) Relief:**  To the extent the Employer wishes to provide another position statement on the topic of Section 10(j) relief, you are also requested to provide your position as to the appropriateness of Section 10(j) injunctive relief in this matter. As you may know, Section 10(j) of the Act permits the NLRB to ask a federal district court "for appropriate temporary relief or restraining order" pending the Board's resolution of an unfair labor practice charge. The district court is authorized to grant "such temporary relief or restraining order as it deems just and proper."  *If* the Region determines the Charged Party has violated the Act as alleged, the Region will consider whether to seek injunctive relief in this matter. Accordingly, please provide your position, legal theory, case law, and supporting evidence regarding whether injunctive relief would be appropriate for the alleged violations in this case and whether such injunctive relief would be just and proper. I wish to emphasize that the Region has not yet made a decision as to whether the Charged Party has violated the Act as alleged. Rather, we want to provide you with adequate notice that injunctive relief will be considered if such a decision is made.

**Date for Submitting Evidence:**  To resolve this matter as expeditiously as possible, you must provide your evidence and position in this matter by Friday, July 14, 2017. If you are willing to allow me to take affidavits, please contact me by Tuesday, July 11, 2017 to schedule a time to take affidavits. Electronic filing of position statements and documentary evidence through the Agency website is preferred but not required. To file electronically, go to

**www.nlrb.gov,** select **E-File Documents,** enter the **NLRB case number,** and follow the detailed instructions.  If I have not received all your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.

It is Agency policy that full and complete cooperation on your part in this investigation includes timely providing all material witnesses under your control to the investigating Board agent so that the witnesses' statements can be reduced to affidavit form and providing all relevant documentary evidence requested by the Board agent.  The mere submission of a position letter or memorandum, or the submission of affidavits not taken by the Board agent, does not constitute full and complete cooperation.  The Region seeks such full and complete cooperation by the close of business on Friday, July 14, 2017.  If I have not received all of your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.  Additionally, the Region will consider all of its options in order to complete its investigation, including the possibility of issuing investigative subpoenas for the witnesses and documents requested in this letter.

Please contact me at your earliest convenience by telephone, (510)671-3041, or e-mail, edris.rodriguezritchie@nlrb.gov, so that we can discuss how you would like to provide evidence and I can answer any questions you have with regard to the issues in this matter.

Very truly yours,

/s/ Edris Rodriguez Ritchie


EDRIS W.I. RODRIGUEZ RITCHIE
Field Attorney

# Exhibit C

22-60493.5143

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

   and

MICHAEL SANCHEZ, an Individual           Case 32-CA-197020

   and

JONATHAN GALESCU,  an Individual       Case 32-CA-197058

   and

RICHARD ORTIZ, an Individual           Case 32-CA-197091

   and

INTERNATIONAL UNION, UNITED       Case 32-CA-197197
AUTOMOBILE, AEROSPACE AND      Case 32-CA-200530
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

### ORDER CONSOLIDATING CASES, CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, IT IS ORDERED THAT Cases 32-CA-197020, Case 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, which are based on charges filed by Michael Sanchez, an Individual, Jonathan Galescu, an Individual, Richard Ortiz, an Individual, and Service Employees International Union, Local 2015 (Union), respectively,  against Tesla Motor Corporation (Respondent) are consolidated.

This Order Consolidating Cases, Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act

22-60493.5144

(the Act), 29 U.S.C. § 151 et seq. and Section 102.15 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)     The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)     The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)     The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)     The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)     The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)     The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)     The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

22-60493.5145

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, and an automotive manufacturing facility in Fremont, California (the Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending August 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a), purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act and has been a health care institution within the meaning of Section 2(14) of the Act.

4.

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

|  |  |
|---|---|
| Victor Facha | - Supervisor |
| Laura Holcomb | - Environmental Health Safety and Sustainability Specialist |
| Lisa Lipson | - Human Resources Business Partner |
| Mark Lipscomb | - Vice-President of Human Resources |

3

| Juan Martinez | - | Production Manager |
|---|---|---|
| Elon Musk | - | Chief Executive Officer |
| Armando Rodriquez | - | Supervisor |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |
| Red Shirt Supervisor No. 1 | - | Supervisor |

6.

At all material, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| John Does 1-6 | - | Security Guards |
|---|---|---|
| Unknown Human Resources Agent | - | Agent |

7.

(a)    Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement:

(i)    These obligations are straightforward.  Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started.  This includes information about. .customers, suppliers, employees.    and anything similar.

(ii)    Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

22-60493.5147

(iii)  Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv)  take or post photos or make video or audio recordings inside Tesla facilities,

(v)  forward work e-mails outside of Tesla or to a personal email account,

(vi)  or write about your work in any social media, blog, or book.  If you are unsure, check with your manager, HR, or Legal.

(vii) The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment.  Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution.  These obligations remain in place even if no longer working at Tesla.

(b)     About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at Respondent's Facility, during a one-on-one meeting with an employee, prohibited the employee from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 5(a).

(c)     On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 1-4,  restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)     On February 10, 2017, Respondent, by Male Security Guard No. 1, outside the entrance to Door 2 at Respondent's Facility:

(i)     On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

(ii)    Male Security Guard No. 1 engaged in the conduct described above in paragraph 5(d)(i) because the employee was engaged in

22-60493.5148

Union leafleting and to discourage these and other protected, concerted activities.

(e)     On February 10, 2017, Respondent, by Female Security Guard No. 2, outside the entrance to Door 1 at Respondent's Facility:

    (i)     told off-duty employees to leave Respondent's premises.

    (ii)     Security Guard No. 2 engaged in the conduct described above in paragraph 5(e)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(f)     On February 10, 2017, Respondent, by Male Security Guard No. 3, outside the entrance to Door 1 at Respondent's Facility:

    (i)     told off-duty employees to leave Respondent's premises.

    (ii)     Security Guard No. 3 engaged in the conduct described above in paragraph 5(f)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(g)     On February 10, 2017, Respondent, by Female Security Guard No. 4, outside the entrance to Door 3 at Respondent's Facility:

    (i)     told an off-duty employee to leave Respondent's premises.

    (ii)     Security Guard No. 4 engaged in the conduct described above in paragraph 5(g)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(h)     On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the back entrance to Respondent's Facility by the Receiving Addition:

    (i)     told an off-duty employee to leave the premises.

    (ii)     Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 5(h)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

22-60493.5149

(i)     On February 10, 2017, Respondent, by an unnamed Human Resources Agent who was called by Red Shirt Male Supervisor No. 1, during a phone conversation:

    (i)     told an off-duty employee who was on medical leave to leave Respondent's premises.

    (ii)     The unnamed Human Resources Agent engaged in the conduct described above in paragraph 5(i)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(j)     On March 23, 2017, Respondent, by Supervisor Armando Rodriguez, during a pre-shift meeting at Respondent's Facility:

    (i)     told employees that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent.

    (ii)     threatened that Respondent would terminate employees if they passed out stickers, leaflets, or materials that were not approved by Respondent.

    (iii)     Supervisor Armando Rodriguez engaged in the conduct described above in paragraph 5(j) because employees engaged in Union activities and to discourage these and other protected, concerted activities.

(k)     On April 5 2017, Respondent, by David Zweig, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(l)     On April 28, 2017, Respondent, by Seth Woody, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(m)     On May 24, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

22-60493.5150

   (n)    On May 24, 2017, by Female Security Guard No. 5, at the security counter near the Door 4 entrance at Respondent's Facility, told an employee that the employee could not hand out flyers on Respondent's premises.

   (o)    On May 24, 2017, by Male Security Guard No. 6, outside the Door 4 entrance at Respondent's Facility:

      (i)    on two occasions, instructed an off-duty employee to leave the premises.

      (ii)    Male Security Guard No. 6 engaged in the conduct described above in paragraph 5(n)(i) because the employee because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

   (p)    On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lispon, during separate meetings with two employees, in the presence of Environmental Health Safety and Sustainability Specialist Laurent Holcomb, interrogated the employee about the employee's Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

8.

By the conduct described above in paragraph 7, Respondent has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.

9.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

22-60493.5151

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Consolidated Complaint. The answer must be **received by this office on or before September 14, 2017, or postmarked on or before September 13, 2017**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules

9

and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Consolidated Complaint are true.

## NOTICE OF HEARING

**PLEASE TAKE NOTICE THAT** on November 14, 2017, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Suite 300N, Oakland, California 94612, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.   At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 31st day of August 2017.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

22-60493.5153

# Exhibit D

22-60493.5154

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET FORM NLRB-501 (2-08) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case 32-CA-208614 | Date Filed 10-25-2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Tel. No. |
|---|---|
| Tesla, Inc. | |
| | c. Cell No. |
| | f. Fax No. |

| d. Address (Street, city, state, and ZIP code) | e. Employer Representative | g. e-Mail |
|---|---|---|
| 45500 Fremont Boulevard Fremont, California 94538 | Gaby Toledano, Chief People Officer | gaby@tesla.com |
| | | h. Number of workers employed 10,000 |

| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service |
|---|---|
| Factory | Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) and (4) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. (313) 926-5000 |
|---|---|
| 8000 East Jefferson Detroit, Michigan 48214 | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By [signature] (signature of representative or person making charge) | Margo A. Feinberg, Esq., Attorney for Charging Party (Print/type name and title or office, if any) | Tel. No. (323) 655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| Schwartz, Steinsapir, Dohrmann & Sommers LLP 6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048 Address | 10/25/17 (date) | Fax No. (323) 655-4488 |
| | | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

**Attachment A**

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees to discourage protected concerted activity by other employees.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, intimidating and harassing employees for their Section 7 activities.

By these and other acts, Tesla, Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

# Exhibit E

22-60493.5157



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 32
1301 Clay St Ste 300N
Oakland, CA 94612-5224

Agency Website: www.nlrb.gov
Telephone: (510)637-3300
Fax: (510)637-3315

Agent's Direct Dial: (510)671-3041

November 21, 2017

**By E-Mail Only**

Elizabeth Parry, Esq.
Littler Mendelson, P.C.
1255 Treat Blvd, Suite 600
Walnut Creek, CA 94597-7605
E-Mail: mparry@littler.com

John Skonberg, Esq.
Michael Lotito
Littler Mendelson, P.C.
333 Bush St., 34th Floor
San Francisco, CA 94104-2842
E-Mail: jskonberg@littler.com
E-Mail: mlotito@littler.com

Re:     **TESLA, INC.**
        **Case 32-CA-208614**

Dear Ms. Parry, Mr. Skonberg, and Mr. Lotito:

I am writing this letter to advise you that it is now necessary for me to take evidence from your client regarding the allegations raised in the investigation of the above-referenced matter. Set forth below are the allegations and issues on which your evidence is needed, a request to take affidavits, a request for documentary evidence, and the date for providing your evidence. Please also be advised that the undersigned Board agent will likely send a follow-up letter with additional allegations.

**Preservation of Evidence**:  Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case and to take all steps necessary to avoid the inadvertent loss of information in you possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, e-mails, audio or video recordings, photographs, and any data created by proprietary software tools) related to the above-captioned case.

**Allegations:**  The allegations for which I am seeking your evidence are as follows.  The United Automobile, Aerospace and Agricultural Implement Workers of America International Union (the Union or the Charging Party) alleges that Tesla, Inc. (the Employer or the Charged Party) has violated Sections 8(a)(1), (3), and (4) of the Act by engaging in the following conduct:

1.      engaging in a mass layoff of employees at Tesla, Inc.'s facilities in order to discourage employees from engaging in Section 7 protected activities and in retaliation for engaging in Board activities, including the filing of charges and/or the issuance of a Complaint in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197,

and 32-CA-200530;

2.      At the Tesla, Inc. facility located at 45500 Fremont Boulevard, Fremont, California:

      a.      In October 2017, terminating the following individuals  in retaliation for engaging in protected concerted activities and/or union activities:

            i.      Richard Ortiz (also in retaliation for having filed charges with the Board);

            ii.      Jayson Henry;

            iii.      Juan Guadalupe Reyes;

            iv.      Juan Maldonado;

            v.      Mike Williams;

            vi.      Tim Cotton;

            vii.      Brandon Hill;

            viii.      Erick Vasquez; and

            ix.      Stephen Barbosa;

      b.      On or about June 29 and 30, 2017, by Vannick Ly and Lehi Gomez, audited the work of Branton Phillips and provided verbal and written negative feedback  in retaliation for engaging in protected concerted activities and/or union activities;

      c.      On or about October 20, 2017, by Paul James, giving Jonathan Galescu a negative performance review in retaliation for engaging in protected concerted activities and/or union activities and/or Board activities (including having filed charges with the Board);

      d.      In or about August 2017, by Paul James on two occasions, creating an impression of surveillance by implying he had reviewed an employee's notebook;

      e.      In or about July or August 2017, by Tope Ogunniyi, discriminatorily applied a uniform policy prohibiting the warning of union paraphernalia on work clothing;

f.      In or about late September or early October 2017, by Ricky Gecewich, interrogated an employee about their and other employees' protected concerted activities pertaining to the posting of pictures on social media;

g.      On October 19, 2017, by Ricky Gecewich, gave a verbal and written warning to Jose Moran threatening action if the employee or other employees engaged in protected concerted activities;

h.      On October 2, 2017, by Thuy Truong, a verbal and written reprimand of Juan Maldonado for having two late-ins in retaliation for engaging in protected concerted activities and/or union activities;

3.      At the Tesla, Inc. facility located at 18280 Harlan Road, Lathrop, California:

a.      In October 2017, terminating Dezzimond Vaughn in retaliation for engaging in protected concerted activities and/or union activities;

b.      In October 2017, giving Vaughn a poor performance review for the period of January to June 2017 in retaliation for engaging in protected concerted activities and/or union activities;

4.      In connection with each of the above-referenced terminations and in October 2017, offering an employee/employees a severance agreement containing an overly broad confidentiality policy and no disparagement policy;

5.      Within the Section 10(b) period, by Ricky Hofrichter, Jeremie Hansen, and Gregory Slettvet, instructed Tesla security guards to surveil employees engaged in protected concerted activities and/or union activities;

6.      Within the Section 10(b) period, by Ricky Hofrichter, Jeremie Hansen, Gregory Slettvet, and Savannah Morgana, instructed Tesla security guards to tell Tesla employees engaged in lawful leafleting that they were not welcome at Tesla, that they needed to leave, and threatened to call the police.

**Board Affidavits:** I am requesting to take affidavits from Vannick Ly, Lehi Gomez, Paul James, Arnold Camat, Timothy Fenelon, Tope Ogunniyi, Kyle Martin, Mario Last Name Unknown, Elena Elliott, Ricky Gecewich, Albert Rios, Duwone Ashley, Thuy Truong, Juan Martinez; Sean Boone; Kyle Last Name Unknown (Human Resources), Nicole White, Chris Padilla, Dane Last Name Unknown (Human Resources), and any other individuals you believe have information relevant to the investigation of this matter.  Please be advised that the failure to present representatives who would appear to have information relevant to the investigation of this matter, for the purposes of my taking sworn statements from them, constitutes less than complete cooperation in the investigation of the charge.  Please contact me by Tuesday, November 28, 2017 to schedule these affidavits.  Please be advised that a position statement will not be accepted in lieu of Board affidavits and the undersigned Board agent will likely

recommend the issuance of investigative subpoenas to compel the testimony of the above-identified individuals should Tesla, Inc. refuse to voluntarily produce the witnesses for Board affidavits.

If any of the above-listed individuals are no longer employed by Tesla, Inc., please provide their last known contact information, including street address, telephone number(s), and e-mail address(es).

**Documents:** Please provide the following documents, along with any and all other evidence you deem to be relevant to the case:

1. The complete personnel file of the individuals listed in Allegation Paragraphs (2)(a), (2)(b), (2)(c), (2)(g), (2)(h), and (3);

2. Every document since 2016 communicated to Tesla employees (whether by physically posting, emailing the document to Employees, or posting on an internal site) on the topic of unions, unionizing, and the United Auto Workers;

3. Every document since 2016 in Tesla's custody, possession, or control on the topic of unions, unionizing, and the United Auto Workers, excluding any documents subject to the attorney-client privilege and/or attorney work product;

4. A listing of all individuals terminated by Tesla in October 2017 as part of Tesla's layoff of employees. For each individual listed, please include the following information: the name of the employee, the employee's department, the employee's immediate supervisor, the reason for the employee's termination, and any documents that relate to the employee's termination including, but not limited to, performance reviews or disciplinary actions;

5. Any document that refers to the reason for Tesla's mass layoff of its employees in October 2017;

6. If Tesla, Inc. alleges that it has done mass layoffs in the past, for each mass layoff, please provide the information requested in Document Request Nos. 4 and 5 pertaining to each of those massive layoffs;

7. For each of the individuals listed in Allegation Paragraphs (2)(a), (2)(b), (2)(c), (2)(g), (2)(h), and (3), please provide any document reviewed or relied upon by the Employer in making its decisions to discipline and/or terminate the listed employee;

8. The name of the individual or individuals who made the decision to lay off employees at one time in October 2017;

9. Any documents that reflect or memorialize communication(s) with security guards regarding the surveillance of pro-union employees, the threatening of employees by threatening to call the police, or the requesting of employees to

leave Tesla property.  This request shall include, but is not limited to, copies of all reports held in the RIMS system and copies of any audio or video surveillance taken of Tesla employees engaging in protected concerted activities and/or union activities;

10.      Any document that reflects Tesla's policies on the following topics:

        a.      Attitude/Mindset;

        b.      Confidentiality;

        c.      Social media;

        d.      Use of Workday and information contained in Workday;

        e.      Work uniforms;

        f.      Workplace fights, arguments, and the use of obscenities while at work;

        g.      Attendance, being late, and calling in.

11.      Any document the Employer believes supports an affirmative defense.

The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e. native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retails the essential functionality of the native format (i.e. in a machine-readable and searchable electronic format).  The Region does not seek any documents or information that is covered by the attorney-client privilege and/or attorney work-product doctrine.  To the extent any responsive documents are withheld on those bases, please provide a privilege log laying the appropriate foundation for the privilege asserted as the basis for withholding a document.

**Date for Submitting Evidence:**  To resolve this matter as expeditiously as possible, you must provide your evidence and position in this matter by Friday, December 1, 2017.  If you are willing to allow me to take affidavits, please contact me by Tuesday, November 28, 2017 to schedule a time to take affidavits.  Electronic filing of position statements and documentary evidence through the Agency website is preferred but not required.  To file electronically, go to **www.nlrb.gov,** select **E-File Documents,** enter the **NLRB case number,** and follow the detailed instructions.  If I have not received all your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.

It is Agency policy that full and complete cooperation on your part in this investigation includes timely providing all material witnesses under your control to the investigating Board agent so that the witnesses' statements can be reduced to affidavit form and providing all relevant documentary evidence requested by the Board agent.  The mere submission of a position letter or memorandum, or the submission of affidavits not taken by the Board agent, does not

constitute full and complete cooperation.  The Region seeks such full and complete cooperation by the close of business on Friday, December 1, 2017.  If I have not received all of your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time. Additionally, the Region will consider all of its options in order to complete its investigation, including the possibility of issuing investigative subpoenas for the witnesses and documents requested in this letter.

Please contact me at your earliest convenience by telephone, (510)671-3041, or e-mail, edris.rodriguezritchie@nlrb.gov, so that we can discuss how you would like to provide evidence and I can answer any questions you have with regard to the issues in this matter.

Very truly yours,

/s/ Edris Rodriguez Ritchie


EDRIS W.I. RODRIGUEZ RITCHIE
Field Attorney

# Exhibit F

22-60493.5164

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET<br>FORM NLRB-501<br>(2-08) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case<br>32-CA-210879 | Date Filed<br>12/01/17 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br><br>Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code)<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative | g. e-Mail<br>gaby@tesla.com |
| | | h. Number of workers employed<br>Approximately 7000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.)<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list

subsections) _____ of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce
within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

In the past sin months the above-named Employer has interfered with the protected Section 7 rights of William Locklear
and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging
in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him
concerning his support for and activities on behalf of the Charging Party.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code)<br><br>800 East Jefferson<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor
organization)

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By _____    Henry M. Willis, Attorney<br>(signature of representative or person making charge)    (Print/type name and title or office, if any)<br><br>   Schwartz, Steinsapir, Dohrmann & Sommers, LLP     12/01/17<br>Address   6300 Wilshire Boulevard, Suite 2000, Los Angeles, CA 90048    (date) | Tel. No. (323) 655-4700 |
|---|---|
| | Office, if any, Cell No. |
| | Fax No. (323) 655-4488 |
| | e-Mail<br>hmw@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist
the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in
the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is
voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# Exhibit G

22-60493.5166



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 32                                      Agency Website: www.nlrb.gov
1301 Clay St Ste 300N                          Telephone: (510)637-3300
Oakland, CA 94612-5224                         Fax: (510)637-3315

Agent's Direct Dial: (510)671-3024

December 20, 2017

SENT VIA EMAIL ONLY AT mparry@littler.com

ELIZABETH PARRY, ATTORNEY
LITTLER MENDELSON
TREAT TOWERS
1255 TREAT BLVD, SUITE 600
WALNUT CREEK, CA 94597

Re:    Tesla, Inc.
       Case 32-CA-210879

Dear Ms. Parry:

I am writing this letter to advise you that it is now necessary for me to take evidence from you regarding the allegations raised in the investigation of the above-captioned matter. As explained below, I am requesting to take affidavits on or before **January 15, 2018**, with regard to certain allegations in this case.

**Allegations:** The allegations for which I am seeking your evidence are as follows.

- On or about July 22, 2017, by and through supervisors Josh Surgeon and Shawn Gaines, violating Sections 8(a)(3) and (1) of the Act. Specifically, the Charging Party-Union alleges that Surgeon and Gaines issued a warning letter to an employee in retaliation for that employee's protected concerted and/or Union activities. The Charging Party-Union also asserts that the incidents relied upon by the Employer in the July 22, 2017, warning letter are not used by the Employer to discipline other employees.

- On or about August 24, 2017, by and through supervisor Matthew Stewart, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Stewart was engaged in surveillance of employees and/or created the impression of surveillance by standing approximately 5 feet away from two employees working at an auditing station on the Model 3 line.

- On or about August 30, 2017, by and through supervisor Tyler Ash, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Ash was engaged in surveillance of employees and/or created the impression of surveillance by attending the full orientation training meeting for employees.

- On or about August 31, 2017, by and through supervisor Tyler Ash, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Ash was engaged in surveillance of employees and/or created the impression of surveillance by standing approximately 15 feet away from three employees who work on the Model 3 line.

- On or about September 8, 2017, by and through associate manager Dave Teston, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Teston engaged in surveillance of employees and/or created the impression of surveillance by instructing an employee to work in a new area directly under a camera with a microphone.

- Since on or about September 8, 2017, and continuing to the present date, by and through agents of the Employer, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that the Employer has engaged in surveillance of employees and/or created the impression of surveillance by installing cameras with microphones in work areas.

- On or about September 14, 2017, by and through supervisors Matthew Stewart and Roderick Stevens, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Stewart and Stevens engaged in surveillance of employees and/or created the impression of surveillance by standing about 5 feet from two employees working on the Model 3 line.

- On or about September 8, 2017, by and through associate manager Dave Teston, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Teston interrogated employees about their protected concerted and/or Union activities.

- On or about October 21, 2017, by and through associate production manager Andy McIndoe, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that McIndoe interrogated employees about their protected concerted and/or Union activities.

- On or about November 2, 2017, by and through supervisors and managers of the Employer, including, but not limited to, Dave Teston and Cindie Reneau, violating Sections 8(a)(3) and (1) of the Act. Specifically, the Charging Party-Union alleges that the Employer issued a lower performance review to an employee in retaliation for that employee's protected concerted and/or Union activities. The Charging Party-Union asserts that the reasons for the lowered performance review are pretextual, and that the lowered performance review was issued because the employee had engaged in protected concerted and/or Union activities.

**Board Affidavits:** I am requesting to take affidavits from **Dave Teston**, Associate Manager, **Josh Surgeon**, (title unknown to Board Agent but known by Employer), **Shawn Gaines**, Supervisor, **Kevin Kassekert**, Vice President for Infrastructure Development, **Matthew**

**Stewart**, Supervisor, **Tyler Ash**, Supervisor, **Andy McIndoe**, Associate Production Manager, **Cindie Reneau**, Human Resources Representative, **Elliot Kent**, Supervisor, and any other individuals you believe have information relevant to the investigation of the above-captioned matter. Please be advised that the failure to present representatives who would appear to have information relevant to the investigation of this matter, for the purposes of my taking sworn statements from them, constitutes less than complete cooperation in the investigation of the charge. Please contact me by **January 9, 2018**, to schedule these affidavits.

**Documents:** Please provide the following documents, along with any and all other evidence you deem to be relevant to the case:

1. A copy of the Employer's employee handbook or other similar document issued to employees that work at the Employer's Sparks, Nevada facility.

2. The true and correct titles of the Employer's supervisors and managers listed above, and the contact information for any such supervisor and manager if they are no longer employed by the Employer.

3. A document that shows the Employer's management hierarchy currently in place at its Sparks, Nevada facility.

4. Copies of any and all documents relating to the Employer's position of "training coordinator," including any documents that show the incumbent's duties and responsibilities for that position and the work location, e.g., desk area, for incumbents in those positions.

5. Copies of any and all documents concerning the Employer's rules, policies, and/or procedures as they relate to dress codes, solicitation, distribution, orientation training, discipline and discharge, and performance reviews.

6. A copy of employee Will Locklear's personnel file.

7. Copies of the discipline issued to Will Locklear on July 22, 2017, the performance review issued to Will Locklear on November 2, 2017, and any and all documents relied upon by the Employer in issuing the discipline and writing the performance review.

8. Copies of any disciplines issued to employees within the past six months for reasons similar to those used to issue the discipline to Will Locklear on July 22, 2017.

9. Copies of the performance reviews for employees working as "training coordinators" at the Sparks, Nevada facility within the past six months.

10. Copies of any and all documents referring to cameras installed by the Employer at its Sparks, Nevada facility, including, but not limited to, any and all documents showing the reason for the installation of such cameras and the location of such cameras.

11. Copies of any and all documents relating to the United Auto Workers and the employees working for the Employer at the Sparks, Nevada facility.

12. The contact information for the following employees working at the Employer's Sparks, Nevada facility: Morissa Leach, Rebecca Mortenson, Jordan Drayer, and Wyatt Laughlin.

**Position on 10(j) Relief:** You are also requested to provide your position as to the appropriateness of Section 10(j) injunctive relief in this matter. As you may know, Section 10(j) of the Act permits the NLRB to ask a federal district court "for appropriate temporary relief or restraining order" pending the Board's resolution of an unfair labor practice charge. The district court is authorized to grant "such temporary relief or restraining order as it deems just and proper." *If* the Region determines the Charged Party has violated the Act as alleged, the Region will consider whether to seek injunctive relief in this matter. Accordingly, please provide your position, legal theory, case law, and supporting evidence regarding whether injunctive relief would be appropriate for the alleged violations in this case and whether such injunctive relief would be just and proper. I wish to emphasize that the Region has not yet made a decision as to whether the Charged Party has violated the Act as alleged. Rather, we want to provide you with adequate notice that injunctive relief will be considered if such a decision is made.

**Date for Submitting Evidence:** To resolve this matter as expeditiously as possible, you must provide your evidence and position in this matter by **January 15, 2018**. If you are willing to allow me to take affidavits, please contact me by **January 9, 2018**, to schedule a time to take affidavits. Electronic filing of position statements and documentary evidence through the Agency website is preferred but not required. To file electronically, go to **www.nlrb.gov,** select **E-File Documents,** enter the **NLRB case number,** and follow the detailed instructions. If I have not received all your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.

Please contact me at your earliest convenience by telephone, (510)671-3024, or e-mail, alexander.hajduk@nlrb.gov, so that we can discuss how you would like to provide evidence and I can answer any questions you have with regard to the issues in this matter.

Very truly yours,

/s/ Alexander M. Hajduk

ALEXANDER M. HAJDUK
Field Examiner

# Exhibit H

22-60493.5171

UNITED STATES OF AMERICA
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

    **and**

**MICHAEL SANCHEZ, an Individual**          **Case 32-CA-197020**

    **and**

**JONATHAN GALESCU,  an Individual**         **Case 32-CA-197058**

    **and**

**RICHARD ORTIZ, an Individual**           **Case 32-CA-197091**

    **and**

**INTERNATIONAL UNION, UNITED**       **Case 32-CA-197197**
**AUTOMOBILE, AEROSPACE AND**      **Case 32-CA-200530**
**AGRICULTURAL WORKERS OF**        **Case 32-CA-208614**
**AMERICA, AFL-CIO**              **Case 32-CA-210879**

## THIRD ORDER CONSOLIDATING CASES, SECOND AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** the Amended Consolidated Complaint that issued on September 1, 2017, in Cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, alleging that Tesla, Inc. (Respondent) has violated the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the Act), by engaging in unfair labor practices, is further consolidated with Cases 32-CA-208614 and 32-CA-210879, filed by the International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO (Union) against Respondent, which allege that Respondent has engaged in further unfair labor practices within the meaning of the Act.

22-60493.5172

This Third Order Consolidating Cases, Second Amended Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. and Sections 102.15 and 102.17 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)     The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)     The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)     The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)     The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)     The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)     The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)     The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(l)     The charge in Case 32-CA-208614 was filed by the Union on October 25, 2017, and a copy was served on Respondent by U.S. mail on October 25, 2017.

(m)     The first-amended charge in Case 32-CA-208614 was filed by the Union on March 12, 2017, and a copy was served on Respondent by U.S. mail on March 13, 2018.

(n)     The charge in Case 32-CA-210879 was filed on December 1, 2017, and a copy was served on Respondent by U.S. mail on December 4, 2017.

(o)     The first-amended charge in Case 32-CA-210879 was filed on December 6, 2017, and a copy was served on Respondent by U.S. mail on December 7, 2017.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, an automotive manufacturing facility in Fremont, California (the Fremont Facility), and an automotive battery facility in Sparks, Nevada (the Sparks Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Fremont Facility,

purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

(c)    During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Sparks Facility, purchased and received goods valued in excess of $50,000 directly from sources located outside the State of Nevada.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

4.

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| Elon Musk | - | Chief Executive Officer |
| Mark Lipscomb | - | Vice-President of Human Resources |
| Emma Cruz | - | Human Resources Business Partner |
| Liza Lipscomb | - | Human Resources Business Partner |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |

| | | |
|---|---|---|
| Juan Martinez | - | Manager, Manufacturing |
| Andrew McIndoe | - | Associate Production Manager |
| Tope Ogunniyi | - | Associate Production Manager |
| Victor Facha | - | Supervisor |
| Tim Fenelon | - | Supervisor |
| Homer Hunt | - | Supervisor |
| Armando Rodriguez | - | Supervisor |
| Dave Teston | - | Supervisor |
| Red Shirt Male Supervisor No. 1 | - | Supervisor |
| Arnold (Last Name Unknown) | - | Supervisor |
| John Doe | - | Production Supervisor |
| Lauren Holcomb | - | Environmental Health Safety and Sustainability Specialist |
| Ricky Gecewich | - | Employee Relations Investigator |

6.

At all material times, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| John/Jane Does 1-6 | - | Security Guards |
| Name Unknown | - | Human Resources Agent |

7.

(a)     Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement at the Fremont facility:

(i)     These obligations are straightforward.  Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started.  This includes information about…customers, suppliers, employees…. and anything similar.

(ii)     Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

(iii)     Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv)     or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal.

(v)     The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment.  Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

(b)     About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, during a one-on-one meeting with employees, prohibited employees from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 7(a).

(c)     On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 1-4,  restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)  On February 10, 2017, Respondent, by John Doe Security Guard No. 1, outside the entrance to Door 2 at the Fremont facility:

> (i)    On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

> (ii)   Security Guard No. 1 engaged in the conduct described above in paragraph 7(d)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(e)   On February 10, 2017, Respondent, by Jane Doe Security Guard No. 2, outside the entrance to Door 1 at the Fremont facility:

> (i)    told off-duty employees to leave Respondent's premises.

> (ii)   Security Guard No. 2 engaged in the conduct described above in paragraph 7(e)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(f)   On February 10, 2017, Respondent, by John Doe Security Guard No. 3, outside the entrance to Door 1 at the Fremont facility:

> (i)    told off-duty employees to leave Respondent's premises.

> (ii)   Security Guard No. 3 engaged in the conduct described above in paragraph 7(f)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(g)   On February 10, 2017, Respondent, by Jane Doe Security Guard No. 4, outside the entrance to Door 3 at the Fremont facility:

> (i)    told an off-duty employee to leave Respondent's premises.

> (ii)   Security Guard No. 4 engaged in the conduct described above in paragraph 7(g)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(h)    On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near

the back entrance to the Fremont facility by the Receiving Addition:

>    (i)    told an off-duty employee to leave the premises.
>
>    (ii)    Red Shirt Male Supervisor No. 1 engaged in the conduct
>    described above in paragraph 7(h)(i) in response to
>    employees engaging in Union leafleting and to discourage
>    these and other protected, concerted activities.

(i)    On February 10, 2017, Respondent, by a Human Resources Agent (whose name

is currently unknown to the General Counsel) at the Fremont facility, during a phone

conversation initiated by Red Shirt Male Supervisor No. 1:

>    (i)    told an off-duty employee who was on medical leave to leave
>    Respondent's premises.
>
>    (ii)    The unnamed Human Resources Agent engaged in the
>    conduct described above in paragraph 7(i)(i) in response to
>    employees engaging in Union leafleting and to discourage
>    these and other protected, concerted activities.

(j)    On March 23, 2017, Respondent, by Supervisor Armando Rodriguez,

during a pre-shift meeting at the Fremont facility:

>    (i)    told employees that they could not distribute stickers, leaflets,
>    or pamphlets that were not approved by Respondent; and
>
>    (ii)    threatened that Respondent would terminate employees if
>    they passed out stickers, leaflets, or materials that were not
>    approved by Respondent.
>
>    (iii)    Supervisor Armando Rodriguez engaged in the conduct
>    described above in paragraph 7(j)(i) and (ii) in response to
>    employees engaging in Union activities and to discourage
>    these and other protected, concerted activities.

(k)    On April 5, 2017, Respondent, by Human Resources Business Partner David

Zweig, at the Fremont facility, attempted to prohibit an employee from discussing safety

concerns with other employees and/or with the Union.

(l)     Since about April 25, 2017, Respondent has maintained the following rule at the Fremont facility:

> Team Wear:  It is mandatory that all Production Associates and Leads wear the assigned team wear.
>
> - On occasion, team wear may be substituted with all black clothing if approved by supervisor.
> - Alternative clothing must be mutilation free, work appropriate and pose no safety risks (no zippers, yoga pants, hoodies with hood up, etc.).

(m)     On April 28, 2017, Respondent, by Human Resources Business Partner Seth Woody, at the Fremont facility, attempted to prohibit employees from discussing safety concerns with other employees and/or with the Union.

(n)     On May 24, 2017,  Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(o)     On May 24, 2017, by Jane Doe Security Guard No. 5, at the security counter near the Door 4 entrance at the Fremont facility, told an employee that the employee could not hand out flyers on Respondent's premises.

(p)     On May 24, 2017, by John Doe Security Guard No. 6, outside the Door 4 entrance at the Fremont facility:

> (i)     on two occasions, instructed an off-duty employee to leave the premises.
>
> (ii)     Security Guard No. 6 engaged in the conduct described above in paragraph 7(p)(i) in response to employees engaged in Union leafleting and to discourage these and other protected, concerted activities.

(q)     On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lipscomb, at the Fremont Facility during separate meetings with individual employees, in the presence of Environmental Health Safety and Sustainability Specialist Lauren Holcomb, interrogated employees about their Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

(r)     In the Spring of 2017, Respondent, by Supervisor Arnold (Last Name Unknown), at the Fremont facility, impliedly threatened an employee with unspecific reprisals for wearing a hat with Union insignia.

(s)     In August 2017, Respondent, by Supervisor Homer Hunt, at the Fremont facility, informed its employees that it would be futile for them to select the Union as their bargaining representative.

(t)     Respondent, at the Fremont facility in August or September 2017:

    (i)     by Production Supervisor (whose name is unknown) told employees they could not wear Union shirts at work and threatened employees they would be sent home for wearing shirts with Union insignia;

    (ii)     by Associate Production Manager Tope Ogunniyi, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(u)     About August 10, 2017, Respondent, at the Fremont Facility:

    (i)     by Supervisor Tim Fenelon, told employees to remove their shirts with Union insignia; and

    (ii)     by Associate Production Manager Tope Ogunniyi attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(v)    About August 14, 2017, by Associate Production Manager Tope Ogunniyi, at Respondent's Fremont facility, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by telling employees they are prohibited from wearing shirts with Union insignia.

(w)    On September 8, 2017, Respondent, by Supervisor Dave Teston, at Respondent's Sparks Facility in the production administrative room, impliedly threatened an employee with unspecified reprisals for wearing a hat with Union insignia.

(x)    On October 21, 2017, Respondent, by Associate Production Manager Andre McIndoe, at the Sparks Facility, told an employee that the employee should not speak with other employees about workplace concerns.

8.

(a)    On September 14, 2017, Respondent's employees Jose Moran and Richard Ortiz engaged in concerted activities with each other for the purposes of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz, who posted comments regarding wages and working conditions along with the screenshots of the employee photographs and job titles on "Fremont Tesla Employees for UAW Representation" a private employee-only Facebook page.

(b)    Respondent, by Employee Relations Investigator Ricky Gecewich, at the Fremont facility:

   (i)    About September 21, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

(ii)     About October 19, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

(iii)    About October 19, 2017, in an email, promulgated and/or disparately enforced a rule prohibiting employees from accessing the Workday System for non-business purposes without proper business justification.

(c)     On October 18, 2017, Respondent discharged Richard Ortiz.

(d)     On October 19, 2018, Respondent issued a disciplinary warning to Jose Moran.

(e)     Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c) and 8(d), because Jose Moran and Richard Ortiz engaged in the conduct described above in paragraph 8(a) and to discourage its employees from engaging in these and/or other protected concerted activities.

(f)     Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c), and 8(d), because Jose Moran and Richard Ortiz supported and assisted the Union and/or because they engaged in concerted activities, and to discourage employees from engaging in these activities.

9.

By the conduct described above in paragraphs 7 and 8(b) through 8(e), Respondent has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.

10.

By the conduct described above in paragraphs 8(b)(iii), 8(c), 8(d), and 8(f), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of

employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

11.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for the unfair labor practices described above in paragraphs 7 and 8(b) through 8(f), the General Counsel seeks an order requiring Respondent to Respondent to hold meetings with Respondent's production employees at its Fremont and Sparks facilities, scheduled to ensure the widest possible attendance, at which the Board's Notice is to be read to employees by a responsible management official of Respondent, or at Respondent's option, by a Board agent in that official's presence. Respondent shall be required to allow a representative of the Union to be present during such reading or readings of the Notice.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Second Amended Consolidated Complaint. The answer must be **received by this office on or before April 13, 2018, or postmarked on or before April 12, 2018**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case

Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Second Amended Consolidated Complaint are true.

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street,

Oakland, California 94612, at a conference room to be determined, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint.   The procedures to be followed at the hearing are described in the attached Form NLRB-4668.   The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 30th day of March 2018.

/s/ Valerie Hardy-Mahoney

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

# Exhibit I

22-60493.5187

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual                        Case 32-CA-197020

    and

JONATHAN GALESCU,  an Individual                 Case 32-CA-197058

    and

RICHARD ORTIZ, an Individual                         Case 32-CA-197091

    and

INTERNATIONAL UNION, UNITED AUTOMOBILE,       Case 32-CA-197197
AEROSPACE AND AGRICULTURAL WORKERS OF      Case 32-CA-200530
AMERICA, AFL-CIO                                     Case 32-CA-208614
                                                  Case 32-CA-210879

## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.17 of the Rules and Regulations of the National Labor Relations Board (the Board), the Second Amended Consolidated Complaint and Notice of Hearing (Complaint) issued on March 30, 2018, is amended as follows:

**Amend paragraph 5** of the Complaint to include two more individuals as a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of Respondent within the meaning of Section 2(13) of the Act. The two individuals to include are:

         Gaby Toledano       -       Respondent's Chief People Officer

         Josh Hedges         -       Director of HR for Production

22-60493.5188

**Amend paragraph 7** to include the following new allegations as 7(y) of the Complaint:

(y)    On about June 7, 2017, Respondent, in a conference room at its Fremont Facility, during a meeting held by CEO Elon Musk and Chief People Officer Gaby Toledano:

> (i) by Elon Musk, solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity.

> (ii) by Elon Musk, informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances; and

> (iii) by Gaby Toledano, restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's Facility wanted a union and asking them why employees would want to pay union dues.

**Amend paragraph 8(d)** to correct the year Jose Moran was issued a disciplinary warning. The existing paragraph 8(d) should be replaced with the following paragraph:

(d)    On or about October 19, 2017, Respondent issued a disciplinary warning to Jose Moran.

## ANSWER REQUIREMENT

RESPONDENT IS FURTHER NOTIFIED that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, Respondent must file an answer to the above Amendment to Second Amended Consolidated Complaint. The answer must be **received by this office on or before June 18, 2018, or postmarked on or before June 17, 2018**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

2

22-60493.5189

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on File Case Documents, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amendment to Second Amended Consolidated Complaint are true.

## **NOTICE OF HEARING LOCATION**

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Oakland, California 94612, at Conference Room H on the 5th Floor, and on consecutive days thereafter until

22-60493.5190

concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 4th day of June 2018.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

4

22-60493.5191

# Exhibit J

22-60493.5192

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-200530 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
|---|---|---|
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Amnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>amnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| I. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>8000 E JEFFERSON AVE, DETROIT, MI 48214-2699 | 4b. Tel. No.<br>(313)926-5000 |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By: *Margo G. Feinberg* (signature of representative or person making charge) | Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>Print Name and Title | Tel. No. |
|---|---|---|
| | | Office, if any, Cell No.<br>(323) 655-4700 |
| Address: 8000 E JEFFERSON AVE,<br>DETROIT, MI 48214-2699 | Date: 7/28/17 | Fax No.<br>(323) 655-4488 |
| | | e-Mail<br>margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5193

# Exhibit K

22-60493.5194

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-208614 | 3/13/2018 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| d. Address (street, city, state ZIP code) 45500 Fremont Blvd, Fremont, CA 94538-6326 | e. Employer Representative Gaby Toledano Chief People Officer | f. Fax No. |
| | | g. e-Mail gaby@tesla.com |
| | | h. Dispute Location (City and State) Fremont, CA |
| I. Type of Establishment (factory, nursing home, hotel) Factory | j. Principal Product or Service Automotive Manufacturing | k. Number of workers at dispute location 10000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO | | |
|---|---|---|
| 4a. Address (street and number, city, state, and ZIP code) 8000 East Jefferson Avenue, Detroit, MI 48214 | | 4b. Tel. No. 313-926-5000 |
| | | 4c. Cell No. |
| | | 4d. Fax No. |
| | | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. 323-655-4700 |
|---|---|---|
| By: *Margo A. Feinberg* (signature of representative or person making charge) | Margo A. Feinberg, Esq. Attorney for Charging Party Print Name and Title | Office, if any, Cell No. |
| | | Fax No. 323-655-4488 |
| Address: 8000 East Jefferson Avenue, Detroit, MI 48214 | Date: | e-Mail margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# Exhibit L

22-60493.5196

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|---|---|
| 32-CA-210879 | 12/06/17 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative | g. e-Mail<br>gaby@tesla.com |
| | | h. Number of workers employed<br>Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

In the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)*<br>800 East Jefferson<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _[signature]_
*(signature of representative or person making charge)*

Henry M. Willis, Attorney
*(Print/type name and title or office, if any)*

12/06/17
*(date)*

Address

| Tel. No. (323) 655-4700 |
|---|
| Office, if any, Cell No. |
| Fax No. (323) 655-4488 |
| e-Mail<br>hmw@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

<u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On June 11, 2018, I served a true copy of the following document(s) described as **RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224
T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021
E-mail: noah.garber@nlrb.gov

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
T: (323) 655-4700

Administrative Law Judge Amita Tracy
Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

SMRH:486636285.1
-1-

1    I declare under penalty of perjury under the laws of the United States of America
2    that the foregoing is true and correct and that I am employed in the office of a member of
     the bar of this Court at whose direction the service was made.

3        Executed on June 11, 2018, at San Francisco, California.

4

5                                           Sarah Smith

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:486636285.1                              -2-                    CERTIFICATE OF SERVICE
                                                                              CASE NO. 32-CA-197020 et al.

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

**RESPONDENT'S OPPOSITION TO THE GENERAL COUNSEL'S REQUEST FOR SPECIAL PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS**

A.    **Introduction**[1]

On June 6, 2018, Administrative Law Judge Amita Tracy ("ALJ" or "Judge Tracy")

denied the General Counsel's Motion to Take Video Testimony of Will Locklear ("Motion",

attached hereto as **Exhibit A**) during the hearing on the above-captioned cases (the "Order",

_____

[1] The General Counsel did not attempt to call William Locklear to testify during the hearing conducted June 11, 2018 through June 14, 2018.  Because the General Counsel has not rested and the hearing will not resume until the week of September 24, 2018, the Board has the luxury of time to consider and address the procedural issue raised in the General Counsel's Appeal.

attached hereto as **Exhibit B**).  Observing that Locklear is a "critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including [her] observation of his demeanor", Judge Tracy reasoned that any claimed "significant financial burden" to him and availability of "adequate video equipment" were insufficient to "override the need for in-person testimony of an alleged discriminatee."  She also noted that the General Counsel's Motion did not include all of the information required by Section 102.35(c)(1) of the Board's Rules.  Because Judge Tracy's determination that the General Counsel failed to show "good cause based on compelling circumstances, and under appropriate safeguards" to permit Locklear to testify via videoconference as required by Board Rule 102.35(c)(1) is well supported by the record evidence, and the General Counsel has not established that Judge Tracy abused her discretion, the Board should deny the instant Appeal.

Under Board law, in-person testimony at trial is preferred.  *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999).  However, under the Board's Rules, upon a showing of "good cause based on compelling circumstances" and "appropriate safeguards," an ALJ may permit video testimony from a different location.  Board's Rules § 102.35(c); *see also* Fed.R.Civ.P. 43(a).  Although the Board's Rules do not further define the standard, FRCP 43 has a nearly identical standard.  "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness."  Advisory Committee Notes to Fed.R.Civ.P. 43(a) (1996 Amendment).  Mere inconvenience is insufficient to demonstrate "good cause."  *Id*.  ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial").

## B.    The Cost of Locklear's Travel from New York to California Is Not a "Compelling Circumstance"

In its Request For Special Permission to Appeal the Administrative Law Judge's Amended Order Denying General Counsel's Motion to Permit Videoconference Testimony of a Critical Third-Party Witness ("Appeal", attached hereto as **Exhibit C**), the General Counsel asserts that the use of video testimony would "alleviate the economic burden to Mr. Locklear from flying 3,000 miles cross-country, paying for his lodging, transport to/from the airport, and meals."  As noted in Respondent's opposition to the Motion, attached hereto as **Exhibit D**, courts have rejected the cost of travel as insufficient to warrant "compelling circumstances," particularly where the cost is not unforeseen.  *See Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at *2-3 (E.D. Cal. Aug. 24, 2012) (plaintiffs' expenses to travel out of the country to prosecute their own case are not unforeseen and do not rise to the level of good cause); *see also Niemeyer v. Ford Motor Co.*, 2012 WL 5199145 (D. Nev. Oct. 18, 2012).  The First Amended Charge filed December 6, 2017 in Case 32-CA-210879, attached hereto as **Exhibit E**, alleges that Tesla "interfered with the protected Section 7 rights of William Locklear" by "intimidating him, creating the impression of surveillance of him", "subjecting him to heightened supervisory scrutiny," "interrogating him concerning his support for and activities on behalf of the [Union]", and "disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities."  Locklear moved to New York in or around January 2018, nearly 3 months before the General Counsel issued the Second Amended Consolidated Complaint on March 31, 2018.  Suffice it to say that the likely cost of Locklear's travel from New York to California to testify in these proceedings was by no means unforeseen to the Region when it noticed the hearing.  It is accordingly not a "compelling circumstance" that warrants the use of video testimony.

Regardless, it remains unclear exactly why Locklear will be forced to pay his own travel expenses unless the General Counsel's Appeal is granted.  Surely a refusal by the General Counsel to pay its witnesses' fees and travel expenses as required by Board Rule 102.32 and 28 U.S.C. 1825 is not a cognizable "compelling circumstance."  Moreover, if "budgetary constraints" did not permit the General Counsel to subpoena Locklear to testify in California notwithstanding its belief that it is "inappropriate" to ask "a former factory worker, to bear the expense of travel" insofar as he is "a third-party witness [appearing] on behalf of another Charging Party", it offers no explanation for why that Charging Party—the United Automobiles Workers (UAW)—has not assumed responsibility for Locklear's travel expenses by subpoenaing his testimony.  Regardless, neither the Region's noncompliance with Board Rules and federal law nor the UAW's reluctance to reimburse the cross-country travel expenses incurred by an employee forced to testify on its behalf constitute "compelling circumstances" that warrant the use of video testimony.  To hold otherwise would sanction its use by out-of-state witnesses in all proceedings, a result that runs contrary to the Board's longstanding preference for in-person testimony.  *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999).

### C.    Locklear's Status as a "Critical Third-Party Witness" Underscores the Need for His In-Person Testimony

While the Board has authorized the use of video conference testimony where an out-of-state witness is a third-party or peripheral witnesses with a limited scope of testimony, *see, e.g., Oncur Electric Delivery Co.*, 364 NLRB No. 58 (2016) (affirming the judge's ruling allowing respondent's former employee to testify via videoconference regarding certain background facts), that is not the case here.  As the General Counsel notes, "Locklear is the _only_ witness that can establish the unfair labor practices alleged in the Complaint—which occurred in two separate one-on-one conversations with Respondent's supervisors."  (Appeal, Ex. C, p. 5).  Judge Tracy

accordingly required his in-person testimony insofar as he is a "critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including [her] observation of his demeanor."  (Order, Ex. B, p. 2).

Judge Tracy's ruling is entirely consistent with Board law and the principles that support its strong preference for live oral testimony.  S*ee Westside Painting, Inc.*, 328 NLRB 796, 797 (1999) ("The opportunity to observe the demeanor of a witness is particularly important in Board proceedings because…a judge is often presented with situations where there is conflicting testimony and credibility determinations are central to the resolution of the case."); *see also Kapstone Paper and Packing Corp.*, 366 NLRB No. 63 (2018) (taking into account the witness's demeanor was "composed and steady" thus more credible); *Space Needle, LLC*, 362 NLRB No. 11 (2015) (observed that the witness was carefully watching counsel's reaction to her answers, and therefore not credible).   She accordingly acted well within her discretion when she refused to allow an alleged discriminatee to testify via videoconference so that she could observe his demeanor in person to make a credibility determination that will be critically important to these proceedings.  *Cf. Oncur Electric Delivery Co.*, supra, JD slip. op. at 8 (affirming judge's ruling that permitted videoconference testimony by witness that was "not alleged as a discriminatee and was not a direct witness to any of the events underlying the complaint"); *cf. EF International Language Schools, Inc.*, 363 NLRB No. 20, slip op. at 1 n. 1 (2015) (affirming judge's ruling that permitted videoconference testimony by non-discriminatee witness).

Moreover, the General Counsel's plainly untrue argument that, unless its Appeal is granted, Judge Tracy's order will "effectively require[] the General Counsel to forgo pursuit of paragraphs 7(w) and (x) of the Complaint" is entirely unavailing.  Judge Tracy graciously suggested that she might even travel to New York to receive Locklear's in-person testimony if

22-60493.5204

the issue is not resolved before the hearing re-opens in September.[2]  The parties have nearly 3 months to make arrangements for Locklear to either testify in California or for the parties and Judge Tracy to travel to New York to receive his testimony there.  Yet notwithstanding the myriad options available to the General Counsel to facilitate Locklear's in-person testimony in these proceedings, he has instead elected to file this Appeal and accuse Judge Tracy of imposing a "manifest injustice" by ordering him to prosecute his case in the exact same manner that Respondent will be forced to defend it.  He has it backwards.  By attempting to retain the benefit of in-person examination of Respondent's key witnesses while depriving Respondent the same opportunity with respect to his key witnesses, it is the General Counsel—not Judge Tracy—that seeks a manifestly unjust result.

### D.    The General Counsel Still Fails to Satisfy the Requirements of Sections 102.35(c)(1)-(2)

As noted by Judge Tracy, the General Counsel's Motion failed to set forth Locklear's address, the matter in which Locklear intends to testify, and the electronic address of the submission as required by Board Rule 102.35(c)(1).  Though the Appeal finally specifies the matter in which Locklear intends to testify, it incredibly still fails to set forth his address or the electronic address of the transmission.  It additionally fails to comply with the Board Rule 102.35(c)(2), which sets forth the requirements for appropriate safeguards such that the Administrative Law Judge may assess the witness's credibility and the parties have a meaningful opportunity to examine and cross-examine the witness.  The General Counsel still makes no assurance that Respondent or its representative has the opportunity to be present at the location,

---

[2] Given the clear prejudice Respondent will suffer should it be forced to provide its exhibits in advance to the General Counsel and cross-examine Locklear while he testifies via videoconference, Respondent is also willing to travel to New York to ensure that it has the opportunity to cross-examine Locklear in person.

and does not provide for any technology assistance. Thus, just as Judge Tracy properly denied the General Counsel's Motion for, in part, failing to comply with the Board's Rules, the Board should deny the General Counsel's Appeal for the same reason.

### E.   Conclusion

The General Counsel's Appeal seeks to reverse Judge Tracy's Order based on false dilemmas that are entirely of its own making. It consolidated allegations made by a discriminatee that it knew had since moved to Buffalo, New York into a complaint that it set for hearing in Oakland, California and now argues that that discriminatee's travel costs are a "compelling circumstance" warranting the use of videoconference testimony. It argues that this "critical" witness is "vital" to its case, yet accuses *Judge Tracy* of imposing a "manifest injustice" for declining to assess that critically-important witness' credibility without the ability to observe his demeanor while testifying. Judge Tracy pointed out that its moving papers did not include the information required by Board Rules 102.35(c)(1)-(2), and its Appeal still fails to satisfy those requirements. Notwithstanding the foregoing, the fact remains that the trier of fact in this case has ruled that she will need to observe the demeanor of a witness that the General Counsel describes as "critically important" in order to assess his credibility. To reverse this ruling now and force that trier of fact to assess his credibility based on anything but his in-person testimony would ultimately impugn the integrity of her factual findings. For these reasons, the Board should deny the General Counsel's Appeal.

Dated:  June 15, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

# EXHIBIT A

22-60493.5208

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

 and

MICHAEL SANCHEZ, an Individual

 and

JONATHAN GALESCU, an Individual

 and

RICHARD ORTIZ, an Individual

 and

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

Cases 32-CA-197020
   32-CA-197058
   32-CA-197091
   32-CA-197197
   32-CA-200530
   32-CA-208614
   32-CA-210879

## MOTION TO TAKE VIDEO TESTIMONY OF WILL LOCKLEAR

**I. Introduction**

  Counsel for the General Counsel (the General Counsel) files this Motion to Take Video

Testimony of Will Locklear at the upcoming hearing in this matter scheduled to begin on June

11, 2018. Mr. Locklear lives and works in Buffalo, New York whereas the hearing in this matter

is scheduled to take place at the Region 32 Field Office of the National Labor Relations Board

(the Board) located in Oakland, California.

**II. Legal Standard and Discussion**

  Federal Rule of Civil Procedure 43 provides that "for good cause in compelling

circumstances and with appropriate safeguards, the court may permit testimony in open court by

1

EXH. _____ 1

22-60493.5209

contemporaneous transmission from a different location." FRCP 43. Moreover, the Board allows the use of video testimony in trials. See *M.V.M., Inc.*, 352 NLRB 1165, 1165 fn. 1 (2008) (Administrative Law Judge allowed witness testimony by video.); see also NLRB Bench Book § 11-620 (Aug. 2010) (noting "[v]ideo testimony has been used in Board trials without objection.").

Good cause exists for permitting Mr. Locklear to testify via video. Specifically, economical and logistical reasons underlie the need to take Mr. Locklear's testimony by video. First, Mr. Locklear's testimony is essential to the General Counsel's case because he has key testimony regarding violations of the National Labor Relations Act (the Act) as alleged in the Consolidated Complaint. Currently, Mr. Locklear resides in the Buffalo, New York. The cost of a round trip plane ticket to fly across country from Buffalo to Oakland to testify in this matter would place a significant financial burden on Mr. Locklear. Mr. Locklear is, however, able to appear at the Board's Region 3 Field Office located in Buffalo, which is a cost-effective alternative to appearing in Oakland. By appearing in the Region 3 Field Office, Mr. Locklear will be able to participate in the hearing and provide his essential testimony when he otherwise would not have been able to do so.

Additionally, adequate video equipment is available to transmit Mr. Locklear's testimony at the hearing in Region 32. Each Board office contains video conference capabilities that offer clear, audible, video testimony, including a hi-tech camera that allows the user to pan, tilt, and zoom-in on any item or person in the hearing room. The system further includes a movable microphone and remote control that permits the user to adjust the volume settings to ensure audible clarity.

2

22-60493.5210

Finally, after discussions with the parties, the Union does not oppose the use of video conference testimony for Mr. Locklear. Similarly, Respondent does not oppose the use of video conference testimony for Mr. Locklear, but reserves the right to make a similar motion should it desire to use video conference testimony.

In summary, Mr. Locklear is the only witness for Counsel for the General Counsel expected to testify via video conference and the General Counsel does not anticipate an extensive number of exhibits to be used during his testimony. Exhibits can be e-mailed to the Region 3 Office Manager and/or Assistant Office Manager who are available to assist during Mr. Locklear's testimony and ensure the video equipment runs smoothly during Mr. Locklear's testimony. Therefore, the General Counsel petitions the Administrative Law Judge to allow Mr. Locklear to provide his testimony via video conferencing equipment at the Board office in Oakland.

**DATED AT** Oakland, California this 29th day of May 2018.

/s/ Noah Garber
Noah Garber
Field Attorney
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

22-60493.5211

# EXHIBIT B

22-60493.5212

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

| | |
|---|---|
| and | Cases  32-CA-197020 |
| | 32-CA-197058 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-197091 |
| | 32-CA-197197 |
| And | 32-CA-200530 |
| | 32-CA-208614 |
| **JONATHAN GALESCU,  an Individual** | 32-CA-210879 |
| and | |
| **RICHARD ORTIZ, an Individual** | |
| and | |

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO

## ORDER GRANTING RESPONDENT'S MOTION FOR RECONSIDERATION AND AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY

On May 29, 2018, counsel for the General Counsel filed a Motion to take Video Testimony to permit the testimony of its witness, Will Locklear (Locklear), who is currently residing in Buffalo, New York, to testify via video teleconference during the trial in this matter. The General Counsel's Motion indicated that Respondent and the Charging Parties did not oppose the Motion.  I issued an Order to Show Cause that same day with responses due by noon on May 30, 2018.  No party filed responses.  Accordingly, on May 31, 2018, I granted counsel for the General Counsel's Motion, provided that safeguards as indicated by Section 102.35(c) of the Board's Rules and Regulations, adopted effective September 29, 2017, are in place.  The timing and arrangements for the videoconference testimony were to be discussed on the record when the hearing opens on June 11, 2018, or soon thereafter.

However, on June 4, 2018, Respondent filed an Opposition to the General Counsel's Motion for Video Testimony.  Thereafter, on June 5, 2018, Respondent filed a Motion for Reconsideration of my May 31, 2018 Order Granting the General Counsel's Motion for Video Testimony.  In Respondent's Motion for Reconsideration, Respondent explained that it had not received my May 29, 2018 Order to Show Cause and my May 31, 2018 Order Granting the General Counsel's Motion for Video Testimony due to an incorrect fax number.

EXH. ____5____

The Division of Judges relies upon parties' notice of appearance sheets for fax service of documents. In these instances, the Division of Judges incorrectly faxed the documents to (415)434-5947, rather than (415)434-3967 in accordance with Respondent's April 10, 2018, notice of appearance sheet. However, even Respondent's notice of appearance sheet appears to be incorrect, as Respondent's Motion for Reconsideration indicates that the correct fax number is (415)434-3947. In addition, the General Counsel indicated in its Motion for Video Testimony that Respondent did not oppose the General Counsel's Motion. In light of these service errors along with changed circumstances as far as Respondent's position, as conveyed by the General Counsel, I **GRANT** Respondent's Motion for Reconsideration. **Please note that all parties are directed to ensure that their notices of appearance in this matter should be updated and corrected as appropriate to ensure accurate and timely service of documents as well as email addresses for electronic correspondences if needed.**

After reviewing the General Counsel's Motion for Video Testimony of Locklear and Respondent's Opposition, I **DENY** the General Counsel's Motion.

Locklear appears to be a critical witness, a discriminatee, whose in-person testimony is necessary for a credibility determination, including my observation of his demeanor. The Charging Party filed a charge on December 1, 2017 and a first amended charge on December 6, 2017, specifically concerning Locklear. The charge and first amended charge allege a variety of Section 8(a)(1) and (3) violations by Respondent against Locklear. After the General Counsel's investigation, at least some of these allegations resulted in this current complaint set for hearing beginning on June 11, 2018, in Oakland, California. The General Counsel's only reasons for requesting video testimony of Locklear is that Locklear lives and works in Buffalo, New York, and the costs of travel would place a "significant financial burden" on Locklear, without providing any proof. Moreover, the General Counsel argues that "adequate video equipment is available" in the Buffalo Regional Office for Locklear's testimony. I do not find these reasons by the General Counsel so compelling as to override the need for in-person testimony of an alleged discriminatee. The General Counsel has not provided in its Motion all the requirements of Section 102.35(c)((1) including Locklear's address, the matter in which Locklear intends to testify, and the electronic address of the transmission. In support of its Motion, the General Counsel also cites *M.V.M., Inc.*, 352 NLRB 1165, fn. 1 (2008), where the administrative law judge permitted uncontested video testimony of one witness. However, in *M.V.M.*, the administrative law judge only permitted video testimony of the non-discriminatee witness after the court reporter lost the original *in-person* testimony of this witness. Thus, *M.V.M.* is distinguishable from this instance.

Based upon the above, I **DENY** the General Counsel's Motion for Video Testimony of Locklear.

Date: June 6, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

2

22-60493.5214

*Served by facsimile upon the following:*

Edris W.I. Rodriguez Ritchie, Esq.
Noah Garber, Esq., Fax: (510) 637-3315 (NLRB)

Mark S. Ross, Esq., Fax:(415)434-3947 (Respondent)

Margo A. Feinberg, Esq., Esq., Fax: (323)655-4488 (Charging Party)

22-60493.5215

# EXHIBIT C

22-60493.5216

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

**TESLA, INC.**

  **and**

**MICHAEL SANCHEZ, an Individual**

  **and**

**JONATHAN GALESCU,  an Individual**

  **and**

**RICHARD ORTIZ, an Individual**

  **and**

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO**

**Cases 32-CA-197020**
**32-CA-197058**
**32-CA-197091**
**32-CA-197197**
**32-CA-200530**
**32-CA-208614**
**32-CA-210879**

**COUNSEL FOR THE GENERAL COUNSEL'S REQUEST FOR SPECIAL
PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED
ORDER DENYING GENERAL COUNSEL'S MOTION TO PERMIT
VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS**

  Pursuant to Section 102.26 of the National Labor Relation Board's (the Board) Rules and

Regulations, Counsel for the General Counsel (General Counsel) requests special permission to

appeal Administrative Law Judge Amita Tracy's (the Judge) Amended Order Denying General

Counsel's motion to permit a critical third-party witness named William Locklear to testify via

videoconference. He currently resides in Buffalo, New York and the hearing in this matter is

taking place in Oakland, California.

1

22-60493.5217

For the reasons set forth more fully below, the Board· should accept this appeal and reverse the Judge's ruling, which is contrary to precedent and prejudices the General Counsel's case, causing manifest injustice.

## I.     Procedural Background

On May 29, 2018,[1] General Counsel filed a Motion to Take Video Testimony of Will Locklear (the Motion)[2] to permit the testimony of witness Will Locklear (Mr. Locklear), who currently lives in Buffalo, New York.  If the Motion were granted, Mr. Locklear would testify from the Board's Region 3 office located in Buffalo, where the Board has access to secure video servers that cannot be tampered with. His testimony would be instantly transmitted to the hearing room in· Region 32, located in Oakland, California. On May 25, Counsel for Tesla, Inc. (Respondent) Keahn Morris represented to the General Counsel that Respondent did not have a problem with the General Counsel's request for video testimony and indicated that Respondent would also likely want videoconference testimony of their witnesses located in Sparks, Nevada. Based on this conversation, General Counsel, in its Motion, represented that Respondent did not oppose the Motion.

Later on May 29, the Judge issued an Order to Show Cause[3] with a response due the following day; however, due to inadvertent clerical errors by both Respondent and the San Francisco Division of Judges, Respondent was not served with the Judge's Order to Show Cause for why the Motion should not be granted.  As no response was filed, on May 31, the Judge granted the Motion to permit videoconference testimony of Mr. Locklear.[4]  On June 4, in contravention of its previous discussions with General Counsel, and for reasons never explained

---

[1] All dates herein occurred in 2018.
[2] A copy of the General Counsel's Motion is attached as Exhibit 1.
[3] A copy of the Judge's Order to Show Cause is attached as Exhibit 2.
[4] A copy of the Judge's Order is attached as Exhibit 3.

2

22-60493.5218

to General Counsel, Respondent filed an Opposition to the Motion.  On June 5, Respondent filed a Motion for Reconsideration of the Judge's May 31 Order Granting the Motion, in which Respondent explained that it was not served with the Judge's May 29 Order to Show Cause.[5] On June 6, the Judge issued an Order Granting Respondent's Motion for Reconsideration and Amended Order Denying the General Counsel's Motion.[6]

Mr. Locklear is the only witness who can testify in support of the allegations listed in paragraphs 7(w) and 7(x) of the Second Amended Consolidated Complaint because they occurred during one-on-one conversations between him and a supervisor. He is also not a Charging Party and therefore a third-party witness. Because of the Agency's budgetary constraints, General Counsel is not permitted to subpoena Mr. Locklear to testify in Oakland, California. He is currently under subpoena to appear in Region 3, located in Buffalo, New York. Therefore, the Judge's Order denying his ability to testify by videoconference effectively precludes the General Counsel from presenting any evidence in support of these Complaint allegations.

## II.   It is Appropriate to Reverse the Judge's Order and Permit Videoconference Testimony of Mr. Locklear under Current Case Law

Section 102.35(c) of the Board's Rules and Regulations permits the use of videoconference testimony at unfair labor practice hearings.  The request for videoconference testimony must state where the witness resides, the compelling circumstances that require the use of videoconference testimony, the location where the video testimony will be held, the matter about which the witness will testify, the safeguards in place to ensure that the video will be transmitted, and the Judge must be able to clearly hear and see the witness as well as a panoramic view of the room.  Id.  Moreover, Federal Rule of Civil Procedure (FRCP) 43(a)

---

[5] A copy of Respondent's Motion for Reconsideration is attached as <u>Exhibit 4</u>.
[6] A copy of the Judge's Order is attached as <u>Exhibit 5</u>.

22-60493.5219

allows "[f]or good cause and compelling circumstances" that testimony be taken via videoconference. Further yet, the Board's Bench Book allows for videoconference testimony. See § 11-620 (Aug. 2010) ( "[v]ideo testimony has been used in Board trials without objection.").

Courts have recognized that videoconference testimony is permissible because a witness testifying by videoconference is observed directly, with virtually instantaneous transmission, and videoconference testimony can sufficiently enable cross-examination and credibility determinations. *Warner v. Cate*, 2015 WL 4645019, at \*1 (E.D. Cal. Aug. 4, 2015); see also *Parkhurst v. Belt,* 569 F.3d 995, 1003 (8th Cir.2009). This is because there is no material difference between live testimony and testimony via video transmission. *FTC v. Swedish Match North America, Inc*., 197 F.R.D. 1, 2 (D.D.C. 2000). While FRCP 43(a) calls for good cause and shares the Board's requirement for compelling circumstances to allow videoconference testimony, courts have interpreted FRCP 43(a) to allow videoconference testimony because it will save the government the cost of transporting witnesses. See, e.g., *Hankins v. Wolf*, 2016 WL 3087677, at \*3 (W.D. Pa. June 2, 2016) (Court granted videoconference testimony since it would "save the Commonwealth substantial expense.").

In *EF International Language School, Inc. v. NLRB*, 673 F. App'x 1, 3–4 (D.C. Cir. 2017), the District of Columbia Circuit affirmed the ALJ's use, and the Board's adoption of, videoconference testimony. There, the employer challenged the use of videoconference testimony arguing that it contradicted Board rules and violated the employer's due process rights by preventing the employer from examining the witness in person. Id. The Circuit Court noted that the Board properly determined that Sec. 102.30 of the Board's Rules and Regulations did not preclude the taking of testimony by videoconference and these purported concerns related to

4

due process were obviated by the videoconferencing technology that enabled observation of the witness. Id. at 4.

Similarly, in *MPE, Inc.*, 2015 WL 400660, at *1 (NLRB Jan. 29, 2015),[7] the Board granted the General Counsel's request for special permission to appeal the administrative law judges denial of the use of videoconference testimony and remanded the matter to the administrative law judge for a hearing to include videoconference testimony. There the Board noted that the administrative law judge erred in denying the motion to allow video testimony where the witness at issue was a key witness and unavailable to testify in person. Id.

Here, Mr. Locklear is a key witness that is vital to the General Counsel's case. Specifically, Mr. Locklear will testify about the unfair labor practices alleged in Complaint paragraphs 7(w) and 7(x). In this regard, Mr. Locklear is the *only* employee witness that can establish the unfair labor practices alleged in the Complaint—which occurred in two separate one-on-one conversations with Respondent's supervisors. Moreover, Counsel for the General Counsel notes that the use of video testimony will alleviate the economic burden to Mr. Locklear from flying 3,000 miles cross-country, paying for his lodging, transport to/from the airport, and meals. Further yet, Mr. Locklear is a third-party witness on behalf of another Charging Party. Nor is it appropriate to ask Mr. Locklear, a former factory worker, to bear the expense of travel. In this regard, requiring Mr. Locklear to travel cross country would require him to miss days of work and potentially lose vacation time and/or income.

Since Mr. Locklear is the only witness who can substantiate the above-referenced allegations of the Complaint, denying the use of videoconference testimony here results in

---

[7] The witness involved in *MPE* was imprisoned at the time of the hearing in that matter; however, *MPE* stands for the proposition that videoconference testimony is allowable when a witness is otherwise unavailable. As described more herein, as a result of Mr. Locklear's physical and financial barriers to the hearing, he should be considered unavailable.

22-60493.5221

manifest injustice. Because of the physical and financial barriers to Mr. Locklear's in-person testimony, the Judge's refusal to allow videoconference testimony effectively requires the General Counsel to forgo pursuit of paragraphs 7(w) and (x) of the Complaint. These allegations are not cumulative of other Section 8(a)(1) allegations in the Complaint because the conduct is alleged to have occurred in Respondent's facility in Sparks, Nevada, whereas the other Section 8(a)(1) violations are alleged to have occurred in Fremont, California.

Finally, General Counsel will ensure that Section 102.35(c)'s safeguards are maintained. If permitted, Mr. Locklear would testify via videoconference from the Board's Region 3 office in Buffalo, New York, which contains a secure internet connection with firewall protections. Additionally, all Board field offices are equipped with adequate video equipment to transmit Mr. Locklear's testimony to the hearing in Region 32 via a secure internet connection. Both Region 32 and Region 3 have video conference equipment that offers clear, audible, video testimony, including a hi-tech camera that allows the user to pan around the room, tilt, and zoom-in on any item or person in the hearing room. The system further includes a movable microphone and remote control that permits the user to adjust the volume settings to ensure audible clarity. Finally, Board Agents in Region 3, who are under the same ethical rules as all attorneys and under the supervision of the Regional Attorney of Region 3, would be available to present Mr. Locklear with any exhibits as needed by the Judge, General Counsel, the Charging Parties, or Respondent.

## III.  **Conclusion**

Given that: (1) the use of video testimony will save the Board the substantial cost of transporting a witness cross the country; (2) Mr. Locklear is a third-party witness who should not bear the financial responsibility of travel cross country; (3) it is unreasonable to make a third-

6

party witness pay to fly across country for a case in which he has no standing; (4) without his testimony, the Board cannot establish elements of its case making Mr. Locklear essential; and (5) all the safeguards in the Board's Rules and Regulations are met, Counsel for the General Counsel respectfully urges the Board to grant this special appeal, reverse the Judge's Amended Order Denying the Motion, and permit Mr. Locklear to testify by videoconference from Buffalo, New York.

**DATED AT** Oakland, California this 8th day of June 2018.

/s/ Noah Garber

_____

Noah Garber
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

22-60493.5223

# EXHIBIT D

22-60493.5224

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| **JONATHAN GALESCU, an Individual** | |
| **and** | |
| **RICHARD ORTIZ, an Individual** | |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## RESPONDENT'S MOTION FOR RECONSIDERATION OF ALJ'S ORDER GRANTING MOTION TO PERMIT VIDEOCONFERENCE TESTIMONY

Respondent Tesla, Inc. ("Tesla") hereby submits its Motion for Reconsideration of Administrative Law Judge ("ALJ") Amita Tracy's Order Granting Counsel for the General Counsel's ("the General Counsel") Motion to Permit Videoconference Testimony.

On May 29, 2018, the General Counsel filed a Motion to Permit Videoconference Testimony. Earlier today, on June 4, 2018, Tesla filed an Opposition to the General Counsel's Motion.

Later in the afternoon on June 4, 2018, the General Counsel informed Counsel for Tesla that the ALJ had unbeknownst to Tesla issued an Order to Show Cause and issued an Order

EXH. 4

22-60493.5225

Granting the General Counsel's Motion on May 31, 2018. Tesla was not served with or made aware of the ALJ's Order to Show Cause or the ALJ's Order Granting the General Counsel's Motion until June 4, 2018. Upon review of the pleadings provided by the General Counsel, it appears the Division of Judges endeavored to serve Mark S. Ross by fax at (415) 434-5947. Unfortunately, that fax number is incorrect. Counsel for Tesla's fax number is (415) 434-*3947*. Accordingly, Tesla was not provided with an opportunity to respond to the ALJ's Order to Show Cause. Accordingly for the reasons set forth in Tesla's Opposition to the General Counsel's Motion to Permit Videoconference Testimony filed earlier today and restated herein, Tesla requests that the ALJ issue an Order Denying the General Counsel's Motion to Permit Videoconference Testimony.

**A.     The General Counsel Has Not Shown Good Cause Based on Compelling Circumstances**

The National Labor Relations Board ("Board") law generally favors in-person testimony at trial. *See Westside Painting, Inc.*, 328 NLRB 796, 797 (1999). However, under the Board's Rules, upon a showing of "good cause based on circumstances" and "appropriate safeguards," the Administrative Law Judge ("ALJ") may permit video testimony from a different location. Board's Rules § 102.35(c); *see also* Fed.R.Civ.P. 43(a).[1] Although the Board's Rules do not further define the standard, FRCP 43 has a nearly identical standard. "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness." Advisory Committee Notes to Fed.R.Civ.P. 43(a) (1996 Amendment). Mere inconvenience is insufficient to

---

[1] While the Federal Rules of Civil Procedure are not controlling, the Board has often referred to them for useful guidance. *EF International Language Schools, Inc.*, 363 NLRB No. 20 (2015).

22-60493.5226

demonstrate "good cause." *Id.* ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial").

The General Counsel has not demonstrated that there are unexpected occurrences, accidents or illnesses that prevent Mr. Locklear from testifying in person at trial. Rather, the General Counsel—without any authority—relies solely on the fact that Mr. Locklear will have to pay for a round trip plane ticket to fly across the country to testify at trial. Significantly, courts have rejected the cost of travel as insufficient to warrant "compelling circumstances," particularly where the cost is not unforeseen. *See Rodriguez v. SGLC, Inc.*, 2012 WL 3704922, at \*2-3 (E.D. Cal. Aug. 24, 2012) (plaintiffs' expenses to travel out of the country to prosecute their own case are not unforeseen and do not rise to the level of good cause); *see also Niemeyer v. Ford Motor Co.*, 2012 WL 5199145 (D. Nev. Oct. 18, 2012). While some courts have allowed video conference testimony where an out-of-state witness is a third-party or peripheral witnesses with a limited scope of testimony, that is not the case here. *See Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 11596235, at \*7-8 (C.D. Cal. June 4, 2010). Mr. Locklear is the General Counsel's key witness pertaining to all of the allegations concerning Respondent's Gigafactory 1 in Sparks, Nevada. The present charges were brought against Respondent on behalf of Mr. Locklear. The General Counsel cannot now claim it was blindsided by the cost of travel for its percipient witness to testify at trial to the allegations of unfair labor practices.

Notably, inconvenience of travel is not unique to Mr. Locklear. In fact, two percipient witnesses for Respondent are located in Sparks, Nevada. Respondent and both witnesses will bear the cost and burden of traveling out-of-state to appear and testify at trial. Should the General Counsel's motion be granted, the Charging Parties will enjoy the benefit of in-person

22-60493.5227

examination of Respondent's percipient witnesses, while Respondent will be unfairly denied the same opportunity with respect to the General Counsel's key witness.

**B.**    **Respondent is Unfairly Prejudiced by Mr. Locklear Testifying Via Video Conference**

In addition to the General Counsel's failure to demonstrate any compelling reason for Mr. Locklear to testify remotely, Respondent will be significantly prejudiced if Mr. Locklear is permitted to testify via video conference. The General Counsel acknowledges that Mr. Locklear is a key witness regarding Respondent's alleged unfair labor practices. Video conference testimony severely impedes Respondent's ability to confront a percipient witness through cross-examination, which is exponentially more difficult when it must be done through video conference rather than in the presence of the finder of fact, the attorneys, and the documents.

It is well-settled that Board law expresses a strong preference for live oral testimony, particularly because it enables the judge to observe the demeanor of the witness to determine the witness's credibility. *Westside Painting, Inc.*, 328 NLRB 796, 797 (1999) (citing *Canadian American Oil Co. v. NLRB*, 82 F.3d 469, 475 (D.C. Cir. 1996). "The opportunity to observe the demeanor of a witness is particularly important in Board proceedings because…a judge is often presented with situations where there is conflicting testimony and credibility determinations are central to the resolution of the case." *Id.* In fact, witness demeanor is an essential consideration in determining credibility. *See St. Paul Park Refining Co., LLC*, 366 NLRB No. 83 (2018). For example, the same words can convey different meanings depending on physical expressions, mannerisms, and presentations. *See Taylor Motors, Inc.*, 366 NLRB No. 69 (2018) (taking into account the witness's happy demeanor in determining his words were attempted humor, not intimidation); *Kapstone Paper and Packing Corp.*, 366 NLRB No. 63 (2018) (taking into account the witness's demeanor was "composed and steady" thus more credible); *Space Needle,*

22-60493.5228

*LLC*, 362 NLRB No. 11 (2015) (observed that the witness was carefully watching counsel's reaction to her answers, and therefore not credible).

The Administrative Law Judge must be able to visibly observe Mr. Locklear's demeanor in person in order to make a credibility determination. At trial, Respondent's witnesses and Mr. Locklear will likely provide conflicting testimony, thus requiring the Administrative Law Judge to determine which testimony is credible. Whether the Administrative Law Judge finds Mr. Locklear credible will be central to the outcome of this case. As such, it is essential for Mr. Locklear to testify in person at trial.

### C. The General Counsel Has Not Set Forth Conditions to Protect the Integrity of the Testimony or Appropriate Safeguards

The General Counsel also has not complied with the requirements of the Board's Rule § 102.35(c)(1), which requires any application to take testimony by video conference to include "the compelling circumstances for such testimony, the witness's name and address, the location where the video testimony will be held, the matter concerning which the witness is expected to testify, the conditions in place to protect the integrity of the testimony, the transmission safeguards, and the electronic address from which the video testimony will be transmitted." The General Counsel's motion does not set forth the witness's address, the matter concerning which the witness is expected to testify, or the electronic address from which the video testimony will be transmitted.

The General Counsel also failed to comply with the Board's Rule § 102.35(c)(2), which sets forth the requirements for appropriate safeguards such that the Administrative Law Judge may assess the witness's credibility and the parties have a meaningful opportunity to examine and cross-examine the witness. The General Counsel makes no assurance that Respondent or its representative has the opportunity to be present at the location, and does not provide for any

22-60493.5229

technology assistance. Most troubling is the fact that it has not set forth the conditions in place to protect the integrity of the testimony. Rather, the General Counsel suggests that Respondent send its exhibits via e-mail in advance to an unnamed individual—the same person who will ensure the video "runs smoothly"—at the Region 3 office. The General Counsel conveniently ignores the fact that it is a charging party in this matter, and suggests that Respondent should blindly provide its potential exhibits to a representative or agent of the General Counsel. Respondent should not be expected to hand over every exhibit it might use on cross-examination to another Field Office where Mr. Locklear is located. The General Counsel makes no assurances that the exhibits will remain confidential, that Mr. Locklear will not have access to them beforehand, and that the General Counsel will not obtain access to them beforehand. Moreover, given the dynamic nature of trial, it is unlikely that Respondent will know what materials it will use on cross-examination with Mr. Locklear until he testifies on direct examination. If Respondent is forced to provide its materials in advance, it will be deprived of a meaningful opportunity to cross-examine the witness.

### D.    Conclusion

In sum, the General Counsel cannot make the requisite showing of good cause based on compelling circumstances, under the Board's Rules and FRCP 43 that justify permitting Will Locklear, a key percipient witness, to testify via video conference for trial. The prejudice Respondent will suffer if it is required to cross-examine Mr. Locklear by video conference outweighs any cost that the General Counsel may incur by attending the trial at the Regional Office in Oakland, California. Accordingly, Respondent respectfully requests that the General Counsel's motion be denied, and require Mr. Locklear to testify live, in person, at trial if he is to testify.

22-60493.5230

Dated:  June 5, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.5231

# EXHIBIT E

22-60493.5232

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)
UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|---|---|
| 32-CA-210879 | 12/06/17 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla, Inc. | | |
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)* 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative | g. e-Mail gaby@tesla.com |
| | | h. Number of workers employed Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

In the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. (313) 926-5000 |
|---|---|
| 800 East Jefferson Detroit, Michigan 48214 | 4c. Cell No. |
| | 4d. Fax. No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. (323) 655-4700 |
|---|---|
| By _____ *(signature of representative or person making charge)* Henry M. Willis, Attorney *(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | Fax No. (323) 655-4488 |
| 12/06/17 *(date)* | e-Mail hmw@ssdslaw.com |
| Address | |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

1

CERTIFICATE OF SERVICE

2    At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is
3    Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

4    On June 15, 2018, I served a true copy of the following document(s) described as **RESPONDENT'S OPPOSITION TO THE GENERAL COUNSEL'S REQUEST**
5    **FOR SPECIAL PERMISSION TO APPEAL THE ADMINISTRATIVE LAW JUDGE'S AMENDED ORDER DENYING GENERAL COUNSEL'S MOTION TO**
6    **PERMIT VIDEOCONFERENCE TESTIMONY OF A CRITICAL THIRD-PARTY WITNESS** on the interested parties in this action as follows:

7

8    Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
9    National Labor Relations Board
1301 Clay Street, Ste. 300N
10   Oakland, CA 94612-5224
T: (510) 671-3041
11   E-mail: edris.rodriguezritchie@nlrb.gov

12   Noah J. Garber
Field Attorney, Region 32
13   National Labor Relations Board
1301 Clay Street, Suite 300N
14   Oakland, California 94612
T: (510) 671-3021
15   E-mail: noah.garber@nlrb.gov

16   Margo Feinberg
E-mail: margo@ssdslaw.com
17   Daniel E. Curry
E-mail: dec@ssdslaw.com
18   Julie Alarcon
E-mail: jsa@ssdslaw.com
19   Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000
20   Los Angeles, CA 90048
T: (323) 655-4700
21
Administrative Law Judge Amita Tracy
22   Amita.Tracy@nlrb.gov
National Labor Relations Board
23   Division of Judges
901 Market St., Suite 300
24   San Francisco, CA 94103
T: (415) 356-5255

25

26

27    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s)
28    at the e-mail address(es) listed above. I did not receive, within a reasonable time after the

SMRH:486725893.1                          -1-                          CERTIFICATE OF SERVICE
CASE NO. 32-CA-197020 et al.

1 | transmission, any electronic message or other indication that the transmission was
unsuccessful.

2

3 | I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct and that I am employed in the office of a member of
the bar of this Court at whose direction the service was made.

4

Executed on June 15, 2018, at San Francisco, California.

5

6

7 | Sarah Smith

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:486725893.1 | -2- | CERTIFICATE OF SERVICE
CASE NO. 32-CA-197020 et al.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

    **and**

**MICHAEL SANCHEZ, an Individual**

    **and**

**JONATHAN GALESCU,  an Individual**

    **and**

**RICHARD ORTIZ, an Individual**

    **and**

**INTERNATIONAL UNION, UNITED**
**AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL WORKERS OF**
**AMERICA, AFL-CIO**

**Cases 32-CA-197020**
**32-CA-197058**
**32-CA-197091**
**32-CA-197197**
**32-CA-200530**
**32-CA-208614**
**32-CA-210879**

**COUNSEL FOR THE GENERAL COUNSEL'S OPPOSITION TO**
**RESPONDENT TESLA, INC.'S MOTION TO DISMISS THE AMENDMENT**
**TO THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION**

22-60493.5236

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................... 1

II.  LEGAL STANDARD AND DISCUSSION ........................................... 1

    A.   The Regional Director Properly Issued the Amendment
        Under Section 102.15 ........................................................... 1

    B.   The Amendment Allegations Are Timely ............................ 2

    C.   The Amendment Allegations are "Closely Related" to
        Several Timely Filed Charges ............................................. 3

    D.   Respondent Incorrectly Asserts Section 10(b) as a
        "Jurisdictional" Requirement ............................................ 7

    E.   Respondent has Failed to Establish any Prejudice in
        Allowing the Amendment .................................................... 8

    F.   In the Alternative, the Judge Should Withhold Ruling until Evidence has
        been heard Regarding the Amendment Allegations ......................................... 9

III. CONCLUSION ................................................................................ 9

22-60493.5237

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) ................................. 8

*Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309 (D.C. Cir. 2015) ................................... 8

*Reebie Storage and Moving Co., Inc. v. NLRB*, 44 F.3d 605 (7th Cir. 1995)................................ 2

### NLRB CASES

*Central Enterprises, Inc.*, 239 NLRB 1270 (1979) ....................................................... 8

*Chicago Roll Forming Corp. (Local 714, Teamsters)*, 167 NLRB 961, 971 (1967), enforced sub. nom. *NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969)............................. 7

*Earthgrains Co.*, 351 NLRB 733, 734 (2007) .............................................................. 4

*Fry's Food Stores*, 361 NLRB No. 140, slip op. at 2 (2014)............................................... 4

*Harmony Corp.*, 301 NLRB 578 (1991) ..................................................................... 5

*Heinick Corp.*, 301 NLRB 128 (1991)...................................................................... 5

*Kanakis Co.*, 293 NLRB 435, 443 (1989) .................................................................. 7

*Jennie-O Foods*, 301 NLRB 305 (1991)..................................................................... 5

*Marriott Corp.*, 310 NLRB 1152, 1160 (1993) .......................................................... 4, 5

*Nickles Bakery of Indiana, Inc.*, 296 NLRB 927 (1989) ................................................. 5, 6

*Peng Teng*, 278 NLRB No. 50, fn. 2 (1986) ............................................................... 7

*Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010)........................................................... 6

*Seton Company*, 332 NLRB 979 (2000) ..................................................................... 6

*Teamsters Local 955*, 325 NLRB 605 (1998)............................................................... 7

*The Carney Hospital*, 350 NLRB 627 (2007)............................................................. 7, 8

### FEDERAL STATUTES

29 U.S.C. § 160................................................................................... passim

22-60493.5238

FEDERAL REGULATIONS

Rules and Regulations of the National Labor Relations Board, Section 102.15 ........................... 1

Rules and Regulations of the National Labor Relations Board, Section 102.17 ........................... 1

Rules and Regulations of the National Labor Relations Board, Section 102.45 ........................... 1

22-60493.5239

**I.     INTRODUCTION**

On June 4, 2018, prior to the opening of the record in this matter on June 11, 2018, the Regional Director, acting within her authority, issued an Amendment to the Second Amended Consolidated Complaint[1] (the Amendment) which set forth three allegations arising out of conduct occurring on June 7, 2017.  As set forth more fully below, these allegations are encompassed by timely-filed charges.  At the outset of the hearing, Tesla, Inc. (Respondent) filed a Motion to Dismiss for Lack of Jurisdiction (the Motion), urging the Administrative Law Judge (the Judge) to dismiss the three allegations set forth in the Amendment.  For the reasons set forth more fully below, Respondent's Motion lacks merit.

**II.     LEGAL STANDARD AND DISCUSSION**

**A.     The Regional Director Properly Issued the Amendment Under Section 102.15**

Under Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board), as amended, (Rules and Regulations) only a Regional Director has the authority to issue a complaint in an unfair labor practice proceeding.  Under Section 102.17, prior to the start of a hearing, the Regional Director is the only person empowered with the legal authority to issue an amendment to the complaint.  An administrative law judge is not empowered with the authority to withdraw a properly issued and noticed amendment to a complaint issued prior to a hearing and is only empowered to dismiss such an amendment if it is based on the General Counsel's failure to prove the allegation or on a substantive defense.  See Section 102.45 of the Rules and Regulations (requiring that an administrative law judge prepare a decision based upon the contents of the record).  Thus, Respondent cannot assert that the

---

[1] A copy of the Amendment is contained in Exhibit 13.

22-60493.5240

Regional Director's issuance of the Amendment is improper.  Nor, as discussed below, can it successfully assert that the allegations are not encompassed by a timely filed charge.

### B.   The Amendment Allegations Are Timely

The threshold inquiry is whether there is an operative charge that encompasses the allegations contained in the Amendment.  *See Reebie Storage and Moving Co., Inc. v. NLRB*, 44 F.3d 605, 608 (7th Cir. 1995) (holding that "critical to the determination of whether allegations in a complaint are closely related to those in the [unfair labor practice charge] is a comparison of legal and factual bases of allegations.").  Respondent incorrectly asserts that the Amendment contains allegations that were either not encompassed by any of the unfair labor practice charges or that these Amendment allegations are not closely related to any timely-filed charges. However,  each of the first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 allege, in relevant part, that Respondent "[w]ithin the last six months […] violated the Act by […] intimidating and harassing employees for their Section 7 activities."[2]  These amended charges were filed on July 28, 2017, less than two months *after* the date of conduct alleged to have occurred on June 7, 2017 in the Amendment, which alleges that Respondent CEO Elon Musk solicited employee complaints and made a statement of futility as well as that Respondent Chief People Officer Gaby Toledano restrained and coerced employees from engaging in union activities by telling employees that no one at Respondent's Fremont facility wanted a union and asked employees why they would want to pay union dues.  Thus, the

---

[2] Exhibits 2, 4, 6, and 8, respectively.  The initial charges in Case Nos. 32-CA-197020, 197058, 32-CA-197091, and 32-CA-197197 are contained in Exhibits 1, 3, 5, and 7, respectively.

22-60493.5241

first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 plainly cover the allegations in the Amendment.[3]

Moreover, the first amended charge in Case No. 32-CA-200530 (filed on July 28, 2017) also encompasses the allegations contained in the Amendment. The first amended charge in Case No. 32-CA-200530 was filed less than two months *after* the occurrence of the conduct contained in the Amendment and alleged, in relevant part, that Respondent, "[w]ithin the last six months" violated the Act by interrogating employees regarding their protected concerted activities and "intimidate[ed] and harass[ed] employees engaged in Section 7 activities […]."[4] Furthermore, the initial charge in Case No. 32-CA-208614[5], filed on October 25, 2017, and the first amended charge[6] (filed on March 13, 2018) also encompass the allegations in the Amendment, as they allege that Respondent "intimidated and harassed employees" for their Section 7 activities and the first amended charge in Case 32-CA-208614 further alleges that Respondent threatened and interrogated such employees.

## C. The Amendment Allegations are "Closely Related" to Several Timely Filed Charges

Even assuming the allegations in the Amendment were not encompassed within the above-referenced timely filed charges as described above, Respondent's Motion still fails because the Amendment allegations are "closely related" to the timely filed charges. Under settled Board law, a complaint may be amended, at any point, to allege conduct outside of the Section 10(b) period where the conduct occurred within six months of a timely filed charge and is "closely related" to the allegations of the charge. *Redd-I, Inc.*, 290 NLRB 1115 (1988); NLRB

---

[3] Respondent's motion entirely ignores that the first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 themselves form an independent basis for the General Counsel's issuance of the Amendment.

[4] Exhibit 10. The initial charge in Case No. 32-CA-200530 is contained in Exhibit 9 and was filed on June 12, 2017.

[5] Exhibit 11.

[6] Exhibit 12.

22-60493.5242

Bench Book Section 3-330; *Fry's Food Stores*, 361 NLRB No. 140, slip op. at 2 (2014). In evaluating whether the timely and untimely allegations are "closely related," the Board: (1) considers whether the allegations involve the same legal theory; (2) considers whether the allegations arise from the same factual circumstances or sequence of events; and (3) "may look" at whether the respondent would raise the same or similar defenses to both allegations. *Redd-I*, above, at 118; *Nickels Bakery of Indiana*, 296 NLRB 927, 927-28 (1989); *Earthgrains Co.*, 351 NLRB 733, 734 (2007). The "third" *Redd-I* factor is not a mandatory factor. See *The Carney Hospital*, 350 NLRB 627, fn. 8 (2007).

Here, the Amendment allegations are "closely related" to the allegations contained in all of the operative charges because they are part of Respondent's course of conduct aimed at precluding union activity, which includes multiple interrogations, the discriminatory enforcement of various policies, and the discipline and/or termination of employees for engaging in their Section 7 activities. Thus, the allegations contained in the Amendment involve generally the same legal theories and arise from the same general factual circumstances and sequence of events as those that Respondent does not assert are untimely or barred by Section 10(b).

The Board has often held that allegations of Section 8(a)(1) interrogations, solicitations of grievances, promises of benefit, as well as Section 8(a)(3) discharges, have been found closely related to timely filed charges of discriminatory suspensions where they all arose out of an employer's unlawful response to a single unionization campaign and were part of a single course of conduct aimed at precluding union activity. *Marriott Corp.*, 310 NLRB 1152, 1160 (1993).

Moreover, where an employer's acts are part of an overall plan to resist unionization, allegations arising out of such acts are deemed to "closely relate" to each other. *Jennie-O Foods*, 301 NLRB 305 (1991). Indeed, where violations arise out of the same course of conduct such as

4

an anti-union campaign, they are deemed to be "closely related." *Marriott Corp.*, above; *Heinick Corp.*, 301 NLRB 128 (1991).  Here, the General Counsel has presented evidence that a union campaign began in the summer of 2016.  The campaign was launched in the fall of 2016 at which point Respondent began requiring employees to sign a confidentiality agreement banning the disclosure of all information employees learn (including information about themselves and other employees).  When the campaign went full steam ahead on February 9, 2017, with an employee's blog post, Respondent began further violating the Act by unlawfully prohibiting distribution of union literature in non-working areas on non-working time, banned the wearing of union apparel, interrogated employees, culminating in the verbal and written warning to the same employee who encouraged his coworkers to unionize on February 9, 2017, and the termination of another key employee in the organizing campaign.  Respondent's conduct as alleged in the Amendment was part-and-parcel of the same organizing campaign and with Respondent's unlawful anti-union conduct during the ongoing organizing campaign.  Plainly, the Board law described above establishes that the Amendment allegations are closely related to the allegations asserted in the timely filed unfair labor practice charges.  See also, e.g., *Seton Company*, 332 NLRB 979 (2000).  In contrast, the Board has found allegations to not be "closely related" when the allegations did not occur in the context of an organizing campaign.  See, e.g., *Harmony Corp.*, 301 NLRB 578 (1991) (holding no factual nexus between interrogations and alleged discrimination because the interrogations occurred prior to the start of the organizing campaign).

Respondent relies on several cases to argue that the allegations contained in the Amendment are not "closely related."  First, Respondent asserts that the Amendment allegations are not closely related under *Nickles Bakery of Indiana, Inc.*, 296 NLRB 927 (1989),  because the first amended charge in 32-CA-200530 contains "boilerplate" allegations.  However, Respondent

5

misstates the discussion in *Nickles*, where the Board held that the language stating "other acts" was boilerplate and insufficient to support "unrelated" Section 8(a)(1) allegations. *Nickles*, above at 928.  Here, as the General Counsel has noted above, the first amended charges in Case No. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 state that Respondent "[w]ithin the last six months […] violated the Act by […] intimidating and harassing employees for their Section 7 activities."[7]  Respondent further ignores, as the General Counsel has noted above, that the charge in Case No. 200530  states that Respondent "[w]ithin the last six months […] interrogat[ed] employees regarding their protected concerted activities; intimidate[ed] and harass[ed] employees engaged in Section 7 activities […]."[8]  These specific allegations are quite distinct from the "boilerplate" allegations disapproved of by the Board in *Nickles*.

Next, Respondent relies upon *Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010), for the proposition that the allegations in the Amendment are not "closely related" to any of the operative charges.  Respondent, however, fails to point out that in *Salon/Spa at Boro, Inc.*, the Board did not address the specific issue asserted by Respondent and, more importantly, the events at issue there did not arise out of an organizing campaign and anti-union conduct as exists here.

Moreover, by relying only on the initial charge language rather than the operative amended charges for its closely-related analysis, Respondent suggests that a party is not permitted to amend an unfair labor practice charge to include additional violations.  Clearly, this is contrary to extant Board law and contrary to the caselaw relied upon by the Respondent itself.  See *Nickles*, above at 928-29 (noting that "it is customary for a charging party to file an amended charge or an entirely new charge.  Obviously, nothing in our decision today limits in any way a

---

[7] Exhibits 2, 4, 6, and 8.
[8] Exhibit 10.

6

charging party's ability to file a timely new or amended charge.")  Finally, regarding the third *Redd-I* optional factor, it is evident from Respondent's Answer to the Amendment, Respondent's defense of the allegations contained in the Amendment are identical to its defense of the allegations not subject to its Motion to Dismiss.  See Exhibits 14 and 15.

### D.    Respondent Incorrectly Asserts Section 10(b) as a "Jurisdictional" Requirement

Section 10(b) of the National Labor Relations Act (the Act) prohibits the issuance of a complaint "based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the Board."  29 U.S.C. § 160.  "[T]he proviso to Section 10(b) of the Act is a statute of limitations, and is not jurisdictional."  *Chicago Roll Forming Corp.*, 167 NLRB 961, 971 (1967), enforced sub. nom. *NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969); *Kanakis Co.*, 293 NLRB 435, 443 (1989); *Peng Teng*, 278 NLRB No. 50, fn. 2 (1986) (holding "[t]he Board has long held that the 10(b) provision is a statute of limitations and is not jurisdictional.")

Respondent incorrectly assert that Section 10(b) is a jurisdictional requirement rather than a mere statute of limitations.  In making this assertion, Respondent relies on *Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309, 313 (D.C. Cir. 2015), *Teamsters Local 955*, 325 NLRB 605 (1998), *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995), and *The Carney Hospital*, 350 NLRB 627 (2007).  Its reliance on these cases for the proposition that Section 10(b) is a jurisdictional requirement is misplaced.  For example, Respondent's states that Board's decision in *The Carney Hospital* held that "Section 10(b) operates as a jurisdictional limitation […]."  However, Respondent ignores the context of this quote, in which the Board observed that "Section 10(b) underscores that the General Counsel and the Board lack independent authority to initiate unfair labor practice proceedings in the absence of a charge filed

7

by an outside party.  In this respect, Section 10(b) operates as a jurisdictional limitation […]."
*The Carney Hospital*, above at 628 (emphasis added).  Thus, the Board very clearly did not hold

that Section 10(b) was a jurisdictional requirement, but merely commented on the undisputed

fact that the Board's processes are not self-initiating.  Here, it is undisputed that the Charging

Parties have filed unfair labor practice charges asserting that Respondent engaged in various

unfair labor practices.  Moreover, in each of the cases cited in its Motion, Respondent conflates

the idea that the General Counsel is unable to initiate unfair labor practice proceedings with the

concept that allegations occurring outside of the Section 10(b) period may not be prosecuted

(absent several caveats described herein).

   **E.**  **Respondent has Failed to Establish any Prejudice in Allowing the Amendment**

  As a final matter, the General Counsel notes that Respondent has not yet commenced its

presentation of evidence and the record will not reopen until September 24, 2018.  Thus,

Respondent has ample time to prepare its defense to the allegations in the Amendment.  It cannot

make a colorable argument that it will be prejudiced by the inclusion of the allegations contained

in the Amendment.  Further, the public interest compels the allowing of an amendment. As the

sole entity charged with ensuring the public's interest in enforcement of the Act, the Board has

long noted that there must be a "balance between the statutory limitations on litigation expressed

in Section 10(b) and the need to assure broad leeway for the exercise of the Board authority,

once properly invoked by the filing of a charge, to advance the public interest."  *The Carney*

*Hospital*, above at 628.  Indeed, even prior to *The Carney Hospital*, the Board has held that "the

General Counsel may properly relax the time provisions of our procedural rules in appropriate

cases, for he acts in the public interest and not in vindication of private rights."  *Central*

*Enterprises, Inc.*, 239 NLRB 1270, 1271 (1979).  Although the General Counsel does not rely on

22-60493.5247

the public interest alone, the General Counsel notes that, as the caretaker of the public interest and specifically the public rights at issue as a result of Respondent's violations of the Act, allowing the allegations contained in the Amendment are compelled by the vindication of these public rights.

### F.    In the Alternative, the Judge Should Withhold Ruling until Evidence has been heard Regarding the Amendment Allegations

Because Respondent essentially contends that the Amendment allegations are barred by Section 10(b) of the Act, Respondent argues, in effect, that it has met its burden of proving an affirmative defense.  However, the General Counsel has not rested its case, thus, even if the Judge deems it necessary to make a "closely related" determination, such an determination is premature at this juncture.  Accordingly, while the General Counsel asserts that Respondent's Motion should be denied in its entirety, in the alternative, the General Counsel respectfully requests that the Judge reserve her ruling until after the hearing has closed and the record is complete.

### III.    CONCLUSION

For the reasons set forth above, the General Counsel respectfully requests that Respondent's motion be denied in its entirety.

**DATED AT** Oakland, California this 22nd day of June 2018.

Edris W.I. Rodriguez Ritchie, Field Attorney
Noah Garber, Field Attorney
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, California 94612-5224

22-60493.5248

22-60493.5249

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 32-CA-197020 | Date Filed 04/17/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
|---|---|---|
| | | c. Cell No. (650) 454-5386 |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code)<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri | g. e-Mail arnnon@tesla.com |
| | | h. Number of workers employed Approximately 7,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.)<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) **(3)** of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Michael Sanchez

| 4a. Address (Street and number, city, state, and ZIP code)<br>25225 Soto Road<br>Hayward, California 94544 | 4b. Tel. No. |
|---|---|
| | 4c. Cell No. (510) 388-5058 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By [signature]    Michael Sanchez<br>(signature of representative or person making charge)    (Print/type name and title or office, if any) | Tel. No. |
|---|---|
| | Office, if any, Cell No. (510) 388-5058 |
| | Fax No. |
| Address   25225 Soto Road, Hayward, California 94544         (date) | e-Mail raidereapermjg@yahoo.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.6250

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5252

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197020 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Amnon Geshuri Vice President of HR | |
| | | g. e-Mail |
| | | amnon@tesla.com |
| | | h. Dispute Location (City and State) |
| | | Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | |
|---|---|
| Michael Sanchez | |
| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
| 25225 Soto Rd, Hayward, CA 94544-2807 | |
| | 4c. Cell No. |
| | (510)388-5058 |
| | 4d. Fax No. |
| | |
| | 4e. e-Mail |
| | raidereapermjg@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION | | Tel. No. |
|---|---|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | |
| By: *Margo A. Feinberg* (signature of representative or person making charge) | Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Office, if any, Cell No. (323) 655-4700 |
| | | Fax No. (323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA). 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5254

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| | **DO NOT WRITE IN THIS SPACE** | |
|---|---|---|
| Case | 32-CA-197058 | Date Filed 04/17/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
|---|---|---|
| | | c. Cell No. (650) 454-5386 |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri | g. e-Mail<br>arnnon@tesla.com |
| | | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3)                                                                of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

See Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Jonathan Galescu

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>361 Carousel Drive<br>Vallejo, California 94589 | 4b. Tel. No. |
|---|---|
| | 4c. Cell No. (925) 822-8774 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| **6. DECLARATION**<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By _(signature of representative or person making charge)_        Jonathan Galescu<br>                                                    *(Print/type name and title or office, if any)* | Office, if any, Cell No.<br>(925) 822-8774 |
| | Fax No. |
| Address    361 Carousel Drive, Vallejo, California 94589              4/17/17<br>                                                                    *(date)* | e-Mail |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5257

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
| --- | --- |
| Case | Date Filed |
| 32-CA-197058 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
| --- | --- | --- |
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Arnnon Geshuri Vice President of HR | |
| | | g. e-Mail |
| | | arnnon@tesla.com |
| | | h. Dispute Location (City and State) |
| | | Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | |
| --- | --- |
| Jonathan Galescu | |
| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
| 361 Carousel Dr, Vallejo, CA 94589-4334 | |
| | 4c. Cell No. |
| | (925)822-8774 |
| | 4d. Fax No. |
| | |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION | | Tel. No. |
| --- | --- | --- |
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | |
| By: *Margo A. Feinberg* (signature of representative or person making charge) | Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Office, if any, Cell No. (323) 655-4700 |
| | | Fax No. (323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5259

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

PRINT UNDER 44 U.S.C. 3512

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|-----------|
| 32-CA-197091 | 04/18/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br>Tesla Motors Corporation | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
| | c. Cell No. (650) 454-5386 |
| | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri |
| | g. e-Mail<br>arnnon@tesla.com |
| | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

See Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Richard Ortiz

| 4a. Address *(Street and number, city, and ZIP code)*<br>37607 Walnut<br>Newark, California 94560 | 4b. Tel. No. |
|---|---|
| | 4c. Cell No. (510) 943-2723 |
| | 4d. Fax No. |
| | 4e. e-Mail<br>richardortiz1966@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

## 6. DECLARATION

| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By _(signature of representative or person making charge)_    Richard Ortiz<br>_(Print/type name and title or office, if any)_ | Tel. No. |
|---|---|
| | Office, if any, Cell No.<br>(510) 943-2723 |
| | Fax No. |
| Address    37607 Walnut, Newark, California 94560          4/18/17 _(date)_ | e-Mail<br>richardortiz1966@yahoo.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.3250

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5262

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197091 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
|---|---|---|
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Arnnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>arnnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>Richard Ortiz | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>37607 Walnut, Newark, CA 94560 | 4b. Tel. No. |
| | 4c. Cell No.<br>(510)943-2723 |
| | 4d. Fax No. |
| | 4e. e-Mail<br>richardortiz1966@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. |
|---|---|---|
| By: *Margo A. Feinberg* (signature) | Margo Feinberg, Esq.,<br>Attorney for Charging Party | Office, if any, Cell No.<br>(323) 655-4700 |
| (signature of representative or person making charge) | Print Name and Title | Fax No.<br>(323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann &<br>Sommers, LLP, 6300 Wilshire Blvd, Suite<br>2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail<br>margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5264

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET<br>FORM NLRB-501<br>(2-08) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>**CHARGE AGAINST EMPLOYER** | **DO NOT WRITE IN THIS SPACE** | |
|---|---|---|---|
| | | Case 32-CA-197197 | Date Filed 04/19/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>**Tesla Motors Corporation** | | b. Tel. No. (510) 249-3650 or |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Amnon Geshuri | g. e-Mail<br>amnon@tesla.com |
| | | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* **(3)** of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>8000 East Jefferson Avenue<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. (323) 655-4700 |
|---|---|
| Attorney for Charging Party,<br>By *Margo A. Feinberg*   Margo A. Feinberg, Esq.<br>(signature of representative or person making charge)   (Print/type name and title or office, if any) | Office, if any, Cell No. |
| Schwartz, Steinsapir, Dohrmann & Sommers, LLP | Fax No. (323) 655-4488 |
| Address 6300 Wilshire Blvd., Suite 2000, L.A., CA 90048          4/19/17<br>(date) | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5266

22-60493.5267

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197197 | 7-28-2017 |

File an original of this charge with NLRB Regional Director In which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Arnnon Geshuri Vice President of HR | |
| | | g. e-Mail |
| | | arnnon@tesla.com |
| | | h. Dispute Location (City and State) |
| | | Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7,000 |

i. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) |
|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO |

| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
|---|---|
| 8000 E Jefferson Ave, Detroit, MI 48214-2699 | |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO

| 6. DECLARATION | | Tel. No. |
|---|---|---|
| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | |
| By: *Margo A. Feinberg* | Margo Feinberg, Esq., Attorney for Charging Party | Office, if any, Cell No. (323) 655-4700 |
| (signature of representative or person making charge) | Print Name and Title | Fax No. (323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5268

22-60493.5269

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | | Date Filed |
|------|------|------|
| 32-CA-200530 | | 06/12/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | |
|---|---|---|
| Tesla Motors Corporation | | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
| | | c. Cell No. (650) 454-5386 |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)* 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Vice President of HR, Arnnon Geshuri | g. e-Mail arnnon@tesla.com |
| | | h. Number of workers employed Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. (313) 926-5000 |
|---|---|
| 8000 East Jefferson Avenue Detroit, Michigan 48214 | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By *(signature of representative or person making charge)* | Attorney for Charging Party, Margo A. Feinberg, Esq. *(Print/type name and title or office, if any)* | Tel. No. (323) 655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| Schwartz, Steinsapir, Dohrmann & Sommers, LLP 6300 Wilshire Blvd., Suite 2000, L.A., CA 90048 Address | 6/12/17 *(date)* | Fax No. (323) 655-4488 |
| | | e-Mail margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.

ID 326809

22-60493.5272

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-200530 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
|---|---|---|
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Amnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>amnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>8000 E JEFFERSON AVE, DETROIT, MI 48214-2699 | 4b. Tel. No.<br>(313)926-5000 |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. |
|---|---|---|
| By: *[signature]* Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>(signature of representative or person making charge) Print Name and Title | | Office, if any, Cell No.<br>(323) 655-4700 |
| | | Fax No.<br>(323) 655-4488 |
| Address: 8000 E JEFFERSON AVE,<br>DETROIT, MI 48214-2699 Date: 7/28/17 | | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5274

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER

FORM EXEMPT UNDER 44 U.S.C 3512

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|---|---|
| 32-CA-208614 | 10-25-2017 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Gaby Toledano, Chief People Officer | g. e-Mail gaby@tesla.com |
| | | h. Number of workers employed 10,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) and (4) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) 8000 East Jefferson Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-

**6. DECLARATION**
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _Margo A. Feinberg_
(signature of representative or person making charge)

Margo A. Feinberg, Esq.,
Attorney for Charging Party
(Print/type name and title or office, if any)

Schwartz, Steinsapir, Dohrmann & Sommers LLP
6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048
Address

10/25/17
(date)

| Tel. No. (323) 655-4700 |
|---|
| Office, if any, Cell No. |
| Fax No. (323) 655-4488 |
| e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

**Attachment A**

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees to discourage protected concerted activity by other employees.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, intimidating and harassing employees for their Section 7 activities.

By these and other acts, Tesla, Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

ID 338093

22-60493.5277

Form NLRB - 501  (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-208614 | 3/13/2018 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a. Name of Employer<br>Tesla, Inc. | | b. Tel. No. |
| | | c. Cell No. |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Gaby Toledano<br>Chief People Officer | f. Fax No. |
| | | g. e-Mail<br>gaby@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>10000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (*set forth a clear and concise statement of the facts constituting the alleged unfair labor practices*)

Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity..

3. Full name of party filing charge (*if labor organization, give full name, including local name and number*)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 4a. Address (street and number, city, state, and ZIP code)<br>8000 East Jefferson Avenue, Detroit, MI 48214 | 4b. Tel. No.<br>313-926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail<br>sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (*to be filled in when charge is filed by a labor organization*)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By: *Margo L Feinberg*<br>(signature of representative or person making charge)<br><br>Address: 8000 East Jefferson Avenue, Detroit, MI 48214 | Margo A. Feinberg, Esq.<br>Attorney for Charging Party<br>Print Name and Title<br><br>Date: | Tel. No.<br>323-655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| | | Fax No.<br>323-655-4488 |
| | | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5279

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

   and

MICHAEL SANCHEZ, an Individual                     Case 32-CA-197020

   and

JONATHAN GALESCU,  an Individual               Case 32-CA-197058

   and

RICHARD ORTIZ, an Individual                      Case 32-CA-197091

   and

| INTERNATIONAL UNION, UNITED AUTOMOBILE, | Case 32-CA-197197 |
|---|---|
| AEROSPACE AND AGRICULTURAL WORKERS OF | Case 32-CA-200530 |
| AMERICA, AFL-CIO | Case 32-CA-208614 |
| | Case 32-CA-210879 |

## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.17 of the Rules and Regulations of the National Labor Relations Board (the Board), the Second Amended Consolidated Complaint and Notice of Hearing (Complaint) issued on March 30, 2018, is amended as follows:

**Amend paragraph 5** of the Complaint to include two more individuals as a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of Respondent within the meaning of Section 2(13) of the Act. The two individuals to include are:

       Gaby Toledano       -     Respondent's Chief People Officer

       Josh Hedges        -     Director of HR for Production

22-60493.5280

**Amend paragraph 7** to include the following new allegations as 7(y) of the Complaint:

(y)    On about June 7, 2017, Respondent, in a conference room at its Fremont Facility, during a meeting held by CEO Elon Musk and Chief People Officer Gaby Toledano:

(i) by Elon Musk, solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity.

(ii) by Elon Musk, informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances; and

(iii) by Gaby Toledano, restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's Facility wanted a union and asking them why employees would want to pay union dues.

**Amend paragraph 8(d)** to correct the year Jose Moran was issued a disciplinary warning. The existing paragraph 8(d) should be replaced with the following paragraph:

(d)    On or about October 19, 2017, Respondent issued a disciplinary warning to Jose Moran.

## ANSWER REQUIREMENT

RESPONDENT IS FURTHER NOTIFIED that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, Respondent must file an answer to the above Amendment to Second Amended Consolidated Complaint.  The answer must be **received by this office on or before June 18, 2018, or postmarked on or before June 17, 2018**.  Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

2

22-60493.5281

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on File Case Documents, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amendment to Second Amended Consolidated Complaint are true.

## NOTICE OF HEARING LOCATION

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Oakland, California 94612, at Conference Room H on the 5th Floor, and on consecutive days thereafter until

3

concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.   At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 4th day of June 2018.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

22-60493.5283

Form NLRB-4338
(2-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

**NOTICE**

Cases:  32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end. An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.

However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds thereafter must be set forth in *detail;*

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request;

*and*

(5) Copies must be simultaneously served on all other parties (*listed below*), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Arnnon Geshuri
Tesla Motors Corporation
45500 Fremont Blvd.
Fremont, CA 94538

Gaby Toledano
45500 Fremont Blvd
Fremont, CA 94538-6326

Richard Ortiz
37607 Walnut
Newark, CA 94560

Mark S. Ross, Attorney
Sheppard Mullin Richter
& Hampton LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers LLP
6300 Wilshire Bld., Suite 2000
Los Angeles, CA 90048

Michael Sanchez
25225 Soto Road
Hayward, CA 94544

Jonathan Galescu
361 Carousel Drive
Vallejo, CA 94589

Susan Reed
IU, UA, A&AWA, AFL-CIO
8000 E Jefferson Avenue
Detroit, MI 48214

22-60493.5285

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case No. 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case No. 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case No. 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case No. 32-CA-197197<br>Case No. 32-CA-200530<br>Case No. 32-CA-208614<br>Case No. 32-CA-210879 |

## RESPONDENT TESLA, INC.'S ANSWER TO AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.5286

## RESPONDENT TESLA, INC.'S ANSWER TO
## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Amendment to Second Amended Consolidated Complaint ("Complaint"), Respondent denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.     In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.     (a)     In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

       (b)     In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

       (c)     In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.     In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.     In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.     In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Gaby Toledano is the Chief People Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha,

22-60493.5287

Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors." Respondent admits Elon Musk, Gaby Toledano, Josh Hedges, Mark Lipscomb, Emee Cruz, Liza Lipson, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi, David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act. Respondent admits that Lauren Holcomb has been an agent of Respondent within the meaning of Section 2(13) of the Act. Respondent denies each and every remaining allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "Red Shirt Supervisor No. l," "John Doe," or "Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title. She is currently a "Sr. EHS Program Manager, Training & Education." Her previous title was "Sr. EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title. She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He was the "Director, Global Environmental Health and Safety." The Complaint misidentifies David Zweig's title. He is a "Senior Human Resources Partner." The Complaint misidentifies Ricky Gecewich's title. He is a "Sr. Employee Relations Manager." His previous title was "Principal Employee Relations Partner." The Complaint misidentifies Dave Teston's title. He is a "Associate Manager, Training  His previous title was "Associate Manager, Manufacturing." The Complaint misidentifies Josh Hedge's title. He is currently a "Sr. Director of HR".

6.     In response to Paragraph 6 of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.     In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs 7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but

22-60493.5288

those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete acknowledgement, and further denies that the acknowledgement violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality Agreement." The acknowledgement was an acknowledgement of the underlying Employee Proprietary Information and Inventions Agreement. Respondent also denies that this agreement was in effect since October 2016. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.      In response to Paragraph 7(b) of the Complaint, Respondent denies each and every allegation contained therein.

9.      In response to Paragraph 7(c) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos. 1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

10.     In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 1" is not identified in the Complaint.

11.     In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 1" is not identified in the Complaint.

12.     In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 3" is not identified in the Complaint.

13.    In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies

each and every allegation contained therein and does not have knowledge or information

sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security

Guard No. 4" is not identified in the Complaint.

14.    In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies

each and every allegation contained therein and does not have knowledge or information

sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male

Supervisor No. 1" is not identified in the Complaint.

15.    In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies

each and every allegation contained therein and does not have knowledge or information

sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male

Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the

General Counsel)" are not identified in the Complaint.

16.    In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and

every allegation contained therein.

17.    In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every

allegation contained therein.

18.    In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every

allegation contained therein.

19.    In response to Paragraph 7(k) of the Complaint, Respondent denies each and every

allegation contained therein.

20.    Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from

Respondent's General Assembly Expectations applicable to production associates in General

Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have

been taken out of context and Respondent denies that they are accurate statements of the

complete General Assembly Expectations, and further denies that the General Assembly

Expectations violates the Act.  Respondent also denies that the General Assembly Expectations

22-60493.5290

were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21.    In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22.    In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23.    In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24.    In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25.    In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26.    In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27.    In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.5291

28.    In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29.    In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30.    In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31.    In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32.    In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33.    In response to Paragraph 7(y) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

34.    In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

35.    In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

36.    In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

37.    In response to Paragraph 8(d) of the Complaint, Respondent admits the allegation contained therein.

38.    In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

39.    In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.5292

40.    In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

41.    In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

42.    In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

43.    Respondent reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

## AFFIRMATIVE DEFENSES

1.    The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.    To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.    The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.    Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

5.    Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing

22-60493.5293

facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets. Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.    The Complaint does not state a claim upon which relief can be granted.

7.    Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.    Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.    Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.    Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

11.    The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.    Respondent reserves the right to modify or supplement defenses as may be appropriate.

22-60493.5294

Respondent respectfully requests that the Administrative Law Judge dismiss the Complaint in its entirety and grant Respondent all appropriate relief.

Dated: June 18, 2018

By    _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

22-60493.5295

22-60493.5296

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | |
| **and** | |
| **MICHAEL SANCHEZ, an Individual** | **Case No. 32-CA-197020** |
| **and** | |
| **JONATHAN GALESCU, an Individual** | **Case No. 32-CA-197058** |
| **and** | |
| **RICHARD ORTIZ, an Individual** | **Case No. 32-CA-197091** |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case No. 32-CA-197197**<br>**Case No. 32-CA-200530**<br>**Case No. 32-CA-208614**<br>**Case No. 32-CA-210879** |

**RESPONDENT TESLA, INC.'S ANSWER TO
THIRD ORDER CONSOLIDATING CASES AND
SECOND AMENDED CONSOLIDATED COMPLAINT**

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.5297

## RESPONDENT'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Second Amended Consolidated Complaint ("Complaint"), Respondent does not object to consolidation of the charges cited above, but denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.     In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.     (a)     In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

       (b)     In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

       (c)     In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.     In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.     In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.     In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production

Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha, Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors."  Respondent admits Elon Musk, Mark Lipscomb, Emee Cruz, Liza Lipson, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi, David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act.  Respondent denies that Lauren Holcomb has been a supervisor of Respondent within the meaning of Section 2(11) of the Act and agent of Respondent within the meaning of Section 2(13) of the Act based on lack of knowledge or information sufficient to form a belief as to the truth or falsity; counsel for Respondent's investigation is only now beginning and reserves the right to amend following conclusion of counsel's investigation.  Respondent denies each and every remaining allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "Red Shirt Supervisor No. l," "John Doe," or "Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title.  She is currently a "Sr. EHS Program Manager, Training & Education."  Her previous title was "Sr. EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title. She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He was the "Director, Global Environmental Health and Safety." The Complaint misidentifies David Zweig's title. He is a "Senior Human Resources Partner."  The Complaint misidentifies Ricky Gecewich's title. He is a "Sr. Employee Relations Manager."  His previous title was "Principal Employee Relations Partner."  The Complaint misidentifies Dave Teston's title.  He is a "Associate Manager, Training  His previous title was "Associate Manager, Manufacturing."

6.     In response to Paragraph 6 of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a

22-60493.5299

belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.      In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs 7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete acknowledgement, and further denies that the acknowledgement violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality Agreement." The acknowledgement was an acknowledgement of the underlying Employee Proprietary Information and Inventions Agreement. Respondent also denies that this agreement was in effect since October 2016. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.      In response to Paragraph 7(b) of the Complaint, Respondent denies each and every allegation contained therein.

9.      In response to Paragraph 7(c) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos. 1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

10.      In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 1" is not identified in the Complaint.

11.      In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 1" is not identified in the Complaint.

22-60493.5300

12.     In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 3" is not identified in the Complaint.

13.     In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 4" is not identified in the Complaint.

14.     In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" is not identified in the Complaint.

15.     In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the General Counsel)" are not identified in the Complaint.

16.     In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and every allegation contained therein.

17.     In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every allegation contained therein.

18.     In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every allegation contained therein.

19.     In response to Paragraph 7(k) of the Complaint, Respondent denies each and every allegation contained therein.

20.     Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from Respondent's General Assembly Expectations applicable to production associates in General

Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete General Assembly Expectations, and further denies that the General Assembly Expectations violates the Act. Respondent also denies that the General Assembly Expectations were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21. In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22. In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23. In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24. In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25. In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26. In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a

belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27.    In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

28.    In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29.    In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30.    In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31.    In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32.    In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33.    In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

34.    In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

35.    In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

36.    In response to Paragraph 8(d) of the Complaint, Respondent denies each and every allegation contained therein.

37.    In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.5303