38.    In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

39.    In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

40.    In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

41.    In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

42.    Counsel for Respondent's investigation is only now beginning and reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

<b><u>AFFIRMATIVE DEFENSES</u></b>

1.    The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.    To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.    The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.    Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

5.    Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets.  Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.    The Complaint does not state a claim upon which relief can be granted.

7.    Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.    Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.    Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests.  Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.    Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

22-60493.5305

11.    The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.    Respondent reserves the right to modify or supplement defenses as may be appropriate.

Respondent respectfully requests that the Administrative Law Judge dismiss the Complaint in its entirety and grant Respondent all appropriate relief.

Dated:  April 23, 2018

By    _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

22-60493.5306

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On April 23, 2018, I e-filed with the NLRB and served true copies of the document(s) described as **RESPONDENT TESLA, INC.'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT** on the interested parties in this action via the U.S. Postal Service, First Class Mail and electronic mail (if available) as follows:

| | |
|---|---|
| Margo A. Feinberg, Esq.<br>Schwartz, Steinsapir, Dohrmann & Sommers LLP<br>6300 Wilshire Blvd., Suite 2000<br>Los Angeles, CA 90048<br>margo@ssdslaw.com | Electronic & U.S. Mail |
| Jonathan Galescu<br>361 Carousel Drive<br>Vallejo, CA 94589 | U.S. Mail |
| Richard Ortiz<br>37607 Walnut<br>Newark, CA 94560 | U.S. Mail |
| Michael Sanchez<br>25225 Soto Road<br>Hayward, CA 94544 | U.S. Mail |
| Susan Reed<br>UAW<br>8000 E. Jefferson Avenue<br>Detroit, MI 48214 | U.S. Mail |
| Edris Rodriguez Ritchie<br>Field Attorney<br>NLRB – Region 32<br>1301 Clay Street, Suite 300N<br>Oakland, CA 94612<br>Edris.RodriguezRitchie@nlrb.gov | Electronic & U.S. Mail |

22-60493.5307

Valerie Hardy-Mahoney                                                    U.S. Mail
Regional Director
NLRB – Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612


    **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelopes for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.

    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the persons with e-mail addresses as listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on April 23, 2018, at San Francisco, California.


_____
Sarah Smith

22-60493.5308

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

| | |
|---|---|
| **TESLA, INC.** | |
| **and** | |
| **MICHAEL SANCHEZ, an Individual** | **Case 32-CA-197020** |
| **and** | |
| **JONATHAN GALESCU,  an Individual** | **Case 32-CA-197058** |
| **and** | |
| **RICHARD ORTIZ, an Individual** | **Case 32-CA-197091** |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case 32-CA-197197** <br> **Case 32-CA-200530** <br> **Case 32-CA-208614** <br> **Case 32-CA-210879** |
| | **Date: June 22, 2018** |

**AFFIDAVIT OF SERVICE OF GENERAL COUNSEL'S OPPOSITION TO RESPONDENT TESLA, INC.'S MOTION TO DISMISS THE AMENDMENT TO THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION**

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Keahn Morris, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**
**VIA EMAIL: kmorris@sheppardmullin.com**

Margo A. Feinberg, Esq.
Daniel Curry, Esq.
Julie Alarcon, Esq.
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margo@ssdslaw.com**
**VIA EMAIL: dec@ssdslaw.com**
**VIA EMAIL: jsa@ssdslaw.com**

National Labor Relations Board
Division of Judges
901 Market St., Suite 485
San Francisco, CA  94103
**E-FILE**

| June 22, 2018 | Ida Lam, Designated Agent of NLRB |
|---|---|
| | Name |
| | /s/ Ida Lam |
| | Signature |

1  MARGO A. FEINBERG (100655)
   DANIEL E. CURRY (297412)
2  JULIE S. ALARCÓN (316063)
   SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS, LLP
3  6300 Wilshire Boulevard, Suite 2000
   Los Angeles, California 90048
4  Telephone:   (323) 655-4700
   Fax:   (323) 655-4488
5
6  *Attorneys for Michael Sanchez, Jonathan Galescu, Richard Ortiz, and International Union,*
   *United Automobile, Aerospace And Agricultural Workers Of America, AFL-CIO*
7
8              **UNITED STATES OF AMERICA**
9
       **BEFORE THE NATIONAL LABOR RELATIONS BOARD**
10
          **SAN FRANCISCO DIVISION OF JUDGES**
11

| 12 | TESLA, INC., | **Case Nos.** | **32-CA-197020** |
| 13 | Respondent, | | **32-CA-197058** |
| | | | **32-CA-197091** |
| 14 | and | | **32-CA-197197** |
| | | | **32-CA-200530** |
| 15 | MICHAEL SANCHEZ, an Individual, | | **32-CA-208614** |
| | | | **32-CA-210879** |
| 16 | Charging Party, | | |
| 17 | and | **CHARGING PARTIES' OPPOSITION** | |
| | | **TO RESPONDENT'S MOTION TO** | |
| 18 | JONATHAN GALESCU, an Individual, | **DISMISS** | |
| 19 | Charging Party, | | |
| 20 | and | | |
| 21 | RICHARD ORTIZ, an Individual, | | |
| 22 | Charging Party, | | |
| 23 | and | | |
| 24 | INTERNATIONAL UNION, UNITED | | |
| | AUTOMOBILE, AEROSPACE AND | | |
| 25 | AGRICULTURAL WORKERS OF | | |
| | AMERICA, AFL-CIO, | | |
| 26 | | | |
| 27 | Charging Party. | | |
| 28 | | | |

ID 354908                                    CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

I

## PRELIMINARY STATEMENT

Respondent Tesla's Motion to Dismiss is based on a flawed premise: that the allegations in the General Counsel's Amendment were not alleged in any of the Charging Party's Unfair Labor Practice Charges. This is patently false. No less than two Unfair Labor Practice Charges—32-CA-200530 and 32-CA-208614—and two subsequent amendments to those charges cover the allegations in the General Counsel's Amendment. Because the allegations are covered by these Charges, resorting to the Board's "closely related" test is not even necessary.

Yet even applying the "closely related" test, the Respondent's motion lacks any merit. The allegations in the General Counsel's Amendment meet all three criteria laid out in *Redd-I, Inc.*, 290 NLRB 1115 (1988) and clarified by *Carney Hospital*, 350 NLRB 627 (2007). The Respondent's assertions to the contrary constitutes nothing more than wishful thinking. The conduct of Tesla executives on June 7, 2017 follows a clear chain of events previously alleged where employees have been intimidated, harassed, and interrogated for protected activity involving safety conditions. As explained below, the June 7, 2017 was the culmination of these events.

II

## ARGUMENT

### A.    THE ALLEGATIONS IN THE GENERAL COUNSEL'S AMENDMENT WERE ALLEGED IN CHARGE NOS. 32-CA-200530 AND 32-CA-208614

An unfair labor practice charge is not a formal pleading. Its function is not to give notice to the respondent of the exact nature of the charges against it; that is the function of the complaint. *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959); *Redd-I, Inc.*, 290 NLRB at 1116-17.

Charges therefore do not need to list every 8(a)(1) allegation with particularity. In fact, the Board has long held that a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1). *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992); *Columbia University*, 250 NLRB 1220, 1222 fn 2 (1980); *Gerig's Dump Trucking, Inc.* 320 NLRB 1017, 1019 (1996).

22-60493.5311

1   In its desperation to remove these allegations, the Respondent has concocted a

2   jurisdictional objection that skips over the very words at issue. The objective truth is that each of

3   the General Counsel's allegations raised it his Amendment were properly pled in an Unfair Labor

4   Practice charge within the 10(b) period. No application of the 'closely related' test is necessary

5   because the allegations are within the charges themselves. In fact, no less than four timely

6   charges or amended charges allege the conduct described in the Amendment with sufficient

7   particularity.

8   The Respondent's real complaint seems to be that the allegations were not part of the

9   General Counsel's initial investigation or earlier complaints. However, just because the

10  Respondent doesn't like timing of an Amendment doesn't mean it's improper. In fact, the

11  Amendment in no way prejudices Respondent, who has another three months to investigate and

12  prepare a defense. The Respondent does not even try to claim otherwise. Its motion to dismiss

13  should be denied.

14      **1.    Charge No. 32-CA-200530**

15      On June 12, 2017, the Union filed Unfair Labor Practice Charge No. 32-CA-200530,

16  which alleges:

17      On or about May 25, 2017 and ongoing, the above-named Employer violated the
        act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz,
18      and others for engaging in protected concerted activity regarding worker safety
        concerns and other working conditions.
19

20  On July 28, 2017, the Union amended this charge to state, in relevant part:

21      Within the last six months, the above-named Employer, through its agents,
        violated the Act by…intimidating and harassing employees for their Section 7
22      activities.

23  Both the original and the amended charges in Case No. 32-CA-200530 wholly encompass the

24  allegations in the General Counsel's Amendment. Labeling unionization as futile and telling

25  employees nobody wants the union are examples of restraint and coercion of employees that tends

26  to intimidate. *Wilson Tree Co., Inc.*, 312 NLRB 883, 896 (1993) (statements implying union

27  activity is futile is intimidating). The charge and amended charges' use of the word

28  "intimidating" therefore covers these allegations in the GC's Complaint.

ID 354908                                                    CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1    The Charging Party is not required to specifically state the date of an incident or the

2  people involved in its Unfair Labor Practice Charge.  The charges cover the relevant date – June 7

3  – through the words "and ongoing" in the original charge and "within the last six months" in the

4  amended charge.  The original charge also includes the specific topic that the June 7, 2017

5  meeting covered: "worker safety concerns."  No further specificity is required.

6         **2.    Charge No. 32-CA-208614**

7         On October 25, 2017, about four and a half months after the allegations in Paragraph 7(y)

8  took place, the UAW filed Charge No. 32-CA-208614, stating, in part:

9         Within the past six months and ongoing, Tesla, Inc., though its agents, has
       interfered with, restrained, and coerced employees in the exercise of the rights
10       guaranteed in Section 7 of the Act by intimidating and harassing employees for
       their Section 7 Activities.
11

12  On March 13, 2018, the Union amended this charge to state:

13       Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise
       of rights guaranteed in Section 7 of the Act by…making a statement of futility
14       regarding employee support for the Union…

15         This charge and amended charge also fully encompass the allegations in the General

16  Counsel's Amendment for the same reasons stated above.  Furthermore, the March 18, 2018

17  amendment specifically uses the word "futile."  The Charging Parties therefore filed not one, but

18  two timely charges alleging the June 7, 2017 conduct violated the Act.  The Respondent's efforts

19  to dodge these allegations must fail.

20  **B.    THE AMENDMENT IS PROPER BECAUSE THE ALLEGATIONS IN THE**

21         **AMENDMENT ARE CLOSELY RELATED TO ALLEGATIONS IN A TIMELY**

22         **FILED CHARGE**

23         Even assuming, *arguendo*, that the allegations in the General Counsel's Amendment were

24  not properly alleged in any of the Charging Parties' Unfair Labor Practice Charges, the General

25  Counsel can still include these allegations in the complaint under the Board's "closely related"

26  doctrine.  The General Counsel has "broad investigatory power" to deal with "unfair labor

27  practices which are related to those alleged in the charge and which grow out of them while the

28  proceeding is pending before the Board."  *Fant Milling Co.*, 360 U.S. at 308-09 (1959).

ID 354908                                                  CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1    The Region may make allegations that are "closely related" to a timely filed charge and
2  involve conduct occurring within six months of that timely charge. *Carney*, 350 NLRB at 628.
3  Under the *Redd-I* test, the Board (1) considers whether the otherwise untimely allegations involve
4  the same legal theory as the allegations in the timely charge; (2) considers whether the otherwise
5  untimely allegations arise from the same factual situation or sequence of events as the allegations
6  in the timely charge; and (3) "may look" at whether a respondent would raise the same or similar
7  defenses to both the untimely and timely charge allegations. *Redd-I*, 290 NLRB at 1118; *Seton*
8  *Co.*, 332 NLRB 979, 983 (2000). *Carney* further refined the second prong of this test, stating that
9  it is satisfied where the two sets of allegations "[1] demonstrate similar conduct, usually during
10  the same time period with a similar object, or [2] there is a causal nexus between the allegations
11  and they are part of a chain or progression of events, or [3] they are part of an overall plan to
12  undermine union activity." *Carney Hospital*, 350 NLRB at 630.

13    In *Seton Co.*, the Charging Party filed a charge on June 7, 1995 alleging, among other
14  acts, "interrogation" and "implied threats of discipline" that interfered with, restrained and
15  coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act. 332 NLRB
16  at 983. In its Complaint, the General Counsel alleged that the employer "interrogated employees
17  about their union membership, activities, and sympathies" and "impliedly threatened employees
18  with discipline if the employees talked about the Union" in about Mid-February 1995. The
19  Board, applying the test from *Redd-I, Inc.*, found that both allegations in the Complaint were
20  "closely related" to the Charge described above.

21    For the first prong, the Board found that the charge and complaint allegations involved
22  "the same section of the Act (Section 8(a)(1)) and the same legal theory (interference with
23  employees' Section 7 right to select the Union as their collective-bargaining representative)." For
24  the second prong, the Board found "both sets of allegations involve the same types of conduct.
25  Interrogation and implied threats of discipline are specifically alleged in both the amended charge
26  and the complaint." The Board also found that the employer would deploy the same defense to
27  both allegations.

28  //

22-60493.5314

1    The General Counsel can easily meet all three parts of the *Redd-I* test. First, the new

2  allegations employ the same legal theory as several other allegations in the Complaint:

3  interference with employees' Section 7 right to select the Union as their collective-bargaining

4  representative in violation of Section 8(a)(1) of the Act. As described above, the Board in *Seton*

5  found this sufficient to satisfy prong one. 332 NLRB 979, 983.

6    Second, the allegations related to the June 7, 2017 meeting are "part of a chain or

7  progression of events." *Carney*, 350 NLRB at 630. Tesla held the meeting with employees on

8  June 7, 2017 in direct reaction to employee protected concerted activity regarding safety issues

9  raised by employees. This protected activity is already the subject of numerous charges.

10    First, on February 10, Mr. Moran issued an online article discussing safety problems at

11  Tesla. He was subsequently interrogated about the article by Tesla, and he and other employees

12  were intimidated and harassed by Tesla security guards when they attempted to hand out his

13  article to co-workers entering and exiting the plant, as alleged in Charge No. 32-CA-200530 and

14  Complaint paragraphs 7(c) through (i).

15    Next, on April 5, 2017, Tesla attempted to prohibit Mr. Galescu and Mr. Ortiz from

16  discussing the OSHA Logs they lawfully requested, as alleged in Amended Charge No. 32-CA-

17  200530 and Complaint Paragraph 7(k). Then, on May 24, 2017, after their personal

18  representative, Worksafe, released a report based on the OSHA logs, Tesla interrogated and

19  harassed Mr. Galescu and Mr. Ortiz on the same day, as alleged in Charge No. 32-CA-200530

20  and Complaint paragraph 7(q). On the same day, employees who handed out flyers summarizing

21  the Worksafe report were harassed and intimidated by Tesla security guards, as alleged in Charge

22  No. 32-CA-200530 and Complaint Paragraphs 7(n) through (p).

23    On June 7, 2017 senior executives and employees, some of whom were the very

24  employees involved in the previous events, met to discuss the safety concerns raised through the

25  above-described protected concerted activity. The meeting was directly instigated by the

26  previous events and the subject of the meeting was how to appease the employees involved and

27  dissuade them from further action. This meeting can therefore only be interpreted as "part of a

28  chain or progression of events" with previous allegations that established prong two.

22-60493.5315

1          Further, the previous allegations and the allegations in the Amendment demonstrate

2    "similar conduct during the same time period with a similar object," an alternate formulation of

3    prong two. *Carney*, 350 NLRB at 630. The statements of futility alleged in the Amendment

4    match similar alleged statements during the same time period that were meant to discourage union

5    activity: A Tesla security guard telling employee Michael Sanchez, "Unions are worthless, you

6    shouldn't join one" in February, 2017, and a Quality Control Supervisor telling employee Mike

7    Williams, "the union is never going to get in here, this is Tesla," in September, 2017. These

8    statements of futility match the allegations Amendment, satisfying prong two.

9          Finally, while not a required criteria, Tesla would raise the same defense to the allegations

10    in the Amendment as it would have to the previous allegations: that such conduct falls under

11    employer free speech rights protected by Section 8(c) of the Act. As Tesla already had the

12    opportunity to raise this argument before the Board during the investigation phase, and likely did

13    so, and the Board nonetheless went forward with its complaint on those allegations, including this

14    allegation in the Complaint will not have a prejudicial effect.

15          Finally, additional relevant factors favor allowing the General Counsel to amend the

16    Complaint. The General Counsel moved to amend the complaint before the hearing even began,

17    and the Respondent will have three months to investigate and prepare before the hearing resumes

18    on September 24, 2018. See *Long Beach Mem'l Med. Ctr., Inc*. 366 NLRB No. 66, fn 12 (2018).

19    Further, the Respondent does not assert that it was denied sufficient time to prepare its defense or

20    otherwise suffered any prejudice. *Id.*

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

III

## CONCLUSION

For all the reasons set forth above Charging Parties request that the motion of Tesla, Inc. to dismiss be denied.

DATED:     June 22, 2018     SCHWARTZ, STEINSAPIR, DOHRMANN
& SOMMERS LLP
MARGO A. FEINBERG
DANIEL E. CURRY
JULIE S. ALARCÓN

By _____
MARGO A. FEINBERG
Attorneys for Charging Parties Michael Sanchez,
Jonathan Galescu, Richard Ortiz, and International Union,
United Automobile, Aerospace and Agricultural Workers of
America, AFL-CIO

ID 354908                    CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1

## PROOF OF SERVICE BY ELECTRONIC MAIL

2

**Case No. 32-CA-197020 et al.**

3

RENEE CARNES certifies as follows:

4

5 I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5202.

6

7 On June , 2018, I caused the foregoing document(s) described as:

8 **CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

be served by electronic mail upon the person(s) shown below,

9

10 Edris W.I. Rodriguez-Ritchie              Noah J. Garber
National Labor Relations Board, Region 32    National Labor Relations Board, Region 32
1301 Clay Street, Suite 300N               1301 Clay Street, Suite 300N
11 Oakland, CA 94612-5224                  Oakland, CA 94612-5224
e-mail: edris.rodriguezritchie@nlrb.gov     e-mail: noah.garber@nlrb.gov

12
Mark Ross, Esq.
13 Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 17
14 San Francisco, CA 94111-4158
e-mail: mross@sheppardmullin.com

15

16

17 __X__ **BY E-MAIL:** By transmitting a copy of the above-described document(s) via e-mail to the individual(s) set forth above at the e-mail addressed indicated.

18

19 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20 Executed on June 22, 2018, at Los Angeles, California.

21

22                                             RENEE CARNES

23

24

25

26

27

28

ID 353707

22-60493.5318

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## CONSOLIDATED REPLY TO THE GENERAL COUNSEL'S AND THE CHARGING PARTIES' OPPOSITIONS TO RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

A Region lacks jurisdiction to originate complaints on its own initiative and in the

absence of a supporting, timely-filed charge. The question presented by Tesla's Motion to

Dismiss ("Motion") is therefore a simple one: are the allegations of the Region's Amendment to

the Second Amended Complaint ("Amendment") regarding the events of a June 7, 2017 meeting

supported by a timely-filed charge? To answer that question in the affirmative, the General

Counsel has the burden of proving that the Amendment's allegations were, at a minimum,

"closely related" to a charge filed by the Union within 6 months of that date.

22-60493.5319

Both the General Counsel and the Union bend over backwards to avoid giving the simplest answer to this simple question, i.e., that the Union filed any specific charge in response to the allegations asserted in the General Counsel's Amendment. They instead argue that the vague and generically plead 8(a)(1) language of no less than *six different charges*—and not even the same charges—somehow individually and cumulatively support the Amendment's allegations regarding a single meeting. They alternatively take the position that, because the Union has filed more than a dozen charges against Tesla during its two-year-long organizing campaign, statements made by Tesla's CEO Elon Musk during a June 7, 2017 meeting surely must "closely relate" to at least one of them.

Far from establishing that his jurisdiction exists, the General Counsel argues that an administrative law judge lacks the authority to test it. He unsurprisingly makes no attempt to explain why his July 7, 2017, November 21, 2017 and December 20, 2017 letters to Tesla which specifically enumerate *56 separate allegations* by the Union make no reference to Elon Musk or any June 7, 2017 meeting. Nor does he even try to explain why he did not ask Ms. Toledano a single question about any June 7, 2017 meeting when he took her affidavit on February 5, 2018. Nor does he even try to explain why he waited until the eve of trial to assert nearly year-old allegations against Tesla's high-level executives only days after Tesla petitioned to revoke its and the Union's overbroad and burdensome subpoenas seeking their electronic communications and testimony.

Most tellingly, the General Counsel does not address Tesla's contention that he amended the complaint on the eve of trial in an attempt to justify his and the Union's overly broad subpoena requests rather than agreeing to narrow them to the issues in dispute. He instead submits that, as the "caretaker of the public interest and specifically the public rights at issue as a

22-60493.5320

result of Respondent's violations of the Act," allowing the amendment is "compelled by the vindication of these public rights." While the General Counsel's zeal as a caretaker of the public interest cannot be doubted, Tesla would gently remind him that employers also enjoy rights. It is accordingly no less entitled to expect that he perform his duties within the limitations imposed upon him by Congress. Because the General Counsel's opposition fails to establish that the Region has jurisdiction over the allegations of the Amendment, they should be dismissed.

### A.    Not Even the Union and the General Counsel Can Agree on Which Charges Support the Allegations of the Amendment.

The Union observes in its opposition that, per the Supreme Court's decision in *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959), the function of an unfair labor practice charge is not to give notice to the respondent of the exact nature of the charges against it. Citing to the Board's holding in, among other cases, *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992), it further submits that "a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1)." Union's Opp. at p. 1. The Union accordingly claims that the "objective truth is that each of the General Counsel's allegations raised it [sic] his Amendment were properly pled" in the charges and amended charges filed in Case Nos. 32-CA-200530 and 32-CA-208614. Union's Opp. at pp. 1-3. Yet the General Counsel contends that the allegations of his Amendment were also "encompassed" by the amended charges filed on July 28, 2017 in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197. GC's Opp. at p. 2.

If, as the Union suggests, *Fant Milling* created some prophylactic authorization for Regions to issue Complaints on any putative Act violation newly discovered during investigations (untethered to any specific, underlying charge), the Board would never have developed the 1988 *Redd-I* "closely related" test. In both *Fant Milling* and *National Licorice v.*

22-60493.5321

*NLRB*, 309 U.S. 350 (1940), the Supreme Court interpreted § 10(b)'s charge-filing requirement and affirmed the rule that the Board can prosecute allegations occurring after a party files a charge, but *only* those that "are *related to those alleged in the charge and which grow out of them*." *National Licorice*, 309 U.S. 369; *Fant Milling*, 360 U.S. at 308 ("What has been said is not to imply that the Board is, in the words of the Court of Appeals, to be left 'carte blanche' to expand the charge as they might please, or to ignore it altogether.  Here we hold only that the Board is not precluded from dealing adequately with unfair labor practices *which are related to those alleged in the charge and which grow out of them* while the proceeding is pending before the Board.") (emphasis added).

The Union's and the General Counsel's arguments to the effect that anywhere between four and six different charges somehow encompass the allegations of the Amendment belies any notion that they were at least "related to" and "gr[e]w out of" any one of them as required by the Supreme Court's holdings in *Fant Milling* and *National Licorice*.  To hold otherwise would essentially allow a union to initiate sweeping investigations of indefinite duration by the General Counsel into the employer-targets of its organizing efforts by filing general, nonspecific 8(a)(1) charges against them once every 6 months.  Relying on the Board's decision in *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992), the Union seeks sanction of such tactics by taking the position that at least one of the 23 generally-worded 8(a)(1) allegations of its four separate charges is sufficient to support the specific allegations of the Amendment seeks to sanction such tactics.

Fortunately, both the Board and the D.C. Circuit have since recognized that the Board's reasoning in *Embassy Suites* misapprehends the principles articulated by the Supreme Court in *Fant Milling* and *National Licorice*.  In *Lotus Suites v. NLRB*, 32 F.3d 558, 589-592 (1994), the

22-60493.5322

D.C. Circuit denied the Board's cross-petition for enforcement of its decision in *Embassy Suites* and set aside its order. The Court stated:

> [W]hen the Board issues a complaint, it does not have "carte blanche to expand the charge as [it may] please, or to ignore it altogether." Therefore, if in a complaint "the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge." . . . The complaint in this case cannot possibly meet the *Nickles Bakery* standard that "the complaint allegation be factually related to the allegation in the underlying charge" because the underlying charge alleges no facts. . . . What, pray, were the matters of concern to the Union? Why, any violations of § 8(a)(1) that the Board might turn up in its investigation. Nothing more specific appears in the charge, anyway. It hardly matters who filled in the blank space on the charge form if the box remains so lacking in content that it is not possible sensibly to apply the test of "substantial relation" between the factual allegations in the charge and those in the complaint. Indeed, if the Board's point were accepted, then a charging party could, in effect, cause the Board to do what the Congress prohibited it from doing, viz., embarking upon an unbounded inquiry into any and all possible violations of the Act.

*Id* at 591-592.

The Board no longer relies on its decision in *Embassy Suites* or otherwise takes the position that "a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1)." Rather, § 3-130 of the current edition of the Bench Book provides that a charge "is sufficient if it informs the alleged violator of the general nature of the violation charged against him and enables him to preserve the evidence relating to the matter." (citing *NLRB v. Louisiana Mfg. Co.*, 374 F.2d 696, 704–705 (8th Cir. 1967), quoting from *NLRB v. Raymond Pearson, Inc.*, 243 F.2d 456, 458 (5th Cir. 1957)). Suffice it to say that under no circumstances would either the Union's general 8(a)(1) "harassment," "interrogation," or "solicitation" charges or any of the General Counsel's related communications enable Tesla to preserve evidence related to a June 7, 2017 meeting conducted by CEO Elon Musk and Chief People Officer Gaby Toledano. To the contrary: by alleging that Tesla committed these acts "on or about" February 10, 2017, May 24, 2017, and

22-60493.5323

May 25, 2017, the absence of any reference June 7, 2017 in the initial charge in 32-CA-200530 would arguably *discourage* a charged party from preserving evidence relating to that date.

Thus, the General Counsel's and the Union's repeated references to multiple charges which generally allege "harassment," "interrogation," and/or "intimidation" in violation of 8(a)(1) are "so lacking in content" that they cannot possibly support the specific 8(a)(1) allegations of the Amendment. This rings particularly true given that the words "harassment," "interrogation," or "intimidation" *are not even included in the General Counsel's Amendment.*

> **B.     The General Counsel's Reliance on a "Course of Conduct Aimed at Precluding Union Activity" Argument to Establish the Second Prong of the "Closely Related" Test Ignores *Carney Hospital.***

Citing to *Marriot* Corp., 310 NLRB 1152, 1160 (1993) and *Jennie-O Foods*, 301 NLRB 305 (1991), the General Counsel broadly asserts that the Amendment allegations are somehow "closely related" to the allegations in "*all*" of the operative charges because they are part of Respondent's course of conduct aimed at precluding union activity". GC's Opp. at p. 4 (emphasis added). He then points to evidence adduced at the hearing in support of the allegations of the Second Amended Complaint as conclusively establishing that the amendment is "part-and-parcel of the same organizing campaign and with Respondent's unlawful anti-union conduct during the ongoing organizing campaign." *Id* at p. 5.

First, the General Counsel's attempt to establish that the allegations of the Region's Amendment are "closely related" to those of the Region's Second Amended Complaint—and not to those of any timely-filed charge—is a legal non-sequitur. If the sufficiency of the allegations of a Region's amendment were tested by their factual and legal relatedness to the allegations of the Region's underlying complaint, the charge filing requirement of § 10(b) and the Board's Rules and Regulations would be rendered a nullity.

22-60493.5324

Second, the General Counsel's argument cannot be reconciled with *Carney Hospital*, 350 NLRB 627, 627 (2007). There, the Board held that "the mere occurrence of the alleged violations during or in response to the same organizing campaign is insufficient to establish the close factual relationship required by Section 10(b)." Rather, the Board required some additional connection, either (1) "similar conduct, usually during the same time period with a similar object," or (2) "a causal nexus between the allegations *and* they are [(a)] part of a chain or progression of events, or [(b)] they are part of an overall plan to undermine union activity." *Id* at 630. (emphasis added). Applying this new limitation, the Board held that untimely 8(a)(1) job loss threat allegations and a timely charged suspension allegation did not involve similar conduct and were not part of a "chain or progression of events" where the supervisor that allegedly made the job loss threat was not involved in that employee's subsequent suspension. *Id.* Because there was no indication that the suspension and the alleged 8(a)(1) violations were anything more than separate actions carried out independently by several different Respondent officials, the Board also held that they were not "part of an organized plan to resist organization" even though they occurred in the midst of the same ongoing organizing campaign. *Id.*

Here, none of the Union's charges alleges—and the General Counsel makes no attempt to show—that Elon Musk or Gaby Toledano had any involvement whatsoever in Charging Party Ortiz' termination or Charging Party Moran's suspension. Nor does any one of the Union's charges allege that any of the Charging Parties were discriminated or retaliated by virtue of their participation in any June 7, 2017 meeting. Though the June 7, 2017 meeting alleged in the Amendment occurred in the midst of the same organizing campaign that formed the basis for the Union's timely filed charges, it is black letter law that "the mere occurrence of the alleged violations during or in response to the same organizing campaign is insufficient to establish the

22-60493.5325

close factual relationship required by Section 10(b)." *Carney Hospital*, 350 NLRB 627, 627

(2007). Thus, just as the Union's general 8(a)(1) charge allegations are insufficient to support

the specific 8(a)(1) allegations of the Amendment, the General Counsel's inability to show both

a causal nexus *and* either a chain or progression of events or an overall plan to undermine union

activity between any timely filed charge and the allegations of the Amendment precludes him

from establishing the second prong of the "closely related" test.

C.    **Neither the General Counsel or the Union Even Attempts to Explain the Unusual Circumstances Surrounding the Issuance of the Amendment.**

In her June 8, 2018 Order on Tesla's petition to revoke the Union's subpoena *ad*

*testificandum* issued to Elon Musk, Administrative Law Judge Amita Tracy ("Judge Tracy")

wrote:

> I am concerned that there is no valid explanation from the General Counsel or the
> Charging Party as to why, at the eleventh hour on the eve of trial and after
> investigating a charge since 2017, the amended complaint was filed on June 4,
> 2018 adding facts which may or may not be admitted by the Respondent and
> which retains the current June 11, 2018 trial date.

Rather than attempting to address Judge Tracy's concerns by providing any valid

explanation, the General Counsel incredibly argues that "an administrative law judge is not

empowered with the authority[1] to withdraw a properly issued and noticed amendment to a

complaint issued prior to a hearing". GC's Opp. at p. 1. Likewise, the Union offers only that

"just because the Respondent doesn't like [the] timing of an Amendment doesn't mean it's

improper." Union's Opp. at p. 2. Tesla does not bring this Motion because it "does not like" the

timing of the General Counsel's Motion. Rather, under § 102.17 of the Board's Rules, the

---

[1] Moreover, § 102.35(a)(8) specifically provides that an administrative law judge has the
authority to rule on motions to dismiss complaints or portions thereof.

22-60493.5326

General Counsel could only amend the complaint prior to the start of the hearing "upon such terms as may be deemed just."

An explanation is accordingly warranted for why none of the initial letters sent to Tesla by the General Counsel regarding any of the charges filed by the Union makes any reference whatsoever to Elon Musk or any June 7, 2017 meeting. An explanation is additionally warranted for why the General Counsel never requested to take Mr. Musk's or Ms. Toledano's affidavits to obtain evidence as to whether they made unlawful statements during any June 7, 2017 meeting. An explanation is additionally warranted for why the General Counsel never asked Ms. Toledano any questions about any June 7, 2017 meeting when he took her affidavit in February 2018 regarding an unrelated charge. An explanation is additionally warranted for why, notwithstanding the clear instruction of section 10054 of the Casehandling Manual, the General Counsel did not disclose the general nature of the Amendment's 8(a)(1) allegations, the general locale, the identities of the supervisors involved, and the date of the conduct before issuing the Amendment. Finally, if the allegations of the Amendment were encompassed by and/or "closely related" to anywhere between four to six charges filed by the Union, an explanation is warranted for why the General Counsel's "investigation" into the allegations of the Amendment deviated in nearly every measurable respect from his investigation into the allegations of those same four to six charges.

Coupled with the suspicious circumstances surrounding the issuance of the Amendment, the General Counsel's and the Union's silence on this matter leads to the inevitable conclusion that the General Counsel amended the complaint to include otherwise untimely allegations against Elon Musk and Gaby Toledano solely to provide a foundation for his and the Union's overly broad subpoenas. Under this circumstances, it can hardly be argued that the General

22-60493.5327

Consel amended the complaint on the eve of trial "upon such terms as may be deemed just" as required by § 102.17 of the Board's Rules and Regulations.

### D.     Because the Amendment's Jurisdictional Defect Cannot be Cured, Ruling on Tesla's Motion Before the Resumption of the Hearing is Appropriate.

The General Counsel puzzlingly argues that the Board's statement in *Carney Hospital* that "Section 10(b) operates as a jurisdictional limitation" does not in fact reflect the existence of a jurisdictional limitation. GC's Opp. at 8. He then proceeds to argue that, because Tesla has failed to establish any "prejudice" resulting from the Amendment, the "public interest" compels its allowance. The jurisdictional limitations placed on his authority to issue complaints *sua sponte* and in the absence of any charge that is at least "closely related" to their corresponding allegations are not contingent upon Tesla's ability to show prejudice. Even so, in light of the Union's extremely burdensome subpoena requests for ESI and testimony whose relevance hinges entirely upon Judge Tracy's ruling on the instant Motion, Tesla will be severely prejudiced should it be forced to comply with these otherwise invalid subpoenas and defend itself against jurisdictionally defective allegations. Accordingly, Tesla respectfully requests that Judge Tracy decline to withhold ruling on its Motion to Dismiss and, for the reasons set forth in its Motion, dismiss all of the allegations of the Amendment.

22-60493.5328

Dated: June 26, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ for Keahn N. Morris

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.5329

1    <u>CERTIFICATE OF SERVICE</u>

2         At the time of service, I was over 18 years of age and not a party to this action. I
     am employed in the County of San Francisco, State of California. My business address is
3    Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

4    On June 26, 2018, I served a true copy of the following document(s) described as

5    **CONSOLIDATED REPLY TO THE GENERAL COUNSEL'S AND THE**
     **CHARGING PARTIES' OPPOSITIONS TO RESPONDENT'S MOTION TO**
6    **DISMISS FOR LACK OF JURISDICTION**

7    on the interested parties in this action as follows:

8
     Edris W.I. Rodriguez Ritchie
9    Field Attorney, Region 32
     National Labor Relations Board
10   1301 Clay Street, Ste. 300N
     Oakland, CA 94612-5224
11   T: (510) 671-3041
     E-mail: edris.rodriguezritchie@nlrb.gov
12
     Noah J. Garber
13   Field Attorney, Region 32
     National Labor Relations Board
14   1301 Clay Street, Suite 300N
     Oakland, California 94612
15   T: (510) 671-3021
     E-mail: noah.garber@nlrb.gov
16
     Margo Feinberg
17   E-mail: margo@ssdslaw.com
     Daniel E. Curry
18   E-mail: dec@ssdslaw.com
     Julie Alarcon
19   E-mail: jsa@ssdslaw.com
     Schwartz, Steinsapir, Dohrmann & Sommers, LLP
20   6300 Wilshire Blvd., Suite 2000
     Los Angeles, CA 90048
21   T: (323) 655-4700

22   Administrative Law Judge Amita Tracy
     Amita.Tracy@nlrb.gov
23   National Labor Relations Board
     Division of Judges
24   901 Market St., Suite 300
     San Francisco, CA 94103
25   T: (415) 356-5255

26

27

28

SMRH:486735039.1                                    -1-                    CERTIFICATE OF SERVICE
                                                                                        CASE NO. 32-CA-197020 et al.

1

2    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed
to the persons at the addresses listed in the Service List and placed the envelope for
3    collection and mailing, following our ordinary business practices. I am readily familiar
with the firm's practice for collecting and processing correspondence for mailing. On the
4    same day that correspondence is placed for collection and mailing, it is deposited in the
ordinary course of business with the United States Postal Service, in a sealed envelope
5    with postage fully prepaid. I am a resident or employed in the county where the mailing
occurred.

6

7    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the
document(s) to be sent from e-mail address dmcgahey@sheppardmullin.com to the
8    person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time
after the transmission, any electronic message or other indication that the transmission was
unsuccessful.

9

10    I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct and that I am employed in the office of a member of
the bar of this Court at whose direction the service was made.

11

12    Executed on June 26, 2018, at San Francisco, California.

13

14                                                Ryan Brust

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:486735039.1                                 -2-                          CERTIFICATE OF SERVICE
CASE NO. 32-CA-197020 et al.

**UNITED STATES OF AMERICA**
**NATIONAL LABOR RELATIONS BOARD**

**TESLA, INC.**

      **and**                         **Case 32-CA-197020**

**MICHAEL SANCHEZ**

      **and**                         **Case  32-CA-197058**

**JONATHAN GALESCU**

      **and**                         **Case  32-CA-197091**

**RICHARD ORTIZ**

      **and**                         **Cases 32-CA-197197**
                                             **32-CA-200530**
**INTERNATIONAL UNION, UNITED**          **32-CA-208614**
**AUTOMOBILE, AEROSPACE AND**           **32-CA-210879**
**AGRICULTURAL WORKERS OF**
**AMERICA, AFL-CIO**

**ORDER**[1]

      The General Counsel's request for special permission to appeal Administrative

Law Judge Amita B. Tracy's amended order denying the General Counsel's motion to

allow William Locklear to testify by videoconferencing is granted.  On the merits, the

appeal is denied.  The General Counsel has failed to establish that the judge abused

her discretion in denying the General Counsel's motion.

      Dated, Washington, D.C., July 16, 2018.

                    JOHN F. RING,          CHAIRMAN

                    MARK GASTON PEARCE,    MEMBER

                    MARVIN E. KAPLAN,      MEMBER

---

[1]  The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.  Member Emanuel did not participate in the consideration of this case.

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

TESLA, INC.

    **and**                                                                  Cases  32-CA-197020
                                                                          32-CA-197058
MICHAEL SANCHEZ, an Individual                                         32-CA-197091
                                                                         32-CA-197197
    **And**                                                                  32-CA-200530
                                                                         32-CA-208614
JONATHAN GALESCU,  an Individual                                      32-CA-210879

    **and**

RICHARD ORTIZ, an Individual

    **and**

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL WORKERS
OF AMERICA, AFL-CIO

## <u>ORDER DENYING RESPONDENT'S MOTION TO DISMISS</u>

On June 4, 2018, the Regional Director for Region 32 issued an amendment to the second

consolidated complaint in this matter which was set for hearing beginning on June 11, 2018.

This amendment, at complaint paragraph 7(y), alleges, in part, that Elon Musk (Musk) on

June 7, 2017 solicited employee complaints about safety issues and impliedly promised to

remedy their safety complaints if they refrained from their union organizational activity and

informed employees that it would be futile for them to select a union as their bargaining

representative by telling the employees they did not need a union and that Respondent would

allow them to have a union if Respondent failed in its efforts to remedy their safety grievances.

The amendment also alleges that on June 7, 2017, Gaby Toledano (Toledano) restrained and

coerced employees from engaging in union organizational activities by telling them that no one

22-60493.5333

at Respondent's facility wanted a union and asking them why employees would want to pay union dues.  The amendment, at paragraph 8(d), further clarifies the date Respondent issued a disciplinary warning to Jose Moran (Moran).  Respondent appears to seek to dismiss the allegations against Musk and Toledano.  On June 18, 2018, Respondent filed a timely answer to the amendment, denying the allegations in complaint paragraph 7(y) but admitting to the allegations in complaint paragraph 8(d).

At the start of the hearing, on June 11, 2018, Respondent motioned to dismiss the June 4, 2018, amendment to the second consolidated complaint.  Respondent raised a number of reasons as to why its motion to dismiss should be granted.  Due to Respondent's lengthy motion, I permitted the General Counsel and the Charging Party to file any opposition to the motion to dismiss by June 22, 2018.  Both the General Counsel and the Charging Party filed timely oppositions.  Respondent filed a reply.

Upon reviewing the parties' filings, I deny Respondent's motion to dismiss without prejudice.  Under Section 102.17 of the National Labor Relations Board's (the Board) Rules and Regulations, the Regional Director may amend the complaint "as may be deemed just, prior to the hearing."  As the Regional Director acted within her authority, I have no authority to overturn her decision to amend the complaint.  Thus, the remaining issue is whether the amended complaint allegations "arise from the same factual situation or sequence of events" as the timely filed charges.  See *Redd-I, Inc.,* 290 NLRB 1115, 1116 (1988); *Charter Communications, LLC*, 366 NLRB No. 46, slip op. at 2 (2018), reconsideration denied by unpub. Board order issued June 7, 2018 (2018 WL 2761559).   In this regard, Respondent's motion to dismiss fails to establish the absence of a genuine issue of material fact, or that it is entitled to judgment as a matter of law.  See *Security Walls, LLC*, 361 NLRB 348, 349 (2014).  Specifically, Respondent has failed to demonstrate that no genuine material issue of fact remains in dispute regarding the

amended allegations, which are denied by Respondent, and therefore their relationship to the timely-filed charges.  As such, dismissal of these amendments is not appropriate at this time.[1] The parties should be prepared to fully litigate the merits of the amended allegations when the trial resumes on September 24, 2018, in Oakland, California.

**SO ORDERED.**

Date: August 10, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

*Served by e-mail upon the following:*

Edris W. Rodriguez, Esq., Email: Edris.RodriguezRitchie@nlrb.gov
Noah Garber, Esq., Email: noah.garber@nlrb.gov
(NLRB)

Mark S. Ross, Esq., MRoss@sheppardmullin.com
(Respondent)

Margo A. Feinberg, Esq.,
 Email: margo@ssdslaw.com
(Charging Party)

[1] This result is unchanged by Respondent's various contentions regarding the manner in which the charges underlying this proceeding were investigated, a matter that is not under my purview.

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    **and**

MICHAEL SANCHEZ, an Individual

    **and**

JONATHAN GALESCU, an Individual

    **and**

RICHARD ORTIZ, an Individual

    **and**

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

Cases 32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

.

### GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES

Counsel for the General Counsel seeks to consolidate the Complaint that issued in Case

32-CA-220777 on August 23, 2018, with the above referenced consolidated matter currently

pending before Administrative Law Judge Amita Tracy (the Judge).

**I.    BACKGROUND AND RELEVANT FACTS**

On May 23, 2018, the International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America, AFL-CIO (Charging Party) filed a charge in Case

32-CA-220777 alleging that Respondent violated Section 8(a)(1) of the Act based upon a May

1

20, 2018, tweet from Respondent's Chief Executive Officer, Elon Musk.[1] On August 23, 2018, based upon that charge, the Regional Director for Region 32 of the National Labor Relations Board (Regional Director) issued a Complaint alleging that the tweet violated Section 8(a)(1) of the Act. See Exhibit 1. The tweet was made in reference to the same Union organizing campaign that underlies the violations alleged in the instant consolidated matter. The consolidated matter involves the same Respondent and Union involved in Case 32-CA-220777.

The hearing opened before the Judge on June 11, 2018, the General Counsel's case in chief is still in progress and set to resume on September 24, 2018.

For the reasons set forth below, Counsel for the General Counsel hereby moves to consolidate Case 32-CA-220777 with the existing consolidated matter.[2]

## II.    LEGAL STANDARD AND DISCUSSION

### A.    The Regional Director is Empowered with the Authority to Issue a Complaint in any Unfair Labor Practice Proceeding.

Under Section 102.15 of the Rules and Regulations of the National Labor Relations Board, as amended, (the Rules and Regulations) the Regional Director retains the sole authority to issue a complaint in an unfair labor practice proceeding. In the instant case, after an investigation initiated by a charge filed in Case 32-CA-220777, the Regional Director properly exercised her authority and issued a Complaint.

### B.    An Administrative Law Judge is Empowered with the Authority to Consolidate Cases Even After a Hearing Has Commenced.

---

[1] Musk's May 20, 2018 tweet stated: "Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare."

[2] During the first pre-hearing conference call on May 24, 2018, Counsel for the General Counsel advised the Judge and all parties that he would seek to consolidate any meritorious allegations in Case 32-CA-220777 with the pending matter. At the second pre-hearing conference call on June 6, 2018, Counsel for the General Counsel reiterated this position to the Judge and the parties.

22-60493.5337

Pursuant to Section 102.24, 102.25, 102.33(d), and 102.35(a)(8) of the Rules and Regulations, after the hearing has commenced, the General Counsel may move to consolidate an existing case with a related case in order to have one proceeding in order to avoid unnecessary costs or delay.  Under the Rules and Regulations, the administrative law judge is empowered to issue the relief sought herein, namely to order the consolidation of Case 32-CA-220777 with the pending matters currently set to resume on September 24, 2018.

**C.   Consolidation of Case 32-CA-220777 with the Existing Cases is Proper, Will Effectuate the Purposes of the Act, and Will Avoid Unnecessary Costs and Delay**

Pursuant to principles of fairness and sound administrative practice, well-settled Board law dictates that, whenever practicable, "there be only a single hearing on all outstanding alleged violations of the Act involving the same respondent." *Raytheon Missile Sys. Div., Raytheon Co.*, 279 NLRB 245, 255 (1986) (citing *Peyton Packing Co.*, 129 NLRB 1358, 1360 (1961)).  The General Counsel possesses broad discretion in determining which cases to consolidate and may move to consolidate to "effectuate the Act's purposes or to avoid unnecessary costs or delay[.]" *Service Employees Union, Local 87 (Cresleigh Management, Inc.)*, 324 NLRB 774, 774 (1997) (citing *Teamsters Overnite Transp. Co.*, 130 NLRB 1020, 1022 (1961)).  Consolidation of cases alleviates the administrative troubles of the Board, saves the taxpayers money, and expedites proceedings generally.  *Macke Laundry Services Co. of D.C.*, 190 NLRB 1, 6 (1971).

Consolidation is appropriate even when the proceedings are underway or have already closed.  See e.g. *O'Hare-Midway Limousine Service, Inc.*, 295 NLRB 463, 463 (1989) (reopening hearing and consolidating case with complaint based on charge filed after close of hearing); *Foundation for Comprehensive Health Services*, 267 NLRB 95, 95 (1983) (following close of hearing and prior to submission of briefs, granting the General Counsel's motion to reopen the hearing and to consolidate cases with subsequently filed complaints).  In fact, the

3

Board has countenanced consolidation under far more extreme circumstances than presented

here. For example, in *S.E. Nichols, Inc.*, 284 NLRB 556, 566 (1987), the ALJ ordered the

consolidation of a newly-issued complaint with a case in which the hearing had already closed.

In overruling the respondent's exceptions, the Board held that due process was duly served

where "the two cases involve the same parties and factually-related events and both parties had a

full and fair opportunity to examine all witnesses and litigate all the issues." *Id.* at fn. 1.

      As these cases make clear, motions to consolidate are liberally granted when appropriate

and necessary to promote administrative and judicial economy and efficiency. *Washington

Heights-West Harlem-Inwood Mental Health Council, Inc.*, 289 NLRB 1122, 1122, fn. 3 (1988),

enforcement denied on other grounds, 897 F.2d 1238 (2nd Cir. 1990); *New Surfside Nursing

Home*, 330 NLRB 1146, 1151 (2000) (noting that the Board's *Jefferson Chemical* doctrine

"reflects a policy aimed at permitting judicial economy and fairness."). Indeed, for many years,

the Board has instructed that unfair labor practice issues arising from a common set of facts

known to the General Counsel are *required* to be consolidated and litigated in a single

proceeding:

> [S]ound administrative practice, as well as fairness to respondents, requires the
> consolidation of all pending charges into one complaint. The same considerations
> dictate that, whenever practicable, there be but a single hearing on all outstanding
> violations of the Act involving the same respondent. To act otherwise results in
> unnecessary harassment of respondents.

*Peyton Packing*, 129 NLRB at 1360 (internal citations omitted); see also *Jefferson Chemical*,

200 NLRB 992, 994-95 (1972); *Highland Yarn Mills*, 310 NLRB 644, 645 (1993) vacated on

other grounds in 315 NLRB 1169 (1994) (where the General Counsel is aware of events that

form the basis for amendments to add a new related allegation "the General Counsel must follow

that course") (footnote omitted); see also National Labor Relations Board, Division of Judges

Bench Book, January 2018, §3-420 (stating "[t]he Board generally disfavors piecemeal litigation.

22-60493.5339

Thus, the General Counsel is expected to consolidate all pending charges into one complaint and litigate all known issues in one case." (citation to *Peyton Packing Co.*, above, and *Jefferson Chemical Co., Inc.*, above, omitted)).

In the instant case, extant Board law favors the consolidation of Case 32-CA-220777 with the instant proceeding. First, Case 32-CA-220777 involves the same parties, namely Respondent and the same Charging Party Union. Second, this Motion is made on the same day the Regional Director has issued the Complaint in Case 32-CA-220777. With the trial in the existing cases set to resume on September 24, 2018, Respondent will not suffer *any* prejudice in preparing its case-in-chief or any defense to the allegation contained in Case 32-CA-220777. Indeed, failure to grant the relief sought herein could result in Respondent having to appear in multiple hearings in October because, at this time, the soonest available hearing date to set a hearing in Case 32-CA-220777 is October 2018. Moreover, as it relates to any prejudice, given the limited scope of the allegation contained in Case 32-CA-220777, an undisputed written statement made by Respondent's admitted Chief Executive Officer, it would stretch credulity for Respondent to argue that it will suffer *any* prejudice by consolidating Case 32-CA-220777 with the instant cases since, for example, Section 102.15 of the Rules and Regulations only requires a notice of hearing to be no "less than 14 days after service of the complaint." Here, any notice of hearing issued by the Judge could be issued well before the 14-day requirement and the Respondent has been on notice since May 24, 2018 that counsel the General Counsel would seek consolidation of any meritorious allegations in Case 32-CA-220777.

Second, the violation alleged in Case 32-CA-220777 relates to the same course of conduct as the existing cases. In particular, the tweet is a direct response to the ongoing organizing campaign engaged in by Respondent's employees with the Charging Party. The facts

5

of Case 32-CA-220777, viewed in this context, demonstrate that they are part of the same unlawful conduct engaged in by Respondent. Thus, in terms of administrative economy and efficiency, it would be counterproductive to hold separate hearings where, as here, the same parties are involved and the conduct alleged in Case 32-CA-220777 is part of the same course of unlawful conduct engaged in by Respondent.

In sum, under the circumstances described in this Motion, the consolidation of the existing cases with Case 32-CA-220777 will effectuate the purposes of the Act and avoid unnecessary costs and delay. Failure to consolidate these cases could needlessly protract litigation, result in two hearings instead of one, and require duplication of evidence.

### III.    CONCLUSION

For the reasons set forth above, Counsel for the General Counsel respectfully requests that this Motion be GRANTED.

**DATED AT** Oakland, California this 23rd day of August 2018.

Edris W.I. Rodriguez Ritchie, Field Attorney
Noah Garber, Field Attorney
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, California 94612-5224

22-60493.5341

# EXHIBIT 1



# EXHIBIT 1

22-60493.5342

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    **and**                                                                          **Case 32-CA-220777**

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW), AFL-CIO

## COMPLAINT

This Complaint is based on a charge filed by International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO (Charging Party). It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Tesla, Inc. (Respondent) has violated the Act as described below.

1.

The charge in this proceeding was filed by the Charging Party on May 23, 2018, and a copy was served on Respondent by U.S. mail on May 23, 2018.

2.

(a)    At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, with facilities throughout the United States, including an automotive manufacturing facility in Fremont, California, and an automotive battery facility in Sparks, Nevada, has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

1

(b)     During the 12-month period ending in June 30, 2018, Respondent, in conducting

its operations described above in paragraph 2(a), purchased and received goods valued in excess

of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the

meaning of Sections 2(2), (6) and (7) of the Act.

4.

At all material times, the Charging Party has been a labor organization within the

meaning of Section 2(5) of the Act.

5.

At all material times, Elon Musk has held the position of Chief Executive Officer and has

been a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of

Respondent within the meaning of Section 2(13) of the Act.

6.

About May 20, 2018, Respondent, by Elon Musk via his Twitter account (@elonmusk),

tweeted:

> Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they
> wanted. But why pay union dues & give up stock options for nothing? Our safety record
> is 2X better than when plant was UAW & everybody already gets healthcare.

7.

By the conduct described above in paragraph 6, Respondent has been interfering with,

restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the

Act in violation of Section 8(a)(1) of the Act.

2

22-60493.5344

8.

The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

**WHEREFORE**, as a part of the remedy for the unfair labor practices alleged in paragraph 6, the General Counsel seeks an Order requiring Respondent to post in all of its facilities nationwide any Notice to Employees that may issue in this proceeding. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Complaint. The answer must be **received by this office on or before September 6, 2018, or postmarked on or before September 5, 2018.** Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused

3

on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a Complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Complaint are true.

**DATED AT**  Oakland, California this 23rd day of August 2018.

*Valerie Hardy-Mahoney* (CBK)

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612-5224

Attachments

4

22-60493.5346

NATIONAL LABOR RELATIONS BOARD
## NOTICE

Case    32-CA-220777

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in *detail*;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Gaby Toledano
Tesla, Inc.
45500 Fremont Blvd.
Fremont, CA  94538-6326

Jatinder K. Sharma
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA  94555

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America (UAW), AFL-CIO
8000 E Jefferson Ave.
Detroit, MI  48214

Margo A. Feinberg
Margo Feinberg, Daniel Curvy Schwartz
Steinsapir, Dohrmann & Sommers
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

|  |  |
|---|---|
| TESLA, INC. | |
| **and** | |
| MICHAEL SANCHEZ, an Individual | Case 32-CA-197020 |
| **and** | |
| JONATHAN GALESCU, an Individual | Case 32-CA-197058 |
| **and** | |
| RICHARD ORTIZ, an Individual | Case 32-CA-197091 |
| **and** | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case 32-CA-197197<br>Case 32-CA-200530<br>Case 32-CA-208614<br>Case 32-CA-210879 |

**Date: August 23, 2018**

## AFFIDAVIT OF SERVICE OF GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Keahn Morris, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**
**VIA EMAIL: kmorris@sheppardmullin.com**

Margo A. Feinberg, Esq.
Daniel Curry, Esq.
Julie Alarcon, Esq.
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margo@ssdslaw.com**
**VIA EMAIL: dec@ssdslaw.com**
**VIA EMAIL: jsa@ssdslaw.com**

National Labor Relations Board
Division of Judges
901 Market St., Suite 485
San Francisco, CA 94103
**E-FILE**

Jatinder K. Sharma Esq.
Tesla, Inc.
6800 Dumbarton Cir
Fremont, CA 94555
**Email: jsharma@tesla.com**

---
August 23, 2018

---
Ida Lam, Designated Agent of NLRB
Name

*Ida Lam*

Signature

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
SAN FRANCISCO BRANCH OFFICE

| | | |
|---|---|---|
| **TESLA, INC.** | | |
| **and** | Cases | **32-CA-197020** |
| | | **32-CA-197058** |
| **MICHAEL SANCHEZ, an Individual** | | **32-CA-197091** |
| | | **32-CA-197197** |
| **And** | | **32-CA-200530** |
| | | **32-CA-208614** |
| **JONATHAN GALESCU,  an Individual** | | **32-CA-210879** |
| **and** | | |
| **RICHARD ORTIZ, an Individual** | | |
| **and** | | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE,**
**AEROSPACE AND AGRICULTURAL WORKERS**
**OF AMERICA, AFL-CIO** | | |

ORDER TO SHOW CAUSE REGARDING
GENERAL COUNSEL'S MOTION TO CONSOLIDATE CASES

I opened the record in the above matter on June 1l, 2018, and adjourned the hearing on June 14, 2018 set to resume on September 24, 2018, at 9 a.m. at the Board's Regional Office in Oakland, California.

On August 23, 2018, counsel for the General Counsel filed a motion to consolidate case 32-CA-220777 with the above-referenced cases.  The Parties are hereby advised to file a response no later than 12 p.m., September 7, 2018 as to why the General Counsel's motion should not be granted.

Due to the General Counsel's motion to consolidate, the conference call scheduled for August 29, 2018, at 10 a.m., is cancelled.  The conference call will be re-scheduled for the week of September 10, 2018.

Date: August 24, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

*Served by facsimile upon the following:*

**For the NLRB:**
Noah Garber, Esq.,  noah.garber@nlrb.gov
Edris W. I. Rodrigues Ritchie, Esq.  edris.rodriguezritchie@nlrb.gov
 Fax: (510)637-3315

**For Respondent:**
Mark S. Ross, Esq.,  mross@sheppardmullin.com
Keahn Morris, Esq.,  kmorris@sheppardmullin.com
 Fax:(415)434-3947

**For the Charging Party:**
Margo A. Feinberg, Esq.,  margo@ssdslaw.com
Daniel E. Curry, Esq.,  dec@ssdslaw.com
Julia Alarcon, Esq.,  jsa@ssdslaw.com
 Fax: (323)655-4488

**E-Services:**
**From:** SM-Nass
**Sent:** Friday, August 24, 2018 1:59 PM
**To:** Lee, Vanise J. <Vanise.Lee@nlrb.gov>
**Subject:** [NASS] Scan-To-Email Completed

Your document has been successfully scanned and emailed to the following recipients
(noah.garber@nlrb.gov;margo@ssdslaw.com;edris.rodriguezritchie@nlrb.gov;mross@sheppardmullin.c
om;kmorris@sheppardmullin.com;dec@ssdslaw.com;jsa@ssdslaw.com)
This document is 2 pages long, and was processed in 54.0 seconds.)
**From:** Lee, Vanise J.
**Sent:** Friday, August 24, 2018 1:58 PM
**To:** Garber, Noah <Noah.Garber@nlrb.gov>; margo@ssdslaw.com; Rodriguez Ritchie, Edris W.I.
<Edris.RodriguezRitchie@nlrb.gov>; mross@sheppardmullin.com; kmorris@sheppardmullin.com;
dec@ssdslaw.com; jsa@ssdslaw.com
**Subject:** [NASS] Scan-to-EMail Delivery - Subject: Tesla, Inc., Judge's Order to Show Cause regarding GC
motion to consolidate cases

Counsel please see the attached Order ALJ Amita B. Tracy. Regards, Vanise Lee, Legal Tech. NLRB Div. of
Judges

-----Original Message-----
From: noreply@retarus.net [mailto:noreply@retarus.net]
Sent: Friday, August 24, 2018 2:05 PM
To: Lee, Vanise J. <Vanise.Lee@nlrb.gov>
Cc: SM-Nass <nass@nlrb.gov>
Subject: Re: [NASS] Scan-to-FAX Delivery - [REPORT]

---
Retarus job id: MF5B8071EF47565C9F050B
---

Number of faxes        : 3
  thereof successfully sent: 2
  thereof failed with error: 1
Number of pages        : 2
Resolution             : Low

---

Fax number : +15106373315
Sent       : 2018-08-24-17.01.20
Remote CSID: NLRB
Duration   : 36 sec.
Status     : OK
Reason     :

---

Fax number : +13236554488
Sent       : 2018-08-24-17.01.50
Remote CSID: 6554488
Duration   : 45 sec.
Status     : OK
Reason     :

---

**Fax number : +14154345947**
Sent       : 2018-08-24-17.04.44
Remote CSID:
Duration   : 0 sec.
Status     : RING_TO
Reason     : No answer
-----Original Message-----
From: noreply@retarus.net [mailto:noreply@retarus.net]
Sent: Friday, August 24, 2018 2:15 PM
To: Lee, Vanise J. <Vanise.Lee@nlrb.gov>
Cc: SM-Nass <nass@nlrb.gov>
**Subject: Re: [NASS] Scan-to-FAX Delivery - [OK][+14154343947]**

---
Retarus job id: MF5B8074E27794680704F7
---

Number of faxes        : 1
  thereof successfully sent: 1
  thereof failed with error: 0
Number of pages        : 2
Resolution             : Low

---

Fax number : +14154343947
Sent       : 2018-08-24-17.14.15
Remote CSID: SMRH
Duration   : 50 sec.
Status     : OK

22-60493.5351

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| **JONATHAN GALESCU, an Individual** | |
| **and** | |
| **RICHARD ORTIZ, an Individual** | |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

**TESLA'S REQUEST FOR SPECIAL PERMISSION TO APPEAL ADMINISTRATIVE LAW JUDGE AMITA B. TRACY'S ORDER DENYING TESLA'S MOTION TO DISMISS; REQUEST FOR *DE NOVO* REVIEW OF TESLA'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

TESLA RESPECTFULLY REQUESTS EXPEDITED REVIEW BEFORE TRIAL
RESUMES ON SEPTEMBER 24, 2018 ...............................................................2

TESLA'S APPEAL OF JUDGE TRACY'S ORDER DENYING TESLA'S MOTION
TO DISMISS ......................................................................................................4

I.      INTRODUCTION ...............................................................................................4

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................5

        A.      The Union's Initial Charges—and the Region's Initial Complaints—Make
                No Allegations Against Mr. Musk or Ms. Toledano ...............................5

        B.      The Union's Subsequent Charges; The Region Takes Ms. Toledano's
                Affidavit and Does Not Ask Her Questions About Any June 7, 2017
                Meeting with Mr. Musk and Tesla Employees ........................................6

        C.      Tesla Petitions to Revoke the Requests of the General Counsel's and the
                Union's Subpoenas *Duces Tecum* Seeking Mr. Musk's and Ms.
                Toledano's Electronic Communications Because There Are No Pending
                Allegations Against Them ......................................................................8

        D.      The Region Amends the Operative Complaint to Allege that Mr. Musk
                and Ms. Toledano Made Unlawful Statements During a June 7, 2017
                Meeting with Tesla Employees...............................................................10

        E.      Judge Tracy Revokes the Union's SAT Directed At Mr. Musk ...........10

        F.      Tesla Moves to Dismiss The Allegations of the Amendment ...............11

        G.      The General Counsel and Union File Oppositions to the Motion But
                Cannot Agree on Which Charges Support the Allegations of the
                Amendment.............................................................................................12

        H.      Judge Tracy Denies Tesla's Motion to Dismiss The June 4th Amendment
                Without Prejudice ..................................................................................15

III.    TESLA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.............16

        A.      Judge Tracy Erred Insofar As She Misallocated the General Counsel's
                Burden of Establishing that He Has Statutory Authority To Make the
                Allegations In the Amendment ..............................................................16

                1.      Under § 10(b)'s Jurisdictional Function, The NLRB Has The
                        Burden Of Proving That *Uncharged* Conduct Is "Closely Related"
                        To The Allegations Of A Complaint As A Predicate To Its
                        Exercise Of Jurisdiction ...........................................................17

                2.      Because The Allegations Of The Amendment Included *Uncharged*
                        Conduct Rather Than *Untimely Charged* Conduct, Judge Tracy
                        Clearly Erred By Denying Tesla's Motion For Failing To Establish

A Lack Of Material Dispute As To The General Counsel's Jurisdiction ................................................................................19

B.    Tesla Is Nonetheless Entitled To Judgment As A Matter Of Law Because The General Counsel Cannot Prove Any Set Of Facts Which Would Establish Jurisdiction Over The Allegations Of The Amendment

1.    The General Counsel Should Be Able To—Yet Cannot—Establish that He Has Statutory Authority To Make the Allegations of the Amendment Based On the Pleadings Alone ................................20

2.    The General Counsel Cannot Establish that the New Allegations are "Closely Related" to Case 32-CA-200530 ............................................23

3.    The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-208614 ...........26

4.    The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-210879 ...........28

5.    Contrary to Judge Tracy's Order, *Charter Communications* Supports Tesla's Position ........................................................29

IV.    CONCLUSION ......................................................................................31

22-60493.5354

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alternative Energy Applications, Inc.*
    361 NLRB 1203 (2014) .........................................................................16

*Allied Waste Services of Massachusetts, LLC,*
    01-CA-123082, -126843, 2014 WL 7429200 (Dec. 31, 2014)................................17

*Carney Hospital*
    350 NLRB 627 (2007) ................................................................. *passim*

*Charter Communications, LLC*
    366 NLRB No. 46, slip op. (2018).................................................15, 29

*Detroit Newspapers Agency*
    330 NLRB 524 (2000) .........................................................................16

*Drug Plastics & Glass Co., Inc. v. NLRB.*
    44 F.3d 1017 (D.C. Cir. 1995)................................................18, 23

*Hyundai Am. Ship. Agency, Inc. v. NLRB*
    805 F.3d 309 (2015)................................................................23

*Leach Corp.*
    312 NLRB 990 (1993),
    enfd. 54 F.3d 802 (D.C. Cir. 1995)................................................17

*Leukemia and Lymphoma Society*
    363 NLRB No. 124 (2016) .........................................................16, 23

*Lotus Suites v. NLRB*
    32 F.3d 558 (1994)................................................................17

*Nickles Bakery of Indiana, Inc.*
    296 NLRB 927 (1989) ................................................................20

*NLRB v. Braswell Motor Freight Lines, Inc.*
    486 F.2d 743 (7th Cir.1973) ................................................23

*NLRB v. Fant Milling Co.*
    360 U.S. 301 (1959)................................................................17

*Precision Concrete v. NLRB*
    334 F.3d 88, 90 (D.C. Cir. 2003) ................................................. *passim*

*Reddi-I*
    390 NLRB 1115 (1988) ................................................................15, 20

*Ross Stores, Inc. v. NLRB*
    235 F.3d 669, 677 (D.C. Cir. 2001) .........................................16, 23

*Salon/Spa at Boro, Inc.*
    356 NLRB 444 (2010) .....................................................................21

*Security Walls, LLC*
    361 NLRB 348 (2014) ................................................................15, 16

*SKC Electric, Inc.*
    350 NLRB 857 (2007) .....................................................................29

*Wal-Mart Stores, Inc.*, 28-CA-167277, JD(SF)-34-16, 2016 WL 4547576 (NLRB
    Div. of Judges) (August 31, 2016) .................................................22

*Yale University*
    330 NLRB 246 (1999) .....................................................................16

Statutes, Rules, Regulations, Constitutional Provisions

29 U.S.C. § 160 ....................................................................................16

National Labor Relations Act
    § 7 ............................................................................................ *passim*
    § 8(a)(1) ...............................................................4, 11, 12, 26
    § 8(a)(3) ...............................................................4, 9, 26
    § 8(a)(4) ...............................................................4, 26
    § 10(b) ..................................................................... *passim*

National Labor Relations Board's Rules and Regulations
    § 102.17 .................................................................14, 15
    § 102.24(b) ..............................................................1, 20
    § 102.26 ....................................................................1
    § 102.35(a)(8) .........................................................13

Pursuant to § 102.26 of the National Labor Relations Board's ("Board") Rules and Regulations, Respondent Tesla, Inc. ("Tesla") respectfully requests special permission to appeal Administrative Law Judge Amita B. Tracy's ("Judge Tracy") erroneous August 10, 2018 Order Denying Respondent's Motion to Dismiss ("Motion") the General Counsel's ("GC") June 4 Amendment to the Second Amended Consolidated Complaint ("Amendment") issued six days before the beginning of the trial in this matter on June 11.[1]  This last minute Amendment names Tesla's CEO, Elon Musk ("Mr. Musk") and focuses, for the first time, on his conduct asserting that, during a June 7, 2017 meeting with employees, Mr. Musk and Tesla's Chief People Officer Gaby Toledano ("Ms. Toledano") made certain statements to employees in violation of § 8(a)(1).

Notwithstanding the General Counsel's control over its complaint, the GC is without statutory authority to prosecute these newly raised claims because they were never asserted in and are not "closely related" to any of the UAW's timely-filed unfair labor practice ("ULP") charges as required by § 10(b) of the Act.[2]  Accordingly, Judge Tracy's August 10 order denying Tesla's dismissal motion without prejudice is contrary to law and a clear abuse of her discretion.

Tesla recognizes that § 102.24(b) of the Board's Rules and Regulations requires that motions for summary judgment or dismissal be filed with the Board no later than 28 days prior to the scheduled hearing.  However, the Region's heretofore unexplained decision to wait until the week of trial to issue the Amendment has precluded Tesla from timely filing a dismissal/ summary judgment motion with the Board.  Accordingly, Tesla respectfully requests that the Board exercise its discretion to accept Tesla's Motion as either a timely-filed motion for

---

[1] Jude Tracy's Order is attached hereto as **Exhibit 1**; Tesla's Motion as **Exhibit 2**; The General Counsel's Opposition to the Motion as **Exhibit 3**; the UAW's Opposition to the Motion as **Exhibit 4**; Tesla's Reply to the Opposition as **Exhibit 5**.

[2] Tesla denies the substantive allegations against Mr. Musk and Mr. Musk and Ms. Toledano have no objection to testifying regarding said allegations.  However, that does not mean that the rules can simply be disregarded, and that Mr. Musk and Ms. Toledano should be forced to testify, when the General Counsel has so clearly played fast and loose with this process and prejudiced Tesla in violation of Section 10(b).

summary judgment or motion to dismiss pursuant to § 102.24(b) of the Board's Rules and review it *de novo*. For the reasons set forth more fully below, the Board should accept this appeal and reverse Judge Tracy's ruling, which is contrary to precedent and prejudices Tesla, causing manifest injustice.

### TESLA RESPECTFULLY REQUESTS EXPEDITED REVIEW BEFORE TRIAL RESUMES ON SEPTEMBER 24, 2018

For the past twenty-six months, the UAW has engaged in a corporate campaign designed to damage Tesla's business reputation and to tarnish its brand as well as to embarrass and harass Mr. Musk. It has harassed Tesla's management and executives by publicly (and baselessly) accusing them of breaking the law and thereafter caused them to be investigated by the NLRB. The UAW has used these smear tactics as a means of extorting Tesla's and Mr. Musk's agreement to a card check/neutrality agreement and facilitating its attempt to organize the roughly 16,000 employees working at Tesla's Fremont and Sparks facilities. Since April 2017, the UAW has filed and/or amended more than fifteen charges with the NLRB which cumulatively allege that, between October 2016 and the present, countless supervisors, security officers, and human resources representatives committed various ULPs. Tesla fully cooperated with the Region during its fourteen-month long investigation into these charges, providing thousands of pages of documents, submitting multiple position statements in response to the Region's requests for information and evidence and producing approximately twenty confidential witnesses for affidavits. The vast majority of these allegations have been dismissed or withdrawn for lack of merit. At no time, in any of the Union's initial or amended charges or during this comprehensive investigation, was Mr. Musk's name ever mentioned or his alleged

misconduct or the subject matter of the Amendment ever raised.[3]  These eleventh hour claims leveled against Mr. Musk and Ms. Toledano are, therefore, legally time barred by Section 10(b) of the Act.

Further, forcing Tesla to defend this time barred Amendment as to Mr. Musk and Ms. Toledano will cause the Company irreparable harm.  Placing Mr. Musk and his time barred alleged conduct at issue in this proceeding and requiring him to answer what are clearly stale allegations will unnecessarily add to the media frenzy now surrounding Tesla.  Indeed, even when Tesla ultimately prevails on the Amendments at trial, either because the issue is time barred or on the merits, it would have suffered irreparable harm.

Because the General Counsel's June 4 Amendment is clearly time barred as a matter of law and because of the irreparable harm occasioned by the Amendment, Tesla, hereby, respectfully requests that the Board consider and grant its Special Appeal and/or Motion on an expedited basis and that it issue an order directing the dismissal of the Amendment before the trial resumes on September 24, 2018.

---

[3] For ease of reference, attached hereto as **Exhibit 10** and **Exhibit 11** are charts summarizing the ULP charges filed against Tesla from April 17, 2017 until May 23, 2018 and the EAJA letters requesting information concerning the ULP charges and to take witness affidavits issued by Field Attorney for Region 32 Edris W.I. Rodriguez Ritchie.

## TESLA'S APPEAL OF JUDGE TRACY'S ORDER DENYING TESLA'S MOTION TO DISMISS

### I.    INTRODUCTION

On the eve of trial, and days after Tesla served its petitions to revoke the General

Counsel's and the Union's subpoenas *duces tecum* seeking Elon Musk's private communications

based, in part, on the Complaint's failure to allege Mr. Musk's personal involvement in a single

unfair labor practice, the Region filed and served an "Amendment to the Second Amended

Consolidated Complaint."  For the very first time since it began its investigation nearly 14

months before and without any explanation or timely charge, the Region alleged that Mr. Musk

and Ms. Toledano violated Section 8(a)(1).  Tesla will not speculate as to why these allegations

arising out of a June 7, 2017 meeting were omitted from the Union's June 12, 2017 charge filed

in Case 32-CA-200530, the Union's July 28, 2017 amended charge filed in Case 32-CA-200530,

the August 31, 2017 Consolidated Complaint, the September 1, 2017 Amended Consolidated

Complaint, the Union's October 25, 2017 charge filed in Case 32-CA-208614, the Union's

December 1, 2017 charge filed in Case 32-CA-210879, the Union's December 6, 2017 amended

charge filed in Case 32-CA-210879, the Union's March 13, 2018 amended charge filed in Case

32-CA-200530, and the March 31, 2018 Second Amended Consolidated Complaint.  Nor has the

General Counsel ever offered any explanation as to why its June 4 Amendment suddenly found

its way into the Second Amended Complaint on the eve of trial.  Regardless of that explanation,

however, the Region has failed to establish its statutory authority to assert these eleventh hour

allegations by pointing to a specific charge supporting these new allegations or showing that

these last minute new claims are "closely related" to the violations asserted in any charge filed

by the Union within the 10(b) limitations period.  So, even assuming arguendo that the General

Counsel could somehow prove these allegations as to Mr. Musk and Ms. Toledano at trial (which

he cannot), this statutory defect is incurable.  Accordingly, in the interest of judicial economy and avoiding the prejudice resulting to Tesla should it be forced to defend these time barred allegations, Tesla respectfully requests that each of the allegations asserted in the Amendment be dismissed for lack of jurisdiction insofar as they were never asserted in and were not "closely related" to any timely-filed charge as mandated by §10(b) of the Act.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Union's Initial Charges—and the Region's Initial Complaints—Make No Allegations Against Mr. Musk or Ms. Toledano

Between April 17, 2017 and July 28, 2017, the Charging Parties and their attorney Margo A. Feinberg (Counsel for Charging Parties) filed five unfair labor practice charges and five amended charges against Tesla, Inc. ("Tesla") under Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530.  As witnessed by the EAJA letter requesting information and to take witness affidavits issued by Field Attorney for Region 32 Edris W.I. Rodriguez Ritchie ("Mr. Rodriguez Ritchie"), dated May 8, 2017, July 7, 2017 and November 21, 2017, none of these charges asserted any allegations concerning Mr. Musk or Ms. Toledano.  Instead, they related to the conduct of others and sought to take the affidavits of Lisa Lipson, Lauren Holcomb, David Zweig, and Seth Woody as evidence regarding the allegations raised in Case 32-CA-200530.  *See* Exhibit B attached to the Motion.

On July 28, 2017, the charging parties amended the charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197 to conform to the allegations of the Initial Complaint that the Region would soon issue.

On August 31, 2017, the Regional Director for Region 32 ("Region") issued a Consolidated Complaint ("Initial Complaint") alleging, among other things, that Tesla's HR Business Partner David Zweig attempted to prohibit an employee from discussing safety

concerns with other employees and/or with the Union on April 5, 2017; that Respondent's Director of Global Environmental Health and Safety Seth Woody attempted to prohibit an employee from discussing safety concerns with other employees and/or the Union on April 28, 2017; and that Human Resources Business Partner Liza Lipson interrogated employees about protected concerted activities and/or union activities in the presence of Environmental Health and Safety Sustainability Specialist Lauren Holcomb during two separate meetings on May 24, 2017 ("Consolidated Complaint," attached as Exhibit C to the Motion).  While alleging Mr. Musk a statutory supervisor, nothing in the Initial Complaint alleged any substantive wrongdoing by him.

### B.    The Union's Subsequent Charges; The Region Takes Ms. Toledano's Affidavit and Does Not Ask Her Questions About Any June 7, 2017 Meeting with Mr. Musk and Tesla Employees

On October 25, 2017, Charging Parties and their counsel filed the initial charge in Case No. 32-CA-208614.  *See* Exhibit D to the Motion.  The charge does not assert any allegations against Mr. Musk or Ms. Toledano.  Instead, it focused on various performance based terminations affecting Tesla worldwide immediately following a company-wide supplemental performance review ("October terminations").  This is shown by the EAJA letter dated November 21, 2017, Mr. Rodriguez Ritchie citing the alleged conduct of the following individuals as the basis for this new charge and requesting to take their affidavits: "Vannick Ly, Lehi Gomez, Paul James, Arnold Camat, Timothy Fenelon, Tope Ogunniyi, Kyle Martin, Mario Last Name Unknown, Elena Elliott, Ricky Gecewich, Albert Rios, Duwone Ashley, Thuy Truong, Juan Martinez; Sean Boone; Kyle Last Name Unknown (Human Resources), Nicole White, Chris Padilla" and "Dane Last Name Unknown (Human Resources) in Case 32-CA-208614.  *See* Exhibit E to the Motion.

Though not requested in the November 21 EAJA letter, Tesla made Ms. Toledano available to provide an affidavit to the General Counsel with respect to the implementation of the supplemental employee evaluation resulting in the terminations referenced in the General Counsel's letter. When the General Counsel took her affidavit on February 5, 2018, he asked nothing about the alleged June 7, 2017 meeting. *See* Exhibit F to the Motion.

On December 1, 2017, Charging Parties and their counsel filed the initial charge in Case No. 32-CA-210879. *See* Exhibit G to the Motion. The charge does not assert any allegations against Mr. Musk or Ms. Toledano. By EAJA letter dated December 20, 2017, Mr. Rodriguez Ritchie requested information concerning the Company's treatment of William Locklear, an employee at Tesla's Nevada Battery Gigafactory[4] and to take affidavits from "Dave Teston, Associate Manager, Josh Surgeon, (title unknown to Board Agent but known by Employer), Shawn Gaines, Supervisor, Kevin Kassekert, Vice President for Infrastructure Development, Matthew Stewart, Supervisor, Tyler Ash, Supervisor, Andy McIndoe, Associate Production Manager, Cindie Reneau, Human Resources Representative" and "Elliot Kent, Supervisor" as evidence regarding the allegations raised in Case 32-CA-210879, and further requested that Tesla submit a position statement ("12/20/2017 Request for Evidence". *See* Exhibit H to the Motion.

As in the case of the charges filed prior to the Initial Complaint, the Charging Party amended its charges in Case Nos. Case Nos. 208614 and 210879 on December 6, 2017 and March 13, 2018, to conform to the Second Amended Complaint that would soon issue.

---

[4] All of the other charges pertained to conduct occurring at Tesla's automobile plant in Fremont, California

On March 30, 2017, the Region issued a Second Amended Consolidated Complaint[5] (the

"Operative Complaint").  *See* Exhibit I to the Motion.  In addition to reasserting some but not all

of the allegations raised in the Initial Complaint, the Operative Complaint additionally alleged

that Supervisor Homer Hunt made a statement of futility to employees in August of 2017; that

Tesla's supervisors Tope Ogunniyi and Tim Fenelon disparately enforced work apparel

restrictions against employees wearing clothing with Union insignia; that Employee Relations

Investigator Ricky Gecewich interrogated employees about their protected activities in separate

meetings conducted September 21, 2017 and October 19, 2017 and promulgated/disparately

enforced a rule prohibiting employees from accessing internal work systems without proper

business justification also on October 19, 2017; that Respondent unlawfully discharged Richard

Ortiz on October 18, 2017; and that Respondent unlawfully disciplined Jose Moran on October

19, 2018.  The Operative Complaint also again mentioned Mr. Musk as a statutory supervisor but

contained no substantive allegations with respect to his conduct.  Nor did the Operative

Complaint name or otherwise reference the alleged unlawful conduct of Ms. Toledano.  Indeed,

none of the  allegations for which Ms. Toledano provided an affidavit were included in the

Operative Complaint, the Region apparently finding no merit to them after completing its

investigation.

> **C.**      **Tesla Petitions to Revoke the Requests of the General Counsel's and the
> Union's Subpoenas *Duces Tecum* Seeking Mr. Musk's and Ms. Toledano's
> Electronic Communications Because There Are No Pending Allegations
> Against Them**

On May 24, 2018, the Region served Tesla with subpoena *duces tecum* B-1-118CRIT

("Region's SDC") which contained several requests for Mr. Musk's personal email and social

---

[5] The Operative Complaint was the second amendment of the Initial Complaint because on September 1, 2017, the
Region issued a First Amended Consolidated Complaint correcting a typographical error in the initial pleading.  Said
First Amended Complaint did not materially alter the substantive allegations or claims of the Initial Complaint

media communications.  In its June 4, 2018 petition to revoke these requests[6], Tesla objected due

to their irrelevance to any of the matters alleged in the Operative Complaint.  The petition stated:

"None of the witnesses, including Gecewich stated that any of the individuals listed in Request

No. 7 (including Elon Musk) participated in the decision to terminate Ortiz and counsel Moran

for their misconduct.  In fact, the Complaint does not even allege that Elon Musk … violated any

section of the NLRA, much less section 8(a)(3).  In its objections to Request No. 10, Tesla

reiterated: "***There is no allegation that Elon Musk directed, was involved in, or in any way***

***influenced any of the decisions or actions described in the Complaint.***"

On May 25 and 31, 2018, the Union served Tesla with subpoenas *duces tecum* Nos. B-1-

11BJS5V and B-1-11BKOEJ ("Union's SDC").  Like the Region's SDC, the Union's SDC

requested Mr. Musk's electronic communications, but also sought those made by Ms. Toledano

and Mr. Hedges.  In its June 4, 2018 petition to revoke these requests[7], Tesla repeatedly objected

due to their irrelevance to any of the matters alleged in the Operative Complaint.  For example,

Tesla wrote: "Of the 3 individuals listed in Request No. 14, the Complaint references only Elon

Musk, and only to allege his supervisory status. There are accordingly no allegations pending in

these proceedings with respect to the role played by Mr. Musk, Mr. Hedges, or Ms. Toledano in

any actions unlawfully motivated by anti-union animus."

On May 30, 2018, the Union also served Tesla with subpoenas *ad testificandum* A-1-

11BJ5G3 and A-1-11BKIP5 ("Union's SAT") issued to Mr. Musk, calling for Mr. Musk to

appear at the trial beginning June 11, 2018.  In its petition to revoke the Union's SAT[8], Tesla

objected because the Union was subpoenaing Mr. Musk in furtherance of its corporate campaign

---

[6] Tesla's amended petition to revoke is attached hereto as **Exhibit 6**.
[7] Tesla's petition to revoke is attached hereto as **Exhibit 7**.
[8] Tesla's petition to revoke is attached hereto as **Exhibit 8**.

and for the purpose of harassing him and without a genuine litigation need – since again the Operative Complaint contained no allegations directly relating to Mr. Musk.

### D. The Region Amends the Operative Complaint to Allege that Mr. Musk and Ms. Toledano Made Unlawful Statements During a June 7, 2017 Meeting with Tesla Employees

On June 4, 2018, the Region issued the Amendment that is the subject of this Request/Motion. *See* Exhibit J to the Motion. In addition to listing Ms. Toledano and Mr. Hedges for the first time as statutory supervisors, the Amendment asserted new factual allegations. Specifically, the Amendment alleged that on June 7, 2017, Mr. Musk "solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity" and "informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances." The Amendment also alleged that Ms. Toledano "restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's facility wanted a union and asking them why employees would want to pay union dues" at this same June 7, 2017 meeting. Though it named him as a statutory supervisor, the Amendment did not assert any factual allegations against Mr. Hedges.

### E. Judge Tracy Revokes the Union's SAT Directed At Mr. Musk

On June 8, 2018, Judge Tracy issued an Order revoking the Union's SAT directed at Mr. Musk. In her order, she wrote:

> I am concerned that there is no valid explanation from the General Counsel or the Charging Party as to why, at the eleventh hour on the eve of trial and after investigating a charge since 2017, the amended complaint was filed on June 4,

2018 adding facts which may or may not be admitted by the Respondent and which retains the current June 11, 2018 trial date.[9]

## F.    Tesla Moves to Dismiss The Allegations of the Amendment

At the beginning of the trial on June 11, 2017, Tesla moved to dismiss the allegations of the Amendment for lack of jurisdiction insofar as they were never asserted in and were not "closely related" to any timely-filed charge as mandated by §10(b) of the Act.  The question presented by Tesla's Motion was therefore a simple one: are the allegations of the Region's Amendment regarding the events of a June 7, 2017 meeting supported by a timely-filed charge? To answer that question in the affirmative, the General Counsel has the burden of proving that the Amendment's allegations were, at a minimum, "closely related" to a charge filed by the Union within 6 months of that date.

The Motion, along with the documentary evidence attached thereto, established the following facts:

- The allegations of the Amendment were not included in any of the three charges or the three amended charges filed by the Union after June 7, 2017;

- All of the charges filed by the UAW after June 7, 2017 were drafted and signed by the UAW's attorneys[10];

- The charge filed on June 12, 2017 alleged that the subject incidents occurred on February 10, 2017, May 24, 2017 and May 25, 2017;

---

[9] The ALJ's order is attached hereto as **Exhibit 9**.

[10] As evidenced by the Union's most-recent charge filed on May 23, 2018, Case No. 32-CA-220777, its attorneys clearly know how to draft charges with sufficient particularly.  It states:

> On May 20, 2018, Tesla, Inc., through its CEO Elon Musk, violated the National Labor Relations Act by threatening to take away employee stock options in retaliation for Tesla employees engaging in protected union activity. Specifically, Musk stated in a public tweet, "[n]othing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted But why pay union dues & give up stock options for nothing?" This tweet went out to Musk's 21.8 million twitter followers, has been shared and republished by numerous individuals and media outlets, and remains publicly accessible at the time of this filing.

*See* Exhibit **10(a)**.

- The Region issued "Initial Letters" in connection with each of the aforementioned charges which, as provided for by § 10054 of the ULP Casehandling Manual, disclosed the general nature of the at-issue conduct alleged to have violated §8(a)(1), the general locale, the identity of the supervisor involved, the date of the conduct, and the identities of the witnesses from whom the Region would seek to take affidavits;

- None of the Region's "Initial Letters" referenced the solicitation of grievances, statements regarding union dues, Elon Musk, June 7, 2017, or made any request to take Elon Musk's affidavit;

- The Consolidated Complaint, the Amended Consolidated Complaint and the Second Amended Consolidated Complaint were all issued after June 7, 2017;

- The allegations of the Amendment were not included in the Consolidated Complaint, the Amended Consolidated Complaint and the Second Amended Consolidated Complaint;

- The General Counsel took Ms. Toledano's affidavit in connection with a charge that it eventually dismissed in February 2018; and

- The General Counsel did not ask Ms. Toledano any questions about any June 7, 2017 meeting involving Mr. Musk or any of the statements attributed to her in the Amendment.

### G. The General Counsel and Union File Oppositions to the Motion But Cannot Agree on Which Charges Support the Allegations of the Amendment

The General Counsel and the Union filed Oppositions to the Motion. With their Oppositions, the General Counsel and the Union bend over backwards to avoid giving the simplest answer to this simple question, i.e., that the Union filed any specific charge in response to the allegations asserted in the General Counsel's Amendment. They instead argue that the vague and generically plead 8(a)(1) language of no less than *six different charges*—and not even the same charges—somehow individually and cumulatively support the Amendment's

allegations regarding a single meeting.[11]  They alternatively take the position that, because the Union has filed more than a dozen charges against Tesla during its two-year-long organizing campaign, statements made by Mr. Musk during a June 7, 2017 meeting surely must be "closely relate" to at least one of them.

Far from establishing that his jurisdiction exists, the General Counsel argues that an administrative law judge lacks the authority to test it.  He unsurprisingly makes no attempt to explain why his July 7, 2017, November 21, 2017 and December 20, 2017 letters to Tesla which specifically enumerate *56 separate allegations* by the Union make no reference to Mr. Musk or any June 7, 2017 meeting.  Nor does he even try to explain why he did not ask Ms. Toledano a single question about any June 7, 2017 meeting when he took her affidavit on February 5, 2018.  Likewise, he offers no explanation as to why he waited until the eve of trial to assert nearly year-old allegations against Tesla's high-level executives only days after Tesla petitioned to revoke its and the Union's overbroad and burdensome subpoenas seeking their electronic communications and testimony.

Most tellingly, the General Counsel does not address Tesla's contention that he amended the complaint on the eve of trial in an attempt to justify his and the Union's overly broad subpoena requests rather than agreeing to narrow them to the issues in dispute.  He instead incredibly argues that "an administrative law judge is not empowered with the authority to withdraw a properly issued and noticed amendment to a complaint issued prior to a hearing".  *See* Exhibit 3, General Counsel's Opposition at p. 1.  This assertion is plainly wrong as §

---

[11] In its opposition, the Union claimed that the "objective truth is that each of the General Counsel's allegations raised it [sic] his Amendment were properly pled" in the charges and amended charges filed in Case Nos. 32-CA-200530 and 32-CA-208614.  *See* Exhibit 4, Union's Opposition at pp. 1-3.  Yet the General Counsel had a different story to tell; he contended that the allegations of his Amendment were also "encompassed" by the amended charges filed on July 28, 2017 in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197.  *See* Exhibit 3, General Counsel's Opposition at p. 2.  Which is it folks?  Whatever the answer, this manifest disconnect by and between the GC and the Charging Parties is yet further proof that the otherwise time barred June 4 Amendment is not "closely related" to any of the charges on file in this case.

102.35(a)(8) of the Board's Rules and Regulations specifically provides that an administrative law judge has the authority to rule on motions to dismiss complaints or portions thereof. Likewise, the Union opposition offers no legal basis for rejecting Tesla's dismissal motion, mischaracterizing the Company's motion as being based on the timing of the June 4 Amendment and arguing that "just because the Respondent doesn't like [the] timing of an Amendment doesn't mean it's improper."  *See* Exhibit 4, Union's Opposition at p. 2.

Tesla did not bring the Motion because it "does not like" the timing of the General Counsel's Amendment.  Rather, under § 102.17 of the Board's Rules, the General Counsel could only amend the complaint prior to the start of the hearing "upon such terms as may be deemed just."  An explanation is accordingly warranted for why none of the initial letters sent to Tesla by the General Counsel regarding any of the charges filed by the Union makes any reference whatsoever to Mr. Musk or any June 7, 2017 meeting.  An explanation is additionally warranted for why the General Counsel never requested to take Mr. Musk's or Ms. Toledano's affidavits to obtain evidence as to whether they made unlawful statements during any June 7, 2017 meeting.  An explanation is additionally warranted for why the General Counsel never asked Ms. Toledano any questions about any June 7, 2017 meeting when he took her affidavit in February 2018 regarding an unrelated charge.  An explanation is additionally warranted for why, notwithstanding the clear instruction of section 10054 of the Casehandling Manual, the General Counsel did not disclose the general nature of the Amendment's 8(a)(1) allegations, the general locale, the identities of the supervisors involved, and the date of the conduct before issuing the Amendment.  Finally, if the allegations of the Amendment were encompassed by and/or "closely related" to anywhere between four to six charges filed by the Union, an explanation is warranted for why the General Counsel's "investigation" into the allegations of the Amendment deviated in

nearly every measurable respect from his investigation into the allegations of those same four to six charges.

Coupled with the suspicious circumstances surrounding the issuance of the Amendment, the General Counsel's and the Union's silence on this matter leads to the inevitable conclusion that the General Counsel amended the complaint to include otherwise untimely allegations against Mr. Musk and Ms. Toledano solely to provide a foundation for his and the Union's overly broad subpoenas.

### H.    Judge Tracy Denies Tesla's Motion to Dismiss The June 4th Amendment Without Prejudice

On August 10, 2018, Judge Tracy issued her Order denying Tesla's Motion.  There, Judge Tracy noted that she has no authority to overturn a decision by the Regional Director to amend a complaint prior to the hearing pursuant to § 102.17 of the Board's Rules.  Citing to *Reddi-I*, 390 NLRB 1115, 1116 (1988); *Charter Communications, LLC*, 366 NLRB No. 46, slip op. at 2 (2018), reconsideration denied by unpub. Board order issued June 7, 2018 (2018 WL 2761559), she therefore concluded that "the remaining issue is whether the amended complaint allegations 'arise from the same factual situation or sequence of events' as the timely filed charges."  In that regard, she ruled that Tesla's "motion to dismiss fail[ed] to establish the absence of a genuine issue of material fact, or that it is entitled to judgment as a matter of law. *See Security Walls, LLC*, 361 NLRB 348, 349 (2014)."  She therefore concluded that dismissal of the Amendment was not appropriate at this time, and that the result "is unchanged by Tesla's various contentions regarding the manner in which the charges underlying this proceeding were investigated".

For the reasons discussed below, this ruling was clearly erroneous and should be reversed.

**III.    TESLA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

For the limited purpose of ruling on a motion to dismiss it is true that, a judge should "construe the complaint in the light most favorable to the General Counsel, accept all factual allegations as true, and determine whether the General Counsel can prove any set of facts in support of his claims that would entitle him to relief." *Detroit Newspapers Agency*, 330 NLRB 524, 525 n. 7 (2000).  *See also Yale University*, 330 NLRB 246, 247 n. 8 (1999).  Similarly, summary judgment is warranted only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See, e.g., Security Walls, LLC*, 361 NLRB No. 29, slip op. at 1 (2014); *Leukemia and Lymphoma Society*, 363 NLRB No. 124 (2016).  Here  there is no genuine dispute.  The record establishes that the June 4 Amendment is not supported by a timely charge.  Tesla is, therefore, entitled to judgment in its favor as a matter of law.

Further, even though an otherwise untimely complaint allegation will not be barred by Section 10(b) if it is closely related to the allegations in a timely charge, *Alternative Energy Applications, Inc.*, 361 NLRB 1203, 1203 (2014), there is no dispute -- the alleged June 7, 2017 meeting involving Mr. Musk and Ms. Toledano is not "closely related" to any of the timely filed charges in this matter.  *See* Exhibit 1, Judge Tracy's Order.

**A.    Judge Tracy Erred Insofar As She Misallocated the General Counsel's Burden of Establishing that He Has Statutory Authority To Make the Allegations In the Amendment**

Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the Board." 29 U.S.C. § 160.  Interpreting and applying this language, the Board and U.S. Courts of Appeals have observed that Section 10(b) therefore serves "two separate functions" – one jurisdictional and one temporal.  Each of these functions within the factual and proven context of this case are discussed herein.  *Carney Hospital*, 350 NLRB 627, 628 (2007) (*quoting Precision Concrete v.*

*NLRB*, 334 F.3d 88, 90 (D.C. Cir. 2003) (*quoting Ross Stores, Inc. v. NLRB*, 235 F.3d 669, 677 (D.C. Cir. 2001) (Randolph, J., concurring)).

> **1.     Under § 10(b)'s Jurisdictional Function, The NLRB Has The Burden Of Proving That *Uncharged* Conduct Is "Closely Related" To The Allegations Of A Complaint As A Predicate To Its Exercise Of Jurisdiction**

Section 10(b) functions in part as a statute of limitations by prohibiting the issuance of a complaint based on conduct occurring more than 6 months prior to the filing of a charge.  *Carney Hospital*, 350 NLRB 627, 628 (2007).  Proving that *untimely charged*[12] conduct is not "closely related" to the allegations in a timely filed charge is a non-jurisdictional affirmative defense which may be waived and is subject to tolling.  *See Leach Corp.,* 312 NLRB 990, 991–992 (1993), enfd. 54 F.3d 802 (D.C. Cir. 1995).

Section 10(b) also underscores the statutory limits placed on the Board's and the General Counsel's authority to initiate unfair labor practice proceedings *sua sponte*. Thus, "[s]ection 10(b) operates as a jurisdictional limitation, under which the Board (through the General Counsel) may investigate and prosecute conduct *only* in response to the filing of a 'charge.'" *Carney Hospital*, 350 NLRB at 628 (citing *Precision Concrete, supra*, 334 F.3d at 90) (emphasis added).  By this limitation, Congress intentionally denied the Board the "power to initiate or expand unfair labor practice proceedings, at the Board's initiative." *Allied Waste Services of Massachusetts, LLC*, 01-CA-123082, -126843, 2014 WL 7429200 (Dec. 31, 2014).  Thus, though it has reasonable latitude to investigate unfair labor practices in a manner that goes beyond "the precise particularizations of a charge," *NLRB v. Fant Milling Co*., 360 U.S. 301, 309 (1959), this "does not mean the Board has 'carte blanche to expand the charge as [it] might

---

[12] There is no dispute that the Amendment satisfies § 10(b)'s temporal requirements since as Judge Tracy noted, the "remaining issue is whether the amended complaint allegations 'arise from the same factual situation or sequence of events' as the timely filed charges."

please, or to ignore it altogether.'" *Id.; see also Lotus Suites v. NLRB*, 32 F.3d 558, 589-592

(1994) (court noted that to hold otherwise would essentially allow a union to initiate sweeping

investigations of indefinite duration by the General Counsel into the employer-targets of its

organizing efforts by filing general, nonspecific 8(a)(1) charges against them once every 6

months). Given this jurisdictional function, Section 10(b) assigns to the ***GC the burden of***

***proving*** that otherwise uncharged conduct is "closely related" to what is otherwise properly

before the Board. *See Precision Concrete*, *supra,* 334 F.3d at 91 ("The problem in the present

case is that the T-shirt incident was never the subject of any charge. That omission implicates

the jurisdictional component of § 10(b)"); *Drug Plastics & Glass Co., Inc. v. NLRB.,* 44 F.3d

1017, 1022 (D.C. Cir. 1995) ("Where the Board is unable to connect the allegations in its

complaint with the charge allegation, we are unable to find that the Board has jurisdiction over

the unrelated complaint allegations.").

　　　　In *Precision Concrete*, a union filed a series of unfair labor practice charges relating to a

strike. 334 F.3d at 91. On exceptions, the company argued that a reinstatement order issued by

the ALJ pertaining to a foreman's alleged transfer of an employee to another assignment for

wearing a union T-shirt could not stand because it was not the subject of any of the charges filed

by the union. *Id* at 90. The Board denied the exception on the grounds that it was an

"affirmative defense that the [Company] failed to prove." *Id* at 91. After discussing the

distinctions between the two functions, the D.C. Circuit held that the omission of the T-shirt

incident from any of the unions charges "implicate[d] the jurisdictional component of § 10(b)".

*Id*. Thus, "[b]ecause the issue before the Board in [that] case was its jurisdiction, the Board erred

by placing the burden of proof upon the Company." *Id*.

Because the General Counsel has offered nothing to establish the relatedness of the June 4 allegations to what is properly before the Board, much less the close relatedness required by Board law or to rebut the evidence presented by Tesla establishing that the June 4 Amendment is not subsumed by any of the Union's timely charges, the GC has failed to meet it jurisdiction burden of proof. All evidence points to the fact that the June 4 Amendment is untimely and time barred by Section 10(b). A simple reading of the material documents described herein, the charges, the Region's EAJA letters, the amended charges and the Complaints issued long prior to June 4 shows that the conduct alleged in the Amendment is wholly unrelated to any of the timely filed charges herein. Moreover, nothing in any of the oppositions presented to the Judge Tracy controvert or put this evidence in dispute. Indeed, aside from mouthing the words "closely related", neither the General Counsel nor the Union point to a single, identifiable charge or allegation that render the Amendment "closely related" to what is now properly before the Board. Tesla is, therefore, entitled to judgment in its favor as a matter of law, Judge Tracy's erroneous order notwithstanding.

> **2.** **Because The Allegations Of The Amendment Included *Uncharged* Conduct Rather Than *Untimely Charged* Conduct, Judge Tracy Clearly Erred By Denying Tesla's Motion For Failing To Establish A Lack Of Material Dispute As To The General Counsel's Jurisdiction**

Here, Tesla moved to dismiss the allegations of the Amendment pursuant to § 10(b) because they were undeniably omitted from all of the charges filed by the Union. The omission of these allegations from the charges—as opposed to their untimely assertion—squarely implicates the jurisdictional component of § 10(b), meaning that the Board bears the burden of proof on the issue of relatedness and must do so to establish its jurisdiction. *Precision Concrete*, *supra*, 334 F.3d at 91.

In her Order, Judge Tracy determined that the "remaining issue is whether the amended complaint allegations 'arise from the same factual situation or sequence of events' as the timely filed charges." However, she denied Tesla's Motion "[s]pecifically, [because] Respondent ha[d] failed to demonstrate that no genuine issue of material fact remains in dispute regarding the amended allegations, which are denied by Respondent, and therefore their relationship to the timely-filed charges." Under black letter law, the General Counsel—and not Tesla—bears the burden of proving the requisite factual relationship between the UAW's charges and the allegations of the Amendment to establish his jurisdiction. *Precision Concrete*, *supra*, 334 F.3d 88. Thus, insofar as it resulted from a clearly erroneous allocation of the burden of proof, Judge Tracy's Order should be overturned.

    **B.**    **Tesla Is Nonetheless Entitled To Judgment As A Matter Of Law Because The General Counsel Cannot Prove Any Set Of Facts Which Would Establish Jurisdiction Over The Allegations Of The Amendment**

        **1.**    **The General Counsel Should Be Able To—Yet Cannot—Establish that He Has Statutory Authority To Make the Allegations of the Amendment Based On the Pleadings Alone**

Under its "closely related" test as set forth in *Reddi-I, Inc*., 290 NLRB at 1116 and modified in *Nickles Bakery of Indiana, Inc.*, 296 NLRB 927, 928 (1989), the Board (1) considers whether the timely and untimely allegations involve the same legal theory; (2) considers whether the otherwise untimely allegations arise from the same factual situation or sequence of events as the allegations in the timely charge; and (3) "may look" at whether a respondent would raise the same or similar defenses to both the timely and untimely allegations. *Carney Hospital*, 350 NLRB 627, 628 (2007).

In *Nickles Bakery*, the Board explained that "[a]llowing the boilerplate 'other acts' language to support unrelated 8(a)(1) complaint allegations contravenes 10(b)'s mandate that the Board 'not originate complaints on its own initiative.'" 296 NLRB at 928. The Board added

that "such an approach virtually renders meaningless the specificity required by Section 102.12(d) of the Board's Rules and Regulations that a charge contain a 'clear and concise statement of the facts constituting the alleged unfair labor practices affecting commerce.'" *Id.*

The Board further clarified in *Carney Hospital*, supra, 350 NLRB at 631, that "a chronological relationship without more is insufficient to support a finding of factual relatedness" as required by the second prong of the "closely related" test. There, the Board held that "the mere occurrence of the alleged violations during or in response to the same organizing campaign is insufficient to establish the close factual relationship required by Section 10(b)." Rather, the Board required some additional connection, either (1) "similar conduct, usually during the same time period with a similar object," or (2) "a causal nexus between the allegations *and* they are [(a)] part of a chain or progression of events, or [(b)] they are part of an overall plan to undermine union activity." *Id* at 630. (emphasis added). Applying this added limitation, the Board held that untimely 8(a)(1) job loss threat allegations and a timely charged suspension allegation did not involve similar conduct and were not part of a "chain or progression of events" where the supervisor that allegedly made the job loss threat was not involved in that employee's subsequent suspension. *Id.* Because there was no indication that the suspension and the alleged 8(a)(1) violations were anything more than separate actions carried out independently by several different Respondent officials, the Board also held that they were not "part of an organized plan to resist organization" even though they occurred in the midst of the same ongoing organizing campaign. *Id.*

*Carney Hospital* and its progeny underscores the Board's wisdom in exercising restraint over the invocation of the "closely related" doctrine to cure jurisdictional defects. *See Salon/Spa at Boro, Inc*., 356 NLRB 444 (2010). In *Salon/Spa*, the Board affirmed the ALJ's findings and

conclusions, including his reliance on *Carney Hospital* to find that a timely filed charge alleging

that an employee was discharged in violation of Section 8(a)(1) was not "closely related" to an

untimely allegation regarding unlawful threats made during a staff meeting. *Id.* at 455. There,

the ALJ explained that he "must determine whether the allegedly unlawful threat … [had] some

meaningful nexus with the sequence of events contained in the timely filed charges" because "a

careless application of [the "closely related"] standard could easily prove to be so elastic as to

entirely vitiate the Congressional objective of limiting the period in which a party's past conduct

could subject it to unfair labor practice litigation." *Id* at 456. His observations (adopted without

comment by the Board) warrant repeating as they apply with equal force here:

> If one were to excuse an untimely filing simply because the alleged
> misconduct was part of a sequence of similar events to those timely raised,
> the intent underlying the statute of limitations would be completely
> compromised. There is no difference in principle between the Employer's
> application of the negativity policy to Bates in November 2008 and its
> alleged threat based on that policy in September 2009. Without the vital
> limits articulated by the Board in *Carney Hospital*, nothing would stand in
> the way of a party's attempt to employ the "closely related" doctrine to
> prosecute remote actions that possess only a mere sequential and topical
> relationship to a timely filed charge. For these reasons, I agree with the
> Employer that the allegation regarding an alleged threat on September 24
> is untimely and must be dismissed.

*Id.*

More recently, Judge Etchingham came to a similar conclusion in response to the General

Counsel's argument that three untimely *Weingarten* violation allegations were "closely related"

to a timely filed discriminatory discharge charge insofar as they "grew out of the same facts and

circumstances." *Wal-Mart Stores, Inc.*, 28-CA-167277, JD(SF)-34-16, 2016 WL 4547576

(NLRB Div. of Judges) (August 31, 2016). Noting that there were no "common Respondent

decision makers between the two groups of allegations" as the timely charge did not identify the

supervisor who issued the discharge nor allege that the charging party was terminated for

invoking his *Weingarten* rights, Judge Etchingham concluded that "the required factual relationship ... [was] lacking." *Id*. He further observed that there was "no evidence that the [charge's] boilerplate verbiage was intended to allege any of the allegations the General Counsel has in the complaint or the amended complaint". *Id*. Because the second prong of the "closely related" test was not satisfied, Judge Etchingham dismissed the case. *Id*.

In applying the "closely related" test, "***the jurisdictional inquiry is wholly independent of the General Counsel's actual success in proving the alleged relationship***." *Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309, 313 (2015) (emphasis added). The Board's jurisdiction instead "should be tested by the General Counsel's allegations rather than his proof", and "factual relatedness is evaluated 'as of the time of the allegations.'" *Id*. (citing *Drug Plastics & Glass Co.*, *supra*, 44 F.3d at 1021 (adopting dissenting view of then-Judge Stevens in *NLRB v. Braswell Motor Freight Lines, Inc.*, 486 F.2d 743 (7th Cir.1973)).[13]

Judge Tracy did not base her Order on General Counsel's allegations. Instead, she erroneously deferred ruling on the merits of Tesla's dismissal motion, requiring nothing in the way of proof from the General Counsel of "close related[ness]" and focusing, instead, on the General Counel's anticipated proof for the purpose of later determining this jurisdictional issue. For this reason as well, Judge Tracy's August 10 order must be reversed.

> **2.    The General Counsel Cannot Establish that the New Allegations are "Closely Related" to Case 32-CA-200530**

---

[13] Though the Board has not formally adopted any one approach towards testing the General Counsel's jurisdiction, it came close in *Carney Hospital* by approving *Drugs Plastics* and *Ross Stores* yet requesting further guidance. *Carney Hospital*, 350 NLRB at 630, fn. 11. *Ross Stores*, however, was an *untimely charged* conduct case (as opposed to an *uncharged conduct* case) that implicated the temporal (and not jurisdictional) function of Section 10(b). Further, the D.C. Circuit has since clarified in that the test articulated in *Drug Plastics* had always assessed the General Counsel's jurisdiction based on his pleadings rather than his proof and as of the time of the allegations. *Hyundai Am. Ship. Agency, Inc., supra*, 805 F.3d at 313. Thus, in cases where, like here, the General Counsel intends to issue a complaint on *uncharged conduct*, the Board should insist that he do so taking all necessary precautions to preserve its jurisdiction and ensure that its position is substantially justified.

The Union's Charge in Case 32-CA-200530, filed June 12, 2017—5 days after the newly

alleged June 7, 2017 meeting, makes the following allegations:

> On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.

> On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.

> On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

> On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

> On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.

> On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.

*See* Exhibit A to the Motion.

Like the Amendment's allegations against Mr. Musk and Ms. Toledano, the charge in

Case 32-CA-200530 alleges that Tesla committed several 8(a)(1) violations, that is where the

similarity ends.  The charge does not name Mr. Musk or Ms. Toledano, does not state that any

ULP occurred on June 7, 2017, does not make any mention of any meeting with employees, and

does not make any assertions regarding unlawful solicitation of grievances, statements of futility, or statements regarding union wages. The employer's defenses to the newly asserted allegations in the Amendment—i.e., that such statements were never made by Mr. Musk or Ms. Toledano during the alleged June 7, 2017 meeting—are completely dissimilar.

The Union's First Amended Charge in Case 32-CA-200530, filed July 28, 2017, adds the following allegation:

> Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

 *See* Exhibit K to the Motion.

The Union's amended charge is similarly incapable of supporting the allegations asserted in the Amendment. Further, a review of the Region's 7/7/2017 Request for Evidence issued regarding this charge will leave no doubt that the allegations of Charge 32-CA-200530 had absolutely nothing to do with any June 7, 2017 meeting conducted by Mr. Musk and Ms. Toledano. *See* Exhibit B to the Motion. The Region did not seek to take Mr. Musk's or Ms. Toledano's affidavits. Nor did it request that Tesla submit a position statement with respect to any June 7, 2017 meeting involving those two individuals. That the allegations of the Amendment are not "closely related" to those asserted in this charge cannot be disputed given Union Counsel's failure to include them in the charge's July 28, 2017 amendment. Rather, its boilerplate 8(a)(1) allegations are insufficient as a matter of law to support the new allegations against Mr. Musk and Ms. Toledano. The General Counsel accordingly cannot rely on Charge 32-CA-200530 to establish its jurisdiction over the allegations of the Amendment.

### 3.     The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-208614

The Union's charge in Case 32-CA-208614, filed October 25, 2017, makes the following allegations:

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things. terminating a group of employees to discourage protected concerted activity by other employees.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

> Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

> Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by intimidating and harassing employees for their Section 7 activities.

> By these and other acts, Tesla. Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

*See* Exhibit D to the Motion.

Though, like the Amendment's allegations against Mr. Musk and Ms. Toledano, the initial charge in Case 32-CA-208614 alleges that Tesla committed several 8(a)(1) violations, these boilerplate allegations are legally insufficient to confer jurisdiction. The charge does not name Mr. Musk or Ms. Toledano, state that any ULP occurred on June 7, 2017, make any mention of any meeting with employees, or make any assertions regarding unlawful solicitation of grievances, statements of futility, or statements regarding union wages. Discounting the boilerplate 8(a)(1) language, the allegations of Charge 32-CA-208614 deal principally with the purported "mass discharge" theory which even the Region found was too untenable to support a complaint. The employer's defenses to the newly asserted allegations in the Amendment—i.e., that such statements were never by Mr. Musk or Ms. Toledano during the alleged June 7, 2017 meeting—are additionally completely dissimilar.

The Union's First Amended Charge in Case 32-CA-208614, filed March 13, 2017, adds the following allegation:

> Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity.

*See* Exhibit L to the Motion.

Assuming *arguendo* that the amended charge might relate back to the October 25, 2017 filing date of the initial charge, it is equally incapable of supporting the allegations asserted in

22-60493.5383

the Amendment.  As made clear by the Region in its November 21, 2017 Request for Evidence, the allegations of Charge 32-CA-208614 had absolutely nothing to do with any June 7, 2017 meeting conducted by Mr. Musk and Ms. Toledano.  *See* Exhibit E to the Motion.  The Region did not seek to take Mr. Musk's or Ms. Toledano's affidavits and, though Ms. Toledano did provide an affidavit to Mr. Rodriguez Ritchie, he did not ask her a single question pertaining to the newly alleged June 7, 2017 meeting.  Nor did the Region request that Tesla submit a position statement with respect to any June 7, 2017 meeting involving those two individuals.

Further, while the amended charge asserts—in boilerplate language— that "Tesla…coerced employees...by…making a statement of futility regarding employee support for the Union," the subsequently issued Operative Complaint made clear that this allegation concerns comments made by Supervisor Homer Hunt in August 2017.  That the allegations of the Amendment are not "closely related" to those asserted in this charge cannot be disputed given Union Counsel's failure to include them in the charge's March 13, 2017 amendment.  The General Counsel accordingly cannot establish that the Amendment is "closely related" to Charge 32-CA-200530.

### 4.    The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-210879

The Union's charge in Case 32-CA-210879, filed December 1, 2017, makes the following allegations:

> ln the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

*See* Exhibit G to the Motion.

William Locklear was employed at Tesla's Gigafactory in Sparks, Nevada. There is nothing to suggest that the "co-workers" referenced in this charge were those that attended any alleged meeting with Mr. Musk and Ms. Toledano on June 7, 2017. The charge makes no reference to Mr. Musk, Ms. Toledano, solicitation of grievances, futility statements, union dues, or worker safety.

The Union's First Amended Charge in Case 32-CA-210879, filed December 6, 2017, adds the following allegation:

> In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

*See* Exhibit M to the Motion.

Like the amended charges filed by Union Counsel in the cases that preceded 32-CA-210879, this amended charge makes clear its underlying allegations had absolutely nothing to do with those asserted in the Region's Amendment. The same rings true for the Region's 12/20/2017 Request for Evidence, which—again—did not seek to take Mr. Musk's or Ms. Toledano's affidavits or give any indication whatsoever that the charge had initiated an investigation into their activities. *See* Exhibit H to the Motion.

### 5.    Contrary to Judge Tracy's Order, *Charter Communications* Supports Tesla's Position

In cases like the instant where the General Counsel intends to issue a complaint on *uncharged* conduct, the Board should insist that he do so taking all necessary precautions to preserve its jurisdiction and ensure that its position is substantially justified. *See Precision Concrete, supra,* 362 F.3d 847 (granting fees and costs under EAJA for General Counsel's issuance of complaint in excess of jurisdiction). Viewing his actions in light of the record in

*Charter Communications*, 366 NLRB No. 46 (2018)[14], which Judge Tracy cited in her Order, it is clear that he did no such thing.

In that case, the Board held that untimely 8(a)(1) allegations could be considered timely insofar as they "all relate[d] to the Respondent's belief that French was the mastermind of the union activity and to the steps that it allegedly took to thwart that activity." *Id*, slip. op. 2. Here, the General Counsel asserted a similar theory in his Opposition to Tesla's Motion. Without making any meaningful reference to the language used in any of the Union's charges, he essentially repeated his opening statement and theory of the case to establish that the *uncharged* allegations of the Amendment pertaining to a June 7, 2017 meeting were "closely related" to roughly 8 different charges filed by the UAW during its organizing campaign.

Notwithstanding these so-called "similarities", a comparison of the supporting timely charges in *Charter Communications* reveals stark contrasts:

> "On or around September 30, the Employer through its Supervisor Rob Lothian told me that the Employer was aware of my Union activities and threatened me with termination in order to discourage union activities. On or around October 14, 2014, the Employer terminated me in retaliation for my Union organizing activities."

> "On 11/14/14 I was terminated from Charter. I was told by two Supervisors and a manager that I was outed as the 'mastermind' behind the union activity that took place during the previous summer. During the summer, Brian from the IEBW [sic] was helping me to organize."

Unlike the charges in this case, the claimed "union mastermind" theory is expressly stated and facially apparent from the charges alone. A plan to resist union organizing and a logical progression of events can also be inferred from the close temporal proximity between the

---

[14] Tesla contends that *Charter Communications,* currently on review before the Sixth Circuit, Case No. 18-1778, was wrongly decided and contrary to the Board's own precedent. *See e.g., Carney Hospital, supra.*; *SKC Electric, Inc.,* 350 NLRB 857, 858 (2007). In any event, *Charter Communication*, supports Tesla's position that the General Counsel lacks jurisdiction to issue a complaint on allegations which are not "closely related" to a timely filed charge.

dates identified by the allegations and the claimed corroboration by three of the employer's supervisors. The charge also identifies the supervisor that purportedly threatened the charging party for his union activities, and alleges that he was thereafter terminated roughly two-weeks after. In sum, it is facially apparent from these charges that they are "closely related" to the untimely-filed charges.

The same cannot be said for the charges that the General Counsel and the UAW contend are "closely related" to the allegations of the Amendment. Rather, the UAW's charges are entirely bereft of any details from which even a remote connection might be inferred between the employees that attended the alleged June 7, 2017 meeting, Mr. Musk, Ms. Toledano, or any of the statements alleged in the Amendment. Rather, the UAW's charges are merely generalized statements that are simply incapable of supporting the allegations of the Amendment.

## IV.  **CONCLUSION**

From the get-go, Tesla has fully cooperated with the Region during its fourteen-month long investigation into the dozens of charges filed against it by the UAW. It has submitted thousands of pages of documents and position statements in response to the Region's requests for evidence and ensured the availability of its high-ranking managers and executives to provide nearly twenty affidavits. Yet notwithstanding Tesla's efforts, the Region cynically chose to amend its Complaint on the eve of trial to justify the overly broad subpoenas issued in these proceedings rather than attempting to meet and confer in good faith in an effort to narrow them to the issues in dispute. Given Congress' foresight in creating the limitations outlined in Section 10(b), Tesla need not rely on the Region's good faith to protect itself against such abuses. Because the allegations of the Amendment is neither supported by a timely charge nor "closely related" to those that are timely, the Region's June 4 Amendment is barred by Section 10(b) and

in excess of the General Counsel's statutory authority.  Accordingly, the June 4 Amendment should and must be dismissed.

Dated:  August 24, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.5388

CERTIFICATE OF SERVICE

        At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On August 24, 2018, I served a true copy of the following document(s) described as **TESLA'S REQUEST FOR SPECIAL PERMISSION TO APPEAL ADMINISTRATIVE LAW JUDGE AMITA B. TRACY'S ORDER DENYING TESLA'S MOTION TO DISMISS; REQUEST FOR *DE NOVO* REVIEW OF TESLA'S MOTION TO DISMISS and EXHIBITS THERETO** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224
T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021
E-mail: noah.garber@nlrb.gov

Valerie Hardy-Mahoney
Regional Director, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224
E-mail: valerie.hardy-mahoney@nlrb.gov

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
T: (323) 655-4700

Administrative Law Judge Amita Tracy
E-mail: Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

22-60493.5389

1    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s)
2    at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was
3    unsuccessful.

4    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of
5    the bar of this Court at whose direction the service was made.

6    Executed on August 24, 2018, at San Francisco, California.

7

8    _____

9    Sarah Smith

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:487587535.1                                    -2-                        CERTIFICATE OF SERVICE
                                                                                    CASE NO. 32-CA-197020 et al.

# EXHIBIT 1

22-60493.5391

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
## DIVISION OF JUDGES
## SAN FRANCISCO BRANCH OFFICE

**TESLA, INC.**

    **and**

**MICHAEL SANCHEZ, an Individual**

    **And**

**JONATHAN GALESCU,  an Individual**

    **and**

**RICHARD ORTIZ, an Individual**

    **and**

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO**

**Cases  32-CA-197020**
**32-CA-197058**
**32-CA-197091**
**32-CA-197197**
**32-CA-200530**
**32-CA-208614**
**32-CA-210879**

## <u>ORDER DENYING RESPONDENT'S MOTION TO DISMISS</u>

On June 4, 2018, the Regional Director for Region 32 issued an amendment to the second consolidated complaint in this matter which was set for hearing beginning on June 11, 2018. This amendment, at complaint paragraph 7(y), alleges, in part, that Elon Musk (Musk) on June 7, 2017 solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity and informed employees that it would be futile for them to select a union as their bargaining representative by telling the employees they did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances. The amendment also alleges that on June 7, 2017, Gaby Toledano (Toledano) restrained and coerced employees from engaging in union organizational activities by telling them that no one

22-60493.5392

at Respondent's facility wanted a union and asking them why employees would want to pay union dues. The amendment, at paragraph 8(d), further clarifies the date Respondent issued a disciplinary warning to Jose Moran (Moran). Respondent appears to seek to dismiss the allegations against Musk and Toledano. On June 18, 2018, Respondent filed a timely answer to the amendment, denying the allegations in complaint paragraph 7(y) but admitting to the allegations in complaint paragraph 8(d).

At the start of the hearing, on June 11, 2018, Respondent motioned to dismiss the June 4, 2018, amendment to the second consolidated complaint. Respondent raised a number of reasons as to why its motion to dismiss should be granted. Due to Respondent's lengthy motion, I permitted the General Counsel and the Charging Party to file any opposition to the motion to dismiss by June 22, 2018. Both the General Counsel and the Charging Party filed timely oppositions. Respondent filed a reply.

Upon reviewing the parties' filings, I deny Respondent's motion to dismiss without prejudice. Under Section 102.17 of the National Labor Relations Board's (the Board) Rules and Regulations, the Regional Director may amend the complaint "as may be deemed just, prior to the hearing." As the Regional Director acted within her authority, I have no authority to overturn her decision to amend the complaint. Thus, the remaining issue is whether the amended complaint allegations "arise from the same factual situation or sequence of events" as the timely filed charges. See *Redd-I, Inc.,* 290 NLRB 1115, 1116 (1988); *Charter Communications, LLC*, 366 NLRB No. 46, slip op. at 2 (2018), reconsideration denied by unpub. Board order issued June 7, 2018 (2018 WL 2761559). In this regard, Respondent's motion to dismiss fails to establish the absence of a genuine issue of material fact, or that it is entitled to judgment as a matter of law. See *Security Walls, LLC*, 361 NLRB 348, 349 (2014). Specifically, Respondent has failed to demonstrate that no genuine material issue of fact remains in dispute regarding the

amended allegations, which are denied by Respondent, and therefore their relationship to the timely-filed charges.  As such, dismissal of these amendments is not appropriate at this time.[1] The parties should be prepared to fully litigate the merits of the amended allegations when the trial resumes on September 24, 2018, in Oakland, California.

**SO ORDERED.**

Date: August 10, 2018, San Francisco, California.

Amita B. Tracy
Administrative Law Judge

*Served by e-mail upon the following:*

Edris W. Rodriguez, Esq., Email: Edris.RodriguezRitchie@nlrb.gov
Noah Garber, Esq., Email: noah.garber@nlrb.gov
(NLRB)

Mark S. Ross, Esq., MRoss@sheppardmullin.com
(Respondent)

Margo A. Feinberg, Esq.,
 Email: margo@ssdslaw.com
(Charging Party)

[1] This result is unchanged by Respondent's various contentions regarding the manner in which the charges underlying this proceeding were investigated, a matter that is not under my purview.

# EXHIBIT 2

22-60493.5395

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

**RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

## I.    INTRODUCTION

On the eve of trial, and days after Tesla served its petitions to revoke the Region's and

the Union's subpoenas *duces tecum* seeking Elon Musk's private communications based, in part,

on the Complaint's failure to allege Mr. Musk's personal involvement in a single unfair labor

practice, the Region filed and served an "Amendment to the Second Amended Consolidated

Complaint."  For the very first time since it began its investigation nearly 14 months ago, the

Region now conveniently alleges that Mr. Musk and Gaby Toledano violated Section 8(a)(1).

Tesla will not speculate as to why these allegations arising out of a June 7, 2017 meeting were

22-60493.5396

omitted from the Union's June 12, 2017 charge filed in Case 32-CA-200530, the Union's July

28, 2017 amended charge filed in Case 32-CA-200530, the August 31, 2017 Consolidated

Complaint, the September 1, 2017 Amended Consolidated Complaint, the Union's October 25,

2017 charge filed in Case 32-CA-208614, the Union's December 1, 2017 charge filed in Case

32-CA-210879, the Union's December 6, 2017 amended charge filed in Case 32-CA-210879, the

Union's March 13, 2018 amended charge filed in Case 32-CA-200530, and the March 31, 2018

Second Amended Consolidated Complaint.  Regardless of whether these omissions resulted from

sheer inadvertence by the Union or overly zealous prosecutorial gamesmanship by the General

Counsel, the Region cannot establish its jurisdiction over these allegations by carrying its burden

of proving that they are "closely related" to the violations asserted in any charge filed by the

Union within the 10(b) limitations period.  Even if the General Counsel could somehow prove

these allegations at trial (he cannot), the jurisdictional defect is incurable.  Accordingly, in the

interest of judicial economy and avoiding the prejudice resulting to Tesla should it be forced to

defend allegations that are insufficient as a matter of law, Tesla respectfully requests that each of

the allegations asserted in the Amendment to the Second Amended Consolidated Complaint be

dismissed.

## II.    PROCEDURAL AND OPERATIVE FACTS

### A.    The Union's Initial Charges—and the Region's Initial Complaints—Make No Allegations Against Mr. Musk or Ms. Toledano.

Between April 17, 2017 and July 28, 2017, the Charging Parties and their attorney Margo

A. Feinberg (Counsel for Charging Parties) filed 5 unfair labor practice charges and 5 amended

charges against Tesla, Inc. ("Tesla") under Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-

197091, 32-CA-197197, and 32-CA-200530.  None of these charges asserted any allegations

against Tesla's CEO Elon Musk ("Mr. Musk"), Tesla's Chief People Officer Gaby Toledano

22-60493.5397

(Ms. Toledano), or Tesla's Director of HR for Production Josh Hedges ("Mr. Hedges").  By letter dated July 7, 2017, Field Attorney for Region 32 Edris W.I. Rodriguez Ritchie ("Mr. Rodriguez Ritchie") requested to take affidavits from Lisa Lipson, Lauren Holcomb, David Zweig, and Seth Woody as evidence regarding the allegations raised in Case 32-CA-200530,[1] a copy of which is attached hereto as **Exhibit A**, and further requested that Tesla submit a position statement ("7/7/2017 Request for Evidence," attached hereto as **Exhibit B**).

On August 31, 2017, the Regional Director for Region 32 ("Region") issued a Consolidated Complaint alleging, among other things, that Tesla's HR Business Partner David Zweig attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union on April 5, 2017; that Respondent's Director of Global Environmental Health and Safety Seth Woody attempted to prohibit an employee from discussing safety concerns with other employees and/or the Union on April 28, 2017; and that Human Resources Business Partner Lisa Lipson interrogated employees about protected concerted activities and/or union activities in the presence of Environmental Health and Safety Sustainability Specialist Lauren Holcomb during two separate meetings on May 24, 2017 ("Consolidated Complaint," attached hereto as **Exhibit C**).  Though the Consolidated Complaint did not allege that Tesla Mr. Musk committed or was otherwise involved in any unfair labor practice, it named him as a statutory supervisor.[2]  By contrast, the Consolidated Complaint did not name or otherwise reference Ms. Toledano or Mr. Hedges.

---

[1] The initial charge filed in case 32-CA-200530 is the only one of the aforementioned charges filed after June 7, 2017.

[2] The Region issued the Amended Consolidated Complaint the following day, apparently to remove the facially inaccurate allegation that Tesla is a "health care institution within the meaning of Section 2(14) of the Act."

**B.      The Region Takes Ms. Toledano's Affidavit and Does Not Ask Her Questions About any June 7, 2017 Meeting with Mr. Musk and Tesla Employees.**

On October 25, 2017, Charging Parties and their counsel filed the initial charge in Case No. 32-CA-208614, a copy of which is attached hereto as **Exhibit D**.  The charge does not assert any allegations against Mr. Musk, Ms. Toledano, or Mr. Hedges.  By letter dated November 21, 2017, Mr. Rodriguez Ritchie requested to take affidavits from "Vannick Ly, Lehi Gomez, Paul James, Arnold Camat, Timothy Fenelon, Tope Ogunniyi, Kyle Martin, Mario Last Name Unknown, Elena Elliott, Ricky Gecewich, Albert Rios, Duwone Ashley, Thuy Truong, Juan Martinez; Sean Boone; Kyle Last Name Unknown (Human Resources), Nicole White, Chris Padilla" and "Dane Last Name Unknown (Human Resources) as evidence regarding the allegations raised in Case 32-CA-208614, and further requested that Tesla submit a position statement ("11/21/2017 Request for Evidence," attached hereto as **Exhibit E**).  Though not requested, Tesla made Ms. Toledano available to provide an affidavit to Mr. Rodriguez Ritchie given her involvement in the implementation of the employee evaluation resulting in the layoffs referenced in the Region's letter.  When Mr. Rodriguez Ritchie took her affidavit on February 5, 2018, he did not ask her about any June 7, 2017 meeting, and it was not discussed.

On December 1, 2017, Charging Parties and their counsel filed the initial charge in Case No. 32-CA-210879, a copy of which is attached hereto as **Exhibit F**.  The charge does not assert any allegations against Mr. Musk, Ms. Toledano, or Mr. Hedges.  By letter dated December 20, 2017, Mr. Rodriguez Ritchie requested to take affidavits from "Dave Teston, Associate Manager, Josh Surgeon, (title unknown to Board Agent but known by Employer), Shawn Gaines, Supervisor, Kevin Kassekert, Vice President for Infrastructure Development, Matthew Stewart, Supervisor, Tyler Ash, Supervisor, Andy McIndoe, Associate Production Manager, Cindie Reneau, Human Resources Representative" and "Elliot Kent, Supervisor" as evidence regarding the allegations raised in Case

22-60493.5399

32-CA-210879, and further requested that Tesla submit a position statement ("12/20/2017

Request for Evidence," attached hereto as **Exhibit G**).

On March 30, 2017, the Region issued a Second Amended Consolidated Complaint (the

"Operative Complaint"), a copy of which is attached hereto as **Exhibit H**.  In addition to the

allegations asserted in the Consolidated Complaint and the Amended Consolidated Complaint,

the Operative Complaint alleged that Supervisor Homer Hunt made a statement of futility to

employees in August of 2017; that Tesla's supervisors Tope Ogunniyi and Tim Fenelon

disparately enforced work apparel restrictions against employees wearing clothing with Union

insignia; that Employee Relations Investigator Ricky Gecewich interrogated employees about

their protected activities in separate meetings conducted September 21, 2017 and October 19,

2017 and promulgated/disparately enforced a rule prohibiting employees from accessing internal

work systems without proper business justification also on October 19, 2017; that Respondent

unlawfully discharged Richard Ortiz on October 18, 2017; and that Respondent unlawfully

disciplined Jose Moran on October 19, 2018.  The Operative Complaint again named Mr. Musk

as a statutory supervisor notwithstanding its failure to allege that he committed or was otherwise

involved in any unfair labor practice.  The Operative Complaint did not name or otherwise

reference Ms. Toledano or Mr. Hedges.  Nor did the Operative Complaint contain any

allegations pertaining to the layoffs for which Ms. Toledano provided an affidavit to Mr.

Rodriguez Ritchie.

C.     **Tesla Petitions to Revoke the Requests of the General Counsel's and the Union's Subpoenas *Duces Tecum* Seeking Mr. Musk's and Ms. Toledano's Electronic Communications Because There Are No Pending Allegations Against Them.**

On May 24, 2018, the Region served Tesla with subpoena *duces tecum* B-1-118CRIT

("Region's SDC") which contained several requests for Mr. Musk's personal email and social

22-60493.5400

media communications.  In its May 31, 2018 petition to revoke these requests, Tesla objected

due to their irrelevance to any of the matters alleged in the complaint.  The petition stated: "None

of the witnesses, including Gecewich stated that any of the individuals listed in Request No. 7

(including Elon Musk) participated in the decision to terminate Ortiz and counsel Moran for their

misconduct.  In fact, the Complaint does not even allege that Elon Musk … violated any section

of the NLRA, much less section 8(a)(3).  In its objections to Request No. 10, Tesla reiterated:

"***There is no allegation that Elon Musk directed, was involved in, or in any way influenced
any of the decisions or actions described in the Complaint.***"

On May 31, 2018, the Union served Tesla with subpoenas *duces tecum* Nos. B-1-

11BJS5V and B-1-11BKOEJ ("Union's SDC").  Like the Region's SDC, the Union's SDC

requested Mr. Musk's electronic communications, but also sought those made by Ms. Toledano

and Mr. Hedges.  In its June 4, 2018 petition to revoke these requests, Tesla repeatedly objected

due to their irrelevance to any of the matters alleged in the Operative Complaint.  For example,

Tesla wrote: "Of the 3 individuals listed in Request No. 14, the Complaint references only Elon

Musk, and only to allege his supervisory status. There are accordingly no allegations pending in

these proceedings with respect to the role played by Mr. Musk, Mr. Hedges, or Ms. Toledano in

any actions unlawfully motivated by anti-union animus."

### D.    The Region Amends the Complaint to Allege that Mr. Musk and Ms. Toledano Made Unlawful Statements During a June 7, 2017 Meeting with Tesla Employees.

On June 4, 2018, the Region issued an "Amendment to the Second Amended

Consolidated Complaint" (the "Amendment"), a copy of which is attached hereto as **Exhibit I.**

In addition to listing Ms. Toledano and Mr. Hedges as statutory supervisors, the Amendment

asserted new factual allegations.  Specifically, the Amendment  alleged that, on June 7, 2017,

Mr. Musk "solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity" and "informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances." The Amendment also alleged that Ms. Toledano "restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's facility wanted a union and asking them why employees would want to pay union dues" at this same June 7, 2017 meeting. Though it named him as a statutory supervisor, the Amendment did not assert any factual allegations against Mr. Hedges.

## III. <u>ARGUMENT</u>

### A. A Region Lacks Jurisdiction to Issue a Complaint on Allegations which are not "Closely Related" to a Timely Filed Charge.

Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the Board." 29 U.S.C. § 160. Interpreting and applying this language, the Board and U.S. Courts of Appeal have observed that Section 10(b) therefore serves "two separate functions." *Carney Hospital*, 350 NLRB 627, 628 (2007) (quoting *Precision Concrete v. NLRB*, 334 F.3d 88, 90 (D.C. Cir. 2003) (quoting *Ross Stores, Inc. v. NLRB*, 235 F.3d 669, 677 (D.C. Cir. 2001) (Randolph, J., concurring)).

First, Section 10(b) functions in part as a statute of limitations by prohibiting the issuance of a complaint based on conduct occurring more than 6 months prior to the filing of a charge. *Carney Hospital*, 350 NLRB 627, 628 (2007). Second, to the extent it underscores the Board's and the General Counsel's inability to initiate unfair labor practice proceedings *sua sponte*,

22-60493.5402

"Section 10(b) operates as a jurisdictional[3] limitation, under which the Board (through the General Counsel) may investigate and prosecute conduct *only* in response to the filing of a 'charge.'" *Carney Hospital*, 350 NLRB 627, 628 (2007) (citing *Precision Concrete*, supra, 334 F.3d at 90) (emphasis added).  By this limitation, Congress intentionally denied the Board the "power to initiate or expand unfair labor practice proceedings, at the Board's initiative." *Allied Waste Services of Massachusetts, LLC*, 01-CA-123082, -126843, 2014 WL 7429200 (Dec. 31, 2014).  Thus, though it has reasonable latitude to investigate unfair labor practices in a manner that goes beyond "the precise particularizations of a charge," *NLRB v. Fant Milling Co*., 360 U.S. 301, 309 (1959), this "does *not* mean the Board has 'carte blanche to expand the charge as [it] might please, or to ignore it altogether.'" *Id*.

Section 10(b) accordingly establishes two independent requirements for complaints: the unfair labor practices alleged therein must have occurred less than 6 months before the filing of a charge, and the allegations must be "closely related" to that charge.  "If either of these requirements is not met, the complaint will be dismissed." *Trade Fair Supermarkets*, 354 NLRB 190, 192 (2009) ("Having found that the charge does not support the complaint, we also find that the judge erred in failing to dismiss the complaint on that basis."); *see KFMB Stations*, 343 NLRB 748, 748–749 (2004) (complaint allegation dismissed where alleged unfair labor practice occurred less than 6 months before charge was filed but complaint allegation not closely related

---

[3] Section § 3-600 of the most recent edition of the NLRB Benchbook states—without support—that "[s]ection 10(b) is not jurisdictional."  This view runs contrary to the clear weight of the authorities.  *See, e.g., Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309, 313 (D.C. Cir. 2015) (the Board "lacked jurisdiction" over allegation that employer unlawfully maintained workplace rule insofar as it was unrelated to unlawful discharge violation asserted in charge); *Teamsters Local 955*, 325 NLRB 605, 607 (1998); *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) ("Where the Board is unable to connect the allegations in its complaint with the charge allegation, we are unable to find that the Board has jurisdiction over the unrelated complaint allegations.")

22-60493.5403

to charge allegations); *Towne Ford, Inc.*, 327 NLRB 193, 198–199 (1998) (same); *Seton Co.*, 332 NLRB 979, 983–984 (2000) (complaint allegation dismissed where complaint allegation closely related to charge allegations but alleged unfair labor practice occurred more than 6 months before charge was filed).

As shown below, the Region is patently incapable of satisfying the "closely related" test as to the allegations of the Amendment and the violations alleged in any of the 3 charges filed by the Union within 6 months of the alleged June 7, 2017 meeting.

### B.    The Region Cannot Establish that the New Allegations are "Closely Related" to Any Pending, Timely-Filed Charge.

Under its "closely related" test as set forth in *Reddi-I, Inc.*, 290 NLRB 1115, 1116 (1988) and modified in *Nickles Bakery of Indiana, Inc.*, 296 NLRB 927, 928 (1989), the Board (1) considers whether the timely and untimely allegations involve the same legal theory; (2) considers whether the otherwise untimely allegations arise from the same factual situation or sequence of events as the allegations in the timely charge; and (3) "may look" at whether a respondent would raise the same or similar defenses to both the timely and untimely allegations. *Carney Hospital*, 350 NLRB 627, 628 (2007).

In *Nickles Bakery*, the Board explained that "[a]llowing the boilerplate 'other acts' language to support unrelated 8(a)(1) complaint allegations contravenes 10(b)'s mandate that the Board 'not originate complaints on its own initiative.'"  296 NLRB at 928.  The Board added that "such an approach virtually renders meaningless the specificity required by Section 102.12(d) of the Board's Rules and Regulations that a charge contain a 'clear and concise statement of the facts constituting the alleged unfair labor practices affecting commerce.'"  *Id*. The Board further clarified in *Carney Hospital*, supra, 350 NLRB at 631, that "a chronological

22-60493.5404

relationship without more is insufficient to support a finding of factual relatedness" as required by the second prong of the "closely related" test.

*Carney Hospital* and its progeny underscores the Board's wisdom in exercising restraint over the invocation of the "closely related" doctrine to cure jurisdictional defects. *See Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010). In *Salon/Spa*, the Board affirmed the ALJ's findings and conclusions, including his reliance on *Carney Hospital* to find that a timely filed charge alleging that an employee was discharged in violation of Section 8(a)(1) was not "closely related" to an untimely allegation regarding unlawful threats made during a staff meeting. *Id* at 455. There, the ALJ explained that he "must determine whether the allegedly unlawful threat … [had] some meaningful nexus with the sequence of events contained in the timely filed charges" because "a careless application of [the "closely related"] standard could easily prove to be so elastic as to entirely vitiate the Congressional objective of limiting the period in which a party's past conduct could subject it to unfair labor practice litigation." *Id* at 456. His observations (adopted without comment by the Board) warrant repeating as they apply with equal force here:

> If one were to excuse an untimely filing simply because the alleged misconduct was part of a sequence of similar events to those timely raised, the intent underlying the statute of limitations would be completely compromised. There is no difference in principle between the Employer's application of the negativity policy to Bates in November 2008 and its alleged threat based on that policy in September 2009. Without the vital limits articulated by the Board in *Carney Hospital*, nothing would stand in the way of a party's attempt to employ the "closely related" doctrine to prosecute remote actions that possess only a mere sequential and topical relationship to a timely filed charge. For these reasons, I agree with the Employer that the allegation regarding an alleged threat on September 24 is untimely and must be dismissed.

> *Id.*

More recently, Judge Etchingham came to a similar conclusion in response to the General Counsel's argument that 3 untimely *Weingarten* violation allegations were "closely related" to a

22-60493.5405

timely filed discriminatory discharge charge insofar as they "grew out of the same facts and circumstances." *Wal-Mart Stores, Inc.*, 28-CA-167277, JD(SF)-34-16, 2016 WL 4547576 (N.L.R.B. Div. of Judges) (August 31, 2016). Noting that there were no "common Respondent decision makers between the 2 groups of allegations" as the timely charge did not identify the supervisor who issued the discharge nor allege that the charging party was terminated for invoking his *Weingarten* rights, Judge Etchingham concluded that "the required factual relationship ... [was] lacking." *Id*. He further observed that there was "no evidence that the [charge's] boilerplate verbiage was intended to allege any of the allegations the General Counsel has in the complaint or the amended complaint". *Id*. Because the second prong of the "closely related" test was not satisfied, Judge Etchingham dismissed the case. *Id*.

In applying the "closely related" test, "the jurisdictional inquiry is wholly independent of the General Counsel's actual success in proving the alleged relationship." *Hyundai Am. Ship. Agency, Inc. v. NLRB*, supra, 805 F.3d at 313. The Board's jurisdiction instead "should be tested by the General Counsel's allegations rather than his proof", and "factual relatedness is evaluated 'as of the time of the allegations.'" *Id* (citing *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1021 (D.C. Cir. 1995) (adopting dissenting view of then-Judge Stevens in *NLRB v. Braswell Motor Freight Lines, Inc.,* 486 F.2d 743 (7th Cir.1973)). Significantly, the General Counsel bears the burden of proof. *Precision Concrete v. NLRB*, supra, 334 F.3d at 91 ("Because the issue before the Board in this case was jurisdiction, the Board erred by placing the burden of proof upon the Company."); *Teamsters Local 955*, supra, 325 NLRB at 607 ("Section 10(b) of the Act is jurisdictional and the General Counsel has the specific burden of establishing this statutory requirement."); *A-NLV Cab Co.*, 340 NLRB 1005, 1009 (2003) (same).

/ / /

22-60493.5406

1.    **The General Counsel Cannot Establish that the New Allegations are "Closely Related" to Case 32-CA-200530.**

The Union's Charge in Case 32-CA-200530, filed June 12, 2017—5 days after the newly

alleged June 7, 2017 meeting, makes the following allegations:

> On or about February 10, 2017 and ongoing, the above-named Employer
> violated the Act by interrogating, intimidating, and harassing Jose Moran
> for engaging in protected concerted activity and expressing support for the
> union.
>
> On or about February 10, 2017 and ongoing, the above-named Employer
> violated the Act by creating the appearance of discipline, interrogation,
> and harassment of Jose Moran for engaging in protected concerted activity
> and expressing support for the union.
>
> On or about May 25, 2017 and ongoing, the above-named Employer
> violated the Act by interrogating, intimidating, and harassing Jonathan
> Galescu, Richard Ortiz, and others for engaging in protected concerted
> activity regarding worker safety concerns and other working conditions.
>
> On or about May 25, 2017 and ongoing, the above-named Employer
> violated the Act by creating the appearance of discipline, interrogation,
> and harassment of Jonathan Galescu, Richard Ortiz, and others for
> engaging in protected concerted activity regarding worker safety concerns
> and other working conditions.
>
> On or about May 24, 2017 and ongoing, the above-named Employer
> violated the Act by intimidating, creating the appearance of surveillance
> and conducting surveillance on Richard Ortiz, Michael Catura, Branton
> Phillips and others for their union activities and/or union sentiments,
> including passing out literature regarding working conditions at Tesla.
>
> On or about May 24, 2017 and ongoing, the above-named Employer
> violated the Act by creating the appearance of surveillance and conducting
> surveillance on employees who were receiving literature from fellow
> employees regarding working conditions at Tesla.
>
> Ex. A.

Though, like the Amendment's allegations against Mr. Musk and Ms. Toledano, the

charge in Case 32-CA-200530 alleges that Tesla committed several 8(a)(1) violations, that is

where the similarity ends.  The charge does not name Mr. Musk or Ms. Toledano, does not state

22-60493.5407

that any ULP occurred on June 7, 2017, does not make any mention of any meeting with employees, and does not make any assertions regarding unlawful solicitation of grievances, statements of futility, or statements regarding union wages. The employer's defenses to the newly asserted allegations in the Amendment—i.e., that such statements were never made by Mr. Musk or Ms. Toledano during the alleged June 7, 2017 meeting—are completely dissimilar.

The Union's First Amended Charge in Case 32-CA-200530, filed July 28, 2017 and attached hereto as **Exhibit J**, adds the following allegation:

> Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

The Union's amended charge is similarly incapable of supporting the allegations asserted in the Amendment. A review of the Region's 7/7/2017 Request for Evidence issued regarding this charge will leave no doubt that the allegations of Charge 32-CA-200530 had absolutely nothing to do with any June 7, 2017 meeting conducted by Mr. Musk and Ms. Toledano. *See* Ex. B. The Region did not seek to take Mr. Musk's or Ms. Toledano's affidavits. Nor did it request that Tesla submit a position statement with respect to any June 7, 2017 meeting involving those two individuals. That the allegations of the Amendment are not "closely related" to those asserted in this charge cannot be disputed given Union Counsel's failure to include them in the charge's July 28, 2017 amendment. Rather, its boilerplate 8(a)(1) allegations are insufficient as a matter of law to support the new allegations against Mr. Musk and Ms. Toledano. The General Counsel accordingly cannot rely on Charge 32-CA-200530 to establish its jurisdiction over the allegations of the Amendment.

22-60493.5408

     2.     **The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-208614.**

The Union's charge in Case 32-CA-208614, filed October 25, 2017, makes the following allegations:

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things. terminating a group of employees to discourage protected concerted activity by other employees.

> Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

> Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

> Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by intimidating and harassing employees for their Section 7 activities.

/ / /

22-60493.5409

By these and other acts, Tesla. Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

Ex. D.

Though, like the Amendment's allegations against Mr. Musk and Ms. Toledano, the initial charge in Case 32-CA-208614 alleges that Tesla committed several 8(a)(1) violations, these boilerplate allegations are legally insufficient to confer jurisdiction. The charge does not name Mr. Musk or Ms. Toledano, state that any ULP occurred on June 7, 2017, make any mention of any meeting with employees, or make any assertions regarding unlawful solicitation of grievances, statements of futility, or statements regarding union wages. Discounting the boilerplate 8(a)(1) language, the allegations of Charge 32-CA-208614 deal principally with the purported "mass discharge" theory which even the Region found was too untenable to support a complaint. The employer's defenses to the newly asserted allegations in the Amendment—i.e., that such statements were never by Mr. Musk or Ms. Toledano during the alleged June 7, 2017 meeting—are additionally completely dissimilar.

The Union's First Amended Charge in Case 32-CA-208614, filed March 13, 2017 and attached hereto as **Exhibit K**, adds the following allegation:

> Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity.

22-60493.5410

Assuming *arguendo* that the amended charge would relate back to the October 25, 2017 filing date of the initial charge, it is equally incapable of supporting the allegations asserted in the Amendment. As made clear by the Region in its 11/21/2017 Request for Evidence, the allegations of Charge 32-CA-208614 had absolutely nothing to do with any June 7, 2017 meeting conducted by Mr. Musk and Ms. Toledano. *See* Ex. E. The Region did not seek to take Mr. Musk's or Ms. Toledano's affidavits and, though Ms. Toledano did provide an affidavit to Mr. Rodriguez Ritchie, he did not ask her a single question pertaining to the newly alleged June 7, 2017 meeting. Nor did the Region request that Tesla submit a position statement with respect to any June 7, 2017 meeting involving those two individuals.

Further, while the amended charge asserts—in boilerplate language— that "Tesla…coerced employees...by…making a statement of futility regarding employee support for the Union," the subsequently issued Operative Complaint made clear that this allegation concerns comments made by Supervisor Homer Hunt in August 2017. That the allegations of the Amendment are not "closely related" to those asserted in this charge cannot be disputed given Union Counsel's failure to include them in the charge's March 13, 2017 amendment. The General Counsel accordingly cannot establish that the Amendment is "closely related" to Charge 32-CA-200530.

     **3.**     **The General Counsel Cannot Establish that the New Allegations are "Closely Related" to the Charge Filed in Case 32-CA-210879.**

The Union's charge in Case 32-CA-210879, filed December 1, 2017, makes the following allegations:

> ln the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities,

22-60493.5411

subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

Ex. F.

William Locklear was employed at Tesla's Gigafactory in Sparks, Nevada. There is nothing to suggest that the "co-workers" referenced in this charge were those that attended any alleged meeting with Mr. Musk and Ms. Toledano on June 7, 2017. The charge makes no reference to Mr. Musk, Ms. Toledano, solicitation of grievances, futility statements, union dues, or worker safety.

The Union's First Amended Charge in Case 32-CA-210879, filed December 6, 2017 and attached hereto as **Exhibit L**, adds the following allegation:

In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

Like the amended charges filed by Union Counsel in the cases that preceded 32-CA-210879, this amended charge makes clear its underlying allegations had absolutely nothing to do with those asserted in the Region's Amendment. The same rings true for the Region's 12/20/2017 Request for Evidence, which—again—did not seek to take Mr. Musk's or Ms. Toledano's affidavits or give any indication whatsoever that the charge had initiated an investigation into their activities. *See* Ex. G.

## IV.    <u>CONCLUSION</u>

Tesla has fully cooperated with the Region during its 14-month long investigation into the dozens of charges filed against it by the UAW. It has submitted thousands of pages of documents and position statements in response to the Region's requests for evidence and ensured the availability of its high-ranking employees to provide nearly 20 affidavits. Yet notwithstanding Tesla's efforts, the Region cynically chose to amend its Complaint on the eve of

22-60493.5412

trial to justify the overly broad subpoenas issued in these proceedings rather than attempting to

meet and confer in good faith in an effort to narrow them to the issues in dispute.  Thanks to

Congress' foresight in creating the limitations outlined in Section 10(b), Tesla fortunately need

not rely on the Region's good faith to protect itself against such abuses.  Because the allegations

of the Amendment are not "closely related" to those asserted in any pending, timely filed charge,

the Region exceeded its jurisdiction.  They must accordingly be dismissed.


Dated:  June 11, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By     _____
                  /s/ *Keahn N. Morris*
                  MARK S. ROSS
                  KEAHN N. MORRIS

                  Attorneys for
                  TESLA, INC.

22-60493.5413

# Exhibit A

22-60493.5414

| INTERNET<br>FORM NLRB-501<br>(2-08) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>CHARGE AGAINST EMPLOYER | FORM EXEMPT UNDER 44 U.S.C 3512 |
|---|---|---|

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|---|---|
| 32-CA-200530 | 06/12/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

a. Name of Employer

Tesla Motors Corporation

b. Tel. No. (510) 249-3650 or
(650) 681-5454

c. Cell No. (650) 454-5386

d. Address *(Street, city, state, and ZIP code)*
45500 Fremont Boulevard
Fremont, California 94538

e. Employer Representative
Vice President of HR, Arnnon Geshuri

f. Fax No.

g. e-Mail
arnnon@tesla.com

h. Number of workers employed
Approximately 7000

i. Type of Establishment *(factory, mine, wholesale, etc.)*
Factory

j. Identify principal product or service
Automotive Manufacturing

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3)
of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

4a. Address *(Street and number, city, state, and ZIP code)*

8000 East Jefferson Avenue
Detroit, Michigan 48214

4b. Tel. No. (313) 926-5000

4c. Cell No.

4d. Fax No.

4e. e-Mail

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

## 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By ~Margo a. Feinberg~
*(signature of representative or person making charge)*

Attorney for Charging Party,
Margo A. Feinberg, Esq.
*(Print/type name and title or office, if any)*

Tel. No.
(323) 655-4700

Office, if any, Cell No.

Fax No. (323) 655-4488

Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000, L.A., CA 90048
Address

6/12/17
*(date)*

e-Mail
margo@ssdslaw.com

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## ATTACHMENT A

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.

ID 326809

# Exhibit B

22-60493.5417



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 32                                      Agency Website: www.nlrb.gov
1301 Clay St Ste 300N                          Telephone: (510)637-3300
Oakland, CA 94612-5224                         Fax: (510)637-3315

Agent's Direct Dial: (510)671-3041

July 7, 2017

**By E-Mail Only**

Elizabeth Parry, Esq.
Littler Mendelson, P.C.
1255 Treat Blvd, Suite 600
Walnut Creek, CA 94597-7605
E-Mail: mparry@littler.com

Michael J. Lotito
Littler Mendelson, P.C.
333 Bush St Fl 34
San Francisco, CA 94104-2874
E-Mail: mlotito@littler.com

JOHN M. SKONBERG, ATTORNEY
Littler Mendelson, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104-2842
E-Mail: jskonberg@littler.com

Re:    **Tesla Motors Corporation**
       **Case 32-CA-200530**

Dear Ms. Parry, Mr. Lotito, and Mr. Skonberg:

I am writing this letter to advise you that it is now necessary for me to take evidence from your client regarding the allegations raised in the investigation of the above-referenced matter. Set forth below are the allegations and issues on which your evidence is needed, a request to take affidavits, a request for documentary evidence, and the date for providing your evidence.

**Allegations:** The allegations for which I am seeking your evidence are as follows. The International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO (the Charging Party) alleges that Tesla Motors Corporation ("the Employer" or "the Charged Party") violated Section 8(a)(1) and (3) of the Act by engaging in the following conduct:

1.      On February 9, 2017, the Employer, through Juan Martinez, interrogated an employee regarding the employee's protected concerted activities and/or union activities;

2.      On February 9, 2017, the Employer, through Juan Martinez, created an impression of surveillance of employees' protected concerted activities and/or union activities and created an appearance of discipline and harassment by interrogating an employee regarding the employee's protected concerted activities and/or union activities;

3.      On or about April 5, 2017, the Employer, through David Zweig, applied of an overly broad confidentiality policy prohibiting the sharing of information related to workplace safety at Tesla's Fremont facility;

4.      On or about April 5, 2017, the Employer, through David Zweig, discriminatorily applied a confidentiality policy to prohibit Tesla employees from sharing information related to workplace safety at Tesla's Fremont facility;

5.      On or about April 29, 2017, the Employer, through Seth Woody, applied of an overly broad confidentiality policy prohibiting the sharing of information related to workplace safety at Tesla's Fremont facility;

6.      On or about April 29, 2017, the Employer, through Seth Woody, discriminatorily applied a confidentiality policy to prohibit Tesla employees from sharing information related to workplace safety at Tesla's Fremont facility;

7.      On or about May 24, 2017, the Employer, through its security guards as agents of the Employer, at the Employer's Fremont location:

        a.      created an impression of surveillance of employees engaging in protected concerted activities and/or union activities;

        b.      engaged in unlawful surveillance of employees engaging in protected concerted activities and/or union activities;

        c.      engaged in unlawful and discriminatory harassment of employees engaged in protected concerted activities and/or union activities by repeatedly asking employees engaged in such activities for their identification;

8.      On May 24, 2017, through Lisa Lipson and Lauren Holcomb, interrogated and threatened employees regarding their protected concerted activities; and

9.      On May 24, 2017, through Lisa Lipson and Lauren Holcomb, created an impression of discipline, interrogation and harassment by interrogating and threatening employees regarding their protected concerted activities.

**Board Affidavits:** I am requesting to take affidavits from Lisa Lipson, Lauren Holcomb, David Zweig, Seth Woody, and any other individuals you believe have information relevant to the investigation of this matter. Please be advised that the failure to present representatives who would appear to have information relevant to the investigation of this matter, for the purposes of my taking sworn statements from them, constitutes less than complete cooperation in the investigation of the charge. Please contact me by Tuesday, July 11, 2017 to schedule these affidavits.

**Documents:** Please provide the following documents, along with any and all other evidence you deem to be relevant to the case:

1. A completed copy of the attached "Commerce Questionnaire" by the Employer's person most knowledgeable on the topic of the Employer's participate in interstate commerce;

2. Any document that reflects communications between Tesla employees regarding the sharing of information related to workplace safety from February 1, 2017 to the present;

3. Copies of any document designated as "confidential" pursuant to Tesla's confidentiality policy on the topic of workplace safety that was given to any Tesla employee between February 1, 2017 and the present;

4. Any document reflecting Tesla's confidentiality policy that was maintained on April 5 and 29, 2017;

5. Copies of all documents referring to or memorializing any agreements for the provision of security services at the Employer's Fremont facility on May 24, 2017;

6. The names of any individuals working as "security guards" at the Employer's Fremont facility on May 24, 2017 between the times of 4:45 a.m. to 6:00 a.m. and between 4:45 p.m. and 6:00 p.m.;

7. Copies of any photographs or video recordings taken of any individual located in or near the Employer's Fremont facility parking lot or entrances between the times of 4:45 a.m. to 6:00 a.m. and between 4:45 p.m. and 6:00 p.m. on May 24, 2017;

8. Copies of any document that reflects or memorializes the Employer's policy for access to the parking lot at the Employer's Fremont facility, access to the Employer's facility by current employees, and the presentation of an employee's work identification in effect on May 24, 2017;

9.      Copies of any document that reflects or refers to any meeting attended by Lisa Lipson or Lauren Holcomb on or about May 24, 2017 with employees. This request shall include, but is not limited to, copies of notes taken by either Lipson or Holcomb in connection with their meetings with employees as well as copies of any recordings made by the Employer of such meetings;

10.     Copies of any documents referring to or memorializing any interactions or communications that occurred on May 24, 2017 between 4:45 a.m. and 6:00 a.m. and between 4:45 p.m. and 6:00 p.m. between Tesla security guards and employees at Tesla;

11.     Any document in the Employer's possession since January 1, 2016 on the topic of unions or the United Auto Workers;

12.     If the Employer contends that Lisa Lipson, Lauren Holcomb, Seth Woody, or David Zweig are not statutory employees within the meaning of the Act, documents reflecting the involvement or participation by Lisa Lipson, Lauren Holcomb, Seth Woody, or David Zweig in any of the following actions concerning any employee of the Employer: (a) Hiring; (b) Transferring; (c) Suspending; (d) Laying off; (e) Recalling; (f) Promoting; (g) Discharging; (h) Assigning of work; (i) Rewarding, including the granting of wage increases; (j) Disciplining; (k) Scheduling or granting of time off; (l) Assigning of overtime; (m) Adjusting of grievances; (n) Directing work; and (o) Evaluating; and

13.     Any document that reflects an asserted defense of the Employer.

**Position on 10(j) Relief:**  To the extent the Employer wishes to provide another position statement on the topic of Section 10(j) relief, you are also requested to provide your position as to the appropriateness of Section 10(j) injunctive relief in this matter.  As you may know, Section 10(j) of the Act permits the NLRB to ask a federal district court "for appropriate temporary relief or restraining order" pending the Board's resolution of an unfair labor practice charge.  The district court is authorized to grant "such temporary relief or restraining order as it deems just and proper."  *If* the Region determines the Charged Party has violated the Act as alleged, the Region will consider whether to seek injunctive relief in this matter.  Accordingly, please provide your position, legal theory, case law, and supporting evidence regarding whether injunctive relief would be appropriate for the alleged violations in this case and whether such injunctive relief would be just and proper.  I wish to emphasize that the Region has not yet made a decision as to whether the Charged Party has violated the Act as alleged.  Rather, we want to provide you with adequate notice that injunctive relief will be considered if such a decision is made.

**Date for Submitting Evidence:**  To resolve this matter as expeditiously as possible, you must provide your evidence and position in this matter by Friday, July 14, 2017.  If you are willing to allow me to take affidavits, please contact me by Tuesday, July 11, 2017 to schedule a time to take affidavits.  Electronic filing of position statements and documentary evidence through the Agency website is preferred but not required.  To file electronically, go to

22-60493.5421

**www.nlrb.gov,** select **E-File Documents,** enter the **NLRB case number,** and follow the detailed instructions.  If I have not received all your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.

It is Agency policy that full and complete cooperation on your part in this investigation includes timely providing all material witnesses under your control to the investigating Board agent so that the witnesses' statements can be reduced to affidavit form and providing all relevant documentary evidence requested by the Board agent.  The mere submission of a position letter or memorandum, or the submission of affidavits not taken by the Board agent, does not constitute full and complete cooperation.  The Region seeks such full and complete cooperation by the close of business on Friday, July 14, 2017.  If I have not received all of your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.  Additionally, the Region will consider all of its options in order to complete its investigation, including the possibility of issuing investigative subpoenas for the witnesses and documents requested in this letter.

Please contact me at your earliest convenience by telephone, (510)671-3041, or e-mail, edris.rodriguezritchie@nlrb.gov, so that we can discuss how you would like to provide evidence and I can answer any questions you have with regard to the issues in this matter.

Very truly yours,

/s/ Edris Rodriguez Ritchie


EDRIS W.I. RODRIGUEZ RITCHIE
Field Attorney

# Exhibit C

22-60493.5423

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

   and

MICHAEL SANCHEZ, an Individual                    Case 32-CA-197020

   and

JONATHAN GALESCU,  an Individual                  Case 32-CA-197058

   and

RICHARD ORTIZ, an Individual                      Case 32-CA-197091

   and

INTERNATIONAL UNION, UNITED                       Case 32-CA-197197
AUTOMOBILE, AEROSPACE AND                         Case 32-CA-200530
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

ORDER CONSOLIDATING CASES, CONSOLIDATED
COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations

Board (the Board) and to avoid unnecessary costs or delay, IT IS ORDERED THAT Cases 32-

CA-197020, Case 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, which

are based on charges filed by Michael Sanchez, an Individual, Jonathan Galescu, an Individual,

Richard Ortiz, an Individual, and Service Employees International Union, Local 2015 (Union),

respectively,  against Tesla Motor Corporation (Respondent) are consolidated.

This Order Consolidating Cases, Consolidated Complaint and Notice of Hearing, which

is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act

22-60493.5424

(the Act), 29 U.S.C. § 151 et seq. and Section 102.15 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)     The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)     The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)     The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)     The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)     The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)     The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)     The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

22-60493.5425

2.

(a)    At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, and an automotive manufacturing facility in Fremont, California (the Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)    During the 12-month period ending August 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a), purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act and has been a health care institution within the meaning of Section 2(14) of the Act.

4.

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

Victor Facha        -  Supervisor

Laura Holcomb       -  Environmental Health Safety and Sustainability
                       Specialist

Lisa Lipson         -  Human Resources Business Partner

Mark Lipscomb       -  Vice-President of Human Resources

22-60493.5426

| | | |
|---|---|---|
| Juan Martinez | - | Production Manager |
| Elon Musk | - | Chief Executive Officer |
| Armando Rodriquez | - | Supervisor |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |
| Red Shirt Supervisor No. 1 | - | Supervisor |

6.

At all material, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| John Does 1-6 | - | Security Guards |
| Unknown Human Resources Agent | - | Agent |

7.

(a)     Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement:

> (i)     These obligations are straightforward. Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started. This includes information about. .customers, suppliers, employees. and anything similar.

> (ii)    Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

22-60493.5427

(iii) Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv) take or post photos or make video or audio recordings inside Tesla facilities,

(v) forward work e-mails outside of Tesla or to a personal email account,

(vi) or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal.

(vii) The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment. Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

(b)    About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at Respondent's Facility, during a one-on-one meeting with an employee, prohibited the employee from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 5(a).

(c)    On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 1-4, restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)    On February 10, 2017, Respondent, by Male Security Guard No. 1, outside the entrance to Door 2 at Respondent's Facility:

(i)    On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

(ii)    Male Security Guard No. 1 engaged in the conduct described above in paragraph 5(d)(i) because the employee was engaged in

22-60493.5428

Union leafleting and to discourage these and other protected, concerted activities.

(e)     On February 10, 2017, Respondent, by Female Security Guard No. 2, outside the entrance to Door 1 at Respondent's Facility:

      (i)     told off-duty employees to leave Respondent's premises.

      (ii)    Security Guard No. 2 engaged in the conduct described above in paragraph 5(e)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(f)     On February 10, 2017, Respondent, by Male Security Guard No. 3, outside the entrance to Door 1 at Respondent's Facility:

      (i)     told off-duty employees to leave Respondent's premises.

      (ii)    Security Guard No. 3 engaged in the conduct described above in paragraph 5(f)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(g)     On February 10, 2017, Respondent, by Female Security Guard No. 4, outside the entrance to Door 3 at Respondent's Facility:

      (i)     told an off-duty employee to leave Respondent's premises.

      (ii)    Security Guard No. 4 engaged in the conduct described above in paragraph 5(g)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(h)     On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the back entrance to Respondent's Facility by the Receiving Addition:

      (i)     told an off-duty employee to leave the premises.

      (ii)    Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 5(h)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

22-60493.5429

(i)     On February 10, 2017, Respondent, by an unnamed Human Resources Agent who

was called by Red Shirt Male Supervisor No. 1, during a phone conversation:

     (i)     told an off-duty employee who was on medical leave to leave
          Respondent's premises.

     (ii)    The unnamed Human Resources Agent engaged in the conduct
          described above in paragraph 5(i)(i) because the employee was
          engaged in Union leafleting and to discourage these and other
          protected, concerted activities.

(j)     On March 23, 2017, Respondent, by Supervisor Armando Rodriguez,

during a pre-shift meeting at Respondent's Facility:

     (i)     told employees that they could not distribute stickers, leaflets, or
          pamphlets that were not approved by Respondent.

     (ii)    threatened that Respondent would terminate employees if they
          passed out stickers, leaflets, or materials that were not approved by
          Respondent.

     (iii)   Supervisor Armando Rodriguez engaged in the conduct described
          above in paragraph 5(j) because employees engaged in Union
          activities and to discourage these and other protected, concerted
          activities.

(k)     On April 5 2017, Respondent, by David Zweig, attempted to prohibit an

employee from discussing safety concerns with other employees and/or with the Union.

(l)     On April 28, 2017, Respondent, by Seth Woody, attempted to prohibit an

employee from discussing safety concerns with other employees and/or with the Union.

(m)     On May 24, 2017, Respondent, by its Security Guards, including, but not limited to,

Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on

Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce

their employee identification badges and/or telling them to leave Respondent's premises.

22-60493.5430

(n)     On May 24, 2017, by Female Security Guard No. 5, at the security counter near the Door 4 entrance at Respondent's Facility, told an employee that the employee could not hand out flyers on Respondent's premises.

(o)     On May 24, 2017, by Male Security Guard No. 6, outside the Door 4 entrance at Respondent's Facility:

      (i)     on two occasions, instructed an off-duty employee to leave the premises.

      (ii)     Male Security Guard No. 6 engaged in the conduct described above in paragraph 5(n)(i) because the employee because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(p)     On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lispon, during separate meetings with two employees, in the presence of Environmental Health Safety and Sustainability Specialist Laurent Holcomb, interrogated the employee about the employee's Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

8.

By the conduct described above in paragraph 7, Respondent has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.

9.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

22-60493.5431

## **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Consolidated Complaint. The answer must be **received by this office on or before September 14, 2017, or postmarked on or before September 13, 2017**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules

22-60493.5432

and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Consolidated Complaint are true.

## NOTICE OF HEARING

**PLEASE TAKE NOTICE THAT** on November 14, 2017, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Suite 300N, Oakland, California 94612, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 31st day of August 2017.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

10

22-60493.5433

# Exhibit D

22-60493.5434

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET FORM NLRB-501 (2-08) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case 32-CA-208614 | Date Filed 10-25-2017 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Gaby Toledano, Chief People Officer | g. e-Mail gaby@tesla.com |
| | | h. Number of workers employed 10,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) and (4) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) 8000 East Jefferson Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-

6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By *Margo A. Feinberg* (signature of representative or person making charge)

Margo A. Feinberg, Esq., Attorney for Charging Party (Print/type name and title or office, if any)

Schwartz, Steinsapir, Dohrmann & Sommers LLP
6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048
Address

10/25/17 (date)

| Tel. No. (323) 655-4700 |
|---|
| Office, if any, Cell No. |
| Fax No. (323) 655-4488 |
| e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## Attachment A

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees to discourage protected concerted activity by other employees.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, intimidating and harassing employees for their Section 7 activities.

By these and other acts, Tesla, Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

# Exhibit E

22-60493.5437



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 32
1301 Clay St Ste 300N
Oakland, CA 94612-5224

Agency Website: www.nlrb.gov
Telephone: (510)637-3300
Fax: (510)637-3315

Agent's Direct Dial: (510)671-3041

November 21, 2017

**By E-Mail Only**

Elizabeth Parry, Esq.
Littler Mendelson, P.C.
1255 Treat Blvd, Suite 600
Walnut Creek, CA 94597-7605
E-Mail: mparry@littler.com

John Skonberg, Esq.
Michael Lotito
Littler Mendelson, P.C.
333 Bush St., 34th Floor
San Francisco, CA 94104-2842
E-Mail: jskonberg@littler.com
E-Mail: mlotito@littler.com

**Re:     TESLA, INC.**
**Case 32-CA-208614**

Dear Ms. Parry, Mr. Skonberg, and Mr. Lotito:

I am writing this letter to advise you that it is now necessary for me to take evidence from your client regarding the allegations raised in the investigation of the above-referenced matter. Set forth below are the allegations and issues on which your evidence is needed, a request to take affidavits, a request for documentary evidence, and the date for providing your evidence. Please also be advised that the undersigned Board agent will likely send a follow-up letter with additional allegations.

**Preservation of Evidence**: Please be mindful of your obligation to preserve all relevant documents and electronically stored information (ESI) in this case and to take all steps necessary to avoid the inadvertent loss of information in you possession, custody or control. Relevant information includes, but is not limited to, paper documents and all ESI (e.g. SMS text messages, electronic documents, e-mails, audio or video recordings, photographs, and any data created by proprietary software tools) related to the above-captioned case.

**Allegations:** The allegations for which I am seeking your evidence are as follows. The United Automobile, Aerospace and Agricultural Implement Workers of America International Union (the Union or the Charging Party) alleges that Tesla, Inc. (the Employer or the Charged Party) has violated Sections 8(a)(1), (3), and (4) of the Act by engaging in the following conduct:

1.      engaging in a mass layoff of employees at Tesla, Inc.'s facilities in order to discourage employees from engaging in Section 7 protected activities and in retaliation for engaging in Board activities, including the filing of charges and/or the issuance of a Complaint in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197,

and 32-CA-200530;

2.      At the Tesla, Inc. facility located at 45500 Fremont Boulevard, Fremont,
California:

      a.      In October 2017, terminating the following individuals  in retaliation for
      engaging in protected concerted activities and/or union activities:

            i.      Richard Ortiz (also in retaliation for having filed charges with the
                Board);

            ii.      Jayson Henry;

            iii.      Juan Guadalupe Reyes;

            iv.      Juan Maldonado;

            v.      Mike Williams;

            vi.      Tim Cotton;

            vii.      Brandon Hill;

            viii.      Erick Vasquez; and

            ix.      Stephen Barbosa;

      b.      On or about June 29 and 30, 2017, by Vannick Ly and Lehi Gomez,
      audited the work of Branton Phillips and provided verbal and written negative
      feedback  in retaliation for engaging in protected concerted activities and/or union
      activities;

      c.      On or about October 20, 2017, by Paul James, giving Jonathan Galescu a
      negative performance review in retaliation for engaging in protected concerted
      activities and/or union activities and/or Board activities (including having filed
      charges with the Board);

      d.      In or about August 2017, by Paul James on two occasions, creating an
      impression of surveillance by implying he had reviewed an employee's notebook;

      e.      In or about July or August 2017, by Tope Ogunniyi, discriminatorily
      applied a uniform policy prohibiting the warning of union paraphernalia on work
      clothing;

f.      In or about late September or early October 2017, by Ricky Gecewich, interrogated an employee about their and other employees' protected concerted activities pertaining to the posting of pictures on social media;

g.      On October 19, 2017, by Ricky Gecewich, gave a verbal and written warning to Jose Moran threatening action if the employee or other employees engaged in protected concerted activities;

h.      On October 2, 2017, by Thuy Truong, a verbal and written reprimand of Juan Maldonado for having two late-ins in retaliation for engaging in protected concerted activities and/or union activities;

3.      At the Tesla, Inc. facility located at 18280 Harlan Road, Lathrop, California:

a.      In October 2017, terminating Dezzimond Vaughn in retaliation for engaging in protected concerted activities and/or union activities;

b.      In October 2017, giving Vaughn a poor performance review for the period of January to June 2017 in retaliation for engaging in protected concerted activities and/or union activities;

4.      In connection with each of the above-referenced terminations and in October 2017, offering an employee/employees a severance agreement containing an overly broad confidentiality policy and no disparagement policy;

5.      Within the Section 10(b) period, by Ricky Hofrichter, Jeremie Hansen, and Gregory Slettvet, instructed Tesla security guards to surveil employees engaged in protected concerted activities and/or union activities;

6.      Within the Section 10(b) period, by Ricky Hofrichter, Jeremie Hansen, Gregory Slettvet, and Savannah Morgana, instructed Tesla security guards to tell Tesla employees engaged in lawful leafleting that they were not welcome at Tesla, that they needed to leave, and threatened to call the police.

**Board Affidavits:** I am requesting to take affidavits from Vannick Ly, Lehi Gomez, Paul James, Arnold Camat, Timothy Fenelon, Tope Ogunniyi, Kyle Martin, Mario Last Name Unknown, Elena Elliott, Ricky Gecewich, Albert Rios, Duwone Ashley, Thuy Truong, Juan Martinez; Sean Boone; Kyle Last Name Unknown (Human Resources), Nicole White, Chris Padilla, Dane Last Name Unknown (Human Resources), and any other individuals you believe have information relevant to the investigation of this matter. Please be advised that the failure to present representatives who would appear to have information relevant to the investigation of this matter, for the purposes of my taking sworn statements from them, constitutes less than complete cooperation in the investigation of the charge. Please contact me by Tuesday, November 28, 2017 to schedule these affidavits. Please be advised that a position statement will not be accepted in lieu of Board affidavits and the undersigned Board agent will likely

recommend the issuance of investigative subpoenas to compel the testimony of the above-identified individuals should Tesla, Inc. refuse to voluntarily produce the witnesses for Board affidavits.

If any of the above-listed individuals are no longer employed by Tesla, Inc., please provide their last known contact information, including street address, telephone number(s), and e-mail address(es).

**Documents:** Please provide the following documents, along with any and all other evidence you deem to be relevant to the case:

1.    The complete personnel file of the individuals listed in Allegation Paragraphs (2)(a), (2)(b), (2)(c), (2)(g), (2)(h), and (3);

2.    Every document since 2016 communicated to Tesla employees (whether by physically posting, emailing the document to Employees, or posting on an internal site) on the topic of unions, unionizing, and the United Auto Workers;

3.    Every document since 2016 in Tesla's custody, possession, or control on the topic of unions, unionizing, and the United Auto Workers, excluding any documents subject to the attorney-client privilege and/or attorney work product;

4.    A listing of all individuals terminated by Tesla in October 2017 as part of Tesla's layoff of employees.  For each individual listed, please include the following information:  the name of the employee, the employee's department, the employee's immediate supervisor, the reason for the employee's termination, and any documents that relate to the employee's termination including, but not limited to, performance reviews or disciplinary actions;

5.    Any document that refers to the reason for Tesla's mass layoff of its employees in October 2017;

6.    If Tesla, Inc. alleges that it has done mass layoffs in the past, for each mass layoff, please provide the information requested in Document Request Nos. 4 and 5 pertaining to each of those massive layoffs;

7.    For each of the individuals listed in Allegation Paragraphs (2)(a), (2)(b), (2)(c), (2)(g), (2)(h), and (3), please provide any document reviewed or relied upon by the Employer in making its decisions to discipline and/or terminate the listed employee;

8.    The name of the individual or individuals who made the decision to lay off employees at one time in October 2017;

9.    Any documents that reflect or memorialize communication(s) with security guards regarding the surveillance of pro-union employees, the threatening of employees by threatening to call the police, or the requesting of employees to

leave Tesla property.  This request shall include, but is not limited to, copies of all reports held in the RIMS system and copies of any audio or video surveillance taken of Tesla employees engaging in protected concerted activities and/or union activities;

10.     Any document that reflects Tesla's policies on the following topics:

      a.        Attitude/Mindset;

      b.        Confidentiality;

      c.        Social media;

      d.        Use of Workday and information contained in Workday;

      e.        Work uniforms;

      f.        Workplace fights, arguments, and the use of obscenities while at work;

      g.        Attendance, being late, and calling in.

11.     Any document the Employer believes supports an affirmative defense.

The Agency requests all evidence submitted electronically to be in the form it is normally used and maintained in the course of business (i.e. native format).  Where evidence submitted electronically is not in native format, it should be submitted in a manner that retails the essential functionality of the native format (i.e. in a machine-readable and searchable electronic format).  The Region does not seek any documents or information that is covered by the attorney-client privilege and/or attorney work-product doctrine.  To the extent any responsive documents are withheld on those bases, please provide a privilege log laying the appropriate foundation for the privilege asserted as the basis for withholding a document.

**Date for Submitting Evidence:**  To resolve this matter as expeditiously as possible, you must provide your evidence and position in this matter by Friday, December 1, 2017.  If you are willing to allow me to take affidavits, please contact me by Tuesday, November 28, 2017 to schedule a time to take affidavits.  Electronic filing of position statements and documentary evidence through the Agency website is preferred but not required.  To file electronically, go to **www.nlrb.gov,** select **E-File Documents,** enter the **NLRB case number,** and follow the detailed instructions.  If I have not received all your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.

It is Agency policy that full and complete cooperation on your part in this investigation includes timely providing all material witnesses under your control to the investigating Board agent so that the witnesses' statements can be reduced to affidavit form and providing all relevant documentary evidence requested by the Board agent.  The mere submission of a position letter or memorandum, or the submission of affidavits not taken by the Board agent, does not

constitute full and complete cooperation.  The Region seeks such full and complete cooperation by the close of business on Friday, December 1, 2017.  If I have not received all of your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time. Additionally, the Region will consider all of its options in order to complete its investigation, including the possibility of issuing investigative subpoenas for the witnesses and documents requested in this letter.

Please contact me at your earliest convenience by telephone, (510)671-3041, or e-mail, edris.rodriguezritchie@nlrb.gov, so that we can discuss how you would like to provide evidence and I can answer any questions you have with regard to the issues in this matter.

Very truly yours,

/s/ Edris Rodriguez Ritchie

EDRIS W.I. RODRIGUEZ RITCHIE
Field Attorney

# Exhibit F

22-60493.5444

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET<br>FORM NLRB-501<br>(2-08) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case<br>32-CA-210879 | Date Filed<br>12/01/17 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br><br>Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative | g. e-Mail<br>gaby@tesla.com |
| | | h. Number of workers employed<br>Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

In the past sin months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>800 East Jefferson<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _____<br>*(signature of representative or person making charge)* | Henry M. Willis, Attorney<br>*(Print/type name and title or office, if any)* | Tel. No.<br>(323) 655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| Schwartz, Steinsapir, Dohrmann & Sommers, LLP | 12/01/17 | Fax No. (323) 655-4488 |
| Address 6300 Wilshire Boulevard, Suite 2000, Los Angeles, CA 90048 | *(date)* | e-Mail<br>hmw@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5445

# Exhibit G

22-60493.5446



UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD

REGION 32                                    Agency Website: www.nlrb.gov
1301 Clay St Ste 300N                        Telephone: (510)637-3300
Oakland, CA 94612-5224                       Fax: (510)637-3315

Agent's Direct Dial: (510)671-3024

December 20, 2017

SENT VIA EMAIL ONLY AT mparry@littler.com

ELIZABETH PARRY, ATTORNEY
LITTLER MENDELSON
TREAT TOWERS
1255 TREAT BLVD, SUITE 600
WALNUT CREEK, CA 94597

Re:      Tesla, Inc.
         Case 32-CA-210879

Dear Ms. Parry:

I am writing this letter to advise you that it is now necessary for me to take evidence from you regarding the allegations raised in the investigation of the above-captioned matter. As explained below, I am requesting to take affidavits on or before **January 15, 2018**, with regard to certain allegations in this case.

**Allegations:** The allegations for which I am seeking your evidence are as follows.

- On or about July 22, 2017, by and through supervisors Josh Surgeon and Shawn Gaines, violating Sections 8(a)(3) and (1) of the Act. Specifically, the Charging Party-Union alleges that Surgeon and Gaines issued a warning letter to an employee in retaliation for that employee's protected concerted and/or Union activities. The Charging Party-Union also asserts that the incidents relied upon by the Employer in the July 22, 2017, warning letter are not used by the Employer to discipline other employees.

- On or about August 24, 2017, by and through supervisor Matthew Stewart, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Stewart was engaged in surveillance of employees and/or created the impression of surveillance by standing approximately 5 feet away from two employees working at an auditing station on the Model 3 line.

- On or about August 30, 2017, by and through supervisor Tyler Ash, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Ash was engaged in surveillance of employees and/or created the impression of surveillance by attending the full orientation training meeting for employees.

22-60493.5447

- On or about August 31, 2017, by and through supervisor Tyler Ash, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Ash was engaged in surveillance of employees and/or created the impression of surveillance by standing approximately 15 feet away from three employees who work on the Model 3 line.

- On or about September 8, 2017, by and through associate manager Dave Teston, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Teston engaged in surveillance of employees and/or created the impression of surveillance by instructing an employee to work in a new area directly under a camera with a microphone.

- Since on or about September 8, 2017, and continuing to the present date, by and through agents of the Employer, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that the Employer has engaged in surveillance of employees and/or created the impression of surveillance by installing cameras with microphones in work areas.

- On or about September 14, 2017, by and through supervisors Matthew Stewart and Roderick Stevens, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Stewart and Stevens engaged in surveillance of employees and/or created the impression of surveillance by standing about 5 feet from two employees working on the Model 3 line.

- On or about September 8, 2017, by and through associate manager Dave Teston, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that Teston interrogated employees about their protected concerted and/or Union activities.

- On or about October 21, 2017, by and through associate production manager Andy McIndoe, violating Section 8(a)(1) of the Act. Specifically, the Charging Party-Union alleges that McIndoe interrogated employees about their protected concerted and/or Union activities.

- On or about November 2, 2017, by and through supervisors and managers of the Employer, including, but not limited to, Dave Teston and Cindie Reneau, violating Sections 8(a)(3) and (1) of the Act. Specifically, the Charging Party-Union alleges that the Employer issued a lower performance review to an employee in retaliation for that employee's protected concerted and/or Union activities. The Charging Party-Union asserts that the reasons for the lowered performance review are pretextual, and that the lowered performance review was issued because the employee had engaged in protected concerted and/or Union activities.

**Board Affidavits:** I am requesting to take affidavits from **Dave Teston**, Associate Manager, **Josh Surgeon**, (title unknown to Board Agent but known by Employer), **Shawn Gaines**, Supervisor, **Kevin Kassekert**, Vice President for Infrastructure Development, **Matthew**

**Stewart**, Supervisor, **Tyler Ash**, Supervisor, **Andy McIndoe**, Associate Production Manager, **Cindie Reneau**, Human Resources Representative, **Elliot Kent**, Supervisor, and any other individuals you believe have information relevant to the investigation of the above-captioned matter.  Please be advised that the failure to present representatives who would appear to have information relevant to the investigation of this matter, for the purposes of my taking sworn statements from them, constitutes less than complete cooperation in the investigation of the charge.  Please contact me by **January 9, 2018**, to schedule these affidavits.

**Documents:**  Please provide the following documents, along with any and all other evidence you deem to be relevant to the case:

1. A copy of the Employer's employee handbook or other similar document issued to employees that work at the Employer's Sparks, Nevada facility.

2. The true and correct titles of the Employer's supervisors and managers listed above, and the contact information for any such supervisor and manager if they are no longer employed by the Employer.

3. A document that shows the Employer's management hierarchy currently in place at its Sparks, Nevada facility.

4. Copies of any and all documents relating to the Employer's position of "training coordinator," including any documents that show the incumbent's duties and responsibilities for that position and the work location, e.g., desk area, for incumbents in those positions.

5. Copies of any and all documents concerning the Employer's rules, policies, and/or procedures as they relate to dress codes, solicitation, distribution, orientation training, discipline and discharge, and performance reviews.

6. A copy of employee Will Locklear's personnel file.

7. Copies of the discipline issued to Will Locklear on July 22, 2017, the performance review issued to Will Locklear on November 2, 2017, and any and all documents relied upon by the Employer in issuing the discipline and writing the performance review.

8. Copies of any disciplines issued to employees within the past six months for reasons similar to those used to issue the discipline to Will Locklear on July 22, 2017.

9. Copies of the performance reviews for employees working as "training coordinators" at the Sparks, Nevada facility within the past six months.

10. Copies of any and all documents referring to cameras installed by the Employer at its Sparks, Nevada facility, including, but not limited to, any and all documents showing the reason for the installation of such cameras and the location of such cameras.

11. Copies of any and all documents relating to the United Auto Workers and the employees working for the Employer at the Sparks, Nevada facility.

12. The contact information for the following employees working at the Employer's Sparks, Nevada facility: Morissa Leach, Rebecca Mortenson, Jordan Drayer, and Wyatt Laughlin.

**Position on 10(j) Relief:** You are also requested to provide your position as to the appropriateness of Section 10(j) injunctive relief in this matter. As you may know, Section 10(j) of the Act permits the NLRB to ask a federal district court "for appropriate temporary relief or restraining order" pending the Board's resolution of an unfair labor practice charge. The district court is authorized to grant "such temporary relief or restraining order as it deems just and proper." *If* the Region determines the Charged Party has violated the Act as alleged, the Region will consider whether to seek injunctive relief in this matter. Accordingly, please provide your position, legal theory, case law, and supporting evidence regarding whether injunctive relief would be appropriate for the alleged violations in this case and whether such injunctive relief would be just and proper. I wish to emphasize that the Region has not yet made a decision as to whether the Charged Party has violated the Act as alleged. Rather, we want to provide you with adequate notice that injunctive relief will be considered if such a decision is made.

**Date for Submitting Evidence:** To resolve this matter as expeditiously as possible, you must provide your evidence and position in this matter by **January 15, 2018**. If you are willing to allow me to take affidavits, please contact me by **January 9, 2018**, to schedule a time to take affidavits. Electronic filing of position statements and documentary evidence through the Agency website is preferred but not required. To file electronically, go to **www.nlrb.gov,** select **E-File Documents,** enter the **NLRB case number,** and follow the detailed instructions. If I have not received all your evidence by the due date or spoken with you and agreed to another date, it will be necessary for me to make my recommendations based upon the information available to me at that time.

Please contact me at your earliest convenience by telephone, (510)671-3024, or e-mail, alexander.hajduk@nlrb.gov, so that we can discuss how you would like to provide evidence and I can answer any questions you have with regard to the issues in this matter.

Very truly yours,

/s/ Alexander M. Hajduk

ALEXANDER M. HAJDUK
Field Examiner

# Exhibit H

22-60493.5451

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

    **and**

**MICHAEL SANCHEZ, an Individual**                  **Case 32-CA-197020**

    **and**

**JONATHAN GALESCU,  an Individual**           **Case 32-CA-197058**

    **and**

**RICHARD ORTIZ, an Individual**                **Case 32-CA-197091**

    **and**

**INTERNATIONAL UNION, UNITED**           **Case 32-CA-197197**
**AUTOMOBILE, AEROSPACE AND**           **Case 32-CA-200530**
**AGRICULTURAL WORKERS OF**             **Case 32-CA-208614**
**AMERICA, AFL-CIO**                      **Case 32-CA-210879**

**THIRD ORDER CONSOLIDATING CASES, SECOND AMENDED**
**CONSOLIDATED COMPLAINT AND NOTICE OF HEARING**

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations

Board (the Board) and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** the

Amended Consolidated Complaint that issued on September 1, 2017, in Cases 32-CA-197020,

32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, alleging that Tesla, Inc.

(Respondent) has violated the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the Act),

by engaging in unfair labor practices, is further consolidated with Cases 32-CA-208614 and 32-

CA-210879, filed by the International Union, United Automobile, Aerospace and Agricultural

Workers of America, AFL-CIO (Union) against Respondent, which allege that Respondent has

engaged in further unfair labor practices within the meaning of the Act.

22-60493.5452

This Third Order Consolidating Cases, Second Amended Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. and Sections 102.15 and 102.17 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)    The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)    The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)    The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)    The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)    The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)    The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)    The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(l)     The charge in Case 32-CA-208614 was filed by the Union on October 25, 2017, and a copy was served on Respondent by U.S. mail on October 25, 2017.

(m)     The first-amended charge in Case 32-CA-208614 was filed by the Union on March 12, 2017, and a copy was served on Respondent by U.S. mail on March 13, 2018.

(n)     The charge in Case 32-CA-210879 was filed on December 1, 2017, and a copy was served on Respondent by U.S. mail on December 4, 2017.

(o)     The first-amended charge in Case 32-CA-210879 was filed on December 6, 2017, and a copy was served on Respondent by U.S. mail on December 7, 2017.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, an automotive manufacturing facility in Fremont, California (the Fremont Facility), and an automotive battery facility in Sparks, Nevada (the Sparks Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Fremont Facility,

purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

(c)     During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Sparks Facility, purchased and received goods valued in excess of $50,000 directly from sources located outside the State of Nevada.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

4.

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Elon Musk | - | Chief Executive Officer |
| Mark Lipscomb | - | Vice-President of Human Resources |
| Emma Cruz | - | Human Resources Business Partner |
| Liza Lipscomb | - | Human Resources Business Partner |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |

| | | |
|---|---|---|
| Juan Martinez | - | Manager, Manufacturing |
| Andrew McIndoe | - | Associate Production Manager |
| Tope Ogunniyi | - | Associate Production Manager |
| Victor Facha | - | Supervisor |
| Tim Fenelon | - | Supervisor |
| Homer Hunt | - | Supervisor |
| Armando Rodriguez | - | Supervisor |
| Dave Teston | - | Supervisor |
| Red Shirt Male Supervisor No. 1 | - | Supervisor |
| Arnold (Last Name Unknown) | - | Supervisor |
| John Doe | - | Production Supervisor |
| Lauren Holcomb | - | Environmental Health Safety and Sustainability Specialist |
| Ricky Gecewich | - | Employee Relations Investigator |

6.

At all material times, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| John/Jane Does 1-6 | - | Security Guards |
| Name Unknown | - | Human Resources Agent |

7.

(a)    Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement at the Fremont facility:

(i)      These obligations are straightforward.  Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started.  This includes information about…customers, suppliers, employees…. and anything similar.

(ii)      Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

(iii)      Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv)      or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal.

(v)      The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment.  Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

(b)      About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, during a one-on-one meeting with employees, prohibited employees from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 7(a).

(c)      On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 1-4,  restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)   On February 10, 2017, Respondent, by John Doe Security Guard No. 1, outside the entrance to Door 2 at the Fremont facility:

      (i)      On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

      (ii)     Security Guard No. 1 engaged in the conduct described above in paragraph 7(d)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(e)      On February 10, 2017, Respondent, by Jane Doe Security Guard No. 2, outside the entrance to Door 1 at the Fremont facility:

      (i)      told off-duty employees to leave Respondent's premises.

      (ii)     Security Guard No. 2 engaged in the conduct described above in paragraph 7(e)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(f)      On February 10, 2017, Respondent, by John Doe Security Guard No. 3, outside the entrance to Door 1 at the Fremont facility:

      (i)      told off-duty employees to leave Respondent's premises.

      (ii)     Security Guard No. 3 engaged in the conduct described above in paragraph 7(f)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(g)      On February 10, 2017, Respondent, by Jane Doe Security Guard No. 4, outside the entrance to Door 3 at the Fremont facility:

      (i)      told an off-duty employee to leave Respondent's premises.

      (ii)     Security Guard No. 4 engaged in the conduct described above in paragraph 7(g)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(h)   On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the back entrance to the Fremont facility by the Receiving Addition:

       (i)    told an off-duty employee to leave the premises.

       (ii)   Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 7(h)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(i)   On February 10, 2017, Respondent, by a Human Resources Agent (whose name is currently unknown to the General Counsel) at the Fremont facility, during a phone conversation initiated by Red Shirt Male Supervisor No. 1:

       (i)    told an off-duty employee who was on medical leave to leave Respondent's premises.

       (ii)   The unnamed Human Resources Agent engaged in the conduct described above in paragraph 7(i)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(j)   On March 23, 2017, Respondent, by Supervisor Armando Rodriguez, during a pre-shift meeting at the Fremont facility:

       (i)    told employees that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent; and

       (ii)   threatened that Respondent would terminate employees if they passed out stickers, leaflets, or materials that were not approved by Respondent.

       (iii)  Supervisor Armando Rodriguez engaged in the conduct described above in paragraph 7(j)(i) and (ii) in response to employees engaging in Union activities and to discourage these and other protected, concerted activities.

(k)   On April 5, 2017, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(l)　　　Since about April 25, 2017, Respondent has maintained the following rule at the Fremont facility:

> Team Wear: It is mandatory that all Production Associates and Leads wear the assigned team wear.
>
> - On occasion, team wear may be substituted with all black clothing if approved by supervisor.
> - Alternative clothing must be mutilation free, work appropriate and pose no safety risks (no zippers, yoga pants, hoodies with hood up, etc.).

(m)　　　On April 28, 2017, Respondent, by Human Resources Business Partner Seth Woody, at the Fremont facility, attempted to prohibit employees from discussing safety concerns with other employees and/or with the Union.

(n)　　　On May 24, 2017, Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(o)　　　On May 24, 2017, by Jane Doe Security Guard No. 5, at the security counter near the Door 4 entrance at the Fremont facility, told an employee that the employee could not hand out flyers on Respondent's premises.

(p)　　　On May 24, 2017, by John Doe Security Guard No. 6, outside the Door 4 entrance at the Fremont facility:

> (i)　　　on two occasions, instructed an off-duty employee to leave the premises.
>
> (ii)　　　Security Guard No. 6 engaged in the conduct described above in paragraph 7(p)(i) in response to employees engaged in Union leafleting and to discourage these and other protected, concerted activities.

(q)     On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lipscomb, at the Fremont Facility during separate meetings with individual employees, in the presence of Environmental Health Safety and Sustainability Specialist Lauren Holcomb, interrogated employees about their Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

(r)     In the Spring of 2017, Respondent, by Supervisor Arnold (Last Name Unknown), at the Fremont facility, impliedly threatened an employee with unspecific reprisals for wearing a hat with Union insignia.

(s)     In August 2017, Respondent, by Supervisor Homer Hunt, at the Fremont facility, informed its employees that it would be futile for them to select the Union as their bargaining representative.

(t)     Respondent, at the Fremont facility in August or September 2017:

    (i)     by Production Supervisor (whose name is unknown) told employees they could not wear Union shirts at work and threatened employees they would be sent home for wearing shirts with Union insignia;

    (ii)     by Associate Production Manager Tope Ogunniyi, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(u)     About August 10, 2017, Respondent, at the Fremont Facility:

    (i)     by Supervisor Tim Fenelon, told employees to remove their shirts with Union insignia; and

    (ii)     by Associate Production Manager Tope Ogunniyi attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(v)     About August 14, 2017, by Associate Production Manager Tope Ogunniyi, at Respondent's Fremont facility, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by telling employees they are prohibited from wearing shirts with Union insignia.

(w)     On September 8, 2017, Respondent, by Supervisor Dave Teston, at Respondent's Sparks Facility in the production administrative room, impliedly threatened an employee with unspecified reprisals for wearing a hat with Union insignia.

(x)     On October 21, 2017, Respondent, by Associate Production Manager Andre McIndoe, at the Sparks Facility, told an employee that the employee should not speak with other employees about workplace concerns.

8.

(a)     On September 14, 2017, Respondent's employees Jose Moran and Richard Ortiz engaged in concerted activities with each other for the purposes of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz, who posted comments regarding wages and working conditions along with the screenshots of the employee photographs and job titles on "Fremont Tesla Employees for UAW Representation" a private employee-only Facebook page.

(b)     Respondent, by Employee Relations Investigator Ricky Gecewich, at the Fremont facility:

> (i)     About September 21, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

    (ii)    About October 19, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

    (iii)    About October 19, 2017, in an email, promulgated and/or disparately enforced a rule prohibiting employees from accessing the Workday System for non-business purposes without proper business justification.

(c)    On October 18, 2017, Respondent discharged Richard Ortiz.

(d)    On October 19, 2018, Respondent issued a disciplinary warning to Jose Moran.

(e)    Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c) and 8(d), because Jose Moran and Richard Ortiz engaged in the conduct described above in paragraph 8(a) and to discourage its employees from engaging in these and/or other protected concerted activities.

(f)    Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c), and 8(d), because Jose Moran and Richard Ortiz supported and assisted the Union and/or because they engaged in concerted activities, and to discourage employees from engaging in these activities.

9.

By the conduct described above in paragraphs 7 and 8(b) through 8(e), Respondent has been interfering with,  restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of  Sections 8(a)(1) of the Act.

10.

By the conduct described above in paragraphs 8(b)(iii), 8(c), 8(d), and 8(f), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of

employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

11.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for the unfair labor practices described above in paragraphs 7 and 8(b) through 8(f), the General Counsel seeks an order requiring Respondent to Respondent to hold meetings with Respondent's production employees at its Fremont and Sparks facilities, scheduled to ensure the widest possible attendance, at which the Board's Notice is to be read to employees by a responsible management official of Respondent, or at Respondent's option, by a Board agent in that official's presence. Respondent shall be required to allow a representative of the Union to be present during such reading or readings of the Notice.

<u>**ANSWER REQUIREMENT**</u>

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Second Amended Consolidated Complaint. The answer must be **<u>received by this office on or before April 13, 2018, or postmarked on or before April 12, 2018</u>**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to <u>www.nlrb.gov</u>, click on **E-File Documents**, enter the NLRB Case

Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Second Amended Consolidated Complaint are true.

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street,

Oakland, California 94612, at a conference room to be determined, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint.   The procedures to be followed at the hearing are described in the attached Form NLRB-4668.   The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 30th day of March 2018.

/s/ Valerie Hardy-Mahoney
_____
Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

# Exhibit I

22-60493.5467

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual                   Case 32-CA-197020

    and

JONATHAN GALESCU,  an Individual             Case 32-CA-197058

    and

RICHARD ORTIZ, an Individual                   Case 32-CA-197091

    and

INTERNATIONAL UNION, UNITED AUTOMOBILE,    Case 32-CA-197197
AEROSPACE AND AGRICULTURAL WORKERS OF    Case 32-CA-200530
AMERICA, AFL-CIO                              Case 32-CA-208614
                                        Case 32-CA-210879

## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.17 of the Rules and Regulations of the National Labor Relations Board (the Board), the Second Amended Consolidated Complaint and Notice of Hearing (Complaint) issued on March 30, 2018, is amended as follows:

**Amend paragraph 5** of the Complaint to include two more individuals as a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of Respondent within the meaning of Section 2(13) of the Act. The two individuals to include are:

Gaby Toledano    -    Respondent's Chief People Officer

Josh Hedges    -    Director of HR for Production

22-60493.5468

**Amend paragraph 7** to include the following new allegations as 7(y) of the Complaint:

(y)    On about June 7, 2017, Respondent, in a conference room at its Fremont Facility, during a meeting held by CEO Elon Musk and Chief People Officer Gaby Toledano:

(i) by Elon Musk, solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity.

(ii) by Elon Musk, informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances; and

(iii) by Gaby Toledano, restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's Facility wanted a union and asking them why employees would want to pay union dues.

**Amend paragraph 8(d)** to correct the year Jose Moran was issued a disciplinary warning. The existing paragraph 8(d) should be replaced with the following paragraph:

(d)    On or about October 19, 2017, Respondent issued a disciplinary warning to Jose Moran.

## ANSWER REQUIREMENT

RESPONDENT IS FURTHER NOTIFIED that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, Respondent must file an answer to the above Amendment to Second Amended Consolidated Complaint. The answer must be **received by this office on or before June 18, 2018, or postmarked on or before June 17, 2018**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

2

22-60493.5469

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on File Case Documents, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amendment to Second Amended Consolidated Complaint are true.

## NOTICE OF HEARING LOCATION

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Oakland, California 94612, at Conference Room H on the 5th Floor, and on consecutive days thereafter until

3

concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 4th day of June 2018.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

4

# Exhibit J

22-60493.5472

Form NLRB - 501  (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-200530 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | |
|---|---|---|
| Tesla Motors Corporation | | b. Tel. No. (510)249-3650 |
| | | c. Cell No. (650)454-5386 |
| d. Address (street, city, state ZIP code) 45500 Fremont Blvd, Fremont, CA 94538-6326 | e. Employer Representative Amnon Geshuri Vice President of HR | f. Fax No. |
| | | g. e-Mail amnon@tesla.com |
| | | h. Dispute Location (City and State) Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) Factory | j. Principal Product or Service Automotive Manufacturing | k. Number of workers at dispute location Approximately 7000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code) 8000 E JEFFERSON AVE, DETROIT, MI 48214-2699 | 4b. Tel. No. (313)926-5000 |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By: *Margo A. Feinberg* (signature of representative or person making charge)   Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Office, if any, Cell No. (323) 655-4700 |
| | Fax No. (323) 655-4488 |
| Address: 8000 E JEFFERSON AVE, DETROIT, MI 48214-2699     Date: 7/28/17 | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# Exhibit K

22-60493.5474

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-208614 | 3/13/2018 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla, Inc. | | |
| | | c. Cell No. |

| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
|---|---|---|
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Gaby Toledano Chief People Officer | g. e-Mail  gaby@tesla.com |
| | | h. Dispute Location (City and State)  Fremont, CA |

| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
|---|---|---|
| Factory | Automotive Manufacturing | 10000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (*set forth a clear and concise statement of the facts constituting the alleged unfair labor practices*)

Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity.

3. Full name of party filing charge (*if labor organization, give full name, including local name and number*)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
|---|---|
| 8000 East Jefferson Avenue, Detroit, MI 48214 | 313-926-5000 |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail  sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (*to be filled in when charge is filed by a labor organization*)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By: *Margo A. Feinberg* (signature of representative or person making charge) | Margo A. Feinberg, Esq. Attorney for Charging Party Print Name and Title | Tel. No.  323-655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| Address: 8000 East Jefferson Avenue, Detroit, MI 48214 | Date: | Fax No.  323-655-4488 |
| | | e-Mail  margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# Exhibit L

22-60493.5476

FORM EXEMPT UNDER 44 U S C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
FIRST AMENDED **CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|-----------|
| 32-CA-210879 | 12/06/17 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative | g. e-Mail<br>gaby@tesla.com |
| | | h. Number of workers employed<br>Approximately 7000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

In the past six months the above-named Employer has interfered with the protected Section 7 rights of William Locklear and those of his coworkers by intimidating him, creating the impression of surveillance of him and his coworkers, engaging in surveillance of his and his coworkers' activities, subjecting him to heightened supervisory scrutiny and interrogating him concerning his support for and activities on behalf of the Charging Party.

In the past six months the Employer has disciplined William Locklear because of his Union and other protected concerted activities and otherwise discriminated against him because of those activities.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>800 East Jefferson<br>Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _(signature of representative or person making charge)_ | Henry M. Willis, Attorney<br>*(Print/type name and title or office, if any)* | Tel. No. (323) 655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| | | Fax No. (323) 655-4488 |
| Address | 12/06/17<br>*(date)* | e-Mail<br>hmw@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On June 11, 2018, I served a true copy of the following document(s) described as **RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA  94612-5224
T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021
E-mail: noah.garber@nlrb.gov

Margo Feinberg
E-mail: margo@ssdslaw.com
Daniel E. Curry
E-mail: dec@ssdslaw.com
Julie Alarcon
E-mail: jsa@ssdslaw.com
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000
Los Angeles, CA  90048
T: (323) 655-4700

Administrative Law Judge Amita Tracy
Amita.Tracy@nlrb.gov
National Labor Relations Board
Division of Judges
901 Market St., Suite 300
San Francisco, CA 94103
T: (415) 356-5255

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

SMRH:486636285.1

-1-

1    I declare under penalty of perjury under the laws of the United States of America
     that the foregoing is true and correct and that I am employed in the office of a member of
2    the bar of this Court at whose direction the service was made.

3    Executed on June 11, 2018, at San Francisco, California.

4

5    Sarah Smith

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Find Your Regional Office | Contact Us - 1-866-667-NLRB | Español

Search

Search Tools

**Home**    **Rights We Protect**    **What We Do**    **Who We Are**    **Cases & Decisions**    **News & Outreach**    **Reports & Guidance**

Home (http://www.nlrb.gov/) » E-File (efileterm.aspx) » Confirmation

⎙ Print

# Confirmation

You have successfully E-Filed document(s). You will receive an E-mail acknowledgement from this office when it receives your submission. This E-mail will note the official date and time of the receipt of your submission. Please save this E-mail for future reference. Please print this page for your records.

**NOTE:** This confirms only that the document was filed. It does not constitute acceptance by the NLRB.
**Be sure to make a note of this Confirmation Number.**

**Confirmation Number:** 1000214563
**Date Submitted:** 6/11/2018 9:59:06 AM (UTC-08:00) Pacific Time (US & Canada)

**Case Number:** 32-CA-197020
**Case Name:** TESLA, INC.
**Filing Party:** Charged Party / Respondent
**Submitted E-File To Office:** Division of Judges

**Contact Info:**
**Morris, Keahn**
Sheppard, Mullin, Richter & Hampton LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 434-9100
**Email: kmorris@sheppardmullin.com**
**Additional Emails:** sasmith@sheppardmullin.com, mross@sheppardmullin.com

**Attached E-File(s):**
Motion    2018-06-11 Respondent's Motion to Dismiss - e-filed.pdf

Site Map    Policies    Feedback    FOIA    OpenGov    Inspector General

Accessibility    No Fear Act    USA.gov    PDF Viewer    Download App

22-60493.5481

# EXHIBIT 3

22-60493.5482

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    **and**                                       **Cases 32-CA-197020**

                                                    **32-CA-197058**

**MICHAEL SANCHEZ, an Individual**                **32-CA-197091**

                                                  **32-CA-197197**

    **and**                                       **32-CA-200530**

                                                    **32-CA-208614**

                                                      **32-CA-210879**

**JONATHAN GALESCU,  an Individual**

    **and**

**RICHARD ORTIZ, an Individual**

    **and**

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO**

### COUNSEL FOR THE GENERAL COUNSEL'S OPPOSITION TO RESPONDENT TESLA, INC.'S MOTION TO DISMISS THE AMENDMENT TO THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARD AND DISCUSSION ...................................................... 1

    A.    The Regional Director Properly Issued the Amendment
        Under Section 102.15 ........................................................................ 1

    B.    The Amendment Allegations Are Timely ........................................ 2

    C.    The Amendment Allegations are "Closely Related" to
        Several Timely Filed Charges ......................................................... 3

    D.    Respondent Incorrectly Asserts Section 10(b) as a
        "Jurisdictional" Requirement ........................................................ 7

    E.    Respondent has Failed to Establish any Prejudice in
        Allowing the Amendment ................................................................ 8

    F.    In the Alternative, the Judge Should Withhold Ruling until Evidence has
        been heard Regarding the Amendment Allegations .......................... 9

III.  CONCLUSION ............................................................................................. 9

22-60493.5484

## <u>TABLE OF AUTHORITIES</u>

<u>F</u><small>EDERAL</small> <u>C</u><small>ASES</small>

*Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) .................................. 8

*Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309 (D.C. Cir. 2015) ................................... 8

*Reebie Storage and Moving Co., Inc. v. NLRB*, 44 F.3d 605 (7th Cir. 1995)................................. 2

<u>NLRB C</u><small>ASES</small>

*Central Enterprises, Inc.*, 239 NLRB 1270 (1979) ........................................................ 8

*Chicago Roll Forming Corp. (Local 714, Teamsters)*, 167 NLRB 961, 971 (1967), enforced sub.
   nom. *NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969).............................. 7

*Earthgrains Co.*, 351 NLRB 733, 734 (2007) ............................................................. 4

*Fry's Food Stores*, 361 NLRB No. 140, slip op. at 2 (2014)........................................... 4

*Harmony Corp.*, 301 NLRB 578 (1991) ................................................................... 5

*Heinick Corp.*, 301 NLRB 128 (1991)................................................................... 5

*Kanakis Co.*, 293 NLRB 435, 443 (1989) ............................................................... 7

*Jennie-O Foods*, 301 NLRB 305 (1991)................................................................. 5

*Marriott Corp.*, 310 NLRB 1152, 1160 (1993) ....................................................... 4, 5

*Nickles Bakery of Indiana, Inc.*, 296 NLRB 927 (1989) .............................................. 5, 6

*Peng Teng*, 278 NLRB No. 50, fn. 2 (1986) ............................................................ 7

*Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010).......................................................... 6

*Seton Company*, 332 NLRB 979 (2000) ................................................................. 6

*Teamsters Local 955*, 325 NLRB 605 (1998)............................................................ 7

*The Carney Hospital*, 350 NLRB 627 (2007)......................................................... 7, 8

<u>F</u><small>EDERAL</small> <u>S</u><small>TATUTES</small>

29 U.S.C. § 160............................................................................. passim

22-60493.5485

## Federal Regulations

Rules and Regulations of the National Labor Relations Board, Section 102.15 ........................... 1

Rules and Regulations of the National Labor Relations Board, Section 102.17 ........................... 1

Rules and Regulations of the National Labor Relations Board, Section 102.45 ........................... 1

22-60493.5486

## I.    INTRODUCTION

On June 4, 2018, prior to the opening of the record in this matter on June 11, 2018, the Regional Director, acting within her authority, issued an Amendment to the Second Amended Consolidated Complaint[1] (the Amendment) which set forth three allegations arising out of conduct occurring on June 7, 2017.  As set forth more fully below, these allegations are encompassed by timely-filed charges.  At the outset of the hearing, Tesla, Inc. (Respondent) filed a Motion to Dismiss for Lack of Jurisdiction (the Motion), urging the Administrative Law Judge (the Judge) to dismiss the three allegations set forth in the Amendment.  For the reasons set forth more fully below, Respondent's Motion lacks merit.

## II.    LEGAL STANDARD AND DISCUSSION

### A.    The Regional Director Properly Issued the Amendment Under Section 102.15

Under Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board), as amended, (Rules and Regulations) only a Regional Director has the authority to issue a complaint in an unfair labor practice proceeding.  Under Section 102.17, prior to the start of a hearing, the Regional Director is the only person empowered with the legal authority to issue an amendment to the complaint.  An administrative law judge is not empowered with the authority to withdraw a properly issued and noticed amendment to a complaint issued prior to a hearing and is only empowered to dismiss such an amendment if it is based on the General Counsel's failure to prove the allegation or on a substantive defense.  See Section 102.45 of the Rules and Regulations (requiring that an administrative law judge prepare a decision based upon the contents of the record).  Thus, Respondent cannot assert that the

---

[1] A copy of the Amendment is contained in Exhibit 13.

22-60493.5487

Regional Director's issuance of the Amendment is improper.  Nor, as discussed below, can it successfully assert that the allegations are not encompassed by a timely filed charge.

### B.   The Amendment Allegations Are Timely

The threshold inquiry is whether there is an operative charge that encompasses the allegations contained in the Amendment.  *See Reebie Storage and Moving Co., Inc. v. NLRB*, 44 F.3d 605, 608 (7th Cir. 1995) (holding that "critical to the determination of whether allegations in a complaint are closely related to those in the [unfair labor practice charge] is a comparison of legal and factual bases of allegations.").  Respondent incorrectly asserts that the Amendment contains allegations that were either not encompassed by any of the unfair labor practice charges or that these Amendment allegations are not closely related to any timely-filed charges. However,  each of the first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 allege, in relevant part, that Respondent "[w]ithin the last six months […] violated the Act by […] intimidating and harassing employees for their Section 7 activities."[2]  These amended charges were filed on July 28, 2017, less than two months *after* the date of conduct alleged to have occurred on June 7, 2017 in the Amendment, which alleges that Respondent CEO Elon Musk solicited employee complaints and made a statement of futility as well as that Respondent Chief People Officer Gaby Toledano restrained and coerced employees from engaging in union activities by telling employees that no one at Respondent's Fremont facility wanted a union and asked employees why they would want to pay union dues.  Thus, the

---

[2] Exhibits 2, 4, 6, and 8, respectively.  The initial charges in Case Nos. 32-CA-197020, 197058, 32-CA-197091, and 32-CA-197197 are contained in Exhibits 1, 3, 5, and 7, respectively.

22-60493.5488

first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 plainly cover the allegations in the Amendment.[3]

Moreover, the first amended charge in Case No. 32-CA-200530 (filed on July 28, 2017) also encompasses the allegations contained in the Amendment.  The first amended charge in Case No. 32-CA-200530 was filed less than two months *after* the occurrence of the conduct contained in the Amendment and alleged, in relevant part, that Respondent, "[w]ithin the last six months" violated the Act by interrogating employees regarding their protected concerted activities and "intimidate[ed] and harass[ed] employees engaged in Section 7 activities […]."[4] Furthermore, the initial charge in Case No. 32-CA-208614[5], filed on October 25, 2017, and the first amended charge[6] (filed on March 13, 2018) also encompass the allegations in the Amendment, as they allege that Respondent "intimidated and harassed employees" for their Section 7 activities and the first amended charge in Case 32-CA-208614 further alleges that Respondent threatened and interrogated such employees.

## C.    The Amendment Allegations are "Closely Related" to Several Timely Filed Charges

Even assuming the allegations in the Amendment were not encompassed within the above-referenced timely filed charges as described above, Respondent's Motion still fails because the Amendment allegations are "closely related" to the timely filed charges.  Under settled Board law, a complaint may be amended, at any point, to allege conduct outside of the Section 10(b) period where the conduct occurred within six months of a timely filed charge and is "closely related" to the allegations of the charge.  *Redd-I, Inc.*, 290 NLRB 1115 (1988); NLRB

---

[3] Respondent's motion entirely ignores that the first amended charges in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 themselves form an independent basis for the General Counsel's issuance of the Amendment.
[4] Exhibit 10.  The initial charge in Case No. 32-CA-200530 is contained in Exhibit 9 and was filed on June 12, 2017.
[5] Exhibit 11.
[6] Exhibit 12.

22-60493.5489

Bench Book Section 3-330; *Fry's Food Stores*, 361 NLRB No. 140, slip op. at 2 (2014). In evaluating whether the timely and untimely allegations are "closely related," the Board: (1) considers whether the allegations involve the same legal theory; (2) considers whether the allegations arise from the same factual circumstances or sequence of events; and (3) "may look" at whether the respondent would raise the same or similar defenses to both allegations. *Redd-I*, above, at 118; *Nickels Bakery of Indiana*, 296 NLRB 927, 927-28 (1989); *Earthgrains Co.*, 351 NLRB 733, 734 (2007). The "third" *Redd-I* factor is not a mandatory factor. See *The Carney Hospital*, 350 NLRB 627, fn. 8 (2007).

Here, the Amendment allegations are "closely related" to the allegations contained in all of the operative charges because they are part of Respondent's course of conduct aimed at precluding union activity, which includes multiple interrogations, the discriminatory enforcement of various policies, and the discipline and/or termination of employees for engaging in their Section 7 activities. Thus, the allegations contained in the Amendment involve generally the same legal theories and arise from the same general factual circumstances and sequence of events as those that Respondent does not assert are untimely or barred by Section 10(b).

The Board has often held that allegations of Section 8(a)(1) interrogations, solicitations of grievances, promises of benefit, as well as Section 8(a)(3) discharges, have been found closely related to timely filed charges of discriminatory suspensions where they all arose out of an employer's unlawful response to a single unionization campaign and were part of a single course of conduct aimed at precluding union activity. *Marriott Corp.*, 310 NLRB 1152, 1160 (1993).

Moreover, where an employer's acts are part of an overall plan to resist unionization, allegations arising out of such acts are deemed to "closely relate" to each other. *Jennie-O Foods*, 301 NLRB 305 (1991). Indeed, where violations arise out of the same course of conduct such as

4

an anti-union campaign, they are deemed to be "closely related." *Marriott Corp.*, above; *Heinick Corp.*, 301 NLRB 128 (1991). Here, the General Counsel has presented evidence that a union campaign began in the summer of 2016. The campaign was launched in the fall of 2016 at which point Respondent began requiring employees to sign a confidentiality agreement banning the disclosure of all information employees learn (including information about themselves and other employees). When the campaign went full steam ahead on February 9, 2017, with an employee's blog post, Respondent began further violating the Act by unlawfully prohibiting distribution of union literature in non-working areas on non-working time, banned the wearing of union apparel, interrogated employees, culminating in the verbal and written warning to the same employee who encouraged his coworkers to unionize on February 9, 2017, and the termination of another key employee in the organizing campaign. Respondent's conduct as alleged in the Amendment was part-and-parcel of the same organizing campaign and with Respondent's unlawful anti-union conduct during the ongoing organizing campaign. Plainly, the Board law described above establishes that the Amendment allegations are closely related to the allegations asserted in the timely filed unfair labor practice charges. See also, e.g., *Seton Company*, 332 NLRB 979 (2000). In contrast, the Board has found allegations to not be "closely related" when the allegations did not occur in the context of an organizing campaign. See, e.g., *Harmony Corp.*, 301 NLRB 578 (1991) (holding no factual nexus between interrogations and alleged discrimination because the interrogations occurred prior to the start of the organizing campaign).

Respondent relies on several cases to argue that the allegations contained in the Amendment are not "closely related." First, Respondent asserts that the Amendment allegations are not closely related under *Nickles Bakery of Indiana, Inc.*, 296 NLRB 927 (1989), because the first amended charge in 32-CA-200530 contains "boilerplate" allegations. However, Respondent

22-60493.5491

misstates the discussion in *Nickles*, where the Board held that the language stating "other acts" was boilerplate and insufficient to support "unrelated" Section 8(a)(1) allegations. *Nickles*, above at 928. Here, as the General Counsel has noted above, the first amended charges in Case No. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197 state that Respondent "[w]ithin the last six months […] violated the Act by […] intimidating and harassing employees for their Section 7 activities."[7] Respondent further ignores, as the General Counsel has noted above, that the charge in Case No. 200530 states that Respondent "[w]ithin the last six months […] interrogat[ed] employees regarding their protected concerted activities; intimidate[ed] and harass[ed] employees engaged in Section 7 activities […]."[8] These specific allegations are quite distinct from the "boilerplate" allegations disapproved of by the Board in *Nickles*.

Next, Respondent relies upon *Salon/Spa at Boro, Inc.*, 356 NLRB 444 (2010), for the proposition that the allegations in the Amendment are not "closely related" to any of the operative charges. Respondent, however, fails to point out that in *Salon/Spa at Boro, Inc.*, the Board did not address the specific issue asserted by Respondent and, more importantly, the events at issue there did not arise out of an organizing campaign and anti-union conduct as exists here.

Moreover, by relying only on the initial charge language rather than the operative amended charges for its closely-related analysis, Respondent suggests that a party is not permitted to amend an unfair labor practice charge to include additional violations. Clearly, this is contrary to extant Board law and contrary to the caselaw relied upon by the Respondent itself. See *Nickles*, above at 928-29 (noting that "it is customary for a charging party to file an amended charge or an entirely new charge. Obviously, nothing in our decision today limits in any way a

---

[7] Exhibits 2, 4, 6, and 8.
[8] Exhibit 10.

6

charging party's ability to file a timely new or amended charge.")  Finally, regarding the third *Redd-I* optional factor, it is evident from Respondent's Answer to the Amendment, Respondent's defense of the allegations contained in the Amendment are identical to its defense of the allegations not subject to its Motion to Dismiss.  See Exhibits 14 and 15.

### D.    Respondent Incorrectly Asserts Section 10(b) as a "Jurisdictional" Requirement

Section 10(b) of the National Labor Relations Act (the Act) prohibits the issuance of a complaint "based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the Board."  29 U.S.C. § 160.  "[T]he proviso to Section 10(b) of the Act is a statute of limitations, and is not jurisdictional."  *Chicago Roll Forming Corp.*, 167 NLRB 961, 971 (1967), enforced sub. nom. *NLRB v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969); *Kanakis Co.*, 293 NLRB 435, 443 (1989); *Peng Teng*, 278 NLRB No. 50, fn. 2 (1986) (holding "[t]he Board has long held that the 10(b) provision is a statute of limitations and is not jurisdictional.")

Respondent incorrectly assert that Section 10(b) is a jurisdictional requirement rather than a mere statute of limitations.  In making this assertion, Respondent relies on *Hyundai Am. Ship. Agency, Inc. v. NLRB*, 805 F.3d 309, 313 (D.C. Cir. 2015), *Teamsters Local 955*, 325 NLRB 605 (1998), *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995), and *The Carney Hospital*, 350 NLRB 627 (2007).  Its reliance on these cases for the proposition that Section 10(b) is a jurisdictional requirement is misplaced.  For example, Respondent's states that Board's decision in *The Carney Hospital* held that "Section 10(b) operates as a jurisdictional limitation [...]."  However, Respondent ignores the context of this quote, in which the Board observed that "Section 10(b) underscores that the General Counsel and the Board lack independent authority to initiate unfair labor practice proceedings in the absence of a charge filed

7

by an outside party.  In this respect, Section 10(b) operates as a jurisdictional limitation […].”  *The Carney Hospital*, above at 628 (emphasis added).  Thus, the Board very clearly did not hold that Section 10(b) was a jurisdictional requirement, but merely commented on the undisputed fact that the Board's processes are not self-initiating.  Here, it is undisputed that the Charging Parties have filed unfair labor practice charges asserting that Respondent engaged in various unfair labor practices.  Moreover, in each of the cases cited in its Motion, Respondent conflates the idea that the General Counsel is unable to initiate unfair labor practice proceedings with the concept that allegations occurring outside of the Section 10(b) period may not be prosecuted (absent several caveats described herein).

### E.    Respondent has Failed to Establish any Prejudice in Allowing the Amendment

As a final matter, the General Counsel notes that Respondent has not yet commenced its presentation of evidence and the record will not reopen until September 24, 2018.  Thus, Respondent has ample time to prepare its defense to the allegations in the Amendment.  It cannot make a colorable argument that it will be prejudiced by the inclusion of the allegations contained in the Amendment.  Further, the public interest compels the allowing of an amendment. As the sole entity charged with ensuring the public's interest in enforcement of the Act, the Board has long noted that there must be a "balance between the statutory limitations on litigation expressed in Section 10(b) and the need to assure broad leeway for the exercise of the Board authority, once properly invoked by the filing of a charge, to advance the public interest."  *The Carney Hospital*, above at 628.  Indeed, even prior to *The Carney Hospital*, the Board has held that "the General Counsel may properly relax the time provisions of our procedural rules in appropriate cases, for he acts in the public interest and not in vindication of private rights."  *Central Enterprises, Inc.*, 239 NLRB 1270, 1271 (1979).  Although the General Counsel does not rely on

22-60493.5494

the public interest alone, the General Counsel notes that, as the caretaker of the public interest and specifically the public rights at issue as a result of Respondent's violations of the Act, allowing the allegations contained in the Amendment are compelled by the vindication of these public rights.

### F.    In the Alternative, the Judge Should Withhold Ruling until Evidence has been heard Regarding the Amendment Allegations

Because Respondent essentially contends that the Amendment allegations are barred by Section 10(b) of the Act, Respondent argues, in effect, that it has met its burden of proving an affirmative defense. However, the General Counsel has not rested its case, thus, even if the Judge deems it necessary to make a "closely related" determination, such an determination is premature at this juncture. Accordingly, while the General Counsel asserts that Respondent's Motion should be denied in its entirety, in the alternative, the General Counsel respectfully requests that the Judge reserve her ruling until after the hearing has closed and the record is complete.

### III.    CONCLUSION

For the reasons set forth above, the General Counsel respectfully requests that Respondent's motion be denied in its entirety.

**DATED AT** Oakland, California this 22nd day of June 2018.

_____

Edris W.I. Rodriguez Ritchie, Field Attorney
Noah Garber, Field Attorney
Counsel for the General Counsel
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, California 94612-5224

22-60493.5495

22-60493.5496

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET<br>FORM NLRB-501<br>(2-08) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>**CHARGE AGAINST EMPLOYER** | **DO NOT WRITE IN THIS SPACE** | |
|---|---|---|---|
| | | Case<br>32-CA-197020 | Date Filed<br>04/17/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br><br>Tesla Motors Corporation | | b. Tel. No. (510) 249-3650 or<br>(650) 681-5454 |
|---|---|---|
| | | c. Cell No. (650) 454-5386 |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri | g. e-Mail<br><br>arnnon@tesla.com |
| | | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list*

*subsections)* (3)                                                                of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce
within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

See Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Michael Sanchez

| 4a. Address *(Street and number, city, state, and ZIP code)*<br><br>25225 Soto Road<br>Hayward, California 94544 | 4b. Tel. No. |
|---|---|
| | 4c. Cell No. (510) 388-5058 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.<br><br>By _____          Michael Sanchez<br>*(signature of representative or person making charge)*     *(Print/type name and title or office, if any)* | Tel. No. |
|---|---|
| | Office, if any, Cell No.<br>(510) 388-5058 |
| | Fax No. |
| | e-Mail<br>raidereapermjg@yahoo.com |
| Address     25225 Soto Road, Hayward, California 94544                    *(date)* | |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist
the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in
the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is
voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5499

Form NLRB - 501  (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197020 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
|---|---|---|
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Amnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>arnnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>Michael Sanchez | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>25225 Soto Rd, Hayward, CA 94544-2807 | 4b. Tel. No. |
| | 4c. Cell No.<br>(510)388-5058 |
| | 4d. Fax No. |
| | 4e. e-Mail<br>raidereapermjg@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. |
|---|---|---|
| By: *[signature]* Margo A. Feinberg<br>(signature of representative or person making charge) | Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>Print Name and Title | Office, if any, Cell No.<br>(323) 655-4700 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | Fax No.<br>(323) 655-4488 |
| | | e-Mail<br>margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA). 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5501

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | 32-CA-197058 | Date Filed | 04/17/2017 |
|------|--------------|------------|------------|

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| | |
|---|---|
| a. Name of Employer<br><br>Tesla Motors Corporation | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
| | c. Cell No. (650) 454-5386 |
| | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri |
| | g. e-Mail<br>arnnon@tesla.com |
| | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

See Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Jonathan Galescu

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. |
|---|---|
| 361 Carousel Drive<br>Vallejo, California 94589 | 4c. Cell No. (925) 822-8774 |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By ~~signature of representative or person making charge~~   Jonathan Galescu<br>*(Print/type name and title or office, if any)* | Office, if any, Cell No.<br>(925) 822-8774 |
| | Fax No. |
| Address   361 Carousel Drive, Vallejo, California 94589      4/17/17 *(date)* | e-Mail |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5504

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197058 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Amnon Geshuri Vice President of HR | |
| | | g. e-Mail |
| | | amnon@tesla.com |
| | | h. Dispute Location (City and State) |
| | | Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | |
|---|---|
| Jonathan Galescu | |
| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
| 361 Carousel Dr, Vallejo, CA 94589-4334 | |
| | 4c. Cell No. |
| | (925)822-8774 |
| | 4d. Fax No. |
| | |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. |
|---|---|---|
| By: *[signature]* (signature of representative or person making charge) | Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Office, if any, Cell No. (323) 655-4700 |
| | | Fax No. (323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5506

INTERNET
FORM NLRB-501
(2-08)

DO NOT WRITE IN THIS SPACE ~~UNDER 44 U S C 3512~~

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| Case | Date Filed |
|------|-----------|
| 32-CA-197091 | 04/18/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
|---|---|---|
| Tesla Motors Corporation | | c. Cell No. (650) 454-5386 |
| | | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>45500 Fremont Boulevard<br>Fremont, California 94538 | e. Employer Representative<br>Vice President of HR, Arnnon Geshuri | g. e-Mail<br>arnnon@tesla.com |
| | | h. Number of workers employed<br>Approximately 7,000 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Factory | j. Identify principal product or service<br>Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list*

*subsections)* (3)                                                        of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*
See Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Richard Ortiz

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. |
|---|---|
| 37607 Walnut<br>Newark, California 94560 | 4c. Cell No. (510) 943-2723 |
| | 4d. Fax No. |
| | 4e. e-Mail<br>richardortiz1966@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

## 6. DECLARATION

| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By  *(signature of representative or person making charge)*        Richard Ortiz  *(Print/type name and title or office, if any)* | Office, if any, Cell No.<br>(510) 943-2723 |
| | Fax No. |
| Address   37607 Walnut, Newark, California 94560          4/18/17 *(date)* | e-Mail<br>richardortiz1966@yahoo.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

22-60493.5509

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197091 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer | | b. Tel. No. |
|---|---|---|
| Tesla Motors Corporation | | (510)249-3650 |
| | | c. Cell No. |
| | | (650)454-5386 |
| d. Address (street, city, state ZIP code) | e. Employer Representative | f. Fax No. |
| 45500 Fremont Blvd, Fremont, CA 94538-6326 | Arnnon Geshuri Vice President of HR | |
| | | g. e-Mail arnnon@tesla.com |
| | | h. Dispute Location (City and State) Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel) | j. Principal Product or Service | k. Number of workers at dispute location |
| Factory | Automotive Manufacturing | Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) | |
|---|---|
| Richard Ortiz | |
| 4a. Address (street and number, city, state, and ZIP code) | 4b. Tel. No. |
| 37607 Walnut, Newark, CA 94560 | |
| | 4c. Cell No. (510)943-2723 |
| | 4d. Fax No. |
| | 4e. e-Mail richardortiz1966@yahoo.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

| 6. DECLARATION I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. |
|---|---|---|
| By: *Margo A. Feinberg* (signature of representative or person making charge) | Margo Feinberg, Esq., Attorney for Charging Party Print Name and Title | Office, if any, Cell No. (323) 655-4700 |
| | | Fax No. (323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann & Sommers, LLP, 6300 Wilshire Blvd, Suite 2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)
PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5511

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET FORM NLRB-501 (2-08) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case 32-CA-197197 | Date Filed 04/19/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer Tesla Motors Corporation | | b. Tel. No. (510) 249-3650 or |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Vice President of HR, Amnon Geshuri | g. e-Mail amnon@tesla.com |
| | | h. Number of workers employed Approximately 7,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Please see Attachment A

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) 8000 East Jefferson Avenue Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)* International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By *Margo A. Feinberg* (signature of representative or person making charge)

Attorney for Charging Party, Margo A. Feinberg, Esq. (Print/type name and title or office, if any)

Schwartz, Steinsapir, Dohrmann & Sommers, LLP
Address 6300 Wilshire Blvd., Suite 2000, L.A., CA 90048

4/19/17 (date)

| Tel. No. (323) 655-4700 |
|---|
| Office, if any, Cell No. |
| Fax No. (323) 655-4488 |
| e-Mail margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

# ATTACHMENT A

On or about November 5, 2016 and ongoing the above-named Employer through its agents violated the Act by implementing and maintaining, and repeatedly requiring compliance with, a company confidentiality agreement that coerces and intimidates employees from freely exercising their rights to engage in concerted and union activity.

On or about February 10, 2017 and ongoing the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Jose Moran, Michael Sanchez and others for their union activities and/or union sentiments, including passing out literature regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about February 10, 2017 and ongoing the above-named Employer through its agents violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding union organizing efforts, working conditions, the confidentiality agreement, and their rights under the NLRA.

On or about March 23, 2017 and ongoing the above-named Employer through its agents violated the Act by instructing employees that they were not allowed to pass out any literature unless it was pre-approved by the Employer.

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-197197 | 7-28-2017 |

File an original of this charge with NLRB Regional Director In which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br>Tesla Motors Corporation | b. Tel. No.<br>(510)249-3650 |
| | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA<br>94538-6326 | e. Employer Representative<br>Arnnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>arnnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7,000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by promulgating and/or maintaining unlawful rules restricting Section 7 activity, including overly broad confidentiality provisions and rules pertaining to use of social media, authorization requirements, the taking of photographs, videos, and recordings, distribution, and employee access to the Employer's facility and/or enforcing existing rules in an unlawful manner in response to employees' Section 7 activities; and intimidating and harassing employees for their Section 7 activities.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>8000 E Jefferson Ave, Detroit, MI 48214-2699 | 4b. Tel. No. |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By: *(signature)* Margo A. Feinberg<br>(signature of representative or person making charge) | Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>Print Name and Title | Office, if any, Cell No.<br>(323) 655-4700 |
| | | Fax No.<br>(323) 655-4488 |
| Address: Schwartz, Steinsapir, Dohrmann &<br>Sommers, LLP, 6300 Wilshire Blvd, Suite<br>2000, L.A., CA 90048 | Date: 7/28/17 | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5516

INTERNET
FORM NLRB-501
(2-08)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|-----------|
| 32-CA-200530 | 06/12/2017 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | |
|---|---|
| Tesla Motors Corporation | b. Tel. No. (510) 249-3650 or (650) 681-5454 |
| | c. Cell No. (650) 454-5386 |
| | f. Fax No. |

| d. Address (Street, city, state, and ZIP code) | e. Employer Representative |
|---|---|
| 45500 Fremont Boulevard | Vice President of HR, Arnnon Geshuri |
| Fremont, California 94538 | g. e-Mail: arnnon@tesla.com |
| | h. Number of workers employed: Approximately 7000 |

| i. Type of Establishment (factory, mine, wholesaler, etc.) | j. Identify principal product or service |
|---|---|
| Factory | Automotive Manufacturing |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Please see Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) | 4b. Tel. No. (313) 926-5000 |
|---|---|
| 8000 East Jefferson Avenue | 4c. Cell No. |
| Detroit, Michigan 48214 | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization) International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By *Margo A. Feinberg*
(signature of representative or person making charge)

Attorney for Charging Party,
Margo A. Feinberg, Esq.
(Print/type name and title or office, if any)

Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Blvd., Suite 2000, L.A., CA 90048
Address

6/12/17
(date)

Tel. No. (323) 655-4700

Office, if any, Cell No.

Fax No. (323) 655-4488

e-Mail
margo@ssdslaw.com

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

Case: 22-GA-200520   Date Filed: 06/12/2017

# ATTACHMENT A

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about February 10, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jose Moran for engaging in protected concerted activity and expressing support for the union.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 25, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of discipline, interrogation, and harassment of Jonathan Galescu, Richard Ortiz, and others for engaging in protected concerted activity regarding worker safety concerns and other working conditions.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by intimidating, creating the appearance of surveillance and conducting surveillance on Richard Ortiz, Michael Catura, Branton Phillips and others for their union activities and/or union sentiments, including passing out literature regarding working conditions at Tesla.

On or about May 24, 2017 and ongoing, the above-named Employer violated the Act by creating the appearance of surveillance and conducting surveillance on employees who were receiving literature from fellow employees regarding working conditions at Tesla.

22-60493.5518

22-60493.5519

Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD

FIRST AMENDED **CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-200530 | 7-28-2017 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

### 1.  EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>Tesla Motors Corporation | | b. Tel. No.<br>(510)249-3650 |
|---|---|---|
| | | c. Cell No.<br>(650)454-5386 |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA 94538-6326 | e. Employer Representative<br>Amnon Geshuri<br>Vice President of HR | f. Fax No. |
| | | g. e-Mail<br>amnon@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>Approximately 7000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsection (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six months, the above-named Employer, through its agents, violated the Act by: enforcing an overly broad confidentiality policy; interrogating employees regarding their protected concerted activities; intimidating and harassing employees engaged in Section 7 activities; and promulgating and/or maintaining an unlawful rule restricting Section 7 activity, including an overly broad distribution policy.

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number)<br>International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO | |
|---|---|
| 4a. Address (street and number, city, state, and ZIP code)<br>8000 E JEFFERSON AVE, DETROIT, MI 48214-2699 | 4b. Tel. No.<br>(313)926-5000 |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)

International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO

| 6.  DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. |
|---|---|
| By: *[signature]* Margo Feinberg, Esq.,<br>Attorney for Charging Party<br>(signature of representative or person making charge)      Print Name and Title | Office, if any, Cell No.<br>(323) 655-4700 |
| | Fax No.<br>(323) 655-4488 |
| Address: 8000 E JEFFERSON AVE,<br>DETROIT, MI 48214-2699       Date: 7/28/17 | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5521

)                                                    )

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET FORM NLRB-501 (2-08) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case 32-CA-208614 | Date Filed 10-25-2017 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer Tesla, Inc. | | b. Tel. No. |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. |
| d. Address (Street, city, state, and ZIP code) 45500 Fremont Boulevard Fremont, California 94538 | e. Employer Representative Gaby Toledano, Chief People Officer | g. e-Mail gaby@tesla.com |
| | | h. Number of workers employed 10,000 |
| i. Type of Establishment (factory, mine, wholesaler, etc.) Factory | j. Identify principal product or service Automotive Manufacturing | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3) and (4)      of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

See Attachment A

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO

| 4a. Address (Street and number, city, state, and ZIP code) 8000 East Jefferson Detroit, Michigan 48214 | 4b. Tel. No. (313) 926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By _(signature of representative or person making charge)_ | Margo A. Feinberg, Esq., Attorney for Charging Party _(Print/type name and title or office, if any)_ | Tel. No. (323) 655-4700 |
|---|---|---|
| | | Office, if any, Cell No. |
| Address Schwartz, Steinsapir, Dohrmann & Sommers LLP 6300 Wilshire Blvd., Suite 2000, Los Angeles, CA 90048 | 10/25/17 _(date)_ | Fax No. (323) 655-4488 |
| | | e-Mail margo@ssdslaw.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5522

## Attachment A

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees in retaliation for participating in protected concerted activities and National Labor Relations Board activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating and/or disciplining employees for violating a confidentiality agreement that restricts protected concerted activities.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees to discourage protected concerted activity by other employees.

Within the past six months and ongoing, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act by, among other things, terminating a group of employees in retaliation for members of that group participating in protected concerted activities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, among other acts, restricting employees' right to engage in protected concerted activity, including, but not limited to, wearing items with the Union's logo in Tesla facilities.

Within the past six months and ongoing, Tesla, Inc., through its agents, has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act by, intimidating and harassing employees for their Section 7 activities.

By these and other acts, Tesla, Inc. has violated Section 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act.

ID 338093