Form NLRB - 501 (2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**
INSTRUCTIONS:

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 32-CA-208614 | 3/13/2018 |

File an original of this charge with NLRB Regional Director in which the alleged unfair labor practice occurred or is occurring.

| 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT | | |
|---|---|---|
| a. Name of Employer<br>Tesla, Inc. | | b. Tel. No. |
| | | c. Cell No. |
| d. Address (street, city, state ZIP code)<br>45500 Fremont Blvd, Fremont, CA 94538-6326 | e. Employer Representative<br>Gaby Toledano<br>Chief People Officer | f. Fax No. |
| | | g. e-Mail<br>gaby@tesla.com |
| | | h. Dispute Location (City and State)<br>Fremont, CA |
| i. Type of Establishment (factory, nursing home, hotel)<br>Factory | j. Principal Product or Service<br>Automotive Manufacturing | k. Number of workers at dispute location<br>10000 |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (3) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the past six months, Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act by (1) disciplining and/or terminating employees in retaliation for engaging in union and/or protected concerted activities; (2) maintaining an unlawful teamwear policy prohibiting the wearing of Union t-shirts; (3) applying its teamwear policy in a discriminatory manner; (4) intimidating, harassing, and/or threatening employees including, but not limited to, interrogating employees regarding their Section 7 activities; (5) making a statement of futility regarding employee support for the Union; and (6) threatening an employee regarding the wearing of union insignia and engaging in Section 7 activity..

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 4a. Address (street and number, city, state, and ZIP code)<br>8000 East Jefferson Avenue, Detroit, MI 48214 | 4b. Tel. No.<br>313-926-5000 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail<br>sreed@uaw.net |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION (UAW), AFL-CIO

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No.<br>323-655-4700 |
|---|---|---|
| By: *Margo A. Feinberg* (signature)<br>(signature of representative or person making charge) | Margo A. Feinberg, Esq.<br>Attorney for Charging Party<br>Print Name and Title | Office, if any, Cell No. |
| | | Fax No.<br>323-655-4488 |
| Address: 8000 East Jefferson Avenue, Detroit, MI 48214 | Date: | e-Mail<br>margo@ssdslaw.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq*. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

22-60493.5526

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

and

MICHAEL SANCHEZ, an Individual                          Case 32-CA-197020

and

JONATHAN GALESCU,  an Individual                        Case 32-CA-197058

and

RICHARD ORTIZ, an Individual                            Case 32-CA-197091

and

INTERNATIONAL UNION, UNITED AUTOMOBILE,                 Case 32-CA-197197
AEROSPACE AND AGRICULTURAL WORKERS OF                   Case 32-CA-200530
AMERICA, AFL-CIO                                        Case 32-CA-208614
                                                        Case 32-CA-210879

## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT
## AND NOTICE OF HEARING

Pursuant to Section 102.17 of the Rules and Regulations of the National Labor Relations Board (the Board), the Second Amended Consolidated Complaint and Notice of Hearing (Complaint) issued on March 30, 2018, is amended as follows:

**Amend paragraph 5** of the Complaint to include two more individuals as a supervisor of Respondent within the meaning of Section 2(11) of the Act and an agent of Respondent within the meaning of Section 2(13) of the Act. The two individuals to include are:

Gaby Toledano        -        Respondent's Chief People Officer

Josh Hedges          -        Director of HR for Production

**Amend paragraph 7** to include the following new allegations as 7(y) of the Complaint:

(y)     On about June 7, 2017, Respondent, in a conference room at its Fremont Facility, during a meeting held by CEO Elon Musk and Chief People Officer Gaby Toledano:

(i) by Elon Musk, solicited employee complaints about safety issues and impliedly promised to remedy their safety complaints if they refrained from their union organizational activity.

(ii) by Elon Musk, informed its employees that it would be futile for them to select a union as their bargaining representative by telling them that employees did not need a union and that Respondent would allow them to have a union if Respondent failed in its efforts to remedy their safety grievances; and

(iii) by Gaby Toledano, restrained and coerced employees from engaging in union organizational activity by telling them that no one at Respondent's Facility wanted a union and asking them why employees would want to pay union dues.

**Amend paragraph 8(d)** to correct the year Jose Moran was issued a disciplinary warning. The existing paragraph 8(d) should be replaced with the following paragraph:

(d)     On or about October 19, 2017, Respondent issued a disciplinary warning to Jose Moran.

## ANSWER REQUIREMENT

RESPONDENT IS FURTHER NOTIFIED that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, Respondent must file an answer to the above Amendment to Second Amended Consolidated Complaint.  The answer must be **received by this office on or before June 18, 2018, or postmarked on or before June 17, 2018**.  Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

2

22-60493.5528

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on File Case Documents, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amendment to Second Amended Consolidated Complaint are true.

## NOTICE OF HEARING LOCATION

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Oakland, California 94612, at Conference Room H on the 5th Floor, and on consecutive days thereafter until

3

concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 4th day of June 2018.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

22-60493.5530

Form NLRB-4338
(2-90)

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

NOTICE

Cases:  32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530
32-CA-208614
32-CA-210879

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.  An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.

However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing.  An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds thereafter must be set forth in *detail;*

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request;

*and*

(5) Copies must be simultaneously served on all other parties (*listed below*), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Arnnon Geshuri
Tesla Motors Corporation
45500 Fremont Blvd.
Fremont, CA  94538

Mark S. Ross, Attorney
Sheppard Mullin Richter
& Hampton LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111

Jonathan Galescu
361 Carousel Drive
Vallejo, CA  94589

Gaby Toledano
45500 Fremont Blvd
Fremont, CA 94538-6326

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers LLP
6300 Wilshire Bld., Suite 2000
Los Angeles, CA  90048

Susan Reed
IU, UA, A&AWA, AFL-CIO
8000 E Jefferson Avenue
Detroit, MI  48214

Richard Ortiz
37607 Walnut
Newark, CA  94560

Michael Sanchez
25225 Soto Road
Hayward, CA  94544

22-60493.5532

# UNITED STATES OF AMERICA

## BEFORE THE NATIONAL LABOR RELATIONS BOARD

### REGION 32

| | |
|---|---|
| **TESLA, INC.** | |
| and | |
| **MICHAEL SANCHEZ, an Individual** | **Case No. 32-CA-197020** |
| and | |
| **JONATHAN GALESCU, an Individual** | **Case No. 32-CA-197058** |
| and | |
| **RICHARD ORTIZ, an Individual** | **Case No. 32-CA-197091** |
| and | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case No. 32-CA-197197**<br>**Case No. 32-CA-200530**<br>**Case No. 32-CA-208614**<br>**Case No. 32-CA-210879** |

## RESPONDENT TESLA, INC.'S ANSWER TO AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.5533

## RESPONDENT TESLA, INC.'S ANSWER TO
## AMENDMENT TO SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Amendment to Second Amended Consolidated Complaint ("Complaint"), Respondent denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.    In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.    (a)    In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

      (b)    In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

      (c)    In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.    In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.    In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.    In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Gaby Toledano is the Chief People Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha,

Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors." Respondent
admits Elon Musk, Gaby Toledano, Josh Hedges, Mark Lipscomb, Emee Cruz, Liza Lipson,
Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi,
David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and
Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of
the Act and agents of Respondent within the meaning of Section 2(13) of the Act. Respondent
admits that Lauren Holcomb has been an agent of Respondent within the meaning of Section
2(13) of the Act. Respondent denies each and every remaining allegation contained therein and
does not have knowledge or information sufficient to form a belief as to the truth or falsity of
the allegation pertaining to the unidentified "Red Shirt Supervisor No. 1," "John Doe," or
"Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title. She is
currently a "Sr. EHS Program Manager, Training & Education." Her previous title was "Sr.
EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human
Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title.
She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He
was the "Director, Global Environmental Health and Safety." The Complaint misidentifies
David Zweig's title. He is a "Senior Human Resources Partner." The Complaint misidentifies
Ricky Gecewich's title. He is a "Sr. Employee Relations Manager." His previous title was
"Principal Employee Relations Partner." The Complaint misidentifies Dave Teston's title. He
is a "Associate Manager, Training His previous title was "Associate Manager, Manufacturing."
The Complaint misidentifies Josh Hedge's title. He is currently a "Sr. Director of HR".

6.     In response to Paragraph 6 of the Complaint, Respondent denies each and every
allegation contained therein and does not have knowledge or information sufficient to form a
belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-
6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.     In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs
7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but

those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete acknowledgement, and further denies that the acknowledgement violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality Agreement." The acknowledgement was an acknowledgement of the underlying Employee Proprietary Information and Inventions Agreement. Respondent also denies that this agreement was in effect since October 2016. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.     In response to Paragraph 7(b) of the Complaint, Respondent denies each and every allegation contained therein.

9.     In response to Paragraph 7(c) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos. 1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

10.     In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 1" is not identified in the Complaint.

11.     In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 1" is not identified in the Complaint.

12.     In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 3" is not identified in the Complaint.

22-60493.5536

13.     In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 4" is not identified in the Complaint.

14.     In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" is not identified in the Complaint.

15.     In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the General Counsel)" are not identified in the Complaint.

16.     In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and every allegation contained therein.

17.     In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every allegation contained therein.

18.     In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every allegation contained therein.

19.     In response to Paragraph 7(k) of the Complaint, Respondent denies each and every allegation contained therein.

20.     Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from Respondent's General Assembly Expectations applicable to production associates in General Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete General Assembly Expectations, and further denies that the General Assembly Expectations violates the Act. Respondent also denies that the General Assembly Expectations

22-60493.5537

were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21. In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22. In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23. In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24. In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25. In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26. In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27. In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.5538

28. In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29. In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30. In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31. In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32. In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33. In response to Paragraph 7(y) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

34. In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

35. In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

36. In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

37. In response to Paragraph 8(d) of the Complaint, Respondent admits the allegation contained therein.

38. In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

39. In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.5539

40.    In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

41.    In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

42.    In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

43.    Respondent reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

## AFFIRMATIVE DEFENSES

1.    The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.    To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.    The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.    Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

5.    Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing

22-60493.5540

facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets. Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.    The Complaint does not state a claim upon which relief can be granted.

7.    Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.    Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.    Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests. Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.    Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

11.    The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.    Respondent reserves the right to modify or supplement defenses as may be appropriate.

22-60493.5541

Respondent respectfully requests that the Administrative Law Judge dismiss the Complaint in its entirety and grant Respondent all appropriate relief.

Dated:  June 18, 2018

By _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

22-60493.5543

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | |
| **and** | |
| **MICHAEL SANCHEZ, an Individual** | **Case No. 32-CA-197020** |
| **and** | |
| **JONATHAN GALESCU, an Individual** | **Case No. 32-CA-197058** |
| **and** | |
| **RICHARD ORTIZ, an Individual** | **Case No. 32-CA-197091** |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case No. 32-CA-197197**<br>**Case No. 32-CA-200530**<br>**Case No. 32-CA-208614**<br>**Case No. 32-CA-210879** |

**RESPONDENT TESLA, INC.'S ANSWER TO**
**THIRD ORDER CONSOLIDATING CASES AND**
**SECOND AMENDED CONSOLIDATED COMPLAINT**

Mark S. Ross
mross@sheppardmullin.com
Keahn N. Morris
kmorris@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:    (415) 434-9100

*Attorneys for Tesla, Inc.*

22-60493.5544

## RESPONDENT'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT

Responding to the initial unnumbered paragraphs of the Second Amended Consolidated Complaint ("Complaint"), Respondent does not object to consolidation of the charges cited above, but denies that it has engaged in any unfair labor practices set forth in the National Labor Relations Act, 29 U.S.C. § 151, et seq.

1.    In response to all the subsections of Paragraph 1 of the Complaint, Respondent admits that it received the charges in these proceedings. Respondent further admits that the various charges cited in paragraph 1 of the Complaint were filed and served on the dates alleged. Respondent denies that it violated the Act in any way.

2.    (a)    In response to Paragraph 2(a) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(a) of the Complaint.

(b)    In response to Paragraph 2(b) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(b) of the Complaint.

(c)    In response to Paragraph 2(c) of the Complaint, Respondent admits the material allegations contained in Paragraph 2(c) of the Complaint.

3.    In response to Paragraph 3 of the Complaint, Respondent admits that it is an employer engaged in commerce within the meaning of Sections 2(2) and 2(6) of the National Labor Relations Act ("the Act"), but denies that it has burdened or obstructed commerce or the free flow of commerce within the meaning of Section 2(7) of the Act.

4.    In response to Paragraph 4 of the Complaint, Respondent admits the material allegations contained in Paragraph 4 of the Complaint.

5.    In response to Paragraph 5 of the Complaint, Respondent admits that Elon Musk is the Chief Executive Officer; Mark Lipscomb was the Vice President of Human Resources; Juan Martinez is a Manager, Manufacturing; Andrew McIndoe was an Associate Production

Manager up until February 19, 2018 when he became a Production Manager; Tope Ogunniyi is an Associate Production Manager; and Victor Facha, Armando Rodriguez, Tim Fenelon and Homer Hunt hold the title of "Supervisors." Respondent admits Elon Musk, Mark Lipscomb, Emee Cruz, Liza Lipson, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tim Fenelon, Tope Ogunniyi, David Zweig, Dave Teston, Victor Facha, Homer Hunt, Armando Rodriguez, Tim Fenelon and Ricky Gecewich have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act. Respondent denies that Lauren Holcomb has been a supervisor of Respondent within the meaning of Section 2(11) of the Act and agent of Respondent within the meaning of Section 2(13) of the Act based on lack of knowledge or information sufficient to form a belief as to the truth or falsity; counsel for Respondent's investigation is only now beginning and reserves the right to amend following conclusion of counsel's investigation. Respondent denies each and every remaining allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation pertaining to the unidentified "Red Shirt Supervisor No. l," "John Doe," or "Arnold (Last Name Unknown)." The Complaint misidentified Lauren Holcomb's title. She is currently a "Sr. EHS Program Manager, Training & Education." Her previous title was "Sr. EHS Specialist." The Complaint misidentifies Liza Lipson's title. She is an "Associate Human Resources Manager." The Complaint misspells Emee Cruz's name and misidentifies her title. She is the "Sr. Human Resources Partner." The Complaint misidentifies Seth Woody's title. He was the "Director, Global Environmental Health and Safety." The Complaint misidentifies David Zweig's title. He is a "Senior Human Resources Partner." The Complaint misidentifies Ricky Gecewich's title. He is a "Sr. Employee Relations Manager." His previous title was "Principal Employee Relations Partner." The Complaint misidentifies Dave Teston's title. He is a "Associate Manager, Training  His previous title was "Associate Manager, Manufacturing."

6.     In response to Paragraph 6 of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a

belief as to the truth or falsity of the allegation pertaining to the unidentified "John/Jane Does 1-6" and "Name Unknown Human Resources Agent" in Paragraph 6 of the Complaint.

7.    In response to Paragraph 7(a) of the Complaint, Respondent admits that Paragraphs 7(a)(i)-(v) of the Complaint contain excerpts from one of Respondent's acknowledgements , but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete acknowledgement, and further denies that the acknowledgement violates the Act. In addition, Respondent denies that this acknowledgement is a "Confidentiality Agreement." The acknowledgement was an acknowledgement of the underlying Employee Proprietary Information and Inventions Agreement. Respondent also denies that this agreement was in effect since October 2016. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(a)(i)-(v) of the Complaint.

8.    In response to Paragraph 7(b) of the Complaint, Respondent denies each and every allegation contained therein.

9.    In response to Paragraph 7(c) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John/Jane Does Security Guards Nos. 1-4" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

10.    In response to Paragraph 7(d) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 1" is not identified in the Complaint.

11.    In response to Paragraph 7(e) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 1" is not identified in the Complaint.

22-60493.5547

12.    In response to Paragraph 7(f) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 3" is not identified in the Complaint.

13.    In response to Paragraph 7(g) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 4" is not identified in the Complaint.

14.    In response to Paragraph 7(h) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" is not identified in the Complaint.

15.    In response to Paragraph 7(i) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Red Shirt Male Supervisor No. 1" and "Human Resources Agent (whose name is currently unknown to the General Counsel)" are not identified in the Complaint.

16.    In response to Paragraph 7(j) and 7(j)(i) of the Complaint, Respondent denies each and every allegation contained therein.

17.    In response to Paragraph 7(j)(ii) of the Complaint, Respondent denies each and every allegation contained therein.

18.    In response to Paragraph 7(j)(iii) of the Complaint, Respondent denies each and every allegation contained therein.

19.    In response to Paragraph 7(k) of the Complaint, Respondent denies each and every allegation contained therein.

20.    Respondent admits that Paragraph 7(1) of the Complaint contains excerpts from Respondent's General Assembly Expectations applicable to production associates in General

Assembly at Respondent's Fremont, California manufacturing facility, but those excerpts have been taken out of context and Respondent denies that they are accurate statements of the complete General Assembly Expectations, and further denies that the General Assembly Expectations violates the Act. Respondent also denies that the General Assembly Expectations were in effect since April 2017. Except as so specifically admitted, Respondent denies each and every remaining allegation contained in Paragraph 7(l) of the Complaint.

21.     In response to Paragraph 7(m) of the Complaint, Respondent denies each and every allegation contained therein.

22.     In response to Paragraph 7(n) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Security Guards" and "John/Jane Does Security Guards Nos. 5-6" are not identified in the Complaint. Respondent denies that following its nondiscriminatory identification and security requirements for all employees and visitors to its Fremont, California manufacturing facility violates the Act.

23.     In response to Paragraph 7(o) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Jane Doe Security Guard No. 5" is not identified in the Complaint.

24.     In response to Paragraph 7(p) of the Complaint, and all its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "John Doe Security Guard No. 6" is not identified in the Complaint.

25.     In response to Paragraph 7(q) of the Complaint, Respondent denies each and every allegation contained therein.

26.     In response to Paragraph 7(r) of the Complaint, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a

belief as to the truth or falsity of the allegation because "Arnold (Last Name Unknown)" is not identified in the Complaint.

27.     In response to Paragraph 7(s) of the Complaint, Respondent denies each and every allegation contained therein.

28.     In response to Paragraph 7(t) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein and does not have knowledge or information sufficient to form a belief as to the truth or falsity of the allegation because "Production Supervisor (whose name is unknown)" is not identified in the Complaint.

29.     In response to Paragraph 7(u) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

30.     In response to Paragraph 7(v) of the Complaint, Respondent denies each and every allegation contained therein.

31.     In response to Paragraph 7(w) of the Complaint, Respondent denies each and every allegation contained therein.

32.     In response to Paragraph 7(x) of the Complaint, Respondent denies each and every allegation contained therein.

33.     In response to Paragraph 8(a) of the Complaint, Respondent denies each and every allegation contained therein.

34.     In response to Paragraph 8(b) of the Complaint, and all of its subparts, Respondent denies each and every allegation contained therein.

35.     In response to Paragraph 8(c) of the Complaint, Respondent admits the allegation contained therein.

36.     In response to Paragraph 8(d) of the Complaint, Respondent denies each and every allegation contained therein.

37.     In response to Paragraph 8(e) of the Complaint, Respondent denies each and every allegation contained therein.

22-60493.5550

38.   In response to Paragraph 8(f) of the Complaint, Respondent denies each and every allegation contained therein.

39.   In response to Paragraph 9 of the Complaint, Respondent denies each and every allegation contained therein.

40.   In response to Paragraph 10 of the Complaint, Respondent denies each and every allegation contained therein.

41.   In response to Paragraph 11 of the Complaint, Respondent denies each and every allegation contained therein.

42.   Counsel for Respondent's investigation is only now beginning and reserves the right to modify Respondent's Answer to the Complaint following completion of counsel's investigation.

## AFFIRMATIVE DEFENSES

1.   The Complaint does not state facts sufficient to constitute an unfair labor practice or a violation of the Act.

2.   To the extent the Complaint contains allegations that are beyond the applicable statute of limitations, the allegations are barred.

3.   The Complaint fails to provide adequate notice to the Respondent of the particular allegations against it, and deprives the Respondent of fundamental due process, because certain allegations in the Complaint fail to identify specific supervisors and agents in a plant of over 10,000 employees. To the extent the Complaint fails to identify the supervisors and agents involved, and plead the allegations with sufficient particularity, the allegations are barred.

4.   Respondent has a substantial legitimate business interest in requiring confidentiality to protect its trade secrets and other proprietary information, including but not limited to its manufacturing processes. None of the acknowledgement language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests.  To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

22-60493.5551

5.    Respondent also has a substantial business interest in adopting and enforcing uniform security measures governing identification and access to its Fremont, California manufacturing facility to protect trade secrets, manufacturing processes and employee safety. None of the allegations in the Complaint unlawfully prohibited employees' off-duty access to the facility. Instead, the Respondent enforced reasonable regulations, including identification requirements, designed to ensure the protection of Respondent's property and trade secrets.  Respondent applies these rules uniformly to all off duty employees seeking to gain access to the facility.

6.    The Complaint does not state a claim upon which relief can be granted.

7.    Assuming any allegation in the Complaint is found to be a violation, it is a de minimis violation of the Act insufficient to warrant the finding of an unfair labor practice or the issuance of a remedial order.

8.    Assuming any allegation in the Complaint is found to be a violation, the remedy requested by the General Counsel is inappropriate as a matter of law.

9.    Respondent has a substantial legitimate business interest in maintaining General Assembly Expectations regarding team wear to protect its manufacturing processes, including preventing mutilation to cars as they go through General Assembly. None of the General Assembly Expectations language alleged in the Complaint can reasonably be construed as chilling employees in the exercise of their protected rights and any potential adverse impact on protected rights is outweighed by legitimate business interests.  Notwithstanding the General Assembly Expectations regarding team wear, employees are allowed to wear union insignia that does not compromise the legitimate business interests underlying the Employer's rules. To the extent that any Board decision holds to the contrary, it is distinguishable or should be overruled.

10.    Respondent denies any wrong doing as alleged in the Complaint and further alleges that any conduct of Respondent constitutes free speech protected by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

22-60493.5552

11.    The General Counsel's claims challenging the lawfulness of Respondent's facially neutral policies are barred by the First Amendment to the United States Constitution and Section 8(c) of the Act, 29 U.S.C. § 158(c).

12.    Respondent reserves the right to modify or supplement defenses as may be appropriate.

Respondent respectfully requests that the Administrative Law Judge dismiss the Complaint in its entirety and grant Respondent all appropriate relief.

Dated:  April 23, 2018

By    _____

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for TESLA, INC.

<u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On April 23, 2018, I e-filed with the NLRB and served true copies of the document(s) described as **RESPONDENT TESLA, INC.'S ANSWER TO THIRD ORDER CONSOLIDATING CASES AND SECOND AMENDED CONSOLIDATED COMPLAINT** on the interested parties in this action via the U.S. Postal Service, First Class Mail and electronic mail (if available) as follows:

| | |
|---|---|
| Margo A. Feinberg, Esq.<br>Schwartz, Steinsapir, Dohrmann & Sommers LLP<br>6300 Wilshire Blvd., Suite 2000<br>Los Angeles, CA  90048<br>margo@ssdslaw.com | Electronic & U.S. Mail |
| Jonathan Galescu<br>361 Carousel Drive<br>Vallejo, CA 94589 | U.S. Mail |
| Richard Ortiz<br>37607 Walnut<br>Newark, CA 94560 | U.S. Mail |
| Michael Sanchez<br>25225 Soto Road<br>Hayward, CA 94544 | U.S. Mail |
| Susan Reed<br>UAW<br>8000 E. Jefferson Avenue<br>Detroit, MI 48214 | U.S. Mail |
| Edris Rodriguez Ritchie<br>Field Attorney<br>NLRB – Region 32<br>1301 Clay Street, Suite 300N<br>Oakland, CA 94612<br>Edris.RodriguezRitchie@nlrb.gov | Electronic & U.S. Mail |

22-60493.5554

Valerie Hardy-Mahoney                                                    U.S. Mail
Regional Director
NLRB – Region 32
1301 Clay Street, Suite 300N
Oakland, CA  94612

    **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelopes for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.

    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the persons with e-mail addresses as listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on April 23, 2018, at San Francisco, California.

_____
Sarah Smith

22-60493.5555

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

| | |
|---|---|
| **TESLA, INC.** | |
| **and** | |
| **MICHAEL SANCHEZ, an Individual** | **Case 32-CA-197020** |
| **and** | |
| **JONATHAN GALESCU,  an Individual** | **Case 32-CA-197058** |
| **and** | |
| **RICHARD ORTIZ, an Individual** | **Case 32-CA-197091** |
| **and** | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO** | **Case 32-CA-197197**<br>**Case 32-CA-200530**<br>**Case 32-CA-208614**<br>**Case 32-CA-210879** |
| | **Date: June 22, 2018** |

<u>**AFFIDAVIT OF SERVICE OF GENERAL COUNSEL'S OPPOSITION TO RESPONDENT TESLA, INC.'S MOTION TO DISMISS THE AMENDMENT TO THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION**</u>

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on the date indicated above I served the above-entitled document(s) upon the persons at the addresses and in the manner indicated below. Persons listed below under "E-Service" have voluntarily consented to receive service electronically, and such service has been effected on the same date indicated above.

Mark S. Ross, Esq.
Keahn Morris, Esq.
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
**VIA EMAIL: mross@sheppardmullin.com**
**VIA EMAIL: kmorris@sheppardmullin.com**

Margo A. Feinberg, Esq.
Daniel Curry, Esq.
Julie Alarcon, Esq.
Schwartz, Steinsapir, Dohrmann & Sommers, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90048
**VIA EMAIL: margo@ssdslaw.com**
**VIA EMAIL: dec@ssdslaw.com**
**VIA EMAIL: jsa@ssdslaw.com**

National Labor Relations Board
Division of Judges
901 Market St., Suite 485
San Francisco, CA  94103
**E-FILE**

| | |
|---|---|
| June 22, 2018 | Ida Lam, Designated Agent of NLRB |
| | Name |
| | /s/ Ida Lam |
| | Signature |

# EXHIBIT 4

22-60493.5557

MARGO A. FEINBERG (100655)
DANIEL E. CURRY (297412)
JULIE S. ALARCÓN (316063)
SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS, LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, California 90048
Telephone:   (323) 655-4700
Fax:   (323) 655-4488

*Attorneys for Michael Sanchez, Jonathan Galescu, Richard Ortiz, and International Union, United Automobile, Aerospace And Agricultural Workers Of America, AFL-CIO*

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**SAN FRANCISCO DIVISION OF JUDGES**

| | |
|---|---|
| TESLA, INC., | **Case Nos.** **32-CA-197020** |
| Respondent, | **32-CA-197058** |
| | **32-CA-197091** |
| and | **32-CA-197197** |
| | **32-CA-200530** |
| MICHAEL SANCHEZ, an Individual, | **32-CA-208614** |
| | **32-CA-210879** |
| Charging Party, | |
| and | **CHARGING PARTIES' OPPOSITION** |
| | **TO RESPONDENT'S MOTION TO** |
| JONATHAN GALESCU, an Individual, | **DISMISS** |
| Charging Party, | |
| and | |
| RICHARD ORTIZ, an Individual, | |
| Charging Party, | |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO, | |
| Charging Party. | |

## I

### PRELIMINARY STATEMENT

Respondent Tesla's Motion to Dismiss is based on a flawed premise: that the allegations in the General Counsel's Amendment were not alleged in any of the Charging Party's Unfair Labor Practice Charges. This is patently false. No less than two Unfair Labor Practice Charges—32-CA-200530 and 32-CA-208614—and two subsequent amendments to those charges cover the allegations in the General Counsel's Amendment. Because the allegations are covered by these Charges, resorting to the Board's "closely related" test is not even necessary.

Yet even applying the "closely related" test, the Respondent's motion lacks any merit. The allegations in the General Counsel's Amendment meet all three criteria laid out in *Redd-I, Inc.*, 290 NLRB 1115 (1988) and clarified by *Carney Hospital*, 350 NLRB 627 (2007). The Respondent's assertions to the contrary constitutes nothing more than wishful thinking. The conduct of Tesla executives on June 7, 2017 follows a clear chain of events previously alleged where employees have been intimidated, harassed, and interrogated for protected activity involving safety conditions. As explained below, the June 7, 2017 was the culmination of these events.

## II

### ARGUMENT

**A.   THE ALLEGATIONS IN THE GENERAL COUNSEL'S AMENDMENT WERE ALLEGED IN CHARGE NOS. 32-CA-200530 AND 32-CA-208614**

An unfair labor practice charge is not a formal pleading. Its function is not to give notice to the respondent of the exact nature of the charges against it; that is the function of the complaint. *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959); *Redd-I, Inc.*, 290 NLRB at 1116-17.

Charges therefore do not need to list every 8(a)(1) allegation with particularity. In fact, the Board has long held that a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1). *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992); *Columbia University*, 250 NLRB 1220, 1222 fn 2 (1980); *Gerig's Dump Trucking, Inc.* 320 NLRB 1017, 1019 (1996).

1    In its desperation to remove these allegations, the Respondent has concocted a

2 jurisdictional objection that skips over the very words at issue.  The objective truth is that each of

3 the General Counsel's allegations raised it his Amendment were properly pled in an Unfair Labor

4 Practice charge within the 10(b) period.  No application of the 'closely related' test is necessary

5 because the allegations are within the charges themselves.  In fact, no less than four timely

6 charges or amended charges allege the conduct described in the Amendment with sufficient

7 particularity.

8    The Respondent's real complaint seems to be that the allegations were not part of the

9 General Counsel's initial investigation or earlier complaints.  However, just because the

10 Respondent doesn't like timing of an Amendment doesn't mean it's improper.  In fact, the

11 Amendment in no way prejudices Respondent, who has another three months to investigate and

12 prepare a defense.  The Respondent does not even try to claim otherwise.  Its motion to dismiss

13 should be denied.

14    **1.    Charge No. 32-CA-200530**

15    On June 12, 2017, the Union filed Unfair Labor Practice Charge No. 32-CA-200530,

16 which alleges:

17
18 > On or about May 25, 2017 and ongoing, the above-named Employer violated the
> act by interrogating, intimidating, and harassing Jonathan Galescu, Richard Ortiz,
> and others for engaging in protected concerted activity regarding worker safety
19 > concerns and other working conditions.

20 On July 28, 2017, the Union amended this charge to state, in relevant part:

21
22 > Within the last six months, the above-named Employer, through its agents,
> violated the Act by…intimidating and harassing employees for their Section 7
> activities.

23 Both the original and the amended charges in Case No. 32-CA-200530 wholly encompass the

24 allegations in the General Counsel's Amendment.  Labeling unionization as futile and telling

25 employees nobody wants the union are examples of restraint and coercion of employees that tends

26 to intimidate. *Wilson Tree Co., Inc.*, 312 NLRB 883, 896 (1993) (statements implying union

27 activity is futile is intimidating).  The charge and amended charges' use of the word

28 "intimidating" therefore covers these allegations in the GC's Complaint.

1    The Charging Party is not required to specifically state the date of an incident or the

2  people involved in its Unfair Labor Practice Charge.  The charges cover the relevant date – June 7

3  – through the words "and ongoing" in the original charge and "within the last six months" in the

4  amended charge.  The original charge also includes the specific topic that the June 7, 2017

5  meeting covered: "worker safety concerns."  No further specificity is required.

6         **2.    Charge No. 32-CA-208614**

7         On October 25, 2017, about four and a half months after the allegations in Paragraph 7(y)

8  took place, the UAW filed Charge No. 32-CA-208614, stating, in part:

9         Within the past six months and ongoing, Tesla, Inc., though its agents, has
          interfered with, restrained, and coerced employees in the exercise of the rights
10        guaranteed in Section 7 of the Act by intimidating and harassing employees for
          their Section 7 Activities.
11

12  On March 13, 2018, the Union amended this charge to state:

13        Tesla, Inc. has interfered with, restrained, and coerced employees in the exercise
          of rights guaranteed in Section 7 of the Act by…making a statement of futility
14        regarding employee support for the Union…

15        This charge and amended charge also fully encompass the allegations in the General

16  Counsel's Amendment for the same reasons stated above.  Furthermore, the March 18, 2018

17  amendment specifically uses the word "futile."  The Charging Parties therefore filed not one, but

18  two timely charges alleging the June 7, 2017 conduct violated the Act.  The Respondent's efforts

19  to dodge these allegations must fail.

20  **B.    THE AMENDMENT IS PROPER BECAUSE THE ALLEGATIONS IN THE**

21         **AMENDMENT ARE CLOSELY RELATED TO ALLEGATIONS IN A TIMELY**

22         **FILED CHARGE**

23        Even assuming, *arguendo*, that the allegations in the General Counsel's Amendment were

24  not properly alleged in any of the Charging Parties' Unfair Labor Practice Charges, the General

25  Counsel can still include these allegations in the complaint under the Board's "closely related"

26  doctrine.  The General Counsel has "broad investigatory power" to deal with "unfair labor

27  practices which are related to those alleged in the charge and which grow out of them while the

28  proceeding is pending before the Board." *Fant Milling Co.*, 360 U.S. at 308-09 (1959).

ID 354908

CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1    The Region may make allegations that are "closely related" to a timely filed charge and
2    involve conduct occurring within six months of that timely charge. *Carney*, 350 NLRB at 628.
3    Under the *Redd-I* test, the Board (1) considers whether the otherwise untimely allegations involve
4    the same legal theory as the allegations in the timely charge; (2) considers whether the otherwise
5    untimely allegations arise from the same factual situation or sequence of events as the allegations
6    in the timely charge; and (3) "may look" at whether a respondent would raise the same or similar
7    defenses to both the untimely and timely charge allegations. *Redd-I*, 290 NLRB at 1118; *Seton*
8    *Co.*, 332 NLRB 979, 983 (2000). *Carney* further refined the second prong of this test, stating that
9    it is satisfied where the two sets of allegations "[1] demonstrate similar conduct, usually during
10   the same time period with a similar object, or [2] there is a causal nexus between the allegations
11   and they are part of a chain or progression of events, or [3] they are part of an overall plan to
12   undermine union activity." *Carney Hospital*, 350 NLRB at 630.

13   In *Seton Co.*, the Charging Party filed a charge on June 7, 1995 alleging, among other
14   acts, "interrogation" and "implied threats of discipline" that interfered with, restrained and
15   coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act. 332 NLRB
16   at 983. In its Complaint, the General Counsel alleged that the employer "interrogated employees
17   about their union membership, activities, and sympathies" and "impliedly threatened employees
18   with discipline if the employees talked about the Union" in about Mid-February 1995. The
19   Board, applying the test from *Redd-I, Inc.*, found that both allegations in the Complaint were
20   "closely related" to the Charge described above.

21   For the first prong, the Board found that the charge and complaint allegations involved
22   "the same section of the Act (Section 8(a)(1)) and the same legal theory (interference with
23   employees' Section 7 right to select the Union as their collective-bargaining representative)." For
24   the second prong, the Board found "both sets of allegations involve the same types of conduct.
25   Interrogation and implied threats of discipline are specifically alleged in both the amended charge
26   and the complaint." The Board also found that the employer would deploy the same defense to
27   both allegations.

28   //

22-60493.5562
ID 354908

1    The General Counsel can easily meet all three parts of the *Redd-I* test. First, the new

2  allegations employ the same legal theory as several other allegations in the Complaint:

3  interference with employees' Section 7 right to select the Union as their collective-bargaining

4  representative in violation of Section 8(a)(1) of the Act. As described above, the Board in *Seton*

5  found this sufficient to satisfy prong one. 332 NLRB 979, 983.

6    Second, the allegations related to the June 7, 2017 meeting are "part of a chain or

7  progression of events." *Carney*, 350 NLRB at 630. Tesla held the meeting with employees on

8  June 7, 2017 in direct reaction to employee protected concerted activity regarding safety issues

9  raised by employees. This protected activity is already the subject of numerous charges.

10    First, on February 10, Mr. Moran issued an online article discussing safety problems at

11  Tesla. He was subsequently interrogated about the article by Tesla, and he and other employees

12  were intimidated and harassed by Tesla security guards when they attempted to hand out his

13  article to co-workers entering and exiting the plant, as alleged in Charge No. 32-CA-200530 and

14  Complaint paragraphs 7(c) through (i).

15    Next, on April 5, 2017, Tesla attempted to prohibit Mr. Galescu and Mr. Ortiz from

16  discussing the OSHA Logs they lawfully requested, as alleged in Amended Charge No. 32-CA-

17  200530 and Complaint Paragraph 7(k). Then, on May 24, 2017, after their personal

18  representative, Worksafe, released a report based on the OSHA logs, Tesla interrogated and

19  harassed Mr. Galescu and Mr. Ortiz on the same day, as alleged in Charge No. 32-CA-200530

20  and Complaint paragraph 7(q). On the same day, employees who handed out flyers summarizing

21  the Worksafe report were harassed and intimidated by Tesla security guards, as alleged in Charge

22  No. 32-CA-200530 and Complaint Paragraphs 7(n) through (p).

23    On June 7, 2017 senior executives and employees, some of whom were the very

24  employees involved in the previous events, met to discuss the safety concerns raised through the

25  above-described protected concerted activity. The meeting was directly instigated by the

26  previous events and the subject of the meeting was how to appease the employees involved and

27  dissuade them from further action. This meeting can therefore only be interpreted as "part of a

28  chain or progression of events" with previous allegations that established prong two.

1    Further, the previous allegations and the allegations in the Amendment demonstrate

2  "similar conduct during the same time period with a similar object," an alternate formulation of

3  prong two. *Carney*, 350 NLRB at 630.  The statements of futility alleged in the Amendment

4  match similar alleged statements during the same time period that were meant to discourage union

5  activity: A Tesla security guard telling employee Michael Sanchez, "Unions are worthless, you

6  shouldn't join one" in February, 2017,  and a Quality Control Supervisor telling employee Mike

7  Williams, "the union is never going to get in here, this is Tesla," in September, 2017.  These

8  statements of futility match the allegations Amendment, satisfying prong two.

9    Finally, while not a required criteria, Tesla would raise the same defense to the allegations

10  in the Amendment as it would have to the previous allegations: that such conduct falls under

11  employer free speech rights protected by Section 8(c) of the Act.  As Tesla already had the

12  opportunity to raise this argument before the Board during the investigation phase, and likely did

13  so, and the Board nonetheless went forward with its complaint on those allegations, including this

14  allegation in the Complaint will not have a prejudicial effect.

15    Finally, additional relevant factors favor allowing the General Counsel to amend the

16  Complaint.  The General Counsel moved to amend the complaint before the hearing even began,

17  and the Respondent will have three months to investigate and prepare before the hearing resumes

18  on September 24, 2018.  See *Long Beach Mem'l Med. Ctr., Inc*. 366 NLRB No. 66, fn 12 (2018).

19  Further, the Respondent does not assert that it was denied sufficient time to prepare its defense or

20  otherwise suffered any prejudice.  *Id.*

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

III

## CONCLUSION

For all the reasons set forth above Charging Parties request that the motion of Tesla, Inc. to dismiss be denied.

DATED:  June 22, 2018  SCHWARTZ, STEINSAPIR, DOHRMANN
& SOMMERS LLP
MARGO A. FEINBERG
DANIEL E. CURRY
JULIE S. ALARCÓN

By _____
MARGO A. FEINBERG
Attorneys for Charging Parties Michael Sánchez,
Jonathan Galescu, Richard Ortiz, and International Union,
United Automobile, Aerospace and Agricultural Workers of
America, AFL-CIO

22-60493.5565

ID 354908

CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

1  PROOF OF SERVICE BY ELECTRONIC MAIL

2  **Case No. 32-CA-197020 et al.**

3
4       RENEE CARNES certifies as follows:

5       I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5202.

6
7       On June , 2018, I caused the foregoing document(s) described as:

8  **CHARGING PARTIES' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

9  be served by electronic mail upon the person(s) shown below,

Edris W.I. Rodriguez-Ritchie                   Noah J. Garber
10  National Labor Relations Board, Region 32     National Labor Relations Board, Region 32
1301 Clay Street, Suite 300N                   1301 Clay Street, Suite 300N
11  Oakland, CA 94612-5224                        Oakland, CA 94612-5224
e-mail: edris.rodriguezritchie@nlrb.gov        e-mail: noah.garber@nlrb.gov
12
Mark Ross, Esq.
13  Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 17
14  San Francisco, CA 94111-4158
e-mail: mross@sheppardmullin.com
15

16
   X  **BY E-MAIL:** By transmitting a copy of the above-described document(s) via e-mail to
17  the individual(s) set forth above at the e-mail addressed indicated.

18
     I declare under penalty of perjury under the laws of the State of California that the
19  foregoing is true and correct.

20       Executed on June 22, 2018, at Los Angeles, California.

21
22  RENEE CARNES

23
24
25
26
27
28

ID 353707

22-60493.5566

# EXHIBIT 5

22-60493.5567

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

| | |
|---|---|
| **TESLA, INC.** | Cases 32-CA-197020 |
| | 32-CA-197058 |
| **and** | 32-CA-197091 |
| | 32-CA-197197 |
| **MICHAEL SANCHEZ, an Individual** | 32-CA-200530 |
| | 32-CA-208614 |
| **and** | 32-CA-210879 |
| | |
| **JONATHAN GALESCU, an Individual** | |
| | |
| **and** | |
| | |
| **RICHARD ORTIZ, an Individual** | |
| | |
| **and** | |
| | |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE WORKERS OF AMERICA, AFL-CIO** | |

## CONSOLIDATED REPLY TO THE GENERAL COUNSEL'S AND THE CHARGING PARTIES' OPPOSITIONS TO RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

A Region lacks jurisdiction to originate complaints on its own initiative and in the absence of a supporting, timely-filed charge. The question presented by Tesla's Motion to Dismiss ("Motion") is therefore a simple one: are the allegations of the Region's Amendment to the Second Amended Complaint ("Amendment") regarding the events of a June 7, 2017 meeting supported by a timely-filed charge? To answer that question in the affirmative, the General Counsel has the burden of proving that the Amendment's allegations were, at a minimum, "closely related" to a charge filed by the Union within 6 months of that date.

22-60493.5568

Both the General Counsel and the Union bend over backwards to avoid giving the simplest answer to this simple question, i.e., that the Union filed any specific charge in response to the allegations asserted in the General Counsel's Amendment. They instead argue that the vague and generically plead 8(a)(1) language of no less than *six different charges*—and not even the same charges—somehow individually and cumulatively support the Amendment's allegations regarding a single meeting. They alternatively take the position that, because the Union has filed more than a dozen charges against Tesla during its two-year-long organizing campaign, statements made by Tesla's CEO Elon Musk during a June 7, 2017 meeting surely must "closely relate" to at least one of them.

Far from establishing that his jurisdiction exists, the General Counsel argues that an administrative law judge lacks the authority to test it. He unsurprisingly makes no attempt to explain why his July 7, 2017, November 21, 2017 and December 20, 2017 letters to Tesla which specifically enumerate *56 separate allegations* by the Union make no reference to Elon Musk or any June 7, 2017 meeting. Nor does he even try to explain why he did not ask Ms. Toledano a single question about any June 7, 2017 meeting when he took her affidavit on February 5, 2018. Nor does he even try to explain why he waited until the eve of trial to assert nearly year-old allegations against Tesla's high-level executives only days after Tesla petitioned to revoke its and the Union's overbroad and burdensome subpoenas seeking their electronic communications and testimony.

Most tellingly, the General Counsel does not address Tesla's contention that he amended the complaint on the eve of trial in an attempt to justify his and the Union's overly broad subpoena requests rather than agreeing to narrow them to the issues in dispute. He instead submits that, as the "caretaker of the public interest and specifically the public rights at issue as a

22-60493.5569

result of Respondent's violations of the Act," allowing the amendment is "compelled by the vindication of these public rights."  While the General Counsel's zeal as a caretaker of the public interest cannot be doubted, Tesla would gently remind him that employers also enjoy rights.  It is accordingly no less entitled to expect that he perform his duties within the limitations imposed upon him by Congress.  Because the General Counsel's opposition fails to establish that the Region has jurisdiction over the allegations of the Amendment, they should be dismissed.

### A.    Not Even the Union and the General Counsel Can Agree on Which Charges Support the Allegations of the Amendment.

The Union observes in its opposition that, per the Supreme Court's decision in *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959), the function of an unfair labor practice charge is not to give notice to the respondent of the exact nature of the charges against it.  Citing to the Board's holding in, among other cases, *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992), it further submits that "a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1)."  Union's Opp. at p. 1. The Union accordingly claims that the "objective truth is that each of the General Counsel's allegations raised it [sic] his Amendment were properly pled" in the charges and amended charges filed in Case Nos. 32-CA-200530 and 32-CA-208614.  Union's Opp. at pp. 1-3.  Yet the General Counsel contends that the allegations of his Amendment were also "encompassed" by the amended charges filed on July 28, 2017 in Case Nos. 32-CA-197020, 32-CA-197058, 32-CA-197091, and 32-CA-197197.  GC's Opp. at p. 2.

If, as the Union suggests, *Fant Milling* created some prophylactic authorization for Regions to issue Complaints on any putative Act violation newly discovered during investigations (untethered to any specific, underlying charge), the Board would never have developed the 1988 *Redd-I* "closely related" test.  In both *Fant Milling* and *National Licorice v.*

22-60493.5570

*NLRB,* 309 U.S. 350 (1940), the Supreme Court interpreted § 10(b)'s charge-filing requirement and affirmed the rule that the Board can prosecute allegations occurring after a party files a charge, but *only* those that "are *related to those alleged in the charge and which grow out of them*." *National Licorice*, 309 U.S. 369; *Fant Milling*, 360 U.S. at 308 ("What has been said is not to imply that the Board is, in the words of the Court of Appeals, to be left 'carte blanche' to expand the charge as they might please, or to ignore it altogether.  Here we hold only that the Board is not precluded from dealing adequately with unfair labor practices *which are related to those alleged in the charge and which grow out of them* while the proceeding is pending before the Board.") (emphasis added).

The Union's and the General Counsel's arguments to the effect that anywhere between four and six different charges somehow encompass the allegations of the Amendment belies any notion that they were at least "related to" and "gr[e]w out of" any one of them as required by the Supreme Court's holdings in *Fant Milling* and *National Licorice*.  To hold otherwise would essentially allow a union to initiate sweeping investigations of indefinite duration by the General Counsel into the employer-targets of its organizing efforts by filing general, nonspecific 8(a)(1) charges against them once every 6 months.  Relying on the Board's decision in *Embassy Suites Resort*, 309 NLRB 1313, 1314 (1992), the Union seeks sanction of such tactics by taking the position that at least one of the 23 generally-worded 8(a)(1) allegations of its four separate charges is sufficient to support the specific allegations of the Amendment seeks to sanction such tactics.

Fortunately, both the Board and the D.C. Circuit have since recognized that the Board's reasoning in *Embassy Suites* misapprehends the principles articulated by the Supreme Court in *Fant Milling* and *National Licorice*.  In *Lotus Suites v. NLRB*, 32 F.3d 558, 589-592 (1994), the

22-60493.5571

D.C. Circuit denied the Board's cross-petition for enforcement of its decision in *Embassy Suites* and set aside its order. The Court stated:

> [W]hen the Board issues a complaint, it does not have "carte blanche to expand the charge as [it may] please, or to ignore it altogether." Therefore, if in a complaint "the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge." . . . The complaint in this case cannot possibly meet the *Nickles Bakery* standard that "the complaint allegation be factually related to the allegation in the underlying charge" because the underlying charge alleges no facts. . . . What, pray, were the matters of concern to the Union? Why, any violations of § 8(a)(1) that the Board might turn up in its investigation. Nothing more specific appears in the charge, anyway. It hardly matters who filled in the blank space on the charge form if the box remains so lacking in content that it is not possible sensibly to apply the test of "substantial relation" between the factual allegations in the charge and those in the complaint. Indeed, if the Board's point were accepted, then a charging party could, in effect, cause the Board to do what the Congress prohibited it from doing, viz., embarking upon an unbounded inquiry into any and all possible violations of the Act.

> *Id* at 591-592.

The Board no longer relies on its decision in *Embassy Suites* or otherwise takes the position that "a charge alleging a violation of Section 8(a)(1) in general terms is sufficient to support a complaint alleging a particularized violation of Section 8(a)(1)." Rather, § 3-130 of the current edition of the Bench Book provides that a charge "is sufficient if it informs the alleged violator of the general nature of the violation charged against him and enables him to preserve the evidence relating to the matter." (citing *NLRB v. Louisiana Mfg. Co.*, 374 F.2d 696, 704–705 (8th Cir. 1967), quoting from *NLRB v. Raymond Pearson, Inc.*, 243 F.2d 456, 458 (5th Cir. 1957)). Suffice it to say that under no circumstances would either the Union's general 8(a)(1) "harassment," "interrogation," or "solicitation" charges or any of the General Counsel's related communications enable Tesla to preserve evidence related to a June 7, 2017 meeting conducted by CEO Elon Musk and Chief People Officer Gaby Toledano. To the contrary: by alleging that Tesla committed these acts "on or about" February 10, 2017, May 24, 2017, and

22-60493.5572

May 25, 2017, the absence of any reference June 7, 2017 in the initial charge in 32-CA-200530 would arguably *discourage* a charged party from preserving evidence relating to that date.

Thus, the General Counsel's and the Union's repeated references to multiple charges which generally allege "harassment," "interrogation," and/or "intimidation" in violation of 8(a)(1) are "so lacking in content" that they cannot possibly support the specific 8(a)(1) allegations of the Amendment. This rings particularly true given that the words "harassment," "interrogation," or "intimidation" *are not even included in the General Counsel's Amendment*.

### B. The General Counsel's Reliance on a "Course of Conduct Aimed at Precluding Union Activity" Argument to Establish the Second Prong of the "Closely Related" Test Ignores *Carney Hospital.*

Citing to *Marriot* Corp., 310 NLRB 1152, 1160 (1993) and *Jennie-O Foods*, 301 NLRB 305 (1991), the General Counsel broadly asserts that the Amendment allegations are somehow "closely related" to the allegations in "*all*" of the operative charges because they are part of Respondent's course of conduct aimed at precluding union activity". GC's Opp. at p. 4 (emphasis added). He then points to evidence adduced at the hearing in support of the allegations of the Second Amended Complaint as conclusively establishing that the amendment is "part-and-parcel of the same organizing campaign and with Respondent's unlawful anti-union conduct during the ongoing organizing campaign." *Id* at p. 5.

First, the General Counsel's attempt to establish that the allegations of the Region's Amendment are "closely related" to those of the Region's Second Amended Complaint—and not to those of any timely-filed charge—is a legal non-sequitur. If the sufficiency of the allegations of a Region's amendment were tested by their factual and legal relatedness to the allegations of the Region's underlying complaint, the charge filing requirement of § 10(b) and the Board's Rules and Regulations would be rendered a nullity.

22-60493.5573

Second, the General Counsel's argument cannot be reconciled with *Carney Hospital*, 350 NLRB 627, 627 (2007). There, the Board held that "the mere occurrence of the alleged violations during or in response to the same organizing campaign is insufficient to establish the close factual relationship required by Section 10(b)." Rather, the Board required some additional connection, either (1) "similar conduct, usually during the same time period with a similar object," or (2) "a causal nexus between the allegations *and* they are [(a)] part of a chain or progression of events, or [(b)] they are part of an overall plan to undermine union activity." *Id* at 630. (emphasis added). Applying this new limitation, the Board held that untimely 8(a)(1) job loss threat allegations and a timely charged suspension allegation did not involve similar conduct and were not part of a "chain or progression of events" where the supervisor that allegedly made the job loss threat was not involved in that employee's subsequent suspension. *Id.* Because there was no indication that the suspension and the alleged 8(a)(1) violations were anything more than separate actions carried out independently by several different Respondent officials, the Board also held that they were not "part of an organized plan to resist organization" even though they occurred in the midst of the same ongoing organizing campaign. *Id.*

Here, none of the Union's charges alleges—and the General Counsel makes no attempt to show—that Elon Musk or Gaby Toledano had any involvement whatsoever in Charging Party Ortiz' termination or Charging Party Moran's suspension. Nor does any one of the Union's charges allege that any of the Charging Parties were discriminated or retaliated by virtue of their participation in any June 7, 2017 meeting. Though the June 7, 2017 meeting alleged in the Amendment occurred in the midst of the same organizing campaign that formed the basis for the Union's timely filed charges, it is black letter law that "the mere occurrence of the alleged violations during or in response to the same organizing campaign is insufficient to establish the

22-60493.5574

close factual relationship required by Section 10(b)." *Carney Hospital*, 350 NLRB 627, 627

(2007). Thus, just as the Union's general 8(a)(1) charge allegations are insufficient to support

the specific 8(a)(1) allegations of the Amendment, the General Counsel's inability to show both

a causal nexus *and* either a chain or progression of events or an overall plan to undermine union

activity between any timely filed charge and the allegations of the Amendment precludes him

from establishing the second prong of the "closely related" test.

### C.    Neither the General Counsel or the Union Even Attempts to Explain the Unusual Circumstances Surrounding the Issuance of the Amendment.

In her June 8, 2018 Order on Tesla's petition to revoke the Union's subpoena *ad*

*testificandum* issued to Elon Musk, Administrative Law Judge Amita Tracy ("Judge Tracy")

wrote:

> I am concerned that there is no valid explanation from the General Counsel or the
> Charging Party as to why, at the eleventh hour on the eve of trial and after
> investigating a charge since 2017, the amended complaint was filed on June 4,
> 2018 adding facts which may or may not be admitted by the Respondent and
> which retains the current June 11, 2018 trial date.

Rather than attempting to address Judge Tracy's concerns by providing any valid

explanation, the General Counsel incredibly argues that "an administrative law judge is not

empowered with the authority[1] to withdraw a properly issued and noticed amendment to a

complaint issued prior to a hearing". GC's Opp. at p. 1. Likewise, the Union offers only that

"just because the Respondent doesn't like [the] timing of an Amendment doesn't mean it's

improper." Union's Opp. at p. 2. Tesla does not bring this Motion because it "does not like" the

timing of the General Counsel's Motion. Rather, under § 102.17 of the Board's Rules, the

---

[1] Moreover, § 102.35(a)(8) specifically provides that an administrative law judge has the
authority to rule on motions to dismiss complaints or portions thereof.

22-60493.5575

General Counsel could only amend the complaint prior to the start of the hearing "upon such terms as may be deemed just."

An explanation is accordingly warranted for why none of the initial letters sent to Tesla by the General Counsel regarding any of the charges filed by the Union makes any reference whatsoever to Elon Musk or any June 7, 2017 meeting. An explanation is additionally warranted for why the General Counsel never requested to take Mr. Musk's or Ms. Toledano's affidavits to obtain evidence as to whether they made unlawful statements during any June 7, 2017 meeting. An explanation is additionally warranted for why the General Counsel never asked Ms. Toledano any questions about any June 7, 2017 meeting when he took her affidavit in February 2018 regarding an unrelated charge. An explanation is additionally warranted for why, notwithstanding the clear instruction of section 10054 of the Casehandling Manual, the General Counsel did not disclose the general nature of the Amendment's 8(a)(1) allegations, the general locale, the identities of the supervisors involved, and the date of the conduct before issuing the Amendment. Finally, if the allegations of the Amendment were encompassed by and/or "closely related" to anywhere between four to six charges filed by the Union, an explanation is warranted for why the General Counsel's "investigation" into the allegations of the Amendment deviated in nearly every measurable respect from his investigation into the allegations of those same four to six charges.

Coupled with the suspicious circumstances surrounding the issuance of the Amendment, the General Counsel's and the Union's silence on this matter leads to the inevitable conclusion that the General Counsel amended the complaint to include otherwise untimely allegations against Elon Musk and Gaby Toledano solely to provide a foundation for his and the Union's overly broad subpoenas. Under this circumstances, it can hardly be argued that the General

22-60493.5576

Consel amended the complaint on the eve of trial "upon such terms as may be deemed just" as required by § 102.17 of the Board's Rules and Regulations.

**D.      Because the Amendment's Jurisdictional Defect Cannot be Cured, Ruling on Tesla's Motion Before the Resumption of the Hearing is Appropriate.**

The General Counsel puzzlingly argues that the Board's statement in *Carney Hospital* that "Section 10(b) operates as a jurisdictional limitation" does not in fact reflect the existence of a jurisdictional limitation.  GC's Opp. at 8.  He then proceeds to argue that, because Tesla has failed to establish any "prejudice" resulting from the Amendment, the "public interest" compels its allowance.  The jurisdictional limitations placed on his authority to issue complaints *sua sponte* and in the absence of any charge that is at least "closely related" to their corresponding allegations are not contingent upon Tesla's ability to show prejudice.  Even so, in light of the Union's extremely burdensome subpoena requests for ESI and testimony whose relevance hinges entirely upon Judge Tracy's ruling on the instant Motion, Tesla will be severely prejudiced should it be forced to comply with these otherwise invalid subpoenas and defend itself against jurisdictionally defective allegations.  Accordingly, Tesla respectfully requests that Judge Tracy decline to withhold ruling on its Motion to Dismiss and, for the reasons set forth in its Motion, dismiss all of the allegations of the Amendment.

22-60493.5577

Dated:  June 26, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____  for Keahn N. Morris

MARK S. ROSS
KEAHN N. MORRIS

Attorneys for
TESLA, INC.

22-60493.5578

1                               <u>CERTIFICATE OF SERVICE</u>

2         At the time of service, I was over 18 years of age and not a party to this action. I
am employed in the County of San Francisco, State of California. My business address is

3   Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

4   On June 26, 2018, I served a true copy of the following document(s) described as

5   **CONSOLIDATED REPLY TO THE GENERAL COUNSEL'S AND THE
CHARGING PARTIES' OPPOSITIONS TO RESPONDENT'S MOTION TO**

6   **DISMISS FOR LACK OF JURISDICTION**

7   on the interested parties in this action as follows:

8

    Edris W.I. Rodriguez Ritchie

9   Field Attorney, Region 32
    National Labor Relations Board

10   1301 Clay Street, Ste. 300N
    Oakland, CA 94612-5224

11   T: (510) 671-3041
    E-mail: edris.rodriguezritchie@nlrb.gov

12

    Noah J. Garber

13   Field Attorney, Region 32
    National Labor Relations Board

14   1301 Clay Street, Suite 300N
    Oakland, California 94612

15   T: (510) 671-3021
    E-mail: noah.garber@nlrb.gov

16

    Margo Feinberg

17   E-mail: margo@ssdslaw.com
    Daniel E. Curry

18   E-mail: dec@ssdslaw.com
    Julie Alarcon

19   E-mail: jsa@ssdslaw.com
    Schwartz, Steinsapir, Dohrmann & Sommers, LLP

20   6300 Wilshire Blvd., Suite 2000
    Los Angeles, CA 90048

21   T: (323) 655-4700

22   Administrative Law Judge Amita Tracy
    Amita.Tracy@nlrb.gov

23   National Labor Relations Board
    Division of Judges

24   901 Market St., Suite 300
    San Francisco, CA 94103

25   T: (415) 356-5255

26

27

28

SMRH:486735039.1                -1-                      CERTIFICATE OF SERVICE
                                                        CASE NO. 32-CA-197020 et al.

1

2    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for
3    collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the
4    same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope
5    with postage fully prepaid. I am a resident or employed in the county where the mailing occurred.

6

7    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address dmcgahey@sheppardmullin.com to the
8    person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was
     unsuccessful.

9

10   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of
     the bar of this Court at whose direction the service was made.

11

     Executed on June 26, 2018, at San Francisco, California.
12

13

14                                                      Ryan Brust

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 6

22-60493.5581

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MARK S. ROSS, Cal. Bar No. 64812
KEAHN N. MORRIS, Cal. Bar No. 273013
Four Embarcadero Center, Suite 1700
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947

Attorneys for TESLA, INC.

<div align="center">

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

</div>

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case No. 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case No. 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case No. 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case No. 32-CA-197197<br>Case No. 32-CA-200530<br>Case No. 32-CA-208614<br>Case No. 32-CA-210879 |

<div align="center">

**RESPONDENT'S PETITION TO REVOKE SUBPOENA *DUCES TECUM* B-1-118CRIT ISSUED TO CUSTODIAN OF RECORDS AT TESLA, INC.**

</div>

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL BACKGROUND ................................................................... 1

        A.      The Regional Director Issued the Consolidated and Amended Consolidated
                Complaints on August 31, 2017 and September 1, 2017 .......................................... 2

        B.      The Second Amended Consolidated Complaint issued by the Regional Director
                on March 30, 2018 omits several important allegations asserted in the Amended
                Consolidated Complaint. ......................................................................................... 3

        C.      Respondent Attempts to Meet and Confer With Counsel for the General Counsel
                Over the Subpoena's Objectionable Instructions and Requests ................................ 5

III.    ARGUMENT ................................................................................................... 9

        A.      Legal Standard ............................................................................................. 9

IV.     GENERAL OBJECTIONS AND RESPONSES ............................................. 11

V.      SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS ............... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

NLRB AND FEDERAL CASES

*Arco Constr. Group*, 22-CA-072747, unpub. Board order issued Apr. 4, 2012
(2012 NLRB LEXIS 174) ...................................................................................14

*Brinks, Inc.*
281 NLRB 468 (1986)...........................................................................9, 11, 13

*Burns International Security Services, Inc.*
278 NLRB 565 (1986).........................................................................................18

*CNN America*
352 NLRB 675 (2008).........................................................................................10

*Kaiser Aluminum & Chemical Corp.*
339 NLRB 829 (2003).........................................................................................15

*Lindsay v. Fuyao Glass Am. Inc.*
3:16-MC-00007, 2017 WL 1276728, at *2 (S.D. Ohio Apr. 6, 2017), report and
recommendation adopted, 3:16-MC-7, 2018 WL 1166628 (S.D. Ohio Mar. 5, 2018)..............46

*Mailhoit v. Home Depot, U.S.A, Inc.*
285 F.R.D. 566 (C.D. Cal. 2012) .....................................................................11

*Millsboro Nursing Home & Rehabilitation Center, Inc.*
327 NLRB 879 (1999).........................................................................................18

*NLRB v. Interstate Dress Carriers*
610 F.2d 99 (3d Cir. 1979)...................................................................................9

*NLRB v. Jackson Hospital*
257 F.R.D. 302 (D.D.C. 2009) ...........................................................................13

*NLRB v. Pinkerton, Inc.*
621 F.2d 1322 (6th Cir. 1980).............................................................................9

*NLRB v. Trades Council*
131 LRRM 3132 (3d Cir. 1989).....................................................................11, 12

*Oklahoma Press Pub. Co. v. Walling*
327 U.S. 186 (1946)........................................................................................11, 12

*Patrick Cudahy, Inc.*
288 NLRB 968 (1988).........................................................................................15

*Professional Electrical Contractors*, 34-CA-067376, unpub. Board order issued
Apr. 18, 2012 (2012 WL 1357569)....................................................................13

22-60493.5584

*Queen of the Valley Medical Center*, 20-CA-191739, JD-15-18
(February 28, 2018) (2018 WL 1110298) ..................................................................10

*Starbucks Coffee Co.,* 1–CA–177856, unpub. Board order issued May 19, 2017
(2017 WL 2241023) ........................................................................................15

*Taylor Farms Pacific*, 32–CA–116854, unpub. Board order issued Feb. 6, 2015
(2015 WL 514108) ....................................................................................50, 57

*Tiffany (NJ) LLC v. Qi Andrew*
276 F.R.D. 143 (S.D.N.Y. 2011) .....................................................................12

*U.S. v. Petroleum and Industrial Workers*
870 F.2d 1450 (9th Cir. 1989) .......................................................................12

## FEDERAL RULES, REGULATIONS & CONSTITUTIONAL PROVISIONS

29 Code of Federal Regulations
§ 102.31(b) ..........................................................................................1, 9, 15
§ 102.66(c) ...................................................................................... *passim*

Federal Rules of Civil Procedure
26(b) ...................................................................................................9, 12
26(b)(1) .........................................................................................9, 10, 18
26(b)(2)(B) ..............................................................................................10
26(b)(2)(C) ..............................................................................................10
26(b)(2)(C)(iii) .........................................................................................10
26(g) ........................................................................................................12
34(b)(1)(A) ..............................................................................................11

U.S. Constitution, Fourth Amendment ..........................................................13

## OTHER AUTHORITIES

*The Sedona Principles: Best Practices, Recommendations & Principles for
Addressing Electronic Document Production,* Second Edition (June 2007),
available at https://thesedonaconference.org/publications ...........................10, 12, 23

22-60493.5585

I.     **INTRODUCTION**

Pursuant to section 102.31(b) of the Rules and Regulations of the National Labor Relations Board ("NLRB" or the "Board"), Tesla, Inc. ("Respondent" or "Tesla") hereby petitions that Subpoena *Duces Tecum* B-1-118CRIT ("Subpoena"), which was issued to the custodian of records of Respondent, and requested by Edris W.I. Rodriguez Ritchie, Counsel for General Counsel, and Noah Garber, Counsel for the General Counsel of the National Labor Relations Board ("Counsel"), and a copy of which is attached hereto as **Exhibit A**, be revoked to the extent that it: (1) seeks information that is not relevant to the subject matter involved in the pending action; (2) does not describe the documents sought with sufficient particularity; (3) is overbroad, unduly burdensome, oppressive, and harassing; (4) is vague and ambiguous; (5) seeks information that is protected from disclosure by the attorney-client and/or the attorney work-product doctrine; (6) seeks private information of individuals in violation of those individuals' constitutional, statutory and/or common law rights of privacy; (7) seeks the disclosure of trade secrets and proprietary business information; (8) and seeks confidential security information.  Respondent requests that the Judge reserve ruling on Respondent's Petition to Revoke until the opening of the hearing on June 11, 2018 to allow Respondent an opportunity to provide oral argument in support of why the Petition to Revoke should be granted.

II.    **PROCEDURAL BACKGROUND**

The NLRB issued the Subpoena in connection with the above-captioned unfair labor practice charges filed by the International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO ("UAW", "Union"), Michael Sanchez ("Sanchez"), Jonathan Galescu ("Galescu"), and Richard Ortiz ("Ortiz") (collectively, "Charging Parties").  A party upon whom a subpoena has been served may, within five business days of receipt of the subpoena, petition to revoke the subpoena Respondent.  29 C.F.R. § 102.31(b).  Because the NLRB served Tesla with the Subpoena on May 24, 2018, this Petition is timely.

**A.  The Regional Director Issued the Consolidated and Amended Consolidated Complaints on August 31, 2017 and September 1, 2017**

Sanchez filed the initial charge in Case 32-CA-197020 on April 17, 2017 and thereafter filed an amended charge on July 28, 2017.  Galescu filed the initial charge in Case 32-CA-197058 on April 17, 2017 and thereafter filed an amended charge on July 28, 2017.  Ortiz filed the initial charge on April 17, 2017 and thereafter filed an amended charge on July 28, 2017.  The Union filed the initial charge in Case 32-CA-197197 on April 19, 2017 and thereafter filed an amended charge on July 28, 2017.  The Regional Director consolidated these cases and issued the Consolidated Complaint on August 31, 2017.  She then issued the Amended Consolidated Complaint the following day, a copy of which is attached hereto as **Exhibit B**.[1]

The Amended Consolidated Complaint contained the following general allegations:

7(a)    Since at least late October 2016, Respondent maintained rules in its Confidentiality Agreement relating to (i) the sharing of non-public, work-related information; (ii) communications with the media; (iii) discussing confidential information with anyone outside of Tesla without written approval; (iv) taking photos/videos inside Tesla's facilities; (v) forwarding emails outside of Tesla or to a personal email account; (vi) social media use; and (vii) consequences for violating the confidentiality agreement;

7(b)    In about late October 2016 or early November 2016, HR Business Partner David Zweig prohibited an employee from taking a picture of the Confidentiality Agreement;

7(c)-(i)  On February 10, 2017, Respondent's unidentified supervisors and security guards instructed off-duty employees engaged in leafleting and picketing activities to leave Respondent's premises;

7(j) On March 23, 2017, Respondent's supervisor Armando Rodriguez told employees during a pre-shift meeting that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent;

---

[1] Paragraph 3 of the Consolidated Complaint alleged that Tesla is a "health care institution within the meaning of Section 2(14) of the Act."  This allegation was omitted from the Amended Consolidated Complaint filed the following day.

7(k)-(l) On April 5, 2017 and April 28, 2017, Respondent's supervisors David Zweig and Seth Woody attempted to prohibit an employee from discussing safety concerns with other employees and/or the Union;

7(m)-(o) On May 24, 2017, Respondent's unidentified security guards asked leafleting employees for their badges, told them that they could not hand out flyers on Tesla's premises, and instructed off-duty employees to leave the premises; and

7(p) On May 24, 2017, Respondent's HR Business Partner Lisa Lispon interrogated an employee about the employee's Union and/or protected concerted activities in the presence of Environmental Health Safety and Sustainability Specialist Lauren Holcomb.

The Amended Consolidated Complaint alleged that, by engaging in the conduct described in the preceding paragraphs, Respondent "has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act."

**B.    The Second Amended Consolidated Complaint issued by the Regional Director on March 30, 2018 omits several Important Allegations Asserted In the Amended Consolidated Complaint**

The Union filed the initial charge in Case 32-CA-208614 on October 25, 2017 and thereafter filed an amended charge on March 12, 2018. The Union also filed the initial charge in Case 32-CA-210879 on December 1, 2017 and thereafter filed an amended charge on December 6, 2017. The Regional Counsel consolidated these cases and issued the operative Second Amended Consolidated Complaint on March 30, 2018 (the "Complaint"), a copy of which is attached hereto as **Exhibit C**.

Several key allegations that appeared in the Amended Consolidated Complaint were not included in the operative Complaint. The Regional Director did not include the allegation regarding the prohibition against taking photos inside of Tesla's facilities that appeared in paragraph 7(a)(iv) of the Amended Consolidated Complaint. Nor did she include the allegation regarding the prohibition against forwarding work emails outside of Tesla or to a personal email account that appeared in paragraph 7(a)(v) of the Amended Consolidated Complaint.

The Complaint did however include several new allegations.  Specifically:

7(l) Since about April 25, 2017, Tesla maintained a rule at its Fremont facility requiring that Production Associates wear assigned "team wear," which could be substituted with all black clothing "on occasion" so long as the clothing is mutilation free, work appropriate, and poses no safety risks;

7(r-w) In the Spring of 2017, Respondent's supervisors threatened employees for wearing clothing bearing Union insignia and disparately enforced its team wear policy;  "Arnold (Last Name Unknown)" impliedly threatened an employee with unspecific reprisals for wearing a hat with Union insignia;

7(s)  Supervisor Homer Hunt informed employees that it would be futile for them to select the Union as their bargaining representative;

7(t) In August or September 2017, an unknown supervisor told employees they could not wear shirts with Union insignia, and supervisor Tope Ogunniyi attempted to selectively enforce the team wear rule by prohibiting shirts with Union insignia; and

8(a-e) In September and October 2017, Respondent's supervisor Ricky Gecewich interrogated employees about protected concerted activities related to a Facebook posting, promulgated/disparately enforced a rule prohibiting employees from accessing its internal WorkDay system for non-business purposes, and disciplined Charging Party Moran and Charging Party Ortiz for engaging in protected concerted activities and/or for supporting and assisting the Union.

By engaging in the conduct described in the preceding paragraphs, the Complaint alleges that Respondent "has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.  The Complaint also alleges that, by engaging in the conduct described in paragraphs 8(b)(iii), 8(c) and 8(d), Respondent has been "discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act."

**C.      Respondent Attempts to Meet and Confer With Counsel for the General Counsel Over the Subpoena's Objectionable Instructions and Requests**

In April 2018, following issuance of the Second Amended Complaint, Counsel for Tesla asked the Region to serve and send courtesy copies of the subpoena duces tecum it intended to serve on Tesla as soon as possible.  Counsel for the General Counsel's response was words to the effect of "we will serve the subpoena when we want to."  Consistent with this representation, Counsel for the General Counsel waited until May 24, 2018 to serve the Subpoena.

On May 24, 2018 and May 25, 2018, Counsel for Tesla met and conferred with Counsel for the General Counsel via teleconference in an attempt to resolve a number of issues regarding the Subpoena's objectionable instructions and requests.  For example, the Subpoena has 29 separate instructions and definitions which, read together, require the Respondent to conduct expansive ESI searches and submit interrogatory-type responses regarding its document search and retrieval methods to comply with 48 of the Subpoena's 55 requests that seek "documents." During the teleconferences on May 24, 2018 and May 25, 2018 Counsel for Tesla requested that the Region agree to keywords and specific custodians for use in searching ESI to narrow the field of potentially responsive documents given the extreme breadth of the subpoena and the limited time frame for a response.

On May 29, 2018, Counsel for the General Counsel provided suggested search terms for over 30 different subpoena requests.  Counsel for the General Counsel's search terms are attached hereto as **Exhibit D**.  Counsel for the General Counsel, however, refused to identify custodians or limit the time frame of the requests (some of which spanned approximately 28 months and were outside the 10(b) period).  Unfortunately, many of the search terms were so overbroad as to make a reasonable and efficient search for responsive information and documents impracticable. ***The unmodified and generic terms provided greatly enlarged the potential review population – already too burdensome - without doing anything to identify documents that might be responsive to the subpoena.***  By way of example, the following demonstrate the unreasonableness of Counsel for the General Counsel's position:

- The requested keywords: *employee* (No. 28); *employees* (No. 28); ID (No. 20); identification (No. 20); badge (No. 20); *car* (No. 20); and *automobile* (No. 20) are terms used daily throughout any business to describe its workers - *particularly a company in the business of designing and manufacturing cars and automobiles*. None of these terms identify any information related to the wrongdoing alleged in the Complaint.

- The requested keywords: parking (No. 14); parking lot (Nos. 7-8, 14, 18-19), entrance (Nos. 7-8, 18-19) are basic, non-descriptive terms describing virtually any business' facility that has room for cars to park, but would likely identify numerous irrelevant documents, such as new hire information or communications with vendors or someone planning a grand entrance for an event.

- The requested keywords: discuss (No. 11); discussing (No. 11); discussion (No. 28); talk (No. 28); talked (No. 28); verbal (Nos. 40 and 43, 41, 42); written (Nos. 40 and 43, 41, 42); and meeting (Nos. 23-24, 28) are ubiquitous terms that are part of everyday business conduct and communication and which would appear in most communications but are in no way particularized to help identify potentially responsive documents.

- The requested keywords: damage (Nos. 20, 23-24); property (Nos. 23-24); post (No. 42); injury (No. 20); harm (No. 20); scratch (No. 20); Facebook (Nos. 47-8, 9-10, 31 and 34, 32, 33, 37-39, 42); and blog (Nos. 31 and 34, 32, 33, 37-39, 42); and black (No. 20) are too broad and non-specific to identify any relevant documents but will only serve to unreasonably increase the pool of potentially responsive documents. Nothing limits the type of damage or tear or harm or indicates what is being damaged or torn or harmed. And how many black cars Tesla produces is not relevant here.

- The requested keywords: access (No. 14); interview (No. 15); interviews (No. 15); investigation (Nos. 15, 18-19, 31 and 34, 33, 37-39, 40 and 43, 41); investigations (Nos. 15, 18-19, 31 and 34, 33, 37-39, 40 and 43, 41); complaints (Nos. 18-19, 30); concerns (No. 30); issues (No. 30); assistant (Nos. 18-19); assistance (No. 15), harass (Nos. 18-19); and harassment (Nos. 18-19) have the same problems mentioned above. In addition, these

terms would implicate privacy concerns for potential inclusion of personnel files of employees unrelated to any conduct alleged in the Complaint.

- The requested keywords:  confidential (Nos. 2, 6); confidentiality (Nos. 2, 6, 9-10); confidential information (Nos. 2, 6); are not particularized enough to pinpoint or narrow the field of potentially responsive documents in an emerging technology company where confidentiality is inextricably entwined with proprietary business information and trade secrets.

The overbreadth of the keywords is apparent from simply examining them.  But to attempt to translate that into what would happen if the keywords were utilized, Counsel for Tesla conducted a few sample searches using a few of the keywords.  The sample search results confirmed that a massive number of documents would be generated.

The keyword searches were performed on the emails of three custodians.  The keywords searched were:  meeting; confidential; and employee.  The keyword search for meeting returned a total of 80,501 emails from the three custodians.  The keyword search for confidential returned  a total of 74,296 emails.  The keyword search for employee returned a total of 62,838 emails, again from just three custodians.  Looking at just three keywords, and searches performed for just three custodians, the total number of emails returned was 217,635.  Importantly, this number – while quite large – does not represent the total number of emails that would be returned for the entire subpoena (using Counsel for the General Counsel's keywords).  It can't do that because only 3 keywords were searched.  ***Counsel for the General Counsel provided a total of 149 keywords – almost 50 times the number of keywords used for the sample search which returned over 200,000 emails.***  If we just take the keyword search for employee, which returned the smallest number of emails (62,838) and we multiply that expected result times the number of provided keywords (149), ***the estimated number of emails that would be returned is a staggering 9,362,862***.  ***Even though that estimate reflects searches performed for three custodians, as discussed above, Counsel of the General Counsel refuses to limit the number of custodians to be searched.  When you begin to extrapolate these figures over multiple custodians, the total number of emails is unfathomable.***

For a more concrete example, we can use Request No. 8, which in pertinent part asks for:

> [D]ocuments reflecting all internal company communications from January 1, 2016 to the present that contain the words "union", "Union", "union organizing", "Union organizing", "organizing campaign", "organizing activities", "leafleting", "union shirts", "unionizing", "Unionizing", "worksafe", "CalOSHA 300 logs", "workday use", and "Workday use" sent or received by Elon Musk, Mark Lipscomb, Emma Cruz, Liza Lipscomb, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tope Ogunniyi, Victor Facha, Time Fenelon, Homer Hunt, Armando Rodriguez, Dave Teston, any security guard or individual providing security services, Lauren Holcomb, or Ricky Gecewich.

The request identifies 14 terms in quotation marks and seeks all "documents" containing any of those 14 terms, that were sent or received by 16 named individuals. Treating the 14 terms in quotation marks as keywords, that means conservatively that there are 4 times more keywords than the 3 keywords used in our sample. That would mean that at least 870,540 emails would be returned by a search for these 14 terms in quotation marks (multiplying the 217,635 emails by 4). The number is at least 870,540 emails, because the sample searches were performed for just 3 custodians and here there are 16 named individuals – more than 5 times that amount.

But even the nearly one million emails estimated based on the wording of Request No. 8 is not accurate because when Counsel for the General Counsel provided keywords for Request No. 8, they were not the 14 terms in quotation marks. Instead, Counsel for the General Counsel provided 37 keywords. That's slightly less than three times as many search terms. *If we simply double the number of keywords, that would mean that the conservative estimate of 870,540 emails would now become 1,741,080 emails. That raises the potential review pool to almost 2 million emails for just this one request. And again, this does not reflect that there would be at least 5 times the number of custodians implicated in Request No. 8, compared to the number of custodians utilized in the sample search.* The keywords provided by Counsel for the General Counsel plainly do not assist in identifying potentially responsive documents nor are they tailored to help pinpoint the documents that the subpoena actually seeks. In fact, they demonstrate that the subpoena is impracticable to comply with and unreasonably burdensome.

Unfortunately, the parties were unable to reach an agreement regarding most of the issues regarding the Subpoena and thus Respondent was compelled to file this Petition to Revoke in

order to preserve its objections to the Subpoena.  Respondent remains ready and willing to meet and confer further with the Board Agent regarding the outstanding issues in order to avoid the Board having to rule on this Petition to Revoke.

## III.    ARGUMENT

### A.    Legal Standard

Where a timely petition to revoke is filed, the subpoena must be revoked if it calls for irrelevant information or is "otherwise invalid" as follows:

> The regional director or the hearing officer, as the case may be, ***shall*** revoke the subpoena if, in his opinion, the evidence whose production is required does not relate to any matter under investigation or in question in the proceedings or the subpoena does not describe with sufficient particularity the evidence whose production is required....
>
> 29 C.F.R. § 102.31(b) (emphasis added).

Section 102.66(c) mandates that documents sought by a subpoena duces tecum in a NLRB proceeding be relevant to the issues raised in that proceeding.  *See NLRB v. Interstate Dress Carriers*, 610 F.2d 99, 111 (3d Cir. 1979); ULP Casehandling Manual ¶ 11792.1 (noting that the requested information must "relate[ ] to any matter under investigation or in question"); *Id*. at ¶ 11794 (citing federal authorities for the proposition that the requested material must "touch[ ] a matter under investigation").  The party requesting the documents has the burden of establishing that the documents requested are relevant.  *See NLRB v. Pinkerton, Inc*., 621 F.2d 1322, 1326 (6th Cir. 1980).  To satisfy its burden, the requesting party must provide evidence supporting its claim of relevancy.  *Id*.  Under Section 102.31(b), if the requesting party fails to demonstrate that the information requested is relevant, the subpoena must be revoked.

Further, a petition to revoke a subpoena *duces tecum* must be granted if the subpoena is invalid for "any . . . reason sufficient in law."  29 CFR § 102.66(c).  This phrase has been interpreted to encompass reasons provided by the Federal Rules of Civil Procedure. *See, e.g., Brinks, Inc.*, 281 NLRB 468, 468-69 (1986).  The Board looks specifically to FRCP 26(b) for guidance with respect to the validity of subpoenas.  *Id*.  Rule 26(b)(1) provides the applicable scope for discovery.  It permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues

at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Further, for requests seeking to discovery ESI, FRCP 26(b)(2)(B) provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).

FRCP 26(b)(2)(C) states that, on a party's motion or on its own, a court "must" limit the frequency or extent of discovery if: (i) the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," . . . or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)" [which, as discussed above, sets forth a balancing test]. In *CNN America*, 352 NLRB 675, 676 (2008), the Board indicated that, if the subpoenaed party makes a "plausible argument" that production of certain types of information in electronic form would be disruptive of its business operations, then the judge should "strike a balance between the competing interests of the parties in the relevancy and necessity of the information and the potential cost and burdensomeness of its production in the form requested." The Board indicated that, in performing the analysis, the judge should apply the Federal Rules of Civil Procedure and the factors set forth in *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Second Edition (June 2007), available at https://thesedonaconference.org/publications (the "*Sedona Principles*").[2]

Further, any request that is vague and ambiguous, overbroad, or irrelevant should be revoked. The requesting party may request relevant documents in the responding party's control, so

---

[2] The Third Edition of *The Sedona Principles* thoroughly discusses the proper application of the proportionality factors as set forth in the December 1, 2015 amendments to FRCP 26(b)(1) and 26(b)(2)(C)(iii). *See The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1 (2018). The recent editions provide valuable guidance to judges administering the discovery of ESI. *See, e.g., Queen of the Valley Medical Center*, 20-CA-191739, JD-15-18 (February 28, 2018) (2018 WL 1110298).

long as the request describes the desired items with "reasonable particularity." *Mailhoit v. Home Depot, U.S.A, Inc.*, 285 F.R.D. 566, 569 (C.D. Cal. 2012). Broadly stated demands do not describe with sufficient particularity so that a reasonable person would know what is expected to produce under Fed.R.Civ. Pro. 34(b)(1)(A). *Id.* Subpoenas must be carefully drafted; the Board does not allow the counsel to engage in a "fishing expedition." *See* ULP Casehandling Manual ¶ 11796. Indeed, "a subpoena duces tecum…should be drafted as narrowly and specifically as is practicable." *See id*. at ¶ 11776. Thus, the request must "describe with sufficient particularity the evidence whose production is required" and that evidence must be relevant to an issue in the case, and tailored to the individuals, time period, and action at issue. Rules and Regulations § 102.66(c); *see also* ULP Casehandling ¶¶ 11776, 11782, 11796; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946*); NLRB v. Trades Council*, 131 LRRM 3132, 3133-34 (3d Cir. 1989); *Brink's*, *supra*, 281 NLRB at 468-69.

The Subpoena issued in the instant case is legally invalid in several respects, and for all of those reasons, it must be partially revoked.

## IV.    GENERAL OBJECTIONS AND RESPONSES

Respondent makes the following General Objections to each document request, each of which is incorporated into each Specific Objection as if set forth there in full. Respondent's General Objections are as follows:

1.    Respondent objects to the return date of June 11, 2018. This Subpoena was served on May 24, 2018, giving Respondent insufficient amount of notice and time to satisfy a June 11, 2018 return date given the breadth and scope of the Subpoena as currently drafted. Further, Counsel for General Counsel rejected Respondent's counsel request to provide courtesy copies of its subpoena so that Respondent could begin gathering relevant documents.

2.    Respondent objects to paragraph a. of the "Instructions", which defines the term "Document". The Region's definition is so confusing, overbroad, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents and renders literal and complete compliance impracticable. By defining "document" to mean "any existing printed, typewritten or otherwise recorded material of whatever character,

records stored on computer or electronically, …, including without limitation, …, computer hard drives, discs and/or files and all data contained therein, computer printouts, E-mail communications and records," its use throughout the Subpoena obligates the employer to conduct sweeping ESI searches from every electronic file that might potentially contain information responsive to ***48 separate requests***.  In its commentary to Principle 4 ("[d]iscovery requests for electronically stored information should be as clear[3] as possible"), the Sedona Conference advised that discovery requests seeking ESI should "go beyond boilerplate definitions seeking all email, databases, word processing files, or whatever other electronically stored information the requesting party can generally describe." *The Sedona Principles, Second Edition*, Cmt. 4.a., 25 (2007).  The Subpoena's definition for the term "Document" and its incorporation into 48 of the Subpoena's requests is accordingly objectionable to the extent that it fails to "describe with sufficient particularity the evidence whose production is required" as required by Section 102.66(c) of the Board's Rules and Regulations.  The definition is additionally objectionable to the extent it seeks documents in the possession or control of any "other person acting in cooperation with, in concert with or on behalf of the subpoenaed party."  The subpoenaing party has the burden of establishing that respondent's control over the requested documents.  *See, e.g., U.S. v. Petroleum and Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989); and *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011)(citing cases).

3. Respondent objects to paragraph g. of the "Instructions" insofar as it defines the "Period covered by this subpoena" and "the relevant period of time" as "the period from October 18, 2016, through the present".  Each request of a subpoena must "describe with sufficient particularity the evidence whose production is required" and that evidence must be relevant to an issue in the case, and tailored to the individuals, time period, and action at issue.  Rules and Regulations § 102.66(c); *see also* ULP Casehandling Manual ¶¶ 11776, 11782, 11796; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946); *NLRB v. Trades Council*, 131 LRRM 3132, 3133-

---

[3] In the Third Edition, the word "clear" was replaced with the word "specific" to "reflect recent case law better, including more frequent invocation of Rule 26(g)." *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, 37-38 (2018).  The change also "better conforms with the 2015 amendments to Rule 26(b) on the scope of discovery." *Id.*

34 (3d Cir. 1989); *Brinks, Inc.,* 281 NLRB 468, 468-69 (1986). The Subpoena's requests which incorporate these terms seek documents created months—if not years— before and after the occurrence of the acts forming the basis for the applicable allegations of the Complaint are accordingly objectionable for lack of sufficient particularity.

4.      Respondent objects to the "Instructions." These instructions are unduly burdensome and punitive and so overbroad as to make Tesla's literal and complete compliance impracticable. See for example, paragraphs i., m., o., t., w., v., z, aa., and bb.

5.      Respondent objects to paragraph m. of the "Instructions" insofar as the instruction calls for Respondent to compel its supervisors to surrender control of their personal devices and to grant access to their personal social media and to submit the same to a search. Said instruction is an undue violation of the supervisors' privacy and of the Fourth Amendment to the U.S. Constitution.

6.      Respondent objects to paragraph t. of the "Instructions" insofar as it calls on Respondent to produce documents in the physical possession, custody, or control of "former supervisors, agents, attorneys, accountants, advisors, investigators, and any other persons and companies directly or indirectly employed by, or connected with you." *See Professional Electrical Contractors*, 34-CA-067376, unpub. Board order issued Apr. 18, 2012 (2012 WL 1357569) ("…we limit this definition to those documents in the Employer's present possession, custody or control").

7.      Respondent objects to paragraph v. of the "Instructions" insofar as it calls for the production of a privilege log for responsive documents created after the Charging Party filed the most recent at-issue charge on March 12, 2018. Documents created by and at the direction of counsel after this date are "so clearly likely to be work product that it need not even be logged on a privilege log." *See NLRB v. Jackson Hospital*, 257 F.R.D. 302, 308 (D.D.C. 2009). This instruction is accordingly unduly burdensome and objectionable on that basis.

8.      Respondent objects to paragraph w. of the "Instructions" stating that "labels referring to that subpoena paragraph should be affixed to each document or set of documents." The vast majority of documents to be produced will be responsive to several different requests.

Because the Subpoena makes no distinction between "documents" and "sets of documents," the Employer would be required to somehow affix labels identifying the corresponding requests to every document it produces. Instruction w. is accordingly objectionable to the extent that it is unduly burdensome as literal compliance is extremely impracticable if not impossible. The instruction should accordingly be stricken in its entirety. *See Arco Constr. Group*, 22-CA-072747, unpub. Board order issued Apr. 4, 2012 (2012 NLRB LEXIS 174) ("Petition to revoke subpoena duces tecum B-612392 is granted with respect to Paragraph 5, which requires that the Employer provide '[a] list specifying what documents are being produced pursuant to each paragraph above.'")

9.      Respondent objects to paragraph z. of the "Instructions" which, for responsive documents no longer in its possession, custody or control, requires Respondent to provide the "date, author, subject, recipients and intended recipients," "explain the circumstances by which the document ceased to be in your possession, custody or control, and identify (stating the person's name, employer title, business address and telephone number, and home address and telephone number) all persons known or believed to have the document or a copy thereof in their possession, custody or control." There is no legal basis by which Respondent can be compelled to provide written discovery-type responses regarding documents no longer in its possession, custody or control. Instruction z. is accordingly objectionable as invalid for "any . . . reason sufficient in law." 29 CFR § 102.66(c).

10.      Respondent objects to paragraph aa. of the "Instructions" which, for responsive documents that were "destroyed, discarded, or otherwise disposed of for whatever reasons," requires Respondent to "identify the document (stating its date, author, addressee(s), recipients and intended recipients, title and subject matter); explain the circumstances surrounding the destruction, discarding or disposal of the documents, including the timing of the destruction, discharging or disposal of the document, and identify all persons known or believed to have the document or a copy thereof in their possession, custody or control." There is no legal basis by which Respondent can be compelled to provide written discovery-type responses regarding

documents no longer in its possession, custody or control.  Instruction z. is accordingly

objectionable as invalid for "any . . . reason sufficient in law."  29 CFR § 102.66(c).

11.     Respondent objects to paragraph bb. of the "Instructions" which requires

Respondent to "[p]rovide the following information regarding production of subpoenaed emails:

> a. Whose email was searched; b. What email was searched; c. For each custodian's
> mailbox, what folders, archives and document management systems were
> searched; d. Indicate whether the search included both email stored on the
> Employer's server for its company email system, and email stored in personal
> folders and archives on individual computers; e. Indicate whether the search
> include email hosted on third-party service providers such as Google or Yahoo,
> including both company and personal accounts used by custodians for work-
> related communications; f. How the search was conducted; g. Who conducted the
> searches, and what search software and/or search terms were used to locate emails.

Instruction bb. is objectionable to the extent that it seeks information that does not relate to

any matter "under investigation" or "in question in [the] proceedings" as required by Section

102.31(b) of the Board's Rules and Regulations.  *See Starbucks Coffee Co.,* 1–CA–177856,

unpub. Board order issued May 19, 2017 (2017 WL 2241023) (Chairman Miscimarra, dissenting

in part).  Instruction bb. is additionally objectionable as unduly burdensome to the extent that it

obligates Respondent to submit written discovery-type responses regarding its document search

efforts for at least 48 separate requests.

12.     Respondent objects to producing any documents that that are protected from

disclosure by the attorney-client privilege and/or the work product doctrine.  *See Patrick Cudahy,*

*Inc.*, 288 NLRB 968, 971 (1988); *Kaiser Aluminum & Chemical Corp.*, 339 NLRB 829, 829

(2003).

13.     Respondent objects to the extent the Subpoena may require the disclosure of trade

secrets and/or proprietary business information.  Unfortunately, many of the search terms provided

by Counsel for the General Counsel were so overbroad as to make a reasonable and efficient

search for responsive information and documents impracticable.  Likewise, it is unduly

burdensome and impracticable for Tesla to identify at this time which documents requested by

Counsel for the General Counsel contain trade secrets and/or proprietary business information

given the breadth and scope of the Subpoena as currently drafted.  Accordingly, while Respondent

is willing to produce relevant information, Respondent reserves the right to redact information containing trade secrets and/or proprietary business information and/or seek a protective order following its review of responsive information to the Subpoena.

14.    Respondent objects to Counsel for the General Counsel using this information outside of this litigation or sharing any information provided in response to this Subpoena with any third party.  While Respondent recognizes that Counsel for the General Counsel may show Charging Parties documents for purposes of this litigation and this litigation alone, Respondent objects to Counsel for the General Counsel sharing, or distributing any physical or electronic copies of the documents produced in response to the Subpoena with Charging Parties and/or their Counsel.  To that end, Respondent seeks a protective order limiting said disclosure.

15.    Respondent reserves the right to request that the Region share in the costs of production should Respondent be required to ultimately comply with an unduly burdensome and/or expensive production of ESI.

Each of the above General Objections shall be deemed to apply to Respondent's Specific Objections set forth below.

## V.    SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS
**DOCUMENT REQUEST NO. 1:**

A copy of confidentiality agreements applicable to statutory employees at Respondent's Fremont Facility during the relevant period of time, including all versions of such agreements.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 1:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "confidentiality agreement" and "versions."  The Request is also overbroad, calling for documents/information that are not relevant to the subject matter of the instant Complaint. Respondent also objects to the extent it lacks any specificity and particularity.  The Complaint challenges the *facial validity* of five paragraphs from a confidentiality acknowledgement that employees at its Fremont, California factory were asked to sign in or about October 2016.  The acknowledgement was an acknowledgment of the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement previously signed.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates were asked to sign in or about October 2016 and November 2016 and the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement in effect for production associates working at the Fremont factory in or about October 2016 and November 2016.

**DOCUMENT REQUEST NO. 2:**

To the extent not provided in Request No. 1, documents that refer to, reflect, or memorialize any rules or policies applicable to statutory employees at Respondent's Fremont Facility during the relevant time period on the topic of public information, confidential information, communication with media, the discussion of confidential information, the use of social media, the reference to Respondent in books or blogs, and consequences for any violations of any such policies or rules.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 2:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents that refer to, reflect, or memorialize any rules or policies." Tesla also objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 850 managers and supervisors and approximately 12,000 employees at the Fremont factory making the even merest mention of the topics listed in Request No. 1 and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. See Response to Request No. 1 regarding the relevancy of the confidentiality acknowledgment. Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. The Request is also overbroad as to time, seeking documents over the span of 20 months. The Board's Request does not seek evidence that could be used to establish its allegations in these proceedings, but

instead looks for evidence of other, unrelated unfair labor practices. Indeed, the Complaint does not allege that Tesla promulgated the confidentiality acknowledgement in response to concerted activity or enforced it in a discriminatory manner. The Board's Request is improper, and is contrary to established Board precedent. The Board has repeatedly revoked subpoenas where the matters sought were not relevant. *See Millsboro Nursing Home & Rehabilitation Center, Inc.,* 327 NLRB 879, n.2 (1999) (revoking overbroad subpoena seeking records for numerous employees because, absent a showing that the documents at issue were likely to establish the violations of the Act that were alleged); *See also Burns International Security Services, Inc.*, 278 NLRB 565, 566 (1986) (subpoena was revoked where no evidence showed that the records were likely to demonstrate that the party had engaged in the conduct at issue). Here, the Board Agent has set forth no explanation as to how the records sought will support its allegations against Tesla. Neither is any such explanation apparent from the requests themselves. To the contrary, the Request specifically seeks records pertaining to events that have no connection to these proceedings. Thus, to the extent that it seeks responsive ESI, the request is overbroad, unduly burdensome, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates in Fremont were asked to sign in or about October 2016 and November 2016; the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement in effect for production associates working at the Fremont factory in or about October 2016 and November 2016; and any written policies in effect for production associates in or about October 2016 and November 2016 concerning confidential information, communication with media, the discussion of confidential information, the use of social media, and the reference to Respondent in books or blogs to the extent they exist.

**DOCUMENT REQUEST NO. 3:**

Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding employees discussing

Respondent's work rules and/or confidentiality agreement, sharing Respondent's work rules and/or confidentiality agreement with other employees or third-parties, or taking pictures of Respondent's work rules and/or confidentiality agreement.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 3:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents including, but not limited to." See also Objections to Document Request No. 2, each of which is incorporated into Objection to Document Request No. 3 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates in Fremont were asked to sign in or about October 2016 and November 2016; the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement in effect for production associates working at the Fremont factory in or about October 2016 and November 2016; and any written policies in effect for production associates in or about October 2016 and November 2016 concerning sharing Respondent's work rules and/or confidentiality agreement with other employees or third-parties, or taking pictures of Respondent's work rules and/or confidentiality agreement to the extent they exist.

**DOCUMENT REQUEST NO. 4:**

Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding off-duty employees leafleting, distributing flyers, or otherwise distributing documents in the parking lot of Respondent's Fremont Facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 4:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents including, but not limited to." See also Objections to Document Request No. 2, each of which is incorporated into Objection to Document Request No. 4 as if set forth herein in full. Request No. 4 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings and is overbroad as to

time.  The Complaint alleges that one "Red Shirt Male Supervisor No. 1", one unidentified "Human Resources Agent", and six "John/Jane Doe Security Guards" unlawfully instructed off-duty employees engaged in leafleting and distributing flyers in the parking lot of Respondent's facility on February 10, 2017 and May 24, 2017.  The Complaint does not allege that Respondent's security guards acted to enforce any unlawful workplace rule or policy.  Nor does it allege that Respondent's employees were disciplined pursuant to any such policies.  Similarly, the Complaint does not allege that any supervisor or agent of Respondent unlawfully instructed off-duty employees engaged in leafleting and distributing flyers on any other dates or any other areas of Respondent's facility.  The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 850 managers and supervisors and approximately 12,000 employees at the Fremont factory making the even merest mention of leafleting, distributing flyers, or otherwise distributing documents and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint.  The Request would similarly be overbroad and burdensome even if conducted a search for ESI among the 60+ Tesla security guards or individuals providing security services on February 10, 2017 and May 24, 2017.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning off-duty employees leafleting, distributing flyers, or distributing documents in the parking lot in effect on February 10, 2017 and May 24, 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 5:**

To the extent not included in Request No. 4, documents reflecting the policies or rules regarding the seeking of preapproval from Respondent, or any of its agents, prior to statutory employees' distributing written materials in effect during the relevant period of time at Respondent's Fremont Facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 5:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents reflecting the policies or rules."  See also Objections to Document Request No. 2 and

4, each of which is incorporated into Objection to Document Request No. 5 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning off-duty employees leafleting, distributing flyers, or distributing documents in the parking lot in Fremont in effect on February 10, 2017 and May 24, 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 6:**

Documents requesting employees, during the relevant period of time, at Respondent's Fremont Facility to sign, whether written or electronic, agreements on the topic of confidentiality, communication with media, the discussion of confidential information, the use of social media, the reference to Respondent in books or blogs, and consequences for any violations of any such policies or rules.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 6:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents requesting employees." See also Objections to Document Request No. 2, each of which is incorporated into Objection to Document Request No. 6 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates in Fremont were asked to sign in or about October 2016 and November 2016.

**DOCUMENT REQUEST NO. 7:**

Documents reflecting all internal company communications from January 1, 2016 to the present that discuss, refer to, mention or name the International Union, United Automobile, Aerospace, and Agricultural Workers of America, AFL-CIO or the UAW or unions including, but not limited to, emails or other communications sent or received by Elon Musk, Mark Lipscomb, Emma Cruz, Liza Lipscomb, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tope Ogunniyi, Victor Facha, Time Fenelon, Homer Hunt, Armando Rodriguez, Dave Teston, any security guard or individual providing security services, Lauren Holcomb, or Ricky Gecewich.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 7:**

      Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "internal company communications." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 7 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings and is overbroad as to time. On May 25, 2018, Counsel for Tesla asked Counsel for the General Counsel to clarify the purpose of the Request. Counsel for the General Counsel confirmed that the Request is intended to seek evidence of anti-union animus and to uncover how "widespread" and/or "high up" it goes. Counsel for Tesla asked Counsel for the General Counsel to clarify whether the production of responsive emails sent to and received by the named individuals in the Request would comply with this request. Counsel for the General Counsel indicated it would not as the request encompasses internal communications "including but not limited to" those sent or received by these individuals. Thus, Request No. 7's request for "documents" is even more burdensome than the preceding requests to the extent it is not limited to the Fremont facility. Tesla employs around ***41,000 employees worldwide*** in different divisions and facilities. In addition to its corporate headquarters in Palo Alto, California, Tesla operates multiple factories that manufacture vehicles, their components and energy storage products. Tesla operates stores, galleries and service centers around the world, including in the United States, Asia, Australia, and Europe. Primary manufacturing of Tesla's electric vehicles occurs at its Fremont, California factory. Tesla manufactures seats at a second facility in Fremont, operates a parts manufacturing plant in Lathrop, and has support facilities in Livermore and Newark, California. Tesla's Gigafactory 1 is located in Sparks, Nevada, which produces Powerwalls, Powerpacks, and battery cells. Gigafactory 2 is located in Buffalo, New York, which manufactures and assembles photovoltaic modules and panels for Tesla's solar generation business. The Complaint concerns a single employee who worked as training coordinator in the training department at Tesla's Gigafactory 1 and a small number of production associates who

worked at Tesla's Fremont Factory. Accordingly, the Subpoena goes far beyond such potentially relevant documentation and the vast majority of documents requested by the Region have nothing to do with the instant Complaint. The Subpoena is likewise overbroad, unduly burdensome, oppressive, and harassing. By seeking such broad categories of documents, pertaining to other facilities and other departments, the Board is simply engaging in a fishing expedition.

Request No. 7 is additionally overbroad and unduly burdensome to the extent that it seeks ESI evincing discriminatory animus without regard to the supervisory or employment status of the communicating individuals, where they work, or their role in making or influencing any of the decisions placed in controversy by the Complaint.[4] Indeed, the sole allegation in the Complaint where animus is arguably relevant pertains to the two 8(a)(3) allegations in the Complaint alleging Tesla terminated Charging Parties Richard Ortiz and issued a verbal warning to Jose Moran on October 18 and 19, 2017 for engaging in concerted activities and/or union activities. Thus, a reasonably tailored request would at most involve the decision makers and a finite period of time preceding the October 18 and 19, 2017 date – not a 28 month time period – for thousands of managers and supervisors. Moreover, over the course of the Region's investigation, Tesla provided over 20 confidential affidavits to the Region, including Ricky Gecewich, who was responsible for conducting an investigation into Ortiz and Moran's conduct and making a recommendation to the decision markers. None of the witnesses, including Gecewich stated that any of the individuals listed in Request No. 7 (including Elon Musk) participated in the decision to terminate Ortiz and counsel Moran for their misconduct. In fact, the Complaint does not even allege that Elon Musk, Juan Martinez, or Victor Facha violated any section of the NLRA, much

---

[4] *See The Sedona Principles, Second Edition*, Cmt. 4.b., 25 (2007) ("It is neither reasonable nor feasible for a party to search or produce information from every electronic file that might potentially contain information relevant to every issue in the litigation, nor is a party required to do so. It should be reasonable, for example, to limit searches for email messages to the accounts of key witnesses in the litigation, for the same reasons that it has been regarded as reasonable to limit searches for paper documents to the files of key individuals. Likewise, it should be appropriate, absent unusual circumstances, to limit review for production to those sources most likely to contain nonduplicative relevant information (such as active files or removable media used by key employees.")

less section 8(a)(3).  Thus, Request No. 7 is overbroad, unduly burdensome, oppressive, harassing and entirely disproportional to the needs of the case.

**DOCUMENT REQUEST NO. 8:**

To the extent not covered by Request No. 7 above, documents reflecting all internal company communications from January 1, 2016 to the present that contain the words "union", "Union", "union organizing", "Union organizing", "organizing campaign", "organizing activities", "leafleting", "union shirts", "unionizing", "Unionizing", "worksafe", "CalOSHA 300 logs", "workday use", and "Workday use" sent or received by Elon Musk, Mark Lipscomb, Emma Cruz, Liza Lipscomb, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tope Ogunniyi, Victor Facha, Time Fenelon, Homer Hunt, Armando Rodriguez, Dave Teston, any security guard or individual providing security services, Lauren Holcomb, or Ricky Gecewich.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 8:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents reflecting all internal company communications."  Request No. 8 is objectionable to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case.  The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable.  Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information.

The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among thousands of managers and supervisors and approximately ***41,000 employees*** at the Fremont factory making the even merest mention of the topics listed in Request No. 8 and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint.  See also Objections to Document Request No. 7, each of which is incorporated into Objection to Document Request No. 8 as if set forth herein in full.  Request No. 8's request for "documents" is even more burdensome than the

preceding requests to the extent it is not limited to the topics of UAW and unions.  Aside from the two 8(a)(3) allegations concerning Moran/Oritz, the remaining Complaint allegations pertain to one-off 8(a)(1) violations relating to discrete topics involving specific supervisors/manager on specific dates.  See also pages 7-9 above describing the keyword searches Tesla performed on the emails of ***only three custodians***, which clearly demonstrate that the subpoena is impracticable to comply with and unreasonably burdensome insofar as it would require Tesla to review ***millions of emails*** for the specific custodians identified in Request No. 8 alone.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will consider providing responsive documents to the extent Counsel for the General Counsel clarifies its request and tailors it to specific custodians and date ranges related to the specific topic at issue.

**DOCUMENT REQUEST NO. 9:**

Documents reflecting any statements made between January 1, 2016 to the present by Respondent, including correspondence to any public entity, statements to shareholders, and press releases, on the topic of the Union, unions, confidentiality, unionizing, "Jose Moran", and/or "Richard Ortiz".

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 9:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents reflecting any statements", "correspondence to any public entity," "statements to shareholders," and "press releases."  Tesla also objects to the definition of the word "documents."   The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable.  Request No. 9 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case.  See also Objections to Document Request No. 7, each of which is incorporated into Objection to Document Request No. 9 as if set forth herein in full.

**DOCUMENT REQUEST NO. 10:**

Documents and data reflecting or referring to any statements made by Elon Musk between June 1, 2016 and the present, including statements made on any social media platform or sent via direct message using any communication platform (including those reported by Gizmodo on or about February 9, 2017), on the topic of unions, the Union, unionizing, leafleting, the distribution of flyers/shirts, union shirts, "Jose Moran", or "Richard Ortiz". The term "social media" shall include, but is not limited to, the platforms of Facebook, Twitter, Instagram, Snapchat, Tumblr, Weibo, Reddit, Flickr, LinkedIn, YouTube, and Google+.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 10:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents and data reflecting or referring to any statements made by Elon Musk", "communication platform" and "social media." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Tesla also objects to the extent the Request seeks statements made in forums not accessible to the public and employees. Tesla further objects insofar as public statements are equally available to Counsel for the General Counsel. Request No. 10 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. ***There is no allegation that Elon Musk directed, was involved in, or in any way influenced any of the decisions or actions described in the Complaint.*** See also Objections to Document Request No. 7, each of which is incorporated into Objection to Document Request No. 10 as if set forth herein in full.

**DOCUMENT REQUEST NO. 11:**

Documents reflecting policies in effect at Respondent's Fremont and Sparks Facility regarding employees discussing safety issues and/or concerns with other employees, labor unions, or other third parties during the relevant period of time.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 11:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents reflecting policies." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 11 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 7, each of which is incorporated into Objection to Document Request No. 9 as if set forth herein in full. The only allegation pertaining to employees discussing safety issues relates to four very specific allegations: on April 5, 2017 and April 28, 2017, Human Resources Business Partner David Zweig and Human Resources Partner Seth Woody attempted to prohibit Charging Party Jonathan Galescu at the Fremont Factory from discussing safety concerns with other employees and/or the Union; on May 24, 2017, Lauren Holcomb and Liza Lipson interrogated Charging Parties Jonathan Galescu and Richard Ortiz concerning OSHA 300 logs on May 24, 2017; and on October 21, 2017, Andy McIndoe told William Locklear at Gigafactory 1 that he should not speak with other employees about workplace concerns. The Complaint does not allege that Respondent's supervisors or agents acted to enforce any unlawful workplace rule or policy. Nor does it allege that Respondent's employees were disciplined pursuant to any such policies. Similarly, the Complaint does not allege that any supervisor or agent of Respondent unlawfully instructed employees about safety concerns on any other dates. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning production employees and training coordinators discussing safety issues at the Fremont factory and Gigafactory 1 in effect in April, May and October 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 12:**

Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, work rules, the Team Wear rule/policy, or other work rules, in effect during the

relevant period of time at Respondent's Fremont and Sparks Facility, governing the clothing employees are permitted to wear while on-duty at Respondent's Fremont and Sparks Facility, respectively.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 12:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents, including, but not limited to." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory and 4,000 at Gigafactory 1 making the even merest mention of the clothing employees are permitted to wear and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. Request No. 11 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 2, each of which is incorporated into Objection to Document Request No. 12 as if set forth herein in full. The Complaint alleges that since April 2017, Respondent has maintained a facially unlawful team wear policy applicable to production employees working in general assembly at the Fremont factory. The Complaint also alleges that Associate Production Manager Tope Ogunniyi, Supervisor Tim Fenelon and one other "Production Supervisor (whose name is unknown) selectively and disparately prohibited shirts with Union insignia in the general assembly area at the Fremont facility on two specific dates: August 10, 2017 and August 14, 2017. The Complaint further alleges that in the Spring of 2017 "Arnold (Last Name Unknown") threated a production employee for wearing a union hat at the Fremont factory and that on September 8, 2017 Supervisor Dave Teston threatened a training coordinator for wearing a union hat at Gigafactory 1. The later allegations do not pertain to Respondent's team wear policy applicable to assembly

employees.   The Complaint does not allege that Respondent's employees were disciplined for wearing union hats or shirts.  Similarly, the Complaint does not allege that any supervisor or agent of Respondent selectively and disparately prohibited shirts with Union insignia on any other dates or any other areas except for general assembly and body in white at the Fremont Factory and within the training department in Gigafactory 1.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the team wear policy applicable to production employees working in general assembly at the Fremont factory in April 2017 and August 2017; any written policies governing the clothing employees working in body in white at the Fremont factory were permitted to wear in the Spring of 2017; and any written policies governing the clothing training coordinators at Gigafactory 1 are permitted to wear in September 2017 to the extent they exist.

## DOCUMENT REQUEST NO. 13:

Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding Fremont employees' use of WorkDay, including, but not limited to, any document signed or given to statutory employees during the relevant time period on the topic of WorkDay use or misuse.

## OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 13:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents, including, but not limited to" and "any document signed or given to statutory employees".  Tesla also objects to the definition of the word "documents."   The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable.  The Request is also overbroad, unduly burdensome, and oppressive insofar it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory making the even merest mention of Workday and even though said ESI may have absolutely nothing to do with the subject matter or issues in the

Complaint.  Request No. 13 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case.  The Complaint alleges that Charging Party Richard Ortiz and Jose Moran engaged in concerted activities with each other for the purpose of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz; that Richard Ortiz posted comments regarding wages and working conditions along with screenshots of the employee photographs and job titles on a Facebook page; and that Employee Relations Investigator Ricky Gecewich interrogated Ortiz and Moran on September 21, 2017 and October 19, 2017 concerning the alleged concerted activities referenced above.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning use of Workday applicable to Richard Ortiz and Jose Moran in October 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 14:**

Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding Fremont access to the Fremont Facility by any person, including the Fremont Facility parking lot.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 14:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents, including, but not limited to".  Tesla also objects to the definition of the word "documents."  The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable.  The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory making the even merest mention of access to the Fremont facility/parking lot and even though said ESI may have

absolutely nothing to do with the subject matter or issues in the Complaint. The Request would similarly be overbroad and burdensome even if conducted a search for ESI among the 60+ Tesla security guards or individuals providing security services on February 10, 2017 and May 24, 2017. Request No. 12 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 4, each of which is incorporated into Objection to Document Request No. 12 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning access to the Fremont parking lot effective February 10, 2017 and May 24, 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 15:**

Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding employees' participation and/or cooperation in workplace investigations.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 15:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents, including, but not limited to". Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory making the even merest mention of access to the Fremont facility/parking lot and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. Request No. 12 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the

needs of the case.  See also Objections to Document Request No. 13, each of which is incorporated into Objection to Document Request No. 15 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning production employees participation and/or cooperation in workplace investigations applicable to Richard Ortiz and Jose Moran in October 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 16:**

Documents, including, but not limited to, video recordings or surveillance recordings of the exterior portions of Respondent's Fremont Facility on February 10, 2017, reflecting interactions between Respondent's supervisors/agents/security guards and individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 16:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents, including, but not limited to".  Tesla also objects to the definition of the word "documents."  The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable.  On May 25, 2018, Counsel for the General Counsel agreed that Respondent may satisfy this request by producing responsive video and/or surveillance recordings notwithstanding its use of the term "documents."  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce video and/or surveillance recordings responsive to this request as clarified by the General Counsel to the extent they exist.

**DOCUMENT REQUEST NO. 17:**

Documents, including, but not limited to, video recordings or surveillance recordings of the exterior portions of Respondent's Fremont Facility on May 24, 2017, reflecting interactions between Respondent's supervisors/agents/security guards and individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 17:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents, including, but not limited to". Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. On May 25, 2018, Counsel for the General Counsel agreed that Respondent may satisfy this request by producing responsive video and/or surveillance recordings notwithstanding its use of the term "documents." Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce video and/or surveillance recordings responsive to this request as clarified by the General Counsel to the extent they exist.

**DOCUMENT REQUEST NO. 18:**

Documents, including, but not limited to, emails, letters, notices, investigations, investigatory reports, investigatory notes, investigatory interviews, videos, pictures, complaints, incident reports, or other documents, in written or electronic form, that reflect interactions between Respondent's supervisors/agents/security guards and individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility around February 10, 2017 and around May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 18:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents, including, but not limited to", "other documents" and "reflect interactions between Respondent's supervisors/agents/security guards and individuals". Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory

making the even merest mention of flyers, leaflets, or otherwise distributing documents and even though said ESI may have absolutely nothing to do with the subject matter or the two dates at issue in the Complaint.  Request No. 12 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case.  The relevant allegations of the Complaint pertain to interactions between Respondent's security guards and supervisors and its off-duty employees on two discrete dates.  See also Objections to Document Request No. 4, each of which is incorporated into Objection to Document Request No. 18  as if set forth herein in full.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any investigatory reports, incident reports, video and/or surveillance recordings reflecting leafleting, distributing flyers, or distributing documents outside of Respondent's Fremont Facility that were completed or submitted by/to Tesla's Security Managers within two days before and three days after February 10, 2017 and May 24, 2017.

**DOCUMENT REQUEST NO. 19:**

To the extent not provided in response to Request No. 18, documents, including, but not limited to, emails, letters, investigations, investigatory reports, investigatory notes, investigatory interviews, videos, pictures, complaints, incident reports, or other documents, in written or electronic form, regarding complaints by employees about individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility around February 10, 2017 and around May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 19:**

Request No. 19 is duplicative of Request No. 18.  See Objections to Document Request No. 4 and 18, each of which is incorporated into Objection to Document Request No. 19 as if set forth herein in full.

**DOCUMENT REQUEST NO. 20:**

Documents, including, but not limited to, emails, investigations, complaints, verbal or written disciplines, incident reports, or other documents, in written or electronic form, that reflect employee injuries, employee discipline, employee disputes, work related problems, or

manufacturing defects or any other manufacturing problems, during the relevant period of time at Respondent's Fremont or Sparks Facility, as a result of employees allegedly not following Respondent's Team Wear rule/policy and/or wearing shirts or hats with Union insignia.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 20:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents, including, but not limited to" and "employee disputes" and "work related problems". Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search of personnel files and ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory and 4,000 at Gigafactory 1 making the even merest mention of the topics listed in Request No. 20 and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. Request No. 20 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. Indeed, the Complaint does not allege that any employees were even disciplined for wearing shirts or hats with Union insignia. See also Objections to Document Request No. 12, each of which is incorporated into Objection to Document Request No. 20 as if set forth herein in full.

**DOCUMENT REQUEST NO. 21:**

To the extent not already provided in response to Request No. 20, documents, including, but not limited to, emails, investigations, complaints, verbal or written disciplines, incident reports, invoices, or other documents, in written or electronic form, that reflect any damage or mutilation caused to Tesla automotive products and/or parts manufactured by Tesla or otherwise used in Tesla automobiles in the General Assembly area by the use of non-teamwear compliant clothing, including union shirts during the relevant period of time.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 21:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents, including, but not limited to" and "employee disputes" and "work related problems". Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search of personnel files and ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory and 4,000 at Gigafactory 1 making the even merest mention of the topics listed in Request No. 20 and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. Request No. 21 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 12 and 20, each of which is incorporated into Objection to Document Request No. 21 as if set forth herein in full.

**DOCUMENT REQUEST NO. 22:**

Documents memorializing any discussions between Armando Rodriguez and employees during the pre-shift meeting(s) held by Supervisor Armando Rodriguez around March 23, 2017 at Respondent's Fremont Facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 22:**

Request No. 23 is objectionable to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings. Tesla also objects to the definition of the word "documents." On May 25, 2018, Counsel for the General Counsel clarified that this request seeks only Armando Rodriguez's alleged notes memorializing discussions between Armando Rodriguez and employees during a pre-shift meeting held on March 23, 2017 notwithstanding its use of the term "documents." Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce Armando Rodriguez's alleged

notes memorializing discussions between Armando Rodriguez and employees during a pre-shift meeting held on March 23, 2017 as clarified by the General Counsel to the extent they exist.

**DOCUMENT REQUEST NO. 23:**

Documents reflecting any statements made by Armando Rodriguez to employees of Respondent's Fremont Facility during the pre-shift meeting(s) around March 23, 2017, including copies of Armando Rodriguez's black book used to take notes.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 23:**

Request No. 23 is objectionable to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings. Tesla also objects to the definition of the word "documents." On May 25, 2018, Counsel for the General Counsel clarified that this request seeks only Armando Rodriguez's alleged black book reflecting statements made by Armando Rodriguez to employees during a pre-shift meeting held on March 23, 2017. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce pages from Armando Rodriguez's alleged black book reflecting statements made by Armando Rodriguez to employees during a pre-shift meeting held on March 23, 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 24:**

Documents, including, but not limited to, notes, e-mails, bullet points,. flyers, notices, postings, written memorializations of verbal discussions, or other documents, in written or electronic form, that pertain to employees' use of CalOSHA 300 logs, including, but not limited to, e-mails between employees and any agent of the Respondent referring to the use of CalOSHA 300 logs between April 1, 2017 to the present.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 24:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents, including, but not limited to", "other documents" and "reflect the discussion". Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and

documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search of ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory making the even merest mention of OSHA 300 logs and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. The only allegation pertaining to OSHA 300 logs relates to two very specific allegations: Human Resources Business Partner David Zweig and Human Resources Partner Seth Woody attempted to prohibit Charging Party Jonathan Galescu from discussing safety concerns with other employees and/or the Union by sending two separate emails on April 5, 2017 and April 28, 2017 respectively. Request No. 21 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 11, each of which is incorporated into Objection to Document Request No. 25 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails exchanged between David Zweig and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017 and any emails exchanged between Seth Woody and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017.

**DOCUMENT REQUEST NO. 25:**

Documents, in written or electronic form, that reflect the discussions between Director of Global Environmental Health and Safety Seth Woody and Fremont Facility employees regarding the topic of the use of CalOSHA 300 logs on or about April 28, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 25**:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "reflect the discussions". Tesla also objects to the definition of the word "documents." Request No. 26 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings. With respect to Seth Woody, the Complaint alleges that he attempted to prohibit Charging Party Jonathan Galescu from discussing safety concerns with other employees and/or the Union by sending one email on April 28, 2017. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails exchanged between Seth Woody and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017.

**DOCUMENT REQUEST NO. 26**:

Documents, in written or electronic form, that reflect the discussions between Associate Human Resources Manager Liza Lipson and Fremont Facility employees regarding the use of CalOSHA 300 logs on or about May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 26**:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "reflect the discussions". Tesla also objects to the definition of the word "documents." The Complaint alleges that Lauren Holcomb and Liza Lipson interrogated Charging Parties Jonathan Galescu and Richard Ortiz concerning their concerted activities in requesting OSHA 300 logs on May 24, 2017. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any notes or summaries prepared by Liza Lipson describing discussions between her and Charging Parties Jonathan Galescu and Richard Ortiz regarding the use of CalOSHA 300 logs on or about May 24, 2017.

**DOCUMENT REQUEST NO. 27**:

Documents, in written or electronic form, that reflect the discussions between Supervisor Homer Hunt and Fremont Facility employees in or about August 2017 regarding the topic of employees selecting a union as a bargaining representative and/or a union representing employees at the Respondent's Fremont Facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 27:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "reflect the discussion." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among thousands of employees working in production at the Fremont factory who may have overheard a discussion between Homer Hunt and one of the production employees in or about August 2017 and documented it for whatever reason. See also Objections to Document Request No. 7, each of which is incorporated into Objection to Document Request No. 28 as if set forth herein in full. Request No. 28 is thus objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will consider providing responsive documents to the extent Counsel for the General Counsel clarifies its request and tailors it to specific custodians and date ranges related to the specific topic at issue.

**DOCUMENT REQUEST NO. 28:**

Documents, in written or electronic form, that reflect the discussions between Supervisor Tope Ogunniyi and Fremont Facility employees between August 1, 2017 and September 31, 2017 regarding the topic of employee team wear.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 28:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "reflect the discussion." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices,

voicemails, text messages, social media accounts, etc) among 1800 employees in general assembly at the Fremont factory who may have overheard a discussion between Tope Ogunniyi and one of the general assembly employees on or about August 1 and September 31, 2017 and documented it for whatever reason.  Request No. 29 is thus objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case.  See also Objections to Document Request No. 12 and 20, each of which is incorporated into Objection to Document Request No. 29 as if set forth herein in full.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will consider providing responsive documents to the extent Counsel for the General Counsel clarifies its request and tailors it to specific custodians and date ranges related to the specific topic at issue.

**<u>DOCUMENT REQUEST NO. 29</u>:**

Documents, in written or electronic form, that reflect the discussions between Associate Manager of Training Dave Teston and Sparks Facility employees on or about September 8, 2017.

**<u>OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 29</u>:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "reflect the discussion."  Tesla also objects to the definition of the word "documents."   The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among 4,000 employees at Gigafactory 1 who may have overheard a discussion between Dave Teston and William Locklear on or about September 8, 2017 and documented it for whatever reason.  Request No. 29 is thus objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will consider

providing responsive documents to the extent Counsel for the General Counsel clarifies its request and tailors it to specific custodians and date ranges related to the specific topic at issue.

**DOCUMENT REQUEST NO. 30:**

Documents, in written or electronic form, that reflect the discussions between Principal Employee Relations Partner Ricky Gecewich and Fremont Facility employees around September 21, 2017, and October 19, 2017, regarding Facebook postings and/or employee use of WorkDay.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 30:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "reflect the discussions." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 31 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings. The Complaint alleges that Charging Party Richard Ortiz and Jose Moran engaged in concerted activities with each other for the purpose of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz; that Richard Ortiz posted comments regarding wages and working conditions along with screenshots of the employee photographs and job titles on a Facebook page; and that Employee Relations Investigator Ricky Gecewich interrogated Ortiz and Moran on September 21, 2017 and October 19, 2017 concerning the alleged concerted activities referenced above. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails Gecewich sent to Ortiz and Moran on or about September 21, 2017 and October 19, 2017, as well as any notes Gecewich took during those meetings to the extent they exist.

**DOCUMENT REQUEST NO. 31:**

Documents, including, but not limited to, e-mails, text messages, or other electronic messages sent between Director of Human Resources for Manufacturing Josh Hedges and

Respondent Fremont Facility employee Travis Pratt on the topic of social media postings in September and October 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 31:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents including, but not limited to", "other electronic messages", and "social media postings." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 32 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails and text messages Hedges sent to/received from Travis Pratt in September and October 2017 relating to complaints about Facebook postings by Richard Ortiz and Jose Moran.

**DOCUMENT REQUEST NO. 32:**

Documents, including, but not limited to, e-mails, text messages, or other electronic messages sent by Travis Pratt or Bryan Kositch to any agent of Respondent on the topic of social media postings in September and October 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 32**:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents, including, but not limited to" and "social media postings." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 850 managers at the Fremont Factory who Travis Pratt or Bryan Kositch may have communicated with on the "topic of social media". Request No. 33 is thus objectionable to the extent it calls for the production of "documents" that do not relate to any

matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails and text messages received by Josh Hedges from Travis Pratt or Bryan Kositch in September and October 2017 relating to complaints about Facebook postings by Richard Ortiz and Jose Moran.

**DOCUMENT REQUEST NO. 33:**

Documents, including, but not limited to emails, text messages, or other electronic messages sent by Principal Employee Relations Partner Ricky Gecewich to Fremont Facility employees around October 19, 2017, regarding employee use of WorkDay.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 33:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "documents, including, but not limited to" and "social media postings." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 34 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails and text messages sent by Ricky Gecewich to Richard Ortiz or Jose Moran regarding employee use of WorkDay around October 19, 2017.

**DOCUMENT REQUEST NO. 34:**

Documents reflecting all information, including, but not limited to, witness statements, video recordings, investigatory interviews, investigatory notes, investigatory reports, disciplines, written memorializations of conversations, or incident reports, in written or electronic form, that the Employer relied upon in deciding to discipline Jose Moran around October 19, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 34:**

Respondent will produce non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 35:**

Documents reflecting all information, including, but not limited to, witness statements, video recordings, investigatory interviews, investigatory notes, investigatory reports, disciplines, written memorializations of conversations, or incident reports, in written or electronic form, that the Employer relied upon in deciding to terminate Richard Ortiz around October 19, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 35:**

Respondent will produce non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 36:**

Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for alleged use or misuse of WorkDay.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 36**:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "Documents, including, but not limited to", "write-ups", and "written memorializations of verbal counselings." Tesla also objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 39 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 850 managers and supervisors at the Fremont factory regardless of department/division making the even merest mention of Workday and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. To the extent that this request seeks comparator evidence, it is overly broad as the vast majority of

responsive documents would pertain to invalid comparators. *See Lindsay v. Fuyao Glass Am. Inc.*, 3:16-MC-00007, 2017 WL 1276728, at *2 (S.D. Ohio Apr. 6, 2017), report and recommendation adopted, 3:16-MC-7, 2018 WL 1166628 (S.D. Ohio Mar. 5, 2018) ("Lindsay v. Fuyao Glass").  In *Lindsay v. Fuyao Glass*, the UAW filed a ULP charge alleging that the respondent terminated an employee for engaging in protected activities, and the NLRB began investigating whether "other, similarly situated employees working in [the employee's] department…may have received more lax treatment with respect to Respondent's attendance policy." *Id.* at *1.  The NLRB subsequently issued a subpoena seeking "[n]ames, contact information, attendance records, and all discipline and discharge records for attendance violations, for all employees working in the ARG Department since September 1, 2015." *Id.*  The District Court adopted the Magistrate's recommendation that the subpoena be narrowed to reach only the disciplines for those *employees that were supervised by the same decisionmaker*, as opposed to disciplines for all 800 employees working in the same department. *Id.* at *4.  Noting that the vast majority of the records sought by the NLRB's subpoena were "immaterial to the NLRB's investigation" because they concerned "employees who would not be valid comparators to Moffitt," the District Court held that it would be unduly burdensome to require the employer to identify and produce all of the records sought by the NLRB where doing so would require a search of records pertaining to 800 employees. *Id.,* fn. 3.  Here, the General Counsel has no basis for seeking comparator evidence in the form of disciplines issued to all of Respondent's 12,000+ employees at its Fremont facility regardless of whether they were issued by the supervisors that allegedly disciplined Charging Parties Moran and Ortiz.  Request No. 39 should accordingly be revoked.

**DOCUMENT REQUEST NO. 37:**

Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for alleged dishonesty or lying.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 37:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "Documents, including, but not limited to", "write-ups", "written memorializations of verbal counselings." Tesla also objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 40 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 39, each of which is incorporated into Objection to Document Request No. 40 as if set forth herein in full.

**DOCUMENT REQUEST NO. 38:**

Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for conduct related to employee cooperation in a workplace investigation.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 38**:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "Documents, including, but not limited to", "write-ups", "written memorializations of verbal counselings." Tesla also objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 41 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 39, each of which is incorporated into Objection to Document Request No. 41 as if set forth herein in full.

**DOCUMENT REQUEST NO. 39:**

Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for alleged use of social media.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 39:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "Documents, including, but not limited to", "write-ups", "written memorializations of verbal counselings." Tesla also objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 42 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 39, each of which is incorporated into Objection to Document Request No. 42 as if set forth herein in full.

**DOCUMENT REQUEST NO. 40:**

Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for allegedly lying during a work-related investigation conducted by Respondent.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 40:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "Documents, including, but not limited to", "write-ups", and "written memorializations of verbal counselings." Tesla also objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 43 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. See also Objections to Document Request No. 39, each of which is incorporated into Objection to Document Request No. 43 as if set forth herein in full.

**DOCUMENT REQUEST NO. 41:**

Documents that reflect the layout of Respondent's Fremont Facility on February 10, 2017 and May 24, 2017, including any documents submitted by Respondent to any governmental entity reflecting the layout of the Respondent's Fremont Facility. For any document produced in response to this request, documents that reflect the identity of the person who created or produced the document and the date the document was created or. produced.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 41:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "Documents that reflect the layout." Tesla objects to the definition of the word "document." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 44 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is entirely disproportional to the needs of the case. Respondent also objects to the extent the Request seeks trade secrets and/or proprietary business information of Tesla. On May 25, 2017, Counsel for the General Counsel informed Counsel for Tesla that the relevance for this request derives from statements made by Respondent during the Region's investigation to the effect that its

22-60493.5634

supervisor prevented an employee from photographing the Confidentiality Agreement pursuant to a no-photography policy that the employer promulgated to protect its trade secrets. The Region has withdrawn all allegations from the Complaint regarding Respondent's no-photography policy. Accordingly, Request No. 44 should be revoked to the extent it seeks information that is no longer relevant to a matter under investigation. *See Taylor Farms Pacific*, 32–CA–116854, unpub. Board order issued Feb. 6, 2015 (2015 WL 514108).

**DOCUMENT REQUEST NO. 42:**

To the extent not provided in response to Request No. 44, documents that depict each exterior ingress and egress of Respondent's Fremont Facility on February 10, 2017 and May 24, 2017. For any document produced in response to this request, documents that reflect the identity of the person who created or produced the document and the date the document was created or produced.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 42:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents that depict each exterior ingress and egress." Tesla objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 45 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings. On May 25, 2018, Counsel for the General Counsel agreed that Respondent may satisfy this request by producing a diagram depicting the entrances to the Fremont Factory on February 10, 2017 and May 24, 2017. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce a diagram responsive to this request as clarified by the General Counsel to the extent one exists.

**DOCUMENT REQUEST NO. 43:**

To the extent not provided in response to Request Nos. 44 or 45, photographs depicting each exterior ingress and egress of Respondent's Fremont Facility as they existed on February 10, 2017 and May 24, 2017. For any document produced in response to this request, documents that

reflect the identity of the person who created or produced the document and the date the document was created or produced.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 43:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "photographs that depict each exterior ingress and egress." Tesla objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 46 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings. On May 25, 2018, Counsel for the General Counsel agreed that Respondent may satisfy this request by producing a diagram depicting the entrances to the Fremont Factory on February 10, 2017 and May 24, 2017. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce a diagram responsive to this request as clarified by the General Counsel to the extent one exists.

**DOCUMENT REQUEST NO. 44:**

To the extent not provided in Response to Request Nos. 44, 45, or 46, documents that reflect the layout of Respondent Fremont Facility's parking lot on February 10, 2017 and May 24 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 44:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents that reflect the layout." Tesla objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Request No. 47 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings. On May 25, 2018, Counsel for the General Counsel agreed that Respondent may satisfy this request by producing a diagram depicting the entrances to the Fremont Factory on February 10, 2017 and May 24, 2017. Notwithstanding the foregoing objections and without prejudice thereto,

Respondent will produce a diagram responsive to this request as clarified by the General Counsel to the extent one exists.

**DOCUMENT REQUEST NO. 45:**

The names, addresses, e-mail addresses, telephone numbers, and any other contact information of any individual providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 45:**

Respondent objects to providing this information based on privacy concerns of the individuals providing security services at Respondent's Fremont Facility. Respondent also objects to providing this information based on access abuse and security concerns. Request No. 48 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is entirely disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the names of the individuals providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017 provided the parties enter into a protective order limiting the use of this information for identification purposes only, not physically or electronically distribute this information to Charging Parties, their counsel, or third parties, and destroy this information at the conclusion of the proceedings. To the extent that Counsel for the General Counsel wishes to offer any of this information into evidence at the hearing, Respondent requests that such information be protected under seal.

**DOCUMENT REQUEST NO. 46:**

Documents showing the name of every security guard stationed or working at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017, and a copy of each individual's identification badge.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 46:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents showing." Tesla also objects to the definition of the word "documents." Respondent objects to providing this information based on privacy concerns of the individuals providing

security services at Respondent's Fremont Facility.  Respondent also objects to providing this information based on access abuse and security concerns.  Request No. 49 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is entirely disproportional to the needs of the case.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the names and photographs of the individuals providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017 provided the parties enter into a protective order limiting the use of this information for identification purposes only, not physically distribute this information to Charging Parties, their counsel, or third parties, and destroy this information at the conclusion of the proceedings.  To the extent that Counsel for the General Counsel wishes to introduce the photographs into evidence at the hearing, Respondent requests that such information be protected under seal.

**DOCUMENT REQUEST NO. 47:**

Documents that have a photograph, or WorkDay profile that contains a photo, of any individual directly employed by Tesla to provide security services or who provide security services for Tesla at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 47:**

Tesla objects to the definition of the word "documents."   Respondent objects to providing this information based on privacy concerns of the individuals providing security services at Respondent's Fremont Facility.  Respondent also objects to providing this information based on access abuse and security concerns.  Request No. 50 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is entirely disproportional to the needs of the case.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the names and photographs of the individuals providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017 to the extent they exist provided the parties enter into a protective order limiting the use of this information for identification purposes only, not physically or electronically distribute this information to Charging Parties, their counsel, or third parties, and destroy this information at the

conclusion of the proceedings.  To the extent that Counsel for the General Counsel wishes to introduce the photographs into evidence at the hearing, Respondent requests that such information be protected under seal.

**DOCUMENT REQUEST NO. 48:**

Documents that reflect the photographs and Workday profiles of any individual who provided security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 48:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents that reflect."  Tesla also objects to the definition of the word "documents." Respondent objects to providing this information based on privacy concerns of the individuals providing security services at Respondent's Fremont Facility.  Respondent also objects to providing this information based on access abuse and security concerns.  Request No. 50 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is entirely disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the photographs of the individuals providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017 to the extent they exist provided the parties enter into a protective order limiting the use of this information for identification purposes only, not physically or electronically distribute this information to the Charging Parties, their counsel, or third parties, and destroy this information at the conclusion of the proceedings.  To the extent that Counsel for the General Counsel wishes to introduce any of the photographs into evidence at the hearing, Respondent requests that such information be protected under seal.

**DOCUMENT REQUEST NO. 49:**

Documents that memorialize or reflect any agreements for the provision of security guard services at the Respondent's Fremont Facility during the relevant time period.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 49:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents that memorialize or reflect." Tesla also objects to the definition of the word "documents." Respondent objects to providing this information based access abuse and security concerns insofar as these agreements detail security parameters which should not be disclosed to outside parties. Request No. 52 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings, is overbroad as to time, and is disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any agreements between Tesla and another company for the provision of security guard services at the Respondent's Fremont Facility effective February 10, 2017 and May 24, 2017 to the extent they exist provided the parties enter into a protective order limiting the use of this information, not physically or electronically distribute this information to Charging Parties, their counsel, or third parties, and destroy this information at the conclusion of the proceedings. To the extent that Counsel for the General Counsel wishes to introduce any agreements into evidence at the hearing, Respondent requests that such information be protected under seal.

**DOCUMENT REQUEST NO. 50:**

The licensing agreement between Respondent and Workday for use of Workday products or services by employees at Respondent's Fremont facility.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 50:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents that reflect the terms of use." Request No. 53 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is overbroad as to time. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any licensing agreements between Respondent and Workday in effect in October 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 51:**

Documents that reflect the terms of use of Workday that apply to users of Workday at Respondent's Fremont Facility during the relevant period of time.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 51:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "terms of use." Tesla also objects to the definition of the word "documents." Request No. 54 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings and is overbroad as to time. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning Workday applicable to Charging Parties Jose Moran and Richard Ortiz in effect in October 2017 to the extent they exist.

**DOCUMENT REQUEST NO. 52:**

Documents that have any photographs of employee identification cards taken by individuals providing security services at Respondent's Fremont Facility on or about February 10, 2017 and May 24, 2017.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 52:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "photographs of employee identification cards." Tesla also objects to the definition of the word "documents." The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Respondent also objects to providing this information based on access abuse and security concerns. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among over 60 Tesla security guards or individuals providing security services on February 10, 2017 and May 24, 2017. The relevant allegations of the Complaint pertain to two interactions whereby Respondent unlawfully instructed off-duty employees engaged in leafleting and distributing flyers in the parking lot of Respondent's facility on February 10, 2017 and May

1  24, 2017. There is no allegation that Tesla's supervisors or agents engaged in surveillance of

2  employees or took photographs of employees engaged in leafleting and distributing flyers. In fact,

3  all of the surveillance allegations have been withdrawn from the Complaint. Accordingly,

4  Request No. 55 should be revoked to the extent it seeks information that is no longer relevant to a

5  matter under investigation. *See Taylor Farms Pacific*, 32–CA–116854, unpub. Board order issued

6  Feb. 6, 2015 (2015 WL 514108).

7

8  Dated: June 1, 2018

9                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

10

11                     By

12                                      MARK S. ROSS
                                        KEAHN N. MORRIS

13

                                        Attorneys for
14                                      TESLA, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:486526853.2

RESPONDENT'S PETITION TO PARTIALLY REVOKE SUBPOENA
DUCES TECUM B-1-118CRIT ISSUED TO TESLA, INC.

# EXHIBIT A

22-60493.5643

FORM NLRB-31

# SUBPOENA DUCES TECUM

### UNITED STATES OF AMERICA
### NATIONAL LABOR RELATIONS BOARD

To   Custodian of Records, Tesla, Inc.

    45500 Fremont Blvd., Fremont, CA 94538-6326

As requested by   Edris W.I. Rodriguez Ritchie, Counsel for General Counsel and
Noah Garber, Counsel for the General Counsel of the

    National Labor Relations Board

whose address is   1301 Clay Street, Suite 300N, Oakland, CA 94612-5224
          (Street)                 (City)             (State)      (ZIP)

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE   a duly designated

    Administrative Law Judge _____ of the National Labor Relations Board

at   1301 Clay Street, 5th Floor – North Tower, Conference Room H

in the City of   Oakland, CA

on   Monday, June 11, 2018 _____ at   9:00 AM _____ or any adjourned

or rescheduled date to testify in   Tesla, Inc.
32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197,
32-CA-200530, 32-CA-208614, and 32-CA-210879
                                            (Case Name and Number)

    And you are hereby required to bring with you and produce at said time and place the following books, records, correspondence, and documents:

## SEE ATTACHMENT

If you do not intend to comply with the subpoena, within 5 days (excluding intermediate Saturdays, Sundays, and holidays) after the date the subpoena is received, you must petition in writing to revoke the subpoena. Unless filed through the Board's E-Filing system, the petition to revoke must be received on or before the official closing time of the receiving office on the last day for filing. If filed through the Board's E-Filing system, it may be filed up to 11:59 pm in the local time zone of the receiving office on the last day for filing. Prior to a hearing, the petition to revoke should be filed with the Regional Director; during a hearing, it should be filed with the Hearing Officer or Administrative Law Judge conducting the hearing. See Board's Rules and Regulations, 29 C.F.R. Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings) and 29 C.F.R Section 102.111(a)(1) and 102.111(b)(3) (time computation). Failure to follow these rules may result in the loss of any ability to raise objections to the subpoena in court.

**B-1-118CRIT**

Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at   Oakland, California

Dated:   May 21, 2018

        *John F. Ring*
        John Ring, Chairman

    NOTICE TO WITNESS. Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed. A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

### PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. .The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is mandatory in that failure to supply the information may cause the NLRB to seek enforcement of the subpoena in federal court.

**ATTACHMENT**

**DEFINITIONS AND INSTRUCTIONS[1]**

a. "Document" means any existing printed, typewritten or otherwise recorded material of whatever character, records stored on computer or electronically, records kept on microfiche or written by hand or produced by hand and graphic material, including without limitation, checks, cancelled checks, computer hard drives, discs and/or files and all data contained therein, computer printouts, E-mail communications and records, any marginal or "post-it" or "sticky pad" comments appearing on or with documents, licenses, files, letters, facsimile transmissions, memoranda, telegrams, minutes, notes, contracts, agreements, transcripts, diaries, appointment books, reports, records, payroll records, books, lists, logs, worksheets, ledgers, summaries of records of telephone conversations, summaries of records of personal conversations, interviews, meetings, accountants' or bookkeepers' work papers, records of meetings or conference reports, drafts, work papers, calendars, interoffice communications, financial statements, inventories, news reports, periodicals, press releases, graphs, charts, advertisements, statements, affidavits, photographs, negatives, slides, disks, reels, microfilm, audio or video tapes and any duplicate copies of any such material in the possession of, control of, or available to the subpoenaed party, or any agent, representative or other person acting in cooperation with, in concert with or on behalf of the subpoenaed party.

b. The term "the Employer" or "Respondent" herein refers to Tesla, Inc.

c. The term "the Employer's Fremont Facility" or "Respondent's Fremont Facility" refers to the Respondent's facility located at 45500 Fremont Boulevard, Fremont, California.

d. The term "the Employer's Sparks Facility" or "Respondent's Sparks Facility" refers to the Respondent's facility located at 1 Electric Avenue, Sparks, Nevada.

e. The term "Union" as used herein refers to International Union, United Automobile, Aerospace, and Agricultural Workers of America, AFL-CIO.

f. "Person" or "persons" means natural persons, corporations, limited liability companies, partnerships, sole proprietorships, associations, organizations, trusts, joint ventures, groups of natural persons or other organizations, or any other kind of entity.

---

[1] To the extent that documents or communications responsive to this subpoena include health information protected from disclosure under the Health Information Portability and Accountability Act of 1996, redact all identifiers (including, inter alia, the name, street address, date of birth, and social security number) of the individual who is the subject of that information and of the relatives, employers, or household members of that individual, from the document and ensure that the remaining information could not be used alone or in combination with other information to identify the individual who is the subject of the information or the relatives, employers, or household members of that individual.

22-60493.5645

g. "Period covered by this subpoena" or "the relevant period of time" means the period from October 18, 2016, through the present, and the subpoena seeks only documents from that period unless another period is specified. This subpoena request is continuing in character and if additional responsive documents come to your attention after the date of production, such documents must be promptly produced.

h. Any copies of documents that are different in any way from the original, such as by interlineation, receipt stamp, notation, or indication of copies sent or received, are considered original documents and must be produced separately from the originals.

i. Electronically stored information ("ESI") should be produced in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. The NLRB considers "reasonably usable" productions of ESI to consist of ESI rendered to TIFF or PDF format (discussed below), accompanied by text extracted from the original electronic files and a load file containing metadata extracted and stored in a standard industry format (i.e., a load file suitable for loading into Relativity or a similar review platform). Unless otherwise agreed, the load file should contain: a unique identifier (i.e., Bates number) for each item, custodian, source device, source and folder path, production path, modified date, modified time, to, from, cc, bcc, date sent, time sent, subject, date received, time received, and attachment information (i.e., attachment names and separate fields listing the beginning and ending Bates range(s) of attachment(s)). Where available, message ID and thread ID should also be produced. The General Counsel is amenable to discussing alternative forms of production, and can provide additional load file specifications upon request.

j. All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Documents should be uniquely and sequentially Bates numbered with an endorsement burned into each image. All TIFF file names shall include the unique Bates number burned into the image. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.

k. All spreadsheet and presentation files (e.g., Excel and PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format). The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

l. All hidden text (e.g., track changes, hidden columns, mark-ups, and notes) shall be expanded and rendered in the image file. For files that cannot be expanded, the native files shall be produced with the image file. All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

m. Respondent shall identify, collect, and produce any and all data which is responsive to this subpoena which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data,

2

22-60493.5646

instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other related files, as well as other less common but similar data types, shall be produced after consultation with and written consent of the General Counsel about the format for the production of such data. Prior to any production of responsive data from Social Media (e.g., Twitter, Facebook, Google+, Linkedin, etc.) Respondent shall first discuss with the General Counsel the potential export formats before collecting the information.

n.  Photographs shall be produced as single-page JPG files with a resolution equivalent to the original image as they were captured/created.

o.  De-duplication of exact copies within a custodian's data may be done, but all file paths and custodians must be provided for each duplicate document. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near de-duplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the General Counsel. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the General Counsel as additional metadata fields. Respondent shall not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the General Counsel.

p.  If any document covered by this subpoena contains codes or classifications, all documents explaining or defining the codes or classifications used in the document must also be produced.

q.  Electronically stored information should be produced in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

r.  Whenever used in this subpoena, the singular shall be deemed to include the plural, and vice versa; the present tense shall be deemed to include the past tense and vice versa; references to parties shall be deemed to include any and all of their officers, agents and representatives; the masculine shall be deemed to include the feminine and vice versa; the disjunctive "or" shall be deemed to include the conjunctive "and" and vice versa; and each of the words "each", "any", "every", and "all" shall be deemed to include each of the other words.

s.  The terms "copy" or "copies" shall refer to exact and complete copies of original documents.  Copies may be produced in lieu of originals, provided that such copies are exact and complete copies of original documents and that the original documents be made available at the time of production for the purposes of verifying the accuracy of such copies.  Any copies of original documents which are different in any way from the original, whether by interlineation, receipt, stamp, notations, indication of copies sent or received, or otherwise, shall themselves be considered original documents and must be produced separately from the originals or copies of originals.

22-60493.5647

t.   Documents subpoenaed shall include all documents in your physical possession, custody, or control, your present or former supervisors, agents, attorneys, accountants, advisors, investigators, and any other persons and companies directly or indirectly employed by, or connected with you.

u.   This request contemplates production of responsive documents in their entirety, without abbreviation or expurgation.

v.   If any document responsive to this subpoena is withheld from production on the asserted ground that it is privileged, identify and describe:

> (a)   the privilege claimed;
> (b)   the author;
> (c)   the recipient;
> (d)   the date of the original document; and
> (e)   the subject matter of the document.

w.   All documents produced pursuant to this subpoena should be organized by the subpoena paragraph that each document or set of documents is responsive to, and labels referring to that subpoena paragraph should be affixed to each document or set of documents.

x.   For the purpose of reducing delay or expense, an agent of the National Labor Relations Board will be available to meet with you, or your designated or legal representative, at a mutually agreed-upon time and place, prior to the return date of the subpoena, for the purpose of examining and/or copying documents subpoenaed, and/or to enter into stipulations concerning the contents of the subpoenaed documents.

y.   Any custodian of records of any entity subpoenaed shall be one or more designated agents with knowledge sufficient to testify in detail concerning the contents of documents to be produced.

z.   If any document responsive to any request herein was, but no longer is, in your possession, custody or control, identify the document (stating its date, author, subject, recipients and intended recipients); explain the circumstances by which the document ceased to be in your possession, custody or control, and identify (stating the person's name, employer title, business address and telephone number, and home address and telephone number) all persons known or believed to have the document or a copy thereof in their possession, custody or control.

aa.   If any document responsive to any request herein was destroyed, discarded, or otherwise disposed of for whatever reasons, identify the document (stating its date, author, addressee(s), recipients and intended recipients, title and subject matter); explain the circumstances surrounding the destruction, discarding or disposal of the documents, including the timing of the destruction, discharging or disposal of the

4

22-60493.5648

document, and identify all persons known or believed to have the document or a copy thereof in their possession, custody or control.

bb. Provide the following information regarding production of subpoenaed emails:

    a. Whose email was searched;
    b. What email was searched;
    c. For each custodian's mailbox, what folders, archives and document management systems were searched;
    d. Indicate whether the search included both email stored on the Employer's server for its company email system, and email stored in personal folders and archives on individual computers;
    e. Indicate whether the search include email hosted on third-party service providers such as Google or Yahoo, including both company and personal accounts used by custodians for work-related communications;
    f. How the search was conducted;
    g. Who conducted the searches, and what search software and/or search terms were used to locate emails.

cc. Unless otherwise stated, this subpoena does not supersede, revoke or cancel any other subpoena(s) previously issued in this proceeding.

## DOCUMENTS TO BE PRODUCED

1. A copy of confidentiality agreements applicable to statutory employees at Respondent's Fremont Facility during the relevant period of time, including all versions of such agreements.

2. To the extent not provided in Request No. 1, documents that refer to, reflect, or memorialize any rules or policies applicable to statutory employees at Respondent's Fremont Facility during the relevant time period on the topic of public information, confidential information, communication with media, the discussion of confidential information, the use of social media, the reference to Respondent in books or blogs, and consequences for any violations of any such policies or rules.

3. Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding employees discussing Respondent's work rules and/or confidentiality agreement, sharing Respondent's work rules and/or confidentiality agreement with other employees or third-parties, or taking pictures of Respondent's work rules and/or confidentiality agreement.

4. Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility,

5

regarding off-duty employees leafleting, distributing flyers, or otherwise distributing documents in the parking lot of Respondent's Fremont Facility.

5. To the extent not included in Request No. 4, documents reflecting the policies or rules regarding the seeking of preapproval from Respondent, or any of its agents, prior to statutory employees' distributing written materials in effect during the relevant period of time at Respondent's Fremont Facility.

6. Documents requesting employees, during the relevant period of time, at Respondent's Fremont Facility to sign, whether written or electronic, agreements on the topic of confidentiality, communication with media, the discussion of confidential information, the use of social media, the reference to Respondent in books or blogs, and consequences for any violations of any such policies or rules.[2]

7. Documents reflecting all internal company communications from January 1, 2016 to the present that discuss, refer to, mention or name the International Union, United Automobile, Aerospace, and Agricultural Workers of America, AFL-CIO or the UAW or unions including, but not limited to, emails or other communications sent or received by Elon Musk, Mark Lipscomb, Emma Cruz, Liza Lipscomb, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tope Ogunniyi, Victor Facha, Time Fenelon, Homer Hunt, Armando Rodriguez, Dave Teston, any security guard or individual providing security services, Lauren Holcomb, or Ricky Gecewich.

8. To the extent not covered by Request No. 7 above, documents reflecting all internal company communications from January 1, 2016 to the present that contain the words "union", "Union", "union organizing", "Union organizing", "organizing campaign", "organizing activities", "leafleting", "union shirts", "unionizing", "Unionizing", "worksafe", "CalOSHA 300 logs", "workday use", and "Workday use" sent or received by Elon Musk, Mark Lipscomb, Emma Cruz, Liza Lipscomb, Seth Woody, David Zweig, Juan Martinez, Andrew McIndoe, Tope Ogunniyi, Victor Facha, Time Fenelon, Homer Hunt, Armando Rodriguez, Dave Teston, any security guard or individual providing security services, Lauren Holcomb, or Ricky Gecewich.

9. Documents reflecting any statements made between January 1, 2016 to the present by Respondent, including correspondence to any public entity, statements to shareholders, and press releases, on the topic of the Union, unions, confidentiality, unionizing, "Jose Moran", and/or "Richard Ortiz".

10. Documents and data reflecting or referring to any statements made by Elon Musk between June 1, 2016 and the present, including statements made on any social

---

[2] In lieu of a response to Request No. 6, Counsel for the General Counsel is willing to enter into a stipulation with the parties on the topic of Respondent requiring that statutory employees at Respondent's Fremont Facility, as a condition of employment and during the relevant time period, sign confidentiality agreements.

22-60493.5650

media platform or sent via direct message using any communication platform (including those reported by Gizmodo on or about February 9, 2017), on the topic of unions, the Union, unionizing, leafleting, the distribution of flyers/shirts, union shirts, "Jose Moran", or "Richard Ortiz". The term "social media" shall include, but is not limited to, the platforms of Facebook, Twitter, Instagram, Snapchat, Tumblr, Weibo, Reddit, Flickr, LinkedIn, YouTube, and Google+.

11. Documents reflecting policies in effect at Respondent's Fremont and Sparks Facility regarding employees discussing safety issues and/or concerns with other employees, labor unions, or other third parties during the relevant period of time.

12. Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, work rules, the Team Wear rule/policy, or other work rules, in effect during the relevant period of time at Respondent's Fremont and Sparks Facility, governing the clothing employees are permitted to wear while on-duty at Respondent's Fremont and Sparks Facility, respectively.

13. Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding Fremont employees' use of WorkDay, including, but not limited to, any document signed or given to statutory employees during the relevant time period on the topic of WorkDay use or misuse.

14. Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding Fremont access to the Fremont Facility by any person, including the Fremont Facility parking lot.

15. Documents, including, but not limited to, contracts, employee handbooks, house rules, codes of conduct, or other work rules, in either written or electronic form, in effect during the relevant period of time at Respondent's Fremont Facility, regarding employees' participation and/or cooperation in workplace investigations.

16. Documents, including, but not limited to, video recordings or surveillance recordings of the exterior portions of Respondent's Fremont Facility on February 10, 2017, reflecting interactions between Respondent's supervisors/agents/security guards and individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility.

17. Documents, including, but not limited to, video recordings or surveillance recordings of the exterior portions of Respondent's Fremont Facility on May 24, 2017, reflecting interactions between Respondent's supervisors/agents/security

22-60493.5651

guards and individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility.

18. Documents, including, but not limited to, emails, letters, notices, investigations, investigatory reports, investigatory notes, investigatory interviews, videos, pictures, complaints, incident reports, or other documents, in written or electronic form, that reflect interactions between Respondent's supervisors/agents/security guards and individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility around February 10, 2017 and around May 24, 2017.

19. To the extent not provided in response to Request No. 18, documents, including, but not limited to, emails, letters, investigations, investigatory reports, investigatory notes, investigatory interviews, videos, pictures, complaints, incident reports, or other documents, in written or electronic form, regarding complaints by employees about individuals leafleting, distributing flyers, or otherwise distributing documents outside of Respondent's Fremont Facility around February 10, 2017 and around May 24, 2017.

20. Documents, including, but not limited to, emails, investigations, complaints, verbal or written disciplines, incident reports, or other documents, in written or electronic form, that reflect employee injuries, employee discipline, employee disputes, work related problems, or manufacturing defects or any other manufacturing problems, during the relevant period of time at Respondent's Fremont or Sparks Facility, as a result of employees allegedly not following Respondent's Team Wear rule/policy and/or wearing shirts or hats with Union insignia.

21. To the extent not already provided in response to Request No. 20, documents, including, but not limited to, emails, investigations, complaints, verbal or written disciplines, incident reports, invoices, or other documents, in written or electronic form, that reflect any damage or mutilation caused to Tesla automotive products and/or parts manufactured by Tesla or otherwise used in Tesla automobiles in the General Assembly area by the use of non-teamwear compliant clothing, including union shirts during the relevant period of time.

22. The shirt and pants Respondent provides to employees of the General Assembly line pursuant to the Respondent's team wear policy applicable to General Assembly employees at Respondent's Fremont Facility during the relevant period of time.

23. Documents memorializing any discussions between Armando Rodriguez and employees during the pre-shift meeting(s) held by Supervisor Armando Rodriguez around March 23, 2017 at Respondent's Fremont Facility.

22-60493.5652

24. Documents reflecting any statements made by Armando Rodriguez to employees of Respondent's Fremont Facility during the pre-shift meeting(s) around March 23, 2017, including copies of Armando Rodriguez's black book used to take notes.

25. Documents, including, but not limited to, notes, e-mails, bullet points, flyers, notices, postings, written memorializations of verbal discussions, or other documents, in written or electronic form, that pertain to employees' use of CalOSHA 300 logs, including, but not limited to, e-mails between employees and any agent of the Respondent referring to the use of CalOSHA 300 logs between April 1, 2017 to the present.

26. Documents, in written or electronic form, that reflect the discussions between Director of Global Environmental Health and Safety Seth Woody and Fremont Facility employees regarding the topic of the use of CalOSHA 300 logs on or about April 28, 2017.

27. Documents, in written or electronic form, that reflect the discussions between Associate Human Resources Manager Liza Lipson and Fremont Facility employees regarding the use of CalOSHA 300 logs on or about May 24, 2017.

28. Documents, in written or electronic form, that reflect the discussions between Supervisor Homer Hunt and Fremont Facility employees in or about August 2017 regarding the topic of employees selecting a union as a bargaining representative and/or a union representing employees at the Respondent's Fremont Facility.

29. Documents, in written or electronic form, that reflect the discussions between Supervisor Tope Ogunniyi and Fremont Facility employees between August 1, 2017 and September 31, 2017 regarding the topic of employee team wear.

30. Documents, in written or electronic form, that reflect the discussions between Associate Manager of Training Dave Teston and Sparks Facility employees on or about September 8, 2017.

31. Documents, in written or electronic form, that reflect the discussions between Principal Employee Relations Partner Ricky Gecewich and Fremont Facility employees around September 21, 2017, and October 19, 2017, regarding Facebook postings and/or employee use of WorkDay.

32. Documents, including, but not limited to, e-mails, text messages, or other electronic messages sent between Director of Human Resources for

9

Manufacturing Josh Hedges and Respondent Fremont Facility employee Travis Pratt on the topic of social media postings in September and October 2017.

33. Documents, including, but not limited to, e-mails, text messages, or other electronic messages sent by Travis Pratt or Bryan Kositch to any agent of Respondent on the topic of social media postings in September and October 2017.

34. Documents, including, but not limited to emails, text messages, or other electronic messages sent by Principal Employee Relations Partner Ricky Gecewich to Fremont Facility employees around October 19, 2017, regarding employee use of WorkDay.

35. The complete personnel file, excluding confidential medical records, of Fremont Facility employee Jose Moran.

36. The complete personnel file, excluding confidential medical records, of former Fremont Facility employee Richard Ortiz.

37. Documents reflecting all information, including, but not limited to, witness statements, video recordings, investigatory interviews, investigatory notes, investigatory reports, disciplines, written memorializations of conversations, or incident reports, in written or electronic form, that the Employer relied upon in deciding to discipline Jose Moran around October 19, 2017.

38. Documents reflecting all information, including, but not limited to, witness statements, video recordings, investigatory interviews, investigatory notes, investigatory reports, disciplines, written memorializations of conversations, or incident reports, in written or electronic form, that the Employer relied upon in deciding to terminate Richard Ortiz around October 19, 2017.

39. Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for alleged use or misuse of WorkDay.

40. Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the

10

22-60493.5654

relevant period of time to Fremont Facility employees for alleged dishonesty or lying.

41. Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for conduct related to employee cooperation in a workplace investigation.

42. Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for alleged use of social media.

43. Documents, including, but not limited to, disciplines, suspensions, written warnings, written memorializations of verbal warnings, write-ups, counselings, written memorializations of verbal counselings, last-chance agreements, or terminations, in written or electronic form, that Respondent issued during the relevant period of time to Fremont Facility employees for allegedly lying during a work-related investigation conducted by Respondent.

44. Documents that reflect the layout of Respondent's Fremont Facility on February 10, 2017 and May 24, 2017, including any documents submitted by Respondent to any governmental entity reflecting the layout of the Respondent's Fremont Facility. For any document produced in response to this request, documents that reflect the identity of the person who created or produced the document and the date the document was created or produced.

45. To the extent not provided in response to Request No. 44, documents that depict each exterior ingress and egress of Respondent's Fremont Facility on February 10, 2017 and May 24, 2017. For any document produced in response to this request, documents that reflect the identity of the person who created or produced the document and the date the document was created or produced.

46. To the extent not provided in response to Request Nos. 44 or 45, photographs depicting each exterior ingress and egress of Respondent's Fremont Facility as they existed on February 10, 2017 and May 24, 2017. For any document produced in response to this request, documents that reflect the identity of the

11

22-60493.5655

person who created or produced the document and the date the document was created or produced.

47. To the extent not provided in Response to Request Nos. 44, 45, or 46, documents that reflect the layout of Respondent Fremont Facility's parking lot on February 10, 2017 and May 24 2017.

48. The names, addresses, e-mail addresses, telephone numbers, and any other contact information of any individual providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017.

49. Documents showing the name of every security guard stationed or working at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017, and a copy of each individual's identification badge.

50. Documents that have a photograph, or WorkDay profile that contains a photo, of any individual directly employed by Tesla to provide security services or who provide security services for Tesla at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017.

51. Documents that reflect the photographs and Workday profiles of any individual who provided security services at Respondent's Fremont Facility on February 10, 2017 and May 24 , 2017.

52. Documents that memorialize or reflect any agreements for the provision of security guard services at the Respondent's Fremont Facility during the relevant time period.

53. The licensing agreement between Respondent and Workday for use of Workday products or services by employees at Respondent's Fremont facility.

54. Documents that reflect the terms of use of Workday that apply to users of Workday at Respondent's Fremont Facility during the relevant period of time.

55. Documents that have any photographs of employee identification cards taken by individuals providing security services at Respondent's Fremont Facility on or about February 10, 2017 and May 24, 2017.

22-60493.5656

# EXHIBIT B

# NOTICE

You will note that the enclosed complaint has a Notice of Hearing for a specific date. Please compare that date now with your calendar and those of your parties and witnesses, for current conflicts. Requests for a brief postponement made within 10 days of complaint issuance will normally be honored. If no such request for a postponement is made to the undersigned, it will be assumed that no party has any objections to the hearing date. Thereafter, it can be assumed that any postponement requests will be denied by the undersigned (or resisted before an Administrative Law Judge), absent truly unforeseeable <u>and</u> unpreventable conflicts that arose following the ten-day period. In this regard, Board hearing dates are not considered to be subordinate to other social, business, or legal interests of the parties that may thereafter arise. Postponement requests for "settlement negotiations" are ordinarily denied (or resisted).

Any postponement request must be made in writing and give (a) the reason for the request; (b) the opposing party's position on postponement; and (c) suggested alternative dates of the requester and opposing party.

**Valerie Hardy-Mahoney**
**Regional Director**

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual              Case 32-CA-197020

    and

JONATHAN GALESCU,  an Individual          Case 32-CA-197058

    and

RICHARD ORTIZ, an Individual               Case 32-CA-197091

    and

INTERNATIONAL UNION, UNITED          Case 32-CA-197197
AUTOMOBILE, AEROSPACE AND          Case 32-CA-200530
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

## SECOND ORDER CONSOLIDATING CASES, AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations

Board (the Board) and to avoid unnecessary costs or delay, IT IS ORDERED THAT Cases 32-

CA-197020, Case 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, which

are based on charges filed by Michael Sanchez, an Individual, Jonathan Galescu, an Individual,

Richard Ortiz, an Individual, and International Union, United Automobile, Aerospace and

Agricultural Workers of America, AFL-CIO (Union), respectively, against Tesla, Inc.

(Respondent) are consolidated.

This Second Order Consolidating Cases, Amended Consolidated Complaint and Notice

of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National

1

22-60493.5659

Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. and Sections 102.15 and 102.17 of the

Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)     The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17,

2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)     The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez

on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)     The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17,

2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)     The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu

on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)     The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017,

and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)     The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on

July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)     The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and

a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July

28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and

a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July

28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, and an automotive manufacturing facility in Fremont, California (the Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending August 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a), purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

4.

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Victor Facha | - | Supervisor |
| Lauren Holcomb | - | Environmental Health Safety and Sustainability Specialist |
| Liza Lipson | - | Human Resources Business Partner |
| Mark Lipscomb | - | Vice-President of Human Resources |
| Juan Martinez | - | Production Manager |

22-60493.5661

| Elon Musk | - | Chief Executive Officer |
| Armando Rodriguez | - | Supervisor |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |
| Red Shirt Supervisor No. 1 | - | Supervisor |

6.

At all material, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| John Does 1-6 | - | Security Guards |
| Unknown Human Resources Agent | - | Agent |

7.

(a)    Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement:

(i)    These obligations are straightforward. Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started. This includes information about…customers, suppliers, employees…. and anything similar.

(ii)    Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

(iii)    Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv)  take or post photos or make video or audio recordings inside Tesla facilities,

(v)  forward work e-mails outside of Tesla or to a personal email account,

(vi)  or write about your work in any social media, blog, or book.  If you are unsure, check with your manager, HR, or Legal.

(vii)  The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment. Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution.  These obligations remain in place even if no longer working at Tesla.

(b)     About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at Respondent's Facility, during a one-on-one meeting with an employee, prohibited the employee from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 5(a).

(c)     On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 1-4,  restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)     On February 10, 2017, Respondent, by Male Security Guard No. 1, outside the entrance to Door 2 at Respondent's Facility:

(i)     On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

(ii)    Male Security Guard No. 1 engaged in the conduct described above in paragraph 5(d)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

22-60493.5663

(e)     On February 10, 2017, Respondent, by Female Security Guard No. 2, outside the

entrance to Door 1 at Respondent's Facility:

> (i)     told off-duty employees to leave Respondent's premises.
>
> (ii)    Security Guard No. 2 engaged in the conduct described above in paragraph 5(e)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(f)     On February 10, 2017, Respondent, by Male Security Guard No. 3, outside the

entrance to Door 1 at Respondent's Facility:

> (i)     told off-duty employees to leave Respondent's premises.
>
> (ii)    Security Guard No. 3 engaged in the conduct described above in paragraph 5(f)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(g)     On February 10, 2017, Respondent, by Female Security Guard No. 4, outside the

entrance to Door 3 at Respondent's Facility:

> (i)     told an off-duty employee to leave Respondent's premises.
>
> (ii)    Security Guard No. 4 engaged in the conduct described above in paragraph 5(g)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(h)     On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the

back entrance to Respondent's Facility by the Receiving Addition:

> (i)     told an off-duty employee to leave the premises.
>
> (ii)    Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 5(h)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(i)    On February 10, 2017, Respondent, by an unnamed Human Resources Agent who

was called by Red Shirt Male Supervisor No. 1, during a phone conversation:

22-60493.5664

     (i)      told an off-duty employee who was on medical leave to leave Respondent's premises.

     (ii)     The unnamed Human Resources Agent engaged in the conduct described above in paragraph 5(i)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(j)    On March 23, 2017, Respondent, by Supervisor Armando Rodriguez,

during a pre-shift meeting at Respondent's Facility:

     (i)      told employees that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent.

     (ii)     threatened that Respondent would terminate employees if they passed out stickers, leaflets, or materials that were not approved by Respondent.

     (iii)   Supervisor Armando Rodriguez engaged in the conduct described above in paragraph 5(j) because employees engaged in Union activities and to discourage these and other protected, concerted activities.

(k)    On April 5 2017, Respondent, by David Zweig, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(l)    On April 28, 2017, Respondent, by Seth Woody, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(m)    On May 24, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(n)    On May 24, 2017, by Female Security Guard No. 5, at the security counter near the Door 4 entrance at Respondent's Facility, told an employee that the employee could not hand out flyers on Respondent's premises.

(o)     On May 24, 2017, by Male Security Guard No. 6, outside the Door 4 entrance at Respondent's Facility:

   (i)     on two occasions, instructed an off-duty employee to leave the premises.

   (ii)    Male Security Guard No. 6 engaged in the conduct described above in paragraph 5(n)(i) because the employee because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(p)     On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lispon, during separate meetings with two employees, in the presence of Environmental Health Safety and Sustainability Specialist Laurent Holcomb, interrogated the employee about the employee's Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

8.

By the conduct described above in paragraph 7, Respondent has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.

9.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Amended Consolidated Complaint. The answer must be **received by this office on or before September 15, 2017, or postmarked on or before**

**September 14, 2017**.  Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amended Consolidated Complaint are true.

### NOTICE OF HEARING

**PLEASE TAKE NOTICE THAT** on November 14, 2017, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Suite 300N, Oakland, California 94612, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Amended Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 1st day of September 2017.

Valerie Hardy-Mahoney  
Regional Director  
National Labor Relations Board  
Region 32  
1301 Clay Street, Suite 300N  
Oakland, CA 94612-5224

Attachments

Form NLRB-4338
(2-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

**NOTICE**

Cases:  32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end. An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.

However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds thereafter must be set forth in *detail;*

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request;

*and*

(5) Copies must be simultaneously served on all other parties (*listed below*), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Arnnon Geshuri, Vice President of HR
Tesla Motors Corporation
45500 Fremont Blvd.
Fremont, CA 94538

Elizabeth Parry, Esq.
Littler Mendelson, P.C.
1255 Treat Blvd., Suite 600
Walnut Creek, CA 94597

Richard Ortiz
37607 Walnut
Newark, CA 94560

Michael J. Lotito, Esq.
Littler Mendelson, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104

John M. Skonberg, Esq.
Littler Mendelson, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104

Michael Sanchez
25225 Soto Road
Hayward, CA 94544

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers LLP
6300 Wilshire Bld., Suite 2000
Los Angeles, CA 90048

Jonathan Galescu
361 Carousel Drive
Vallejo, CA 94589

Susan Reed
IU, UA, A&AWA, AFL-CIO
8000 E Jefferson Avenue
Detroit, MI 48214

Form NLRB-4668
(6-2014) Continued

- **Exhibits**:  Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.  If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing.  If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter.  Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

Form NLRB-4668
(6-2014) Continued

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative**. If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

# EXHIBIT C

22-60493.5672

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 32**

**TESLA, INC.**

    **and**

**MICHAEL SANCHEZ, an Individual**                **Case 32-CA-197020**

    **and**

**JONATHAN GALESCU,  an Individual**           **Case 32-CA-197058**

    **and**

**RICHARD ORTIZ, an Individual**               **Case 32-CA-197091**

    **and**

**INTERNATIONAL UNION, UNITED**         **Case 32-CA-197197**
**AUTOMOBILE, AEROSPACE AND**          **Case 32-CA-200530**
**AGRICULTURAL WORKERS OF**             **Case 32-CA-208614**
**AMERICA, AFL-CIO**                       **Case 32-CA-210879**

**THIRD ORDER CONSOLIDATING CASES, SECOND AMENDED**
**CONSOLIDATED COMPLAINT AND NOTICE OF HEARING**

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** the Amended Consolidated Complaint that issued on September 1, 2017, in Cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, alleging that Tesla, Inc. (Respondent) has violated the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the Act), by engaging in unfair labor practices, is further consolidated with Cases 32-CA-208614 and 32-CA-210879, filed by the International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO (Union) against Respondent, which allege that Respondent has engaged in further unfair labor practices within the meaning of the Act.

This Third Order Consolidating Cases, Second Amended Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. and Sections 102.15 and 102.17 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)     The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)     The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)     The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)     The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)     The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)     The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)     The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(l)     The charge in Case 32-CA-208614 was filed by the Union on October 25, 2017, and a copy was served on Respondent by U.S. mail on October 25, 2017.

(m)     The first-amended charge in Case 32-CA-208614 was filed by the Union on March 12, 2017, and a copy was served on Respondent by U.S. mail on March 13, 2018.

(n)     The charge in Case 32-CA-210879 was filed on December 1, 2017, and a copy was served on Respondent by U.S. mail on December 4, 2017.

(o)     The first-amended charge in Case 32-CA-210879 was filed on December 6, 2017, and a copy was served on Respondent by U.S. mail on December 7, 2017.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, an automotive manufacturing facility in Fremont, California (the Fremont Facility), and an automotive battery facility in Sparks, Nevada (the Sparks Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Fremont Facility,

purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

(c)     During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Sparks Facility, purchased and received goods valued in excess of $50,000 directly from sources located outside the State of Nevada.

<center>3.</center>

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

<center>4.</center>

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

<center>5.</center>

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Elon Musk | - | Chief Executive Officer |
| Mark Lipscomb | - | Vice-President of Human Resources |
| Emma Cruz | - | Human Resources Business Partner |
| Liza Lipscomb | - | Human Resources Business Partner |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |

| | | |
|---|---|---|
| Juan Martinez | - | Manager, Manufacturing |
| Andrew McIndoe | - | Associate Production Manager |
| Tope Ogunniyi | - | Associate Production Manager |
| Victor Facha | - | Supervisor |
| Tim Fenelon | - | Supervisor |
| Homer Hunt | - | Supervisor |
| Armando Rodriguez | - | Supervisor |
| Dave Teston | - | Supervisor |
| Red Shirt Male Supervisor No. 1 | - | Supervisor |
| Arnold (Last Name Unknown) | - | Supervisor |
| John Doe | - | Production Supervisor |
| Lauren Holcomb | - | Environmental Health Safety and Sustainability Specialist |
| Ricky Gecewich | - | Employee Relations Investigator |

6.

At all material times, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| John/Jane Does 1-6 | - | Security Guards |
| Name Unknown | - | Human Resources Agent |

7.

(a)     Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement at the Fremont facility:

(i)     These obligations are straightforward.  Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started.  This includes information about…customers, suppliers, employees…. and anything similar.

(ii)     Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

(iii)     Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv)     or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal.

(v)     The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment.  Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

(b)     About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, during a one-on-one meeting with employees, prohibited employees from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 7(a).

(c)     On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 1-4,  restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)   On February 10, 2017, Respondent, by John Doe Security Guard No. 1, outside the entrance to Door 2 at the Fremont facility:

      (i)      On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

      (ii)     Security Guard No. 1 engaged in the conduct described above in paragraph 7(d)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(e)      On February 10, 2017, Respondent, by Jane Doe Security Guard No. 2, outside the entrance to Door 1 at the Fremont facility:

      (i)      told off-duty employees to leave Respondent's premises.

      (ii)     Security Guard No. 2 engaged in the conduct described above in paragraph 7(e)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(f)      On February 10, 2017, Respondent, by John Doe Security Guard No. 3, outside the entrance to Door 1 at the Fremont facility:

      (i)      told off-duty employees to leave Respondent's premises.

      (ii)     Security Guard No. 3 engaged in the conduct described above in paragraph 7(f)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(g)      On February 10, 2017, Respondent, by Jane Doe Security Guard No. 4, outside the entrance to Door 3 at the Fremont facility:

      (i)      told an off-duty employee to leave Respondent's premises.

      (ii)     Security Guard No. 4 engaged in the conduct described above in paragraph 7(g)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(h)    On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the back entrance to the Fremont facility by the Receiving Addition:

    (i)    told an off-duty employee to leave the premises.

    (ii)    Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 7(h)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(i)    On February 10, 2017, Respondent, by a Human Resources Agent (whose name is currently unknown to the General Counsel) at the Fremont facility, during a phone conversation initiated by Red Shirt Male Supervisor No. 1:

    (i)    told an off-duty employee who was on medical leave to leave Respondent's premises.

    (ii)    The unnamed Human Resources Agent engaged in the conduct described above in paragraph 7(i)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(j)    On March 23, 2017, Respondent, by Supervisor Armando Rodriguez, during a pre-shift meeting at the Fremont facility:

    (i)    told employees that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent; and

    (ii)    threatened that Respondent would terminate employees if they passed out stickers, leaflets, or materials that were not approved by Respondent.

    (iii)    Supervisor Armando Rodriguez engaged in the conduct described above in paragraph 7(j)(i) and (ii) in response to employees engaging in Union activities and to discourage these and other protected, concerted activities.

(k)    On April 5, 2017, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(l)      Since about April 25, 2017, Respondent has maintained the following rule at

the Fremont facility:

> Team Wear:  It is mandatory that all Production Associates and
> Leads wear the assigned team wear.
>
> - On occasion, team wear may be substituted with all black
>   clothing if approved by supervisor.
> - Alternative clothing must be mutilation free, work
>   appropriate and pose no safety risks (no zippers, yoga pants,
>   hoodies with hood up, etc.).

(m)      On April 28, 2017, Respondent, by Human Resources Business Partner Seth

Woody, at the Fremont facility, attempted to prohibit employees from discussing safety

concerns with other employees and/or with the Union.

(n)      On May 24, 2017,  Respondent, by its Security Guards, including, but not

limited to, John/Jane Does Security Guards Nos. 5-6, restrained and coerced employees

who were engaged in leafleting on Respondent's premises outside of the Fremont facility

by repeatedly asking them to produce their employee identification badges and/or telling

them to leave Respondent's premises.

(o)      On May 24, 2017, by Jane Doe Security Guard No. 5, at the security counter

near the Door 4 entrance at the Fremont facility, told an employee that the employee could

not hand out flyers on Respondent's premises.

(p)      On May 24, 2017, by John Doe Security Guard No. 6, outside the Door 4

entrance at the Fremont facility:

> (i)      on two occasions, instructed an off-duty employee to leave
> the premises.
>
> (ii)     Security Guard No. 6 engaged in the conduct described above
> in paragraph 7(p)(i) in response to employees engaged in
> Union leafleting and to discourage these and other protected,
> concerted activities.

(q)    On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lipscomb, at the Fremont Facility during separate meetings with individual employees, in the presence of Environmental Health Safety and Sustainability Specialist Lauren Holcomb, interrogated employees about their Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

(r)    In the Spring of 2017, Respondent, by Supervisor Arnold (Last Name Unknown), at the Fremont facility, impliedly threatened an employee with unspecific reprisals for wearing a hat with Union insignia.

(s)    In August 2017, Respondent, by Supervisor Homer Hunt, at the Fremont facility, informed its employees that it would be futile for them to select the Union as their bargaining representative.

(t)    Respondent, at the Fremont facility in August or September 2017:

    (i)    by Production Supervisor (whose name is unknown) told employees they could not wear Union shirts at work and threatened employees they would be sent home for wearing shirts with Union insignia;

    (ii)    by Associate Production Manager Tope Ogunniyi, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(u)    About August 10, 2017, Respondent, at the Fremont Facility:

    (i)    by Supervisor Tim Fenelon, told employees to remove their shirts with Union insignia; and

    (ii)    by Associate Production Manager Tope Ogunniyi attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(v)    About August 14, 2017, by Associate Production Manager Tope Ogunniyi, at Respondent's Fremont facility, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by telling employees they are prohibited from wearing shirts with Union insignia.

(w)    On September 8, 2017, Respondent, by Supervisor Dave Teston, at Respondent's Sparks Facility in the production administrative room, impliedly threatened an employee with unspecified reprisals for wearing a hat with Union insignia.

(x)    On October 21, 2017, Respondent, by Associate Production Manager Andre McIndoe, at the Sparks Facility, told an employee that the employee should not speak with other employees about workplace concerns.

8.

(a)    On September 14, 2017, Respondent's employees Jose Moran and Richard Ortiz engaged in concerted activities with each other for the purposes of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz, who posted comments regarding wages and working conditions along with the screenshots of the employee photographs and job titles on "Fremont Tesla Employees for UAW Representation" a private employee-only Facebook page.

(b)    Respondent, by Employee Relations Investigator Ricky Gecewich, at the Fremont facility:

> (i)    About September 21, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

(ii)    About October 19, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

(iii)    About October 19, 2017, in an email, promulgated and/or disparately enforced a rule prohibiting employees from accessing the Workday System for non-business purposes without proper business justification.

(c)    On October 18, 2017, Respondent discharged Richard Ortiz.

(d)    On October 19, 2018, Respondent issued a disciplinary warning to Jose Moran.

(e)    Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c) and 8(d), because Jose Moran and Richard Ortiz engaged in the conduct described above in paragraph 8(a) and to discourage its employees from engaging in these and/or other protected concerted activities.

(f)    Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c), and 8(d), because Jose Moran and Richard Ortiz supported and assisted the Union and/or because they engaged in concerted activities, and to discourage employees from engaging in these activities.

9.

By the conduct described above in paragraphs 7 and 8(b) through 8(e), Respondent has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.

10.

By the conduct described above in paragraphs 8(b)(iii), 8(c), 8(d), and 8(f), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of

employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

<div align="center">11.</div>

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for the unfair labor practices described above in paragraphs 7 and 8(b) through 8(f), the General Counsel seeks an order requiring Respondent to Respondent to hold meetings with Respondent's production employees at its Fremont and Sparks facilities, scheduled to ensure the widest possible attendance, at which the Board's Notice is to be read to employees by a responsible management official of Respondent, or at Respondent's option, by a Board agent in that official's presence. Respondent shall be required to allow a representative of the Union to be present during such reading or readings of the Notice.

<div align="center">

### **ANSWER REQUIREMENT**

</div>

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Second Amended Consolidated Complaint. The answer must be **received by this office on or before April 13, 2018, or postmarked on or before April 12, 2018**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case

Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Second Amended Consolidated Complaint are true.

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street,

22-60493.5686

Oakland, California 94612, at a conference room to be determined, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.   At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint.   The procedures to be followed at the hearing are described in the attached Form NLRB-4668.   The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 30th day of March 2018.

/s/ Valerie Hardy-Mahoney

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

# EXHIBIT D

22-60493.5688

| From: | Rodriguez Ritchie, Edris W.I. |
|---|---|
| To: | Keahn Morris |
| Cc: | Garber, Noah |
| Subject: | FW: 32-CA-197020 et al., Tesla, Inc. - Response to May 24 and May 25, 2018 Meet and Confer |
| Date: | Tuesday, May 29, 2018 5:26:37 PM |

Dear Keahn,

As follow-up to my e-mail from Friday, could you please respond to the matters I identified therein?  There were a few areas where we requested clarification from your client and have not yet received a response.

As I mentioned in our telephone call and in my e-mail from Friday, I am amenable to providing you with some initial search terms regarding e-mail searches, which are noted below.  However, please note that counsel for the GC is doing so on such a quick turnaround as a matter of professional courtesy to you and are doing so in an effort to assist you in your searches.  These should not be considered a waiver of the General Counsel's rights and should not be considered as waivers of our rights to further amend these search terms in the near future.

Please let me know if you have any questions regarding these initial set of proposed search terms.

Request No. 2: Confidential, confidentiality, confidentiality policy, non-disclosure, public information, confidential information, communication with the media, communication with the press, social media.

Request No. 6: Request, sign, return, electronic signature, confidential, confidentiality, confidentiality policy, non-disclosure, public information, confidential information, communication with the media, communication with the press, social media.

Request Nos. 7-8: Union, unions, unionizing, Union Representative, Union Organizer, organizing, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, Union flyer, Union flyers, leaflet, leafletting, distributing, sticker, stickers, card, cards, Union shirt, Union shirts, organizing, organizer, entrance, parking lot, Workday, Workday use, work safe, worksafe, CalOSHA 300, Jose Moran, Richard Ortiz, Facebook.

Request Nos. 9-10: Union, unions, organize, organizing, organizing campaign, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, confidentiality, confidentiality agreement, Jose Moran, Richard Ortiz, Facebook.

Request No. 11: Tesla policy, Tesla rule, discuss, discussing, safety, safety problems, safety issues, safety complaints, safety concerns, union, unions, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO.

Request No. 12: Tesla policy, Tesla rule, approved clothing, Tesla shirt, UAW clothing, UAW shirt, Union clothing, Union shirt, UAW hat, Union hat, Team Wear rule, Team Wear policy.

Request No. 13: Tesla policy, Tesla rule, Workday, use of Workday, unauthorized use of

Workday, sharing pictures, sharing information, sharing Workday.

Request No. 14. Tesla policy, Tesla rule, access, parking lot, off duty, parking

Request No. 15. Tesla policy, Tesla rule, investigation, investigations, cooperation, assistance, investigatory interview, investigatory interviews, interview, interviews.

Request Nos. 18-19: Tesla policy, Tesla rule, investigation, investigations, cooperation, assistant, investigatory interview, investigatory interviews, complaints, harass, harassment, Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, Union flyer, Union flyers, leaflet, leafletting, distributing, Union shirt, Union shirts, organizing, organizer, entrance, parking lot, confrontation, ID, identification, badge, off duty.

Request No. 20: Injury, harm, risk, mutilation, damage, car, automobile, Team Wear, t-shirt, Union shirt, Union shirts, black, scratch, tear, dent.

Request Nos. 23-24: Armando, Armando Rodriguez, meeting, pre-shift, prestart, stand-up, March, March 2017, March 23, 2017, Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, stickers, leaflet, damage, property.

Request Nos. 25-27: Safety, safety concerns, safety complaints, safety issues, CalOSHA, CalOSHA logs, CalOSHA 300 logs, Liza Lipson, worksafe.

Request No. 28: Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, representative, Homer Hunt, meeting, discussion, talk, talked, employee, employees.

Request No. 29: Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, Tesla rule, Tesla policy, dress code, approved clothing, Tesla shirt, UAW clothing, UAW shirt, Union clothing, Union shirt, UAW hat, Union hat, Team Wear rule, Team Wear policy, Tope Ogunniyi, teamwear.

Request No. 30: Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, Tesla rule, Tesla policy, dress code, approved clothing, Tesla shirt, UAW clothing, UAW hat, Union hat, Team Wear rule, Team Wear policy, Dave Teston, concerns, issues, complaints.

Request Nos. 31 and 34: Ricky Gecewich, Facebook, Facebook posting, blog, social media, social media posting, Workday, investigation, investigations, cooperation, misconduct, Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, Jose Moran, Richard Ortiz.

Request No. 32: Josh Hedges, Travis Pratt, Facebook, Facebook posting, social media, social media posting, blog, investigation, investigations, cooperation, misconduct, Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO.

Request No. 33: Travis Pratt, Bryan Kositch, Facebook, Facebook posting, social media, social media posting, blog, investigation, investigations, cooperation, misconduct, Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO.

Request Nos. 37-39: Richard Ortiz, Jose Moran, Travis Pratt, Bryan Kositch, Ricky Gecewich, Facebook, Facebook posting, blog, social media, social media posting, Workday, investigation, investigations, cooperation, misconduct, Union, unionizing, Union Representative, Union Organizer, organizing campaign, organizing activities, UAW, United Autoworkers, AFL, AFL-CIO, United Automobile Aerospace, and Agricultural Workers of America AFL-CIO, Workday, misconduct, rule, policy.

Request Nos. 40 and 43: Discipline, verbal, warning, written, written memorialization, lying, dishonest, truth, investigation, investigations, cooperation, misconduct.

Request No. 41: Discipline, verbal, warning, written, written memorialization, investigation, investigations, cooperation, misconduct, termination.

Request No. 42: Discipline, verbal, warning, written, written memorialization, social media, Facebook, blog, post, misconduct, termination.

Regards,


Edris Rodriguez Ritchie
Field Attorney & Special Emphasis Program Coordinator
**National Labor Relations Board**
**Region 32**
Ronald V. Dellums Federal Building
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224
Tel: 510-671-3041
Fax: 510-637-3315
*Pronouns: he, him, his*

*The information contained in this electronic message may be confidential and may be subject to the attorney-client privilege and/or the attorney work product doctrine.  It is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, you are hereby notified that any use, dissemination or copying of this communication is strictly prohibited.  If you have received this electronic message in error, please delete the original message from your e-mail system.  Thank you.*

CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On June 1, 2018, I served a true copy of the following document(s) described as **RESPONDENT'S PETITION TO REVOKE SUBPOENA *DUCES TECUM* B-1-118CRIT ISSUED TO CUSTODIAN OF RECORDS AT TESLA, INC.** on the interested parties in this action as follows:

Edris W.I. Rodriguez Ritchie
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224
T: (510) 671-3041
E-mail: edris.rodriguezritchie@nlrb.gov

Noah J. Garber
Field Attorney, Region 32
National Labor Relations Board
1301 Clay Street, Suite 300N
Oakland, California 94612
T: (510) 671-3021
E-mail: noah.garber@nlrb.gov

Valerie Hardy-Mahoney
Regional Director, Region 32
National Labor Relations Board
1301 Clay Street, Ste. 300N
Oakland, CA 94612-5224
E-mail: valerie.hardy-mahoney@nlrb.gov

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address sasmith@sheppardmullin.com to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 1, 2018, at San Francisco, California.

_____
Sarah Smith

SMRH:486553367.1      -1-      CERTIFICATE OF SERVICE
CASE NO. 32-CA-197020 et al.

| From: | NLRBRegion32@nlrb.gov |
|---|---|
| To: | Sarah Smith |
| Subject: | RE: 32-CA-197020-Petition to Revoke a Subpoena |
| Date: | Friday, June 1, 2018 3:50:11 PM |

Confirmation Number: 1000213044

You have successfully accomplished the steps for E-Filing document(s) with NLRB Region 32, Oakland, California. This E-mail notes the official date and time of the receipt of your submission. Please save this E-mail for future reference.

| Date Submitted: | 6/1/2018 3:43:53 PM (UTC-08:00) Pacific Time (US & Canada) |
|---|---|
| Regional, Subregional Or Resident Office: | Region 32, Oakland, California |
| Case Name: | TESLA, INC. |
| Case Number: | 32-CA-197020 |
| Filing Party: | Charged Party / Respondent |
| Name: | Morris, Keahn N. |
| Email: | kmorris@sheppardmullin.com |
| Address: | Sheppard, Mullin, Richter & Hampton, LLP |
| | 4 Embarcadero Center, 17th Floor |
| | San Francisco, CA 94111 |
| Telephone: | (415) 434-9100 |
| Fax: | |
| Additional Email: | sasmith@sheppardmullin.com, mross@sheppardmullin.com |
| Attachments: | Petition to Revoke a Subpoena: 2018-06-01 Respondent's Petition to Revoke Subpoena Duces Tecum B-1-118CRIT Issued to Custodian of Records at Tesla, Inc. - NLRB.pdf |

*********************************************************************************

DO NOT REPLY TO THIS MESSAGE. THIS IS A POST-ONLY NOTIFICATION. MESSAGES SENT DIRECTLY TO THE EMAIL ADDRESS LISTED ABOVE WILL NOT BE READ.
*********************************************************************************

# EXHIBIT 7

22-60493.5694

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MARK S. ROSS, Cal. Bar No. 64812
KEAHN N. MORRIS, Cal. Bar No. 273013
Four Embarcadero Center, Suite 1700
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947

Attorneys for TESLA, INC.

<div align="center">

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 32

</div>

| | |
|---|---|
| TESLA, INC. | |
| and | |
| MICHAEL SANCHEZ, an Individual | Case No. 32-CA-197020 |
| and | |
| JONATHAN GALESCU, an Individual | Case No. 32-CA-197058 |
| and | |
| RICHARD ORTIZ, an Individual | Case No. 32-CA-197091 |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | Case No. 32-CA-197197<br>Case No. 32-CA-200530<br>Case No. 32-CA-208614<br>Case No. 32-CA-210879 |

<div align="center">

**RESPONDENT'S PETITION TO PARTIALLY REVOKE SUBPOENAS *DUCES TECUM* B-1-11BJS5V AND B-1-11BKOEJ ISSUED TO CUSTODIAN OF RECORDS AT TESLA, INC.**

</div>

## TABLE OF CONTENTS

<div align="right">Page</div>

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL BACKGROUND .....................................................................1

        A.     The Regional Director Issued the Consolidated and Amended Consolidated
               Complaints on August 31, 2017 and September 1, 2017 .............................2

        B.     The Second Amended Consolidated Complaint Issued by the Regional
               Director on March 30, 2018 Omitted Several Important Allegations
               Asserted in the Amended Consolidated Complaint ....................................3

        C.     Respondent Attempted to Meet and Confer With Counsel for the Charging
               Parties Over the Subpoena's Objectionable Instructions and Requests ....................5

III.    ARGUMENT ......................................................................................................5

        A.     Legal Standard.............................................................................................5

IV.     GENERAL OBJECTIONS AND RESPONSES ................................................8

**TABLE OF AUTHORITIES**

**Page(s)**

Federal Cases

*Aladdin Gaming, LLC*
    345 NLRB 588 (2005)............................................................................................14

*Brinks, Inc.*
    281 NLRB 468 (1986)....................................................................................5, 7, 10

*CNN America*
    352 NLRB 675 (2008)...........................................................................................6

*F.D.I.C. v. Garner*
    126 F.3d 1138, 1146 (9th Cir. 1997)........................................................30, 31, 33

*Kaiser Aluminum & Chemical Corp.*
    339 NLRB 829 (2003)..........................................................................................10

*Lindsay v. Fuyao Glass Am. Inc.*
    3:16-MC-00007, 2017 WL 1276728 (S.D. Ohio Apr. 6, 2017)................................30

*Mailhoit v. Home Depot, U.S.A, Inc.*
    285 F.R.D. 566 (C.D. Cal.. 2012) .....................................................................7, 14

*McDonald's USA, LLC*
    363 NLRB No. 144, slip. op. (2016) .....................................................................12

*NLRB v. Ampersand Publ'g, LLC*
    No. MC 15-130 AB, 2015 U.S. Dist. LEXIS 176001 (C.D. Cal. Dec. 1, 2015)............... *passim*

*NLRB v. Interstate Dress Carriers*
    610 F.2d 99 (3d Cir. 1979).....................................................................................5

*NLRB v. Jackson Hospital*
    257 F.R.D. 302 (D.D.C. 2009) .............................................................................10

*NLRB v. Pinkerton, Inc.*
    621 F.2d 1322 (6th Cir. 1980)................................................................................5

*NLRB v. Trades Council*
    131 LRRM 3132 (3d Cir. 1989).........................................................................7, 10

*Oklahoma Press Pub. Co. v. Walling*
    327 U.S. 186 (1946) ...................................................................................... *passim*

*Patrick Cudahy, Inc.*
    288 NLRB 968 (1988)..........................................................................................10

*Purdue Farms v. NLRB*
   144 F.3d 830 (D.C. Cir. 1998) ................................................................12

*Queen of the Valley Medical Center*
   20-CA-191739, JD-15-18 (February 28, 2018) ........................................7

*Taylor Farms Pacific*
   32-CA-116854, unpub. Board order issued Feb. 6, 2015 (2015 WL 514108)..........................49

Federal: Statutes, Rules, Regulations, Constitutional Provisions

29 C.F.R.
   § 102.31(b) ................................................................ *passim*

CalOSHA 300 ................................................................ *passim*

Federal Rules of Civil Procedure
   26(b) ................................................................6, 8
   26(b)(1)................................................................ *passim*
   26(b)(2)(B) ................................................................6
   26(b)(2)(C) ................................................................6
   26(b)(2)(C)(i) ................................................................8
   26(b)(2)(C)(iii) ................................................................7
   26(g) ................................................................8
   34(b)(1)(A) ................................................................ *passim*

Other Authorities

*The Sedona Principles: Best Practices, Recommendations & Principles for
   Addressing Electronic Document Production,* Second Edition (June 2007),
   available at https://thesedonaconference.org/publications
   (the "*Sedona Principles*")................................................................ *passim*

ULP Casehandling Manual
   ¶ 11776 ................................................................ *passim*
   ¶ 11782 ................................................................7, 10
   ¶ 11796 ................................................................7, 10
   ¶ 11792.1 ................................................................5
   ¶ 11794 ................................................................ *passim*

## I.    **INTRODUCTION**

Pursuant to section 102.31(b) of the Rules and Regulations of the National Labor Relations Board ("NLRB" or the "Board"), Tesla, Inc. ("Respondent" or "Tesla") hereby petitions that Subpoenas *Duces Tecum* B-1-11BJS5V and B-1-11BKOEJ ("Subpoena"), issued to the custodian of records of Respondent, and requested by Margo A. Feinberg, Counsel for Michael Sanchez ("Sanchez"), Jonathan Galescu, ("Galescu"), Richard Ortiz ("Ortiz"), and International Union, United Automobile, Aerospace, and Agricultural Workers of America, AFL-CIO ("Union" or "UAW") (collectively, "Charging Parties"), and copies of which are attached hereto as **Exhibit A** and **B[1]**, be revoked to the extent that it: (1) seeks information that is not relevant to the subject matter involved in the pending action; (2) does not describe the documents sought with sufficient particularity; (3) is overbroad, unduly burdensome, oppressive, and harassing; (4) is vague and ambiguous; (5) seeks information that is protected from disclosure by the attorney-client and/or the attorney work-product doctrine; (6) seeks private information of individuals in violation of those individuals' constitutional, statutory and/or common law rights of privacy; (7) seeks the disclosure of trade secrets and proprietary business information; (8) and seeks confidential security information.  Respondent requests that the Judge reserve ruling on Respondent's Petition to Revoke until the opening of the hearing on June 11, 2018 to allow Respondent an opportunity to provide oral argument in support of why the Petition to Revoke should be granted.

## II.    **PROCEDURAL BACKGROUND**

Counsel for the Charging Parties issued the Subpoena on behalf of the Union in connection with the above-captioned unfair labor practice charges filed by the Union, Sanchez, Galescu, and Ortiz.  A party upon whom a subpoena has been served may, within five business days of receipt of the subpoena, petition to revoke the subpoena.  29 C.F.R. § 102.31(b).  Because Tesla was served with the Subpoena on May 25, 2018 and May 31, 2018, this Petition is timely.

---

[1] The definitions and requests in Exhibit A and B are identical.

**A.    The Regional Director Issued the Consolidated and Amended Consolidated Complaints on August 31, 2017 and September 1, 2017**

Sanchez filed the initial charge in Case 32-CA-197020 on April 17, 2017 and thereafter filed an amended charge on July 28, 2017.  Galescu filed the initial charge in Case 32-CA-197058 on April 17, 2017 and thereafter filed an amended charge on July 28, 2017.  Ortiz filed the initial charge on April 17, 2017 and thereafter filed an amended charge on July 28, 2017.  The Union filed the initial charge in Case 32-CA-197197 on April 19, 2017 and thereafter filed an amended charge on July 28, 2017.  The Regional Director consolidated these cases and issued the Consolidated Complaint on August 31, 2017.  She then issued the Amended Consolidated Complaint the following day, a copy of which is attached hereto as **Exhibit C**.[2]

The Amended Consolidated Complaint contained the following general allegations:

7(a)    Since at least late October 2016, Respondent maintained rules in its Confidentiality Agreement relating to (i) the sharing of non-public, work-related information; (ii) communications with the media; (iii) discussing confidential information with anyone outside of Tesla without written approval; (iv) taking photos/videos inside Tesla's facilities; (v) forwarding emails outside of Tesla or to a personal email account; (vi) social media use; and (vii) consequences for violating the confidentiality agreement;

7(b)    In about late October 2016 or early November 2016, HR Business Partner David Zweig prohibited an employee from taking a picture of the Confidentiality Agreement;

7(c)-(i)  On February 10, 2017, Respondent's unidentified supervisors and security guards instructed off-duty employees engaged in leafleting and picketing activities to leave Respondent's premises;

7(j) On March 23, 2017, Respondent's supervisor Armando Rodriguez told employees during a pre-shift meeting that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent;

---

[2] The Amended Consolidated Complaint omitted Paragraph 3 of the Consolidated Complaint, which erroneously alleged that Tesla is a "health care institution within the meaning of Section 2(14) of the Act."

7(k)-(l) On April 5, 2017 and April 28, 2017, Respondent's supervisors David Zweig and Seth Woody attempted to prohibit an employee from discussing safety concerns with other employees and/or the Union;

7(m)-(o) On May 24, 2017, Respondent's unidentified security guards asked leafleting employees for their badges,  told them that they could not hand out flyers on Tesla's premises, and instructed off-duty employees to leave the premises; and

7(p) On May 24, 2017, Respondent's HR Business Partner Lisa Lispon interrogated an employee about the employee's Union and/or protected concerted activities in the presence of Environmental Health Safety and Sustainability Specialist Lauren Holcomb.

The Amended Consolidated Complaint alleged that, by engaging in the conduct described in the preceding paragraphs, Respondent "has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act."

### B.    The Second Amended Consolidated Complaint Issued by the Regional Director on March 30, 2018 Omitted Several Important Allegations Asserted in the Amended Consolidated Complaint

The Union filed the initial charge in Case 32-CA-208614 on October 25, 2017 and thereafter filed an amended charge on March 12, 2018.  The Union also filed the initial charge in Case 32-CA-210879 on December 1, 2017 and thereafter filed an amended charge on December 6, 2017.  The Regional Counsel consolidated these cases and issued the operative Second Amended Consolidated Complaint on March 30, 2018 (the "Complaint"), a copy of which is attached hereto as **Exhibit D**.

Several key allegations that appeared in the Amended Consolidated Complaint were not included in the operative Complaint.  The Regional Director did not include the allegation regarding the prohibition against taking photos inside of Tesla's facilities that appeared in paragraph 7(a)(iv) of the Amended Consolidated Complaint.  Nor did she include the allegation regarding the prohibition against forwarding work emails outside of Tesla or to a personal email account that appeared in paragraph 7(a)(v) of the Amended Consolidated Complaint.

The Complaint did however include several new allegations.  Specifically, it alleged that:

7(l) Since about April 25, 2017, Tesla maintained a rule at its Fremont facility requiring that Production Associates wear assigned "team wear," which could be substituted with all black clothing "on occasion" so long as the clothing is mutilation free, work appropriate, and poses no safety risks;

7(r-w) In the Spring of 2017, Respondent's supervisors threatened employees for wearing clothing bearing Union insignia and disparately enforced its team wear policy; "Arnold (Last Name Unknown)" impliedly threatened an employee with unspecific reprisals for wearing a hat with Union insignia;

7(s) Supervisor Homer Hunt informed employees that it would be futile for them to select the Union as their bargaining representative;

7(t) In August or September 2017, an unknown supervisor told employees they could not wear shirts with Union insignia, and supervisor Tope Ogunniyi attempted to selectively enforce the team wear rule by prohibiting shirts with Union insignia; and

8(a-e) In September and October 2017, Respondent's supervisor Ricky Gecewich interrogated employees about protected concerted activities related to a Facebook posting, promulgated/disparately enforced a rule prohibiting employees from accessing its internal WorkDay system for non-business purposes, and disciplined Charging Party Moran and Charging Party Ortiz for engaging in protected concerted activities and/or for supporting and assisting the Union.

By engaging in the conduct described in the preceding paragraphs, the Complaint alleges that Respondent "has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act." The Complaint also alleges that, by engaging in the conduct described in paragraphs 8(b)(iii), 8(c) and 8(d), Respondent has been "discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act."

**C.      Respondent Attempted to Meet and Confer With Counsel for the Charging Parties Over the Subpoena's Objectionable Instructions and Requests**

On May 31, 2018, Counsel for Tesla met and conferred with Counsel for the Charging Parties by telephone to resolve a number of issues regarding the Subpoena's objectionable requests.  Specifically, Counsel for Tesla made it clear to Counsel for the Charging Parties that it would not be able to comply with any request for ESI absent the parties' agreement to narrow said request by identifying custodians and specifying search terms.  Counsel for the Charging Parties stated that she was amenable to such a request and would contact Counsel for Tesla to identify custodians and specify search terms the following day after conferring with her clients.  As of the filing of this petition, Counsel for the Charging Parties has yet to provide the requested information.

**III.    ARGUMENT**

**A.      Legal Standard**

Where a timely petition to revoke is filed, the subpoena must be revoked if it calls for irrelevant information or is "otherwise invalid" as follows:

> The regional director or the hearing officer, as the case may be, ***shall*** revoke the subpoena if, in his opinion, the evidence whose production is required does not relate to any matter under investigation or in question in the proceedings or the subpoena does not describe with sufficient particularity the evidence whose production is required....

> 29 C.F.R. § 102.31(b) (emphasis added).

Section 102.31(b) accordingly mandates that documents sought by a subpoena duces tecum in a NLRB proceeding be relevant to the issues raised in that proceeding.  *See NLRB v. Interstate Dress Carriers*, 610 F.2d 99, 111 (3d Cir. 1979); ULP Casehandling Manual ¶ 11792.1 (noting that the requested information must "relate[ ] to any matter under investigation or in question"); *Id*. at ¶ 11794 (citing federal authorities for the proposition that the requested material must "touch[ ] a matter under investigation").  The party requesting the documents has the burden of establishing that the documents requested are relevant.  *See NLRB v. Pinkerton, Inc*., 621 F.2d 1322, 1326 (6th Cir. 1980).  To satisfy its burden, the requesting party must provide evidence

supporting its claim of relevancy. *Id*. Under Section 102.31(b), if the requesting party fails to demonstrate that the information requested is relevant, the subpoena must be revoked.

Moreover, a petition to revoke a subpoena *duces tecum* must be granted if the subpoena is invalid for "any . . . reason sufficient in law." 29 CFR § 102.31(b). This phrase has been interpreted to encompass reasons provided by the Federal Rules of Civil Procedure. *See, e.g., Brinks, Inc.*, 281 NLRB 468, 468-69 (1986). The Board looks specifically to FRCP 26(b) for guidance with respect to the validity of subpoenas. *Id*. Rule 26(b)(1) provides the applicable scope for discovery. It permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Further, for requests seeking to discovery ESI, FRCP 26(b)(2)(B) provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).

FRCP 26(b)(2)(C) states that, on a party's motion or on its own, a court "must" limit the frequency or extent of discovery if: (i) the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," . . . or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)" [which, as discussed above, sets forth a balancing test]. In *CNN America*, 352 NLRB 675, 676 (2008), the Board indicated that, if the subpoenaed party makes a "plausible argument" that production of certain types of information in electronic form would be disruptive of its business operations, then the judge should "strike a balance between the competing interests of the parties in the relevancy and necessity of the information and the potential cost and burdensomeness of its production in the form requested." The Board indicated that, in performing the analysis, the judge should apply the Federal Rules of Civil Procedure and the factors set forth in *The Sedona Principles:*

*Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* Second Edition (June 2007), available at https://thesedonaconference.org/publications (the "*Sedona Principles*").[3]

Further, any request that is vague and ambiguous, overbroad, or irrelevant should be revoked. The requesting party may request relevant documents in the responding party's control, so long as the request describes the desired items with "reasonable particularity." *Mailhoit v. Home Depot, U.S.A, Inc.*, 285 F.R.D. 566, 569 (C.D. Cal.. 2012). Broadly stated demands do not describe with sufficient particularity so that a reasonable person would know what is expected to produce under Fed.R.Civ. Pro. 34(b)(1)(A). *Id.* Subpoenas must be carefully drafted; the Board does not allow the counsel to engage in a "fishing expedition." *See* ULP Casehandling Manual ¶ 11796. Nor does it allow its attorneys to invoke the Board's subpoena power for the purpose of "initiating or expanding charges or investigations." *Allied Waste Services of Massachusetts, LLC*, Case 01-CA-123082, unpub. Board order issued Dec. 31, 2014 (WL 7429200)("this would be an 'improper purpose' that would warrant revocation of the subpoena. [citation]"). Rather, "a subpoena duces tecum…should be drafted as narrowly and specifically as is practicable." *See id*. at ¶ 11776. Thus, the request must "describe with sufficient particularity the evidence whose production is required" and that evidence must be relevant to an issue in the case, and tailored to the individuals, time period, and action at issue. Rules and Regulations § 102.31(b); *see also* ULP Casehandling ¶¶ 11776, 11782, 11796; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946*); NLRB v. Trades Council*, 131 LRRM 3132, 3133-34 (3d Cir. 1989); *Brink's*, *supra*, 281 NLRB at 468-69.

The Subpoena issued in the instant case is legally invalid in several respects, and for all of those reasons, it must be partially revoked.

---

[3] The Third Edition of *The Sedona Principles* thoroughly discusses the proper application of the proportionality factors as set forth in the December 1, 2015 amendments to FRCP 26(b)(1) and 26(b)(2)(C)(iii). *See The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1 (2018). The recent editions provide valuable guidance to judges administering the discovery of ESI. *See, e.g., Queen of the Valley Medical Center*, 20-CA-191739, JD-15-18 (February 28, 2018) (2018 WL 1110298).

## IV.   **GENERAL OBJECTIONS AND RESPONSES**

Respondent makes the following General Objections to each document request, each of which is incorporated into each Specific Objection as if set forth there in full.  Respondent's General Objections are as follows:

1.      Respondent objects to the return date of June 11, 2018.  This Subpoena was served on May 25, 2018, giving Respondent insufficient amount of notice and time to satisfy a June 11, 2018 return date given the breadth and scope of the Subpoena as currently drafted.

2.      Respondent objects to the Subpoena to the extent that many of its requests overlap with/are duplicative of those issued to Tesla by Counsel for the General Counsel in subpoena *duces tecum* no. B-1-118CRIT.  *See* FRCP 26(b)(2)(C)(i) (a court "must" limit the frequency or extent of discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.")

3.      Respondent objects to Paragraph B. of the "DEFINITIONS AND INSTRUCTIONS", which defines the terms "document" and "documents".  This definition is so open ended, nonspecific and ambiguous as to deny Respondent fair notice of what is being requested.   Further, this definition is so broadly stated and so lacking in sufficient particularly such that literal and complete compliance with any request for such "documents" is extremely impracticable if not impossible.  By defining "document" to mean "any kind of … recorded material, including but not limited to, … electronic email or e-mail messages, data, tapes, …, communications, …, records, …, information obtainable from computers, …, however stored," the Subpoena facially obligates Respondent to conduct sweeping ESI searches from every electronic file that might potentially contain information responsive to ***29 separate requests***, exclusive of subparts.  In its commentary to Principle 4 ("[d]iscovery requests for electronically stored information should be as clear[4] as possible"), the Sedona Conference advised that discovery

---

[4] In the Third Edition, the word "clear" was replaced with the word "specific" to "reflect recent case law better, including more frequent invocation of Rule 26(g)."  *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, 37-38 (2018).  The change also "better conforms with the 2015 amendments to Rule 26(b) on the scope of discovery."  *Id*.

requests seeking ESI should "go beyond boilerplate definitions seeking all email, databases, word processing files, or whatever other electronically stored information the requesting party can generally describe." *The Sedona Principles, Second Edition*, Cmt. 4.a., 25 (2007). The Subpoena's definition for the terms "document" and "documents" and their incorporation into 29 of the Subpoena's requests and 18 subparts renders each such request and subpart objectionable to the extent that they fail to "describe with sufficient particularity the evidence whose production is required" as mandated by Section 102.31(b) of the Board's Rules and Regulations.

   4. Respondent objects to Paragraph D. of the "DEFINITIONS AND INSTRUCTIONS", which defines the term "referring to" calling for the production of anything "relating to, reflecting, supporting, prepared in connection with, used in preparation for, pertaining to, having any relationship to evidencing or constituting evidence of or being in any way legally, logically or factually connected with the matter discussed". This definition is so open ended, nonspecific and ambiguous as to deny Respondent fair notice of what is being requested. Further, this definition is so broadly stated and so lacking in sufficient particularity as to render literal and complete compliance with any request using said definition impracticable, if not impossible.

   5. Respondent objects to paragraph I of the "INSTRUCTIONS AND DEFINITIONS" which, for responsive documents that have been lost, misplaced, thrown away or destroyed, or otherwise cannot be found, requires Respondent to:

> If any document that would have been responsive to these Requests has been lost, misplaced, thrown away or destroyed, or otherwise cannot be found, a. identify the document and provide a brief description of the document; b. state the date of and identify the person responsible for, the loss, concealment, misplacement, discarding, or destruction of the document; c. identify the production request herein to which the document would have been responsive had it not been lost, misplaced, thrown away or destroyed, or otherwise become unavailable for production; d. identify the author of the document; e. state the manner in which the document was disposed; and f. state in detail, and identify the person with the most knowledge of, the reason(s) that or circumstances under which the document was lost, hidden, destroyed, misplaced, thrown away, or given away.

There is no legal basis by which Respondent can be compelled to provide written discovery-type responses regarding documents no longer in its possession, custody or control.

Paragraph I is accordingly objectionable as invalid for "any . . . reason sufficient in law."  29 CFR § 102.31(b).

6.    Respondent objects to paragraph K of the "INSTRUCTIONS AND DEFINITIONS" insofar as it calls for the production of a privilege log for responsive documents created after March 12, 2018, the date the most recent at-issue charge was filed.  Documents created by and at the direction of counsel after this date are "so clearly likely to be work product that it need not even be logged on a privilege log."  *See NLRB v. Jackson Hospital*, 257 F.R.D. 302, 308 (D.D.C. 2009).  This instruction is accordingly unduly burdensome and objectionable on that basis.

7.    Respondent objects to paragraph N of the "INSTRUCTIONS AND DEFINITIONS" insofar as it defines the period covered by each request of the subpoena as "January 1, 2016 to the present" unless "otherwise stated."  Each request of a subpoena must "describe with sufficient particularity the evidence whose production is required" and that evidence must be relevant to an issue in the case, and tailored to the individuals, time period, and action at issue.  Rules and Regulations § 102.31(b); *see also* ULP Casehandling Manual  ¶¶ 11776, 11782, 11796; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946); *NLRB v. Trades Council*, 131 LRRM 3132, 3133-34 (3d Cir. 1989); *Brinks, Inc.,* 281 NLRB 468, 468-69 (1986). Paragraph N seeks documents created months—if not years—before and after the occurrence of the acts forming the basis for the applicable allegations of the Complaint.  Because none of the requests or subparts of the subpoenas "otherwise" states a different time period, each is objectionable for lack of sufficient particularity.

8.    Respondent objects to producing any documents that that are protected from disclosure by the attorney-client privilege and/or the work product doctrine.  *See Patrick Cudahy, Inc.*, 288 NLRB 968, 971 (1988); *Kaiser Aluminum & Chemical Corp.*, 339 NLRB 829, 829 (2003).

9.    Respondent objects to the extent the Subpoena may require the disclosure of trade secrets and/or proprietary business information.  Unfortunately, just as many of the Subpoena's requests are so overbroad as to make a reasonable and efficient search for responsive information

and documents impracticable, it is likewise unduly burdensome and impracticable for Tesla to identify at this time which responsive documents contain trade secrets and/or proprietary business information.  Accordingly, while Respondent is willing to produce relevant information, Respondent reserves the right to redact information containing trade secrets and/or proprietary business information and/or seek a protective order following its review of responsive information to the Subpoena.

10.     The Charging Party Union is currently engaged in a corporate campaign designed to damage the brand and reputation of Respondent.  The information sought by the Charging Parties' subpoena may be used in furtherance of that corporate campaign.  This proceeding should not be used as a vehicle of obtain information that may be used for this extra-legal purpose.  Respondent, therefore, objects to the use of these documents by the Charging Parties outside of this litigation, sharing any information provided in response to this Subpoena with any third parties or the use of said information for any purpose extrinsic to this litigation.  While Respondent does not object to the Charging Parties' receipt and use of certain documents for purposes of this litigation and this litigation alone, Respondent objects to their retention of these documents beyond the close of these proceedings.  To that end, Respondent seeks a protective order restraining the Charging Parties from making use of any or all of said information outside this proceeding and mandating its return as a condition of its production.

11.     Respondent reserves the right to request that the Charging Parties share in the costs of production should Respondent be required to ultimately comply with an unduly burdensome and/or expensive production of ESI.

Each of the above General Objections shall be deemed to apply to Respondent's Specific Objections set forth below.

**REQUEST FOR PRODUCTION NO. 1:**

Any and all documents and/or electronically stored information ("ESI") pertaining to or referring to Tesla CEO Elon Musk's ("Musk") tweet on May 20, 2018 at 6:06 pm, stating that "About 2% of Tesla, including salaried and hourly, union and non-union were let go in annual review. Only known union person fired was guy who repeatedly threatened non-union supporters

verbally and on social media and lied about it," including but not limited to:

> (a)      Any and all documents pertaining to or referring to verbal threats by the "known union person";

> (b)      Any and all documents pertaining to or referring to social media threats by the "known union person";

> (c)      Any and all documents pertaining to or referring to lies by the "known union person" about threatening non-union supporters;

> (d)      Any and all documents pertaining to or referring to the contention that "about 2% of Tesla, including salaried and hourly, union and non-union were let go in annual review."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Tesla objects to Request No. 1's use of the term "[a]ny and all documents and/or electronically stored information ('ESI')" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible").  Tesla objects to Request No. 1 as being overbroad and , calling for documents/information that are not relevant to any matter in question in the proceedings.  Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing.  ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215.  Subpoenaed evidence generally should only be produced if it relates to any matter in question, can provide background information, or will lead to other evidence potentially relevant to an allegation in the complaint.  *See* Board's Rules and Regulations, Sec. 102.31 (b); *McDonald's USA, LLC*, 363 NLRB No. 144, slip. op. at 15 (2016); and *Purdue Farms v. NLRB*, 144 F.3d 830, 833-834 (D.C. Cir. 1998).  Apart from naming him as a statutory supervisor, the Complaint does not allege that Mr. Musk directed  or participated in any of the conduct described therein or otherwise violated the NLRA.  His social media activities are therefore irrelevant to any matter in question in these proceedings.  Evidence of his social media activities on May 20, 2018 also cannot provide "background information" on events that occurred 7-months' prior.  Further, the fact that the Region failed to uncover any evidence of Mr. Musk's involvement in the matters alleged in the Complaint notwithstanding its

receipt and review of over 20 confidential witness affidavits and thousands of pages of
documentary evidence and position statements during its 14-month investigation belies any notion
that the requested information can lead to potentially relevant evidence.  Though Mr. Musk's May
20, 2018 social media activities are perhaps relevant to the Union's charge filed in Case 32-CA-
220777 on May 23, 2018, a copy of which is attached hereto as **Exhibit E**, Request No. 1 should
be revoked to the extent it seeks irrelevant information and represents nothing more than a thinly-
veiled attempt by the Union to prematurely compel the production of evidence in support of its
position in an unrelated proceeding or to obtain information to be used in its on-going corporate
campaign directed against Respondent and Mr. Musk.

Request No. 1 is additionally overbroad and unduly burdensome insofar as it seeks to
uncover evidence of discriminatory animus by requesting "any and all documents and/or
electronically stored information ('ESI')" without regard to the supervisory or employment status
of the communicating individuals, where they work, or their role in making or influencing any of
the decisions placed in controversy by the Complaint.[5]  The sole allegation in the Complaint
where animus is arguably relevant pertains to the two 8(a)(3) allegations in the Complaint alleging
Tesla terminated Charging Party Richard Ortiz and disciplined Jose Moran on October 18 and 19,
2017 for engaging in concerted activities and/or union activities.  A reasonably tailored request
would at most involve the decision makers and a finite period of time preceding the October 18
and 19, 2017 date – not a 28 month time period – for thousands of managers and supervisors.  A
reasonably tailored request also would not seek "any and all documents and/or electronically
stored information".  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the
description of records should be avoided wherever possible.")  By calling for Respondent to

---

[5] *See The Sedona Principles, Second Edition*, Cmt. 4.b., 25 (2007) ("It is neither reasonable nor feasible for
a party to search or produce information from every electronic file that might potentially contain
information relevant to every issue in the litigation, nor is a party required to do so.  It should be
reasonable, for example, to limit searches for email messages to the accounts of key witnesses in the
litigation, for the same reasons that it has been regarded as reasonable to limit searches for paper
documents to the files of key individuals.  Likewise, it should be appropriate, absent unusual
circumstances, to limit review for production to those sources most likely to contain nonduplicative
relevant information (such as active files or removable media used by key employees.")

conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately ***41,000 employees worldwide*** though said ESI has nothing to do with the allegations of the complaint which place animus at issue, Request No. 1 is overbroad, unduly burdensome, and not "proportional to the needs of the case" as required by FRCP 26(b)(1).

Respondent additionally objects to Request No. 1 to the extent it may require the disclosure of trade secrets and/or proprietary business information as well as private information. In light of the, at best, marginal relevance of the information sought by Request No. 1, it should be revoked given the substantial business and privacy interests implicated by that information's disclosure. *See, e.g., Aladdin Gaming, LLC*, 345 NLRB 588 (2005) (judge did not abuse his discretion in quashing the charging party union's subpoena given that the 'marginal relevance' of the subpoenaed information did not outweigh the 'substantial privacy and business interests involved"), rev. denied 515 F.3d 942 (9th Cir. 2008); *see also Mailhoit v. Home Depot, U.S.A, Inc.*, 285 F.R.D. 566, 573 (C.D. Calif. 2012) ("discovery rules do not allow a requesting party 'to engage in the proverbial fishing expedition, in the hope that there *might* be something of relevance in the [producing party's] Facebook account.'" [citation])

**REQUEST FOR PRODUCTION NO. 2:**

Any and all documents and/or ESI pertaining to or referring to the employment of Richard Ortiz, including but not limited to:

(a)     Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

(b)     Any and all documents relating to holding and obtaining of employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Tesla objects to Request No. 2 to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case. Tesla additionally objects to Request No. 2 to the extent that it seeks "any and all documents and/or ESI" and is accordingly insufficiently particularized. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description

of records should be avoided wherever possible.")    By calling without limitation for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately ***41,000 employees worldwide*** though the vast majority of said ESI has nothing to do with the allegations of the Complaint, Request No. 2 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1)..  Respondent further objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the personnel file for Charging Party Ortiz.  Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 2 and tailors it to specific custodians and date ranges.

## REQUEST FOR PRODUCTION NO. 3:

Any and all documents and/or ESI pertaining to or referring to the termination of Richard Ortiz, including but not limited to:

(a)    Any and all documents that Ricky Gecewich and/or anyone acting on his behalf or on behalf of Tesla, Inc. used or relied upon in the investigation of Mr. Ortiz and/or in recommending Mr. Ortiz's termination;

(b)    Any and all documents given to Mr. Ortiz by Tesla upon termination;

(c)    Any and all internal correspondence or messaging sent between Tesla management regarding Mr. Ortiz's termination;

(d)    Any and all notes taken during, documents created in preparation for, and correspondence regarding any meetings between Gecewich and Ortiz.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "internal correspondence or messaging."  Tesla objects to Request No. 3 to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case.  Tesla additionally objects to Request No. 3 to the extent that it seeks "any and all documents and/or

ESI" and is accordingly insufficiently particularized.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.")   By calling without limitation for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately *41,000 employees worldwide* though the vast majority of said ESI has nothing to do with the allegations of the Complaint, Request No. 3 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1).  Respondent further objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the personnel file for Charging Party Ortiz, any emails Investigator Gecewich sent to Ortiz in September and October 2017, and any notes Gecewich took during meetings with Ortiz during these months to the extent they exist.   Respondent will consider searching for additional responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 3 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all documents and/or ESI pertaining to or referring to the employment of Jose Moran, including but not limited to:

(a)      Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

(b)      Any and all documents relating to holding and obtaining of employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Tesla objects to Request No. 4 to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case.  See also Objections to Document Request No. 2, each of which is incorporated into Objection to Document Request No. 4 as if set forth herein in full.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will

produce the personnel file for Jose Moran, any emails Investigator Gecewich sent to Moran in September and October 2017, and any notes Gecewich took during meetings with Moran during these months to the extent they exist.. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 4 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all documents and/or ESI pertaining to or referring to the discipline of Jose Moran in October 2017, including but not limited to:

(a)     Any and all documents that Ricky Gecewich and/or anyone acting on his behalf or on behalf of Tesla, Inc. used or relied upon in the investigation of Mr. Moran and/or in recommending Mr. Moran's discipline;

(b)     Any and all documents given to Mr. Moran upon receiving notice of the discipline;

(c)     Any internal correspondence or messaging sent between Tesla management regarding Mr. Moran's discipline;

(d)     Any and all notes taken during, documents created in preparation for, and correspondence regarding any meetings between Gecewich and Moran.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Tesla objects to Request No. 5 to the extent it calls for the production of "any and all documents and/or ESI" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case. See also Objections to Document Request No. 3, each of which is incorporated into Objection to Document Request No. 5 as if set forth herein in full.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the personnel file for Jose Moran, any emails Investigator Gecewich sent to Moran in September and October 2017, and any notes Gecewich took during meetings with Moran during these months to the extent they exist. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 5 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 6:**

Any policies, procedures, and/or rules related to Tesla employees' access to and use of the software application called "Workday" that has existed between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "policies, procedures, and/or rules". Request No. 6 is also objectionable to the extent it calls for the production of documents that do not relate to any matter in question in the proceedings and is overbroad as to time. The Complaint alleges that Charging Party Richard Ortiz and Jose Moran engaged in concerted activities with each other for the purpose of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz; that Richard Ortiz posted comments regarding wages and working conditions along with screenshots of the employee photographs and job titles on a Facebook page; and that Employee Relations Investigatory Ricky Gecewich interrogated Ortiz and Moran on September 21, 2017 and October 19, 2017 concerning the alleged concerted activities referenced above. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning use of Workday applicable to Richard Ortiz and Jose Moran in October 2017 to the extent they exist.

**REQUEST FOR PRODUCTION NO. 7:**

Any documents containing the names and addresses of all security companies hired by Tesla, Inc. to provide security services at Fremont Facility at any time between January 1, 2017 and present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Tesla objects to Request No. 7 to the extent it calls for the production of "any documents", the vast majority of which do not relate to any matter under investigation or in question in the proceedings. Tesla further objects to Request No. 7 to the extent it is overbroad and disproportional to the needs of the case. Notwithstanding the foregoing elections and without prejudice thereto, Tesla will provide Counsel for the Charging Parties the names and addresses of all security companies hired by Tesla, Inc. to provide security services at Fremont Facility on

February 10, 2017 and May 24, 2017.

**REQUEST FOR PRODUCTION NO. 8:**

      Any documents showing the name of every security guard employed by Tesla, Inc. or a security company described in Request No. 1 above stationed or working at the Fremont Facility on February 10, 2017 and May 24, 2017, and a copy of each individual's identification badge or other picture.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

      Respondent objects to providing this information based on privacy concerns of the individuals providing security services at Respondent's Fremont Facility.  Respondent also objects to providing this information based on access abuse and security concerns.  Request No. 8 is also objectionable to the extent it calls for the production of "documents" that do not relate to any matter in question in the proceedings and is entirely disproportional to the needs of the case.  By calling without limitation for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately ***41,000 employees worldwide*** though the vast majority of said ESI has nothing to do with the allegations of the Complaint, Request No. 8 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1).  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the names and photographs of the individuals providing security services at Respondent's Fremont Facility on February 10, 2017 and May 24, 2017 to Counsel for the General Counsel provided the parties enter into a protective order limiting the use of this information for identification purposes only, and prohibiting the physical and electronic distribution of this information to Charging Parties, their counsel, or third parties, and destroy this information at the conclusion of the proceedings.

**REQUEST FOR PRODUCTION NO. 9:**

      Any and all documents and ESI pertaining to or referring to security procedures for individuals handing out leaflets at the Fremont Facility between January 1, 2017 and present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

      Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "documents and ESI pertaining to or referring to". Tesla additionally objects to Request No. 9 to the extent that it seeks "any and all documents and ESI" and is accordingly insufficiently particularized. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.") See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 9 as if set forth herein in full. Request No. 9 is also objectionable to the extent it calls for the production of "documents and ESI" that do not relate to any matter under investigation or in question in the proceedings and is overbroad as to time. The Complaint alleges that one "Red Shirt Male Supervisor No. 1", one unidentified "Human Resources Agent", and six "John/Jane Doe Security Guards" unlawfully instructed off-duty employees engaged in leafleting and distributing flyers in the parking lot of Respondent's facility on February 10, 2017 and May 24, 2017. The Complaint does not allege that Respondent's security guards acted to enforce any unlawful workplace rule or policy. Nor does it allege that Respondent's employees were disciplined pursuant to any such policies. Similarly, the Complaint does not allege that any supervisor or agent of Respondent unlawfully instructed off-duty employees engaged in leafleting and distributing flyers on any other dates or any other areas of Respondent's facility. The Request is also overbroad, unduly burdensome, and oppressive insofar as it calls for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 850 managers and supervisors and approximately 12,000 employees at the Fremont factory making the even merest mention of leafleting, distributing flyers, or otherwise distributing documents and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint. The Request would similarly be overbroad and burdensome even if conducted a search for ESI among the 60+ Tesla security guards or individuals providing security services on February 10, 2017 and May 24, 2017. Request No. 9 is accordingly overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1).

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning off-duty employees leafleting, distributing flyers, or distributing documents in the parking lot in effect on February 10, 2017 and May 24, 2017 to the extent they exist. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 9 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all documents and ESI pertaining to or referring to security procedures for suspected union activity at the Fremont Facility between January 1, 2017 and present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Tesla objects to Request No. 10 to the extent it calls for the production of "any and all documents and/or ESI" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case. See also Objections to Document Request No. 9, each of which is incorporated into Objection to Document Request No. 10 as if set forth herein in full.

Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any written policies concerning suspected union activity in effect on February 10, 2017 and May 24, 2017 to the extent they exist. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 10 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 11:**

Any policies, procedures, and/or rules related to the use of drones in security operations at the Fremont Facility between January 1, 2017 and present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "policies, procedures, and/or rules" and "drones". Request No. 11 is also objectionable to the extent it calls for the production of documents that do not relate to any matter in question in the proceedings and is overbroad as to time. The Complaint alleges that one "Red Shirt Male Supervisor No. 1", one unidentified "Human Resources Agent", and six "John/Jane Doe Security

Guards" unlawfully instructed off-duty employees engaged in leafleting and distributing flyers in the parking lot of Respondent's facility on February 10, 2017 and May 24, 2017. The Complaint does not allege that Tesla's security operations at the Fremont facility on these dates acted pursuant to any unlawful policy regarding the use of "drones" or otherwise make any mention of any such use. Respondent will consider providing evidence responsive to Request No. 11 provided that Counsel for the Charging Party establishes the relevancy of the requested information.

**REQUEST FOR PRODUCTION NO. 12:**

Pictures of each building entrance to the Fremont Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "each building entrance" to the Fremont Facility. The Request is also overbroad, unduly burdensome, oppressive, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. The Complaint alleges that Tesla's security operations unlawfully instructed off-duty employees engaged in picketing and/or leafletting activities at Doors 1, 2, 3, and 4 at Tesla's Fremont facility February 10, 2017 and May 24, 2017. On May 25, 2018, Tesla agreed to produce a diagram depicting these entrances to the Fremont Factory on February 10, 2017 and May 24, 2017 to the Counsel for the General Counsel. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will agree to provide this diagram to Counsel for the Charging Parties.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all correspondence sent by Musk, Director of Human Resources Josh Hedges ("Hedges"), or Chief People Officer Gaby Toledano ("Toledano") to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding compensation between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Tesla objects to Request No. 13 to the extent it is overbroad, calling for documents/information that are not relevant to any matter in question in the proceedings.

Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing.  ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215.  Of the 3 individuals listed in Request No. 13, the Complaint references only Elon Musk, and only to allege his supervisory status.  See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 13 as if set forth herein in full.  To the extent that Counsel for the Charging Parties establishes the relevance of such "correspondence" to these proceedings, Request No. 13 is additionally objectionable to the extent it is vague and ambiguous in its use of the terms "correspondence" and "en masse."  On May 31, 2018, Counsel for the Charging Parties clarified that these terms mean emails sent to listserv groups which she agreed to identify to facilitate Tesla's produce the documents sought by this request.  If Counsel for the Charging Parties seeks specific communications, Request No. 13 is additionally objectionable to the extent it fails to describe the items sought with "reasonable particularity" as required by FRCP 34(b)(1)(A).  Notwithstanding the foregoing objections and without prejudice thereto, and provided that Counsel for the Charging Parties establishes the relevancy of the subject information and clarifies the evidence sought, Respondent is willing to produce documents that are responsive to Request No. 13.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding labor unions between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Tesla objects to Request No. 14 to the extent it is overbroad, calling for documents/information that are not relevant to any matter in question in the proceedings.  Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing.  ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215.  The sole allegation in the Complaint where anti-union animus is arguably relevant pertains to the two 8(a)(3) allegations in the Complaint alleging Tesla terminated Charging Party Richard Ortiz and disciplined Jose Moran on October 18 and 19, 2017 for engaging in concerted

activities and/or union activities. Of the 3 individuals listed in Request No. 14, the Complaint references only Elon Musk, and only to allege his supervisory status. There are accordingly no allegations pending in these proceedings with respect to the role played by Mr. Musk, Mr. Hedges, or Ms. Toledano in any actions unlawfully motivated by anti-union animus. See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 14 as if set forth herein in full. To the extent that Counsel for the Charging Parties establishes the relevance of such "correspondence" to these proceedings, Request No. 14 is additionally objectionable to the extent it is vague and ambiguous in its use of the terms "correspondence" and "en masse." On May 31, 2018, Counsel for the Charging Parties clarified that these terms mean emails sent to listserv groups which she agreed to identify to facilitate Tesla's produce the documents sought by this request. If Counsel for the Charging Parties seeks specific communications, Request No. 14 is additionally objectionable to the extent it fails to describe the items sought with "reasonable particularity" as required by FRCP 34(b)(1)(A). Notwithstanding the foregoing objections and without prejudice thereto, and provided that Counsel for the Charging Parties establishes the relevancy of the subject information and clarifies the evidence sought, Respondent is willing to produce documents that are responsive to Request No. 14.

## REQUEST FOR PRODUCTION NO. 15:

Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding safety and/or OSHA Logs between January 1, 2016 and the present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Tesla objects to Request No. 15 to the extent it is overbroad, calling for documents/information that are not relevant to any matter in question in the proceedings. Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing. ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215. The only allegation pertaining to employee safety and the use of OSHA logs relates to four very specific allegations: on April 5, 2017 and April 28, 2017, Human Resources Business Partner David Zweig and Human Resources Partner Seth Woody attempted to prohibit Charging

Party Jonathan Galescu at the Fremont Factory from discussing safety concerns with other employees and/or the Union; on May 24, 2017, Lauren Holcomb and Liza Lipson interrogated Charging Parties Jonathan Galescu and Richard Ortiz concerning OSHA 300 logs on May 24, 2017; and on October 21, 2017, Andy McIndoe told William Locklear at Gigafactory 1 that he should not speak with other employees about workplace concerns. Of the 3 individuals listed in Request No. 15, the Complaint references only Elon Musk, and only to allege his supervisory status. There are accordingly no allegations pending in these proceedings with respect to the role played by Mr. Musk, Mr. Hedges, or Ms. Toledano in any of the above-referenced actions relating to the OSHA Logs. See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 15 as if set forth herein in full. To the extent that Counsel for the Charging Parties establishes the relevance of such "correspondence" to these proceedings, Request No. 15 is additionally objectionable to the extent it is vague and ambiguous in its use of the terms "correspondence" and "en masse." On May 31, 2018, Counsel for the Charging Parties clarified that these terms mean emails sent to listserv groups which she agreed to identify to facilitate Tesla's produce the documents sought by this request. If Counsel for the Charging Parties seeks specific communications, Request No. 15 is additionally objectionable to the extent it fails to describe the items sought with "reasonable particularity" as required by FRCP 34(b)(1)(A) and is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1).. Notwithstanding the foregoing objections and without prejudice thereto, and provided that Counsel for the Charging Parties establishes the relevancy of the subject information and clarifies the evidence sought, Respondent is willing to produce documents that are responsive to Request No. 15.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding confidentiality agreements or policies between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Tesla objects to Request No. 16 to the extent it is overbroad, calling for

documents/information that are not relevant to any matter in question in the proceedings. Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing. ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215. The only allegation pertaining to confidentiality in the Complaint challenges the ***facial validity*** of five paragraphs from a confidentiality acknowledgement that employees at its Fremont, California factory were asked to sign in or about October 2016. Of the 3 individuals listed in Request No. 16, the Complaint references only Elon Musk, and only to allege his supervisory status. There are accordingly no allegations pending in these proceedings with respect to the role played by Mr. Musk, Mr. Hedges, or Ms. Toledano in any of the above-referenced actions relating to confidentiality. See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 16 as if set forth herein in full. To the extent that Counsel for the Charging Parties establishes the relevance of such "correspondence" to these proceedings, Request No. 16 is additionally objectionable to the extent it is vague and ambiguous in its use of the terms "correspondence" and "en masse." On May 31, 2018, Counsel for the Charging Parties clarified that these terms mean emails sent to listserv groups which she agreed to identify to facilitate Tesla's production of documents sought by this request. If Counsel for the Charging Parties seeks specific communications, Request No. 16 is additionally objectionable to the extent it fails to describe the items sought with "reasonable particularity" as required by FRCP 34(b)(1)(A) and is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). Notwithstanding the foregoing objections and without prejudice thereto, and provided that Counsel for the Charging Parties establishes the relevancy of the subject information and clarifies the evidence sought, Respondent is willing to produce documents that are responsive to Request No. 16.

**<u>REQUEST FOR PRODUCTION NO. 17</u>:**

Any and all confidentiality agreements or policies provided to Tesla employees at the Fremont Facility and/or the Sparks Facility between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "confidentiality agreements" and "policies." The Request is also overbroad, calling for documents/information that are not relevant to the subject matter of the instant Complaint. Respondent also objects to the extent it lacks any specificity and particularity. The Complaint challenges the *facial validity* of five paragraphs from a confidentiality acknowledgement that employees at its Fremont, California factory were asked to sign in or about October 2016. The acknowledgement was an acknowledgment of the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement previously signed. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates were asked to sign in or about October 2016 and November 2016 and the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement in effect for production associates working at the Fremont factory in or about October 2016 and November 2016.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all directives or instructions regarding complying with confidentiality agreements or policies given to Tesla employees at the Fremont Facility and/or the Sparks Facility between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Tesla objects to Request No. 18's use of the term "[a]ny and all directives or instructions" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.") Tesla additionally objects to Request No. 18 to the extent it is calls for the production of evidence that is not relevant to any matter in question in the proceedings. Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing. ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215. The only allegation pertaining to confidentiality in the Complaint challenges the *facial validity* of five paragraphs from a confidentiality acknowledgement that

employees at its Fremont, California factory were asked to sign in or about October 2016. The Complaint does not allege that any employees were unlawfully disciplined for violating these provisions or otherwise refusing to acknowledge their receipt in or about October 2016. See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 18 as if set forth herein in full. To the extent that Counsel for the Charging Parties establishes the relevance of such "directives" or "instructions" to these proceedings, Request No. 18 is additionally objectionable to the extent it is vague and ambiguous in its use of the these terms. On May 31, 2018, Counsel for the Charging Parties clarified that these terms refer to email and/or other electronic communications sent to most if not all of Tesla's employees in or around October 2016 regarding the Confidentiality Acknowledgment. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates were asked to sign in or about October 2016 and November 2016 and the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement in effect for production associates working at the Fremont factory in or about October 2016 and November 2016..

**REQUEST FOR PRODUCTION NO. 19:**

Any and all scripts, notes, talking points, or instructions used by individuals who spoke to Tesla employees at the Fremont Facility and/or the Sparks Facility about confidentiality agreements or policies between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Tesla objects to Request No. 19's use of the term "[a]ny and all scripts, notes, talking points, or instructions" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrases "scripts," "notes," "talking points," "instructions," "individuals," and "about confidentiality agreements." To the extent that Request No. 19 fails to distinguish responsive communications made by statutory supervisors "about confidentiality agreements" from those made by statutory employees, it is so lacking in sufficient

particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent also objects to the extent that Request No. 19 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine. The Request is also overbroad as to time, seeking documents over the span of 29 months. Counsel for the Charging Parties does not seek evidence that could be used to establish its allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices. Indeed, the Complaint does not allege that Tesla promulgated the confidentiality acknowledgement in response to concerted activity or enforced it or any other confidentiality agreement in a discriminatory manner. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the confidentiality acknowledgment that production associates were asked to sign in or about October 2016 and November 2016 and the underlying Employee Proprietary Information and Inventions Agreement and Non-Disclosure and Inventions Agreement in effect for production associates working at the Fremont factory in or about October 2016 and November 2016.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all records regarding Tesla employees at the Fremont Facility and/or the Sparks Facility who were terminated for violating a confidentiality agreement or policy between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Respondent objects to Request No. 20's use of the term "[a]ny and all records" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent also objects to the extent that Request No. 20 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine. The Request is also overbroad as to time, seeking documents over the span of 29 months. The only allegation pertaining to confidentiality in the

Complaint challenges the ***facial validity*** of five paragraphs from a confidentiality acknowledgement that employees at its Fremont, California factory were asked to sign in or about October 2016.  The Complaint does not allege that any employees were unlawfully disciplined for violating these provisions or otherwise refusing to acknowledge their receipt in or about October 2016.  See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 20 as if set forth herein in full.  The Complaint does not allege that Tesla terminated Charging Party Ortiz for violating a confidentiality agreement.  Although relevancy is defined broadly in the context of administrative subpoenas, "[a]n administrative subpoena … may not be so broad so as to be in the nature of a 'fishing expedition." *NLRB v. Ampersand Publ'g, LLC*, No. MC 15-130 AB (FFMx), 2015 U.S. Dist. LEXIS 176001, at *21-23 (C.D. Cal. Dec. 1, 2015) (quoting *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)).  Because Request No. 20 does not seek evidence that could be used to establish Counsel for the Charging Parties' allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices, it is a "fishing expedition" that warrants revocation in its entirety. *See* ULP Casehandling Manual ¶ 11796.

Moreover, to the extent that this request seeks comparator evidence, it is overly broad as the vast majority of responsive documents would pertain to invalid comparators.  *See Lindsay v. Fuyao Glass Am. Inc.*, 3:16-MC-00007, 2017 WL 1276728, at *2 (S.D. Ohio Apr. 6, 2017), report and recommendation adopted, 3:16-MC-7, 2018 WL 1166628 (S.D. Ohio Mar. 5, 2018) ("Lindsay v. Fuyao Glass").  In *Lindsay v. Fuyao Glass*, the UAW filed a ULP charge alleging that the respondent terminated an employee for engaging in protected activities, and the NLRB began investigating whether "other, similarly situated employees working in [the employee's] department…may have received more lax treatment with respect to Respondent's attendance policy." *Id.* at *1.  The NLRB subsequently issued a subpoena seeking "[n]ames, contact information, attendance records, and all discipline and discharge records for attendance violations, for all employees working in the ARG Department since September 1, 2015." *Id.*  The District Court adopted the Magistrate's recommendation that the subpoena be narrowed to reach only the disciplines for those *employees that were supervised by the same decisionmaker*, as opposed to

disciplines for all 800 employees working in the same department. *Id.* at *4. Noting that the vast majority of the records sought by the NLRB's subpoena were "immaterial to the NLRB's investigation" because they concerned "employees who would not be valid comparators to Moffitt," the District Court held that it would be unduly burdensome to require the employer to identify and produce all of the records sought by the NLRB where doing so would require a search of records pertaining to 800 employees. *Id.,* fn. 3. Here, Counsel for the Charging Parties has no basis for seeking comparator evidence in the form of disciplines issued to all of Respondent's 16,000+ employees at its Fremont factory and Gigafactory 1 regardless of whether they were issued by the supervisors that allegedly disciplined Charging Parties Moran and Ortiz. Request No. 20 should accordingly be revoked.

## REQUEST FOR PRODUCTION NO. 21:

Any and all instructions or directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility regarding confidentiality agreements or policies between January 1, 2016 and the present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Respondent objects to Request No. 21's use of the term "[a]ny and all instructions or directives" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). The Request is also overbroad as to time, seeking documents over the span of 29 months. Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent also objects to the extent that Request No. 21 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine.

Although relevancy is defined broadly in the context of administrative subpoenas, "[a]n administrative subpoena … may not be so broad so as to be in the nature of a 'fishing expedition." *NLRB v. Ampersand Publ'g, LLC,* No. MC 15-130 AB (FFMx), 2015 U.S. Dist. LEXIS 176001, at *21-23 (C.D. Cal. Dec. 1, 2015) (quoting *F.D.I.C. v. Garner,* 126 F.3d 1138, 1146 (9th Cir. 1997)). The only allegation pertaining to confidentiality in the Complaint challenges the ***facial***

*validity* of five paragraphs from a confidentiality acknowledgement that employees at its Fremont, California factory were asked to sign in or about October 2016.  The Complaint does not allege that any employees were unlawfully disciplined for violating these provisions or otherwise refusing to acknowledge their receipt in or about October 2016.  See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 21 as if set forth herein in full.  The Complaint does not allege that the supervisors that terminated Charging Party Ortiz and disciplined Jose Moran in late October 2016 acted pursuant to "instructions or directives … regarding confidentiality agreements."  Because Request No. 21 does not seek evidence that could be used to establish Counsel for the Charging Parties' allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices, it is so broad as to be in the nature of a "fishing expedition" and should be revoked on that basis.  *See* ULP Casehandling Manual ¶ 11796.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all instructions or directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility regarding labor unions between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Tesla objects to Request No. 22's use of the term "[a]ny and all instructions or directives" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.")  Tesla objects to this request to the extent it is vague and ambiguous in its use of the terms "instructions or directives provided" and "regarding".  The Request is also overbroad as to time, seeking documents over the span of 29 months.  Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information.  Respondent also objects to the extent that Request No. 22 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine.

Although relevancy is defined broadly in the context of administrative subpoenas, "[a]n administrative subpoena … may not be so broad so as to be in the nature of a 'fishing expedition.'" *NLRB v. Ampersand Publ'g, LLC*, No. MC 15-130 AB (FFMx), 2015 U.S. Dist. LEXIS 176001,

at *21-23 (C.D. Cal. Dec. 1, 2015) (quoting *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)). The sole allegation in the Complaint where anti-union animus is arguably relevant pertains to the two 8(a)(3) allegations in the Complaint alleging Tesla terminated Charging Party Richard Ortiz and disciplined Jose Moran on October 18 and 19, 2017 for engaging in concerted activities and/or union activities.  A reasonably tailored request would at most involve the decision makers and a finite period of time preceding the October 18 and 19, 2017 date – not a 29 month time period – for thousands of managers and supervisors.  Because Request No. 22 does not seek evidence that could be used to establish Counsel for the Charging Parties' allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices, it is so broad as to be in the nature of a "fishing expedition" and should be revoked on that basis.  *See* ULP Casehandling Manual ¶ 11796.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all documents and ESI pertaining to or referring to instructions or directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility regarding confidentiality agreements or policies between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Respondent objects to Request No. 23's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.")  See also Objections to Document Request No. 21, each of which is incorporated into Objections to Document Request No. 23 as if set forth herein in full. Request No. 23 is additionally overbroad and unduly burdensome insofar as it seeks "any and all documents and ESI pertaining to or referring to instructions or directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility" without regard to where they work or their role in making or influencing any of the decisions placed in controversy by the Complaint. See also Objections to Document Request No. 1, each of which is incorporated into Objections to Document Request No. 23 as if set forth herein in full.  Insofar as this request for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text

messages, social media accounts, etc) among approximately 850 managers and supervisors at the Fremont factory alone regardless of whether their department/division had any involvement whatsoever with the subject matter or issues in the Complaint, it is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1)

**REQUEST FOR PRODUCTION NO. 24:**

Any and all documents and ESI pertaining to or referring to instructions or directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility regarding labor unions between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Respondent objects to Request No. 24's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.") See also Objections to Document Request No. 22, each of which is incorporated into Objections to Document Request No. 24 as if set forth herein in full. Request No. 24 is additionally overbroad and unduly burdensome insofar as it seeks "any and all documents and ESI pertaining to or referring to instructions or directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility" without regard to where they work or their role in making or influencing any of the decisions placed in controversy by the Complaint. See also Objections to Document Request No. 1, each of which is incorporated into Objections to Document Request No. 24 as if set forth herein in full. Insofar as it calls for Respondentto conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 850 managers and supervisors *at its Fremont Factory alone* though said ESI has nothing to do with the allegations of the complaint which place animus at issue, Request No. 24 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1)

**REQUEST FOR PRODUCTION NO. 25:**

Any and all training materials, instructions, or videos provided or shown to new employees

at the Fremont Facility and/or Sparks Facility, including temporary employees and contract
employees, regarding confidentiality agreements or policies at the Fremont Facility between
January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Tesla objects to Request No. 25's use of the term "[a]ny and all training materials" to the
extent it is overbroad and fails to describe the evidence sought with sufficient particularity.  ULP
Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be
avoided wherever possible.")  Tesla objects to Request No. 25's use of the term "[a]ny and all
training materials" to the extent it is overbroad and fails to describe the evidence sought with
sufficient particularity.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the
description of records should be avoided wherever possible.")  The Request is also overbroad as to
time, seeking documents over the span of 29 months.  Respondent objects to the extent the
Request may require the disclosure of trade secrets and/or proprietary business information.
Respondent also objects to the extent that Request No. 25 seeks the production of documents
protected by the attorney-client privilege and/or work product doctrine.  Tesla additionally objects
to Request No. 25 to the extent it is calls for the production of evidence that is not relevant to any
matter in question in the proceedings.  Evidence sought by subpoena should be relevant to the
petition, charge, complaint, and/or notice of hearing.  ULP Casehandling Manual ¶ 11794; *see
Oklahoma Press Publishing Co.*, 327 U.S. at 214-215.  On May 31, 2018, Counsel for the
Charging Parties represented that these "training materials" were relevant to a determination as to
whether the Respondent promulgated the confidentiality agreement intending to chill protected
activity.  The only allegation pertaining to confidentiality in the Complaint alleges that five
paragraphs from a confidentiality acknowledgement that employees at its Fremont, California
factory were asked to sign in or about October 2016 were ***facially violative*** of Section 8(a)(1).  See
also Objections to Document Request No. 1, each of which is incorporated into Objection to
Document Request No. 25 as if set forth herein in full.   Because the issue of intent is irrelevant to
a determination of whether an employer violates Section 8(a)(1) of the Act, Request No. 25 is
objectionable to the extent it seeks irrelevant evidence.  To the extent that Counsel for the

Charging Parties establishes the relevance of such "training materials" or "instructions" to these proceedings, Request No. 25 is additionally objectionable to the extent it is vague and ambiguous in its use of the these terms.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all training materials, instructions, or videos provided or shown to new employees at the Fremont Facility and/or Sparks Facility, including temporary employees and contract employees, regarding labor unions at Tesla between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Tesla objects to Request No. 26's use of the term "[a]ny and all training materials" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.") The Request is also overbroad as to time, seeking documents over the span of 29 months. Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent also objects to the extent that Request No. 26 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine. Tesla additionally objects to Request No. 26 to the extent it is calls for the production of evidence that is not relevant to any matter in question in the proceedings. Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing. ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215. On May 31, 2018, Counsel for the Charging Parties represented that these "training materials" were relevant to a determination as to whether the Respondent's actions were motivated by anti-union animus. The sole allegation in the Complaint where animus is arguably relevant pertains to the two 8(a)(3) allegations in the Complaint alleging Tesla terminated Charging Party Richard Ortiz and disciplined Jose Moran on October 18 and 19, 2017 for engaging in concerted activities and/or union activities. A reasonably tailored request would at most involve the decision makers and a finite period of time preceding the October 18 and 19, 2017 date – not a 29 month time period – for thousands of managers and supervisors. Although relevancy is defined broadly in the context of administrative subpoenas, "[a]n administrative subpoena … may not be so broad

so as to be in the nature of a 'fishing expedition." *NLRB v. Ampersand Publ'g, LLC*, No. MC 15-130 AB (FFMx), 2015 U.S. Dist. LEXIS 176001, at *21-23 (C.D. Cal. Dec. 1, 2015) (quoting *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)).  Because Request No. 26 does not seek evidence that could be used to establish Counsel for the Charging Parties' allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices, it is a "fishing expedition" that warrants revocation in its entirety.  *See* ULP Casehandling Manual ¶ 11796.  To the extent that Counsel for the Charging Parties establishes the relevance of such "training materials" or "instructions" to these proceedings, Request No. 26 is additionally objectionable to the extent it is vague and ambiguous in its use of the these terms.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all documents and ESI pertaining to or referring to training of employees at the Fremont Facility and/or Sparks Facility, including temporary employees and contract employees, regarding confidentiality agreements or policies, including but not limited to videos, presentations, instructor manuals, and instructor scripts, between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Tesla objects to Request No. 27's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible").  See also Objections to Document Request No. 25, each of which is incorporated into Objections to Document Request No. 27 as if set forth herein in full.  By calling for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 16,000+ employees at its Fremont and Gigafactory 1 facilities, Request No. 27 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1).  See also Objections to Document Request No. 1, each of which is incorporated into Objections to Document Request No. 27 as if set forth herein in full.  On May 31, 2018, Counsel for the Charging Parties represented that these "training materials" were relevant to a determination as to whether the Respondent promulgated the confidentiality agreement intending

to chill protected activity. The only allegation pertaining to confidentiality in the Complaint alleges that five paragraphs from a confidentiality acknowledgement that employees at its Fremont, California factory were asked to sign in or about October 2016 were ***facially violative*** of Section 8(a)(1). Because the issue of intent is irrelevant to a determination of whether an employer violates Section 8(a)(1) of the Act, Request No. 27 is objectionable to the extent it seeks irrelevant evidence

**REQUEST FOR PRODUCTION NO. 28:**

Any and all documents and ESI pertaining to or referring to training of employees at the Fremont Facility and/or Sparks Facility, including temporary employees and contract employees, regarding labor unions including but not limited to videos, presentations, instructor manuals, and instructor scripts, between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Tesla objects to Request No. 28's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request Nos. 26 and 27, each of which is incorporated into Objections to Document Request No. 28 as if set forth herein in full. By calling for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 16,000+ employees at its Fremont and Gigafactory 1 facilities, Request No. 28 is overbroad, unduly burdensome, oppressive, harassing and entirely disproportional to the needs of the case. See also Objections to Document Request No. 1, each of which is incorporated into Objections to Document Request No. 28 as if set forth herein in full.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all records of direct communication, including but not limited to emails, text messages, phone logs, notes, audio recordings, and video recordings, between members of Tesla management, including Musk, Hedges, and Toledano, and Richard Ortiz, Jose Moran, Jonathan Galescu, and Michael Sanchez.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Tesla objects to Request No. 29's use of the term "[a]ny and all records" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). The Request is also overbroad to the extent it seeks the production of documents without temporal limitation. ULP Casehandling Manual ¶ 11796 ("The subpoena should describe all documents sought with respect to content and time period"). Tesla objects to Request No. 29 to the extent it is overbroad, calling for documents/information that are not relevant to any matter in question in the proceedings. Evidence sought by subpoena should be relevant to the petition, charge, complaint, and/or notice of hearing. ULP Casehandling Manual ¶ 11794; *see Oklahoma Press Publishing Co.*, 327 U.S. at 214-215. Of the 3 individuals listed in Request No. 29, the Complaint references only Elon Musk, and only to allege his supervisory status. See also Objections to Document Request Nos. 1 and 13, each of which is incorporated into Objection to Document Request No. 29 as if set forth herein in full. Although relevancy is defined broadly in the context of administrative subpoenas, "[a]n administrative subpoena … may not be so broad so as to be in the nature of a 'fishing expedition." *NLRB v. Ampersand Publ'g, LLC*, No. MC 15-130 AB (FFMx), 2015 U.S. Dist. LEXIS 176001, at *21-23 (C.D. Cal. Dec. 1, 2015) (quoting *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)). Because Request No. 29 does not seek evidence that could be used to establish Counsel for the Charging Parties' allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices, it is a "fishing expedition" that warrants revocation in its entirety. *See* ULP Casehandling Manual ¶ 11796. To the extent that Counsel for the Charging Parties establishes the relevance of such "direct communications" to these proceedings, Request No. 29 is additionally objectionable to the extent it is vague and ambiguous in its use of the term "records of direct communication." On May 31, 2018, Counsel for the Charging Parties stated that, upon information and belief, these individuals spoke with several employees directly regarding "working conditions." If Counsel for the Charging Parties seeks specific communications, Request No. 29 is additionally objectionable to the extent it fails to describe the items sought with

"reasonable particularity" as required by FRCP 34(b)(1)(A) and is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). Notwithstanding the foregoing objections and without prejudice thereto, and provided that Counsel for the Charging Parties establishes the relevancy of the subject information and clarifies the evidence sought, Respondent is willing to produce documents that are responsive to Request No. 29 to the extent that they exist.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all documents and ESI pertaining to or referring to a meeting on or about February 9, 2017 at the Fremont Facility involving Supervisor Victor Facha and Jose Moran, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Tesla objects to Request No. 30's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). The Request is also overbroad as to time, seeking documents over the span of 28 months. Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent also objects to the extent that Request No. 30 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine. Tesla objects to Request No. 30 to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case. The Complaint alleges that one "Red Shirt Male Supervisor No. 1", one unidentified "Human Resources Agent", and six "John/Jane Doe Security Guards" unlawfully instructed off-duty employees engaged in leafleting and distributing flyers in the parking lot of Respondent's facility on February 10, 2017. There is no allegation in the Complaint that Tesla by its supervisors unlawfully interrogated or otherwise disciplined Jose Moran on February 9, 2017. In fact, apart from identifying Victor Facha as a statutory supervisor, he is not alleged to have engaged in any

unlawful conduct.  See also Objections to Document Request No. 1, each of which is incorporated into Objections to Document Request No. 30 as if set forth herein in full.  Notwithstanding the foregoing objections and without prejudice thereto, and provided that their relevance to this proceeding is established, Respondent will produce documents responsive to this request to the extent that they exist.   Subject to the aforesaid conditions, Respondent also will consider providing responsive ESI to the extent that Counsel for the Charging Parties clarifies Request No. 30 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all documents and ESI pertaining to or referring to a meeting on or about February 13, 2017 at the Fremont Facility involving Human Resources Business Partner Liza Lipson and Jose Moran, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Tesla objects to Request No. 31's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible").  Though the Complaint alleges that Liza Lipscomb interrogated "employees about their Union and/or protected, concerted activities" on May 24, 2017, there is no allegation in the Complaint that Liza Lipscomb unlawfully interrogated or otherwise disciplined Jose Moran on February 13, 2017.  See also Objections to Document Request No. 30, each of which is incorporated into Objections to Document Request No. 31 as if set forth herein in full.  Respondent also objects to the extent that Request No. 31 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine.  Notwithstanding the foregoing objections and without prejudice thereto, and provided their relevance to this proceeding is established, Respondent will produce non-privileged documents responsive to this request to the extent that they exist.   Subject to the aforesaid conditions, Respondent also will consider

providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 31 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 32:**

Any and all documents and ESI pertaining to or referring to a pre-shift meeting on March 23, 2017 at the Fremont Facility involving Supervisor Armando Rodriguez, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Tesla objects to Request No. 32's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity.  ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible").  The Request is also overbroad as to time, seeking documents over the span of 14 months.  Respondent objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information.  Respondent also objects to the extent that Request No. 32 seeks the production of documents protected by the attorney-client privilege and/or work product doctrine.  Notwithstanding the foregoing objections and without prejudice thereto, Respondent will Respondent will produce Armando Rodriguez's notes memorializing discussions between Armando Rodriguez and employees during a pre-shift meeting held on March 23, 2017,  to the extent that they exist.  Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 32 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all documents and ESI pertaining to or referring to a meeting on May 24, 2017 at the Fremont Facility involving Lisa Lipscomb, Lauren Holcomb, and Richard Ortiz, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Tesla objects to Request No. 33's use of the term "[a]ny and all documents and ESI" to the

extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request No. 31 and 32, each of which is incorporated into Objections to Document Request No. 33 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any notes or summaries prepared by Liza Lipson describing discussions between her and Charging Party Ortiz regarding the use of CalOSHA 300 logs on or about May 24, 2017, to the extent that they exist. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 33 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 34:**

Any and all documents and ESI pertaining to or referring to a meeting on May 24, 2017 at the Fremont Facility involving Lisa Lipscomb, Lauren Holcomb, and Jonathan Galescu, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Tesla objects to Request No. 34's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request Nos. 31-33, each of which is incorporated into Objections to Document Request No. 34 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any notes or summaries prepared by Liza Lipson describing discussions between her and Charging Party Ortiz regarding the use of CalOSHA 300 logs on or about May 24, 2017, to the extent that they exist. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 34 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 35:**

Any and all documents and ESI pertaining to or referring to meetings regarding safety at the Fremont Facility attended by Musk, Hedges and/or Toledano and Richard Ortiz, Jose Moran,

Michael Sanchez, and/or Jonathan Galescu, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Tesla objects to Request No. 35's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). The Request is also overbroad to the extent it seeks the production of documents without temporal limitation. ULP Casehandling Manual ¶ 11796 ("The subpoena should describe all documents sought with respect to content and time period"). Tesla objects to Request No. 35 to the extent it is overbroad, calling for documents/information that are not relevant to any matter in question in the proceedings. See also Objections to Document Request Nos. 1 and 29, each of which is incorporated into Objection to Document Request No. 35 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, and provided that Counsel for the Charging Parties establishes the relevancy of the subject information and clarifies the evidence sought, Respondent is willing to produce documents that are responsive to Request No. 35 to the extent that they exist.

**REQUEST FOR PRODUCTION NO. 36:**

Any document containing the full name of current or former Tesla supervisor with the first name "Arnold" who in 2017 was the closures and quality control supervisor and was himself supervised by Emmanuel Garza.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Tesla will produce a document containing the full name of current or former Tesla supervisor with the first name "Arnold" who in 2017 was the closures and quality control supervisor and was himself supervised by Emmanuel Garza if there was one in response to this request.

**REQUEST FOR PRODUCTION NO. 37:**

Any document containing the full name and picture of the current or former male Tesla

production supervisor of the body fit team on the S/X final line during day shift in July and August 2017.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Tesla will produce any document containing the full name and picture of the current or former male Tesla production supervisor of the body fit team on the S/X final line during day shift in July and August 2017 if there was one in response to this request.

**REQUEST FOR PRODUCTION NO. 38:**

Any and all documents and ESI pertaining to or referring to Jonathan Galescu and Richard Ortiz's April 4, 2017 email requesting Tesla provide its OSHA 300 Logs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Tesla objects to Request No. 38's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request Nos. 1, each of which is incorporated into Objection to Document Request No. 38 as if set forth herein in full. The Request is also overbroad, unduly burdensome, oppressive, harassing, confusing, and so lacking in sufficient particularity as to make a reasonable and efficient search for responsive information and documents impracticable. Insofar as it calls for Respondent to conduct a sweeping search of ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately 12,000 employees at the Fremont factory making the even merest mention of OSHA 300 logs and even though said ESI may have absolutely nothing to do with the subject matter or issues in the Complaint, Request No. 38 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). The only allegation pertaining to OSHA 300 logs relates to two very specific allegations: Human Resources Business Partner David Zweig and Human Resources Partner Seth Woody attempted to prohibit Charging Party Jonathan Galescu from discussing safety concerns with other employees and/or the Union by sending two separate emails on April 5, 2017 and April 28, 2017 respectively. Request No. 38 is also objectionable to the extent it calls for the production of "documents" that do not

22-60493.5743

relate to any matter in question in the proceedings, is overbroad as to time, and is entirely disproportional to the needs of the case. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails exchanged between David Zweig and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017 and any emails exchanged between Seth Woody and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017, if they exist.

**REQUEST FOR PRODUCTION NO. 39:**

Any and all documents and ESI pertaining to or referring to Jonathan Galescu and Richard Ortiz's April 13, 2017 follow-up email requesting Tesla provide its OSHA 300 Logs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Tesla objects to Request No. 39's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request Nos. 1 and 38, each of which is incorporated into Objection to Document Request No. 39 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails exchanged between David Zweig and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017 and any emails exchanged between Seth Woody and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017, if they exist.

**REQUEST FOR PRODUCTION NO. 40:**

Any and all documents and ESI pertaining to or referring to Jonathan Galescu and Richard Ortiz's April 21, 2017 second follow-up email requesting Tesla provide its OSHA 300 Logs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Tesla objects to Request No. 40's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be

avoided wherever possible").  See also Objections to Document Request Nos. 1 and 39, each of which is incorporated into Objection to Document Request No. 40 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce any emails exchanged between David Zweig and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017 and any emails exchanged between Seth Woody and Charging Party Jonathan Galescu regarding the use of CalOSHA 300 logs between April 1, 2017 and April 28, 2017, if they exist.

**REQUEST FOR PRODUCTION NO. 41:**

Any uniform or team wear policy, rule, or memorandum that has existed at the Fremont Facility and/or Sparks Facility between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Tesla objects to this request to the extent it is vague and ambiguous in its use of the phrase "policy, rule, or memorandum."  Respondent additionally objects to Request No. 41 to the extent it is overbroad, calling for documents/information that are not relevant to any matter in question in the proceedings.  The Complaint alleges that since April 2017, Respondent has maintained a facially unlawful team wear policy applicable to production employees working in general assembly at the Fremont factory.  The Complaint also alleges that Associate Production Manager Tope Ogunniyi, Supervisor Tim Fenelon and one other "Production Supervisor (whose name is unknown) selectively and disparately prohibited shirts with Union insignia at the Fremont facility on two specific dates: August 10, 2017 and August 14, 2017.  The Complaint further alleges that in the Spring of 2017 "Arnold (Last Name Unknown") threatened a production employee for wearing a union hat at the Fremont factory and that on September 8, 2017 Supervisor Dave Teston threatened a training coordinator for wearing a union hat at Gigafactory 1.  The later allegations do not pertain to Respondent's team wear policy applicable to assembly employees.   The Complaint does not allege that Respondent's employees were disciplined for wearing union hats or shirts. Similarly, the Complaint does not allege that any supervisor or agent of Respondent selectively and disparately prohibited shirts with Union insignia on any other dates or any other areas except for general assembly and production in the Fremont Factory and Gigafactory 1.  Notwithstanding

the foregoing objections and without prejudice thereto, Respondent will produce the team wear policy applicable to production employees working in general assembly at the Fremont factory in April 2017 and August 2017; any written policies governing the clothing employees working in body in white at the Fremont factory were permitted to wear in the Spring of 2017; and any written policies governing the clothing training coordinators at Gigafactory 1 are permitted to wear in September 2017; and any written policies governing the clothing training coordinators at Gigafactory 1 are permitted to wear in September 2017 to the extent they exist.

**REQUEST FOR PRODUCTION NO. 42:**

Any and all documents and ESI pertaining to or referring to a uniform or team wear policy, rule, or memorandum at the Fremont Facility and/or Sparks Facility between January 1, 2016 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Tesla objects to Request No. 42's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request Nos. 1 and 41, each of which is incorporated into Objection to Document Request No. 42 as if set forth herein in full. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the team wear policy applicable to production employees working in general assembly at the Fremont factory in April 2017 and August 2017; any written policies governing the clothing employees working in body in white at the Fremont factory were permitted to wear in the Spring of 2017; and any written policies governing the clothing training coordinators at Gigafactory 1 are permitted to wear in September 2017 to the extent they exist. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 42 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 43:**

Any and all documents and ESI pertaining to or referring to a meeting on Tuesday, September 19, 2017 attended by Musk, Toledano, and others regarding the separation of

employees from their employment at Tesla, including but not limited to correspondence, notes, presentations, drafts, and lists of employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Tesla objects to Request No. 43's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request No. 1 and 14, each of which is incorporated into Objection to Document Request No. 43 as if set forth herein in full. Request No. 43 is objectionable to the extent it seeks evidence which is not relevant to any matter in question in the proceedings. Charging Party Ortiz' October 18, 2017 termination is the only termination forming the basis of any allegation of the Complaint. Further, on May 31, 2018, Counsel for the Charging Parties indicated that the purported relevance of the information sought by Request No. 43 derives from an allegation that Tesla implemented "mass terminations" as a subterfuge to terminate Union supporters. As there are no allegations in the Complaint regarding any "mass discharge," and the Regional Director withdrew Case 32-CA-214300 on March 29, 2018, which was the operative charge with respect to said allegations, Request No. 43 is objectionable to the extent it seeks information that is irrelevant to any matter in question in the proceedings. *See Taylor Farms Pacific*, 32–CA–116854, unpub. Board order issued Feb. 6, 2015 (2015 WL 514108).

**REQUEST FOR PRODUCTION NO. 44:**

Any and all documents and ESI pertaining to, referring to, or responding to the Sunday, October 8, 2017 letter sent by Tesla employees to Musk regarding possible mass terminations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Tesla objects to Request No. 44's use of the term "[a]ny and all documents and ESI" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request No. 1 and 14, each of which is incorporated into Objection to Document Request No. 44 as if set forth herein in full.

Request No. 43 is objectionable to the extent it seeks evidence which is not relevant to any matter in question in the proceedings. On May 31, 2018, Counsel for the Charging Parties indicated that the purported relevance of the information sought by Request No. 44 derives from an allegation that Tesla implemented "mass terminations" as a subterfuge to terminate Union supporters. See also Objections to Document Request No. 43, each of which is incorporated into Objection to Document Request No. 44 as if set forth herein in full.

**REQUEST FOR PRODUCTION NO. 45:**

Copies of all emails deleted or removed by Tesla from the Tesla email accounts of Richard Ortiz, Jose Moran, Jonathan Galescu, and Michael Sanchez.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Tesla objects to Request No. 45's use of the term "all emails" to the extent it is overbroad and fails to describe the evidence sought with sufficient particularity. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible"). See also Objections to Document Request No. 1, each of which is incorporated into Objection to Document Request No. 44 as if set forth herein in full. Request No. 45 is additionally objectionable to the extent that it calls for information that is irrelevant to any matter in question in the proceedings. There are no allegations in the Complaint pertaining to any alleged deletion or removal of emails from the above-named individuals' email accounts. Indeed—the Regional Director withdrew the allegation regarding the facial invalidity of the confidentiality agreement's clause regarding email communications upon issuing the operative Complaint. Because Request No. 45 does not seek evidence that could be used to establish Counsel for the Charging Parties' allegations in these proceedings, but instead looks for evidence of other, unrelated unfair labor practices, it is so broad as to be in the nature of a "fishing expedition" and should be revoked on that basis. *See* ULP Casehandling Manual ¶ 11796.

**REQUEST FOR PRODUCTION NO. 46:**

Any policies, procedures, and/or rules related to Tesla deleting or removing emails from Tesla employees' company email accounts at the Fremont Facility and/or Sparks Facility.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 46:

Tesla objects to Request No. 46 to the extent the terms "policies," "procedures," and/or "rules" are vague and ambiguous. See also Objections to Document Request No. 45, each of which is incorporated into Objection to Document Request No. 46 as if set forth herein in full.

### REQUEST FOR PRODUCTION NO. 47:

Any and all documents and/or ESI pertaining to or referring to the employment of Jonathan Galescu, including but not limited to;

(a)    Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

(b)    Any and all documents relating to holding and obtaining employment.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 47:

Tesla objects to Request No. 47 to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case. Tesla additionally objects to Request No. 47 to the extent that it seeks "any and all documents and/or ESI" and is accordingly insufficiently particularized. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.") Insofar as it calls without limitation for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately *41,000 employees worldwide* though the vast majority of said ESI has nothing to do with the allegations of the Complaint, Request No. 47 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). Respondent further objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent further objects to the extent that Request No. 47 calls for the production of information protected by the attorney-client privilege and/or work product doctrine. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the personnel file for Charging Party Galescu. Respondent will consider providing responsive ESI

to the extent that Counsel for the Charging Party clarifies Request No. 47 and tailors it to specific custodians and date ranges.

**REQUEST FOR PRODUCTION NO. 48:**

Any and all documents and/or ESI pertaining to or referring to the employment of Michael Sanchez, including but not limited to

(a)     Any and all documents relating to his performance, evaluations, and

(b)     any complaints concerning him;

(c)     and Any and all documents relating to holding and obtaining of employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Tesla objects to Request No. 48 to the extent it calls for the production of "documents" that do not relate to any matter under investigation or in question in the proceedings, is overbroad as to time, and disproportional to the needs of the case. Tesla additionally objects to Request No. 48 to the extent that it seeks "any and all documents and/or ESI" and is accordingly insufficiently particularized. ULP Casehandling Manual ¶ 11776 ("The use of the word 'all' in the description of records should be avoided wherever possible.") Insofar as it calls without limitation for Respondent to conduct a sweeping search for ESI (e.g., emails, personal electronic devices, voicemails, text messages, social media accounts, etc) among approximately ***41,000 employees worldwide*** though the vast majority of said ESI has nothing to do with the allegations of the Complaint, Request No. 48 is overbroad, unduly burdensome, oppressive, harassing, and not "proportional to the needs of the case" as required by FRCP 26(b)(1). . Respondent further objects to the extent the Request may require the disclosure of trade secrets and/or proprietary business information. Respondent further objects to the extent that Request No. 48 calls for the production of information protected by the attorney-client privilege and/or work product doctrine. Notwithstanding the foregoing objections and without prejudice thereto, Respondent will produce the personnel file for Charging Party Sanchez. Respondent will consider providing responsive ESI to the extent that Counsel for the Charging Party clarifies Request No. 48 and tailors it to specific custodians and date ranges.

1 | Dated:  June 4, 2018

2

3

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

By       _____

5

MARK S. ROSS
KEAHN N. MORRIS

6

7

Attorneys for
TESLA, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:486565733.1      RESPONDENT'S PETITION TO PARTIALLY REVOKE SUBPOENAS DUCES
TECUM B-1-11BJS5V AND B-1-11BKOEJ ISSUED TO TESLA, INC

# EXHIBIT A

22-60493.5752

FORM NLRB-31

## SUBPOENA DUCES TECUM

### UNITED STATES OF AMERICA
### NATIONAL LABOR RELATIONS BOARD

To     Custodian of Records, Tesla, Inc.

     45500 Fremont Blvd., Fremont, CA 94538-6326

As requested by   Margo A. Feinberg, Counsel for Charging Party International Union, United Automobile, Aerospace, and Agricultural Workers of America, AFL-CIO

whose address is   8000 East Jefferson Ave., Detroit, Michigan 48214

     (Street)     (City)     (State)     (ZIP)

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE   a duly designated

     Administrative Law Judge  of the National Labor Relations Board

at  1301 Caly Street, 5th Floor - North Tower, Conference Room H

in the City of  Oakland, CA

on  Monday, June 11, 2018     at   9:00 AM   or any adjourned

or rescheduled date to testify in  Tesla, Inc.   (32-CA-197058, 32-CA-197091, 32-CA-197197,
     32-CA-197020 et al.   32-CA-200530, 32-CA-208614, and 32-CA-210879)

     (Case Name and Number)

     And you are hereby required to bring with you and produce at said time and place the following books, records, correspondence, and documents:

### SEE ATTACHMENT

If you do not intend to comply with the subpoena, within 5 days (excluding intermediate Saturdays, Sundays, and holidays) after the date the subpoena is received, you must petition in writing to revoke the subpoena. Unless filed through the Board's E-Filing system, the petition to revoke must be received on or before the official closing time of the receiving office on the last day for filing. If filed through the Board's E-Filing system, it may be filed up to 11:59 pm in the local time zone of the receiving office on the last day for filing. Prior to a hearing, the petition to revoke should be filed with the Regional Director; during a hearing, it should be filed with the Hearing Officer or Administrative Law Judge conducting the hearing. See Board's Rules and Regulations, 29 C.F.R Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings) and 29 C.F.R Section 102.111(a)(1) and 102.111(b)(3) (time computation). Failure to follow these rules may result in the loss of any ability to raise objections to the subpoena in court.

**B-1-11BJS5V**

Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at  Los Angeles, California

Dated:   May 25, 2018

John J. Ring

John Ring, Chairman

NOTICE TO WITNESS. Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed. A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

### PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is mandatory in that failure to supply the information may cause the NLRB to seek enforcement of the subpoena in federal court.

Case 32-CA-197020

B-1-11BJS5V

**RETURN OF SERVICE**

I certify that, being a person over 18 years of
age, I duly served a copy of this subpoena

☐ by person

☐ by certified mail

☐ by registered mail

☐ by telegraph

(Check ☐ by leaving copy at principal
method office or place of business
used.) at

_____

_____

on the named person on

_____
(Month, day, and year)

_____
(Name of person making service)

_____
(Official title, if any)

**CERTIFICATION OF SERVICE**

I certify that named person was in
attendance as a witness at

on

_____
(Month, day or days, and year)

_____
(Name of person certifying)

_____
(Official title)

22-60493.5754

1  MARGO A. FEINBERG (100655)
   DANIEL E. CURRY (297412)
2  JULIE S. ALARCON (316063)
   SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS, LLP
3  6300 Wilshire Boulevard, Suite 2000
   Los Angeles, California 90048
4  Telephone:   (323) 655-4700
   Fax:   (323) 655-4488
5
6  *Attorneys for Michael Sanchez, Jonathan Galescu, Richard Ortiz, and International*
   *Union, United Automobile, Aerospace And Agricultural Workers Of America, AFL-CIO*
7

8               UNITED STATES OF AMERICA

9        BEFORE THE NATIONAL LABOR RELATIONS BOARD

10          SAN FRANCISCO DIVISION OF JUDGES

11  TESLA, INC                          | Case Nos.   32-CA-197020
12                                      |             32-CA-197058
                    Respondent,         |             32-CA-197091
13                                      |             32-CA-197197
            and                         |             32-CA-200530
14                                      |             32-CA-208614
    MICHAEL SANCHEZ, an Individual      |             32-CA-210879
15
            Charging Party,
16                                      |  **SUBPOENA DUCES TECUM**
            and                         |  **(SUBPOENA # B-1-11BJS5V) –**
17                                      |  **DOCUMENT SCHEDULE**
    JONATHAN GALESCU, an Individual
18
            Charging Party,
19
            and
20
    RICHARD ORTIZ, an Individual
21
            Charging Party,
22
            and
23
    INTERNATIONAL UNION, UNITED
24  AUTOMOBILE, AEROSPACE AND
    AGRICULTURAL WORKERS OF
25  AMERICA, AFL-CIO
26          Charging Party,
27
28

22-60493.5755

# DOCUMENT SCHEDULE

## <u>DEFINITIONS AND INSTRUCTIONS</u>

A. In construing this request, the singular form of a word shall include the plural and the plural shall include the singular wherever necessary to bring within the scope of this request any information which might otherwise be construed to be outside its scope.

B. As used herein, the terms **"document"** and **"documents"** mean any kind of written, typewritten, printed or recorded material, including but not limited to, any notes, work papers or working papers, memoranda (including but not limited to internal memoranda, memoranda to files, reports and analyses), charges, complaints, claims, affidavits, statements, papers, files (including any documents stored or maintained therein), timesheets, billing memoranda, invoices, forms, electronic mail or e-mail messages, data, tapes, printouts, letters, communications, contracts, agreements, telegrams, records, correspondence, diaries, calendars, recordings and transcription of recordings, information obtainable from computers, photographs, diagrams, or any other writing, however stored, produced or reproduced, and further includes, without limitations, originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such documents whether or not used, within the possession, custody and/or control of you, or your agents, attorneys, accountants, counselors, outside consultants, and/or anyone acting on behalf of you, excepting only those documents which are privileged or otherwise protected from discovery, as to which the claim of privilege or protection is specifically stated by written notice to Charging Parties within the time provided by the Federal Rules of Civil Procedure.

C. Whenever appropriate, the singular form of a word should be interpreted in the plural. **"And"** as well as **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information which would otherwise be construed to be outside their scope.

D. The term **"referring to"** means relating to, reflecting, supporting, prepared in connection with, used in preparation for, pertaining to, having any relationship to,

<div align="center">1</div>

22-60493.5756

1  evidencing or constituting evidence of, or being in any way legally, logically, or factually

2  connected with the matter discussed, in whole or in part.

3       E.     The terms **"Tesla"** and **"Employer"** refer to the Respondent Tesla, Inc.

4       F.     The term **"Union"** refers to Charging Party International Union, United

5  Automobile, Aerospace And Agricultural Workers Of America, AFL-CIO, also known as

6  the "United Automobile Workers" or "UAW."

7       G.     The term **"Fremont Facility"** refers to the Tesla Facility located at 45500

8  Fremont Blvd, Fremont, California 94538.

9       H.     The term **"Sparks Facility"** refers to the Tesla Facility located at Electric

10  Ave, Sparks, Nevada 89434.

11       I.     If any document that would have been responsive to these Requests has been

12  lost, misplaced, thrown away or destroyed, or otherwise cannot be found,

13            a.     identify the document and provide a brief description of the document;

14            b.     state the date of, and identify the person responsible for, the loss,

15       concealment, misplacement, discarding, or destruction of the document;

16            c.     identify the production request herein to which the document would

17       have been responsive had it not been lost, misplaced, thrown away or destroyed, or

18       otherwise become unavailable for production;

19            d.     identify the author of the document;

20            e.     state the manner in which the document was disposed; and

21            f.     state in detail, and identify the person with the most knowledge of, the

22       reason(s) that or circumstances under which the document was lost, hidden,

23       destroyed, misplaced, thrown away, or given away.

24       J.     If you cannot respond to any of these Requests in full, after exercising due

25  diligence to secure the documents to do so, please so state, and respond to the extent

26  possible, specifying your inability to respond to the remainder, and providing whatever

27  documents you are able to produce with regard to these Requests.

28  //

2

22-60493.5757

K.    Should you assert a privilege with respect to any document requested to be produced, please provide the following as to each such document:

        a.    The type of document or information (e.g., letter, notebook, etc.);

        b.    The date of the document;

        c.    Identification of the author(s) of the document;

        d.    Identification of the signatory or signatories of the document;

        e.    The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information contained therein; and

        f.    A detailed statement of the basis for the claim that the document is privileged or otherwise not discoverable.

L.    This request is continuing in character and if additional responsive documents come to your attention following the date of production, such documents must be promptly produced.

M.    All documents produced pursuant to this subpoena should be organized and identified by the subpoena paragraph to which each document, or set of documents, is responsive.

N.    Unless otherwise stated, each request in this subpoena covers the period from January 1, 2016, to the present.

## DOCUMENTS REQUESTED

1.    Any and all documents and/or electronically stored information ("ESI") pertaining to or referring to Tesla CEO Elon Musk's ("Musk") tweet on May 20, 2018 at 6:06 pm, stating that "About 2% of Tesla, incl salaried & hourly, union & non-union were let go in annual review. Only known union person fired was guy who repeatedly threatened non-union supporters verbally & on social media & lied about it," including but not limited to:

//

1             a.  Any and all documents pertaining to or referring to verbal threats

2                by the "known union person";

3             b.  Any and all documents pertaining to or referring to social media

4                threats by the "known union person";

5             c.  Any and all documents pertaining to or referring to lies by the

6                "known union person" about threatening non-union supporters;

7             d.  Any and all documents pertaining to or referring to the contention

8                that "about 2% of Tesla, incl salaried & hourly, union & non-union

9                were let go in annual review."

10      2.    Any and all documents and/or ESI pertaining to or referring to the

11  employment of Richard Ortiz, including but not limited to:

12             a.  Any and all documents relating to his performance, evaluations,

13                and any complaints concerning him; and

14             b.  Any and all documents relating to holding and obtaining of

15                employment.

16      3.    Any and all documents and/or ESI pertaining to or referring to the

17  termination of Richard Ortiz, including but not limited to:

18             a.  Any and all documents that Ricky Gecewich and/or anyone acting

19                on his behalf or on behalf of Tesla, Inc. used or relied upon in the

20                investigation of Mr. Ortiz and/or in recommending Mr. Ortiz's

21                termination;

22             b.  Any and all documents given to Mr. Ortiz by Tesla upon

23                termination;

24              c.  Any and all internal correspondence or messaging sent between

25                Tesla management regarding Mr. Ortiz's termination;

26             d.  Any and all notes taken during, documents created in preparation

27                for, and correspondence regarding any meetings between

28                Gecewich and Ortiz.

4

22-60493.5759

4.     Any and all documents and/or ESI pertaining to or referring to the employment of Jose Moran, including but not limited to:

        a.  Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

        b.  Any and all documents relating to holding and obtaining of employment.

5.     Any and all documents and/or ESI pertaining to or referring to the discipline of Jose Moran in October 2017, including but not limited to:

        a.  Any and all documents that Ricky Gecewich and/or anyone acting on his behalf or on behalf of Tesla, Inc. used or relied upon in the investigation of Mr. Moran and/or in recommending Mr. Moran's discipline;

        b.  Any and all documents given to Mr. Moran upon receiving notice of the discipline;

        c.  Any internal correspondence or messaging sent between Tesla management regarding Mr. Moran's discipline;

        d.  Any and all notes taken during, documents created in preparation for, and correspondence regarding any meetings between Gecewich and Moran.

6.     Any policies, procedures, and/or rules related to Tesla employees' access to and use of the software application called "Workday" that has existed between January 1, 2016 and the present.

7.     Any documents containing the names and addresses of all security companies hired by Tesla, Inc. to provide security services at Fremont Facility at any time between January 1, 2017 and present.

8.     Any documents showing the name of every security guard employed by Tesla, Inc. or a security company described in Request No. 1 above stationed or working at the Fremont Facility on February 10, 2017 and May 24, 2017, and a copy of each

5

22-60493.5760

individual's identification badge or other picture.

9.    Any and all documents and ESI pertaining to or referring to security procedures for individuals handing out leaflets at the Fremont Facility between January 1, 2017 and present.

10.    Any and all documents and ESI pertaining to or referring to security procedures for suspected union activity at the Fremont Facility between January 1, 2017 and present.

11.    Any policies, procedures, and/or rules related to the use of drones in security operations at the Fremont Facility between January 1, 2017 and present.

12.    Pictures of each building entrance to the Fremont Facility.

13.    Any and all correspondence sent by Musk, Director of Human Resources Josh Hedges ("Hedges"), or Chief People Officer Gaby Toledano ("Toledano") to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding compensation between January 1, 2016 and the present.

14.    Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding labor unions between January 1, 2016 and the present.

15.    Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding safety and/or OSHA Logs between January 1, 2016 and the present.

16.    Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla employees en masse at the Fremont Facility and/or the Sparks Facility regarding confidentiality agreements or policies between January 1, 2016 and the present.

17.    Any and all confidentiality agreements or policies provided to Tesla employees at the Fremont Facility and/or the Sparks Facility between January 1, 2016 and the present.

18.    Any and all directives or instructions regarding complying with confidentiality agreements or policies given to Tesla employees at the Fremont Facility

6

22-60493.5761

1 │ and/or the Sparks Facility between January 1, 2016 and the present.

2 │     19.    Any and all scripts, notes, talking points, or instructions used by individuals
3 │ who spoke to Tesla employees at the Fremont Facility and/or the Sparks Facility about
4 │ confidentiality agreements or policies between January 1, 2016 and the present.

5 │     20.    Any and all records regarding Tesla employees at the Fremont Facility and/or
6 │ the Sparks Facility who were terminated for violating a confidentiality agreement or policy
7 │ between January 1, 2016 and the present.

8 │     21.    Any and all instructions or directives provided to Tesla supervisors at the
9 │ Fremont Facility and/or the Sparks Facility regarding confidentiality agreements or policies
10 │ between January 1, 2016 and the present.

11 │     22.    Any and all instructions or directives provided to Tesla supervisors at the
12 │ Fremont Facility and/or the Sparks Facility regarding labor unions between January 1,
13 │ 2016 and the present.

14 │     23.    Any and all documents and ESI pertaining to or referring to instructions or
15 │ directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility
16 │ regarding confidentiality agreements or policies between January 1, 2016 and the present.

17 │     24.    Any and all documents and ESI pertaining to or referring to instructions or
18 │ directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility
19 │ regarding labor unions between January 1, 2016 and the present.

20 │     25.    Any and all training materials, instructions, or videos provided or shown to
21 │ new employees at the Fremont Facility and/or Sparks Facility, including temporary
22 │ employees and contract employees, regarding confidentiality agreements or policies at the
23 │ Fremont Facility between January 1, 2016 and the present.

24 │     26.    Any and all training materials, instructions, or videos provided or shown to
25 │ new employees at the Fremont Facility and/or Sparks Facility, including temporary
26 │ employees and contract employees, regarding labor unions at Tesla between January 1,
27 │ 2016 and the present.

28 │     27.    Any and all documents and ESI pertaining to or referring to training of

7

22-60493.5762

1  employees at the Fremont Facility and/or Sparks Facility, including temporary employees
2  and contract employees, regarding confidentiality agreements or policies, including but not
3  limited to videos, presentations, instructor manuals, and instructor scripts, between
4  January 1, 2016 and the present.

5      28.    Any and all documents and ESI pertaining to or referring to training of
6  employees at the Fremont Facility and/or Sparks Facility, including temporary employees
7  and contract employees, regarding labor unions including but not limited to videos,
8  presentations, instructor manuals, and instructor scripts, between January 1, 2016 and the
9  present.

10     29.    Any and all records of direct communication, including but not limited to
11 emails, text messages, phone logs, notes, audio recordings, and video recordings, between
12 members of Tesla management, including Musk, Hedges, and Toledano, and Richard
13 Ortiz, Jose Moran, Jonathan Galescu, and Michael Sanchez.

14     30.    Any and all documents and ESI pertaining to or referring to a meeting on or
15 about February 9, 2017 at the Fremont Facility involving Supervisor Victor Facha and Jose
16 Moran, including but not limited to video recordings, audio recordings, notes taken at the
17 meeting, documents created in preparation for the meeting, and correspondence regarding
18 the meeting.

19     31.    Any and all documents and ESI pertaining to or referring to a meeting on or
20 about February 13, 2017 at the Fremont Facility involving Human Resources Business
21 Partner Liza Lipson and Jose Moran, including but not limited to video recordings, audio
22 recordings, notes taken at the meeting, documents created in preparation for the meeting,
23 and correspondence regarding the meeting.

24     32.    Any and all documents and ESI pertaining to or referring to a pre-shift
25 meeting on March 23, 2017 at the Fremont Facility involving Supervisor Armando
26 Rodriguez, including but not limited to video recordings, audio recordings, notes taken at
27 the meeting, documents created in preparation for the meeting, and correspondence
28 regarding the meeting.

8

22-60493.5763

1     33.    Any and all documents and ESI pertaining to or referring to a meeting on

2 May 24, 2017 at the Fremont Facility involving Lisa Lipscomb, Lauren Holcomb, and

3 Richard Ortiz, including but not limited to video recordings, audio recordings, notes taken

4 at the meeting, documents created in preparation for the meeting, and correspondence

5 regarding the meeting.

6     34.    Any and all documents and ESI pertaining to or referring to a meeting on

7 May 24, 2017 at the Fremont Facility involving Lisa Lipscomb, Lauren Holcomb, and

8 Jonathan Galescu, including but not limited to video recordings, audio recordings, notes

9 taken at the meeting, documents created in preparation for the meeting, and

10 correspondence regarding the meeting.

11     35.    Any and all documents and ESI pertaining to or referring to meetings

12 regarding safety at the Fremont Facility attended by Musk, Hedges and/or Toledano and

13 Richard Ortiz, Jose Moran, Michael Sanchez, and/or Jonathan Galescu, including but not

14 limited to video recordings, audio recordings, notes taken at the meeting, documents

15 created in preparation for the meeting, and correspondence regarding the meeting.

16     36.    Any document containing the full name of current or former Tesla supervisor

17 with the first name "Arnold" who in 2017 was the closures and quality control supervisor

18 and was himself supervised by Emmanuel Garza.

19     37.    Any document containing the full name and picture of the current or former

20 male Tesla production supervisor of the body fit team on the S/X final line during day shift

21 in July and August 2017.

22     38.    Any and all documents and ESI pertaining to or referring to Jonathan

23 Galescu and Richard Ortiz's April 4, 2017 email requesting Tesla provide its OSHA 300

24 Logs.

25     39.    Any and all documents and ESI pertaining to or referring to Jonathan

26 Galescu and Richard Ortiz's April 13, 2017 follow-up email requesting Tesla provide its

27 OSHA 300 Logs.

28 //

22-60493.5764

1      40.    Any and all documents and ESI pertaining to or referring to Jonathan

2 Galescu and Richard Ortiz's April 21, 2017 second follow-up email requesting Tesla

3 provide its OSHA 300 Logs.

4      41.    Any uniform or team wear policy, rule, or memorandum that has existed at

5 the Fremont Facility and/or Sparks Facility between January 1, 2016 and the present.

6      42.    Any and all documents and ESI pertaining to or referring to a uniform or

7 team wear policy, rule, or memorandum at the Fremont Facility and/or Sparks Facility

8 between January 1, 2016 and the present.

9      43.    Any and all documents and ESI pertaining to or referring to a meeting on

10 Tuesday, September 19, 2017 attended by Musk, Toledano, and others regarding the

11 separation of employees from their employment at Tesla, including but not limited to

12 correspondence, notes, presentations, drafts, and lists of employees.

13    44.    Any and all documents and ESI pertaining to, referring to, or responding to

14 the Sunday, October 8, 2017 letter sent by Tesla employees to Musk regarding possible

15 mass terminations.

16    45.    Copies of all emails deleted or removed by Tesla from the Tesla email

17 accounts of Richard Ortiz, Jose Moran, Jonathan Galescu, and Michael Sanchez.

18    46.    Any policies, procedures, and/or rules related to Tesla deleting or removing

19 emails from Tesla employees' company email accounts at the Fremont Facility and/or

20 Sparks Facility.

21    47.    Any and all documents and/or ESI pertaining to or referring to the

22 employment of Jonathan Galescu, including but not limited to;

23              a.  Any and all documents relating to his performance, evaluations,

24                  and any complaints concerning him; and

25              b.  Any and all documents relating to holding and obtaining

26                  employment.

27    48.    Any and all documents and/or ESI pertaining to or referring to the

28 employment of Michael Sanchez, including but not limited to;

22-60493.5765

a. Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

b. Any and all documents relating to holding and obtaining of employment.

# EXHIBIT B

22-60493.5767

FORM NLRB-31

# SUBPOENA DUCES TECUM

## UNITED STATES OF AMERICA
## NATIONAL LABOR RELATIONS BOARD

To ⠀ Custodian of Records, Tesla, Inc.

⠀⠀⠀45500 Fremont Blvd., Fremont, CA 94538-6326

⠀⠀⠀⠀⠀⠀Margo A. Feinberg, Counsel for Charging Party International Union, United Automobile,
As requested by ⠀ Aerospace, and Agricultural Workers of America, AFL-CIO

whose address is ⠀⠀ 8000 East Jefferson Ave., Detroit, Michigan 48214
⠀⠀⠀⠀⠀⠀(Street)⠀⠀⠀⠀⠀⠀⠀⠀(City)⠀⠀⠀⠀⠀⠀⠀(State)⠀⠀⠀(ZIP)

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE ⠀ a duly designated

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ Administrative Law Judge ⠀ of the National Labor Relations Board
at ⠀ 1301 Clay Street, 5th Floor - North Tower, Conference Room H

in the City of ⠀ Oakland, CA

on ⠀ Monday, June 11, 2018 ⠀⠀⠀⠀⠀⠀⠀ at ⠀ 9:00 AM ⠀⠀⠀⠀⠀ or any adjourned

⠀⠀⠀⠀⠀⠀⠀⠀⠀Tesla, Inc.⠀⠀⠀⠀(32-CA-197058, 32-CA-197091, 32-CA-197197,
or rescheduled date to testify in ⠀ 32-CA-197020 et al.⠀⠀ 32-CA-200530, 32-CA-208614, and 32-CA-210879)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀(Case Name and Number)
⠀⠀And you are hereby required to bring with you and produce at said time and place the following books, records, correspondence, and documents:

### SEE ATTACHMENT

If you do not intend to comply with the subpoena, within 5 days (excluding intermediate Saturdays, Sundays, and holidays) after the date the subpoena is received, you must petition in writing to revoke the subpoena. Unless filed through the Board's E-Filing system, the petition to revoke must be received on or before the official closing time of the receiving office on the last day for filing. If filed through the Board's E-Filing system, it may be filed up to 11:59 pm in the local time zone of the receiving office on the last day for filing. Prior to a hearing, the petition to revoke should be filed with the Regional Director; during a hearing, it should be filed with the Hearing Officer or Administrative Law Judge conducting the hearing. See Board's Rules and Regulations, 29 C.F.R Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings) and 29 C.F.R Section 102.111(a)(1) and 102.111(b)(3) (time computation). Failure to follow these rules may result in the loss of any ability to raise objections to the subpoena in court.

**B-1-11BK0EJ**

Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at ⠀ Los Angeles, California

Dated: ⠀⠀ May 30, 2018

⠀⠀⠀⠀⠀⠀⠀John J. Ring

⠀⠀⠀⠀⠀⠀⠀**John Ring, Chairman**

⠀⠀**NOTICE TO WITNESS.** Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed. A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

### PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is mandatory in that failure to supply the information may cause the NLRB to seek enforcement of the subpoena in federal court.

1  MARGO A. FEINBERG (100655)
   DANIEL E. CURRY (297412)
2  JULIE S. ALARCON (316063)
   SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS, LLP
3  6300 Wilshire Boulevard, Suite 2000
   Los Angeles, California 90048
4  Telephone:   (323) 655-4700
   Fax:   (323) 655-4488
5
6  *Attorneys for Michael Sanchez, Jonathan Galescu, Richard Ortiz, and International
   Union, United Automobile, Aerospace And Agricultural Workers Of America, AFL-CIO*
7

8              **UNITED STATES OF AMERICA**

9      **BEFORE THE NATIONAL LABOR RELATIONS BOARD**

10          **SAN FRANCISCO DIVISION OF JUDGES**

11

| | |
|---|---|
| TESLA, INC | **Case Nos.    32-CA-197020** |
| Respondent, | **32-CA-197058** |
| | **32-CA-197091** |
| | **32-CA-197197** |
| and | **32-CA-200530** |
| | **32-CA-208614** |
| MICHAEL SANCHEZ, an Individual | **32-CA-210879** |
| Charging Party, | |
| and | **SUBPOENA DUCES TECUM** |
| | **(SUBPOENA # B-1-11BK0EJ)  –** |
| JONATHAN GALESCU, an Individual | **DOCUMENT SCHEDULE** |
| Charging Party, | |
| and | |
| RICHARD ORTIZ, an Individual | |
| Charging Party, | |
| and | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL WORKERS OF AMERICA, AFL-CIO | |
| Charging Party, | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ID 353107          SUBPOENA DUCES TECUM (SUBPOENA # B-1-11BK0EJ)–DOCUMENT SCHEDULE

1 | **DOCUMENT SCHEDULE**

2 | DEFINITIONS AND INSTRUCTIONS

3     A.    In construing this request, the singular form of a word shall include the plural

4 and the plural shall include the singular wherever necessary to bring within the scope of

5 this request any information which might otherwise be construed to be outside its scope.

6     B.    As used herein, the terms **"document"** and **"documents"** mean any kind of

7 written, typewritten, printed or recorded material, including, but not limited to, any notes,

8 work papers or working papers, memoranda (including, but not limited to internal

9 memoranda, memoranda to files, reports and analyses), charges, complaints, claims,

10 affidavits, statements, papers, files (including any documents stored or maintained therein),

11 timesheets, billing memoranda, invoices, forms, electronic mail or e-mail messages, data,

12 tapes, printouts, letters, communications, contracts, agreements, telegrams, records,

13 correspondence, diaries, calendars, recordings and transcription of recordings, information

14 obtainable from computers, photographs, diagrams, or any other writing, however stored,

15 produced or reproduced, and further includes, without limitations, originals, all file copies,

16 all other copies, no matter how prepared, and all drafts prepared in connection with such

17 documents whether or not used, within the possession, custody and/or control of you, or

18 your agents, attorneys, accountants, counselors, outside consultants, and/or anyone acting

19 on behalf of you, excepting only those documents which are privileged or otherwise

20 protected from discovery, as to which the claim of privilege or protection is specifically

21 stated by written notice to Charging Parties within the time provided by the Federal Rules

22 of Civil Procedure.

23     C.    Whenever appropriate, the singular form of a word should be interpreted in

24 the plural. **"And"** as well as **"or"** shall be construed either disjunctively or conjunctively

25 as necessary to bring within the scope of these Requests any information which would

26 otherwise be construed to be outside their scope.

27     D.    The term **"referring to"** means relating to, reflecting, supporting, prepared

28 in connection with, used in preparation for, pertaining to, having any relationship to,

1

22-60493.5770

1  evidencing or constituting evidence of, or being in any way legally, logically, or factually

2  connected with the matter discussed, in whole or in part.

3       E.    The terms **"Tesla"** and **"Employer"** refer to the Respondent Tesla, Inc.

4       F.    The term **"Union"** refers to Charging Party International Union, United

5  Automobile, Aerospace and Agricultural Workers of America, AFL-CIO, also known as

6  the "United Automobile Workers" or "UAW."

7       G.    The term **"Fremont Facility"** refers to the Tesla Facility located at 45500

8  Fremont Blvd., Fremont, California 94538.

9       H.    The term **"Sparks Facility"** refers to the Tesla Facility located at Electric

10  Ave., Sparks, Nevada 89434.

11       I.    If any document that would have been responsive to these Requests has been

12  lost, misplaced, thrown away or destroyed, or otherwise cannot be found,

13            a.    identify the document and provide a brief description of the document;

14            b.    state the date of, and identify the person responsible for, the loss,

15            concealment, misplacement, discarding, or destruction of the document;

16            c.    identify the production request herein to which the document would

17            have been responsive had it not been lost, misplaced, thrown away or destroyed, or

18            otherwise become unavailable for production;

19            d.    identify the author of the document;

20            e.    state the manner in which the document was disposed; and

21            f.    state in detail, and identify the person with the most knowledge of, the

22            reason(s) that or circumstances under which the document was lost, hidden,

23            destroyed, misplaced, thrown away, or given away.

24       J.    If you cannot respond to any of these Requests in full, after exercising due

25  diligence to secure the documents to do so, please so state, and respond to the extent

26  possible, specifying your inability to respond to the remainder, and providing whatever

27  documents you are able to produce with regard to these Requests.

28  //

22-60493.5771

1    K.    Should you assert a privilege with respect to any document requested to be

2  produced, please provide the following as to each such document:

3         a.    The type of document or information (e.g., letter, notebook, etc.);

4         b.    The date of the document;

5         c.    Identification of the author(s) of the document;

6         d.    Identification of the signatory or signatories of the document;

7         e.    The present whereabouts of the document and/or the names of all

8    persons with personal knowledge with respect to the information contained therein;

9    and

10        f.    A detailed statement of the basis for the claim that the document is

11   privileged or otherwise not discoverable.

12   L.    This request is continuing in character and if additional responsive

13  documents come to your attention following the date of production, such documents must

14  be promptly produced.

15   M.    All documents produced pursuant to this subpoena should be organized and

16  identified by the subpoena paragraph to which each document, or set of documents, is

17  responsive.

18   N.    Unless otherwise stated, each request in this subpoena covers the period from

19  January 1, 2016, to the present.

20

21                    **DOCUMENTS REQUESTED**

22   1.    Any and all documents and/or electronically stored information ("ESI")

23  pertaining to or referring to Tesla CEO Elon Musk's ("Musk") tweet on May 20, 2018 at

24  6:06 pm, stating that "About 2% of Tesla, incl salaried & hourly, union & non-union were

25  let go in annual review.  Only known union person fired was guy who repeatedly

26  threatened non-union supporters verbally & on social media & lied about it," including but

27  not limited to:

28  //

---

3

22-60493.5772

1                                     a.  Any and all documents pertaining to or referring to verbal threats

2                                          by the "known union person";

3                                       b.  Any and all documents pertaining to or referring to social media

4                                          threats by the "known union person";

5                                       c.  Any and all documents pertaining to or referring to lies by the

6                                          "known union person" about threatening non-union supporters;

7                                       d.  Any and all documents pertaining to or referring to the contention

8                                          that "about 2% of Tesla, incl salaried & hourly, union & non-union

9                                          were let go in annual review."

10       2.     Any and all documents and/or ESI pertaining to or referring to the

11 employment of Richard Ortiz, including but not limited to:

12                                       a.  Any and all documents relating to his performance, evaluations,

13                                          and any complaints concerning him; and

14                                       b.  Any and all documents relating to holding and obtaining of

15                                          employment.

16       3.     Any and all documents and/or ESI pertaining to or referring to the

17 termination of Richard Ortiz, including but not limited to:

18                                       a.  Any and all documents that Ricky Gecewich and/or anyone acting

19                                          on his behalf or on behalf of Tesla, Inc. used or relied upon in the

20                                          investigation of Mr. Ortiz and/or in recommending Mr. Ortiz's

21                                          termination;

22                                       b.  Any and all documents given to Mr. Ortiz by Tesla upon

23                                          termination;

24                                     c.  Any and all internal correspondence or messaging sent between

25                                          Tesla management regarding Mr. Ortiz's termination;

26                                     d.  Any and all notes taken during, documents created in preparation

27                                         for, and correspondence regarding any meetings between

28                                          Gecewich and Ortiz.

22-60493.5773

1    4.    Any and all documents and/or ESI pertaining to or referring to the
2 employment of Jose Moran, including but not limited to:

3         a.    Any and all documents relating to his performance, evaluations,
4               and any complaints concerning him; and

5         b.    Any and all documents relating to holding and obtaining of
6               employment.

7    5.    Any and all documents and/or ESI pertaining to or referring to the discipline
8 of Jose Moran in October 2017, including but not limited to:

9         a.    Any and all documents that Ricky Gecewich and/or anyone acting
10              on his behalf or on behalf of Tesla, Inc. used or relied upon in the
11              investigation of Mr. Moran and/or in recommending Mr. Moran's
12              discipline;

13        b.    Any and all documents given to Mr. Moran upon receiving notice
14              of the discipline;

15        c.    Any internal correspondence or messaging sent between Tesla
16              management regarding Mr. Moran's discipline;

17        d.    Any and all notes taken during, documents created in preparation
18              for, and correspondence regarding any meetings between
19              Gecewich and Moran.

20   6.    Any policies, procedures, and/or rules related to Tesla employees' access to
21 and use of the software application called "Workday" that has existed between January 1,
22 2016 and the present.

23   7.    Any documents containing the names and addresses of all security companies
24 hired by Tesla, Inc. to provide security services at Fremont Facility at any time between
25 January 1, 2017 and present.

26   8.    Any documents showing the name of every security guard employed by
27 Tesla, Inc. or a security company described in Request No. 1 above stationed or working at
28 the Fremont Facility on February 10, 2017 and May 24, 2017, and a copy of each

5

22-60493.5774

1  individual's identification badge or other picture.

2      9.    Any and all documents and ESI pertaining to or referring to security
3  procedures for individuals handing out leaflets at the Fremont Facility between January 1,
4  2017 and present.

5      10.    Any and all documents and ESI pertaining to or referring to security
6  procedures for suspected union activity at the Fremont Facility between January 1, 2017
7  and present.

8      11.    Any policies, procedures, and/or rules related to the use of drones in security
9  operations at the Fremont Facility between January 1, 2017 and present.

10      12.    Pictures of each building entrance to the Fremont Facility.

11      13.    Any and all correspondence sent by Musk, Director of Human Resources
12  Josh Hedges ("Hedges"), or Chief People Officer Gaby Toledano ("Toledano") to all Tesla
13  employees en masse at the Fremont Facility and/or the Sparks Facility regarding
14  compensation between January 1, 2016 and the present.

15      14.    Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla
16  employees en masse at the Fremont Facility and/or the Sparks Facility regarding labor
17  unions between January 1, 2016 and the present.

18      15.    Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla
19  employees en masse at the Fremont Facility and/or the Sparks Facility regarding safety
20  and/or OSHA Logs between January 1, 2016 and the present.

21      16.    Any and all correspondence sent by Musk, Hedges, or Toledano to all Tesla
22  employees en masse at the Fremont Facility and/or the Sparks Facility regarding
23  confidentiality agreements or policies between January 1, 2016 and the present.

24      17.    Any and all confidentiality agreements or policies provided to Tesla
25  employees at the Fremont Facility and/or the Sparks Facility between January 1, 2016 and
26  the present.

27      18.    Any and all directives or instructions regarding complying with
28  confidentiality agreements or policies given to Tesla employees at the Fremont Facility

22-60493.5775

1    and/or the Sparks Facility between January 1, 2016 and the present.

2        19.    Any and all scripts, notes, talking points, or instructions used by individuals
3    who spoke to Tesla employees at the Fremont Facility and/or the Sparks Facility about
4    confidentiality agreements or policies between January 1, 2016 and the present.

5        20.    Any and all records regarding Tesla employees at the Fremont Facility and/or
6    the Sparks Facility who were terminated for violating a confidentiality agreement or policy
7    between January 1, 2016 and the present.

8        21.    Any and all instructions or directives provided to Tesla supervisors at the
9    Fremont Facility and/or the Sparks Facility regarding confidentiality agreements or policies
10    between January 1, 2016 and the present.

11        22.    Any and all instructions or directives provided to Tesla supervisors at the
12    Fremont Facility and/or the Sparks Facility regarding labor unions between January 1,
13    2016 and the present.

14        23.    Any and all documents and ESI pertaining to or referring to instructions or
15    directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility
16    regarding confidentiality agreements or policies between January 1, 2016 and the present.

17        24.    Any and all documents and ESI pertaining to or referring to instructions or
18    directives provided to Tesla supervisors at the Fremont Facility and/or the Sparks Facility
19    regarding labor unions between January 1, 2016 and the present.

20        25.    Any and all training materials, instructions, or videos provided or shown to
21    new employees at the Fremont Facility and/or Sparks Facility, including temporary
22    employees and contract employees, regarding confidentiality agreements or policies at the
23    Fremont Facility between January 1, 2016 and the present.

24        26.    Any and all training materials, instructions, or videos provided or shown to
25    new employees at the Fremont Facility and/or Sparks Facility, including temporary
26    employees and contract employees, regarding labor unions at Tesla between January 1,
27    2016 and the present.

28        27.    Any and all documents and ESI pertaining to or referring to training of

7

22-60493.5776

1   employees at the Fremont Facility and/or Sparks Facility, including temporary employees
2   and contract employees, regarding confidentiality agreements or policies, including but not
3   limited to videos, presentations, instructor manuals, and instructor scripts, between
4   January 1, 2016 and the present.

5       28.    Any and all documents and ESI pertaining to or referring to training of
6   employees at the Fremont Facility and/or Sparks Facility, including temporary employees
7   and contract employees, regarding labor unions including but not limited to videos,
8   presentations, instructor manuals, and instructor scripts, between January 1, 2016 and the
9   present.

10      29.    Any and all records of direct communication, including but not limited to
11  emails, text messages, phone logs, notes, audio recordings, and video recordings, between
12  members of Tesla management, including Musk, Hedges, and Toledano, and Richard
13  Ortiz, Jose Moran, Jonathan Galescu, and Michael Sanchez.

14      30.    Any and all documents and ESI pertaining to or referring to a meeting on or
15  about February 9, 2017 at the Fremont Facility involving Supervisor Victor Facha and Jose
16  Moran, including but not limited to video recordings, audio recordings, notes taken at the
17  meeting, documents created in preparation for the meeting, and correspondence regarding
18  the meeting.

19      31.    Any and all documents and ESI pertaining to or referring to a meeting on or
20  about February 13, 2017 at the Fremont Facility involving Human Resources Business
21  Partner Liza Lipson and Jose Moran, including but not limited to video recordings, audio
22  recordings, notes taken at the meeting, documents created in preparation for the meeting,
23  and correspondence regarding the meeting.

24      32.    Any and all documents and ESI pertaining to or referring to a pre-shift
25  meeting on March 23, 2017 at the Fremont Facility involving Supervisor Armando
26  Rodriguez, including but not limited to video recordings, audio recordings, notes taken at
27  the meeting, documents created in preparation for the meeting, and correspondence
28  regarding the meeting.

22-60493.5777

33.    Any and all documents and ESI pertaining to or referring to a meeting on May 24, 2017 at the Fremont Facility involving Lisa Lipscomb, Lauren Holcomb, and Richard Ortiz, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

34.    Any and all documents and ESI pertaining to or referring to a meeting on May 24, 2017 at the Fremont Facility involving Lisa Lipscomb, Lauren Holcomb, and Jonathan Galescu, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

35.    Any and all documents and ESI pertaining to or referring to meetings regarding safety at the Fremont Facility attended by Musk, Hedges and/or Toledano and Richard Ortiz, Jose Moran, Michael Sanchez, and/or Jonathan Galescu, including but not limited to video recordings, audio recordings, notes taken at the meeting, documents created in preparation for the meeting, and correspondence regarding the meeting.

36.    Any document containing the full name of current or former Tesla supervisor with the first name "Arnold" who in 2017 was the closures and quality control supervisor and was himself supervised by Emmanuel Garza.

37.    Any document containing the full name and picture of the current or former male Tesla production supervisor of the body fit team on the S/X final line during day shift in July and August 2017.

38.    Any and all documents and ESI pertaining to or referring to Jonathan Galescu and Richard Ortiz's April 4, 2017 email requesting Tesla provide its OSHA 300 Logs.

39.    Any and all documents and ESI pertaining to or referring to Jonathan Galescu and Richard Ortiz's April 13, 2017 follow-up email requesting Tesla provide its OSHA 300 Logs.

//

9

22-60493.5778

40.  Any and all documents and ESI pertaining to or referring to Jonathan Galescu and Richard Ortiz's April 21, 2017 second follow-up email requesting Tesla provide its OSHA 300 Logs.

41.  Any uniform or team wear policy, rule, or memorandum that has existed at the Fremont Facility and/or Sparks Facility between January 1, 2016 and the present.

42.  Any and all documents and ESI pertaining to or referring to a uniform or team wear policy, rule, or memorandum at the Fremont Facility and/or Sparks Facility between January 1, 2016 and the present.

43.  Any and all documents and ESI pertaining to or referring to a meeting on Tuesday, September 19, 2017 attended by Musk, Toledano, and others regarding the separation of employees from their employment at Tesla, including but not limited to correspondence, notes, presentations, drafts, and lists of employees.

44.  Any and all documents and ESI pertaining to, referring to, or responding to the Sunday, October 8, 2017 letter sent by Tesla employees to Musk regarding possible mass terminations.

45.  Copies of all emails deleted or removed by Tesla from the Tesla email accounts of Richard Ortiz, Jose Moran, Jonathan Galescu, and Michael Sanchez.

46.  Any policies, procedures, and/or rules related to Tesla deleting or removing emails from Tesla employees' company email accounts at the Fremont Facility and/or Sparks Facility.

47.  Any and all documents and/or ESI pertaining to or referring to the employment of Jonathan Galescu, including but not limited to;

      a.  Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

      b.  Any and all documents relating to holding and obtaining employment.

48.  Any and all documents and/or ESI pertaining to or referring to the employment of Michael Sanchez, including but not limited to;

10

22-60493.5779

a. Any and all documents relating to his performance, evaluations, and any complaints concerning him; and

b. Any and all documents relating to holding and obtaining of employment.

11

22-60493.5780

# PROOF OF SERVICE BY EXPRESS MAIL

**Case No. 32-CA-197020 et al.**

RENEE CARNES certifies as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5202.

On MAY 30, 2018 I caused the foregoing document(s) described as **SUBPOENA DUCES TECUM B-1-11BK0EJ** to be served by express mail upon the person(s) shown below, by placing a true and correct copy (copies) thereof in an envelope (envelopes) addressed as follows:

Custodian of Records
Tesla, Inc.
c/o CT Corporation System
Attn: Vivian Imperial
818 West Seventh Street, Suite 930
Los Angeles, California 90017

Mark Ross, Esq.
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, Suite 17
San Francisco, California 94111-4158

and by then sealing said envelope(s) and

__X__  placing it (them) for collection and mailing on that same date following the ordinary business practices of Schwartz, Steinsapir, Dohrmann & Sommers LLP, at its place of business, located at 6300 Wilshire Boulevard, Suite 2000, Los Angeles, California 90048-5202. I am readily familiar with the business practices of Schwartz, Steinsapir, Dohrmann & Sommers LLP for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practices the envelope(s) would be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing in the affidavit. (C.C.P. §1013a(3))

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 30, 2018 at Los Angeles, California.

RENEE CARNES

22-60493.5781

ID 352858

# EXHIBIT C

22-60493.5782

# NOTICE

You will note that the enclosed complaint has a Notice of Hearing for a specific date. Please compare that date now with your calendar and those of your parties and witnesses, for current conflicts. Requests for a brief postponement made within 10 days of complaint issuance will normally be honored. If no such request for a postponement is made to the undersigned, it will be assumed that no party has any objections to the hearing date. Thereafter, it can be assumed that any postponement requests will be denied by the undersigned (or resisted before an Administrative Law Judge), absent truly unforeseeable <u>and</u> unpreventable conflicts that arose following the ten-day period. In this regard, Board hearing dates are not considered to be subordinate to other social, business, or legal interests of the parties that may thereafter arise. Postponement requests for "settlement negotiations" are ordinarily denied (or resisted).

Any postponement request must be made in writing and give (a) the reason for the request; (b) the opposing party's position on postponement; and (c) suggested alternative dates of the requester and opposing party.

**Valerie Hardy-Mahoney**
**Regional Director**

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32

TESLA, INC.

    and

MICHAEL SANCHEZ, an Individual                    Case 32-CA-197020

    and

JONATHAN GALESCU,  an Individual           Case 32-CA-197058

    and

RICHARD ORTIZ, an Individual                Case 32-CA-197091

    and

INTERNATIONAL UNION, UNITED          Case 32-CA-197197
AUTOMOBILE, AEROSPACE AND          Case 32-CA-200530
AGRICULTURAL WORKERS OF
AMERICA, AFL-CIO

## SECOND ORDER CONSOLIDATING CASES, AMENDED CONSOLIDATED COMPLAINT AND NOTICE OF HEARING

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, IT IS ORDERED THAT Cases 32-CA-197020, Case 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, which are based on charges filed by Michael Sanchez, an Individual, Jonathan Galescu, an Individual, Richard Ortiz, an Individual, and International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO (Union), respectively, against Tesla, Inc. (Respondent) are consolidated.

This Second Order Consolidating Cases, Amended Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National

1

22-60493.5784

Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. and Sections 102.15 and 102.17 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)    The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)    The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)    The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)    The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)    The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)    The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)    The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)    The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)    The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)    The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

22-60493.5785

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, and an automotive manufacturing facility in Fremont, California (the Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending August 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a), purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

3.

At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

4.

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

5.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Victor Facha | - | Supervisor |
| Lauren Holcomb | - | Environmental Health Safety and Sustainability Specialist |
| Liza Lipson | - | Human Resources Business Partner |
| Mark Lipscomb | - | Vice-President of Human Resources |
| Juan Martinez | - | Production Manager |

| Elon Musk | - | Chief Executive Officer |
| Armando Rodriguez | - | Supervisor |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |
| Red Shirt Supervisor No. 1 | - | Supervisor |

6.

At all material, the following individuals held the positions set forth opposite their

respective names and have been agents Respondent within the meaning of Section 2(13) of the

Act:

| John Does 1-6 | - | Security Guards |
| Unknown Human Resources Agent | - | Agent |

7.

(a)     Since at least late October 2016, Respondent has maintained the following rules

in its Confidentiality Agreement:

(i)     These obligations are straightforward. Provided that it's not
already public information, everything that you work on, learn about or
observe in your work about Tesla is confidential information under the
agreement that you signed when you first started. This includes
information about…customers, suppliers, employees…. and anything
similar.

(ii)    Additionally, regardless of whether information has already been
made public, it is never OK to communicate with the media or someone
closely related to the media about Tesla, unless you have been specifically
authorized in writing to do so.

(iii)   Unless otherwise allowed by law or you have received written
approval, you must not, for example, discuss confidential information with
anyone outside of Tesla,

22-60493.5787

(iv) take or post photos or make video or audio recordings inside Tesla facilities,

(v) forward work e-mails outside of Tesla or to a personal email account,

(vi) or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal.

(vii) The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment. Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

(b)    About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at Respondent's Facility, during a one-on-one meeting with an employee, prohibited the employee from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 5(a).

(c)    On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 1-4, restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)    On February 10, 2017, Respondent, by Male Security Guard No. 1, outside the entrance to Door 2 at Respondent's Facility:

(i)    On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

(ii)    Male Security Guard No. 1 engaged in the conduct described above in paragraph 5(d)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

22-60493.5788

(e)    On February 10, 2017, Respondent, by Female Security Guard No. 2, outside the

entrance to Door 1 at Respondent's Facility:

    (i)    told off-duty employees to leave Respondent's premises.

    (ii)    Security Guard No. 2 engaged in the conduct described above in paragraph 5(e)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(f)    On February 10, 2017, Respondent, by Male Security Guard No. 3, outside the

entrance to Door 1 at Respondent's Facility:

    (i)    told off-duty employees to leave Respondent's premises.

    (ii)    Security Guard No. 3 engaged in the conduct described above in paragraph 5(f)(i) because the employees were engaged in Union leafleting and to discourage these and other protected, concerted activities.

(g)    On February 10, 2017, Respondent, by Female Security Guard No. 4, outside the

entrance to Door 3 at Respondent's Facility:

    (i)    told an off-duty employee to leave Respondent's premises.

    (ii)    Security Guard No. 4 engaged in the conduct described above in paragraph 5(g)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(h)    On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the

back entrance to Respondent's Facility by the Receiving Addition:

    (i)    told an off-duty employee to leave the premises.

    (ii)    Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 5(h)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(i)    On February 10, 2017, Respondent, by an unnamed Human Resources Agent who

was called by Red Shirt Male Supervisor No. 1, during a phone conversation:

22-60493.5789

(i)     told an off-duty employee who was on medical leave to leave Respondent's premises.

(ii)    The unnamed Human Resources Agent engaged in the conduct described above in paragraph 5(i)(i) because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(j)    On March 23, 2017, Respondent, by Supervisor Armando Rodriguez,

during a pre-shift meeting at Respondent's Facility:

(i)     told employees that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent.

(ii)    threatened that Respondent would terminate employees if they passed out stickers, leaflets, or materials that were not approved by Respondent.

(iii)   Supervisor Armando Rodriguez engaged in the conduct described above in paragraph 5(j) because employees engaged in Union activities and to discourage these and other protected, concerted activities.

(k)    On April 5 2017, Respondent, by David Zweig, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(l)    On April 28, 2017, Respondent, by Seth Woody, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(m)    On May 24, 2017, Respondent, by its Security Guards, including, but not limited to, Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on Respondent's premises outside of Respondent's Facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(n)    On May 24, 2017, by Female Security Guard No. 5, at the security counter near the Door 4 entrance at Respondent's Facility, told an employee that the employee could not hand out flyers on Respondent's premises.

(o)    On May 24, 2017, by Male Security Guard No. 6, outside the Door 4 entrance at Respondent's Facility:

      (i)    on two occasions, instructed an off-duty employee to leave the premises.

      (ii)    Male Security Guard No. 6 engaged in the conduct described above in paragraph 5(n)(i) because the employee because the employee was engaged in Union leafleting and to discourage these and other protected, concerted activities.

(p)    On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lispon, during separate meetings with two employees, in the presence of Environmental Health Safety and Sustainability Specialist Laurent Holcomb, interrogated the employee about the employee's Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

8.

By the conduct described above in paragraph 7, Respondent has been interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Sections 8(a)(1) of the Act.

9.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Amended Consolidated Complaint.  The answer must be **received by this office on or before September 15, 2017, or postmarked on or before**

**September 14, 2017**.  Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amended Consolidated Complaint are true.

22-60493.5792

## NOTICE OF HEARING

**PLEASE TAKE NOTICE THAT** on November 14, 2017, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street, Suite 300N, Oakland, California 94612, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Amended Consolidated Complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 1st day of September 2017.

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

Form NLRB-4338
(2-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

**NOTICE**

Cases:  32-CA-197020
32-CA-197058
32-CA-197091
32-CA-197197
32-CA-200530

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end. An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.

However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements **will not be granted** unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds thereafter must be set forth in *detail;*

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request;

*and*

(5) Copies must be simultaneously served on all other parties (*listed below*), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Arnnon Geshuri, Vice President of HR
Tesla Motors Corporation
45500 Fremont Blvd.
Fremont, CA  94538

Michael J. Lotito, Esq.
Littler Mendelson, P.C.
333 Bush Street, 34th Floor
San Francisco, CA  94104

Margo A. Feinberg, Esq.
Schwartz, Steinsapir, Dohrmann
& Sommers LLP
6300 Wilshire Bld., Suite 2000
Los Angeles, CA  90048

Elizabeth Parry, Esq.
Littler Mendelson, P.C.
1255 Treat Blvd., Suite 600
Walnut Creek, CA  94597

John M. Skonberg, Esq.
Littler Mendelson, P.C.
333 Bush Street, 34th Floor
San Francisco, CA  94104

Jonathan Galescu
361 Carousel Drive
Vallejo, CA  94589

Richard Ortiz
37607 Walnut
Newark, CA  94560

Michael Sanchez
25225 Soto Road
Hayward, CA  94544

Susan Reed
IU, UA, A&AWA, AFL-CIO
8000 E Jefferson Avenue
Detroit, MI  48214

Form NLRB-4668
(6-2014) Continued

- **Exhibits**: Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence. If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**: An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval. Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion. If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:** You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**: Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ. The ALJ has the discretion to grant this request and will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations. Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:** If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred. You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request. You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:** In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision. The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**: The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

Form NLRB-4668
(6-2014) Continued

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative**. If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.   BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.   DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

# EXHIBIT D

22-60493.5797

**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 32**

**TESLA, INC.**

    **and**

**MICHAEL SANCHEZ, an Individual**             **Case 32-CA-197020**

    **and**

**JONATHAN GALESCU,  an Individual**       **Case 32-CA-197058**

    **and**

**RICHARD ORTIZ, an Individual**            **Case 32-CA-197091**

    **and**

**INTERNATIONAL UNION, UNITED**      **Case 32-CA-197197**
**AUTOMOBILE, AEROSPACE AND**       **Case 32-CA-200530**
**AGRICULTURAL WORKERS OF**         **Case 32-CA-208614**
**AMERICA, AFL-CIO**                **Case 32-CA-210879**

**THIRD ORDER CONSOLIDATING CASES, SECOND AMENDED
CONSOLIDATED COMPLAINT AND NOTICE OF HEARING**

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** the Amended Consolidated Complaint that issued on September 1, 2017, in Cases 32-CA-197020, 32-CA-197058, 32-CA-197091, 32-CA-197197, and 32-CA-200530, alleging that Tesla, Inc. (Respondent) has violated the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the Act), by engaging in unfair labor practices, is further consolidated with Cases 32-CA-208614 and 32-CA-210879, filed by the International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL-CIO (Union) against Respondent, which allege that Respondent has engaged in further unfair labor practices within the meaning of the Act.

This Third Order Consolidating Cases, Second Amended Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. and Sections 102.15 and 102.17 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.

(a)      The charge in Case 32-CA-197020 was filed by Michael Sanchez on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(b)      The first-amended charge in Case 32-CA-197020 was filed by Michael Sanchez on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(c)      The charge in Case 32-CA-197058 was filed by Jonathan Galescu on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 18, 2017.

(d)      The first-amended charge in Case 32-CA-197058 was filed by Jonathan Galescu on July 28, 2017, and a copy was served on Respondent by mail on August 1, 2017.

(e)      The charge in Case 32-CA-197091 was filed by Richard Ortiz on April 17, 2017, and a copy was served on Respondent by U.S. mail on April 19, 2017.

(f)      The first-amended charge in Case 32-CA-197091 was filed by Richard Ortiz on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(g)      The charge in Case 32-CA-197197 was filed by the Union on April 19, 2017, and a copy was served on Respondent by U.S. mail on April 20, 2017.

(h)     The first-amended charge in Case 32-CA-197197 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(i)     The charge in Case 32-CA-200530 was filed by the Union on June 12, 2017, and a copy was served on Respondent by U.S. mail on June 13, 2017.

(k)     The first-amended charge in Case 32-CA-200530 was filed by the Union on July 28, 2017, and a copy was served on Respondent by U.S. mail on August 1, 2017.

(l)     The charge in Case 32-CA-208614 was filed by the Union on October 25, 2017, and a copy was served on Respondent by U.S. mail on October 25, 2017.

(m)     The first-amended charge in Case 32-CA-208614 was filed by the Union on March 12, 2017, and a copy was served on Respondent by U.S. mail on March 13, 2018.

(n)     The charge in Case 32-CA-210879 was filed on December 1, 2017, and a copy was served on Respondent by U.S. mail on December 4, 2017.

(o)     The first-amended charge in Case 32-CA-210879 was filed on December 6, 2017, and a copy was served on Respondent by U.S. mail on December 7, 2017.

2.

(a)     At all material times, Respondent, a Delaware technology and design corporation with its headquarters in Palo Alto, California, an automotive manufacturing facility in Fremont, California (the Fremont Facility), and an automotive battery facility in Sparks, Nevada (the Sparks Facility), has been engaged in the design, manufacture, and sale of electric vehicles and energy storage systems.

(b)     During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Fremont Facility,

purchased and received goods valued in excess of $50,000 directly from sources located outside the State of California.

 (c) During the 12-month period ending December 31, 2017, Respondent, in conducting its operations described above in paragraph 2(a) at its Sparks Facility, purchased and received goods valued in excess of $50,000 directly from sources located outside the State of Nevada.

<div align="center">3.</div>

 At all material times, Respondent has been an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

<div align="center">4.</div>

 At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

<div align="center">5.</div>

 At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Elon Musk | - | Chief Executive Officer |
| Mark Lipscomb | - | Vice-President of Human Resources |
| Emma Cruz | - | Human Resources Business Partner |
| Liza Lipscomb | - | Human Resources Business Partner |
| Seth Woody | - | Human Resources Business Partner |
| David Zwieg | - | Human Resources Business Partner |

| Juan Martinez | - | Manager, Manufacturing |
| Andrew McIndoe | - | Associate Production Manager |
| Tope Ogunniyi | - | Associate Production Manager |
| Victor Facha | - | Supervisor |
| Tim Fenelon | - | Supervisor |
| Homer Hunt | - | Supervisor |
| Armando Rodriguez | - | Supervisor |
| Dave Teston | - | Supervisor |
| Red Shirt Male Supervisor No. 1 | - | Supervisor |
| Arnold (Last Name Unknown) | - | Supervisor |
| John Doe | - | Production Supervisor |
| Lauren Holcomb | - | Environmental Health Safety and Sustainability Specialist |
| Ricky Gecewich | - | Employee Relations Investigator |

6.

At all material times, the following individuals held the positions set forth opposite their respective names and have been agents Respondent within the meaning of Section 2(13) of the Act:

| John/Jane Does 1-6 | - | Security Guards |
| Name Unknown | - | Human Resources Agent |

7.

(a)     Since at least late October 2016, Respondent has maintained the following rules in its Confidentiality Agreement at the Fremont facility:

(i)     These obligations are straightforward.  Provided that it's not already public information, everything that you work on, learn about or observe in your work about Tesla is confidential information under the agreement that you signed when you first started.  This includes information about…customers, suppliers, employees…. and anything similar.

(ii)     Additionally, regardless of whether information has already been made public, it is never OK to communicate with the media or someone closely related to the media about Tesla, unless you have been specifically authorized in writing to do so.

(iii)     Unless otherwise allowed by law or you have received written approval, you must not, for example, discuss confidential information with anyone outside of Tesla,

(iv)     or write about your work in any social media, blog, or book. If you are unsure, check with your manager, HR, or Legal.

(v)     The consequences for careless violation of the confidentiality agreement, could include, depending on severity, loss of employment.  Anyone engaging in intentional violation of the confidentiality agreement will be liable for all the harm and damage that is caused to the company, with possible criminal prosecution. These obligations remain in place even if no longer working at Tesla.

(b)     About late October 2016 or early November 2016, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, during a one-on-one meeting with employees, prohibited employees from taking a picture of Respondent's Confidentiality Agreement described above in paragraph 7(a).

(c)     On February 10, 2017, Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 1-4,  restrained and coerced off-duty employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(d)   On February 10, 2017, Respondent, by John Doe Security Guard No. 1, outside the entrance to Door 2 at the Fremont facility:

      (i)      On two separate occasions, instructed an off-duty employee to leave Respondent's premises.

      (ii)     Security Guard No. 1 engaged in the conduct described above in paragraph 7(d)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(e)   On February 10, 2017, Respondent, by Jane Doe Security Guard No. 2, outside the entrance to Door 1 at the Fremont facility:

      (i)      told off-duty employees to leave Respondent's premises.

      (ii)     Security Guard No. 2 engaged in the conduct described above in paragraph 7(e)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(f)   On February 10, 2017, Respondent, by John Doe Security Guard No. 3, outside the entrance to Door 1 at the Fremont facility:

      (i)      told off-duty employees to leave Respondent's premises.

      (ii)     Security Guard No. 3 engaged in the conduct described above in paragraph 7(f)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(g)   On February 10, 2017, Respondent, by Jane Doe Security Guard No. 4, outside the entrance to Door 3 at the Fremont facility:

      (i)      told an off-duty employee to leave Respondent's premises.

      (ii)     Security Guard No. 4 engaged in the conduct described above in paragraph 7(g)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(h)    On February 10, 2017, Respondent, by Red Shirt Male Supervisor No. 1, near the back entrance to the Fremont facility by the Receiving Addition:

      (i)     told an off-duty employee to leave the premises.

      (ii)    Red Shirt Male Supervisor No. 1 engaged in the conduct described above in paragraph 7(h)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(i)    On February 10, 2017, Respondent, by a Human Resources Agent (whose name is currently unknown to the General Counsel) at the Fremont facility, during a phone conversation initiated by Red Shirt Male Supervisor No. 1:

      (i)    told an off-duty employee who was on medical leave to leave Respondent's premises.

      (ii)    The unnamed Human Resources Agent engaged in the conduct described above in paragraph 7(i)(i) in response to employees engaging in Union leafleting and to discourage these and other protected, concerted activities.

(j)    On March 23, 2017, Respondent, by Supervisor Armando Rodriguez, during a pre-shift meeting at the Fremont facility:

      (i)    told employees that they could not distribute stickers, leaflets, or pamphlets that were not approved by Respondent; and

      (ii)    threatened that Respondent would terminate employees if they passed out stickers, leaflets, or materials that were not approved by Respondent.

      (iii)   Supervisor Armando Rodriguez engaged in the conduct described above in paragraph 7(j)(i) and (ii) in response to employees engaging in Union activities and to discourage these and other protected, concerted activities.

(k)    On April 5, 2017, Respondent, by Human Resources Business Partner David Zweig, at the Fremont facility, attempted to prohibit an employee from discussing safety concerns with other employees and/or with the Union.

(l)     Since about April 25, 2017, Respondent has maintained the following rule at the Fremont facility:

> Team Wear:  It is mandatory that all Production Associates and Leads wear the assigned team wear.
>
> - On occasion, team wear may be substituted with all black clothing if approved by supervisor.
> - Alternative clothing must be mutilation free, work appropriate and pose no safety risks (no zippers, yoga pants, hoodies with hood up, etc.).

(m)     On April 28, 2017, Respondent, by Human Resources Business Partner Seth Woody, at the Fremont facility, attempted to prohibit employees from discussing safety concerns with other employees and/or with the Union.

(n)     On May 24, 2017,  Respondent, by its Security Guards, including, but not limited to, John/Jane Does Security Guards Nos. 5-6, restrained and coerced employees who were engaged in leafleting on Respondent's premises outside of the Fremont facility by repeatedly asking them to produce their employee identification badges and/or telling them to leave Respondent's premises.

(o)     On May 24, 2017, by Jane Doe Security Guard No. 5, at the security counter near the Door 4 entrance at the Fremont facility, told an employee that the employee could not hand out flyers on Respondent's premises.

(p)     On May 24, 2017, by John Doe Security Guard No. 6, outside the Door 4 entrance at the Fremont facility:

> (i)     on two occasions, instructed an off-duty employee to leave the premises.
>
> (ii)    Security Guard No. 6 engaged in the conduct described above in paragraph 7(p)(i) in response to employees engaged in Union leafleting and to discourage these and other protected, concerted activities.

(q)    On May 24, 2017, Respondent, by Respondent's Human Resources Business Partner Lisa Lipscomb, at the Fremont Facility during separate meetings with individual employees, in the presence of Environmental Health Safety and Sustainability Specialist Lauren Holcomb, interrogated employees about their Union and/or protected, concerted activities and/or the Union and/or protected, concerted activities of other employees.

(r)    In the Spring of 2017, Respondent, by Supervisor Arnold (Last Name Unknown), at the Fremont facility, impliedly threatened an employee with unspecific reprisals for wearing a hat with Union insignia.

(s)    In August 2017, Respondent, by Supervisor Homer Hunt, at the Fremont facility, informed its employees that it would be futile for them to select the Union as their bargaining representative.

(t)    Respondent, at the Fremont facility in August or September 2017:

    (i)    by Production Supervisor (whose name is unknown) told employees they could not wear Union shirts at work and threatened employees they would be sent home for wearing shirts with Union insignia;

    (ii)    by Associate Production Manager Tope Ogunniyi, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(u)    About August 10, 2017, Respondent, at the Fremont Facility:

    (i)    by Supervisor Tim Fenelon, told employees to remove their shirts with Union insignia; and

    (ii)    by Associate Production Manager Tope Ogunniyi attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by prohibiting shirts with Union insignia.

(v)    About August 14, 2017, by Associate Production Manager Tope Ogunniyi, at Respondent's Fremont facility, attempted to enforce the rule described above in paragraph 7(l) selectively and disparately by telling employees they are prohibited from wearing shirts with Union insignia.

(w)    On September 8, 2017, Respondent, by Supervisor Dave Teston, at Respondent's Sparks Facility in the production administrative room, impliedly threatened an employee with unspecified reprisals for wearing a hat with Union insignia.

(x)    On October 21, 2017, Respondent, by Associate Production Manager Andre McIndoe, at the Sparks Facility, told an employee that the employee should not speak with other employees about workplace concerns.

8.

(a)    On September 14, 2017, Respondent's employees Jose Moran and Richard Ortiz engaged in concerted activities with each other for the purposes of their mutual aid and protection when Jose Moran sent, via text message, screenshots of employee photographs and job titles obtained from Respondent's Workday system to Richard Ortiz, who posted comments regarding wages and working conditions along with the screenshots of the employee photographs and job titles on "Fremont Tesla Employees for UAW Representation" a private employee-only Facebook page.

(b)    Respondent, by Employee Relations Investigator Ricky Gecewich, at the Fremont facility:

> (i)    About September 21, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

(ii)     About October 19, 2017, during separate meetings with individual employees, interrogated employees about the conduct described above in paragraph 8(a).

(iii)     About October 19, 2017, in an email, promulgated and/or disparately enforced a rule prohibiting employees from accessing the Workday System for non-business purposes without proper business justification.

(c)     On October 18, 2017, Respondent discharged Richard Ortiz.

(d)     On October 19, 2018, Respondent issued a disciplinary warning to Jose Moran.

(e)     Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c) and 8(d), because Jose Moran and Richard Ortiz engaged in the conduct described above in paragraph 8(a) and to discourage its employees from engaging in these and/or other protected concerted activities.

(f)     Respondent engaged in the conduct described above in paragraphs 8(b)(iii), 8(c), and 8(d), because Jose Moran and Richard Ortiz supported and assisted the Union and/or because they engaged in concerted activities, and to discourage employees from engaging in these activities.

9.

By the conduct described above in paragraphs 7 and 8(b) through 8(e), Respondent has been interfering with,  restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of  Sections 8(a)(1) of the Act.

10.

By the conduct described above in paragraphs 8(b)(iii), 8(c), 8(d), and 8(f), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of

employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

11.

The unfair labor practices of Respondent described above affect commerce within the meaning of Sections 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for the unfair labor practices described above in paragraphs 7 and 8(b) through 8(f), the General Counsel seeks an order requiring Respondent to Respondent to hold meetings with Respondent's production employees at its Fremont and Sparks facilities, scheduled to ensure the widest possible attendance, at which the Board's Notice is to be read to employees by a responsible management official of Respondent, or at Respondent's option, by a Board agent in that official's presence. Respondent shall be required to allow a representative of the Union to be present during such reading or readings of the Notice.

## <u>ANSWER REQUIREMENT</u>

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Second Amended Consolidated Complaint. The answer must be **<u>received by this office on or before April 13, 2018, or postmarked on or before April 12, 2018</u>**. Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to <u>www.nlrb.gov</u>, click on **E-File Documents**, enter the NLRB Case

Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Second Amended Consolidated Complaint are true.

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE THAT** on June 11, 2018, at 9:00 a.m., at the Oakland Regional Office of the National Labor Relations Board located at 1301 Clay Street,

Oakland, California 94612, at a conference room to be determined, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.    At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this Second Amended Consolidated Complaint.   The procedures to be followed at the hearing are described in the attached Form NLRB-4668.   The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

**DATED AT** Oakland, California this 30th day of March 2018.

/s/ Valerie Hardy-Mahoney

Valerie Hardy-Mahoney
Regional Director
National Labor Relations Board
Region 32
1301 Clay Street, Suite 300N
Oakland, CA 94612-5224

Attachments

# EXHIBIT E

22-60493.5813