No. 22-60493

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

TESLA, INCORPORATED,

*Petitioner/Cross-Respondent*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*

On Petition for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board

**AMICUS BRIEF OF THE ASSOCIATED BUILDERS AND
CONTRACTORS, THE CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, THE COALITION FOR A
DEMOCRATIC WORKPLACE,  THE NATIONAL FEDERATION OF
INDEPENDENT BUSINESS SMALL BUSINESS LEGAL CENTER,
INC., AND THE NATIONAL RETAIL FEDERATION IN SUPPORT
OF TESLA, INCORPORATED**

Stephanie A. Maloney
Tyler S. Badgley
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062
PH: 202.463.5337
SMaloney@USChamber.com
*Counsel for Chamber of Commerce of the
United States of America*

Kurt G. Larkin
HUNTON ANDREWS KURTH
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
PH: 804.788.8776
klarkin@hunton.com
*Counsel for Amici Curiae*

## **CERTIFICATE OF INTERESTED PERSONS**

*Amici Curiae* certify that, in addition to those persons listed in the Parties' certificates of interested persons, the following is a supplemental list of interested persons as required by Federal Rule of Appellate Procedure 29(a)(4) and Fifth Circuit Rule 29.2:

1.     The Association of Builders and Contractors is a non-profit, tax-exempt trade organization. It has no parent corporation, and no company owns 10 percent or more of its stock.

2.     The Chamber of Commerce of the United States of America is a non-profit, tax-exempt organization. It has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

3.     The Coalition for a Democratic Workforce is a non-profit, tax-exempt organization. It has no parent corporation, and no company owns 10 percent or more of its stock.

4.     The National Federation of Independent Business Small Business Legal Center is a non-profit, tax-exempt organization. It has no parent corporation, and no company owns 10 percent or more of its stock.

5.     The National Retail Federation is a non-profit, tax-exempt organization. It has no parent corporation, and no company owns 10 percent or more of its stock.

6.      Hunton Andrews Kurth LLP is Counsel for *Amici Curiae*.

7.      Kurt G. Larkin is Counsel for *Amici Curiae*.

8.      Stephanie A. Maloney with the U.S. Chamber Litigation Center is Counsel for the Chamber.

9.      Tyler S. Badgley with the U.S. Chamber Litigation Center is Counsel for the Chamber.

Dated: February 9, 2023

                            s/ Kurt G. Larkin
                            Kurt G. Larkin
                            HUNTON ANDREWS KURTH LLP
                            951 E. Byrd Street
                            Richmond, VA  23219
                            (804) 788-8776
                            *Counsel for Amicus Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, *Amici* hereby submit the following corporate disclosure statement:

The **Association of Builders and Contractors** is a non-profit, tax-exempt trade organization.  It has no parent corporation, and no company owns 10 percent or more of its stock.

The **Chamber of Commerce of the United States of America** is a non-profit, tax-exempt organization incorporated in the District of Columbia. It has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

The **Coalition for a Democratic Workplace** is a non-profit, tax exempt organization.  It has no parent company, and no company owns 10 percent or more of its stock.

The **National Federation of Independent Business Small Business Legal Center** is a non-profit, tax-exempt organization.  It has no parent company, and no company owns 10 percent or more of its stock.

The **National Retail Federation** is a non-profit, tax-exempt organization.  It has no parent corporation, and no company owns 10 percent or more of its stock.

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST .................................................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...........................3

ARGUMENT ........................................................................................................5

I.     The Board's Decision Is a Misapplication and Unwarranted
Expansion of the "Special Circumstances" Test. ..................................5

     A.     The Board has never applied the "special circumstances" test to
workplace policies that allow employees to display union
insignia. .....................................................................................8

     B.     The Board's Boeing standard has and continues to be the
appropriate standard to apply when the workplace rules allow
employees to display union insignia. .......................................12

II.    The Board's Decision Could Bring an End to the Enforceability of
Employer Dress Codes and Uniform Policies....................................15

CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burndy, LLC,*
  364 NLRB No. 77 (2016) ................................................................7, 12

*Chinese Daily News,*
  353 NLRB 613 (2008) ..................................................................16, 17

*Floridan Hotel of Tampa,*
  137 NLRB 1484 (1962) .......................................................................10

*In-N-Out Burger,*
  365 NLRB No. 39 (2017) ....................................................................17

*Komatsu America Corp.,*
  342 NLRB 649 (2004) ......................................................................6, 18

*Lutheran Heritage Village-Livonia,*
  343 NLRB 646 (2004) ....................................................................12, 13

*Medco Health Sols. of Las Vegas, Inc.,*
  357 NLRB 170 (2011) ......................................................................7, 13

*NLRB v. Erie Resistor Corp.,*
  373 U.S. 221 (1963) .............................................................................13

*NLRB v. Great Dane Trailers, Inc.,*
  388 U.S. 26 (1967) ...............................................................................13

*Republic Aviation Corp. v. NLRB,*
  324 U.S. 793 (1945) .....................................................................*passim*

*Stabilus, Inc.,*
  355 NLRB 836 (2010) ............................................................11, 13, 14

*The Boeing Co.,*
  365 NLRB No. 154 (2017) ..........................................................*passim*

*The Ohio Masonic Home,*
  205 NLRB 357 (1973) ........................................................................10

*United Parcel Service*,
  312 NLRB 596 (1993) ......................................................................6, 10

*USF Red Star, Inc.*,
  339 NLRB 389 (2003) ................................................................6, 9, 10

*Wal-Mart Stores Inc.*,
  368 NLRB No. 146 (2019) ....................................................6, 7, 9, 10

## STATEMENT OF INTEREST[1]

**Associated Builders and Contractors** ("ABC") is a national construction industry trade association representing more than 22,000 members. Founded on the merit shop philosophy, ABC and its 68 Chapters help members develop people, win work, and deliver that work safely, ethically, and profitably for the betterment of the communities in which ABC and its members work. ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors.

The **Chamber of Commerce of the United States of America** ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

The **Coalition for a Democratic Workplace** ("CDW") is a business association comprised of nearly 500 organizations representing millions of

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *Amici* state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person—other than Amici, their members, or their counsel—contributed money to fund preparing or submitting this brief.

1

businesses that employ tens of millions of workers nationwide in nearly every industry.  CDW members are joined by their mutual concern over changes to labor law that threaten entrepreneurs, other employers, employees, and economic growth. One of CDW's primary missions is addressing regulatory overreach by the Board. CDW believes that the Board has issued numerous decisions, including the decision below, without regard to the negative consequences of doing so for employees, employers, and the economy.

The **National Federation of Independent Business Small Business Legal Center, Inc.** is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the nation's courts through representation on issues of public interest affecting small businesses.  It is an affiliate of the National Federation of Independent Business, Inc. (NFIB), which is the nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses. NFIB represents, in Washington, D.C., and all 50 state capitals, the interests of its members.

The **National Retail Federation** (NRF) is the world's largest retail trade association and the voice of retail worldwide. The NRF's membership includes retailers of all sizes, formats and channels of distribution, as well as restaurants and

industry partners from the United States and more than 45 countries abroad. NRF has filed briefs in support of the retail community on dozens of topics.

*Amici* represent employers that maintain and enforce nondiscriminatory uniform and dress code policies. By requiring employers to demonstrate "special circumstances" to justify such policies, the Board decision below departs from longstanding precedent, subverts employers' rights, and effectively invalidates almost all uniform policies. Employers enact dress and uniform policies for a host of legitimate reasons, including for employees' safety, morale, and security. Employers should not be subjected to the stringent "special circumstances" test to undertake such a fundamental management action as establishing a uniform policy in the workplace. *Amici* write to emphasize the significant adverse impacts that the Board's underlying decision, if upheld, would have on employees and employers throughout the United States.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

A fundamental role of the National Labor Relations Board is to strike a balance between an employer's right to manage and operate its business and its employees' rights to engage in Section 7 activity. The Board has long held that employer policies that ban the display of union insignia are presumptively unlawful and must be justified by "special circumstances." But in the decades since the Supreme Court first articulated the "special circumstances" test in *Republic*

*Aviation*, 324 U.S. 793 (1945), the Board has never used it to strike down a facially neutral rule that limits—but does not ban—union insignia in the workplace. Until now. The Board's decision below extends this onerous test to all employer-apparel policies, including the less restrictive, facially neutral, and nondiscriminatory policy at issue in this case. In doing so, the Board upends decades of settled law and rests entirely on a misguided reading of *Republic Aviation*—an interpretation that, as Petitioner argues in its brief, should be accorded no deference by this Court.

As important, the Board's unwarranted expansion of the "special circumstances" test casts doubt on the legality of all employer dress codes and uniform policies, even those that permit the display of union insignia. And the Board's decision below will likely force employers to reconsider or rescind long-standing policies that, in many cases, are vital to the orderly and safe functioning of the workplace. Although the Board maintains that the "special circumstances" test allows for meaningful consideration of the nature and extent of an employer's legitimate interests in its uniform policies, in practice the Board rarely, if ever, finds that employers satisfy the "special circumstances" test.

By design, the "special circumstances" test is a narrow exception that places a heightened burden on employers. Given that the test was predicated on and developed in the context of a workplace rule that banned employees from displaying union insignia, this makes sense. But the justifications for a *total ban* on wearing

union insignia are materially different from those needed to justify a dress code that simply limits union insignia, for example, to buttons, pins, or stickers. These different scenarios require different standards to appropriately balance an employer's right to manage and operate its businesses and its employees' right to engage in Section 7 activity. The Board's decision effectively collapses these categorical differences into a single analysis that fails to consider whether the policies ban or merely limit the wearing of union insignia.

Ultimately, the Board fails to wrestle with the destabilizing effect its decision will have on employers. If the Board's underlying decision is upheld, commonplace and longstanding workplace dress codes and uniform policies may become a thing of the past—to the detriment of employers and employees. *Amici* urge the Court to consider the important policy implications of the Board's decision and to reject the Board's novel, unsupported extension of the "special circumstances" test.

## **ARGUMENT**

### I.    **The Board's Decision Is a Misapplication and Unwarranted Expansion of the "Special Circumstances" Test.**

An employee's right to wear union insignia in the workplace is not absolute. *See Republic Aviation*, 324 U.S. at 797-98. As the Supreme Court has recognized, in appropriate instances, employers may limit or ban employees from wearing union insignia without violating the Act. *Id*. at 801-03.

When an employer establishes a policy that completely bans employees from wearing union insignia, the Board has applied the "special circumstances" test set forth in *Republic Aviation* to determine whether the workplace rule is lawful. *See, e.g., USF Red Star, Inc.*, 339 NLRB 389, 391 (2003) (citing *Republic Aviation*, 324 U.S. at 797-98)); *United Parcel Service*, 312 NLRB 596, 597 (1993) (same). Under this standard, a workplace rule that completely bans employees from displaying union insignia is presumptively unlawful unless an employer can establish that the prohibition is warranted by and narrowly tailed to "special circumstances." *Wal-Mart Stores Inc.,* 368 NLRB No. 146, slip op. at *12 (Dec. 16, 2019); *see also Komatsu America Corp.*, 342 NLRB 649, 650 (2004) (same).

The Board has found the existence of "special circumstances" in only extremely rare cases. *See, e.g.*, *Komatsu America Corp.*, 342 NLRB at 650 (holding that the "special circumstances" test requires a showing that displaying union insignia "may jeopardize employee safety, damage machinery or products, exacerbate employee dissension, or unreasonably interfere with a public image that the employer has established, or when necessary to maintain decorum and discipline among employees").

On the other hand, when confronted with facially neutral dress codes that merely limit, but do not ban union insignia, the Board has (until now) analyzed such polices like any other facially neutral work rules and applied the more reasonable,

less onerous standard set forth in *The Boeing Co.*  *See The Boeing Co.*, 365 NLRB No. 154, slip op. at *4 (Dec. 14, 2017); *Wal-Mart Stores*, 368 NLRB No. 146, slip op. at *2; *see also Burndy, LLC*, 364 NLRB No. 77, slip op. at *1 (Aug. 17, 2016) (applying the Board's predecessor to *Boeing*); *Medco Health Sols. of Las Vegas, Inc.*, 357 NLRB 170, 171 (2011) (same).  Under *Boeing*, the Board weighs "the nature and extent of the potential impact on NLRA rights" against the "legitimate justifications associated with the requirement(s)." *The Boeing Co.*, 365 NLRB No. 154, slip op. at *4.  Unlike the "special circumstances" test, the *Boeing* standard accords equal weight to the employer's interest in maintaining a workplace dress code and to an employee's right to display union insignia in the workplace, without presuming that the employer's rule is unlawful.  *See Wal-Mart Stores*, 368 NLRB No. 146, slip op. at *2 (applying the *Boeing* standard to a facially neutral work rule that regulated (but did not prohibit) employees from wearing union buttons in the workplace).

The reason for this distinction is well-founded.  Where an employer maintains a rule that merely limits—but does not ban—the display of union insignia, the infringement on employees' Section 7 rights is less severe, and a heightened test is unnecessary to appropriately balance the competing interests.  For the Board to apply a test reserved for total bans on union insignia to the mere regulation of such displays, as it did below, inappropriately tips the scale against employers.  And

extending this test will have the inevitable result of invalidating almost all uniform and dress code policies except in the most extreme circumstances. There is simply no basis for this result—legal or otherwise.

> ### A. The Board has never applied the "special circumstances" test to workplace policies that allow employees to display union insignia.

The Board's decision below marks a dramatic departure from its precedent. Historically, when determining whether a uniform or dress code policy is facially unlawful, the Board has applied different standards depending on whether (i) the policy altogether bans the wearing of union insignia or (ii) the policy only limits when and how an employee can wear union insignia. This important distinction is well-founded in both Supreme Court and Board precedent.

In *Republic Aviation*, the Court considered the discharge of employees for wearing union insignia in violation of an employer's solicitation policy. *See Republic Aviation*, 324 U.S. at 801. The Court affirmed the Board's determination that the employer's outright ban on solicitation (including wearing union insignia as a form of solicitation) "must fall as interferences with union organization." *Id*. at 803. At the same time, the Court recognized the "undisputed" rights of employers and acknowledged that "a rule prohibiting union solicitation during working hours" may be valid in the face of "evidence that special circumstances make the rule necessary in order to maintain production or discipline." *Id*. at 803, n.10. A full

reading of *Republic Aviation* makes clear that the "special circumstances" test was meant to apply only to a narrow subset of employer rules, namely, those that: (i) are directed primarily towards solicitation, and (ii) ban all such solicitation (including the display of all union insignia) on non-work time. *See id.*

Where, like here, the employer's rule merely limits the wearing of union insignia, the Board has never applied the "special circumstances" test. Rather, as the Board recently explained:

> The Supreme Court long ago affirmed the Section 7 right of employees to wear union buttons and other insignia. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801-803 (1945). But this right is not absolute. The Board has evaluated the lawfulness of facially neutral work rules that prohibit the wearing of all union buttons and insignia by examining whether the employer has shown special circumstances for the prohibition. In such cases, the infringement on Section 7 rights is incontrovertible, and the employer must therefore prove that special circumstances exist justifying the ban for it to be lawful.
>
> Where . . . the Employer maintains a facially neutral rule that limits the size and/or appearance of union buttons and insignia that employees can wear but does not prohibit them, a different analysis is required. Necessarily, because the infringement on Section 7 rights is less severe, the employer's legitimate justifications for maintaining the restriction do not need to be as compelling for its policy to pass legal muster, and justifications other than the recognized special circumstances may suffice.

*Wal-Mart Stores*, 368 NLRB No. 146, slip op. at *1-2.

*Wal-Mart Stores* is consistent with the Board's prior precedents, which have limited the application of the "special circumstances" test to employer policies that completely ban employees from wearing union insignia. *See, e.g.*, *USF Red Star, Inc.*, 339 NLRB at 391 ("[A] *ban* on wearing union insignia violates the Act unless it is justified by special circumstances.") (emphasis added); *United Parcel Service*, 312 NLRB at 597 ("In the absence of 'special circumstances,' the *prohibition* by an employer against the wearing of union insignia violates Section 8(a)(1) of the Act.") (emphasis added); *The Ohio Masonic Home*, 205 NLRB 357, 357 (1973) ("In the absence of 'special circumstances,' the promulgation of a rule *prohibiting* the wearing of [union] insignia is violative of Section 8(a)(1).") (emphasis added); *Floridan Hotel of Tampa*, 137 NLRB 1484, 1486 (1962) ("The promulgation of a rule *prohibiting* the wearing of [union insignia] constitutes a violation of Section 8(a)(1) in the absence of evidence of 'special circumstances' . . . .") (emphasis added).

The only time the Board has suggested otherwise was in *dicta* in *Stablius, Inc*. 355 NLRB 836, 838 (2010). There, the Board addressed whether an employer had committed unfair labor practices by enforcing a policy that required its employees to wear company shirts in the workplace. *See id.* Ruling against the employer, the Board found that the employer "enforced its policy in a selective and overbroad manner against union supporters." *Id.* at 837. Even there, the Board expressly

caveated its decision, noting that "[w]e need not reach the [] conclusion that the Respondent failed to make the required showing that special circumstances justified the application of its uniform policy." *Id*. In other words, the Board did not apply the "special circumstances" test to determine that the policy violated the Act.

Despite acknowledging that the "special circumstances" test was irrelevant to the outcome, the Board noted that "employees have a Section 7 right to wear union insignia on their employer's premises, which may not be infringed, absent a showing of 'special circumstances.'" *Id*. And it observed, without justification or citation, that "[a]n employer cannot avoid the 'special circumstances' test simply by requiring its employees to wear uniforms or other designated clothing, thereby precluding the wearing of clothing bearing union insignia." *Id*. In addition to being dicta, these were incorrect statements of law. As Member Schaumber observed in his dissenting opinion in *Stabilus*,

> [T]he Board has never held that, where an employer lawfully maintains and consistently enforces a policy requiring employees to wear a company uniform, its employees have a right under Section 7 to disregard the policy and wear union attire in place of the required uniform.

*Stabilus*, 355 NLRB. at 842-43.

*Stabilus* is an outlier. The Board has declined to use Stabilus to reinvent the legal landscape. In the thirteen years since *Stabilus*, the Board has **never** applied the "special circumstances" test to a facially neutral and non-discriminatory work rule

that does not ban the wearing of union insignia. Indeed, until now, the Board has always honored this distinction and has limited the application of the "special circumstances" test to workplace policies that completely prohibit employees from displaying union insignia. The Board should not now be permitted to rely on an unused and incorrect statement of law buried in dicta to override decades of precedent.

> **B.    The Board's *Boeing* standard has and continues to be the appropriate standard to apply when the workplace rules allow employees to display union insignia.**

As noted above, the Board has historically applied *Boeing* and its predecessors to analyze facially neutral workplace polices that allow employees to display union insignia. Absent a complete ban or prohibition, the Board has treated dress codes and uniform policies like any other facially neutral workplace rules and has balanced "the nature and extent of the potential impact on NLRA rights" against the "legitimate justifications associated with the requirement(s)"—without any presumption that the employer's rule is unlawful. *The Boeing Co.,* 365 NLRB No. 154, slip op. at *4.

This approach long predates *Boeing.* Before *Boeing,* the Board applied its predecessor work rule standard set forth in *Lutheran Heritage* to facially neutral and non-discriminatory uniform and dress policies. *See Lutheran Heritage Village-Livonia,* 343 NLRB 646 (2004); *see also Burndy*, 364 NLRB No. 77, slip op. at *31,

n. 65 ("Given the facial neutrality of Respondent's dress code and the lack of evidence that it was disparately enforced, I decline to apply the 'special circumstances' test pursuant to *Republic Aviation* and its progeny, as opposed to the work rule analysis articulated in *Lutheran Heritage Village-Livonia*"); *Medco Solutions*, 357 NLRB at 171 (affirming ALJ's application of *Lutheran Heritage* to an employer's facially neutral dress code).[2]

The application of the *Boeing* standard to the facts of this case—and to all cases involving facially neutral and non-discriminatory dress codes and uniform policies—makes sense. Not only does it align with the Board's own precedent, but *Boeing* accounts for the important public policy considerations involved. A fundamental role of the Board is to strike a balance between an employer's right to manage and operate its business and its employees' right to engage in Section 7 activity. *See Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 701 (1983) (quoting *NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 33-34 (1967)) (describing the Board's "'duty to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy'"); *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 229 (1963) (noting the "delicate task . . . of weighing the interests of employees in concerted activity against the

---

[2] The *Stabilus* majority's *dicta* addressing application of "special circumstances" to facially neutral policies was immediately out of step with *Lutheran Heritage*. The Board failed to acknowledge or reconcile this fact in *Stabilus*, or in its decision below.

interest of the employer in operating his business in a particular manner and of balancing in the light of the Act and its policy the intended consequences upon employee rights against the business ends to be served by the employer's conduct").

*Boeing* strikes that appropriate balance where employees are not completely prohibited from displaying union insignia. Applying any other standard would constitute "a radical rebalancing of the relevant interests and a sharp curtailment of legitimate management prerogatives." *Stabilus*, 355 NLRB at 842 (Schaumber dissent).

Employers enact dress and uniform policies for a host of legitimate reasons, including product and employee safety, morale, and security. A blanket application of the "special circumstances" test to all dress and uniform policies would subject employers to an onerous and heavy burden to justify commonplace and commonsense rules. Employers should not be required to meet this burden to undertake such a fundamental management action. To hold otherwise, as the Board has done here, subverts employers' rights and effectively nullifies their ability to maintain neutral dress code and uniform policies. *See Stabilus*, 355 NLRB at 843 (Schaumber dissent) ("If employees have the right to wear union attire instead of a company uniform, the employer's right to promulgate and enforce reasonable, nondiscriminatory apparel rules is negated entirely. Such a result would not strike a

balance between employee and employer rights; rather, it would completely submerge the employer's rights.")

There was simply no reason for the Board to depart from its existing precedent or to treat facially neutral dress codes and uniform policies that merely limit the display of union insignia different from other facially neutral rules. Rather, continuing to apply the *Boeing* standard in this context supports the many legitimate business justifications for such policies while simultaneously balancing the rights of employees to display some union insignia.

## II.    The Board's Decision Could Bring an End to the Enforceability of Employer Dress Codes and Uniform Policies.

No dress code is safe from the Board's decision below. If upheld, the Board's decision will reverberate throughout the entire U.S. economy and will call into question nearly every employer dress code and uniform policy—regardless of its scope or the industry involved. Although the Board fails to meaningfully address the consequences of its decision, the simple fact remains that most employers will not be able to satisfy the "special circumstances" test or lawfully maintain such rules under the Board's new analytic framework.

The Board's decision contains no carve-outs or caveats. As Members Kaplan and Ring explained in their dissent below, the Board's decision will have a direct and immediate impact on nearly every conceivable type of dress code policy across an endless number of industries:

15

> The majority's holding requires finding presumptively unlawful legitimate and, in some cases, business-necessitated dress codes.
>
> For instance, manufacturing employers, like the Respondent, would presumptively violate the Act by requiring employees to wear particular clothing, such as a factory jumpsuit, to prevent damage during production because it would prevent employees from wearing union clothing.
>
> In an office setting, typical "business casual" dress codes, often established to maintain a level of decorum, would be presumptively unlawful because they would prohibit union t-shirts. Similarly, the majority's approach would make presumptively unlawful relatively common employer policies prohibiting employees from wearing certain clothing--t-shirts, exercise outfits, tube tops or muscle shirts--because the policy would prohibit such attire inscribed with a union-related message.

ROA.6664.  As Members Kaplan and Ring concluded, it is hard to imagine that Congress "intended to condemn such rules as presumptively unlawful to maintain" or meant to "require that policies banning all insignia be treated the same as policies that do not." *Id*.  Nevertheless, the Board's decision will require just that.

The Board's only retort to these concerns is to downplay the impacts of its decision, suggesting that employers can still maintain dress codes and uniform policies so long as they are justified by "special circumstances."  The Board's assurances provide little comfort.  As the Board itself has recognized, "[t]he special circumstances exception is narrow," *see Chinese Daily News*, 353 NLRB 613, 622 (2008), and "[t]he relatively infrequent cases in which the Board has found special

circumstances involve unusual facts." *In-N-Out Burger*, 365 NLRB No. 39, slip op. at *12. To suggest, as the Board does below, that employers simply will be able to easily satisfy the "special circumstances" test ignores the Board's own precedent, which has overwhelmingly rejected attempts by employers to show the existence of those circumstances. *See In-n-Out Burger, Inc.*, 365 NLRB No. 39, slip op. at *12 (invalidating fast food chain's standard uniform policy because it prohibited employees from wearing buttons); *Chinese Daily News*, 353 NLRB at 622-23 (finding that newspaper publisher violated the Act by creating a dress code policy that prohibited employees from wearing clothing with the name or logo other than the employer); *P.S.K. Supermarkets, Inc.*, 349 NLRB 34, 34 (2007) (finding that grocery store which required employees to wear company-provided uniforms unlawfully banned union buttons); *Wal-Mart Stores v. NLRB*, 340 NLRB 637, 637 (2003) (finding that employer violated the Act because there was no evidence that shirts with union logos interfered with the operation of the store); *Goodyear Tire & Rubber Co.*, 357 NLRB 337, 337 (2011) (finding that employer ban on employees wearing union t-shirts was not justified by "special circumstances"); *Meijer, Inc.*, 318 NLRB 50, 50 (1995) (employer's ban on union pins unlawful where employer offered no evidence that pins interfered with company's public image).

Indeed, in the sixty-plus year history of the "special circumstances" test, the Board has rarely found the existence of such circumstances except in the very limited

instances in which displaying union insignia "may jeopardize employee safety, damage machinery or products, exacerbate employee dissension, or unreasonably interfere with a public image that the employer has established, or when necessary to maintain decorum and discipline among employees." ROA.6651 (quoting *Komatsu America Corp.*, 342 NLRB at 650). And the inherent difficulty of the "special circumstances" test is only amplified by the skepticism with which the Board often views employer justifications for such policies. The Court need look no further than the Board's decision below.

In the case below, Petitioner explained that its team-wear policy decreases the risk of vehicle damage and helps facilities visual management of general assembly personnel. ROA.6656-57. Despite these obvious business interests, the Board downplayed these concerns and rejected Petitioner's justifications. Leaving aside the fact that Petitioner (not the Board) is in the better position to know the risks to its own production process, it is difficult to understand what evidence would be needed to satisfy the Board's test. And the Board fails to explain what evidence an employer might proffer to satisfy the "special circumstances" test in a future case.

The Board's decision in this case is just the beginning.[3] The Board is currently in the process of reviewing and seeking to overturn other longstanding precedents

---

[3] Indeed, the General Counsel for the Board has already indicated that the General Counsel intends to ask the Board to further extend *Republic Aviation* to even more situations, including rules regarding the use of electronic surveillance and automated management in the workplace.

and cases that appropriately weigh employers' and employees' competing interests in a variety of common workplace scenarios. Allowing the Board to put its thumb on the scale for Section 7 rights tilts its precedents out of balance with both the Act and its statutory mandate and will place employers in the difficult position of having to sacrifice production quality and safety in the name of facilitating employees' ability to organize in the workplace. As the Supreme Court recognized decades ago in *Republic Aviation*, there must be a balance. The Board's decision below undermines that equilibrium.

## CONCLUSION

The Board's decision below represents a troubling departure from its own precedent. For the better part of sixty years, the Board has limited the "special circumstances" test to employer rules and policies that completely ban employees from wearing union insignia. The Board has never applied this test to commonplace workplace dress codes and uniform policies that merely limit the display of union insignia. This distinction has survived the test of time for one simple reason: the justifications needed to completely ban employees from displaying union insignia are markedly different from those justifications needed to only limit the way that employees display union insignia in the workplace. To apply the "special

---

*See* "Electronic Monitoring and Algorithmic management of Employees interfering with the Exercise of Section 7 Rights," General Counsel Memorandum GC-23-02 (October 31, 2022), https://apps.nlrb.gov/link/document.aspx/09031d45838de7e0.

circumstances" test to all dress codes and uniform policies marks a dramatic shift in the legal landscape and places all such policies at risk of being found unlawful. If the Board's decision below is allowed to stand, the longstanding balance that the Supreme Court sought to uphold in *Republic Aviation* will be destabilized, and employers across the nation will lose the ability to enforce commonsense and neutral workplace rules. This Court should reverse.

**Dated: February 9, 2023**

Stephanie A. Maloney
Tyler S. Badgley
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062
PH: 202.463.5337
SMaloney@USChamber.com
*Counsel for Chamber of Commerce of
the United States of America*

Kurt G. Larkin
HUNTON ANDREWS KURTH
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
PH: 804.788.8776
klarkin@hunton.com
*Counsel for Amici Curiae*

## RULE 32(g)(2) CERTIFICATION

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 4,703 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Times New Roman.

*/s/ Kurt G. Larkin*
Kurt G. Larkin
HUNTON ANDREWS KURTH
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
PH: 804.788.8776
klarkin@hunton.com
*Counsel for Amici Curiae*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 9th day of February, 2023, a true and correct copy of the foregoing Amicus Brief was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system.

<div style="margin-left:40%">

*/s/ Kurt G. Larkin*
Kurt G. Larkin
HUNTON ANDREWS KURTH
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
PH: 804.788.8776
klarkin@hunton.com
*Counsel for Amici Curiae*

</div>

22