**ORAL ARGUMENT NOT YET
SCHEDULED**

**Case No. 22-60493**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**TESLA, INC.,**
**Petitioner/Cross-Respondent,**
v.
**NATIONAL LABOR RELATIONS BOARD,**
**Respondent/Cross-Petitioner,**

_____

**INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, AFL-CIO**
**Intervenor.**

**BRIEF OF _AMICUS CURIAE_ HR POLICY ASSOCIATION
IN SUPPORT OF TESLA, INC.**

G. Roger King
Gregory Hoff
HR Policy Association
4201 Wilson Blvd., Ste 110-368
Arlington, VA 22203
rking@hrpolicy.org
ghoff@hrpolicy.org
*Attorneys for Amicus Curiae*

Steven M. Bernstein, Esq.
Florida Bar No:  0055421
Fisher & Phillips LLP
101 E. Kennedy Blvd, Ste 2350
Tampa, FL 33602
sbernstein@fisherphillips.com
*Attorney for Petitioner/Cross Respondent*

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* HR Policy Association hereby submits the following corporate disclosure statement:

HR Policy Association is a nonprofit, non-stock corporation. It has no parent corporation, and no company owns 10 percent or more of its stock.

# **TABLE OF CONTENTS**

**PAGE(s)**

IDENTITY AND STATEMENT OF INTEREST OF *AMICUS*…………………vi

RULE 29(a)(4)(E) CERTIFICATION…………………………………………vii

SUMMARY OF ARGUMENT……………………………………………………1

STATEMENT OF FACTS…………………………………………………………4

ARGUMENT………………………………………………………………………5

A. The Board and the Courts Have Consistently Found that Employers have Basic Entrepreneurial Rights to Establish Terms and Conditions of Employment to Operate their Businesses…………………………………5

B. Republic Aviation Established a Test That Balances Employer and Employee Interests – the Court Did Not Create a Separate "Special Circumstances" Test that Places a Heightened Burden on Employers…........7

C. Employer Rights Should Not Be Subordinated to Employee Rights under the NLRA.................................................................................................11

D. When the Republic Aviation Balancing Test is Properly Applied in This Case, Tesla's Teamwear Policy is Lawful....................................................12

CONCLUSION......................................................................................14

<u>**TABLE OF AUTHORITIES**</u>

**PAGE(s)**

**Cases**

*Albis Plastics*, <u>335 NLRB 923</u> (2001) ....................................................................6, 7

*Andrews Wire Corp.*, <u>189 NLRB 108</u> (1971). ...........................................................6

*Campbell Soup Co.*, <u>380 F.2d 372</u> (5th Cir. 1967). ..................................................7

*Davison-Paxon Co. v. NLRB*, <u>462 F.2d 364</u> (5th Cir. 1972) ................................3, 13

*Fabri-Tek, Inc. v. NLRB*, <u>352 F.2d 577</u> (8th Cir. 1965). ...........................................6

*First Nat'l Maint. Corp. v. NLRB*, <u>452 U.S. 666</u> (1981). ....................................5, 6

*Hudgens v. NLRB*, <u>424 U.S. 507</u> (1976). ................................................................2

*Lee v. NLRB* <u>325 F.3d 749</u> (6th Cir. 2003). ...........................................................9

*NLRB v. Babcock and Wilcox,* <u>351 U.S. 105</u> (1996). ................................................2

*NLRB v. Erie Resistor Corp.*, <u>373 U.S. 221</u> (1963). ................................................11

*NLRB v. Great Dane Trailers Inc.*, <u>388 U.S. 26</u> (1967) .........................................11

*Republic Aviation v. NLRB*, <u>324 U.S. 793</u> (1945). ....................................... 1, 8, 10

*Stabilus, Inc.*, <u>355 NLRB 836, 844</u> (2010) ...........................................................12

*Tesla, Inc.*, 371 NLRB No. 131 (Aug. 29, 2022)...........................................2, 12

*United Aircraft Corp.*, <u>134 NLRB 1632</u> (1961). ......................................................6

*Va. Elec. & Power Co. v. NLRB*, <u>703 F.2d 79</u> (4th Cir. 1983) ...............................13

*World Color Corp. v. NLRB*, <u>776 F.3d 17</u> (D.C. Cir. 2015)......................................3

**Statutes**

29 USC § 160a. ...........................................................................................5

## STATEMENT OF INTEREST

HR Policy is a public policy advocacy organization that represents the chief human resource officers of more than 400 of the largest corporations doing business in the United States and globally. Collectively, their companies employ more than 10 million employees in the United States – nearly 9 percent of the private sector workforce. Since its founding, one of HRPA's principal missions has been to ensure that laws and policies affecting human resources are sound, practical, and responsive to labor and employment issues arising in the workplace.

Association members regularly have matters before the National Labor Relation's Board ("NLRB" or "Board"), and HR Policy has consistently advocated on behalf of its members on issues related to collective bargaining and the National Labor Relations Act ("NLRA" or "Act"). HR Policy therefore has a general interest in ensuring that the standards articulated by the Board are consistent with the language and purposes of the Act, while, at the same time, are sound, practical, and responsive policies meeting the realities of today's workplace. More specifically, a substantial number of Association members have manufacturing operations and employees working in industrial settings with employee uniform policies similar to that at issue in the present case. The Association thus has a vested interest in the Board's approach to employers' uniform policies and accordingly submits this amicus brief representing its views on this area of the law.

## **RULE 29(a)(4)(E) CERTIFICATION**

Pursuant to <u>Fed. R. App. P. 29(a)(4)(E)</u>, *Amicus* state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person—other than *Amicus*, their members, or their counsel—contributed money to fund preparing or submitting this brief.

## I.     SUMMARY OF ARGUMENT

"It is so because I say it is so!" This phrase captures the essence of the NLRB's decision in the instant case. The Board decision at issue holds that Tesla's teamwear policy was presumptively invalid and that Tesla failed to establish "special circumstances" to justify such policy.  Further, the Board dismissed as irrelevant the fact that Tesla permitted employees to communicate their union message by alternative means in the workplace. The Board is wrong on both points. Amicus submits that the Supreme Court's decision in *Republic Aviation*[1] and other persuasive judicial precedent clearly establish that a balancing test is required to be used in this case.

Contrary to the Board's position, the Supreme Court in *Republic Aviation* did not create a separate "special circumstances" test. The Board is required to consider all facts and circumstances – special or otherwise – in a neutral and comprehensive manner and balance such evidence before reaching a decision. All parties start at the same place – they all have equal rights. Employer rights to manage their business, including establishing workplace rules, are appropriately balanced against employee rights to organize and engage in protected concerted activity, with neither presumptively trumping the other.  No party starts with an advantage or disadvantage or is required to initially meet a heightened burden. The Board must accommodate

---

[1] *Republic Aviation v. NLRB*, <u>324 U.S. 793</u> (1945).

all parties "with as little destruction of one as consistent with the maintenance of the other."[2] The "locus of the accommodation may fall at differing points along the spectrum, depending on the nature and strength of the respective…rights…"[3]

The Board's decision in *Tesla* is also a confusing and contradictory journey through the case law precedent in this area. The Board's decision consistently and repeatedly states that employers must meet its special circumstances test to justify any type of restriction of buttons, badges, insignia or union paraphernalia in the workplace on one hand, but then on a number of other occasions, the decision states a balancing test is to be utilized to resolve such issues.[4] The Board uses its special circumstances test and a balancing test interchangeably. These two tests are simply not the same.

The Board in its decision, also states without citing any authority, that employers are required to narrowly tailor their uniform/apparel policies as they relate to employee rights. The "narrowly tailored" doctrine is primarily a constitutional interpretation doctrine that is not applicable in this case. Indeed, "narrowly tailoring" is neither a test nor an appropriate requirement to apply to employers in this area, and the Board is not permitted to substitute its judgment for

---

[2] *NLRB v. Babcock and Wilcox,* 351 U.S. 105, 112 (1996).
[3] *Hudgens v. NLRB*, 424 U.S. 507, 522 (1976).
[4] *See, e.g. Tesla, Inc.*, 371 NLRB No. 131 at *1 (Aug. 29, 2022); *See also Id* at *6.

the business judgment of employers.[5] As outlined above, a balancing approach where the Board and the courts attempt to accommodate the rights of all competing parties is the starting and ending point. In any event, even if employers narrowly tailor their uniform/apparel policies – which Tesla did in the instant case – they still will be found in violation of the NLRA by the Biden NLRB pursuant to its rationale in the underlying case. Specifically, in this case, Tesla did narrow its uniform/apparel teamwear policy and provided a reasonable option for employees to substitute black cotton, noncompany shirts for company issued shirts and also permitted its employees to wear union insignia stickers on either company or employee provided shirts. Tesla also accommodated employee rights by modifying its policy to permit such stickers to be worn over the Tesla logo on the company-provided shirts. Narrow tailoring, however, was of no assistance to Tesla as it was still found guilty by the Board of violating the NLRA.

The Board also gave no weight to the business rationale for Tesla's teamwear policy. The Board majority invalidated all of Tesla's teamwear policy, including the portion of such policy that prohibits employees from wearing any type of apparel in the workplace that could scrape or scratch the chassis of the Tesla automobiles as they move through the assembly line.[6] Certainly, any employer, including Tesla, has

---

[5] *See, e.g.*, *World Color Corp. v. NLRB*, 776 F.3d 17 (D.C. Cir. 2015); *See also Davison-Paxon Co. v. NLRB*, 462 F.2d 364 (5th Cir. 1972).

[6] The provision in the Board's Order that Tesla could perhaps salvage its teamwear policy by modifying is discussed at footnote 25 of Amicus' brief.

a right to protect its product from damage as it is manufactured or developed. The Board's decision on this point is not only a clear legal error but lacks any semblance of fairness or common sense.

As a practical matter, the Board's rationale in this case will serve as precedent to find as presumptively unlawful any employer's facially neutral dress code workplace policy that in any manner allegedly prohibits employees from wearing union apparel of their choosing in the workplace. Such policies, even when applied in a nondiscriminatory manner, are illegal under the NLRA according to the Biden Board's rationale, unless an employer can meet a heightened burden – the Board's legal mirage special circumstances test. The Board is wrong. It applied the wrong test in this case and failed to balance the legitimate nondiscriminatory business interests of Tesla against the competing NLRA rights of Tesla's employees.

The Board's decision in this case constitutes a clear legal and factual error and is not entitled to any deference by this Court.

## II.     STATEMENT OF FACTS

Amicus supports and adopts the Petitioner's statement of facts in its opening brief. Amicus submits that the Court, when it reviews the record below in this case, will quickly discover that the Board completely ignored or gave no credit to the numerous relevant factors supporting Tesla's business rationale for its teamwear policy. As stated above, the Board incorrectly dismissed and refused to credit Tesla's

legitimate business and operational interests in having employees avoid wearing apparel that could scratch or damage the chassis of its automobiles as they proceed through the assembly line.

Additionally, the Board gave no weight to the record evidence of Tesla's legitimate business justification of requiring different categories of workers to wear different colored shirts in the assembly area to ensure product quality and productivity in the production area.

Board decisions must be supported by substantial evidence on "the record considered as a whole."[7] The Board completely fails to meet this requirement in the instant case, and the Court should not enforce its Order.

## III.   ARGUMENT

### A. The Board and the Courts Have Consistently Found that Employers have Basic Entrepreneurial Rights to Establish Terms and Conditions of Employment to Operate their Businesses

Republican and Democratic Boards alike have consistently recognized a wide range of employer operational and entrepreneurial rights under the NLRA. Employers are empowered to establish the terms and conditions of employment "free from the constraints of the bargaining process to the extent essential for the running of a profitable business."[8] Indeed, employers "must have some degree of certainty beforehand as to when [they] may proceed to reach decisions without fear

---

[7] 29 USC § 160a.
[8] *First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 678-79 (1981).

of later evaluations labeling its conduct an unfair labor practice."[9] This "need for unencumbered decision-making"[10] extends to workplace rules and procedures and other types of operational discretions rooted in maintaining production, discipline, employee safety, and similarly critical business considerations that go into running a business.

More specifically, the Board has consistently recognized that employer dress code policies have special significance in industrial and manufacturing settings and that allowing nonadherence can have tangible adverse consequences for employee and product safety, among other negative implications. Such policies have been upheld in numerous areas, including:

- Preventing the wearing of union insignia for the purposes of preventing employee divisiveness on the factory floor;[11]

- Banning union insignia where such insignia could impair employee visibility or otherwise endanger employees;[12]

- Banning union insignia where it could otherwise distract an employee and impair concentration that is much needed on an assembly line;[13] and

---

[9] *Id.* at 679.
[10] *Id.*
[11] *See, e.g., United Aircraft Corp.*, 134 NLRB 1632 (1961).
[12] *See, e.g., Albis Plastics*, 335 NLRB 923 (2001); *Andrews Wire Corp.*, 189 NLRB 108 (1971).
[13] *See, e.g., Fabri-Tek, Inc. v. NLRB*, 352 F.2d 577 (8ᵗʰ Cir. 1965).

- Precluding the wearing of union insignia in order to avoid damage to machinery or products;[14]

- Recognizing that "industrial or manufacturing operations[']…workplace conditions can heighten the need to ensure that employees are readily visible in the workplace…and that extraneous markings or stickers can interfere with visibility and thus safety."[15]

The above precedent, especially in manufacturing and industrial settings, should be applied by the Board in balancing the often-competing interests of all parties when deciding dress code cases. Unfortunately, in the instant case, the Board has only given "lip service" to these substantial operational and entrepreneurial rights. The Board's failure to properly apply such precedent in a balancing test analysis in this case is yet another reason why the Court should refuse to enforce the Board's Order.

**B.** *Republic Aviation* **Established a Test That Balances Employer and Employee Interests – the Court Did Not Create a Separate "Special Circumstances" Test that Places a Heightened Burden on Employers**

Initially, it is important to note that the primary issues before the Court in *Republic Aviation* were employer due process challenges to the Board's decision-making process and challenges as to whether the Board had articulated with

---

[14] *See, e.g.*, *Campbell Soup Co.*, 159 NLRB 74, enf. in part, enf. denied in part on other grounds, 380 F.2d 372 (5th Cir. 1967).
[15] *Albis Plastics*, 335 NLRB 923, 924 (2001).

sufficient particularity rationales for its decisions. For example, the Court stated the following:

> The gravamen of the objection of both *Republic* and *Le Tourneau* to the Board's orders is that they rest on a policy formulated without due administrative procedure. To be more specific it is that the Board cannot substitute its knowledge of industrial relations for substantive evidence. The contention is that there must be evidence before the Board to show that the rules and orders of the employers interfered with and discouraged union organization in the circumstances and situation of each company.[16]

> The Board has fairly, we think, explicated in these cases the theory which moved it to its conclusions in these cases. The excerpts from its opinions just quoted show this. The reasons why it has decided as it has are sufficiently set forth.[17]

After addressing the due process challenges to the Board's decision-making process, the Court then turned to two distinct fact situations presented to it in the case. The first issue involved the employer's solicitation policy. Specifically, the issue before the Court involved a challenge to an employer policy that prohibited employees from engaging in union solicitation during nonwork lunch periods. The Court concluded that the Board correctly held that "…a rule prohibiting union activity on company property outside of working time constitutes an unreasonable impediment to self-organization and that discharges for a violation thereof are discriminatory."[18] While the Board's decision does state that the record "discloses

---

[16] *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798 (1945).
[17] *Id*. at 803.
[18] *Republic Aviation Corp.*, 51 NLRB 1186, 1187 (1943).

no special circumstances" to justify the employer's policy, the *Republic Aviation* Court utilized a balancing test in affirming the Board's decision. This reference to "special circumstances" in this part of the *Republic Aviation* decision apparently is the origin of the special circumstances test. Such a foundation for the use of – or, as present in the instant case, the extension of such an artificially created test – is clear legal error, and the Court is not required to give any deference to the Board in analyzing this or any other Supreme Court precedent.[19]

The second factual issue examined in *Republic Aviation* involved the employer's uniform policy and the discharge of three employees for wearing union steward pins. Nowhere in this part of the decision, however, does the phrase "special circumstances" appear. The entire analysis on this issue is a balancing test discussion, with the Court approving the Board rejection of the employer's rationale for its policy and concluding that the wearing of union insignia in the workplace is a protected activity that outweighed any corresponding employer interest on that issue.[20]

---

[19] *See, e.g. Lee v. NLRB* 325 F.3d 749, 754 (6th Cir. 2003).

[20] It is also important to note that the dress code policy at issue in *Republic Aviation* was not a facially neutral, nondiscriminatory policy – it was an explicit prohibition against employees wearing a specific type of union insignia. Accordingly, the Board and the *Republic Aviation* Court had no difficulty, under a balancing analysis, finding in favor of the employees' interests.

It is clear that the Court in *Republic Aviation* applied a balancing test in analyzing the employer policies at issue before it. Specifically, the Court stated that the Board had an obligation to balance employee and employer interests:

> These cases bring here for review the action of the National Labor Relations Board in working out an adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. <u>Opportunity to organize and proper discipline are both essential elements in a balanced society</u>. (Emphasis added).[21]

*Republic Aviation* did not create a separate heightened burden "special circumstances" test, including any requirement that such a test be applied when an employer's facially neutral policy prohibits all union paraphernalia in the workplace on worktime. Indeed, the phrase "special circumstances" as applied by the Board after the Court's decision in *Republic Aviation* only appears twice in the Supreme Court's decision – once in the context of the geographic location of the plants in question and whether they fit in a "company town" situation, and once, as noted above, in a reference to an employer rule prohibiting union solicitation by an employee outside of working hours on company property.[22] Further, as also noted

---

[21] *Republic Aviation Corp. v. NLRB*, <u>324 U.S 793, 797-98</u> (1945).
[22] *Id*. at 803-04.

above, not once does this phrase appear in relation to the employer's prohibition of union buttons, insignia, or apparel.[23]

Accordingly, the Board in its Tesla decision is attempting to rewrite the Supreme Court's decision in *Republic Aviation.* The Court should reject this revisionist jurisprudence.

### C. Employer Rights Should Not Be Subordinated to Employee Rights under the NLRA

The artificially created "special circumstances" test starts with the presumption that employer facially neutral dress codes are illegal. This use by the Board of its "special circumstances" test improperly elevates employee interests over that of the employer.[24] Employer rights should not be subordinate to employee rights - such an approach is in contravention to the goals and purposes of the NLRA. Former NLRB Member Peter Schaumber in his dissent in the Board's holding in *Stabilus, Inc.* forcefully makes this point:

> The elevation of employee rights over the employer's rights simply is not supported by *Republic Aviation* or any case law. Indeed, the core principle of *Republic Aviation*, and subsequent Board cases, is one of balancing and accommodating the equal but competing rights of employees and employers. Inherent in the notion of balancing and

---

[23] The requirement that the Board balance competing managerial rights with competing employee NLRA rights is not limited to the teaching of *Republic Aviation.* Such balancing requirement has been reaffirmed numerous times in other Supreme Court decisions. *See, e.g. NLRB v. Great Dane Trailers Inc.*, 388 U.S. 26 (1967); *See also NLRB v. Erie Resistor Corp.*, 373 U.S. 221 (1963).

[24] If another Board decision required that employees (and unions) establish "special circumstances" before employee solidarity messages could be utilized in the workplace, that would also be incorrect. Such an approach would improperly elevate employer rights over the rights of the employees.

accommodating those competing rights is that both employer and employee interests must be fairly considered and weighed.[25]

Former Member Schaumber's balancing test is the correct approach to be applied in this case and is yet again another reason why the Board's Order should not be enforced.

### D. When the *Republic Aviation* Balancing Test is Properly Applied in This Case, Tesla's Teamwear Policy is Lawful

Tesla provided important business justifications for its teamwear policy. It established that the policy was important to protect against damage to its automobile chassis as they moved through the assembly line. This type of product quality concern is important to any employer. Neither the Board nor the intervening party, International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, AFL-CIO ("Intervenor"), can advance any convincing rebuttal to Tesla's legitimate business objectives that are incorporated into its teamwear policy. The only attempt the Board makes to do so is a series of conclusory statements that stress that Tesla could only provide one example where an improper button or metal zipper damaged a car chassis.[26] The existence of the teamwear policy and its enforcement no doubt, however, is a reason that product damage has only rarely occurred.[27]

---

[25] *Stabilus, Inc.*, 355 NLRB 836, 844 (2010) (Member Schaumber, dissenting).

[26] *Tesla, Inc.*, 371 NLRB No. 131 at *19 (Aug. 29, 2022).

[27] Federal courts have consistently recognized the legitimate business purposes of implementing and enforcing rules to "anticipate" potential issues and prevent such before they actually occur. *See, e.g.*, *Davison-Paxon Co. v. NLRB*,

Further, neither the Board nor the Intervenor were able to establish that the Tesla teamwear color-coding uniform requirement was not operationally related. Indeed, the record evidence is clear that uniform color-coding helps Tesla quickly identify which employees are properly in the general assembly production area and also the location of its supervisors in this area. This approach permits Tesla to control the important assembly functions that occur in this part of the plant and also to maintain high production quality standards. In short, Tesla offered two significant and legitimate business justifications for its teamwear policy.

Correctly applying the *Republic Aviation* balancing test as articulated in this brief to the instant case would require such justifications be balanced equally against Tesla employees' rights to engage in protected concerted activity – in this case, the wearing of union insignia in the workplace. Upon such balancing, even if the Board were to conclude that the employees' rights to wear union insignia outweighed Tesla's rights to protect its products and maintain discipline and productivity, Tesla should still prevail given that its policy also permits employees to wear union insignia (in fact in more ways than the policy prohibits). In short, Tesla's teamwear policy was promulgated for legitimate business justifications and also

---

462 F.2d 364, 371 (5th Cir. 1972); *See also Va. Elec. & Power Co. v. NLRB*, 703 F.2d 79, 83 (4th Cir. 1983) ("[T]he employer was not required to wait until a disturbance actually occurs before taking reasonable steps to maintain employee discipline and efficiency").

accommodates employees' rights to engage in protected concerted activity. On balance, therefore, the policy is clearly lawful.

## IV.    CONCLUSION

Substantial precedent provides broad entrepreneurial and operational rights for employers to establish and implement facially neutral employee uniform policies. The approach the Board has taken in the instant case ignores such precedent and also demonstrates an unfortunate disregard for the rights of employers to have their interests balanced against applicable employee rights under the NLRA. The Board decision below also ignores substantial record evidence. The Board's Order, therefore, should not be enforced, and the Court should direct the Board to apply the *Republic Aviation* balancing test in this case.

Respectfully submitted,

*/s/* Steven M. Bernstein
Steven M. Bernstein, Esq.
Florida Bar No:  0055421
Fisher & Phillips LLP
101 E. Kennedy Blvd, Ste 2350
Tampa, FL 33602
*Attorney for Petitioner/Cross Respondent*

/s/ G. Roger King
G. Roger King
Senior Labor & Employment Counsel
HR Policy Association
1001 19th St. N., Suite 10002

Arlington, VA 22209
(202) 375-5004

/s/ Gregory Hoff
Gregory Hoff
Associate Counsel
HR Policy Association
1001 19th St. N., Suite 10002
Arlington, VA 22209
(202) 375-5004

## <u>RULE 32(g)(2) CERTIFICATION</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P.

    29(a)(5) and 32(a)(7)(B) because this brief contains 3,569 words, excluding

    the parts of the brief exempted by <u>Fed. R. App. P. 32(f)</u>.

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the typestyle requirements of <u>Fed. R. App. P. 32(a)(6)</u> because

    this brief has been prepared in a proportionally spaced typeface using

    Microsoft Word in 14-point Times New Roman.


<u>/s/ Steven M. Bernstein</u>
Steven M. Bernstein, Esq.
Florida Bar No:  0055421
Fisher & Phillips LLP
101 E. Kennedy Blvd, Ste 2350
Tampa, FL 33602
(813) 769-7513

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 9th day of February, 2023, a true and correct copy of the foregoing Brief of *Amicus Curiae* HR Policy Association in Support of Petitioner was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Steven M. Bernstein*
Steven M. Bernstein, Esq.
Florida Bar No:  0055421
Fisher & Phillips LLP
101 E. Kennedy Blvd, Ste 2350
Tampa, FL 33602
(813) 769-7513