## No. 22-60493

# In the United States Court of Appeals
### FOR THE FIFTH CIRCUIT

TESLA, INCORPORATED,

*Petitioner/Cross-Respondent*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

## REPLY BRIEF OF PETITIONER/CROSS-RESPONDENT TESLA, INCORPORATED

DAVID B. SALMONS
MICHAEL E. KENNEALLY
DAVID R. BRODERDORF
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

*Counsel for Tesla, Incorporated*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES....................................................................ii

INTRODUCTION.............................................................................. 1

ARGUMENT ................................................................................... 3

I.     The Board cannot explain how uniform policies that permit employees to communicate their views are presumptively unlawful interferences with the right to communicate.................. 3

    A.     This Court must ensure that the Board's presumptions strike a rational balance between competing interests. ........ 3

    B.     The Board's brief confirms that Tesla's policy does not interfere with employees' interests under the NLRA. ........... 7

    C.     The Board's presumption here is an unprecedented expansion of the NLRA and conflicts with the only on-point court of appeals decision............................................. 12

II.    The Board fails to rebut Tesla's justifications for the Team Wear policy. ...................................................................... 18

    A.     The special circumstances test disregards many valid reasons for requiring uniforms. ........................................... 18

    B.     The Board's application of the special circumstances test fails even on its own terms. .................................................. 20

CONCLUSION ............................................................................... 25

CERTIFICATE OF SERVICE................................................................ 26

CERTIFICATE OF COMPLIANCE........................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beth Israel Hosp. v. NLRB,*
437 U.S. 483 (1978) ....................................................... *passim*

*Boch Imports, Inc. v. NLRB,*
826 F.3d 558 (1st Cir. 2016) ............................................ 23

*Boeing Co.,*
365 N.L.R.B. No. 154 (Dec. 14, 2017) ............................. 20

*Burger King v. NLRB,*
725 F.2d 1053 (6th Cir. 1984) .......................................... 19

*Cent. Hardware Co. v. NLRB,*
407 U.S. 539 (1972) ............................................................ 7

*Commc'ns Workers of Am. v. Ector Cnty. Hosp. Dist.,*
467 F.3d 427 (5th Cir. 2006) ............................................ 19

*Davison-Paxon Co. v. NLRB,*
462 F.2d 364 (5th Cir. 1972) ..................................... 2, 4, 5

*Dish Network Corp. v. NLRB,*
953 F.3d 370 (5th Cir. 2020) ............................................ 11

*E. Omni Constructors, Inc. v. NLRB,*
170 F.3d 418 (4th Cir. 1999) ...................................... 15, 21

*Eastex, Inc. v. NLRB,*
437 U.S. 556 (1978) ............................................................ 9

*Fabri-Tek, Inc. v. NLRB,*
352 F.2d 577 (8th Cir. 1965) ............................................ 21

*Great Plains Coca-Cola Bottling Co.,*
311 N.L.R.B. 509 (1993) ............................................ 14, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hudgens v. NLRB,*
   424 U.S. 507 (1976) ............................................................................. 10

*In re Tex. Grand Prairie Hotel Realty, L.L.C.,*
   710 F.3d 324 (5th Cir. 2013) ................................................................. 4

*In-N-Out Burger, Inc. v. NLRB,*
   894 F.3d 707 (5th Cir. 2018) ........................................................ 5, 14

*Long Beach Mem'l Med. Ctr., Inc.,*
   366 N.L.R.B. No. 66 (2018) ................................................................. 15

*Meijer, Inc.,*
   318 NLRB 50 (1995) .................................................................... 14, 16

*Mercado v. Lynch,*
   823 F.3d 276 (5th Cir. 2016) ................................................................. 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ................................................................................. 7

*NLRB v. Babcock & Wilcox Co.,*
   351 U.S. 105 (1956) ............................................................................... 8

*NLRB v. Floridan Hotel of Tampa, Inc.,*
   318 F.2d 545 (5th Cir. 1963) ............................................................... 15

*NLRB v. Harrah's Club,*
   337 F.2d 177 (9th Cir. 1964) ............................................................... 19

*NLRB v. Magnavox Co. of Tenn.,*
   415 U.S. 322 (1974) ......................................................................... 9, 10

*NLRB v. Malta Constr. Co.,*
   805 F.2d 1009 (11th Cir. 1986) ........................................................... 15

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*NLRB v. Starbucks Corp.,*
679 F.3d 70 (2d Cir. 2012) .................................................... 21

*NLRB v. United Steelworkers of Am.,*
357 U.S. 357 (1958) ............................................................... 9

*Quantum Elec., Inc.,*
341 N.L.R.B. 1270 (2004) .................................................. 15

*Republic Aluminum Co. v. NLRB,*
394 F.2d 405 (5th Cir. 1968) ............................................... 9

*Republic Aviation Corp. v. NLRB,*
324 U.S. 793 (1945) ................................................... *passim*

*SEC v. Chenery Corp.,*
332 U.S. 194 (1947) ....................................................... 11, 14

*Stabilus, Inc.,*
355 N.L.R.B. 836 (2010) ............................................... 13, 16

*Stardyne, Inc. v. NLRB,*
41 F.3d 141 (3d Cir. 1994) ................................................ 18

*U.S. Postal Serv. v. NLRB,*
652 F.2d 409 (5th Cir. 1981) ............................................... 5

*Va. Elec. & Power Co. v. NLRB,*
703 F.2d 79 (4th Cir. 1983) .............................................. 21

*Wal-Mart Stores, Inc.,*
368 N.L.R.B. No. 146 (Dec. 16, 2019) .................................... 17, 19, 20

*World Color (U.S.A.) Corp. v. NLRB,*
776 F.3d 17 (D.C. Cir. 2015) .................................... 2, 16, 17

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*World Color (USA) Corp.,*
   360 N.L.R.B. 227 (2014)........................................................................ 16

*World Color (USA) Corp.,*
   369 N.L.R.B. No. 104 (June 12, 2020) .................................................. 17

## STATUTES

National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ........................ 7, 12
   29 U.S.C. § 158................................................................................. 1, 12

## INTRODUCTION

The Board pretends there is no difference between *forbidding* union insignia and requiring employees to *add* their insignia to their uniforms. Though the Board lumps both sorts of policies together as "limits on the right to wear union insignia," the difference is obvious. The first policy limits employees' freedom to communicate with coworkers about self-organization. That freedom to communicate, by the Board's own admission, is the core of the relevant statutory right. *See* NLRB Br. 13-14. So restricting such communication can certainly "interfere with" their right. 29 U.S.C. § 158(a)(1). The second policy, however, respects the right to communicate by permitting employees to wear the slogans, logos, and messages they want to wear. It does not "interfere with" their statutory right and thus should not require comparable justification.

By refusing to acknowledge this difference, the Board cannot show the "rationality" of its new presumption that required uniforms are unlawful. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 805 (1945). A presumption that ignores the substance of the employees' right—communicating with coworkers about self-organization—cannot rationally balance the competing interests at stake. The Board refuses to explain

1

how uniform requirements can be "interferences with union organization" if employees may add their preferred union insignia to their uniforms. *Id.* at 803. This Court has stressed its duty to reverse the Board when it fails to "maintain a proper balance between conflicting interests of management and labor." *Davison-Paxon Co. v. NLRB*, 462 F.2d 364, 372 (5th Cir. 1972). The Board committed that error here, and the Court should refuse to enforce its decision.

Denying enforcement would be consistent with the most analogous judicial decision on this topic. *See World Color (U.S.A.) Corp. v. NLRB*, 776 F.3d 17, 20 (D.C. Cir. 2015). There, the court of appeals refused to enforce a similar attempt by the Board to conflate uniform requirements with limitations on union insignia. A true limitation on union insignia may call for a showing of special circumstances. But special circumstances are not necessary for ordinary uniform policies that permit union insignia and thus do not interfere with employees' right to communicate with coworkers. *See id.* And even if it were proper to require special justification for ordinary uniform policies, many courts would reverse the Board here based on its refusal to factor in employees' ability to add their desired message to their clothing and hats. *See* Tesla Br. 40-42.

The Board insists that its approach finds support in a line of Board decisions.  Yet here too, the Board irrationally refuses to distinguish between mere uniform requirements and true limits on employee communications.  As the dissenting Board Members observed, the Board has never forbidden a basic uniform policy that left employees free to broadcast their desired message and that was not written or applied discriminatorily.  Such policies fully respect employees' statutory rights to communicate about self-organization and advance many legitimate employer interests.  The Court should refuse to uphold the Board's unprecedented decision to crack down on a widespread workplace policy.

## ARGUMENT

## I.   The Board cannot explain how uniform policies that permit employees to communicate their views are presumptively unlawful interferences with the right to communicate.

### A.   This Court must ensure that the Board's presumptions strike a rational balance between competing interests.

The Board admits that this Court must assess whether the Board's presumption against uniform requirements is rational and consistent with the NLRA.  NLRB Br. 12.  The Board would prefer this review to be a rubber stamp out of deference to the Board's "institutional role." *Id.* (quoting *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500 (1978)).  This

Court, however, has already rejected that argument. Tesla Br. 37-38. "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Davison-Paxon*, 462 F.2d at 372. Although the Court exercises "limited judicial review," that phrase does "not mean that the balance struck by the Board is immune from judicial examination and reversal in proper cases." *Id.*

The Board claims that Supreme Court precedent has "superseded" this Court's discussion in *Davison-Paxon*. NLRB Br. 12. That is incorrect, and the Board never tries to satisfy the high standard for proving that Supreme Court authority displaces Fifth Circuit precedent. "[A] panel of this court can only overrule a prior panel decision if such overruling is *unequivocally* directed by controlling Supreme Court precedent." *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 331 (5th Cir. 2013) (citation omitted); *see also, e.g.*, *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) ("For a Supreme Court decision to satisfy this Court's rule of orderliness, it must 'be unequivocal[.]'"). The Board

identifies nothing in Supreme Court precedent that unequivocally over-rules *Davison-Paxon*.

The Board leans heavily on *Beth Israel Hospital*, but that case cannot bear the weight. Consistent with *Davison-Paxon*, *Beth Israel Hospital* notes that "limited judicial review" requires reviewing Board rules "for consistency with the Act, and for rationality," in addition to reviewing whether the Board's application of those rules is "supported by substantial evidence." *Beth Israel Hosp.*, 437 U.S. at 501 (citation omitted). This Court's later decisions are in accord. *See, e.g.*, *In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707, 716 (5th Cir. 2018) (quoting *Beth Israel Hosp.*, 437 U.S. at 501); *U.S. Postal Serv. v. NLRB*, 652 F.2d 409, 412 (5th Cir. 1981) (recognizing that courts should reject the Board's "illogical or arbitrary" line-drawing).

The Board's presumption against uniform policies like Tesla's flunks any plausible test for rationality, including the Supreme Court's. As explained in *Beth Israel Hospital*, the Board has responsibility "in the first instance to determine the relative strength of the conflicting interests and to balance their weight." 437 U.S. at 504. In that case, the employee interests—in communicating with coworkers while rightfully

on their employer's property—were "at their strongest," yet the employer was seeking to limit employees to areas that were "not conducive to the[] exercise" of their right to communicate. *Id.* at 505.

Here, in contrast, the Board never identified and assessed the relevant employee interests. It never analyzed whether employees have an interest not only in displaying union insignia on their clothing, but also in replacing employer-provided uniforms with union-provided substitutes. *See* ROA.6644-45. Instead, the Board noted employees' general interest in displaying union insignia at work. ROA.6644. There is no dispute, however, that employees were free to display their union insignia at work. *See* Tesla Br. 16-17; ROA.218-19, ROA.223-24 (Henry); ROA.237-38 (Williams); ROA.321-22 (Jones); ROA.347-48 (Cotton); ROA.367-68, ROA.383-86 (Vasquez); ROA.687, ROA.776 (Moran); ROA.1408-09 (Penera); ROA.1657-58 (Martin); ROA.2162-63 (Rodriguez); ROA.2433-34 (Fenelon); ROA.2560-61 (Ogunniyi); ROA.3204 (Ex. GC-35).

A decision that fails to accurately describe the interests on one side of the balance cannot weigh those interests rationally. On the contrary, such a decision "entirely fail[s] to consider an important aspect of the

problem" and should be set aside. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## B. The Board's brief confirms that Tesla's policy does not interfere with employees' interests under the NLRA.

On appeal, the Board tries to shore up its faulty assessment of employees' interests. To that end, it explains that the right to display union insignia stems from "the importance of freedom of communication to the free exercise of organization rights." NLRB Br. 13 (quoting *Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 543 (1972)). "[O]rganization rights are not viable in a vacuum; their effectiveness depends in some measure on the ability of employees to learn the advantages and disadvantages of organization from others." *Cent. Hardware*, 407 U.S. at 543. According to the Board, "[w]earing an emblem or slogan can enable employees to communicate more broadly than they could, for example, by orally soliciting coworkers or handing out flyers." NLRB Br. 13. Union insignia may also help union supporters self-identify and show unity. NLRB Br. 13-15.

Given this discussion, it is odd for the Board to criticize Tesla for characterizing the relevant right as "the right effectively to communicate with one another regarding self-organization at the jobsite." Tesla Br. 35

(quoting *Beth Israel*, 437 U.S. at 491). That characterization is not a "radical revision of the law." NLRB Br. 34. It is a direct quote from the Supreme Court and consistent with the Board's own account in the early part of its brief. *See* NLRB Br. 13. The Board apparently feels the need to recharacterize employees' right much more broadly because a presumption against uniforms is not necessary to protect effective workplace communication, which Tesla already permits.

Under the Board's broader characterization, employees get "to choose how [they] will exercise their statutory rights," without needing to show harm to their ability to communicate. NLRB Br. 8; *see also* NLRB Br. 23-24. This broader view conflicts with *Republic Aviation* and many other cases. If employees had a presumptive right to pursue self-organization however they wish, it would be presumptively unlawful to prohibit soliciting union support during working time. But it's not. *Republic Aviation*, 324 U.S. at 803 n.10 ("Working time is for work."). Likewise, employees would presumptively have an equal right to invite nonemployees onto the jobsite to advocate for a union. But they don't. *See, e.g.*, *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 113 (1956). In these cases and others, the Supreme Court has made clear that "a vital consideration in

determining the validity of a . . . rule" affecting workplace communication is whether the rule "truly diminishe[s] the ability of the labor organizations involved to carry their message to the employees." *NLRB v. United Steelworkers of Am.*, 357 U.S. 357, 363 (1958).[1]

Board counsel cite *NLRB v. Magnavox Co. of Tennessee*, 415 U.S. 322, 326 (1974), to try to justify ignoring the lack of harm to employees' ability to communicate. If anything, *Magnavox* supports Tesla. There, an incumbent union had purported to bargain away employees' right to communicate during nonworking time, and the company defended that bargain by highlighting the union's contractual right to post notices on a bulletin board at the jobsite. *Id.* at 323. The Court held that the bulletin board was not a fair substitute because it was closed to employees who

---

[1] The Board contends that *United Steelworkers* is irrelevant because it addressed an allegedly unfair application of a no-solicitation rule rather than the rule's facial validity. NLRB Br. 37 & n.10. But the Supreme Court said that the effect on employees' ability to communicate is a "vital consideration" for both facial and as-applied challenges to a work rule. *United Steelworkers*, 357 U.S. at 363. The Board also errs in suggesting that this Court has limited the *United Steelworkers* decision. *See* NLRB Br. 37-38. In *Republic Aluminum Co. v. NLRB*, 394 F.2d 405, 407-08 (5th Cir. 1968), *Eastex, Inc. v. NLRB*, 437 U.S. 556, 572 (1978), and other cases cited by the Board, the courts merely adhered to the balance that *Republic Aviation* had specifically upheld for employee communications during nonworking time.

opposed the union: "the bulletin board may be an adequate medium for 'preserving the status quo' and yet not give a union's adversaries 'equal access to and communication with their fellow employees.'" *Id.* at 326 (citation omitted). In other words, there was no alternative channel of communication for antiunion sentiments. The arrangement thus hampered certain employees' ability to communicate and discriminated based on viewpoint. Here, in contrast, there is no suggestion that employees were restricted in conveying whatever message they wished to convey.

The Board dismisses the content and viewpoint neutrality of Tesla's policy. *See* NLRB Br. 29. Yet cases like *Magnavox* show that such considerations are important when the right at issue is a right to communicate. Tesla does not suggest that First Amendment concepts directly apply here. It agrees with the Board that private employers have far greater latitude to restrict employee speech than the government has toward its citizens. *See* NLRB Br. 30-31 (discussing *Hudgens v. NLRB*, 424 U.S. 507 (1976)). But as decades of free speech jurisprudence attest, restrictions based on content or viewpoint demand greater justification than neutral restrictions. The decision below gave no rationale for disregarding this important distinction.

Belatedly, the Board hypothesizes a few reasons why "[e]mployees might prefer union shirts over stickers."  NLRB Br. 35; *see also* UAW Br. 7.  The decision below, however, does not advance any theory that stickers are an inferior form of communication.  And under the *Chenery* doctrine, it is "a simple but fundamental rule . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  "That means [the Court must] look to what the agency said, not what it might have said," and "may not accept appellate counsel's *post hoc* rationalizations for agency action."  *Dish Network Corp. v. NLRB*, 953 F.3d 370, 380 (5th Cir. 2020) (citation omitted).  In any event, there is no evidence here to justify the Board's speculation.

In short, the Board's presumption against uniform requirements fails under the governing standard of review because allowing employees to add their desired message to their uniforms has no tendency to limit their ability to communicate that message.  It is not "rational[]" for the Board to refuse to confront that commonsense point.  *Republic Aviation*, 324 U.S. at 805.  And this problem also dooms the Board's "consistency

with the Act." *Beth Israel Hosp.*, 437 U.S. at 501.  By its terms, the statute prohibits only those actions that truly constrain the exercise of employees' statutory rights.  *See* Tesla Br. 34 (discussing the ordinary meaning of the language in 29 U.S.C. § 158(a)(1)).

## C. The Board's presumption here is an unprecedented expansion of the NLRA and conflicts with the only on-point court of appeals decision.

The Board attempts to distract from the illogic of its position by insisting that it comports with precedent.  Unlike the decision below, which portrayed its presumption as compelled by *Republic Aviation*, *see* Tesla Br. 26-33, the Board's appellate brief backpedals away from that unpersuasive reading of *Republic Aviation* and seeks support primarily from Board decisions.  *See* NLRB Br. 2, 8-9, 20-23, 28-29, 31-32, 35.

Even so, *none* of the Board's cited decisions struck down a uniform policy that allowed employees to add union insignia to their uniforms and was not enforced in a discriminatory manner.  The dissenting Board Members made this point in meticulous detail.  *See* ROA.6662-63 nn.22-29, ROA.6666 n.48 (Kaplan & Ring, MM., dissenting).  And the Board cannot deny it.  Instead, it continues to invoke Board decisions about very different scenarios, none relevant here.

The Board relies heavily on *Stabilus, Inc.*, 355 N.L.R.B. 836, 837 (2010). There, the Board said that "[a]n employer cannot avoid the 'special circumstances' test simply by requiring its employees to wear uniforms or other designated clothing, thereby precluding the wearing of clothing bearing union insignia." That statement has no application here because Tesla employees were free to display union insignia on their clothing. *See* Tesla Br. 16-17. Besides, this discussion in *Stabilus* was dictum, as the Board majority admitted below. ROA.6645. In *Stabilus*, the Board declined to "reach" the special-circumstances issue because the employer applied its uniform policy in a discriminatory way. 355 N.L.R.B. at 837. In particular, the employer targeted union supporters who had complied with its policy, and it did so for the purpose of swaying the union election. *Id.* at 838-39. Here, the Board squarely rejected the Union's accusation that Tesla enforced its policy in a discriminatory way. ROA.6522 n.1; ROA.6640 n.6; *see also* ROA.6667 n.51 (Kaplan & Ring, MM., dissenting).[2]

---

[2] The Union improperly tries to reframe the issue by referring to an isolated incident involving efforts to pass out leaflets and stickers many months *before* Tesla began enforcing its Team Wear policy. UAW Br. 13-14, 21; *see* ROA.6546-47. That incident did not factor into the Board's decision that the Team Wear policy was unlawful, so the Court

Similarly, in *Great Plains Coca-Cola Bottling Co.*, 311 N.L.R.B. 509, 515 (1993), there was no suggestion that the employer's policy allowed the addition of pro-union messages to the required apparel, and once again the policy was discriminatorily enforced.  The employer ordered the employee to remove his "union" jacket, with no indication that the employee could affix union insignia to a company jacket.  *Id.*  And the employer embraced anti-union "vote no" buttons and "nonunion sweatshirts" while citing its uniform policy to order removal of a union hat.  *Id.*

Restrictions on employee communication and uneven enforcement also explain this Court's decision in *In-N-Out Burger*, 894 F.3d at 716-18. The employer permitted "no pins or stickers" that bore pro-union messages, but it allowed larger, more conspicuous buttons with the employer's preferred messaging.  *Id.* at 716.  However much the Board and Union wish that the decision supported their sweeping theories, it actually addressed a "wholesale or 'blanket' ban[]" on union insignia.  *Id.* at 715 (citation omitted).  Similarly, the employer in *Meijer, Inc.*, 318 NLRB 50, 56 (1995), *enforced*, 130 F.3d 1209 (6th Cir. 1997), flatly "prohibit[ed]

---

may not consider it.  *See Chenery*, 332 U.S. at 196.  The Board expressly found that union stickers were allowed.  ROA.6641.

the wearing of union insignia" in nonpublic areas but allowed even customer-facing employees to wear pins and badges other than pro-union pins.

Many other cases cited by the Board also involved blanket prohibitions on union insignia. For instance, the issue in *NLRB v. Floridan Hotel of Tampa, Inc.*, 318 F.2d 545, 548 (5th Cir. 1963), was "a rule prohibiting the wearing of a small pin . . . denoting [employees'] interest and pride in their organization." And in *Quantum Electric, Inc.*, 341 N.L.R.B. 1270, 1270 n.1, 1274 (2004), and *Long Beach Memorial Medical Center, Inc.*, 366 N.L.R.B. No. 66, slip op. at 2-3 (2018), *enforced*, 774 F. App'x 1 (D.C. Cir. 2019), the employers prohibited the addition of any unapproved messages to employee uniforms.

Even in the Board's "[h]ardhat-sticker cases," the disputes arose only because the employers totally banned adding stickers to the hardhats. NLRB Br. 31. The Board cites the fractured decision in *NLRB v. Malta Construction Co.*, 805 F.2d 1009, 1011-12 (11th Cir. 1986). That case conflicts with *Eastern Omni Constructors, Inc. v. NLRB*, 170 F.3d 418, 426 (4th Cir. 1999), which reversed the Board for ignoring employees' ability to add union insignia to other items that they were wearing.

*See* Tesla Br. 40-41.  This case, though, does not implicate that conflict because Tesla employees are free to add union stickers to their Team Wear clothing *and* their hats.  *See, e.g.*, ROA.321-22 (Jones); ROA.367-68 (Vasquez); ROA.2162-63 (Rodriguez); ROA.2560-61 (Ogunniyi).

This case is indistinguishable from *World Color*, where the Board originally found an unfair labor practice based on an employer's supposed prohibition on "wearing caps bearing union insignia."  776 F.3d at 20. The Board subjected the employer's policy to the special circumstances test, citing *Stabilus*, *Great Plains Coca-Cola Bottling*, and *Meijer*—the same cases cited by the Board here.  *World Color (USA) Corp.*, 360 N.L.R.B. 227, 227 n.3 (2014).  But the D.C. Circuit saw through the Board's semantic game of conflating a prohibition on union insignia with a rule that any union insignia must be added to employer-provided items. 776 F.3d at 20.  As that court understood, an employer policy that "allow[s] an employee to adorn their [company] hat with union insignia" is not a policy that prohibits hats with union insignia.  *Id.*  Then, on remand from the D.C. Circuit, the Board reversed its earlier determination and admitted that insisting on company hats, while permitting added union insignia, does not "prohibit[] employees from . . . wearing caps bearing

union insignia." *World Color (USA) Corp.*, 369 N.L.R.B. No. 104, slip op. at 3 (June 12, 2020).

The D.C. Circuit and remand rulings in *World Color* conflict with the Board's view here.  On appeal, the Board tries to wriggle around *World Color*, but without success.  *See* NLRB Br. 33 & n.7.  The case clearly held that confining employees to adding union insignia to employer-issued apparel does *not* infringe their right to wear union insignia and thus does *not* require proof of special circumstances.  *See World Color*, 776 F.3d at 19; *World Color*, 369 N.L.R.B. No. 104, slip op. at 3. The case also refutes the Board's claim that *Wal-Mart Stores, Inc.*, 368 N.L.R.B. No. 146 (Dec. 16, 2019), is its only prior decision declining to apply the special circumstances test to uniform requirements.  *See* NLRB Br. 22.  To be sure, the D.C. Circuit had to vacate the Board's initial decision to get the Board to dispense with the special circumstances test. But the Board ultimately did so.  *See World Color*, 369 N.L.R.B. No. 104, slip op. at 3 (avoiding mention of the special circumstances test).

Tesla's briefing below extensively discussed the D.C. Circuit and Board remand rulings in *World Color*.  *See* ROA.6470-71, ROA.6474; ROA.6600.  Yet the Board never explained why it now rejects the view it

ultimately adopted in that case. *See* ROA.6639-57. Its unexplained refusal to follow—or even acknowledge—*World Color* confirms the arbitrariness of its decision and further supports reversal. *See, e.g.*, *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 153 (3d Cir. 1994).

## II. The Board fails to rebut Tesla's justifications for the Team Wear policy.

Apart from significantly expanding employees' interests in controlling workplace policies, the Board impermissibly belittled employers' countervailing interests. The Board did so by ignoring the ordinary, not "special," justifications that countless employers have for requiring uniforms. And it did so by finding ways to dismiss Tesla's specific defenses for its policy. Uniforms for general assembly employees help reduce the risk of damage to freshly painted automobiles and makes it easier to differentiate those employees from others in the plant.

### A. The special circumstances test disregards many valid reasons for requiring uniforms.

In violation of *Republic Aviation*, the Board's decision gives no weight to employers' general interest in "maintain[ing] discipline in their establishments." 324 U.S. at 798. This Court has long recognized that standardized uniforms can foster workplace discipline and provide many

18

other general benefits.  *Commc'ns Workers of Am. v. Ector Cnty. Hosp. Dist.*, 467 F.3d 427, 439 (5th Cir. 2006) (en banc).  By making required uniforms presumptively unlawful, the Board disregards such general objectives and limits employers to "special" justifications for such a policy.  *See* ROA.6651.  The Board has no authority, under *Republic Aviation* or otherwise, to artificially limit the justifications that managers may legitimately pursue.[3]

Before the Board overruled it here, its prior precedent on uniforms recognized this point.  *See Wal-Mart*, 368 N.L.R.B. No. 146, slip op. at 4 ("The Board must not second-guess the [employer's] decisions as to how it should run its business—provided, of course, that those decisions do

---

[3] Board counsel object to Tesla's reference to the employer interests recognized in *Ector County* because Tesla did not identify those interests as special circumstances below.  NLRB Br. 49-50; *see also* UAW Br. 22.  But these are not "special" justifications for uniforms; they are generally applicable ones.  And Tesla did oppose applying the demanding special circumstances test in the first place precisely because it infringes on lawful management prerogatives.  ROA.6470.  Board counsel further complain that *Ector County* arose in the law enforcement context and implicated the First Amendment.  NLRB Br. 50-51.  But the Court found that uniform requirements had similar benefits "in the non-law enforcement context."  467 F.3d at 439.  And it drew from cases that rebuked the Board for failing to see the legitimate interests behind uniform requirements.  *See id.* at 440 (citing, among others, *Burger King v. NLRB*, 725 F.2d 1053, 1055 (6th Cir. 1984), and *NLRB v. Harrah's Club*, 337 F.2d 177, 178-79 (9th Cir. 1964)).

not unreasonably interfere with the exercise of Section 7 rights."). As Tesla explained, *Wal-Mart* extended the Board's decision in *Boeing Co.*, 365 N.L.R.B. No. 154 (Dec. 14, 2017), to uniform policies. *See* Tesla Br. 7-8. And *Boeing* properly observed that "the Board has far too often failed to give adequate consideration and weight to employer interests in its analysis of work rules." 365 N.L.R.B. No. 154, slip op. at 5. The same criticism applies to the Board's decision here. Tesla invoked *Boeing*'s effort to give greater effect to the "undisputed right of employers to maintain discipline in their establishments." 365 N.L.R.B. No. 154, slip op. at 7 (citation omitted); *see* ROA.6472-73; ROA.6600. Yet the Board refused to give any weight to general interests of that sort and instead limited Tesla to the strict special circumstances test. For this reason too, the Board fell short of its duty to balance the interests on both sides. *See Republic Aviation*, 324 U.S. at 804-05.

## B.   The Board's application of the special circumstances test fails even on its own terms.

The Board committed further error in the way it applied the special circumstances test. For example, the Board majority paid no attention to the narrowness of the employer's supposed interference with employee rights. Tesla Br. 39-42. But courts of appeals have refused to enforce

special-circumstances decisions that ignored the limited scope of the encroachment on employee interests.  *See, e.g.*, *NLRB v. Starbucks Corp.*, 679 F.3d 70, 78 (2d Cir. 2012) (denying enforcement where employer limited employees to a single union button on their clothing); *E. Omni Constructors*, 170 F.3d at 426 (denying enforcement where employer permitted union stickers on clothing but not hardhats); *Va. Elec. & Power Co. v. NLRB*, 703 F.2d 79, 82 (4th Cir. 1983) (denying enforcement where employer asked employee to wear "smaller, less gaudy" union buttons); *Fabri-Tek, Inc. v. NLRB*, 352 F.2d 577, 586 (8th Cir. 1965) (same).

The Board tries to rewrite these cases.  *See* NLRB Br. 48-49.  But they recognize that the special circumstances analysis must consider the actual impact on employees' ability to communicate.  An employer's decision to "prohibit[] some, but not all, union insignia is a factor that courts" properly "look[] to in determining whether special circumstances are present."  *E. Omni Constructors*, 170 F.3d at 426.  The Board, however, refused to consider whether Tesla "adequately maintains the opportunity [for employees] to display pro-union sentiment."  *Starbucks*, 679 F.3d at 78; *see* ROA.6647-50.  This Court should side with these other courts and require the Board to apply its test in a balanced way.

The Board's harsh application of the test also shows how it systematically undervalues employer interests. In stark contrast to employees' presumptive ability to pursue their interests in whatever manner they deem best, employers must prove to the Board's satisfaction, through after-the-fact administrative litigation, that any uniform requirement is "narrowly tailored" to a special justification. The Board's discussion of Tesla's asserted justifications vindicates the dissenters' and amici's concerns that the special circumstances test provides no real comfort to businesses that need legal predictability when setting company policy. *See* ROA.6665 n.46 (Kaplan & Ring, MM., dissenting); Associated Builders Br. 6, 16-18; HR Policy Ass'n Br. 5-6.

The Board first argues that the Team Wear policy is not narrowly tailored to concerns about vehicle damage because Tesla should have chosen a narrower policy against metallic union insignia only. NLRB Br. 42-43 & n.12. But the fact that prior vehicle damage was caused by metallic emblems does not mean they are the only possible source of damage. Many fabrics and fasteners have abrasive qualities, and Board counsel and the Union propose that even stickers can cause vehicle damage. NLRB Br. 45; UAW Br. 14. Although Tesla may be able to weed out many

potential sources of damage through individualized checks of every general assembly employee, the Board cannot seriously deny that such checks become more time-consuming and burdensome with every permitted deviation from Tesla's standard Team Wear uniform. *See* NLRB Br. 44.

The Board mounts a different attack against Tesla's interest in visual management. There, the supposed problem is not that Tesla could have advanced its interest through narrower, less restrictive means, but that Tesla did not pursue its interest *broadly enough*. There is no dispute that the black Union shirts at issue are worn by hundreds of non-general assembly employees, making the shirt useless as an indicator of whether a given employee is a general assembly production associate. *See* Tesla Br. 48-49; *cf.* UAW Br. 7-8. Contrary to the Board's suggestion, there is no "more tailored restriction [that] would have adequately served [Tesla's] claimed interests" in visual management while still allowing general assembly employees to wear the Union shirt, because that shirt was undisputedly in wide circulation at the plant. NLRB Br. 47 (quoting *Boch Imports, Inc. v. NLRB*, 826 F.3d 558, 576 (1st Cir. 2016)); *see also* UAW Br. 28 ("[O]nly one UAW shirt existed.").

The Board's only rejoinder is that Tesla's visual management concerns should have led it to stop employees *outside* general assembly from wearing Tesla Team Wear.  NLRB 46-47.  It also faults Tesla for not providing "a precise comparison of how many employees wore union shirts versus team wear."  NLRB Br. 47.[4]

The question, though, is not whether the Board can conceive of scenarios in which Tesla Team Wear might pose a threat to visual management within general assembly.  The question, even under the Board's formulation, is whether restricting use of the black Union shirts, widely worn in other departments, is narrowly tailored to promoting visual management.  NLRB Br. 45.  The Board cannot deny that unrestricted wearing of the Union shirt within general assembly would hinder supervisors' ability to quickly distinguish between employees.  Nor can it identify a narrower way to tailor the restriction on Union shirts without sacrificing

---

[4]   The Board and Union greatly exaggerate the limited evidence on non-general assembly employees' use of Team Wear.  NLRB Br. 46-47; UAW Br. 20, 29-30.  One witness, whose testimony the Administrative Law Judge partly discredited for being "vague" and "unspecified," ROA.6556, testified "everyone wears Tesla stuff the majority of the time that I was there," ROA.213-14 (Henry).  The Board's citations to testimony about the "team store" all concerned *general assembly production associates* who were told to acquire compliant clothing. ROA.223 (Henry); ROA.320 (Jones); ROA.2430 (Fenelon).

Tesla's interest in visual management.  Because the Board majority was willing to accept that visual management qualifies as a special circumstance, ROA.6657, Tesla proved all it needed to prove to satisfy even the Board's very strict formulation of the special circumstances test.

## CONCLUSION

The Court should grant Tesla's petition for review, set aside the Supplemental Decision and Order, and deny the Board's cross-application for enforcement.


Dated:  May 3, 2023                    Respectfully submitted,

                                       s/ Michael E. Kenneally
                                       DAVID B. SALMONS
                                       MICHAEL E. KENNEALLY
                                       DAVID R. BRODERDORF
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       1111 Pennsylvania Avenue, N.W.
                                       Washington, DC  20004
                                       (202) 739-3000

                                       *Counsel for Tesla, Incorporated*

# CERTIFICATE OF SERVICE

I certify that on this day, May 3, 2023, I served a true and correct copy of the foregoing Reply Brief of Petitioner/Cross-Respondent Tesla, Incorporated on counsel of record for all other parties through this Court's CM/ECF system:

RUTH E. BURDICK
MICAH P. S. JOST
KIRA DELLINGER VOL
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E.
Washington, DC  20570
appellatecourt@nlrb.gov
micah.jost@nlrb.gov
kira.vol@nlrb.gov

*Counsel for Respondent*
*National Labor Relations Board*

MARGO A. FEINBERG
DANIEL E. CURRY
SCHWARTZ, STEINSAPIR,
   DOHRMANN & SOMMERS LLP
6300 Wilshire Boulevard
Suite 2000
Los Angeles, CA  90048
margo@ssdslaw.com
dec@ssdslaw.com

*Counsel for Intervenor*
*International Union, United*
*Automobile, Aerospace and*
*Agricultural Implement Workers*
*of America, AFL-CIO*


s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Tesla, Incorporated*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,059 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  May 3, 2023                    s/ Michael E. Kenneally
                                       MICHAEL E. KENNEALLY

                                       *Counsel for Tesla, Incorporated*